WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:     (408) 279-8700
Facsimile:     (408) 279-3244
Email:         mwarren@mcmanislaw.com

Attorneys for Defendant
GILLIG, LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>      vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1331, 1441 AND 1446** |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA:

      PLEASE TAKE NOTICE that defendant GILLIG, LLC. ("Gillig" or "Defendant"),

hereby removes the matter of *Ronald Tolentino, et al., v. Gillig, LLC*, pending in the Superior

Court of the State of California in and for the County of Alameda, Case No. RG20073930, to the

United States District Court for the Northern District of California pursuant to 28 U.S.C. §§

1331, 1441(c), and 1446.

      Removal is proper on the following ground: federal question jurisdiction under Section

301 of the Labor Management Relations Act of 1947 ("LMRA," 29 U.S.C. § 185, 28 U.S.C. §§

1331, 1441(c), and 1446, as discussed in detail below:

# I.

## CLAIMS AND PROCEDURAL HISTORY

1. On September 16, 2020, Plaintiff Ronald Tolentino ("Plaintiff"), individually and on behalf of all persons similarly situated, filed a complaint in the Superior Court of California, County of Alameda, Case No. RG20073930.

2. In the complaint, Plaintiff asserted the following causes of action: (1) minimum wage violations; (2) failure to pay overtime wages; (3) failure to provide lawful meal periods; (4) failure to provide lawful rest periods; (5) failure to timely pay final wages; (6) wage statement violations; and (7) unfair business practices.

3. The complaint did not expressly enumerate any claim under federal law and omitted that the terms and conditions of Plaintiff's employment was subject to a Collective Bargaining Agreement ("CBA").

4. Defendant filed its Answer to Plaintiff's complaint in Superior Court on October 21, 2020.

5. On October 22, 2020, Defendant removed this case to federal court on the basis of federal question jurisdiction under Section 301 of the Labor Management Relations Act of 1947 ("LMRA," 29 U.S.C. § 185, 28 U.S.C. §§ 1331, 1441(c), and 1446. (See Case No. 20-cv-07427 MMC.)

6. On December 4, 2020, Defendant filed a Motion to Dismiss on the grounds that Plaintiff's claims were preempted by Section 301 of the LMRA and thus must be grieved pursuant to the terms the applicable CBA. (Case No. 20-cv-07427 MMC, Document 21.)

7. On January 13, 2021, the United States District Court issued an Order Denying Plaintiff's Motion to Remand; Granting and Denying In Part Defendant's Motion to Dismiss; Remanding State Law Claims. (Case No. 20-cv-07427 MMC, Document 29.) The Court dismissed Plaintiff's overtime claim on the basis it was preempted by Section 301 and subject to the grievance procedures set forth in the CBA. As to Plaintiff's minimum wage claim, the Court denied dismissal on the basis that there was not an "active dispute" at that time over the meaning of any terms in the CBA relevant to Plaintiff's minimum wage claim. (Case No. 20-cv-07427

NOTICE OF REMOVAL, Case No.:

MMC, Document 29; 7:9-11.)  The Court then ordered the remaining claims remanded to state court.

8.      On March 11, 2021, Plaintiff filed a Second Amended Complaint in the Superior Court of California, County of Alameda, Case No. RG20073930 (the "Complaint").

9.      In the Complaint, Plaintiff asserts the following causes of action: (1) minimum wage violations; (2) failure to provide lawful meal periods; (3) failure to provide lawful rest periods; (4) failure to timely pay final wages; (5) wage statement violations; (6) unfair business practices; and (7) civil penalties under the Private Attorney's General Act ("PAGA").

10.     Again, the Complaint did not expressly enumerate any claim under federal law and omits that the terms and conditions of Plaintiff's employment was subject to a CBA.  True and correct copies of the Complaint in this case are filed concurrently herewith as Exhibit 34.

11.     Defendant filed its Answer to Plaintiff's Complaint in Superior Court on April 9, 2021, a copy of which is attached hereto as Exhibit 36.

12.     On March 28, 2023, Defendant filed a Motion for Judgment on the Pleadings and/or Motion *In Limine* to Exclude All Evidence Re: Plaintiff's Minimum Wage Claim for Alleged Overtime Hours Worked.  Defendant argued, among other things, that Plaintiff's minimum wage claim seeks recovery for alleged work performed before his regular starting time, which is defined as overtime under Section 4.5 of the CBA.  A copy of Defendant's motion is attached hereto as Exhibit 54.

13.     On April 19, 2023, Plaintiff filed his Opposition to Defendant Gillig, LLC's Motion for Judgment on the Pleadings and/or Motion *In Limine* to Exclude All Evidence Re: Plaintiff's Minimum Wage Claim for Alleged Overtime Hours Worked ("Opposition").  Plaintiff's Opposition argued for the first time that, among other things, based on his interpretation of the CBA, Section 4.5 of the CBA did not apply to his claim to seek recovery for alleged work performed before his regular starting time. A copy of Plaintiff's Opposition is attached hereto as Exhibit 57.

14.     On April 25, 2023, Defendant filed its Reply is support of Defendant's Motion for Judgment on the Pleadings and/or Motion *In Limine* to Exclude All Evidence Re: Plaintiff's

NOTICE OF REMOVAL, Case No.:

1 | Minimum Wage Claim for Alleged Overtime Hours Worked.  Defendant argued, among other
2 | things, that Plaintiff's minimum wage claim is preempted by Section 301 of the LMRA given
3 | there is now an "active dispute" over the meaning and application of Section 4.5 of the CBA as it
4 | pertains to his minimum wage claim. A copy of Defendant's reply is attached hereto as Exhibit
5 | 63.

6 |         15.    Venue is proper in the Court pursuant to 28 U.S.C. §§ 84(a) and 1391.

7 |                                          **II.**

8 |                              **TIMELINESS OF REMOVAL**

9 |         16.    Defendant was served with Plaintiff's Opposition on April 19, 2023.  This Notice
10 | of Removal is timely filed in that it has been filed within thirty (30) days after the receipt of the
11 | Opposition by Defendant, as required by 29 U.S.C. § 1446(b).

12 |                                          **III.**

13 |                                  **JURISDICTION**

14 |        **FEDERAL QUESTION BASED ON LMRA SECTION 301 PREEMPTION**

15 |        17.    This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be
16 | removed pursuant to the provisions of 28 U.S.C. § 1441(c), in that it is a civil action that presents
17 | a federal question.

18 |        18.    Federal question jurisdiction arises out of the fact that Plaintiff's minimum wage
19 | claim requires interpretation of the CBA and thus is preempted by federal law under the LMRA.
20 | 29 U.S.C. § 185.  Section 301 of the LMRA provides that: "[s]uits for violation of contracts
21 | between an employer and a labor organization representing employees in an industry affecting
22 | commerce…may be brought in a district court for the United States having jurisdiction of the
23 | parties without respect to the amount in controversy or without regard to the citizenship of the
24 | parties." 29 U.S.C. § 185(a).  To ensure uniform interpretations of CBAs, federal common law
25 | preempts the use of state contract law in collective bargaining agreement interpretation and
26 | enforcement.  *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).

27 |        19.    Further, all state law claims raised by a union-represented employee that require
28 | interpretation of a collective bargaining agreement must be brought pursuant to Section 301.

1    *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985). "The preemptive force of section 301

2    is so powerful that it displaces entirely any state cause of action for violation of a collective

3    bargaining agreement…any state claim whose outcome depends on analysis of the terms of the

4    agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see also*

5    *Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001)(noting the Section 301 is

6    one of "only two areas in which the Supreme Court has found that Congress intended completely

7    to replace state law with federal law for purposes of federal jurisdiction").

8    　　　　20.    Section 301 specifically has been held to preempt California state law claims that

9    are substantially dependent upon interpretation of a collective bargaining agreement. *Firestone*

10   *v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1066-1067; *see also Curtis v. Irwin Industries*, 913

11   F.3d 1146, 1152-1155 (9th Cir. 2019).  This is so even where interpretation was required to

12   evaluate the employer's defense to a plaintiff's state law causes of action.  *See Levy v. Skywalker*

13   *Sound*, 108 Cal.App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed]

14   entirely" on a claim that plaintiff was "entitled…to wages at the level set by the CBA").

15   **A.    Plaintiff's Employment Was Governed by a CBA**

16   　　　　21.    Plaintiff was an employee of Gillig during the period May 2002 to June 2020.

17   (Declaration of Marla Loar ("Loar Decl."), ¶ 3.)  The terms and conditions of Plaintiff's

18   employment are subject to a CBA between Gillig and Teamsters Local 853 (the "Union"). (*Id.*, ¶

19   4, Exhibit 1.)   Members of the proposed class are represented by either the Teamsters Local 853

20   or the Auto, Marine and Specialty Painters Local 1176 (collectively the "Unions") and their

21   employment is governed by separate CBAs between Gillig and both Unions, respectively.  (*Id.*, ¶

22   4.)  True and correct copies of the active CBAs in effect for proposed class members are attached

23   as Exhibits 1 and 2 to the concurrently-filed Loar Declaration.

24   　　　　22.    The Union is a labor organization within the meaning of Section 2(5) of the

25   NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

26   　　　　23.    Gillig is an employer within the meaning of the LMRA, 29 U.S.C. §§ 152(2).

27   　　　　24.    Section 1 of both CBAs specifically states that the Unions are the sole bargaining

28   agents for covered employees for the purposes of collective bargaining to establish rates of pay,

5

1   hours of work and other conditions of employment. (Loar Decl., ¶ 4, Exhibit 1, p. 3; Exhibit 2, p.

2   3.)

3           **B.  Plaintiff's Minimum Wage Claim is Preempted by the LMRA Because It**

4                **Requires Substantial Interpretation of the CBA**

5           25.    The Complaint omits the fact that Plaintiff was a member of the Union and

6   employed by Gillig through a CBA.  However, a plaintiff may not be permitted to "artfully

7   plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish*

8   *Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was

9   preempted even though operative complaint made no mention of a collective bargaining

10  agreement). The fact that Plaintiff made no specific reference to Section 301 in his Complaint

11  does not preclude removal. *See Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1406 (9th

12  Cir. 1991).  The Court may properly look beyond the face of the Complaint to determine whether

13  the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James*

14  *Financial Servs., Inc*., 340 F.3d 1033, 1041 (9th Cir. 2003).  Additionally, the Court may

15  properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff

16  presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v.*

17  *Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).

18          26.    An artfully pled state law claim is properly "recharacterized" as a federal claim

19  under the "complete preemption" doctrine, which provides that the preemptive force of Section

20  301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the

21  well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482

22  U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1,

23  23 (1983)("[I]f a federal cause of action completely preempts a state cause of action, any

24  complaint that comes within the scope of the federal cause of action necessarily 'arises' under

25  federal law.").

26          27.    The minimum wage claim asserted in Plaintiff's Complaint is "founded directly

27  on rights created by collective bargaining agreements" and/or are substantially dependent on an

28  analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957

F.2d 1506, 1509 (9th Cir. 1991); *see also Caterpillar Inc.*, 482 U.S. at 394. To analyze Plaintiff's claims, therefore, the Court will necessarily need to interpret the provisions of the relevant CBA.

### C. Resolution of Plaintiff's Minimum Wage Claim Will Require Substantial Interpretation of Section 4.5 of the Relevant CBA

28.     The Court cannot simply look to state law to resolve Plaintiff's artfully pled claim for breach of the CBA.  Therefore, Plaintiff's claim cannot be adjudicated without interpretation of the CBA provisions that govern his employment.  As to his minimum wage claim, Plaintiff concedes that "[t]he unpaid time at issue…occurred at the beginning of each shift, not at the end," and alleges that Defendant did not remunerate employees for work performed during "the time between the putative Class' clock-in times and scheduled start time." (Exhibit 57, Plaintiff's Opposition p. 4, line 13 and p. 5, lines 6-7.)

29.     Section 4.5 of the applicable CBA requires that "[w]ork performed <u>before the regular starting time</u>…<u>shall be paid</u> for at the rate of one and one-half (1 1/2) time the straight-time hourly rate." (Loar Decl., Exhibit 1, p. 5, Section 4.5) (emphasis added.)  The CBA also provides for a grievance process and requires binding arbitration to resolve any disputes arising under the CBA.  Resolution of Plaintiff's minimum wage claim will require the Court to interpret, at a minimum, Section 4.5 of the CBA.

30.     The CBA sets forth the parties' mutual agreement regarding all issues pertaining to employee wages, including rates of pay.  Plaintiff claims he is owed for worked he allegedly performed before his regular starting time.  The CBA expressly provides an overtime rate for "[w]ork performed before the regular starting time," including other enhanced overtime pay benefits for work performed on weekends and holidays.  (Loar Decl., ¶ 4, Exhibit 1, p. 5, Section 4.5.)  Indeed, the overtime pay benefits provided by the CBA is more favorable to Gillig employees than those provided for under California state law. (*See* Loar Decl., ¶ 4, Exhibit 1, p. 5; Exhibit 2, p. 6.)

31.     Additionally, the grievance and arbitration procedures set forth in the CBAs cover "any disputes or grievances which may arise concerning the application or enforcement of this Agreement." (Loar Decl., ¶ 4, Exhibit 1, p. 13-14; Exhibit 2, p. 12-13.)    Plaintiff's claim for

NOTICE OF REMOVAL, Case No.:

1    wages allegedly incurred before his regular starting time must be arbitrated as the relevant CBA

2    requires arbitration of claims as the exclusive remedy for any violations of the terms of the CBA,

3    including but not limited to minimum wage and overtime. (Loar Decl., ¶ 4, Exhibit 1, p. 13-14.)

4    The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption.

5    State court lawsuits properly removed on preemption grounds may then be deferred to

6    arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107,

7    142, fn. 18 (1994).  Here, the parties have so agreed, and the claim is therefore subject to

8    arbitration as discussed above. Accordingly, an alleged violation of the CBA is subject to the

9    grievance and arbitration procedures set forth therein.  As Plaintiff's minimum wage claim in

10   essence alleges a violation of the relevant CBA, the Court will necessarily have to interpret the

11   grievance and arbitration provisions to analyze Plaintiff's minimum wage claim in this case. In

12   other words, the Court will be required to determine whether Plaintiff was first required to

13   exhaust the grievance procedures, whether he did in fact exhaust those procedures, and whether

14   he agreed to arbitrate all or some of his claims—which are all questions reserved for federal

15   courts under the LMRA.

16          32.    Accordingly, Plaintiff's minimum wage claim is substantially dependent upon the

17   interpretation of Section 4.5 of the CBA. In fact, Section 4.5 governs the conduct that forms the

18   basis for Plaintiff's minimum wage claim, and thus is essential to the resolution of Plaintiff's

19   claim. Accordingly, Plaintiff's minimum wage claim arises under Section 301 of the LMRA, and

20   is therefore preempted by federal law.  Removal to federal court is warranted.

21                                          **IV.**

22                          **SUPPLEMENTAL JURISDICTION**

23          33.    The Court has supplemental jurisdiction over any of Plaintiff's remaining state

24   law claims to the extent they are not completely preempted by Section 301 or are not so

25   inextricably intertwined with or dependent on an interpretation of the CBAs, because they relate

26   to and emanate from the same employment relationship between Plaintiff and Defendant that is

27   the subject of the federal question claims.  All the pleaded claims thus emanate from and form

28   part of the same "case or controversy," such that they should all be tried in one action. *See*

8

1    *Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations

2    of convenience, judicial economy, and fairness to the litigants strongly favor this Court

3    exercising jurisdiction over all claims in the Complaint. *See Executive Software v. U.S. Dist.*

4    *Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). Accordingly, by virtue of 28 U.S.C. § 1441,

5    Defendant is entitled to remove all of Plaintiff's claims to this Court.

6    **V.**

7    **JOINDER**

8    34.    Defendant is not aware of any other defendant that exists and who has been

9    named in the Complaint or who has been served with the Complaint. *See* Exhibit 34.

10    **VI.**

11    **NOTICE TO PLAINTIFF**

12    35.    Upon filing of this Notice of Removal, Defendant will promptly give written

13    notice thereof to Plaintiff and will promptly file a copy of this Notice with the clerk of the

14    Superior Court of the State of California, County of Alameda.

15    36.    In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process,

16    pleadings, and orders" from the state court action served on Defendant or filed by Defendant are

17    attached hereto as Exhibits 1 through 63.

18    WHEREFORE, Defendant respectfully requests that the above-entitled action now

19    pending against it in the Superior Court of the State of California, County of Alameda, be

20    removed to this Court.

21

22    DATED:  April 27, 2023                          McMANIS FAULKNER

23

24                                                          /s/ Michael Warren
                                                            MICHAEL WARREN
25                                                          Attorneys for Defendant
                                                            GILLIG, LLC

26

27

28

9

NOTICE OF REMOVAL, Case No.:

EXHIBIT 1

CM-010

| | | |
|---|---|---|
| ATTORNEY OR PARTY (without attorney) (name, state bar number, and address): <br> Kane Moon (SBN 249834), Allen Feghali (SBN 301080) <br> MOON & YANG APC <br> 1055 W. 7th Street, Suite 1880 <br> Los Angeles, CA 90017 <br> TELEPHONE NO.: 213-232-3128   FAX NO.: 213-232-3125 <br> ATTORNEY FOR (name): Plaintiff: Ronald Tolentino | | FOR COURT USE ONLY <br><br> **FILED BY FAX** <br> **ALAMEDA COUNTY** <br> September 16, 2020 <br> CLERK OF <br> THE SUPERIOR COURT <br> By Nicole Hall, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Court House

CASE NUMBER:
**RG20073930**

CASE NAME:
Tolentino v. Gillig, LLC

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited   [ ] Limited <br> (Amount       (Amount <br> demanded     demanded is <br> exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management.
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action (specify): 7
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 09/16/2020
Kane Moon
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice—
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
(*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller
Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
(*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award
(*not unpaid taxes*)
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint
Case (*non-tort/non-complex*)
Other Civil Complaint
(*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

EXHIBIT 2

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RONALD TOLENTINO, individually, and on behalf of all others similarly situated,

**FILED BY FAX**
**ALAMEDA COUNTY**
**September 16, 2020**
**CLERK OF**
**THE SUPERIOR COURT**
**By Nicole Hall, Deputy**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* Alameda <br><br> 1225 Fallon Street <br> Oakland, CA 94612 | CASE NUMBER: <br> *(Número del Caso):* <br><br> **RG20073930** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kane Moon, MOON & YANG APC, 1055 W. 7th Street, Suite 1880, Los Angeles, CA 90017 (213) 232-3128

| DATE: <br> *(Fecha)* **September 16, 2020** | Clerk, by  *Nicole Hall* | , Deputy |
|---|---|---|
| | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# EXHIBIT 3

Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
E-mail: kane.moon@moonyanglaw.com
E-mail: allen.feghali@moonyanglaw.com

Attorneys for Plaintiff Ronald Tolentino

**FILED BY FAX**
ALAMEDA COUNTY

September 16, 2020

CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy

CASE NUMBER:
**RG20073930**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALEMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>    Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT:**<br><br>1. Failure to Pay Minimum and Regular Rate Wages [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197];<br>2. Failure to Pay Overtime Compensation [Cal. Lab. Code §§ 1194 and 1198];<br>3. Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512];<br>4. Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code §§ 226.7];<br>5. Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203];<br>6. Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]; and<br>7. Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.].<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

INTRODUCTION & PRELIMINARY STATEMENT ............................................................. 1

THE PARTIES ................................................................................................................... 3

     A.    Plaintiff ...................................................................................................... 3

     B.    Defendants .................................................................................................. 3

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION ............................................... 7

CLASS ACTION ALLEGATIONS ..................................................................................... 10

FIRST CAUSE OF ACTION .............................................................................................. 11

SECOND CAUSE OF ACTION ......................................................................................... 12

THIRD CAUSE OF ACTION ............................................................................................ 13

FOURTH CAUSE OF ACTION ......................................................................................... 14

FIFTH CAUSE OF ACTION ............................................................................................. 15

SIXTH CAUSE OF ACTION ............................................................................................. 19

SEVENTH CAUSE OF ACTION ....................................................................................... 21

PRAYER FOR RELIEF ..................................................................................................... 20

DEMAND FOR JURY TRIAL ........................................................................................... 24

CLASS ACTION COMPLAINT

Plaintiff Roland Tolentino ("Plaintiff"), based upon facts that either have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, alleges as follows:

### INTRODUCTION & PRELIMINARY STATEMENT

1.    Plaintiff brings this action against Defendants Gillig, LLC, and Does 1 through 10 (collectively referred to as "Defendants") for California Labor Code violations and unfair business practices stemming from Defendants' failure to pay minimum and regular rate wages, failure to pay overtime wages, failure to provide meal periods, failure to authorize and permit rest periods, failure to maintain accurate records of hours worked and meal periods, failure to timely pay all wages to terminated employees, and failure to furnish accurate wage statements.

2.    Plaintiff brings the First through Seventh Causes of Action individually and as a class action on behalf of herself and certain current and former employees of Defendants (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully below).The Class consists of Plaintiff and all other persons who have been employed by any Defendant in California and classified as a non-exempt employee during the statute of limitations period applicable to the claims pleaded here.

3.    Defendants own/owned and operate/operated an industry, business, and establishment within the State of California, including Alameda County. As such, and based upon all the facts and circumstances incident to Defendants' business in California, Defendants are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare Commission ("IWC"), and the California Business & Professions Code.

4.    Despite these requirements, throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of:

      (a)    Failing to pay employees for all hours worked, including all minimum wages, overtime wages, in compliance with the California Labor Code and IWC Wage Orders;

      (b)    Failing to maintain accurate records of the hours employees worked;

      (c)   Failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal period violation occurred;

      (d)   Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failing to pay an additional hour's pay for each workday a rest period violation occurred;

      (e)   Willfully failing to pay employees all minimum wages, overtime wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates; and

      (f)   Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

5. On information and belief, Defendants, and each of them were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

6. At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff and the Class. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior".

CLASS ACTION COMPLAINT

1                                    **THE PARTIES**

2        **A.    Plaintiff**

3        7.  Plaintiff is a California resident who worked for Defendants in Alameda County,

4    California as a maintenance worker from approximately May 2002 to June 2020.

5        8.  Plaintiff reserves the right to seek leave to amend this complaint to add new plaintiffs,

6    if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American*

7    *Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

8        **B.    Defendants**

9        9.  Plaintiff is informed and believes, and based upon that information and belief

10   alleges, that Defendant Gillig, LLC is:

11               (a)    A California limited partnership with its principal place of business in

12                      Alameda, California.

13               (b)    A business entity conducting business in numerous counties throughout the

14                      State of California, including in Alameda County; and

15               (c)    The former employer of Plaintiff, and the current and/or former employer

16                      of the putative Class. Gillig, LLC suffered and permitted Plaintiff and the

17                      Class to work, and/or controlled their wages, hours, or working conditions.

18       10.    Plaintiff does not know the true names or capacities of the persons or entities sued

19   herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names.

20   Each of the Doe Defendants was in some manner legally responsible for the damages suffered by

21   Plaintiff and the Class as alleged herein.  Plaintiff will amend this complaint to set forth the true

22   names and capacities of these Defendants when they have been ascertained, together with

23   appropriate charging allegations, as may be necessary.

24       11.    At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and

25   each of them, were residents of, doing business in, availed themselves of the jurisdiction of,

26   and/or injured a significant number of the Plaintiff and the Class in the State of California.

27       12.    Plaintiff is informed and believes and thereon alleges that at all relevant times

28   each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and

                                          3
                              CLASS ACTION COMPLAINT

1    the other employees described in the class definitions below, and exercised control over their

2    wages, hours, and working conditions. Plaintiff is informed and believes and thereon alleges

3    that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer,

4    director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest

5    and/or predecessor in interest of some or all of the other Defendants, and was engaged with some

6    or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to

7    some or all of the other Defendants so as to be liable for their conduct with respect to the matters

8    alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted

9    pursuant to and within the scope of the relationships alleged above, that each Defendant knew or

10    should have known about, and authorized, ratified, adopted, approved, controlled, aided and

11    abetted the conduct of all other Defendants.

12    **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

13    13.    Plaintiff Roland Tolentino worked for Defendants in Alameda County, California

14    as a maintenance worker. At all times Defendants classified Plaintiff as non-exempt from

15    California's overtime requirements. During the statutory time period, Plaintiff was typically

16    scheduled to work 5 days in a workweek, and typically in excess of 8 hours in a single workday.

17    14.    Throughout the statutory period, Defendants failed to pay Plaintiff for all hours

18    worked (including minimum wages and overtime compensation), failed to provide Plaintiff with

19    uninterrupted meal periods, failed to authorize and permit Plaintiff to take uninterrupted rest

20    periods, failed to maintain accurate records of the hours Plaintiff worked, failed to timely pay all

21    final wages to Plaintiff when Defendants terminated Plaintiff's employment, and failed to furnish

22    accurate wage statements to Plaintiff. As discussed below, Plaintiff's experience working for

23    Defendants was typical and illustrative.

24    15.    Throughout the statutory period, Defendants maintained a policy and practice of

25    not paying Plaintiff and the Class for all hours worked, including all overtime wages. Defendants

26    regularly use a system of time rounding in a manner that resulted, over a period of time, in failing

27    to compensate Plaintiff and the Class properly for all the time they have actually worked, even

28    though the realities of Defendants' operations are such that it is possible, practical, and feasible

4

1  to count and pay for work time to the minute. As a result, Defendants frequently paid Plaintiff

2  and the Class less than all their work time, some of which should have been paid at the overtime

3  rate. As a further result, Defendants failed to maintain accurate records of the hours Plaintiff and

4  the Class worked.

5       16.    Throughout the statutory period, Defendants have wrongfully failed to provide

6  Plaintiff and the Class with legally compliant meal periods. Defendants regularly, but not

7  always, required Plaintiff and the Class to work in excess of five consecutive hours a day without

8  providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours

9  of work, or without compensating Plaintiff and the Class for meal periods that were not provided

10  by the end of the fifth hour of work or tenth hour of work. Defendants did not adequately inform

11  Plaintiff and the Class of their right to take a meal period by the end of the fifth hour of work, or,

12  for shifts greater than 10 hours, by the end of the tenth hour of work. Defendants also did not

13  have adequate policies or practices to document and verify whether Plaintiff and the Class were

14  taking their required meal periods. Accordingly, Defendants' policy and practice was to not

15  provide meal periods to Plaintiff and the Class in compliance with California law.

16       17.    Throughout the statutory period, Defendants have wrongfully failed to authorize

17  and permit Plaintiff and the Class to take timely and duty-free rest periods. Defendants regularly,

18  but not always, required Plaintiff and the Class to work in excess of four consecutive hours a day

19  without Defendants authorizing and permitting them to take a 10-minute, continuous and

20  uninterrupted, rest period for every four hours of work (or major fraction of four hours), or

21  without compensating Plaintiff and the Class for rest periods that were not authorized or

22  permitted. Accordingly, Defendants' policy and practice was to not authorize and permit

23  Plaintiff and the Class to take rest periods in compliance with California law.

24       18.    Throughout the statutory period, Defendants willfully failed and refused to timely

25  pay Plaintiff and the Class at the conclusion of their employment all wages, including overtime

26  wages, meal period premium wages, and rest period premium wages.

27       19.    Throughout the statutory period, Defendants failed to furnish Plaintiff and the

28  Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross

5

CLASS ACTION COMPLAINT

1   and net wages earned (including correct hours worked, correct wages earned for hours worked,

2   correct overtime hours worked, correct wages for meal periods that were not provided in

3   accordance with California law, and correct wages for rest periods that were not authorized and

4   permitted to take in accordance with California law). As a result of these violations of California

5   Labor Code § 226(a), Plaintiff and the Class suffered injury because, among other things:

6        (a)   the violations led them to believe that they were not entitled to be paid

7               minimum wages, overtime wages, meal period premium wages, and rest

8               period premium wages to which they were entitled, even though they were

9               entitled;

10        (b)   the violations led them to believe that they had been paid the minimum,

11               overtime, meal period premium, and rest period premium wages to which

12               they were entitled, even though they had not been;

13        (c)   the violations led them to believe they were not entitled to be paid

14               minimum, overtime, meal period premium, and rest period premium wages

15               at the correct California rate even though they were;

16        (d)   the violations led them to believe they had been paid minimum, overtime,

17               meal period premium, and rest period premium wages at the correct

18               California rate even though they had not been;

19        (e)   the violations hindered them from determining the amounts of minimum,

20               overtime, meal period  premium, and rest period premium owed to them;

21        (f)   in connection with their employment before and during this action, and in

22               connection with prosecuting this action, the violations caused them to have

23               to perform mathematical computations to determine the amounts of wages

24               owed to them, computations they would not have to make if the wage

25               statements contained the required accurate information;

26        (g)   by understating the wages truly due them, the violations caused them to

27               lose entitlement and/or accrual of the full amount of Social Security,

28               disability, unemployment, and other governmental benefits;

  (h)  the wage statements inaccurately understated the wages, hours, and wage rates to which Plaintiff and the Class were entitled, and Plaintiff and the Class were paid less than the wages and wage rates to which they were entitled.

Thus, Plaintiff and the Class are owed the amounts provided for in California Labor Code § 226(e).

## CLASS ACTION ALLEGATIONS

20.  Plaintiff brings certain claims individually, as well as on behalf of each and all other persons similarly situated, and thus, seeks class certification under California Code of Civil Procedure § 382.

21.  All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

22.  The proposed Class consists of and is defined as:

> All persons who worked for any Defendants in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent.

23. At all material times, Plaintiff was a member of the Class.

24. Plaintiff undertakes this concerted activity to improve the wages and working conditions of all Class Members.

25. There is a well-defined community of interest in the litigation and the Class is readily ascertainable:

  (a)  <u>Numerosity</u>: The members of the Class (and each subclass, if any) are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time, however, the Class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

  (b)  <u>Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect

7

CLASS ACTION COMPLAINT

1          the interests of each Class Member with whom there is a shared, well-

2          defined community of interest, and Plaintiff's claims (or defenses, if any)

3          are typical of all Class Members' claims as demonstrated herein.

4     (c)    Adequacy:  Plaintiff is qualified to, and will, fairly and adequately protect

5          the interests of each Class Member with whom there is a shared, well-

6          defined community of interest and typicality of claims, as demonstrated

7          herein.  Plaintiff has no conflicts with or interests antagonistic to any Class

8          Member.  Plaintiff's attorneys, the proposed class counsel, are versed in

9          the rules governing class action discovery, certification, and settlement.

10         Plaintiff has incurred, and throughout the duration of this action, will

11         continue to incur costs and attorneys' fees that have been, are, and will be

12         necessarily expended for the prosecution of this action for the substantial

13         benefit of each class member.

14    (d)    Superiority:  A Class Action is superior to other available methods for the

15         fair and efficient adjudication of the controversy, including consideration

16         of:

17         1)    The interests of the members of the Class in individually

18              controlling the prosecution or defense of separate actions;

19         2)    The extent and nature of any litigation concerning the controversy

20              already commenced by or against members of the Class;

21         3)    The desirability or undesirability of concentrating the litigation of

22              the claims in the particular forum; and

23         4)    The difficulties likely to be encountered in the management of a

24              class action.

25    (e)    Public Policy Considerations:  The public policy of the State of California

26         is to resolve the California Labor Code claims of many employees through

27         a class action.  Indeed, current employees are often afraid to assert their

28         rights out of fear of direct or indirect retaliation.  Former employees are

8

CLASS ACTION COMPLAINT

1   also fearful of bringing actions because they believe their former

2   employers might damage their future endeavors through negative

3   references and/or other means.  Class actions provide the class members

4   who are not named in the complaint with a type of anonymity that allows

5   for the vindication of their rights at the same time as their privacy is

6   protected.

7   26. There are common questions of law and fact as to the Class (and each subclass, if any)

8   that predominate over questions affecting only individual members, including without limitation,

9   whether, as alleged herein, Defendants have:

10  (a)   Failed to pay Class Members for all hours worked, including minimum

11  wages, and overtime  wages;

12  (b)   Failed to provide meal periods and pay meal period premium wages to

13  Class Members;

14  (c)   Failed to authorize and permit rest periods and pay rest period  premium

15  wages to Class Members;

16  (d)   Failed to promptly pay all wages due to Class Members upon their

17  discharge or resignation;

18  (e)   Failed to provide Class Members with accurate wages statements;

19  (f)   Failed to maintain accurate records of all hours Class Members worked,

20  and all meal periods Class Members took or missed; and

21  (g)   Violated California Business & Professions Code §§ 17200 *et. seq.* as a

22  result of their illegal conduct as described above.

23  27. This Court should permit this action to be maintained as a class action pursuant to

24  California Code of Civil Procedure § 382 because:

25  (a)   The questions of law and fact common to the Class predominate over any

26  question affecting only individual members;

27  (b)   A class action is superior to any other available method for the fair and

28  efficient adjudication of the claims of the members of the Class;

9

CLASS ACTION COMPLAINT

(c)    The members of the Class are so numerous that it is impractical to bring all members of the class before the Court;

(d)    Plaintiff, and the other members of the Class, will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

(e)    There is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

(f)    Without class certification, the prosecution of separate actions by individual members of the class would create a risk of:

    1)    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and/or

    2)    Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but not limited to the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants; and,

(g)    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the class as a whole.

28. Plaintiff contemplates the eventual issuance of notice to the proposed members of the Class that would set forth the subject and nature of the instant action. The Defendants' own business records may be utilized for assistance in the preparation and issuance of the contemplated notices. To the extent that any further notices may be required, Plaintiff would

1  contemplate the use of additional techniques and forms commonly used in class actions, such as

2  published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by

3  other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

4                                    **FIRST CAUSE OF ACTION**

5      **(Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked)**

6          29.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

7  paragraphs 1 through 19 in this Complaint.

8          30.    "Hours worked" is the time during which an employee is subject to the control of

9  an employer, and includes all the time the employee is suffered or permitted to work, whether or

10  not required to do so.

11         31.    At all relevant times herein mentioned, Defendants knowingly failed to pay to

12  Plaintiff and the Class compensation for all hours they worked.  By their failure to pay

13  compensation for each hour worked as alleged above, Defendants willfully violated the

14  provisions of Section 1194 of the California Labor Code, and any additional applicable Wage

15  Orders, which require such compensation to non-exempt employees.

16         32.    Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all

17  non-overtime hours worked for Defendants.

18         33.    By and through the conduct described above, Plaintiff and the Class have been

19  deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

20         34.    By virtue of the Defendants' unlawful failure to pay additional compensation to

21  Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class

22  suffered, and will continue to suffer, damages in amounts which are presently unknown to

23  Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which

24  will be ascertained according to proof at trial.

25         35.    By failing to keep adequate time records required by California Labor Code §

26  1174(d), Defendants have made it difficult to calculate the full extent of minimum wage

27  compensation due Plaintiff and the Class.

28

36. Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum wages.

37. California Labor Code section 204 requires employers to provide employees with all wages due and payable twice a month. Throughout the statute of limitations period applicable to this cause of action, Plaintiff and the Class were entitled to be paid twice a month at rates required by law, including minimum wages. However, during all such times, Defendants systematically failed and refused to pay Plaintiff and the Class all such wages due, and failed to pay those wages twice a month.

38. Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 218.6, and 1194(a).

## SECOND CAUSE OF ACTION

### (Against all Defendants for Failure to Pay Overtime Wages)

39. Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 19 in this Complaint.

40. California Labor Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

41. California Labor Code §§ 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, California Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

42. At all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday, as employees of Defendants.

43. At all times relevant hereto, Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours

12

CLASS ACTION COMPLAINT

1  permissible by law as required by California Labor Code § 510 and 1198. Plaintiff and the Class

2  are regularly required to work overtime hours.

3      44.    By virtue of Defendants' unlawful failure to pay additional premium rate

4  compensation to the Plaintiff and the Class for their overtime hours worked, Plaintiff and the

5  Class have suffered, and will continue to suffer, damages in amounts which are presently

6  unknown to them but which exceed the jurisdictional minimum of this Court and which will be

7  ascertained according to proof at trial.

8      45.    By failing to keep adequate time records required by Labor Code § 1174(d),

9  Defendants have made it difficult to calculate the full extent of overtime compensation due to

10  Plaintiff and the Class.

11      46.    Plaintiff and the Class also request recovery of overtime compensation according

12  to proof, interest, attorneys' fees and costs pursuant to California Labor Code § 1194(a), as well

13  as the assessment of any statutory penalties against Defendants, in a sum as provided by the

14  California Labor Code and/or other statutes.

15      47.    California Labor Code § 204 requires employers to provide employees with all

16  wages due and payable twice a month. The Wage Orders also provide that every employer shall

17  pay to each employee, on the established payday for the period involved, overtime wages for all

18  overtime hours worked in the payroll period. Defendants failed to provide Plaintiff and the Class

19  with all compensation due, in violation of California Labor Code § 204.

20                        **THIRD CAUSE OF ACTION**

21              **(Against All Defendants for Failure to Provide Meal Periods)**

22      48.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

23  paragraphs 1 through 19 in this Complaint.

24      49.    Under California law, Defendants have an affirmative obligation to relieve the

25  Plaintiff and the Class of all duty in order to take their first daily meal periods no later than the

26  start of Plaintiff and the Class` sixth hour of work in a workday, and to take their second meal

27  periods no later than the start of the eleventh hour of work in the workday. Section 512 of the

28  California Labor Code, and Section 11 of the applicable Wage Orders require that an employer

CLASS ACTION COMPLAINT

1   provide unpaid meal periods of at least 30 minutes for each five-hour period worked.  It is a

2   violation of Section 226.7 of the California Labor Code for an employer to require any employee

3   to work during any meal period mandated under any Wage Order.

4          50.    Despite these legal requirements, Defendants regularly failed to provide Plaintiff

5   and the Class with both meal periods as required by California law.  By their failure to permit

6   and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact

7   that Defendants made it impossible or impracticable to take these uninterrupted meal periods),

8   Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and

9   the applicable Wage Orders.

10         51.    Under California law, Plaintiff and the Class are entitled to be paid one hour of

11  additional wages for each workday he or she was not provided with all required meal period(s),

12  plus interest thereon.

13                            **FOURTH CAUSE OF ACTION**

14          **(Against All Defendants for Failure to Authorize and Permit Rest Periods)**

15         52.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

16  paragraphs 1 through 19 in this Complaint.

17         53.    Defendants are required by California law to authorize and permit breaks of 10

18  uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than

19  two hours).  Section 512 of the California Labor Code, the applicable Wage Orders require that

20  the employer permit and authorize all employees to take paid rest periods of 10 minutes each for

21  each 4-hour period worked.  Thus, for example, if an employee's work time is 6 hours and ten

22  minutes, the employee is entitled to two rest breaks.  Each failure to authorize rest breaks as so

23  required is itself a violation of California's rest break laws.  It is a violation of Section 226.7 of

24  the California Labor Code for an employer to require any employee to work during any rest

25  period mandated under any Wage Order.

26         54.    Despite these legal requirements, Defendants failed to authorize Plaintiff and the

27  Class to take rest breaks, regardless of whether employees worked more than 4 hours in a

28  workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as

                                            14
                               CLASS ACTION COMPLAINT

1    alleged above (or due to the fact that Defendants made it impossible or impracticable to take

2    these uninterrupted rest periods), Defendants willfully violated the provisions of Section 226.7 of

3    the California Labor Code and the applicable Wage Orders.

4         55.    Under California law, Plaintiff and the Class are entitled to be paid one hour of

5    premium wages rate for each workday he or she was not provided with all required rest break(s),

6    plus interest thereon.

7    <div align="center">**FIFTH CAUSE OF ACTION**</div>

8    **(Against all Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time**

9    <div align="center">**Penalties)**</div>

10         56.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

11    paragraphs 1 through 19 in this Complaint.

12         57.    At all times herein set forth, California Labor Code §§ 201 and 202 provide that if

13    an employer discharges an employee, the wages earned and unpaid at the time of discharge are

14    due and payable immediately, and that if an employee voluntarily leaves his or her employment,

15    his or her wages shall become due and payable not later than seventy-two (72) hours thereafter,

16    unless the employee has given seventy-two (72) hours previous notice of his or her intention to

17    quit, in which case the employee is entitled to his or her wages at the time of quitting.

18         58.    Within the applicable statute of limitations, the employment of Plaintiff and many

19    other members of the Class ended, i.e. was terminated by quitting or discharge, and the

20    employment of others will be.  However, during the relevant time period, Defendants failed, and

21    continue to fail to pay terminated Class Members, without abatement, all wages required to be

22    paid by California Labor Code sections 201 and 202 either at the time of discharge, or within

23    seventy-two (72) hours of their leaving Defendants' employ.

24         59.    Defendants' failure to pay Plaintiff and those Class members who are no longer

25    employed by Defendants their wages earned and unpaid at the time of discharge, or within

26    seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor

27    Code §§ 201 and 202.

28

<div align="center">15</div>
<div align="center">CLASS ACTION COMPLAINT</div>

60.     California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

61.     Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203.

62.     Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs incurred in this action.

## SIXTH CAUSE OF ACTION

### (Against all Defendants for Failure to Provide and Maintain Accurate and Compliant Wage Records)

63.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 19 in this Complaint.

64.     At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

65.     Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the

16

CLASS ACTION COMPLAINT

1    failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list

2    the true "total hours worked by the employee," and the failure to list the true net wages earned.

3          66.     As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff

4    and the Class have suffered injury and damage to their statutorily-protected rights.

5          67.     Specifically, Plaintiff and the members of the Class have been injured by

6    Defendants' intentional violation of California Labor Code § 226(a) because they were denied

7    both their legal right to receive, and their protected interest in receiving, accurate, itemized wage

8    statements under California Labor Code § 226(a).

9          68.     Calculation of the true wage entitlement for Plaintiff and the Class is difficult and

10    time consuming. As a result of this unlawful burden, Plaintiff and the Class were also injured as

11    a result of having to bring this action to attempt to obtain correct wage information following

12    Defendants' refusal to comply with many of the mandates of California's Labor Code and related

13    laws and regulations.

14          69.     Plaintiff and the Class are entitled to recover from Defendants the greater of their

15    actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or

16    an aggregate penalty not exceeding four thousand dollars per employee.

17          70.     Plaintiff and the Class are also entitled to injunctive relief, as well as an award of

18    attorney's fees and costs to ensure compliance with this section, pursuant to California Labor

19    Code § 226(h).

20                             **SEVENTH CAUSE OF ACTION**

21    **(Against all Defendants for Violation of California Business & Professions Code §§ 17200,**

22                                        **et seq.)**

23          71.     Plaintiff incorporates by reference and re-alleges as if fully stated herein

24    paragraphs 1 through 19 in this Complaint.

25          72.     Defendants, and each of them, are "persons" as defined under California Business

26    & Professions Code § 17201.

27          73.     Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

28    unlawful, and harmful to Plaintiff, other Class members, and to the general public. Plaintiff seek

1  to enforce important rights affecting the public interest within the meaning of Code of Civil
2  Procedure § 1021.5.

3      74.    Defendants' activities, as alleged herein, are violations of California law, and
4  constitute unlawful business acts and practices in violation of California Business & Professions
5  Code §§ 17200, *et seq.*

6      75.    A violation of California Business & Professions Code §§ 17200, *et seq.* may be
7  predicated on the violation of any state or federal law. All of the acts described herein as
8  violations of, among other things, the California Labor Code, are unlawful and in violation of
9  public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous,
10  and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of
11  California Business &Professions Code §§ 17200, *et seq.*

12                      **Failure to Pay Minimum Wages**

13      76. Defendants' failure to pay minimum wages, and other benefits in violation of the
14  California Labor Code constitutes unlawful and/or unfair activity prohibited by California
15  Business & Professions Code §§ 17200, *et seq.*

16                      **Failure to Pay Overtime Wages**

17      77. Defendants' failure to pay overtime compensation and other benefits in violation of
18  California Labor Code §§ 510, 1194, and 1198constitutes unlawful and/or unfair activity
19  prohibited by California Business & Professions Code §§ 17200, *et seq.*

20          **Failure to Maintain Accurate Records of All Hours Worked**

21      78. Defendants' failure to maintain accurate records of all hours worked in accordance
22  with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or
23  unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

24                      **Failure to Provide Meal Periods**

25      79. Defendants' failure to provide meal periods in accordance with California Labor Code
26  §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or
27  unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

28

                              18
                    CLASS ACTION COMPLAINT

**Failure to Maintain Accurate Records of Meal Periods**

80. Defendants' failure to maintain accurate records of employee meal periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

**Failure to Authorize and Permit Rest Periods**

81. Defendants' failure to authorize and permit rest periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq.*

**Failure to Provide Accurate Itemized Wage Statements**

82.    Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions  Code §§ 17200, *et seq.*

83.    By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

84.    Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

85.    Plaintiff, individually, and on behalf of members of the putative Class, are entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices.  Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

86.    Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them,

19

CLASS ACTION COMPLAINT

1  from engaging in any of the above-described unfair, unlawful and/or fraudulent business
2  practices in the future.

3      87.    Plaintiff, individually, and on behalf of members of the putative class, have no
4  plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members
5  suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business
6  practices. As a result of the unfair, unlawful and/or fraudulent business practices described
7  above, Plaintiff, individually, and on behalf of members of the putative Class, suffered and will
8  continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from
9  continuing to engage in said unfair, unlawful and/or fraudulent business practices.

10      88.    Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth
11  herein above, they will continue to avoid paying the appropriate taxes, insurance and other
12  withholdings.

13      89.    Pursuant to California Business & Professions Code §§ 17200, *et seq.*, Plaintiff
14  and putative Class Members are entitled to restitution of the wages withheld and retained by
15  Defendants during a period that commences four years prior to the filing of this complaint; a
16  permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and
17  Class Members; an award of attorneys' fees pursuant to California Code of Civil Procedure §
18  1021.5 and other applicable laws; and an award of costs.

19                                **PRAYER FOR RELIEF**

20      Plaintiff, individually, and on behalf of all others similarly situated only with respect to
21  the class claims, pray for relief and judgment against Defendants, jointly and severally, as
22  follows:

23                                Class  Certification

24      1.    That this action be certified as a class action with respect to the First, Second,
25  Third, Fourth, Fifth, Sixth, and Eighth Causes of Action;

26      2.  That Plaintiff be appointed as the representative of the Class; and

27      3.  That counsel for Plaintiff be appointed as Class Counsel.

28

1              <u>As to the First Cause of Action</u>

2              4.  That the Court declare, adjudge and decree that Defendants violated California Labor

3    Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum

4    wages due;

5              5.  For general unpaid wages as may be appropriate;

6              6.  For pre-judgment interest on any unpaid compensation commencing from the date

7    such amounts were due;

8              7.  For liquidated damages;

9              8.  For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

10   California Labor Code § 1194(a); and,

11             9.  For such other and further relief as the Court may deem equitable and appropriate.

12             <u>As to the Second Cause of Action</u>

13             10. That the Court declare, adjudge and decree that Defendants violated California Labor

14   Code §§ 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime

15   wages due;

16             11. For general unpaid wages at overtime wage rates as may be appropriate;

17             12. For pre-judgment interest on any unpaid overtime compensation commencing from

18   the date such amounts were due;

19             13. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

20   California Labor Code § 1194(a); and,

21             14. For such other and further relief as the Court may deem equitable and appropriate.

22             <u>As to the Third Cause of Action</u>

23             15. That the Court declare, adjudge and decree that Defendants violated California Labor

24   Code §§ 226.7 and 512, and the IWC Wage Orders;

25             16. For unpaid meal period premium wages as may be appropriate;

26             17. For pre-judgment interest on any unpaid compensation commencing from the date

27   such amounts were due;

28

1    18. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

2    for costs of suit incurred herein; and

3    19. For such other and further relief as the Court may deem equitable and appropriate.

4    As to the Fourth Cause of Action

5    20. That the Court declare, adjudge and decree that Defendants violated California Labor

6    Code §§ 226.7 and 512, and the IWC Wage Orders;

7    21. For unpaid rest period premium wages as may be appropriate;

8    22. For pre-judgment interest on any unpaid compensation commencing from the date

9    such amounts were due;

10    23. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

11    for costs of suit incurred herein; and

12    24. For such other and further relief as the Court may deem equitable and appropriate.

13    As to the Fifth Cause of Action

14    25. That the Court declare, adjudge and decree that Defendants violated California Labor

15    Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of

16    termination of the employment;

17    26. For statutory wage penalties pursuant to California Labor Code § 203 for former

18    employees who have left Defendants' employ;

19    27. For pre-judgment interest on any unpaid wages from the date such amounts were due;

20    28. For reasonable attorneys' fees and for costs of suit incurred herein; and

21    29. For such other and further relief as the Court may deem equitable and appropriate.

22    As to the Sixth Cause of Action

23    30. That the Court declare, adjudge and decree that Defendants violated the record

24    keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and

25    willfully failed to provide accurate itemized wage statements thereto;

26    31. For statutory penalties and actual damages pursuant to California Labor Code §

27    226(e);

28

1    32. For injunctive relief to ensure compliance with this section, pursuant to California

2    Labor Code § 226(h);

3    33. For reasonable attorneys' fees and for costs of suit incurred herein; and

4    34. For such other and further relief as the Court may deem equitable and appropriate.

5    <u>As to the Seventh Cause of Action</u>

6    35. That the Court declare, adjudge and decree that Defendants violated California

7    Business & Professions Code §§ 17200, *et seq.* by failing to pay wages for all hours worked

8    (including minimum and overtime wages), failing to provide meal periods, failing to maintain

9    accurate records of meal periods, failing to authorize and permit rest periods, failing to maintain

10    accurate records of all hours worked and meal periods, and failing to furnish accurate wage

11    statements;

12    36. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment

13    interest from the day such amounts were due and payable;

14    37. For the appointment of a receiver to receive, manage and distribute any and all funds

15    disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a

16    result of violations of California Business & Professions Code §§ 17200 *et seq.*;

17    38. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California

18    Code of Civil Procedure § 1021.5;

19    39. For injunctive relief to ensure compliance with this section, pursuant to California

20    Business & Professions Code §§ 17200, *et seq.*; and,

21    40. For such other and further relief as the Court may deem equitable and appropriate.

22    <u>As to all Causes of Action</u>

23    41. For any additional relief that the Court deems just and proper.

24

25

26

27

28

<div align="center">23</div>
<div align="center">CLASS ACTION COMPLAINT</div>

Dated: September 16, 2020                    Respectfully submitted,

                                             MOON & YANG, APC

                                    By: _____
                                             Kane Moon
                                             Allen Feghali
                                             Attorneys for Plaintiff


## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all causes of action triable by jury.

Dated: September 16, 2020                    MOON & YANG, APC

                                    By: _____
                                             Kane Moon
                                             Allen Feghali
                                             Attorneys for Plaintiff

---
24
CLASS ACTION COMPLAINT

# EXHIBIT 4

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Enzo Nabiev (SBN 332118
   **MOON & YANG, APC**
3  1055 W. Seventh St., Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  E-mail: kane.moon@moonyanglaw.com
   E-mail: allen.feghali@moonyanglaw.com
6  E-mail: enzo.nabiev@moonyanglaw.com

7  Attorneys for Plaintiff Ronald Tolentino

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                     **FOR THE COUNTY OF ALEMEDA**

11  RONALD TOLENTINO, individually, and on          Case No.: RG20073930
    behalf of all others similarly situated,
12                                                   **NOTICE OF HEARINGS**
13               Plaintiff,
                                                     Complex Determination Hearing
14       vs.                                         Date:   October 27, 2020
                                                     Time:   3:00 p.m.
15                                                   Dept.:  23

16  GILLIG, LLC, a limited liability company; and   Case Management Conference
    DOES 1 through 10, inclusive,                    Date:   December 2, 2020
17                                                   Time:   9:00 a.m.
                 Defendants                          Dept.:  23
18

19

20

21

22

23

24

25

26

27

28

FILED BY FAX
ALAMEDA COUNTY
September 29, 2020
CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy
CASE NUMBER:
RG20073930

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

2        PLEASE TAKE NOTICE the Court has set hearings in Department 23 at Superior Court

3    of California, County of Alameda, Administration Building located at 1221 Oak Street, Fourth

4    Floor, Oakland, CA 94612. A true and correct copy of the order is attached hereto as "Exhibit

5    A."

6    Dated: September 28, 2020                    Respectfully submitted,
                                                    MOON & YANG, APC
7

8                                         By:

9                                              Kane Moon
                                               Allen Feghali
10                                             Enzo Nabiev
                                               Attorneys for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Moon & Yang APC                          Gillig, LLC
Attn: Moon, Kane
1055 W 7th St.
#1880
Los Angeles, CA  90017

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino<br><br>Plaintiff/Petitioner(s)<br>VS. | No. RG20073930 |
| Gillig, LLC<br><br>Defendant/Respondent(s)<br>(Abbreviated Title) | NOTICE OF HEARING |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 10/27/2020    TIME: 03:00 PM    DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
           1221 Oak Street, Oakland

Case Management Conference:
DATE: 12/02/2020    TIME: 09:00 AM    DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
           1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939. Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions. Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For further information, go to **Direct Calendar Departments** at

http://apps.alameda.courts.ca.gov/domainweb.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated: 09/21/2020                              Chad Finke  Executive Officer / Clerk of the Superior Court

                                        By

                                                                                      Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

            Executed on 09/22/2020.

                                        By

                                                                                      Deputy Clerk

1

## PROOF OF SERVICE

2  STATE OF CALIFORNIA        )
3                            ) ss
   COUNTY OF LOS ANGELES      )

4

5      I am employed in the county of Los Angeles, State of California. I am over the age of 18
   and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880,
6  Los Angeles, California 90017. On September 29, 2020, I served the foregoing document
   described as:

7

## NOTICE OF HEARINGS

8

   X    by placing ___ the original  X  a true copy thereof enclosed in sealed envelope(s)
9  addressed as follows:

10

                        Universal Registered Agents, Inc.
11                          2020 Hurley Way, Suite 350
                             Sacramento, CA 95825
12           *Agent for Service of Process for Defendant Gillig, LLC*

13  [X]  **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The
         envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with
14       the firm's practice of collection and processing correspondence for mailing. Under that
         practice it would be deposited with U.S. postal service on that same day with postage
15       thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am
         aware that on motion of the party served, service is presumed invalid if postal
16       cancellation date or postage meter date is more than one day after date of deposit for
17       mailing in affidavit.

18  [ ]  **BY PERSONAL DELIVERY:** I delivered said document(s) to the office of the
         addressee shown above under whom it says delivered by personal delivery.
19

20   X   (State)      I declare under penalty of perjury under the laws of the State of
                      California that the above is true and correct.
21

     Executed on September 29, 2020 at Los Angeles, California.
22

23

24   Ivette Hernandez
     Type or Print Name                                    Signature
25

26

27

28

---

2
NOTICE OF HEARINGS

EXHIBIT 5



1  WILLIAM FAULKNER (83385)
2  MICHAEL WARREN (223642)
   McMANIS FAULKNER
3  a Professional Corporation
   50 West San Fernando Street, 10ᵗʰ Floor
4  San Jose, California 95113
   Telephone:    (408) 279-8700
5  Facsimile:    (408) 279-3244
   Email:        mwarren@mcmanislaw.com
6
   Attorneys for Defendant
7  GILLIG, LLC

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF ALAMEDA

10

11  RONALD TOLENTINO, individually, and on    Case No.: RG20073930
    behalf of all others similarly situated,
12
                                              **DEFENDANT'S ANSWER TO**
13            Plaintiff,                       **PLAINTIFF'S COMPLAINT**

14      vs.

15  GILLIG, LLC, a limited liability company; and
    DOES 1 through 10, inclusive,
16                                            Complaint Filed:   September 16, 2020
              Defendants.                     Trial Date:        Not set
17

18

19        Defendant Gillig, LLC ("Defendant"), hereby answers the Complaint of Plaintiff Ronald

20  Tolentino ("Plaintiff") and the Putative Class as follows:

21                           <u>GENERAL DENIAL</u>

22        Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally

23  denies each and every allegation of said Complaint, the whole thereof, including each and every

24  alleged cause of action contained therein, and further denies that Plaintiff is entitled to the relief

25  requested or any relief at all, that Plaintiff sustained or will sustain damages in the sum or sums

26  alleged, in any other sum, or at all, or is entitled to attorneys' fees in the sum or sums alleged, or

27  any other sum or sums, or at all.

28  ///

---

ENDORSED
FILED
ALAMEDA COUNTY

OCT 2 1 2020

CLERK OF THE SUPERIOR COURT
By  KRISTE VICTOR
                    Deputy

1

**AFFIRMATIVE DEFENSES**

In further answer to Plaintiff's Complaint, Defendant states the following facts as separate affirmative defenses to each of the allegations of Plaintiff's Complaint:

**FIRST AFFIRMATIVE DEFENSE**

**[Failure to State a Cause of Action]**

As and for a first, separate and affirmative defense to the complaint, Defendant alleges that Plaintiff's complaint, and each of the purported causes of action contained therein, fails to state facts sufficient to constitute a cause or causes of action against Defendant.

**SECOND AFFIRMATIVE DEFENSE**

**[Failure to Exhaust]**

As and for a further affirmative defense to the complaint, Defendant alleges that the complaint and each cause of action alleged therein are barred because Plaintiff failed to timely and completely exhaust his requisite administrative and/or contractual remedies available to them under applicable Collective Bargaining Agreements, the California Labor Code or other provisions of law prior to commencing this action.

**THIRD AFFIRMATIVE DEFENSE**

**[Federal Preemption]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that to the extent Plaintiff's claims involve conduct that is, or seek remedies that are, governed or regulated by federal law, such claims are preempted.

**FOURTH AFFIRMATIVE DEFENSE**

**[Federal Preemption – Labor Management Relations Act]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are preempted by Section 301 of the Labor Management Relations Act.

///

///

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT; CASE NO. RG20073930

1      **FIFTH AFFIRMATIVE DEFENSE**

2      **[Exemption Under California Labor Code Section 514]**

3          As and for a further affirmative defense to the complaint, Defendant alleges that the

4      complaint and each cause of action alleged therein are barred because they are preempted by

5      collective bargaining agreements which qualify to exempt Defendant from overtime, meal and

6      rest period requirements and other requirements of the California Labor Code.

7      **SIXTH AFFIRMATIVE DEFENSE**

8      **[Binding Arbitration Under Collective Bargaining Agreement]**

9          As and for a further affirmative defense to the complaint, and to each and every cause of

10     action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are

11     preempted by collective bargaining agreements and subject to binding arbitration under those

12     agreements.

13     **SEVENTH AFFIRMATIVE DEFENSE**

14     **[Preemption – Supremacy Clause]**

15         As and for a further affirmative defense to the complaint, and to each and every cause of

16     action contained therein, Defendant asserts that the Supremacy Clause of the United States

17     Constitution bars Plaintiff's claims. *Lorrilard Tobacco Co. v. Reilly* (2001) 533 U.S. 525.

18     **EIGHTH AFFIRMATIVE DEFENSE**

19     **[Field Preemption]**

20         As and for a further affirmative defense to the complaint, and to each and every

21     cause of action contained therein, Defendant alleges that the Complaint and each cause of action

22     set forth therein, or some of them, cannot be maintained against Defendant because they are

23     preempted by field preemption.

24     **NINTH AFFIRMATIVE DEFENSE**

25     **[Non-Certifiable Class]**

26         As and for a further affirmative defense to the complaint, and to each and every cause of

27     action contained therein, Defendant alleges that Plaintiff cannot satisfy the requirements of

28     California Code of Civil Procedure section 382 because individual questions of fact and law

1  predominate over common questions, Plaintiffs' claims are not typical of those belonging to the

2  putative class members, the class is not sufficiently numerous, and/or other class requirements

3  cannot be satisfied.  Accordingly, this action is not properly brought as a class action.

4  **TENTH AFFIRMATIVE DEFENSE**

5  **[Inadequacy of Class Representative]**

6  As and for a further affirmative defense to the complaint, and to each and every

7  cause of action contained therein, Defendant alleges that Plaintiff is not a proper representative

8  of the class he purports to represent.

9  **ELEVENTH AFFIRMATIVE DEFENSE**

10  **[Lack of Superiority]**

11  As and for a further affirmative defense to the complaint, and to each and every cause of

12  action contained therein, Defendant alleges that the class action procedure is not the superior

13  method for adjudicating Plaintiff's claims or the claims of the alleged class and, accordingly, this

14  action is not properly brought as a class action.

15  **TWELFTH AFFIRMATIVE DEFENSE**

16  **[Lack of Standing]**

17  As and for a further affirmative defense to the complaint, and to each and every cause of

18  action contained therein, Defendant alleges that Plaintiff lacks standing to assert any purported

19  cause of action alleged in the Complaint and lacks standing to represent the putative class.

20  **THIRTEENTH AFFIRMATIVE DEFENSE**

21  **[Statute of Limitations]**

22  As and for a further affirmative defense to the complaint, and to each and every cause of

23  action contained therein, Defendant alleges that the Complaint, and each and every purported

24  cause of action alleged therein, is barred by the applicable statutes of limitations, including but

25  not limited to, California Labor Code Section 203; California Code of Civil Procedure Sections

26  337,338, 339,340 and 343; and California Business & Professions Code Section l 7208.

27  ///

28  ///

4

1

**FOURTEENTH AFFIRMATIVE DEFENSE**

2

**[Waiver]**

3     As and for a further affirmative defense to the complaint, and to each and every cause of

4   action contained therein, Defendant alleges that by his own acts and omissions, Plaintiff has

5   waived any claims and purported claims for relief contained in the complaint.

6

**FIFTEENTH AFFIRMATIVE DEFENSE**

7

**[Unclean Hands]**

8     As and for a further affirmative defense to the complaint, and to each and every cause of

9   action contained therein, Defendant alleges that Plaintiff's claims are barred by the doctrine of

10   unclean hands.

11

**SIXTEENTH AFFIRMATIVE DEFENSE**

12

**[Laches]**

13      As and for a further affirmative defense to the complaint, and to each and every

14   cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the

15   doctrine of laches.

16

**SEVENTEENTH AFFIRMATIVE DEFENSE**

17

**[Estoppel]**

18      As and for a further affirmative defense to the complaint, and to each and every

19   cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the

20   doctrine of estoppel.

21

**EIGHTEENTH AFFIRMATIVE DEFENSE**

22

**[Privilege and Justification]**

23     As and for a further affirmative defense to the complaint, and to each and every cause of

24   action contained therein, Defendant alleges that Plaintiff's claims are barred because Defendant's

25   conduct was privileged and justified.

26

**NINETEENTH AFFIRMATIVE DEFENSE**

27

**[Adequate Remedies at Law]**

28     As and for a further affirmative defense to the complaint, and to each and every cause of

5

1    action contained therein, Defendant alleges that Plaintiff is not entitled to equitable relief insofar

2    as she has adequate remedies at law.

### TWENTIETH AFFIRMATIVE DEFENSE

#### [Set-Off/Offset/Recoupment]

5        As and for a further affirmative defense to the complaint, and to each and every cause of

6    action contained therein, Defendant alleges that the Complaint, and each and every purported

7    cause of action alleged therein, is subject to setoff, offset and/or recoupment to the extent

8    Plaintiff has already been compensated for the hours worked for which he seeks compensation

9    here.

### TWENTY- FIRST AFFIRMATIVE DEFENSE

#### [Labor Code Section 203 – No Willful or Intentional Violation]

12        As and for a further affirmative defense to the complaint, and to each and every cause of

13    action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the

14    putative class members are entitled to any additional compensation, it has not willfully or

15    intentionally failed to pay any such additional compensation to Plaintiff and/or the putative class

16    members, within the meaning and scope of California Labor Code section 203.

### TWENTY- SECOND AFFIRMATIVE DEFENSE

#### [Bona Fide Dispute]

19        As and for a further affirmative defense to the complaint, and to each and every cause of

20    action contained therein, Defendant alleges there exists a *bona fide* dispute as to whether any

21    further compensation is actually due to Plaintiff and/or the putative class members and, if so, the

22    amount thereof.

### TWENTY- THIRD AFFIRMATIVE DEFENSE

24        As and for a further affirmative defense to the complaint, and to each and every cause of

25    action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the

26    putative class members were not provided with a proper itemized statement of wages and

27    deductions, Plaintiff and the putative class members are not entitled to recover damages or

28    penalties because Defendant's alleged failure to comply with California Labor Code section 226

6

1   (a) was not a "knowing and intentional failure" under California Labor Code section 226(e).

2   **TWENTY- FOURTH AFFIRMATIVE DEFENSE**

3   **[Lack of Specificity]**

4   As and for a further affirmative defense to the complaint, and to each and every cause of

5   action contained therein, Defendant alleges that Plaintiff has failed to alleged special damages

6   with requisite specificity.

7   **TWENTY- FIFTH AFFIRMATIVE DEFENSE**

8   **[Civil Penalties Unconstitutional – Due Process and Separation of Powers]**

9   As and for a further affirmative defense to the complaint, and to each and every cause of

10  action contained therein, Defendant asserts the penalties sought in Plaintiff's Complaint violate

11  the Due Process and Separation of Powers Clauses of the United States and California

12  Constitutions. *Lockyer v. R.J. Reynolds Tobacco Co.,* 37 CaL 4th 707 (2005); *Ratner v.*

13  *Chemical Bank New York Trust Co.,* 54 F.R.D. 412 (S.D.N.Y. 1972).

14  **TWENTY- SIXTH AFFIRMATIVE DEFENSE**

15  **[After-Acquired Evidence]**

16  As and for a further affirmative defense to the complaint, and to each and every cause of

17  action contained therein, Defendant alleges that Plaintiff is barred, in whole or in part, from

18  recovery of any damages based upon the doctrine of after-acquired evidence.

19  **TWENTY- SEVENTH AFFIRMATIVE DEFENSE**

20  **[Uncertainty]**

21  As and for a further affirmative defense to the complaint, and to each and every cause of

22  action contained therein, Defendant alleges the Complaint, and the claims asserted therein, are

23  uncertain.

24  **TWENTY- EIGHTH AFFIRMATIVE DEFENSE**

25  **[Mitigation of Damages]**

26  As and for a further affirmative defense to the complaint, and to each and every cause of

27  action contained therein, Defendant alleges that Plaintiff and any purported class members, have

28  failed to exercise reasonable care to mitigate their damages, if any were suffered, and that their

7

1 right to recover against Defendant should be reduced and/or eliminated by such a failure.

2 **TWENTY- NINTH AFFIRMATIVE DEFENSE**

3 **[Violation of Due Process]**

4 As and for a further affirmative defense to the complaint, and to each and every cause of

5 action contained therein, Defendant alleges that certification of a class, and the prosecution of a

6 representative action on behalf of the general public under California Business and Professions

7 Code section 17200 *et seq.,* as applied to the facts and circumstances of this case, would

8 constitute a denial of Defendant's due process rights, both substantive and procedural, in

9 violation of the Fourteenth Amendment to the United States Constitution and the California

10 Constitution.

11 **THIRTIETH AFFIRMATIVE DEFENSE**

12 **[Breach of Duty]**

13 As and for a further affirmative defense to the complaint, and to each and every cause of

14 action contained therein, Defendant alleges Plaintiff's claims, and those of any putative class

15 members, are barred by their own breach of the duties owed to Defendant under California Labor

16 Code section 2854, 2856, 2857, 2858 and/or 2859.

17 **THIRTY-FIRST AFFIRMATIVE DEFENSE**

18 **[No Penalties – Good Faith Dispute]**

19 As and for a further affirmative defense to the complaint, and to each and every cause of

20 action contained therein, Defendant alleges that any violation of the Labor Code or an Order of

21 the Industrial Welfare Commission was an act or omission made in good faith and Defendant

22 had reasonable grounds for believing that its wage payment practices complied with applicable

23 laws and that any such act or omission was not a violation of the Labor Code, the common law

24 or any Order of the Industrial Welfare Commission such that Plaintiff and/or the putative class

25 members are not entitled to any penalties or damages in excess of any wages/overtime which

26 might be found to be due. Specifically, Plaintiff cannot recover Labor Code section 203 or Labor

27 Code section 226(e) civil penalties because any alleged failure to pay wages or provide

28 compliant wage statements was based on a good faith dispute regarding the applicable law or

8

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT; CASE NO. RG20073930

1  facts.

2  **THIRTY-SECOND AFFIRMATIVE DEFENSE**

3  **[Failure to State a Claim for Attorneys' Fees and Costs]**

4  As and for a further affirmative defense to the complaint, and to each and every cause of

5  action contained therein, Defendant alleges that the Complaint fails to state a claim for attorneys'

6  fees under Labor Code section 226, Code of Civil Procedure 1021.5, Business and Professions

7  Code section 17200, *et seq.,* or any other basis.

8  **THIRTY-THIRD AFFIRMATIVE DEFENSE**

9  **[Failure to State a Claim for Attorneys' Fees and Costs]**

10  As and for a further affirmative defense to the complaint, and to each and every cause of

11  action contained therein, Defendant alleges that any failure to comply with Defendant's work-

12  time recording and overtime polices and requirements, was the result of failure by Plaintiff

13  and/or the putative class members to follow Defendant's reasonable instructions.

14  **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

15  **[No Harm Suffered]**

16  As and for a further affirmative defense to the complaint, and to each and every cause of

17  action contained therein, Defendant alleges that Plaintiff has not suffered and will not suffer

18  irreparable harm or any harm as a result of any of the alleged conduct of Defendant.

19  **THIRTY-FIFTH AFFIRMATIVE DEFENSE**

20  **[Additional Affirmative Defenses]**

21  Defendant has not yet completed a thorough investigation and study or completed

22  discovery of all facts and circumstances of the subject matter of the complaint and, accordingly,

23  reserves the right to amend, modify, revise, or supplement its Answer, and to plead such further

24  defenses and take such further actions as it deems proper and necessary in its defense upon

25  completion of said investigation and study.

26  WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

27  1.    That Plaintiff take nothing by this action and that the complaint be dismissed in its

28       entirety with prejudice;

9

1    2.    For all reasonable costs and attorneys' fees incurred by Defendant in connection

2         with the defense of this matter; and

3    3.    For such other and further relief as the Court in the exercise of its discretion

4         deems just and proper.

5    DATED: October 21, 2020                    McMANIS FAULKNER

6

7

8                                              MICHAEL WARREN
                                               Attorneys for Defendant
9                                              GILLIG, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

On October 21, 2020, I served the foregoing document described as:

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

Kane Moon, Esq.                                    Attorneys for Plaintiff
Allen Feghali                                      RONALD TOLENTINO
MOON & YANG, APC
1055 W. Seventh St., #1880
Los Angeles, CA  90017
T:  (213) 232-3128 / F:  (213) 232-3125
E:  kane.moon@moonyanglaw.com
    allen.feghali@moonyanglaw.com

☒    **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒    **(STATE)**
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 21, 2020, at San Jose, California.

_____
Elise Dresser

1

EXHIBIT 6



1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:        mwarren@mcmanislaw.com

6  Attorneys for Defendant
   GILLIG, LLC

7

ENDORSED
FILED
ALAMEDA COUNTY

OCT 2 8 2020

CLERK OF THE SUPERIOR COURT
By Lynetta M. Irvin, Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF ALAMEDA

10

11  RONALD TOLENTINO, individually, and on
12  behalf of all others similarly situated,

13            Plaintiff,

14      vs.

15  GILLIG, LLC, a limited liability company; and
    DOES 1 through 10, inclusive,

16            Defendants.

17

Case No.: RG20073930

*Assigned to The Honorable Brad Seligman, Department 23*

**DEFENDANT'S NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT**

Complaint Filed:    September 16, 2020
Trial Date:         Not Set

18

19  TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

20      **PLEASE TAKE NOTICE** that Defendant Gillig, LLC, by and through counsel, have

21  filed its Notice of Removal at the Office of the Clerk of the United States District Court for the

22  Northern District of California, Oakland Division. A copy of that Notice of Removal is attached

23  hereto as **Exhibit A**, and is served and filed herewith.

24      **PLEASE TAKE FURTHER NOTICE** that, pursuant to 28 U.S.C. section 1446, the

25  filing of that Notice of Removal in the United States District Court for the Northern District of

26  California, Oakland Division, together with the filing of this Notice of Filing Notice of Removal

27  ///

28                                    1

1 | with this Court effects the removal of this action. Accordingly, the above-captioned Court may
2 | proceed no further unless and until this case is remanded.

3

4 | DATED: October 23, 2020                          McMANIS FAULKNER

5

6

7 | MICHAEL WARREN
  | Attorneys for Defendant
8 | GILLIG, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF ADVERSE PARTY OF FEDERAL REMOVAL

# EXHIBIT A

**To Defendant's Notice to Adverse Party of Removal to Federal Court**

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:     (408) 279-8700
   Facsimile:     (408) 279-3244
5  Email:         mwarren@mcmanislaw.com

6  Attorneys for Defendant
   GILLIG, LLC
7

8                    UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO/OAKLAND DIVISION

11  RONALD TOLENTINO, individually, and on       Case No.:
    behalf of all others similarly situated,
12
                                                  NOTICE OF REMOVAL OF ACTION
13              Plaintiff,                         UNDER 28 U.S.C. §§ 1331, 1441 AND 1446

14       vs.

15  GILLIG, LLC, a limited liability company; and
    DOES 1 through 10, inclusive,
16
                Defendants.
17

18

19       TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

20  NORTHERN DISTRICT OF CALIFORNIA:

21       PLEASE TAKE NOTICE that defendant GILLIG, LLC. ("Gillig" or "Defendant"),

22  hereby removes the matter of *Ronald Tolentino, et al., v. Gillig, LLC*, pending in the Superior

23  Court of the State of California in and for the County of Alameda, Case No. RG20073930, to the

24  United States District Court for the Northern District of California pursuant to 28 U.S.C. §§

25  1331, 1441(c), and 1446.

26       Removal is proper on the following ground: federal question jurisdiction under Section

27  301 of the Labor Management Relations Act of 1947 ("LMRA," 29 U.S.C. § 185, 28 U.S.C. §§

28  1331, 1441(c), and 1446, as discussed in detail below:

                                              1

NOTICE OF REMOVAL, Case No.:

I.

## CLAIMS AND PROCEDURAL HISTORY

1.      On September 16, 2020, Plaintiff Ronald Tolentino ("Plaintiff"), individually and on behalf of all persons similarly situated, filed a Complaint in the Superior Court of California, County of Alameda, Case No. RG20073930 (the "Complaint").

2.      In the Complaint, Plaintiff asserts the following causes of action: (1) minimum wage violations; (2) failure to pay overtime wages; (3) failure to provide lawful meal periods; (4) failure to provide lawful rest periods; (5) failure to timely pay final wages; (6) wage statement violations; and (7) unfair business practices.

3.      The Complaint did not expressly enumerate any claim under federal law and omits that the terms and conditions of Plaintiff's employment was subject to a Collective Bargaining Agreement ("CBA"). True and correct copies of the Summons and Complaint in this case are filed concurrently herewith as Exhibit A.

4.      Defendant filed its Answer to Plaintiff's Complaint in Superior Court on October 21, 2020, a copy of which is attached hereto as Exhibit B.

5.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 84(a) and 1391.

II.

## TIMELINESS OF REMOVAL

6.      Defendant was served with the Complaint on September 24, 2020. This Notice of Removal is timely filed in that it has been filed within thirty (30) days after the receipt of the Summons and Complaint by Defendant, as required by 29 U.S.C. § 1446(b).

III.

## JURISDICTION

## FEDERAL QUESTION BASED ON LMRA SECTION 301 PREEMPTION

7.      This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(c), in that it is a civil action that presents a federal question.

NOTICE OF REMOVAL, Case No.:

1    8.    Federal question jurisdiction arises out of the fact that Plaintiff's claims require

2    interpretation of a CBA and thus are completely preempted by federal law under the LMRA. 29

3    U.S.C. § 185. Section 301 of the LMRA provides that: "[s]uits for violation of contracts

4    between an employer and a labor organization representing employees in an industry affecting

5    commerce…may be brought in a district court for the United States having jurisdiction of the

6    parties without respect to the amount in controversy or without regard to the citizenship of the

7    parties." 29 U.S.C. § 185(a). To ensure uniform interpretations of CBAs, federal common law

8    preempts the use of state contract law in collective bargaining agreement interpretation and

9    enforcement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).

10    9.    Further, all state law claims raised by a union-represented employee that require

11    interpretation of a collective bargaining agreement must be brought pursuant to Section 301.

12    *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985). "The preemptive force of section 301

13    is so powerful that it displaces entirely any state cause of action for violation of a collective

14    bargaining agreement…any state claim whose outcome depends on analysis of the terms of the

15    agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see also*

16    *Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001)(noting the Section 301 is

17    one of "only two areas in which the Supreme Court has found that Congress intended completely

18    to replace state law with federal law for purposes of federal jurisdiction").

19    10.    Section 301 specifically has been held to preempt California state law claims that

20    are substantially dependent upon interpretation of a collective bargaining agreement. *Firestone*

21    *v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1066-1067; *see also Curtis v. Irwin Industries*, 913

22    F.3d 1146, 1152-1155 (9th Cir. 2019). This is so even where interpretation was required to

23    evaluate the employer's defense to a plaintiff's state law causes of action. *See Levy v. Skywalker*

24    *Sound*, 108 Cal.App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed]

25    entirely" on a claim that plaintiff was "entitled…to wages at the level set by the CBA").

26    **A.    Plaintiff's Employment Was Governed by a CBA**

27    11.    Plaintiff was an employee of Gillig during the period May 2002 to June 2020.

28    (Declaration of Marla Loar ("Loar Decl."), ¶ 3.) The terms and conditions of Plaintiff's

NOTICE OF REMOVAL, Case No.:

1  employment are subject to a CBA between Gillig and Teamsters Local 853 (the "Union"). (*Id.*, ¶

2  4, Exhibit 1.)   Members of the proposed class are represented by either the Teamsters Local 853

3  or the Auto, Marine and Specialty Painters Local 1176 (collectively the "Unions") and their

4  employment is governed by separate CBAs between Gillig and both Unions, respectively.  (*Id.*, ¶

5  4.)  True and correct copies of the active CBAs in effect for proposed class members are attached

6  as Exhibits 1 and 2 to the concurrently-filed Loar Declaration.

7        12.      The Union is a labor organization within the meaning of Section 2(5) of the

8  NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

9        13.      Gillig is an employer within the meaning of the LMRA, 29 U.S.C. §§ 152(2).

10       14.      Section 1 of both CBAs specifically states that the Unions are the sole bargaining

11  agents for covered employees for the purposes of collective bargaining to establish rates of pay,

12  hours of work and other conditions of employment. (Loar Decl., ¶ 4, Exhibit 1, p. 3; Exhibit 2, p.

13  3.)

14             **B.  Plaintiff's Claims are Preempted by the LMRA Because They Require**

15                  **Substantial Interpretation of the CBA**

16       15.      The Complaint omits the fact that Plaintiff was a member of the Union and

17  employed by Gillig through a CBA.  However, a plaintiff may not be permitted to "artfully

18  plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish*

19  *Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was

20  preempted even though operative complaint made no mention of a collective bargaining

21  agreement). The fact that Plaintiff made no specific reference to Section 301 in his Complaint

22  does not preclude removal. *See Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1406 (9th

23  Cir. 1991).  The Court may properly look beyond the face of the Complaint to determine whether

24  the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James*

25  *Financial Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003).  Additionally, the Court may

26  properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff

27  presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v.*

28  *Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).

<div align="center">4</div>

16.    An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

17.    The claims asserted in Plaintiff's Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991); *see also Caterpillar Inc.*, 482 U.S. at 394. To analyze Plaintiff's claims, therefore, the Court will necessarily need to interpret the provisions of the relevant CBA.

## C.  Resolution of Plaintiff's Claims Will Require Substantial Interpretation of Various Provisions of the Relevant CBA

18.    The Court cannot simply look to state law to resolve Plaintiff's artfully pled claims for breach of a CBA. Therefore, Plaintiff's claims cannot be adjudicated without interpretation of numerous CBA provisions that govern his employment. Plaintiff asserts the following claims: (1) minimum wage violations; (2) failure to pay overtime wages; (3) failure to provide lawful meal periods; (4) failure to provide lawful rest periods; (5) failure to timely pay final wages; (6) wage statement violations; and (7) unfair business practices

19.    The applicable CBA contains specific language governing time worked, wages, overtime, and break periods. The CBA also provides for a grievance process and require binding arbitration to resolve any disputes arising under the CBA. Resolution of Plaintiff's claims will require the Court to interpret, at a minimum, all of these provisions:

20.    The CBA sets forth the parties' mutual agreement regarding all issues pertaining to employee wages, including pay for overtime. Plaintiff claims that he is owed overtime wages for work performed in excess of eight (8) hours in a single workday. The CBA expressly

5

1  provides for overtime pay for hours in excess of eight (8) hours in a workday or forty (40) hours

2  in a workweek, including enhanced overtime pay benefits for work performed on weekends and

3  holidays. (Loar Decl., ¶ 4, Exhibit 1, p. 5.) Indeed, the overtime pay benefits provided by the

4  both CBAs are more favorable to Gillig employees than those provided for under California state

5  law. (*See* Loar Decl., ¶ 4, Exhibit 1, p. 5; Exhibit 2, p. 6.)

6      21.    The CBAs also provide for rest periods, and expressly lay out the conditions

7  under which employees are entitled to such breaks. (Loar Decl., ¶ 4, Exhibit 1, p. 5-6; Exhibit 2,

8  p. 6.)

9      22.    California Labor Code section 514 provides that overtime requirements do not

10 apply to employees covered by a valid CBA, so long as the CBA provides wages, hours of work,

11 working conditions, and premium wage rates for all overtime hours worked; and wages for all

12 regular hours worked are not less than 30% more than the state's minimum wage. Here, the

13 relevant CBAs meet those criteria: they provide for wages, hours, and working conditions; and

14 specifically call for and define premium pay for all overtime hours worked; in addition to

15 expressly requiring that employees be paid at an hourly rate of more than 30% above the state

16 minimum wage. As a result, the relevant CBA here must be interpreted to resolve Plaintiffs'

17 claims.

18      23.    Additionally, applying the CBAs in conjunction with Labor Code section 514, the

19 grievance and arbitration procedures set forth in the CBAs cover "any disputes or grievances

20 which may arise concerning the application or enforcement of this Agreement." (Loar Decl., ¶ 4,

21 Exhibit 1, p. 13-14; Exhibit 2, p. 12-13.)   Plaintiff's claims for wages must be arbitrated as the

22 relevant CBA requires arbitration of claims as the exclusive remedy for any violations of the

23 terms of the CBA, including but not limited to minimum wage, overtime, and rest period claims.

24 (Loar Decl., ¶ 4, Exhibit 1, p. 13-14.)  The promotion of extra-judicial dispute resolution is

25 another purpose of Section 301 preemption. State court lawsuits properly removed on

26 preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed.

27 *See Livadas v. Bradshaw*, 512 U.S. 107, 142, fn. 18 (1994).  Here, the parties have so agreed,

28 and the claims are therefore subject to arbitration as discussed above. Accordingly, an alleged

NOTICE OF REMOVAL, Case No.:

1 | violation of the CBA is subject to the grievance and arbitration procedures set forth therein. As

2 | all of Plaintiff's claims are in essence alleged violations of the relevant CBAs, the Court will

3 | necessarily have to interpret the grievance and arbitration provisions to analyze Plaintiff's claims

4 | in this case. In other words, the Court will be required to determine whether Plaintiff was first

5 | required to exhaust the grievance procedures, whether he did in fact exhaust those procedures,

6 | and whether he agreed to arbitrate all or some of his claims—which are all questions reserved for

7 | federal courts under the LMRA.

8 |       24.     Accordingly, Plaintiff's claims are substantially dependent upon the interpretation

9 | of the foregoing CBA terms and provisions. In fact, those terms and provisions govern nearly all

10 | of the conduct that forms the basis for Plaintiff's Complaint, and thus are essential to the

11 | resolution of Plaintiff's claims. Accordingly, each of Plaintiff's claims arises under Section 301

12 | of the LMRA, and is therefore preempted by federal law. Removal to federal court is warranted.

13 | <div align="center">**IV.**</div>

14 | <div align="center">**SUPPLEMENTAL JURISDICTION**</div>

15 |       25.     The Court has supplemental jurisdiction over any of Plaintiff's remaining state

16 | law claims to the extent they are not completely preempted by Section 301 or are not so

17 | inextricably intertwined with or dependent on an interpretation of the CBAs, because they relate

18 | to and emanate from the same employment relationship between Plaintiff and Defendant that is

19 | the subject of the federal question claims. All the pleaded claims thus emanate from and form

20 | part of the same "case or controversy," such that they should all be tried in one action. *See*

21 | *Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations

22 | of convenience, judicial economy, and fairness to the litigants strongly favor this Court

23 | exercising jurisdiction over all claims in the Complaint. *See Executive Software v. U.S. Dist.*

24 | *Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). Accordingly, by virtue of 28 U.S.C. § 1441,

25 | Defendant is entitled to remove all of Plaintiff's claims to this Court.

26 | ///

27 | ///

28 | ///

<div align="center">7</div>

NOTICE OF REMOVAL, Case No.:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.

## JOINDER

26.   Defendant is not aware of any other defendant that exists and who has been named in the Complaint or who has been served with a summons and the Complaint. *See* Exhibit A.

## VI.

## NOTICE TO PLAINTIFF

27.   Upon filing of this Notice of Removal, Defendant will promptly give written notice thereof to Plaintiff and will promptly file a copy of this Notice with the clerk of the Superior Court of the State of California, County of Alameda.

28.   In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as Exhibits A and B.

WHEREFORE, Defendant respectfully requests that the above-entitled action now pending against it in the Superior Court of the State of California, County of Alameda, be removed to this Court.

DATED:  October 22, 2020

McMANIS FAULKNER

/s/ Michael Warren
MICHAEL WARREN
Attorneys for Defendant
GILLIG, LLC

8

NOTICE OF REMOVAL, Case No.:

# EXHIBIT A

Fax Server                9/18/2020  9:57:05 AM  PAGE    1/001    Fax Server

To: Alameda Superior Court      Page 29 of 51      2020-09-16 21:03:55 (GMT)      12152462353B  From: MOON &amp;amp; YANG

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED BY FAX**
**ALAMEDA COUNTY**
September 16, 2020
CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy

CASE NUMBER:
(Número del Caso):
**RG20973936**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CELLACT, L.L.C, a limited liability company, and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RONALD TOLENTINO, individually, and on behalf of all others similarly situated,

The name and address of the court is:
*(El nombre y dirección de la corte es):*
1225 Fallon Street,
Oakland, CA 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kane Moon, MOON &amp;amp; YANG APC, 1055 W. 7th Street, Suite 1880, Los Angeles, CA 90017 (213) 232-3128

DATE:
*(Fecha):*  **September 16, 2020**      Clerk, by:    Nicole Hall    , Deputy
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*  *(Secretario)*    *(Adjunto)*

**SUMMONS**                                                      CELLACT, L.L.C, a limited liability company

Fax Server                9/18/2020 9:56:46 AM   PAGE   1/001    Fax Server

To: Alameda Superior Court   Page 3 of 31        2020-09-16 21:06:55 (GMT)         12432892835 From: MOON &amp; YANG

| | |
|---|---|
| 1 | Kane Moon (SBN 249834)<br>Allen Feghali (SBN 301080)<br>**MOON & YANG, APC**<br>1055 W. Seventh St., Suite 1880<br>Los Angeles, California 90017<br>Telephone: (213) 232-3128<br>Facsimile: (213) 232-3125<br>E-mail: kane.moon@moonyanglaw.com<br>E-mail: allen.feghali@moonyanglaw.com<br><br>Attorneys for Plaintiff Ronald Tolentino | **FILED BY FAX**<br>ALAMEDA COUNTY<br>September 16, 2020<br>CLERK OF<br>THE SUPERIOR COURT<br>By Nicole Hall, Deputy<br>CASE NUMBER:<br>RG20073930 |

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>     Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT:**<br><br>1. Failure to Pay Minimum and Regular Rate Wages [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197];<br>2. Failure to Pay Overtime Compensation [Cal. Lab. Code §§ 1194 and 1198];<br>3. Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512];<br>4. Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code § 226.7];<br>5. Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203];<br>6. Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]; and<br>7. Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.].<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION & PRELIMINARY STATEMENT .................................................................. 1

THE PARTIES ............................................................................................................................. 3

    A.   Plaintiff ............................................................................................................... 3

    B.   Defendants ........................................................................................................... 3

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION ................................................. 7

CLASS ACTION ALLEGATIONS .......................................................................................... 10

FIRST CAUSE OF ACTION ..................................................................................................... 11

SECOND CAUSE OF ACTION ................................................................................................ 12

THIRD CAUSE OF ACTION .................................................................................................... 13

FOURTH CAUSE OF ACTION ................................................................................................ 14

FIFTH CAUSE OF ACTION ..................................................................................................... 15

SIXTH CAUSE OF ACTION .................................................................................................... 19

SEVENTH CAUSE OF ACTION .............................................................................................. 21

PRAYER FOR RELIEF ............................................................................................................. 20

DEMAND FOR JURY TRIAL .................................................................................................. 24

i

Plaintiff Roland Tolentino ("Plaintiff"), based upon facts that either have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, alleges as follows:

<u>INTRODUCTION & PRELIMINARY STATEMENT</u>

1.      Plaintiff brings this action against Defendants Gillig, LLC, and Does 1 through 10 (collectively referred to as "Defendants") for California Labor Code violations and unfair business practices stemming from Defendants' failure to pay minimum and regular rate wages, failure to pay overtime wages, failure to provide meal periods, failure to authorize and permit rest periods, failure to maintain accurate records of hours worked and meal periods, failure to timely pay all wages to terminated employees, and failure to furnish accurate wage statements.

2.      Plaintiff brings the First through Seventh Causes of Action individually and as a class action on behalf of herself and certain current and former employees of Defendants (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully below). The Class consists of Plaintiff and all other persons who have been employed by any Defendant in California and classified as a non-exempt employee during the statute of limitations period applicable to the claims pleaded here.

3.      Defendants own/owned and operate/operated an industry, business, and establishment within the State of California, including Alameda County. As such, and based upon all the facts and circumstances incident to Defendants' business in California, Defendants are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare Commission ("IWC"), and the California Business & Professions Code.

4.      Despite these requirements, throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of:

(a)      Failing to pay employees for all hours worked, including all minimum wages, overtime wages, in compliance with the California Labor Code and IWC Wage Orders;

(b)      Failing to maintain accurate records of the hours employees worked;

1

<u>CLASS ACTION COMPLAINT</u>

(c)    Failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal period violation occurred;

(d)    Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failing to pay an additional hour's pay for each workday a rest period violation occurred;

(e)    Willfully failing to pay employees all minimum wages, overtime wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates; and

(f)    Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

5.  On information and belief, Defendants, and each of them were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

6.  At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff and the Class. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior".

<div align="center">

**THE PARTIES**

</div>

A.   **Plaintiff**

7.   Plaintiff is a California resident who worked for Defendants in Alameda County, California as a maintenance worker from approximately May 2002 to June 2020.

8.   Plaintiff reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

B.   **Defendants**

9.      Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant Gillig, LLC is:

        (a)     A California limited partnership with its principal place of business in Alameda, California.

        (b)     A business entity conducting business in numerous counties throughout the State of California, including in Alameda County; and

        (c)     The former employer of Plaintiff, and the current and/or former employer of the putative Class, Gillig, LLC suffered and permitted Plaintiff and the Class to work, and/or controlled their wages, hours, or working conditions.

10.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff and the Class as alleged herein.  Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with appropriate charging allegations, as may be necessary.

11.     At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured a significant number of the Plaintiff and the Class in the State of California.

12.     Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and

<div align="center">

3

CLASS ACTION COMPLAINT

</div>

1    the other employees described in the class definitions below, and exercised control over their

2    wages, hours, and working conditions.  Plaintiff is informed and believes and thereon alleges

3    that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer,

4    director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest

5    and/or predecessor in interest of some or all of the other Defendants, and was engaged with some

6    or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to

7    some or all of the other Defendants so as to be liable for their conduct with respect to the matters

8    alleged below.  Plaintiff is informed and believes and thereon alleges that each Defendant acted

9    pursuant to and within the scope of the relationships alleged above, that each Defendant knew or

10   should have known about, and authorized, ratified, adopted, approved, controlled, aided and

11   abetted the conduct of all other Defendants.

12                   **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

13        13.   Plaintiff Roland Tolentino worked for Defendants in Alameda County, California

14   as a maintenance worker.  At all times Defendants classified Plaintiff as non-exempt from

15   California's overtime requirements.  During the statutory time period, Plaintiff was typically

16   scheduled to work 5 days in a workweek, and typically in excess of 8 hours in a single workday.

17        14.   Throughout the statutory period, Defendants failed to pay Plaintiff for all hours

18   worked (including minimum wages and overtime compensation), failed to provide Plaintiff with

19   uninterrupted meal periods, failed to authorize and permit Plaintiff to take uninterrupted rest

20   periods, failed to maintain accurate records of the hours Plaintiff worked, failed to timely pay all

21   final wages to Plaintiff when Defendants terminated Plaintiff's employment, and failed to furnish

22   accurate wage statements to Plaintiff.  As discussed below, Plaintiff's experience working for

23   Defendants was typical and illustrative.

24        15.   Throughout the statutory period, Defendants maintained a policy and practice of

25   not paying Plaintiff and the Class for all hours worked, including all overtime wages. Defendants

26   regularly use a system of time rounding in a manner that resulted, over a period of time, in failing

27   to compensate Plaintiff and the Class properly for all the time they have actually worked, even

28   though the realities of Defendants' operations are such that it is possible, practical, and feasible

                                         4

1   to count and pay for work time to the minute. As a result, Defendants frequently paid Plaintiff

2   and the Class less than all their work time, some of which should have been paid at the overtime

3   rate. As a further result, Defendants failed to maintain accurate records of the hours Plaintiff and

4   the Class worked.

5         16.    Throughout the statutory period, Defendants have wrongfully failed to provide

6   Plaintiff and the Class with legally compliant meal periods. Defendants regularly, but not

7   always, required Plaintiff and the Class to work in excess of five consecutive hours a day without

8   providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours

9   of work, or without compensating Plaintiff and the Class for meal periods that were not provided

10   by the end of the fifth hour of work or tenth hour of work. Defendants did not adequately inform

11   Plaintiff and the Class of their right to take a meal period by the end of the fifth hour of work, or,

12   for shifts greater than 10 hours, by the end of the tenth hour of work. Defendants also did not

13   have adequate policies or practices to document and verify whether Plaintiff and the Class were

14   taking their required meal periods. Accordingly, Defendants' policy and practice was to not

15   provide meal periods to Plaintiff and the Class in compliance with California law.

16         17.    Throughout the statutory period, Defendants have wrongfully failed to authorize

17   and permit Plaintiff and the Class to take timely and duty-free rest periods. Defendants regularly,

18   but not always, required Plaintiff and the Class to work in excess of four consecutive hours a day

19   without Defendants authorizing and permitting them to take a 10-minute, continuous and

20   uninterrupted, rest period for every four hours of work (or major fraction of four hours), or

21   without compensating Plaintiff and the Class for rest periods that were not authorized or

22   permitted. Accordingly, Defendants' policy and practice was to not authorize and permit

23   Plaintiff and the Class to take rest periods in compliance with California law.

24         18.    Throughout the statutory period, Defendants willfully failed and refused to timely

25   pay Plaintiff and the Class at the conclusion of their employment all wages, including overtime

26   wages, meal period premium wages, and rest period premium wages.

27         19.    Throughout the statutory period, Defendants failed to furnish Plaintiff and the

28   Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross

Case 4:20-cv-07427 Document 1 Filed 10/22/20 Page 18 of 60

and net wages earned (including correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California law). As a result of these violations of California Labor Code § 226(a), Plaintiff and the Class suffered injury because, among other things:

(a) the violations led them to believe that they were not entitled to be paid minimum wages, overtime wages, meal period premium wages, and rest period premium wages to which they were entitled, even though they were entitled;

(b) the violations led them to believe that they had been paid the minimum, overtime, meal period premium, and rest period premium wages to which they were entitled, even though they had not been;

(c) the violations led them to believe they were not entitled to be paid minimum, overtime, meal period premium, and rest period premium wages at the correct California rate even though they were;

(d) the violations led them to believe they had been paid minimum, overtime, meal period premium, and rest period premium wages at the correct California rate even though they had not been;

(e) the violations hindered them from determining the amounts of minimum, overtime, meal period premium, and rest period premium owed to them;

(f) in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages owed to them, computations they would not have to make if the wage statements contained the required accurate information;

(g) by understating the wages truly due them, the violations caused them to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits;

(h)    the wage statements inaccurately understated the wages, hours, and wage rates to which Plaintiff and the Class were entitled, and Plaintiff and the Class were paid less than the wages and wage rates to which they were entitled.

Thus, Plaintiff and the Class are owed the amounts provided for in California Labor Code § 226(e).

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings certain claims individually, as well as on behalf of each and all other persons similarly situated, and thus, seeks class certification under California Code of Civil Procedure § 382.

21.    All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

22.    The proposed Class consists of and is defined as:

All persons who worked for any Defendants in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent.

23. At all material times, Plaintiff was a member of the Class.

24. Plaintiff undertakes this concerted activity to improve the wages and working conditions of all Class Members.

25. There is a well-defined community of interest in the litigation and the Class is readily ascertainable:

(a)    Numerosity: The members of the Class (and each subclass, if any) are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time, however, the Class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

(b)    Typicality: Plaintiff is qualified to, and will, fairly and adequately protect

7

1    the interests of each Class Member with whom there is a shared, well-

2    defined community of interest, and Plaintiff's claims (or defenses, if any)

3    are typical of all Class Members' claims as demonstrated herein.

4    (c)    Adequacy:  Plaintiff is qualified to, and will, fairly and adequately protect

5    the interests of each Class Member with whom there is a shared, well-

6    defined community of interest and typicality of claims, as demonstrated

7    herein.  Plaintiff has no conflicts with or interests antagonistic to any Class

8    Member.  Plaintiff's attorneys, the proposed class counsel, are versed in

9    the rules governing class action discovery, certification, and settlement.

10   Plaintiff has incurred, and throughout the duration of this action, will

11   continue to incur costs and attorneys' fees that have been, are, and will be

12   necessarily expended for the prosecution of this action for the substantial

13   benefit of each class member.

14   (d)    Superiority:  A Class Action is superior to other available methods for the

15   fair and efficient adjudication of the controversy, including consideration

16   of:

17   1)    The interests of the members of the Class in individually

18         controlling the prosecution or defense of separate actions;

19   2)    The extent and nature of any litigation concerning the controversy

20         already commenced by or against members of the Class;

21   3)    The desirability or undesirability of concentrating the litigation of

22         the claims in the particular forum; and

23   4)    The difficulties likely to be encountered in the management of a

24         class action.

25   (e)    Public Policy Considerations:  The public policy of the State of California

26   is to resolve the California Labor Code claims of many employees through

27   a class action.  Indeed, current employees are often afraid to assert their

28   rights out of fear of direct or indirect retaliation.  Former employees are

CLASS ACTION COMPLAINT

1 also fearful of bringing actions because they believe their former
2 employers might damage their future endeavors through negative
3 references and/or other means. Class actions provide the class members
4 who are not named in the complaint with a type of anonymity that allows
5 for the vindication of their rights at the same time as their privacy is
6 protected.

7 26. There are common questions of law and fact as to the Class (and each subclass, if any)
8 that predominate over questions affecting only individual members, including without limitation,
9 whether, as alleged herein, Defendants have:

   (a) Failed to pay Class Members for all hours worked, including minimum
11 wages, and overtime wages;
12 (b) Failed to provide meal periods and pay meal period premium wages to
13 Class Members;
14 (c) Failed to authorize and permit rest periods and pay rest period premium
15 wages to Class Members;
16 (d) Failed to promptly pay all wages due to Class Members upon their
17 discharge or resignation;
18 (e) Failed to provide Class Members with accurate wages statements;
19 (f) Failed to maintain accurate records of all hours Class Members worked,
20 and all meal periods Class Members took or missed; and
21 (g) Violated California Business & Professions Code §§ 17200 *et. seq.* as a
22 result of their illegal conduct as described above.

23 27. This Court should permit this action to be maintained as a class action pursuant to
24 California Code of Civil Procedure § 382 because:
25 (a) The questions of law and fact common to the Class predominate over any
26 question affecting only individual members;
27 (b) A class action is superior to any other available method for the fair and
28 efficient adjudication of the claims of the members of the Class;

<div align="center">

9

CLASS ACTION COMPLAINT

</div>

(c)    The members of the Class are so numerous that it is impractical to bring all members of the class before the Court;

(d)    Plaintiff, and the other members of the Class, will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

(e)    There is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

(f)    Without class certification, the prosecution of separate actions by individual members of the class would create a risk of:

    1)    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and/or

    2)    Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but not limited to the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants; and,

(g)    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the class as a whole.

28. Plaintiff contemplates the eventual issuance of notice to the proposed members of the Class that would set forth the subject and nature of the instant action. The Defendants' own business records may be utilized for assistance in the preparation and issuance of the contemplated notices. To the extent that any further notices may be required, Plaintiff would

1  contemplate the use of additional techniques and forms commonly used in class actions, such as

2  published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by

3  other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

4  <center>**FIRST CAUSE OF ACTION**</center>

5  <center>(Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked)</center>

6  29.   Plaintiff incorporates by reference and re-alleges as if fully stated herein

7  paragraphs 1 through 19 in this Complaint.

8  30.   "Hours worked" is the time during which an employee is subject to the control of

9  an employer, and includes all the time the employee is suffered or permitted to work, whether or

10  not required to do so.

11  31.   At all relevant times herein mentioned, Defendants knowingly failed to pay to

12  Plaintiff and the Class compensation for all hours they worked.  By their failure to pay

13  compensation for each hour worked as alleged above, Defendants willfully violated the

14  provisions of Section 1194 of the California Labor Code, and any additional applicable Wage

15  Orders, which require such compensation to non-exempt employees.

16  32.   Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all

17  non-overtime hours worked for Defendants.

18  33.   By and through the conduct described above, Plaintiff and the Class have been

19  deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

20  34.   By virtue of the Defendants' unlawful failure to pay additional compensation to

21  Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class

22  suffered, and will continue to suffer, damages in amounts which are presently unknown to

23  Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which

24  will be ascertained according to proof at trial.

25  35.   By failing to keep adequate time records required by California Labor Code §

26  1174(d), Defendants have made it difficult to calculate the full extent of minimum wage

27  compensation due Plaintiff and the Class.

28

<center>11
CLASS ACTION COMPLAINT</center>

36.   Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum wages.

37.   California Labor Code section 204 requires employers to provide employees with all wages due and payable twice a month. Throughout the statute of limitations period applicable to this cause of action, Plaintiff and the Class were entitled to be paid twice a month at rates required by law, including minimum wages. However, during all such times, Defendants systematically failed and refused to pay Plaintiff and the Class all such wages due, and failed to pay those wages twice a month.

38.   Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 218.6, and 1194(a).

## SECOND CAUSE OF ACTION

### (Against all Defendants for Failure to Pay Overtime Wages)

39.   Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 19 in this Complaint.

40.   California Labor Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

41.   California Labor Code §§ 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law. Additionally, California Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

42.   At all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday, as employees of Defendants.

43.   At all times relevant hereto, Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours

12

1 permissible by law as required by California Labor Code § 510 and 1198. Plaintiff and the Class
2 are regularly required to work overtime hours.

3     44.   By virtue of Defendants' unlawful failure to pay additional premium rate
4 compensation to the Plaintiff and the Class for their overtime hours worked, Plaintiff and the
5 Class have suffered, and will continue to suffer, damages in amounts which are presently
6 unknown to them but which exceed the jurisdictional minimum of this Court and which will be
7 ascertained according to proof at trial.

8     45.   By failing to keep adequate time records required by Labor Code § 1174(d),
9 Defendants have made it difficult to calculate the full extent of overtime compensation due to
10 Plaintiff and the Class.

11     46.   Plaintiff and the Class also request recovery of overtime compensation according
12 to proof, interest, attorneys' fees and costs pursuant to California Labor Code § 1194(a), as well
13 as the assessment of any statutory penalties against Defendants, in a sum as provided by the
14 California Labor Code and/or other statutes.

15     47.   California Labor Code § 204 requires employers to provide employees with all
16 wages due and payable twice a month. The Wage Orders also provide that every employer shall
17 pay to each employee, on the established payday for the period involved, overtime wages for all
18 overtime hours worked in the payroll period. Defendants failed to provide Plaintiff and the Class
19 with all compensation due, in violation of California Labor Code § 204.

20 <center>**THIRD CAUSE OF ACTION**</center>
21 <center>**(Against All Defendants for Failure to Provide Meal Periods)**</center>

22     48.   Plaintiff incorporates by reference and re-alleges as if fully stated herein
23 paragraphs 1 through 19 in this Complaint.

24     49.   Under California law, Defendants have an affirmative obligation to relieve the
25 Plaintiff and the Class of all duty in order to take their first daily meal periods no later than the
26 start of Plaintiff and the Class' sixth hour of work in a workday, and to take their second meal
27 periods no later than the start of the eleventh hour of work in the workday. Section 512 of the
28 California Labor Code, and Section 11 of the applicable Wage Orders require that an employer

<center>13</center>
<center>CLASS ACTION COMPLAINT</center>

1   provide unpaid meal periods of at least 30 minutes for each five-hour period worked. It is a

2   violation of Section 226.7 of the California Labor Code for an employer to require any employee

3   to work during any meal period mandated under any Wage Order.

4        50.   Despite these legal requirements, Defendants regularly failed to provide Plaintiff

5   and the Class with both meal periods as required by California law. By their failure to permit

6   and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact

7   that Defendants made it impossible or impracticable to take these uninterrupted meal periods),

8   Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and

9   the applicable Wage Orders.

10        51.   Under California law, Plaintiff and the Class are entitled to be paid one hour of

11   additional wages for each workday he or she was not provided with all required meal period(s),

12   plus interest thereon.

13             **FOURTH CAUSE OF ACTION**

14       **(Against All Defendants for Failure to Authorize and Permit Rest Periods)**

15        52.   Plaintiff incorporates by reference and re-alleges as if fully stated herein

16   paragraphs 1 through 19 in this Complaint.

17        53.   Defendants are required by California law to authorize and permit breaks of 10

18   uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than

19   two hours). Section 512 of the California Labor Code, the applicable Wage Orders require that

20   the employer permit and authorize all employees to take paid rest periods of 10 minutes each for

21   each 4-hour period worked. Thus, for example, if an employee's work time is 6 hours and ten

22   minutes, the employee is entitled to two rest breaks. Each failure to authorize rest breaks as so

23   required is itself a violation of California's rest break laws. It is a violation of Section 226.7 of

24   the California Labor Code for an employer to require any employee to work during any rest

25   period mandated under any Wage Order.

26        54.   Despite these legal requirements, Defendants failed to authorize Plaintiff and the

27   Class to take rest breaks, regardless of whether employees worked more than 4 hours in a

28   workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as

CLASS ACTION COMPLAINT

alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted rest periods), Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and the applicable Wage Orders.

55.     Under California law, Plaintiff and the Class are entitled to be paid one hour of premium wages rate for each workday he or she was not provided with all required rest break(s), plus interest thereon.

## FIFTH CAUSE OF ACTION

(Against all Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time Penalties)

56.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 19 in this Complaint.

57.     At all times herein set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

58.     Within the applicable statute of limitations, the employment of Plaintiff and many other members of the Class ended, i.e. was terminated by quitting or discharge, and the employment of others will be.  However, during the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

59.     Defendants' failure to pay Plaintiff and those Class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code §§ 201 and 202.

60.     California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

61.     Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203.

62.     Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs incurred in this action.

## SIXTH CAUSE OF ACTION

### (Against all Defendants for Failure to Provide and Maintain Accurate and Compliant Wage Records)

63.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 19 in this Complaint.

64.     At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

65.     Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the

16

1   failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list

2   the true "total hours worked by the employee," and the failure to list the true net wages earned.

3          66.    As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff

4   and the Class have suffered injury and damage to their statutorily-protected rights.

5          67.    Specifically, Plaintiff and the members of the Class have been injured by

6   Defendants' intentional violation of California Labor Code § 226(a) because they were denied

7   both their legal right to receive, and their protected interest in receiving, accurate, itemized wage

8   statements under California Labor Code § 226(a).

9          68.    Calculation of the true wage entitlement for Plaintiff and the Class is difficult and

10  time consuming.  As a result of this unlawful burden, Plaintiff and the Class were also injured as

11  a result of having to bring this action to attempt to obtain correct wage information following

12  Defendants' refusal to comply with many of the mandates of California's Labor Code and related

13  laws and regulations.

14         69.    Plaintiff and the Class are entitled to recover from Defendants the greater of their

15  actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or

16  an aggregate penalty not exceeding four thousand dollars per employee.

17         70.    Plaintiff and the Class are also entitled to injunctive relief, as well as an award of

18  attorney's fees and costs to ensure compliance with this section, pursuant to California Labor

19  Code § 226(h).

20                        **SEVENTH CAUSE OF ACTION**

21  **(Against all Defendants for Violation of California Business & Professions Code §§ 17200,**

22                                **et seq.)**

23         71.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

24  paragraphs 1 through 19 in this Complaint.

25         72.    Defendants, and each of them, are "persons" as defined under California Business

26  & Professions Code § 17201.

27         73.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

28  unlawful, and harmful to Plaintiff, other Class members, and to the general public.  Plaintiff seek

                                    17

1   to enforce important rights affecting the public interest within the meaning of Code of Civil

2   Procedure § 1021.5.

3        74.   Defendants' activities, as alleged herein, are violations of California law, and

4   constitute unlawful business acts and practices in violation of California Business & Professions

5   Code §§ 17200, *et seq.*

6        75.   A violation of California Business & Professions Code §§ 17200, *et seq.* may be

7   predicated on the violation of any state or federal law. All of the acts described herein as

8   violations of, among other things, the California Labor Code, are unlawful and in violation of

9   public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous,

10   and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of

11   California Business & Professions Code §§ 17200, *et seq.*

12                           **Failure to Pay Minimum Wages**

13        76. Defendants' failure to pay minimum wages, and other benefits in violation of the

14   California Labor Code constitutes unlawful and/or unfair activity prohibited by California

15   Business & Professions Code §§ 17200, *et seq.*

16                           **Failure to Pay Overtime Wages**

17        77. Defendants' failure to pay overtime compensation and other benefits in violation of

18   California Labor Code §§ 510, 1194, and 1198 constitutes unlawful and/or unfair activity

19   prohibited by California Business & Professions Code §§ 17200, *et seq.*

20             **Failure to Maintain Accurate Records of All Hours Worked**

21        78. Defendants' failure to maintain accurate records of all hours worked in accordance

22   with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or

23   unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

24                        **Failure to Provide Meal Periods**

25        79. Defendants' failure to provide meal periods in accordance with California Labor Code

26   §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or

27   unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

28

**Failure to Maintain Accurate Records of Meal Periods**

80. Defendants' failure to maintain accurate records of employee meal periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

**Failure to Authorize and Permit Rest Periods**

81. Defendants' failure to authorize and permit rest periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq.*

**Failure to Provide Accurate Itemized Wage Statements**

82. Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

83. By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

84. Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

85. Plaintiff, individually, and on behalf of members of the putative Class, are entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

86. Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them,

19

1  from engaging in any of the above-described unfair, unlawful and/or fraudulent business
2  practices in the future.

3      87.    Plaintiff, individually, and on behalf of members of the putative class, have no
4  plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members
5  suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business
6  practices. As a result of the unfair, unlawful and/or fraudulent business practices described
7  above, Plaintiff, individually, and on behalf of members of the putative Class, suffered and will
8  continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from
9  continuing to engage in said unfair, unlawful and/or fraudulent business practices.

10     88.    Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth
11  herein above, they will continue to avoid paying the appropriate taxes, insurance and other
12  withholdings.

13     89.    Pursuant to California Business & Professions Code §§ 17200, et seq., Plaintiff
14  and putative Class Members are entitled to restitution of the wages withheld and retained by
15  Defendants during a period that commences four years prior to the filing of this complaint; a
16  permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and
17  Class Members; an award of attorneys' fees pursuant to California Code of Civil Procedure §
18  1021.5 and other applicable laws; and an award of costs.

19                          <u>**PRAYER FOR RELIEF**</u>
20      Plaintiff, individually, and on behalf of all others similarly situated only with respect to
21  the class claims, pray for relief and judgment against Defendants, jointly and severally, as
22  follows:

23                          <u>Class Certification</u>
24     1.     That this action be certified as a class action with respect to the First, Second,
25  Third, Fourth, Fifth, Sixth, and Eighth Causes of Action;
26     2.  That Plaintiff be appointed as the representative of the Class; and
27     3.  That counsel for Plaintiff be appointed as Class Counsel.
28

CLASS ACTION COMPLAINT

<div style="text-align: center;">As to the First Cause of Action</div>

4. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum wages due;

5. For general unpaid wages as may be appropriate;

6. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

7. For liquidated damages;

8. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code § 1194(a); and,

9. For such other and further relief as the Court may deem equitable and appropriate.

<div style="text-align: center;">As to the Second Cause of Action</div>

10. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due;

11. For general unpaid wages at overtime wage rates as may be appropriate;

12. For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due;

13. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code § 1194(a); and,

14. For such other and further relief as the Court may deem equitable and appropriate.

<div style="text-align: center;">As to the Third Cause of Action</div>

15. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 226.7 and 512, and the IWC Wage Orders;

16. For unpaid meal period premium wages as may be appropriate;

17. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

<div style="text-align: center;">21</div>
<div style="text-align: center;">CLASS ACTION COMPLAINT</div>

18. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and for costs of suit incurred herein; and

19. For such other and further relief as the Court may deem equitable and appropriate.

As to the Fourth Cause of Action

20. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 226.7 and 512, and the IWC Wage Orders;

21. For unpaid rest period premium wages as may be appropriate;

22. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

23. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and for costs of suit incurred herein; and

24. For such other and further relief as the Court may deem equitable and appropriate.

As to the Fifth Cause of Action

25. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of termination of the employment;

26. For statutory wage penalties pursuant to California Labor Code § 203 for former employees who have left Defendants' employ;

27. For pre-judgment interest on any unpaid wages from the date such amounts were due;

28. For reasonable attorneys' fees and for costs of suit incurred herein; and

29. For such other and further relief as the Court may deem equitable and appropriate.

As to the Sixth Cause of Action

30. That the Court declare, adjudge and decree that Defendants violated the record keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and willfully failed to provide accurate itemized wage statements thereto;

31. For statutory penalties and actual damages pursuant to California Labor Code § 226(e);

CLASS ACTION COMPLAINT

32. For injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h);

33. For reasonable attorneys' fees and for costs of suit incurred herein; and

34. For such other and further relief as the Court may deem equitable and appropriate.

As to the Seventh Cause of Action

35. That the Court declare, adjudge and decree that Defendants violated California Business & Professions Code §§ 17200, *et seq.* by failing to pay wages for all hours worked (including minimum and overtime wages), failing to provide meal periods, failing to maintain accurate records of meal periods, failing to authorize and permit rest periods, failing to maintain accurate records of all hours worked and meal periods, and failing to furnish accurate wage statements;

36. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment interest from the day such amounts were due and payable;

37. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code §§ 17200 *et seq.*;

38. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

39. For injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code §§ 17200, *et seq.*; and,

40. For such other and further relief as the Court may deem equitable and appropriate.

As to all Causes of Action

41. For any additional relief that the Court deems just and proper.

CLASS ACTION COMPLAINT

1    Dated: September 16, 2020                    Respectfully submitted,

2                                                 MOON & YANG, APC

3                                          By: _____

4                                                 Kane Moon
                                                  Allen Feghali
5                                                 Attorneys for Plaintiff

6

7                              **DEMAND FOR JURY TRIAL**

8            Plaintiff demands a trial by jury as to all causes of action triable by jury.

9

10   Dated: September 16, 2020                    MOON & YANG, APC

11                                         By: _____

12                                                Kane Moon
                                                  Allen Feghali
13                                                Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              CLASS ACTION COMPLAINT

10/2/2020                          https://clientservicesuragents.com/prvt/sop_transmittal.php?suid=1861



| | Universal Registered Agents |
|---|---|
| URA Universal Registered Agents | 7500 West 151st St.<br>P.O. Box 23788<br>Overland Park, KS 66283 |

Service of Process Transmittal Information

| Transmittal Number: CALIFORNIA-1 | Date / Time Served: 2020-09-24 14:08:51 |
|---|---|
| Entity Name: Gillig LLC | Document Served: Summons and Complaint |
| Jurisdiction: CALIFORNIA | Method of Service: Process Server |
| Nature of Action: Employment; Failure to Pay Minimum Wage | Number of Pages: 29 |
| Title of Action: RONALD TOLENTINO, individually and on behalf of others similarly situated vs. GILLIG, LLC, a limited liability company and DOES 1 through 10, inclusive | Fed Ex Tracking (if Applicable): |
| Court or Agency: SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ALAMEDA | |
| Case Number: RG20073930 | |
| Appearance / Answer Date: 10/25/2020 | |
| Plantiffs Attorney:<br>Kane Moon<br>Moon & Yang, APC<br>1055 W. Seventh Street, Ste. 1880<br>Los Angeles, CA 90017<br>213-232-3128 | |

Comments:

If you have any questions please contact 855-236-9172

**EXHIBIT B**

WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:      (408) 279-8700
Facsimile:      (408) 279-3244
Email:          mwarren@mcmanislaw.com

Attorneys for Defendant
GILLIG, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: RG20073930<br><br>**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Complaint Filed:    September 16, 2020<br>Trial Date:    Not set |

Defendant Gillig, LLC ("Defendant"), hereby answers the Complaint of Plaintiff Ronald Tolentino ("Plaintiff") and the Putative Class as follows:

## **GENERAL DENIAL**

Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally denies each and every allegation of said Complaint, the whole thereof, including each and every alleged cause of action contained therein, and further denies that Plaintiff is entitled to the relief requested or any relief at all, that Plaintiff sustained or will sustain damages in the sum or sums alleged, in any other sum, or at all, or is entitled to attorneys' fees in the sum or sums alleged, or any other sum or sums, or at all.

///

1

1
2
3

**AFFIRMATIVE DEFENSES**

In further answer to Plaintiff's Complaint, Defendant states the following facts as separate affirmative defenses to each of the allegations of Plaintiff's Complaint:

4

**FIRST AFFIRMATIVE DEFENSE**

5

**[Failure to State a Cause of Action]**

6
7
8

As and for a first, separate and affirmative defense to the complaint, Defendant alleges that Plaintiff's complaint, and each of the purported causes of action contained therein, fails to state facts sufficient to constitute a cause or causes of action against Defendant.

9

**SECOND AFFIRMATIVE DEFENSE**

10

**[Failure to Exhaust]**

11
12
13
14
15

As and for a further affirmative defense to the complaint, Defendant alleges that the complaint and each cause of action alleged therein are barred because Plaintiff failed to timely and completely exhaust his requisite administrative and/or contractual remedies available to them under applicable Collective Bargaining Agreements, the California Labor Code or other provisions of law prior to commencing this action.

16

**THIRD AFFIRMATIVE DEFENSE**

17

**[Federal Preemption]**

18
19
20
21

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that to the extent Plaintiff's claims involve conduct that is, or seek remedies that are, governed or regulated by federal law, such claims are preempted.

22

**FOURTH AFFIRMATIVE DEFENSE**

23

**[Federal Preemption – Labor Management Relations Act]**

24
25
26

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are preempted by Section 301 of the Labor Management Relations Act.

27

///

28

///

2

1

**FIFTH AFFIRMATIVE DEFENSE**

2

**[Exemption Under California Labor Code Section 514]**

3     As and for a further affirmative defense to the complaint, Defendant alleges that the

4  complaint and each cause of action alleged therein are barred because they are preempted by

5  collective bargaining agreements which qualify to exempt Defendant from overtime, meal and

6  rest period requirements and other requirements of the California Labor Code.

7

**SIXTH AFFIRMATIVE DEFENSE**

8

**[Binding Arbitration Under Collective Bargaining Agreement]**

9     As and for a further affirmative defense to the complaint, and to each and every cause of

10  action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are

11  preempted by collective bargaining agreements and subject to binding arbitration under those

12  agreements.

13

**SEVENTH AFFIRMATIVE DEFENSE**

14

**[Preemption – Supremacy Clause]**

15     As and for a further affirmative defense to the complaint, and to each and every cause of

16  action contained therein, Defendant asserts that the Supremacy Clause of the United States

17  Constitution bars Plaintiff's claims. *Lorrilard Tobacco Co. v. Reilly* (2001) 533 U.S. 525.

18

**EIGHTH AFFIRMATIVE DEFENSE**

19

**[Field Preemption]**

20     As and for a further affirmative defense to the complaint, and to each and every

21  cause of action contained therein, Defendant alleges that the Complaint and each cause of action

22  set forth therein, or some of them, cannot be maintained against Defendant because they are

23  preempted by field preemption.

24

**NINTH AFFIRMATIVE DEFENSE**

25

**[Non-Certifiable Class]**

26     As and for a further affirmative defense to the complaint, and to each and every cause of

27  action contained therein, Defendant alleges that Plaintiff cannot satisfy the requirements of

28  California Code of Civil Procedure section 382 because individual questions of fact and law

3

1  predominate over common questions, Plaintiffs' claims are not typical of those belonging to the

2  putative class members, the class is not sufficiently numerous, and/or other class requirements

3  cannot be satisfied.  Accordingly, this action is not properly brought as a class action.

4  **TENTH AFFIRMATIVE DEFENSE**

5  **[Inadequacy of Class Representative]**

6  As and for a further affirmative defense to the complaint, and to each and every

7  cause of action contained therein, Defendant alleges that Plaintiff is not a proper representative

8  of the class he purports to represent.

9  **ELEVENTH AFFIRMATIVE DEFENSE**

10  **[Lack of Superiority]**

11  As and for a further affirmative defense to the complaint, and to each and every cause of

12  action contained therein, Defendant alleges that the class action procedure is not the superior

13  method for adjudicating Plaintiff's claims or the claims of the alleged class and, accordingly, this

14  action is not properly brought as a class action.

15  **TWELFTH AFFIRMATIVE DEFENSE**

16  **[Lack of Standing]**

17  As and for a further affirmative defense to the complaint, and to each and every cause of

18  action contained therein, Defendant alleges that Plaintiff lacks standing to assert any purported

19  cause of action alleged in the Complaint and lacks standing to represent the putative class.

20  **THIRTEENTH AFFIRMATIVE DEFENSE**

21  **[Statute of Limitations]**

22  As and for a further affirmative defense to the complaint, and to each and every cause of

23  action contained therein, Defendant alleges that the Complaint, and each and every purported

24  cause of action alleged therein, is barred by the applicable statutes of limitations, including but

25  not limited to, California Labor Code Section 203; California Code of Civil Procedure Sections

26  337,338, 339,340 and 343; and California Business & Professions Code Section 1 7208.

27  ///

28  ///

4

1

## FOURTEENTH AFFIRMATIVE DEFENSE

2

### [Waiver]

3       As and for a further affirmative defense to the complaint, and to each and every cause of

4   action contained therein, Defendant alleges that by his own acts and omissions, Plaintiff has

5   waived any claims and purported claims for relief contained in the complaint.

6

## FIFTEENTH AFFIRMATIVE DEFENSE

7

### [Unclean Hands]

8       As and for a further affirmative defense to the complaint, and to each and every cause of

9   action contained therein, Defendant alleges that Plaintiff's claims are barred by the doctrine of

10  unclean hands.

11

## SIXTEENTH AFFIRMATIVE DEFENSE

12

### [Laches]

13          As and for a further affirmative defense to the complaint, and to each and every

14  cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the

15  doctrine of laches.

16

## SEVENTEENTH AFFIRMATIVE DEFENSE

17

### [Estoppel]

18          As and for a further affirmative defense to the complaint, and to each and every

19  cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the

20  doctrine of estoppel.

21

## EIGHTEENTH AFFIRMATIVE DEFENSE

22

### [Privilege and Justification]

23      As and for a further affirmative defense to the complaint, and to each and every cause of

24  action contained therein, Defendant alleges that Plaintiff's claims are barred because Defendant's

25  conduct was privileged and justified.

26

## NINETEENTH AFFIRMATIVE DEFENSE

27

### [Adequate Remedies at Law]

28      As and for a further affirmative defense to the complaint, and to each and every cause of

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT; CASE NO. RG20073930

1   action contained therein, Defendant alleges that Plaintiff is not entitled to equitable relief insofar

2   as she has adequate remedies at law.

3   ## TWENTIETH AFFIRMATIVE DEFENSE

4   ### [Set-Off/Offset/Recoupment]

5   As and for a further affirmative defense to the complaint, and to each and every cause of

6   action contained therein, Defendant alleges that the Complaint, and each and every purported

7   cause of action alleged therein, is subject to setoff, offset and/or recoupment to the extent

8   Plaintiff has already been compensated for the hours worked for which he seeks compensation

9   here.

10   ## TWENTY- FIRST AFFIRMATIVE DEFENSE

11   ### [Labor Code Section 203 – No Willful or Intentional Violation]

12   As and for a further affirmative defense to the complaint, and to each and every cause of

13   action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the

14   putative class members are entitled to any additional compensation, it has not willfully or

15   intentionally failed to pay any such additional compensation to Plaintiff and/or the putative class

16   members, within the meaning and scope of California Labor Code section 203.

17   ## TWENTY- SECOND AFFIRMATIVE DEFENSE

18   ### [Bona Fide Dispute]

19   As and for a further affirmative defense to the complaint, and to each and every cause of

20   action contained therein, Defendant alleges there exists a *bona.fide* dispute as to whether any

21   further compensation is actually due to Plaintiff and/or the putative class members and, if so, the

22   amount thereof.

23   ## TWENTY- THIRD AFFIRMATIVE DEFENSE

24   As and for a further affirmative defense to the complaint, and to each and every cause of

25   action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the

26   putative class members were not provided with a proper itemized statement of wages and

27   deductions, Plaintiff and the putative class members are not entitled to recover damages or

28   penalties because Defendant's alleged failure to comply with California Labor Code section 226

6

1   (a) was not a "knowing and intentional failure" under California Labor Code section 226(e).

2                **TWENTY- FOURTH AFFIRMATIVE DEFENSE**

3                         **[Lack of Specificity]**

4       As and for a further affirmative defense to the complaint, and to each and every cause of

5   action contained therein, Defendant alleges that Plaintiff has failed to alleged special damages

6   with requisite specificity.

7                 **TWENTY- FIFTH AFFIRMATIVE DEFENSE**

8   **[Civil Penalties Unconstitutional – Due Process and Separation of Powers]**

9       As and for a further affirmative defense to the complaint, and to each and every cause of

10   action contained therein, Defendant asserts the penalties sought in Plaintiff's Complaint violate

11   the Due Process and Separation of Powers Clauses of the United States and California

12   Constitutions. *Lockyer v. R.J. Reynolds Tobacco Co.,* 37 CaL 4th 707 (2005); *Ratner v.*

13   *Chemical Bank New York Trust Co.,* 54 F.R.D. 412 (S.D.N.Y. 1972).

14                 **TWENTY- SIXTH AFFIRMATIVE DEFENSE**

15                   **[After-Acquired Evidence]**

16       As and for a further affirmative defense to the complaint, and to each and every cause of

17   action contained therein, Defendant alleges that Plaintiff is barred, in whole or in part, from

18   recovery of any damages based upon the doctrine of after-acquired evidence.

19               **TWENTY- SEVENTH AFFIRMATIVE DEFENSE**

20                     **[Uncertainty]**

21       As and for a further affirmative defense to the complaint, and to each and every cause of

22   action contained therein, Defendant alleges the Complaint, and the claims asserted therein, are

23   uncertain.

24                 **TWENTY- EIGHTH AFFIRMATIVE DEFENSE**

25                 **[Mitigation of Damages]**

26       As and for a further affirmative defense to the complaint, and to each and every cause of

27   action contained therein, Defendant alleges that Plaintiff and any purported class members, have

28   failed to exercise reasonable care to mitigate their damages, if any were suffered, and that their

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT; CASE NO. RG20073930

1    right to recover against Defendant should be reduced and/or eliminated by such a failure.

2    ## TWENTY- NINTH AFFIRMATIVE DEFENSE

3    ### [Violation of Due Process]

4        As and for a further affirmative defense to the complaint, and to each and every cause of

5    action contained therein, Defendant alleges that certification of a class, and the prosecution of a

6    representative action on behalf of the general public under California Business and Professions

7    Code section 17200 *et seq.,* as applied to the facts and circumstances of this case, would

8    constitute a denial of Defendant's due process rights, both substantive and procedural, in

9    violation of the Fourteenth Amendment to the United States Constitution and the California

10   Constitution.

11   ## THIRTIETH AFFIRMATIVE DEFENSE

12   ### [Breach of Duty]

13       As and for a further affirmative defense to the complaint, and to each and every cause of

14   action contained therein, Defendant alleges Plaintiff's claims, and those of any putative class

15   members, are barred by their own breach of the duties owed to Defendant under California Labor

16   Code section 2854, 2856, 2857, 2858 and/or 2859.

17   ## THIRTY-FIRST AFFIRMATIVE DEFENSE

18   ### [No Penalties -- Good Faith Dispute]

19       As and for a further affirmative defense to the complaint, and to each and every cause of

20   action contained therein, Defendant alleges that any violation of the Labor Code or an Order of

21   the Industrial Welfare Commission was an act or omission made in good faith and Defendant

22   had reasonable grounds for believing that its wage payment practices complied with applicable

23   laws and that any such act or omission was not a violation of the Labor Code, the common law

24   or any Order of the Industrial Welfare Commission such that Plaintiff and/or the putative class

25   members are not entitled to any penalties or damages in excess of any wages/overtime which

26   might be found to be due. Specifically, Plaintiff cannot recover Labor Code section 203 or Labor

27   Code section 226(e) civil penalties because any alleged failure to pay wages or provide

28   compliant wage statements was based on a good faith dispute regarding the applicable law or

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT; CASE NO. RG20073930

1  facts.

2  **THIRTY-SECOND AFFIRMATIVE DEFENSE**

3  **[Failure to State a Claim for Attorneys' Fees and Costs]**

4  As and for a further affirmative defense to the complaint, and to each and every cause of

5  action contained therein, Defendant alleges that the Complaint fails to state a claim for attorneys'

6  fees under Labor Code section 226, Code of Civil Procedure 1021.5, Business and Professions

7  Code section 17200, *et seq.,* or any other basis.

8  **THIRTY-THIRD AFFIRMATIVE DEFENSE**

9  **[Failure to State a Claim for Attorneys' Fees and Costs]**

10  As and for a further affirmative defense to the complaint, and to each and every cause of

11  action contained therein, Defendant alleges that any failure to comply with Defendant's work-

12  time recording and overtime polices and requirements, was the result of failure by Plaintiff

13  and/or the putative class members to follow Defendant's reasonable instructions.

14  **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

15  **[No Harm Suffered]**

16  As and for a further affirmative defense to the complaint, and to each and every cause of

17  action contained therein, Defendant alleges that Plaintiff has not suffered and will not suffer

18  irreparable harm or any harm as a result of any of the alleged conduct of Defendant.

19  **THIRTY-FIFTH AFFIRMATIVE DEFENSE**

20  **[Additional Affirmative Defenses]**

21  Defendant has not yet completed a thorough investigation and study or completed

22  discovery of all facts and circumstances of the subject matter of the complaint and, accordingly,

23  reserves the right to amend, modify, revise, or supplement its Answer, and to plead such further

24  defenses and take such further actions as it deems proper and necessary in its defense upon

25  completion of said investigation and study.

26  WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

27      1.    That Plaintiff take nothing by this action and that the complaint be dismissed in its

28          entirety with prejudice;

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT; CASE NO. RG20073930

1    2.    For all reasonable costs and attorneys' fees incurred by Defendant in connection

2          with the defense of this matter; and

3    3.    For such other and further relief as the Court in the exercise of its discretion

4          deems just and proper.

5    DATED:  October 21, 2020                    McMANIS FAULKNER

6

7

8                                               MICHAEL WARREN
                                                Attorneys for Defendant
9                                               GILLIG, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT; CASE NO. RG20073930

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113.  My email address is: edresser@mcmanislaw.com.

On October 21, 2020, I served the foregoing document described as:

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kane Moon, Esq.<br>Allen Feghali<br>MOON & YANG, APC<br>1055 W. Seventh St., #1880<br>Los Angeles, CA  90017<br>T:  (213) 232-3128 / F:  (213) 232-3125<br>E:  kane.moon@moonyanglaw.com<br>      allen.feghali@moonyanglaw.com | Attorneys for Plaintiff<br>RONALD TOLENTINO |

☒     **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above or on the attached service list.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒     **(STATE)**
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 21, 2020, at San Jose, California.

_____
Elise Dresser

1

**Dresser, Elise**

| | |
|---|---|
| **From:** | Express Network <orders@expressnetworkas.com> |
| **Sent:** | Wednesday, October 21, 2020 1:35 PM |
| **To:** | Dresser, Elise |
| **Subject:** | QC # 45256 : Per Court Drop. |

QC # 45256
Your Reference : 2003005
Case Name: TOLENTINO V. GILLIG
Case Number : RG20073930
Documents : ANSWER

Good Afternoon,

Please be advised that due to the current COVID-19 court closures and limitations, all filings must be placed in the court's dropbox. Your documents have been prepared and left with additional copies and a stamped envelope for the clerk to mail back conformed copies. The court will honor today's date as long as there are no issues with your document(s) that may cause a rejection. Should you have any questions or concerns, please do not hesitate to contact us at (888) 232-6077.

Please DO NOT reply to this email.

If you have any questions, please call our Rush Filing Hotline at (888) 232-6077.

Your helpful comments and feedback are much appreciated and will help us improve the quality of service we provide our clients.

Please let us know how satisfied you were with the service we provided.



| Very Unhappy | Unhappy | Happy | Very Happy |

We here at Express Network greatly value your business.

Did you know that we currently provide the following services:

-Service of Process
-E-filing and Court Services
-24/7 Messenger Services

-Records Retrieval / Subpoena Preparation

-Digital Imaging

-Electronic Discovery

-Wage Levies

-Bank Levies

-Skip Tracing

If you have any questions about these additional services,
please contact our office at (888) 232-6077. Thank you.

CONFIDENTIALITY NOTICE:

The information contained in this electronic mail transmission is confidential.

It may also be privileged work product or proprietary information.

This information is intended for the exclusive use of the addressee(s).

If you are not the intended recipient, you are hereby notified that any use,

disclosure, dissemination, distribution (other than to the addressee(s)),

copying or taking of any action because of this information is strictly prohibited.

To Alameda Superior Court     Page 30 of 31     2020-09-16 21:08:55 (GMT)     12132692886  From MOON &amp; YANG

CM-010

FILED BY FAX
ALAMEDA COUNTY
September 16, 2020
CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy
CASE NUMBER:
RG20073930

MOON & YANG APC
Kane Moon (SBN 249834), Allen Feghali (SBN 301080)
1055 W. 7th Street, Suite 1880
Los Angeles, CA 90017
TELEPHONE NO: 213-232-3128     FAX NO: 213-232-3125
ATTORNEY FOR (Name): Plaintiff Ronald Tolentino

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Court House

CASE NAME:
Tolentino v. Gillig, LLC

**CIVIL CASE COVER SHEET**

Date: 09/16/2020
Kane Moon

CIVIL CASE COVER SHEET

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

To Parties in Rule 3.740 Collections Cases. A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

To Parties in Complex Cases. In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) (*if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability (*not asbestos or
   toxic/environmental*) (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) (*not civil
   harassment*) (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract (*not unlawful detainer
         or wrongful eviction*)
   Contract/Warranty Breach–Seller
      Plaintiff (*not fraud or negligence*)
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage (*not provisionally
   complex*) (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property (*not eminent
      domain, landlord/tenant, or
      foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   (*arising from provisionally complex
   case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment (*non-
      domestic relations*)
   Sister State Judgment
   Administrative Agency Award
      (*not unpaid taxes*)
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
   above*) (42)
   Declaratory Relief Only
   Injunctive Relief Only (*non-
      harassment*)
   Mechanics Lien
   Other Commercial Complaint
      Case (*non-tort/non-complex*)
   Other Civil Complaint
      (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition (*not specified
   above*) (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

1   Kane Moon (SBN 249834)
    Allen Feghali (SBN 301080)
2   Enzo Nabiev (SBN 332118
    **MOON & YANG, APC**
3   1055 W. Seventh St., Suite 1880
    Los Angeles, California 90017
4   Telephone: (213) 232-3128
    Facsimile: (213) 232-3125
5   E-mail: kane.moon@moonyanglaw.com
    E-mail: allen.feghali@moonyanglaw.com
6   E-mail: enzo.nabiev@moonyanglaw.com

7   Attorneys for Plaintiff Ronald Tolentino

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                  **FOR THE COUNTY OF ALEMEDA**
10

11  RONALD TOLENTINO, individually, and on       Case No.: RG20073930
    behalf of all others similarly situated,
12                                                **NOTICE OF HEARINGS**

13                 Plaintiff,                     Complex Determination Hearing
                                                  Date:   October 27, 2020
14          vs.                                   Time:   3:00 p.m.
                                                  Dept.:  23
15
    GILLIG, LLC, a limited liability company; and Case Management Conference
16  DOES 1 through 10, inclusive,                 Date:   December 2, 2020
                                                  Time:   9:00 a.m.
17                 Defendants.                    Dept.:  23

18

19

20

21

22

23

24

25

26

27

28

FILED BY FAX
ALAMEDA COUNTY
September 29, 2020
CLERK OF
THE SUPERIOR COURT
By Nicole Hall, Deputy
CASE NUMBER:
**RG20073930**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE the Court has set hearings in Department 23 at Superior Court of California, County of Alameda, Administration Building located at 1221 Oak Street, Fourth Floor, Oakland, CA 94612. A true and correct copy of the order is attached hereto as "Exhibit A."

Dated: September 28, 2020

Respectfully submitted,
MOON & YANG, APC

By: _____

Kane Moon
Allen Feghali
Enzo Nabiev
Attorneys for Plaintiff

EXHIBIT A

Moon & Yang APC                              Gillig, LLC
Attn: Moon, Kane
1055 W 7th St.
#1880
Los Angeles, CA   90017

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino | No. RG20073930 |
| vs.          Plaintiff/Petitioner(s) | |
| Gillig, LLC | NOTICE OF HEARING |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:
Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 10/27/2020    TIME: 03:00 PM    DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
                1221 Oak Street, Oakland

Case Management Conference:
DATE: 12/02/2020    TIME: 09:00 AM    DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
                1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 23 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6939. Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 23.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions. Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For further information, go to Direct Calendar Departments at

http://apps.alameda.courts.ca.gov/domainweb.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 23.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 23 by e-mail at Dept23@alameda.courts.ca.gov or by phone at (510) 267-6939.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated: 09/21/2020                           Chad Finke, Executive Officer / Clerk of the Superior Court

                    By

                                                                                     Deputy Clerk

---

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 09/22/2020.

                    By

                                                                                     Deputy Clerk

**PROOF OF SERVICE**

STATE OF CALIFORNIA                )
                                   ) ss
COUNTY OF LOS ANGELES              )

    I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On September 21, 2020, I served the foregoing document described as:

**NOTICE OF HEARINGS**

  X   by placing ____ the original  X  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Universal Registered Agents, Inc.
2020 Hurley Way, Suite 350
Sacramento, CA 95825
*Agent for Service of Process for Defendant Gillig, LLC*

[X]  **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  **BY PERSONAL DELIVERY:** I delivered said document(s) to the office of the addressee shown above under whom it says delivered by personal delivery.

  X   (State)      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 21, 2020 at Los Angeles, California.

Ivette Hernandez
Type or Print Name             Signature

2
NOTICE OF HEARINGS

CIVIL COVER SHEET

Case 4:20-cv-07427   Document 1   Filed 10/22/20   Page 1 of 2

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ronald Tolentino, an individual

**(b)** County of Residence of First Listed Plaintiff   Unknown
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kane Moon/Allen Feghali, Moon & Yang, APC/(213) 232-3128
1055 W. Seventh St., #1880, Los Angeles, CA 90017

## DEFENDANTS

Gillig, LLC, a limited liability company, and DOES 1 through 10, inclusive

County of Residence of First Listed Defendant   Alameda County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
William Faulkner/Michael Warren / (408) 279-8700
McManis Faulkner, 50 W. San Fernando St., 10th Fl., San Jose CA
95113

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ◻ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ◻ 2   U.S. Government Defendant
- ◻ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ◻ 1 | Incorporated *or* Principal Place of Business In This State | ◻ 4 | ☒ 4 |
| Citizen of Another State | ◻ 2 | ◻ 2 | Incorporated *and* Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure of Property 21 USC § 881 | ◻ 422 Appeal 28 USC § 158 | ◻ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury – Product Liability | ◻ 690 Other | ◻ 423 Withdrawal 28 USC § 157 | ◻ 376 Qui Tam (31 USC § 3729(a)) |
| ◻ 130 Miller Act | ◻ 315 Airplane Product Liability | ◻ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | ◻ 400 State Reapportionment |
| ◻ 140 Negotiable Instrument | ◻ 320 Assault, Libel & Slander | | ◻ 710 Fair Labor Standards Act | ◻ 820 Copyrights | ◻ 410 Antitrust |
| ◻ 150 Recovery of Overpayment Of Veteran's Benefits | ◻ 330 Federal Employers' Liability | ◻ 368 Asbestos Personal Injury Product Liability | ◻ 720 Labor/Management Relations | ◻ 830 Patent | ◻ 430 Banks and Banking |
| ◻ 151 Medicare Act | ◻ 340 Marine | **PERSONAL PROPERTY** | ◻ 740 Railway Labor Act | ◻ 835 Patent—Abbreviated New Drug Application | ◻ 450 Commerce |
| ◻ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ◻ 345 Marine Product Liability | ◻ 370 Other Fraud | ◻ 751 Family and Medical Leave Act | ◻ 840 Trademark | ◻ 460 Deportation |
| | ◻ 350 Motor Vehicle | ◻ 371 Truth in Lending | ☒ 790 Other Labor Litigation | ◻ 880 Defend Trade Secrets Act of 2016 | ◻ 470 Racketeer Influenced & Corrupt Organizations |
| ◻ 153 Recovery of Overpayment of Veteran's Benefits | ◻ 355 Motor Vehicle Product Liability | ◻ 380 Other Personal Property Damage | ◻ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | ◻ 480 Consumer Credit |
| ◻ 160 Stockholders' Suits | ◻ 360 Other Personal Injury | ◻ 385 Property Damage Product Liability | | ◻ 861 HIA (1395ff) | ◻ 485 Telephone Consumer Protection Act |
| ◻ 190 Other Contract | ◻ 362 Personal Injury -Medical Malpractice | | **IMMIGRATION** | ◻ 862 Black Lung (923) | ◻ 490 Cable/Sat TV |
| ◻ 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 462 Naturalization Application | ◻ 863 DIWC/DIWW (405(g)) | ◻ 850 Securities/Commodities/ Exchange |
| ◻ 196 Franchise | ◻ 440 Other Civil Rights | **HABEAS CORPUS** | ◻ 465 Other Immigration Actions | ◻ 864 SSID Title XVI | ◻ 890 Other Statutory Actions |
| **REAL PROPERTY** | ◻ 441 Voting | ◻ 463 Alien Detainee | | ◻ 865 RSI (405(g)) | ◻ 891 Agricultural Acts |
| ◻ 210 Land Condemnation | ◻ 442 Employment | ◻ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ◻ 893 Environmental Matters |
| ◻ 220 Foreclosure | ◻ 443 Housing/ Accommodations | ◻ 530 General | | ◻ 870 Taxes (U.S. Plaintiff or Defendant) | ◻ 895 Freedom of Information Act |
| ◻ 230 Rent Lease & Ejectment | ◻ 445 Amer. w/Disabilities– Employment | ◻ 535 Death Penalty | | ◻ 871 IRS–Third Party 26 USC § 7609 | ◻ 896 Arbitration |
| ◻ 240 Torts to Land | ◻ 446 Amer. w/Disabilities–Other | **OTHER** | | | ◻ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ◻ 245 Tort Product Liability | ◻ 448 Education | ◻ 540 Mandamus & Other | | | |
| ◻ 290 All Other Real Property | | ◻ 550 Civil Rights | | | ◻ 950 Constitutionality of State Statutes |
| | | ◻ 555 Prison Condition | | | |
| | | ◻ 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ◻ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ◻ 3 Remanded from Appellate Court
- ◻ 4 Reinstated or Reopened
- ◻ 5 Transferred from Another District *(specify)*
- ◻ 6 Multidistrict Litigation–Transfer
- ◻ 8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Labor Management Relations Act 29 U.S.C. Section 185
Brief description of cause:
Overtime wages, minimum wage violations, missed meal and rest breaks, inaccurate wage statements, failure to timely pay final wages

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ◻ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE

DOCKET NUMBER

## X. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

Place an "X" in One Box Only)   ☒ SAN FRANCISCO/OAKLAND   ◻ SAN JOSE   ◻ EUREKA-MCKINLEYVILLE

DATE   10/22/2020          SIGNATURE OF ATTORNEY OF RECORD   /s/ Michael Warren

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

e) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

II. **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

(1) _United States plaintiff._ Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

(2) _United States defendant._ When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

(3) _Federal question._ This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

(4) _Diversity of citizenship._ This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.

(1) _Original Proceedings._ Cases originating in the United States district courts.

(2) _Removed from State Court._ Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

(3) _Remanded from Appellate Court._ Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

(4) _Reinstated or Reopened._ Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

(5) _Transferred from Another District._ For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(6) _Multidistrict Litigation Transfer._ Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

(8) _Multidistrict Litigation Direct File._ Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

Please note that there is no Origin Code 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless diversity. Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** _Class Action._ Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

_Demand._ In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

_Jury Demand._ Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

IX. **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:    mwarren@mcmanislaw.com

6  Attorneys for Defendant
   GILLIG, LLC
7

8                UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO/OAKLAND DIVISION

11  RONALD TOLENTINO, individually, and on      Case No.:
    behalf of all others similarly situated,
12
                                                DECLARATION OF MARLA LOAR IN
13                   Plaintiff,                  SUPPORT OF REMOVAL OF ACTION
                                                UNDER 28 U.S.C. §§ 1331, 1441 AND 1446
14          vs.

15  GILLIG, LLC, a limited liability company; and
    DOES 1 through 10, inclusive,
16
                     Defendants.
17

18       I, MARLA LOAR, declare as follows:

19       1.      I am currently employed as Vice President, Human Resources for Gillig, LLC

20  ("Gillig"). I have been employed by Gillig since 2016. I am providing this declaration in

21  support of Gillig's Notice of Removal. I have personal knowledge of the facts set forth herein,

22  which are known by me to be true and correct, and if called as a witness, I could and would

23  competently testify thereto.

24       2.      As a Vice President, Human Resources, I have access to and knowledge of

25  records and other information retained by Gillig pertaining to its current and former employees.

26  My role also requires that I be familiar with Gillig's policies. I also have access to, and

27  familiarity with, Gillig's employee personnel files, employee time records, and payroll records.

28

                                              1
   DECLARATION OF MARLA LOAR IN SUPPORT OF REMOVAL

3.     Ronald Tolentino was employed by Gillig and worked for Gillig during the period of May 2002 to June 2020.

4.     I have reviewed the Complaint in the above-captioned matter, including the definition of the proposed class.  Members of the proposed class are represented by either Teamsters Local 853 or by Auto, Marine and Specialty Painters Local 1176 (collectively "Unions") and their employment is governed by separate CBAs between Gillig and both Unions, respectively.  Ronald Tolentino was a member of Teamsters Local 853 during his employment with Gillig, and thus his employment was subject to the CBA between Gillig and Teamsters Local 853.  A true and correct copy of the two active CBAs between Gillig and Teamsters Local 853 and Local 1176, respectively, are attached hereto as Exhibits 1 and 2.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

DATED:  October 21, 2020 at Livermore, CA

MARLA LOAR

DECLARATION OF MARLA LOAR IN SUPPORT OF REMOVAL

# EXHIBIT 1

# A G R E E M E N T

between

## GILLIG CORPORATION

and

## TEAMSTERS LOCAL 853

For the period:

January 1, 2007

through

December 31, 2011

Covering: Production and Maintenance Employees
25800 Clawiter Road
Hayward, CA  94545

# TABLE OF CONTENTS

| SECTION | | TOPIC | PAGE |
|---|---|---|---|
| SECTION | 1 | RECOGNITION.......................................... | 3 |
| SECTION | 2 | MANAGEMENT RIGHTS................................ | 3 |
| SECTION | 3 | UNION SECURITY ...................................... | 3 |
| SECTION | 4 | HOURS AND OVERTIME............................... | 4 |
| SECTION | 5 | HOLIDAYS .............................................. | 7 |
| SECTION | 6 | VACATIONS.............................................. | 8 |
| SECTION | 7 | SENIORITY............................................... | 9 |
| SECTION | 8 | INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM........ | 12 |
| SECTION | 9 | SETTLEMENT OF DISPUTES............................ | 13 |
| SECTION | 10 | STRIKE AND LOCKOUT................................ | 14 |
| SECTION | 11 | HEALTH AND WELFARE................................ | 15 |
| SECTION | 12 | PENSION PLAN.......................................... | 16 |
| SECTION | 13 | NO DISCRIMINATION................................... | 16 |
| SECTION | 14 | LEAVE OF ABSENCE.................................... | 16 |
| SECTION | 15 | UNION REPRESENTATIVES AND BULLETIN BOARDS........ | 18 |
| SECTION | 16 | INDUSTRIAL INJURIES.................................. | 18 |
| SECTION | 17 | GENERAL PROVISIONS.................................. | 18 |
| SECTION | 18 | SICK LEAVE.............................................. | 19 |
| SECTION | 19 | SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS. | 20 |
| SECTION | 20 | WAGES AND CLASSIFICATIONS (SEE ALSO APPENDIX "A")... | 21 |
| SECTION | 21 | PLANT CLOSURE AND RELOCATION....................... | 21 |
| SECTION | 22 | SEVERANCE.............................................. | 22 |
| SECTION | 23 | SUB-CONTRACTING...................................... | 22 |
| SECTION | 24 | DURATION............................................... | 23 |
| | | | |
| APPENDIX | A | CLASSIFICATIONS AND WAGE RATES..................... | 24 |
| | | PROGRESSION .......................................... | 24 |
| | | LEADPERSONS & FOREPERSONS ......................... | 25 |
| | | MINIMUM RATES ....................................... | 25 |
| | | EMPLOYEES HIRED AFTER MARCH 1, 1988................ | 25 |
| | | ECONOMICS ............................................. | 25 |
| | | | |
| LETTER | | ATTENDANCE & TARDINESS CONTROL.................... | 26 |
| LETTER | | VACATIONS & HOLIDAYS - "WORKABLE CREW"............ | 27 |
| LETTER | | DRUG AND ALCOHOL POLICY............................ | 28 |
| LETTER | | MARTIN LUTHER KING'S BIRTHDAY....................... | 29 |
| LETTER | | SENIORITY .............................................. | 30 |

2

## AGREEMENT

This Agreement made and entered this _____ day, of _____, 2007, by and between **GILLIG CORPORATION**, hereinafter called the **Company**, and **TEAMSTERS LOCAL #853, INTERNATIONAL BROTHERHOOD OF TEAMSTERS**, hereinafter called the **Union**.

### WITNESSETH:

### SECTION 1. RECOGNITION

The Union is recognized as the sole collective bargaining agent for all production and maintenance, employees, including working foremen, employed at the Company's 25800 Clawiter Road, Hayward, California facility; excluding production control personnel, office clerical employees, guards and supervisors as defined in the Act.

In the event this facility is relocated in Alameda County, or if production and maintenance operations are expanded or transferred to another location in Alameda County, and if operations at the new location are substantially the same as, or directly connected with, the present operations so that the new location would be considered an accretion to the present bargaining unit under the National Labor Relations Act, this Agreement shall be in full force and effect at such new location.

### SECTION 2. MANAGEMENT RIGHTS

The management of the business and the direction of the working force including but not limited to the right to direct, plan, and control plant operations; to establish or schedule work to be performed; to hire and promote employees, and to discipline, or discharge employees for just cause; to discontinue jobs or work or to lay off employees for just cause; to discontinue jobs or work or to lay off employees for lack of work or other legitimate reasons not in conflict with this Agreement; to introduce new and improved; methods or facilities, to change existing methods or facilities, or to purchase supplies and service for the performance of its business; to determine the products to be manufactured and the process and means of manufacture; are exclusively the right of the management of the Company and all rights inherently a function of management and not relinquished in this Agreement remain solely with management; provided that none of the above provisions shall be used for the purpose of discriminating against any employee because of his or her membership in the Union. Should a dispute arise concerning these management rights or responsibilities, the dispute should be treated in accordance with provisions of Section 9 of this Agreement and any decision reached pursuant to Section 9 must be within the scope and terms of this Agreement.

### SECTION 3. UNION SECURITY

3.1   **Union Security**

It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement, shall remain members in good standing, and those who are not members on the effective date of this Agreement, shall on the thirty-first (31st) calendar day following the effective date of this Agreement, become and thereafter remain members in good standing in the Union.

It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall on the thirty-first (31st) calendar day following the beginning of such employment, become and thereafter remain members in good standing in the Union. The Company, upon written request of the Union, shall discharge any employee within seven (7) calendar days after receipt of such notice who fails to tender the periodic dues and initiation fees uniformly required by the Union as a condition of requiring or retaining membership in the Union. If the Union has notified the Company in writing prior to the expiration of the seven (7) days, that the employee has paid the amounts owing, the discharge shall not take place.

3

3.2    <u>Hiring</u>

The Company agrees that in hiring to fill all vacancies or new positions in any classification covered by this Agreement, that they will hire through the office of the Union, provided the Union shall be able to furnish competent and experienced persons for the work required.

If the Union is unable to furnish qualified workers within twenty-four (24) hours after the Company calls for them, the Company shall be free to procure the workers from any other source. All newly hired employees shall present management with a clearance slip from the Union prior to beginning work.

3.3    <u>Check-off of Union Dues</u>

Upon receipt of a written assignment and authorization signed by the employee of a mutually acceptable form, the Company agrees to deduct the regular monthly Union dues for the subsequent month from the pay of such employee. The amount deducted shall be in accordance with the Union constitution.

Payment shall be made to the Union on or before the tenth (10th) day of the calendar month following the deduction.

An Employee's deductions shall begin in the first calendar month following receipt of the authorization card by the Company.

Should the Company not deduct dues from any employee's pay because of either insufficient earnings or absence for any reason during the deduction period, the Company shall make appropriate deductions directed by the Union; provided however, it will be the sole responsibility of such employee to make the required dues payment directly to the Union Office.

The Union shall indemnify and save the Company harmless against any and all claims, demands, suits, legal proceedings, or other forms of liability that shall arise out of or by reason of action taken or not taken by the Company for the purpose of complying with any of the provisions of this Section or in reliance on any assignment furnished under such provisions. The provisions of this Section shall be effective only in accordance and consistent with applicable provisions of federal and state law.

3.4    <u>Deductions</u>

The Company, upon receipt of individual valid authorizations agreed to by the Company and the Union, will make payroll deductions from wages of an employee for D.R.I.V.E., P.A.T., and credit union contributions. Remittances shall be in accordance with the authorization.

<u>SECTION 4.   HOURS AND OVERTIME</u>

4.1    <u>Regular Work Week</u>

(Day Shift). The regular workweek at the straight time rate shall consist of five (5) consecutive eight (8) hour working days from Monday through Friday. Payday will be weekly for all employees.

4.2    <u>Regular Work Day</u>

(Day Shift) The regular workday at the straight time rate shall consist of eight (8) consecutive hours, exclusive of meal period, during the regular workweek and between the hours of 5:00 a.m. and 1:30 p.m. The starting time and quitting time may be changed by mutual agreement between the Company and the Union.

It is agreed and understood, however, that the Company may at its discretion, schedule all, or part of, the stockroom, material handling, shipping-receiving, parts, and maintenance departments in a manner to provide eight (8) hours work between the hours of 6:00 a.m. and 4:00 p.m., Monday through Friday.

4

4.3    <u>Minimum Hours</u>

Employees who have seniority with the Company and who are ordered to report to work on any day other than Saturday, Sunday and Holidays, and who do so at the specified time shall receive a minimum of eight (8) hours' work, or if eight (8) hours' work is not furnished, a minimum of eight (8) hours' pay at the straight time rate.

Employees having seniority who are ordered to report for work on Saturday, Sunday and Holidays and who do so at the specified time shall receive a minimum of four (4) hours' work, or if four (4) hours' work is not furnished, a minimum of four (4) hours' pay at the applicable rate; provided, however, that such minimums on Saturdays and Sundays are not applicable to continuous shift workers, whose regularly scheduled days off shall be substituted for Saturdays and Sundays.  The above minimum hour requirements shall not apply if such employees quit, voluntarily lay off, or are discharged for cause.

The minimum guarantee shall not apply where work is not available due to circumstances beyond the Company's control such as earthquake, fire, flood, lightning, calamity, public utility failure or shortage, insurrection, riot, strike, civil disturbance, adverse environmental condition, bomb threat, tear gas, or governmental order.

4.4    <u>Shift Operations</u>

A second or third shift may be established when more than one (1) shift is worked.

All employees on second or third shift as of March 1, 1997 will keep the differential they individually presently enjoy (i.e. Journeypersons = $1.57, Specialist A = $1.38, Specialist B = $1.28, Specialist C = $1.18.  This differential will apply for these employees should they leave second or third shift and return to second or third shift at any future time.

Any employees who are hired on to or transfer to second or third shift after March 1, 1997, will receive a shift premium of $1.00 per hour. Any employee forced or required to work second or third shift for training purposes or special assignments will receive a shift differential as in the above paragraph, so long as they were hired before March 1, 1997.

There shall be a one-half (1/2) hour interval between the termination of the first shift and the beginning of the second shift. If the second shift on Friday should lap over into Saturday, there shall be no Saturday rate paid in this instance.

Employees will be offered work on any new shift created on the basis of Departmental Seniority.  In the event that the desired number of employees wishing to work the new shift is not equal to the number needed by the Company, employees will be assigned by inverse seniority.

The Company may temporarily transfer a senior employee to a shift for a period not to exceed forty-five (45) workdays.  At the end of forty-five (45) days, the senior employee will be transferred back to his/her previous job.

4.5    <u>Overtime Rate</u>

All the time worked over eight (8) hours in any one (1) day, or over forty (40) hours in any one (1) week or on Saturdays, shall be paid for at the rate of one and one-half (1 1/2) times the straight-time hourly rate.  Work performed before the regular starting time or after the regular quitting time shall be considered overtime and shall be paid for at the rate of one and one-half (1 1/2) time the straight-time hourly rate.  Work performed on Sundays shall be paid for at the rate of double (2) times the straight-time hourly rate.  Work performed in excess of eight (8) hours on Saturdays or holidays shall be paid for at the rate of double (2) times the straight-time hourly rate.  There shall be no pyramiding of premium rates.

4.6    <u>Wash-Up and Breaks</u>

All full-time employees shall be entitled to two (2) ten minute breaks each day.  One (1) break shall be in the first half of the shift and the other during the second half of the shift.  An additional break of ten (10) minutes shall be

5

taken at the end of the regular shift when three (3) or more hours of overtime is scheduled or anticipated.

4.7    Scheduled Overtime

The employees recognize their responsibility and obligation to perform overtime when requested by the Company and the Company agrees to give as much advance notice as conditions warrant  when overtime is to be required. Disciplinary action will not be taken if less than 24 hours notice is given to work overtime.  When overtime shifts are necessary, written notice will be posted at least five (5) working days in advance.

An employee shall not be obligated to work overtime provided he gives 24 hours notice to the Company on forms provided, which shall, upon request, state the reason for not working the overtime.  The notice form shall be initialed by his supervisor with a copy returned to the employee with the date and time received.  There shall be no concerted refusal to work overtime and employees shall not abuse the right to refuse overtime by repeated unjustified refusals to work overtime.

Any employee transferring from his/her regular department into another department during the course of a work day will be eligible for overtime on a job continuation basis with the following exceptions:

(1) If overtime has been posted in that department prior to the lunch break and an employee is transferred in after lunch, he/she is not eligible for overtime on a job continuation basis within that department; further, he/she has no bumping rights of regular employees in that department who have already accepted overtime for that day.

(2)  In cases where overtime hasn't been posted prior to the lunch break, an employee transferring into a department with less than two (2) hours remaining in the regular work day will not be eligible for overtime on a job continuation basis until all regular employees of that department and all employees transferred in with two (2) or more hours left in the regular work day have been asked.

4.8    Weekday Overtime

Overtime during the regular workweek will be given by job continuation. Any employee who is performing a specific job where overtime for that day is required will be asked to continue that job.  If the employee asked refused the overtime, and no other employee is performing that job, the overtime will be offered to the most senior employee in that department who is qualified to perform the job required.

4.9    Saturday, Sunday and Holiday Overtime

Saturday, Sunday and Holiday overtime shall be offered to the most senior employee in the department on that shift who is qualified to perform the job required.

When the work force is reduced the senior employees will have the option of continuing the day, or leaving and allowing a junior employee to stay for the remainder of the day.

The Company shall post a schedule of employees who are to work overtime on a Saturday, Sunday or Holiday at least twenty (20) hours in advance of the scheduled overtime. Any employee who claims he was denied an opportunity to work overtime shall notify his foreperson or supervisor of his claim before the end of his last shift prior to the scheduled overtime, or be barred from making any such claim.

On Saturday, Sunday and Holidays, if only one shift is required to work overtime, assignments will be made by overall seniority in a department provided the most senior employee is qualified to perform the job required.

6

## SECTION 5. HOLIDAYS

### 5.1   Paid Holidays

The following days shall be observed as Holidays on which no work is performed, except as provided herein:

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| President's Day | Day after Thanksgiving |
| Memorial Day | Day before Christmas |
| Fourth of July | Christmas Day |
| Labor Day | 2 Floating Holidays* |

*A minimum of two weeks' advance notice must be given to the Company before a floating holiday is granted and the Company reserves the right to deny requests which would leave the Company without the number of employees required to maintain a workable crew. Floating holidays that are scheduled and approved forty-five (45) days prior to the selected day shall not be subject to being bumped on the basis of seniority.

The Company will allow a minimum of one (1) employee per day to take a floating holiday on any days where no more than ten (10%) percent of the workforce is known to be off.

*Any floating holiday not taken or scheduled to be taken by December 1st of any calendar year will be paid to the employee at the next regularly scheduled payday.

### 5.2   Qualifying

All regular employees (those continuously employed thirty (30) days or more) shall receive eight (8) hours pay at the employee's straight-time hourly rate even though no work is performed on the above-named holidays; provided, further, that such employees must work the full day on both the last regular working day immediately preceding the holiday and on the first regular working day following the holiday, and unless the employee so works he shall receive no pay for such holiday unless such absence on the regular working day before and after said holidays is due to the express written permission of the Company or because of bona fide illness evidenced by a physician's certificate.

To be eligible for floating holidays an employee must be on the payroll for one year.

It is agreed that an employee may be no more than one half (1/2) hour late at the beginning of the scheduled day before or the scheduled day after the paid holiday and still qualify for holiday pay. Time lost over the above allowances shall de deducted from the employees' holiday pay at the rate of one for one.

If an employee is absent the last two (2) scheduled working days before a two-day holiday or the first two (2) scheduled working days after a two-day holiday or the last scheduled working day before and the first scheduled working day after a two-day holiday, the employee will lose two (2) days' holiday pay.

### 5.3   Saturday and Sunday Holidays

If any of the holidays designated in this Section falls on Sunday, the following Monday shall be observed. If any of such holiday falls on a Saturday, it shall be observed on the Friday immediately preceding.

Employees ordered to work on holidays listed in this Section 5 shall be paid at the rate of one and one-half (1 1/2) times the straight-time hourly rate; provided that an employee who is entitled to pay for any such Holiday if not worked, shall receive such Holiday pay in addition to the one and one-half (1 1/2) time he is paid for working.

## SECTION 6.   VACATIONS

**6.1   Duration and Pay**

An employee's anniversary date shall constitute the beginning of his or her vacation year.  An employee must work a full year and be on the active payroll at the beginning of the last anniversary year in order to qualify for vacation benefits for the previous year.  Vacation is considered to be a benefit earned for work performed during the previous year.  Work time lost due to layoff or leave or absence will not be considered for vacation time earned.  Vacation benefits will be prorated on the basis of time worked during the anniversary year less time spent on layoff or leave of absence, on the basis of one-twelfth (1/12) of the regular benefit entitlement for each full month worked during the anniversary year.  For employees who are off of work due to disability or industrial injury or illness, sixteen-hundred (1600) hours worked or paid for in their anniversary year shall constitute qualification for full vacation pay.  For pro-ration purposes, sixteen-hundred (1600) hours shall be used as the base.

Vacation Qualifications

One (1) week's vacation with pay after one (1) years' continuous service

Two (2) week's vacation with pay after two (2) years' continuous service

Three (3) weeks' vacation with pay after five (5) years' continuous service

Four (4) weeks' vacation with pay after fifteen (15) years' continuous service

Five (5) weeks' vacation with pay after twenty-five (25) years' continuous service

Vacation pay shall be computed at forty (40) times the straight -time hourly rate in each week's vacation.

**6.2   Vacation Schedule**

After the vacation is earned, vacation benefits may be taken at any time during the employee's anniversary year which is mutually agreeable between the employee and the Company.  The Company will usually not permit vacations to be scheduled during Inventory time.

A vacation schedule shall be posted during the month of December for employees to select their vacation periods for the next calendar year.  Vacations will be scheduled according to seniority within a department.  Once a vacation is scheduled, it shall not be changed except for emergency or proper cause, and seniority will not be recognized with respect to selecting a new vacation period. (Note: current calendar year vacations would have been bid the previous December.)

Full weeks will be scheduled prior to daily vacations.  An employee who has three (3), four (4), or five (5) weeks of vacation may schedule all of his/her entire vacation at once, but the Company may, as business requires, permit no more than two (2) weeks to be taken at one time.

It is agreed, however, that the Company may limit the number of employees out of any one department to a maximum of ten percent (10%) (to the nearest whole person, with a minimum of one (1) person in a department where ten percent (10%) does not equal a whole person).  It is further agreed that the Company may schedule vacation requests to maintain a workable crew in a specific area within a department.

Upon the request of a laid off employee, the Company shall pay all accrued vacation time at the time of the layoff. If no request is made, the employee shall receive vacation pay and the time off when scheduled to take vacation assuming he/she has been recalled at that time.  A laid off employee may request payment for accrued vacation at any subsequent date if he did not request it at the time of the layoff, however, if he/she does so, unpaid time off upon return to work is waived.

8

6.3   **Not Cumulative**

Neither vacations nor vacation pay will be cumulative from year to year. No employee shall accept vacation pay in lieu of time off except when mutually agreed between Company, Employee and the Union. Earned vacation pay shall not be lost.

6.4   **Pay in Advance**

Vacation paychecks shall be issued on the last scheduled working day preceding the employee's vacation period; provided, however, such employee shall have indicated his vacation date during the vacation bidding in December or has given the Company one week's notice. Such checks shall be in addition to the normal weekly earned check and shall be by a separate check.

6.5   **Holiday Within Vacation**

If a Holiday for which he/she would otherwise be paid falls within employee's vacation period, he/she shall receive an additional day off with pay.

6.6   **Accumulated Vacation Credit**

(1) No Employee shall receive vacation or pay until he/she has completed his/her introductory period. Accrued vacation credit shall then be computed from time of hire.

(2) A seniority employee who is terminated for any cause shall be entitled to vacation pay for any unused vacation for which he qualified on the prior anniversary date and, in addition, vacation pay prorated from the prior anniversary date to the date of termination in accordance with the qualification schedule in Section 6.1.

(3) An employee who terminates after completing the introductory period set forth in Section 8.1 shall receive prorated vacation pay.

## SECTION 7. SENIORITY

7.1   **Definition and Qualification**

Seniority is defined as the length of time an employee has been continuously employed within the bargaining unit. Seniority shall not apply to any employee until he/she has completed his/her introductory period, as defined in Section 8. Once attained, seniority shall be effective as of the date of his/her employment, and it shall continue without interruption unless lost as provided herein. Seniority shall only be recognized where specifically provided herein.

An employee's seniority shall be lost and he/she shall be terminated when he/she:

   (1)   Formally quits.
   (2)   Is discharged for cause.
   (3)   Fails to show up for work or fails to call in for three (3) consecutive days.
   (4)   Fails to return to work from an official leave of absence.
   (5)   Fails to return to work within three (3) days after he/she has been notified by telephone or telegraph to report for work from layoff status.
   (6)   Is laid off for a period of :
         a) Employees with less than four (4) years seniority - twelve (12) consecutive months
         b) Employees with four (4) or more years - eighteen (18) consecutive months.
   (7)   Is unable to return from a medical leave of absence within the same time restraints as outlined in (6) above.

9

**7.2    Layoff and Recall**

These departments shall be recognized for the purposes of layoff and recall:  Body Shop, Chassis, Electrical, Fabrication, Final, Frame, Maintenance, Paint, Sheet Metal, Tooling, Trim, Warehouse, Parts, and Labor Pool. Bargaining unit seniority shall be used to determine layoff and recall rights within a department regardless of how long an employee has been in a department or how he/she got there.

In the event a layoff in a department is necessary, the following procedure will be followed:

(1)    For all layoffs, introductory employees shall be laid off before other employees

(2)    Employees shall be laid off by seniority in the department affected, less senior first so long as the remaining employees are qualified to perform the work required.  Any employee laid off from one department may exercise his/her seniority and bump a less senior employee from any department if:

    a) 1.  He/she was previously assigned to that department for a minimum of twenty (20) consecutive days or more and has performed the work of the employee he/she wants to bump for at least ten (10) days, and

        2.  ˙ He/she has satisfactorily performed in that department within the last three (3) years.

    **OR**

    b)    If an employee does not qualify as stipulated above, he/she may also qualify to bump as follows:

        1. Welders in Departments 05 and 04 may bump to either by seniority
        2. Electricians may bump by seniority to an electrical job in any department
        3..Employees in Warehouse and Parts departments are entitled to cross bump.

Employees retained or re-hired because of seniority must be willing, competent and qualified to perform the work to be done.

A twenty-four (24) hour notice of layoff will be given to an employee who is to be laid off, except no notice will be required for the employee who is displaced through bumping.

(3) Employees who exercise their bumping rights through this bumping clause shall be paid their regular rate of pay in their new job.

(4)  Once an employee has exhausted all bumping possibilities contained in paragraph 2, he/she shall be allowed to bump a less senior employee who is still working provided he/she is qualified to perform the work of the employee to be bumped. This shall only be applicable if the more senior employee is subject to lay-off from the active payroll.

The foregoing shall not apply if the less senior employee is a welder, machine operator, electrician, finish painter or finish bodyman, unless the senior employee has performed the job in the past at Gillig or elsewhere and if necessary successfully passes a skills test.

(5)  Laid off employees will be recalled to work into the departments from which they are laid off in reverse order of their layoff.  Employees displaced by the bumping procedure will return to their former departments according to their seniority, more senior first.  In the event a job becomes available in a department from which no employees are on layoff, the Company will, before he hires a new employee to fill the opening, recall from layoff the most senior employee who is qualified.

### 7.3    Seniority List

The Company shall keep an up-to-date departmental seniority list of all employees covered by this agreement and post the seniority list in a conspicuous place. This provision is for the convenience of the parties and in case of any dispute concerning the accuracy of the list, the provisions of this Agreement and not the posted list shall control. Company shall at all times of layoff post a list of introductory employees.

### 7.4    Salaried Positions

If an employee is requested by management to fill a salaried position and accepts, he/she shall be excluded from the coverage of this Agreement. In the event the Company subsequently transfers such employee or such employee requests a transfer back to a position covered by this Agreement within six (6) months from his/her promotion, he/she shall be credited with the seniority, which he had on the date he was promoted to his/her salaried position. The Company shall notify the Union in writing of the date the employee begins the salaried position.

### 7.5    Department Transfer Requests and Involuntary Transfers

1.    Employees with at least one (1) year of seniority, who are not on a final warning for attendance, shall be given the opportunity to designate a department they wish to transfer to. This designation may be made any time, by submitting a transfer form to the Human Resource Department. The Human Resource Department will attempt to grant a job transfer request at any time that business conditions will allow the transfer, without the disruption of normal operations. On a regular basis, all job transfer requests will be reviewed prior to hiring a new employee.   An employee will be allowed to maintain a single job transfer request on file at any time. The Company will post the results of the selection.

LABOR POOL: Labor pool employees shall be permitted to work within a department without their presence constituting an "opening" within said department for transfer purposes, under the following circumstances: filling in for vacation relief, for employees off of work due to medical reasons, absences, absences due to disabilities shorter than sixty (60) days in duration, or for short term special projects that do not exceed one project or sixty (60) days duration.

When two equally qualified employees are seeking a transfer to the same department, and a transfer is granted, seniority shall prevail.
An employee who has been transferred at his/her request shall not be allowed to request another transfer for one (1) year.
Employees shall be deemed to be temporarily unqualified for transfer if they are currently on a written final disciplinary warning.
An employee who has been transferred to another shift at his or her request will not be allowed to request another shift transfer for one (1) year.

2.    Whenever it is necessary to involuntarily transfer an employee to another department, the employee and the shop steward shall be informed of the reason(s) for that transfer.   The employee involuntarily transferred shall have the right to submit a transfer request or a request to return to the department he or she was transferred from. The Company shall attempt to honor such requests within ninety (90) working days; provided, however, upon showing cause, the Company shall have the option of delaying honoring the request for a period of six (6) months.

The company shall not be limited to the six (6) months referred to above if the employee was moved due to reduction in production in a department, the employee was moved to avoid being laid off or the plant is in a layoff situation.

Prior to temporarily transferring employees out of their normal assignments, the Company will first exhaust the Labor Pool and/or summer help, if these individuals are qualified to do the necessary work.

11

7.6   **Stewards Seniority**

All regular shop stewards shall have top seniority for purposes of layoff.

## SECTION 8. INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM

8.1   **Introductory Period**

An introductory period of sixty (60) days shall be established. To this period shall be added the number of days an introductory employee is absent from work during the initial sixty (60) day period. Absences due to injuries covered by Worker's Compensation of less than a total of seven (7) days shall not be added to the sixty (60) days introductory period.

During the introductory period, an employee may be discharged for any reason, which, in the opinion of the Company, is just and sufficient, except for legitimate Union activity.

8.2   **Right of Discharge**

For all offenses, other than those listed below, the Company agrees to give a written warning prior to discharge. Written warnings will be removed from an employee's personnel file after twelve (12) months from the date the warning is given. No written warning need be given if the discharge is for:

a. Theft or willful damage to Company property or the property of another employee.

b. Possession of, or reporting under the influence of, intoxicating beverages, use of illegal drugs or controlled substances without a valid prescription.

c. Gross insubordination.

d. Fighting on Company Property.

e. Possession of firearms or explosives on Company premises.

f. Falsification of a time card or other Company record.

g. Failure to show up for work or fails to call in and misses three (3) consecutive shifts.

h. Participating in unsafe acts that endanger life.

I. Sleeping on the job during working hours.

When an employee is discharged, the Company shall notify the Union within twenty-four (24) hours, in writing, of the action taken and the reasons for the action. A copy of the reasons for the discharge shall be given to the discharged employee.

8.3   **Appeals**

If any employee feels he/she has been unjustly discharged, he/she shall have the right to appeal his/her case to the Adjustment Board through the Union. Such appeals must be filed in writing by the Union within three (3) working days from the date the Union is notified by the Company of such discharge and unless so filed the right of appeal is lost: It is agreed that no employee shall be discharged while he/she is on vacation, authorized leave of absence or absent due to bona fide illness.

12

**8.4**  <u>Discipline Procedure</u>

In all cases of discharge or written reprimand, the employee to be disciplined will be brought to the shop superintendent's office and the disciplinary action taken in the presence of a steward. After the passage of twelve (12) months, a written reprimand may not be used against an employee in discipline or discharge, and will be deleted from his/her personnel file.

**8.5**  <u>Absenteeism</u>

On evaluating absences for purposes of determining excessive absenteeism, the Company will not base disciplinary action upon any absence for holidays, vacations, Union business, state disability, industrial injuries, paid leaves, leaves pre-excused by management, except in cases of chronic absenteeism.

<u>SECTION 9.  SETTLEMENT OF DISPUTES</u>

**9.1**  <u>Grievance Procedure</u>

In the event of any disputes or grievances which may arise concerning the application or enforcement of this Agreement, other than discharge (see Section 8.3), an aggrieved employee shall, within three (3) working days after he/she first had notice to the facts on which the grievance is based, discuss the grievance with his/her immediate supervisor, and both parties will endeavor to adjust the matter. Failing such adjustment, within three (3) working days, the aggrieved employee and the shop steward may take the grievance up with the plant superintendent and both parties shall endeavor to adjust the matter. Failing such adjustment, within the next three (3) working days, the grievance may be taken up with the plant manager by the business agent, the shop steward and the aggrieved employee by their submitting a written statement of the grievance which states the specific facts and sections of the Agreement on which the grievance if based, and scheduling a grievance meeting within the next three (3) working days unless such time is extended by mutual agreement to a date certain.

At such plant grievance meeting, each party shall set forth fully and fairly the facts and contentions in support of its position and shall endeavor to adjust the matter. In the event of failure to adjust the matter at the plant grievance meeting, either party may, within the next three (3) working days, give written notice of its desire to obtain the formal determination of the dispute in accordance with the following provisions. (Complaints involving payment of compensation shall be in writing and no adjustments shall be retroactive for more than ninety (90) days.)

**9.2**  <u>Board of Adjustment</u>

Upon receipt of such notice, a representative of the Union and a representative of the Company will, if unable to resolve the dispute, promptly establish a Board of Adjustment and prepare a written statement of the issue for submission to such Board of Adjustment; provided, however, either party, whereupon the grievance may be submitted directly to a neutral arbitrator as if a deadlock had been declared.

The Board shall consist of two (2) members selected by the Company and two (2) members selected by the Union. The two (2) members selected by the Union shall not include representatives of the Local Union party to this Agreement, and the two (2) members selected by the Company shall not include persons on the payroll of the Company who supervise, directly or indirectly, the aggrieved employee or who are otherwise involved in the dispute. The Board of Adjustment shall elect a Chairman and a Secretary and adopt rules of procedure. The Board shall proceed to hear the issue submitted to it promptly, each party being permitted to present such evidence as may be material. The Board shall have no jurisdiction or authority to add to, subtract from, or alter in any way the provisions of this Agreement, but shall have authority to interpret or apply the provisions thereof only to the extent necessary for determination of the grievance submitted to it for determination.

If a majority of the Board can agree on a determination of the grievance, it shall render such decision promptly in writing, a copy of such decision to be delivered to each party. Such decision of the Board shall be final and not serve as a precedent in any other case. If a majority

13

of the Board cannot agree on a decision within a reasonable time after conclusion of the hearing, a deadlock shall be declared and the matter may be submitted by either party to a neutral arbitrator in the following manner.

9.3    Arbitration and Selection of Arbitrator

A neutral arbitrator shall be selected from a panel of seven arbitrators provided by the Federal Mediation and Conciliation Service. The parties shall then strike names from the list, the Union striking first. The last remaining named person shall be requested to be the arbitrator.

9.4    Arbitrability

Any claim or proposal by a party to add to or alter this Agreement, and any matter arising out of any such claim or proposal, shall not be arbitrable. Any dispute as to the arbitrability of any given matter shall be resolved by a court of competent jurisdiction and not by an arbitrator or Board of Adjustment, unless the parties specifically agree otherwise in writing.

9.5    Arbitration Procedure in Discharge Cases

In discharge cases, the hearing shall be held on the first available date and, unless specifically requested by the arbitrator or one of the parties, the case shall be heard and determined without transcript or filing of briefs and the arbitrator shall be instructed to issue his award from the bench if possible, or in any event within twenty-four (24) hours after the conclusion of the hearing, with an opinion, if requested by either party to be subsequently prepared.

9.6    Arbitration Decision and Award

Except as otherwise provided, the arbitrator shall issue his/her decision and award within thirty (30) days after the case is submitted for decision. The arbitrator shall have no authority to add to, delete from, or otherwise alter this Agreement. The award of the arbitrator, if consistent with the foregoing, shall be final and binding upon the Company, the Union and all employees concerned.

9.7    Cost of Arbitration

Each party shall bear its own expense in presenting its case to the arbitrator. The expense of an arbitrator shall be divided equally between the parties.

9.8    No Interruption of Work

There shall be no interruption of work during the settlement of a grievance.

## SECTION 10. STRIKE AND LOCKOUT

10.1    Strikes

The Union and its members agree not to engage in, endorse or encourage any strikes or stoppages of work during the term of this Agreement.

It shall not be a violation of this Section if individual employees of the Company covered by this contract refuse to cross a legitimate picket line at the Company established by another union, provided that:

1.    The striking union is the recognized collective bargaining representative of other employees of the Company.

2.    The picket line has been officially sanctioned by the Teamsters Joint Council No. 7 and /or the Central Labor Council of Alameda County, the Building Trades Council of Alameda County, or another appropriate labor body.

14

10.2    Lockout

The Company agrees not to engage in a lockout during the term of this Agreement.

## SECTION 11.  HEALTH AND WELFARE

11.1    Eligibility

New employees of the Company shall become eligible for participation in the Health, Welfare, Dental, Drug and Vision Plans upon the first of the month following completion of three (3) consecutive calendar months in which the employee has worked or been paid for eighty (80) hours.

11.2    Health & Welfare

For employees who are members of Teamsters Local 853, the following applies:

1.  Fund.  There is an established jointly trusteed health and welfare fund known as Teamsters Benefit Trust Fund, Plan IIIA (hereinafter called the Fund) which provides life insurance benefits for eligible employees and their eligible dependents, hospital-medical benefits for eligible retired employees and their eligible dependents, dental care benefits for eligible employees and their eligible dependents, prescription drug benefits for eligible employees and their eligible dependents, orthodontic benefits for eligible employees and their eligible dependents, and   disability benefits for eligible employees only in the amount of forty dollars ($40.00) per week, for a maximum period of twenty-six (26) weeks per calendar year.  The disability benefits shall be provided through the Teamsters Benefits Trust Fund, and the cost shall be borne by the Company, subject to the limitations set forth in 11.4.

2.  The Company shall begin payments to the Fund on behalf of any employee who works or is paid for (80) hours in a calendar month.  This shall begin with the employee's first month of employment.

11.3    Illness or Injury

Employees with seniority who are off the job due to a bona fide illness or injury for a period in excess of three (3) months – the waiver of premium period – shall be entitled to three (3) additional months' full benefit coverage, including their eligible dependents, and the Company shall be required to make the required contribution on their behalf for the duration of said employee's disability, not to exceed three (3) months.

11.4    Company Contribution

Effective January 1, 2007, the Company shall pay the sum of One Thousand Fifty-Two Dollars and Eighty Cents ($1052.80) per month, per employee, to the Teamsters Benefit Trust Fund Plan IIIA for employee's health & welfare.  Additionally, beginning January 1, 2008, and each year thereafter during the term of this agreement, an additional Twenty-Five Dollars ($25.00) per employee, per month, shall become available for future increase. These amounts shall be cumulative and unused amounts shall be available for subsequent years.  If these additional funds are not needed for employee's health & welfare, they will automatically be placed into the Pension Plan, as set forth below.  The Union will advise the Company no later than December 1st of each calendar year where the funds will be applied on the next January 1st.

In the event the Union chooses to subscribe to a less expensive plan than the current TBT Plan IIIA, the Company agrees to the following:

The Company will allow the complete difference in costs (the difference between Plan IIIA and a less expensive new plan) to be contributed to each employee's SIP 401(k) account.  Future cost increases in the subsequent years will be backed out of the contribution account, after the Twenty-Five Dollars ($25.00) cited in the preceding paragraph is credited to the increased contribution rate.  The remaining amount, if any, will continue to be contributed to the SIP 401(k) Plan.  If

15

the increases exceed the original difference, the employees will be required to divert the difference from the scheduled wage increase in accordance with the provisions of the preceding paragraph.

## SECTION 12. PENSION PLANS

### 12.1   Company Contribution & Eligibility

Effective January 1, 2007, for employees who are members of Teamsters Local 853, the Company shall pay the sum of Three Hundred Eighty Dollars and Sixty-Six Cents ($380.66) per month per employee to the Automotive Industries Pension Trust Fund to provide pension benefits.

In addition to the amounts listed in the paragraph above, the Company shall pay Fifteen Dollars ($15.00) per month to the Supplemental Income 401 (k) Plan. The Company agrees to make weekly pre-tax deductions as directed by the employees and forward the deductions, along with the above referenced contribution, to the 401(k) Plan administrator on a timely basis as required by law. The Company also agrees to pay the monthly administrative fee on behalf of each participating employee.

The Company shall transmit said pension payments to the Automotive Industries Pension Trust Fund, the Supplemental Pension Benefit Trust Fund and the Supplemental Income 401(k) Plan Fund on the first (1st) day of each month, and in no event later than the fifteenth (15th) day of each month.

New employees of the Company shall become eligible for participation in the Pension Plan upon the first (1st) day of the month following completion of ninety (90) calendar days of employment.

## SECTION 13.   NO DISCRIMINATION

There shall be no discrimination of any kind because of race, creed, color, national origin, sex, or union activities against any employee or applicant for employment by the Company or by anyone employed by the Company; and to the extent prohibited by applicable state and federal law there shall be no discrimination because of age.

## SECTION 14.   LEAVE OF ABSENCE

### 14.1   Approved Leaves

Employees with more than one (1) year of continuous service shall be granted leaves of absence of from not *less* than one (1) week to thirty (30) days. Leaves in excess of thirty (30) days, not to exceed six (6) months, if granted, shall be in writing with a copy sent to the Union. Personal leaves of absence will not be granted to employees on a final for attendance.

Prior to receiving a personal leave of absence, an employee must first have used all available earned vacation and all earned personal holidays.

If the Company believes the number of leaves requested at any one time hampers the functioning of a department, after all other reasonable efforts are made to otherwise staff the department, it may deny further leaves, using seniority and need as its criteria for doing so.

Requests for unpaid funeral leave extensions may be for periods of less than one (1) week.

A vacation request, which has been denied, may not be changed to a request for a leave of absence and a request for a leave of absence may be denied when a full compliment of employees is on vacation.

A leave will be denied if the Company believes it has been requested to circumvent the attendance policy. Such a denial is subject to the grievance procedure. The Company may deny a leave that is an extension of a vacation; provided however, a one (1) week leave will be granted as an extension to a vacation for the purpose of traveling to a foreign country, if the ten percent (10%) departmental limitation is not exceeded.

An employee on any leave shall not engage in gainful employment without written permission from both the Company and the Union.

Vacation time shall not accrue while an employee is on a leave, nor shall holidays which occur during a leave be paid.

Family and medical leaves shall be granted in accordance with Federal and State laws and the regulations issued pursuant to such laws.

## 14.2   Military Service

Any employee covered by this Agreement and agreements supplementary hereto who leaves a position other than a temporary position with any Company covered by this Agreement, for immediate induction into any of the armed forces of the United States, shall be re-employed if application is made within ninety (90) days after he/she is discharged from the armed forces, in accordance with the provisions of Section 9B of the Selected Services Act of 1948 and any official amendment or modification thereof.

## 14.3   Funeral Leave

In the event of a death in the immediate family of an employee who has completed the introductory period set forth in Section 8.1, shall be granted three (3) working days off with pay. Requests for unpaid funeral leave extensions may be for periods of less than one (1) week

This provision does not apply if the death occurs while the employee is off on leave of absence, layoff, or sick leave.

For the purpose of this provision, the immediate family shall be restricted to father, mother, brother, sister, spouse and child, mother-in-law, father-in-law, brother-in-law, sister-in-law, step-children, step-parents, grandparent, spouse's grandparent, and grandchild.  At the request of the Company, the employee shall furnish proof of death and relationship.

If a death in the immediate family occurs while an employee is on vacation, the employee shall have the option to cancel any unused portion of the vacation and use funeral leave, so long as the employee attends the funeral service.

## 14.4   Jury Duty

When an employee working under the jurisdiction of this Agreement necessarily loses time from work because of jury duty, the Company shall reimburse such employee at his full regular straight-time rate of pay, less whatever remuneration he may receive from other sources for said purpose.

In the event a day shift employee is released from jury duty at any time prior to the end of first shift lunch period, he/she shall return to work and shall be allowed a reasonable time to eat lunch.

In the event a second shift employee is released from jury duty at any time prior to the end of 1st shift lunch period, he/she will report to work at his/her regular starting time. If a second shift employee is released from jury duty after the end of first shift lunch period, but prior to 1:00 pm, he/she must report to work for at least half of their scheduled shift (by 6:00 pm).  If, at the Company's option, an employee is allowed to work more than four hours, any hours in excess of four (4) hours will be at 1½ times the employee's regular rate of pay.  If a second shift employee is released after 1:00 pm, he/she need not report for work that day.

Third shift employees will be treated as if they were working first shift.

17

The employee shall be responsible to obtain documentation from the court indicating the date served, time released, and the amount of remuneration from the court in order to be eligible for pay for jury duty.

## SECTION 15.  UNION REPRESENTATIVES AND BULLETIN BOARDS

15.1    **Business Agents**

The business agent or qualified representative of the Union shall be allowed to visit the Company's covered establishment for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The business agent or qualified representative of the Union shall report to the management of the office before proceeding to the plant. In the event he/she wishes to interview an employee, he/she shall report to the employee's department supervisor and he/she shall be permitted to interview him/her privately in the office. He/she shall not interfere with the normal conduct of work.

15.2    **Stewards**

A steward and alternate steward may be provided for each shift, such stewards to be appointed by the Union or selected by the employees on the job. Grievances which may arise and which cannot be adjusted on the job shall be reported to the Union by the steward; provided, however, in no event shall the steward or the Union order any changes and no changes shall be made except with the consent of the Company.

15.3    **Bulletin Boards**

The Company shall provide a reasonable number of bulletin boards in places reasonably accessible to the employees covered by this Agreement for the purpose of posting notices of official Union business, such as times and places of meetings.

## SECTION 16.  INDUSTRIAL INJURIES

All industrial injuries, no matter how slight, must be reported to the supervisor, or Medical Department at the time the injury occurs. Any employee sent home by the Company or Company physician because of industrial injury or industrial disease shall be paid for the remainder of his/her shift.

The Company shall pay employees for any time lost during regular working hours in visits to the doctor in the case of an industrial injury or industrial disease, or shall make arrangements with the doctor that such visits shall be scheduled for after working hours. The Company will not interfere with doctor visits which occur during working time once the visit is scheduled.

Any employee who is off work due to an industrial injury or industrial disease, the disability having been previously determined by the Company physician, shall be paid his/her regular rate of pay until disability payments are due him/her from the insurance company. The maximum payments shall be three (3) days' pay from any one injury, such payment to be made to employee upon request, except in the case of any employee whose injury exceeds fourteen (14) days.

## SECTION 17.  GENERAL PROVISIONS

17.1    **Safety**

Both the Company and the Union shall expend every effort to see to it that the work performed under the terms and conditions of this Agreement is performed with a maximum degree of safety, consistent with the requirement to conduct efficient operations. The Company's safety rules shall be posted in a conspicuous place.

The Company shall convene a meeting of the Plant Safety Committee. There shall be two shop stewards present at each safety committee meeting. The Company will attempt to call a safety committee member to the scene of any accident.

A grievance filed concerning a safety matter, shall be moved through an expedited settlement process. If the parties are unable to agree on a solution concerning an issue of safety, within 72 hours of the time the issue is discussed, the parties shall choose the first available arbitrator

18

from a panel of five (5) that have previously been designated by the parties.  The parties shall ask the arbitrator to make a bench decision on the matter.

17.2    <u>Maintenance of Sanitary Facilities</u>

The Company agrees to maintain a clean, sanitary washroom with toilet facilities.

17.3    <u>New Processes and New Machines</u>

The Company shall notify the Union in advance of any permanent layoff of seniority employee which is going to result from the installation of new machinery or new processes in order that the impact of such layoff upon the employee may be discussed.  Such discussions are to be without recourse to the grievance procedure and without the right of strike or lockout; provided that in the event any new job classification are created or any permanent layoff is made because of the introduction of new machinery or new methods of operation, then the Union may refer to the grievance procedure set forth in this Agreement. Any dispute concerning the wage rates established by the Company for such new classification and the question of whether such layoff was in accordance with the layoff provision set forth in the seniority section of the Agreement.

17.4    <u>Shop Rules</u>

The Company may make and enforce shop rules provided that they are posted in the plant and not in conflict with this Agreement.  The Company before posting any new rules shall send each rule to the Union five (5) days before posting in order to insure that there is no conflict with this Agreement.  Should the Company make any changes in its shop rules during the life of this Agreement, which the Union does not agree to, the Union shall have the right to protest such changes by the grievance procedure and the change shall not be placed in effect until the grievance is resolved.

<div align="center"><u><b>SECTION 18.  SICK LEAVE</b></u></div>

18.1    <u>Benefits</u>

Each employee who has been continuously employed by the Company for a period of at least one (1) year shall be credited with sick leave as follows:

1.      Each employee who, on April 1, 1977, was continuously employed for at least one (1) year, shall be credited as of that date with five (5) days (forty (40) straight-time hours) of sick leave; and effective January 1, 1978, he/she shall be credited with five (5) additional days (forty (40) straight-time hours) of sick leave; and shall thereafter be credited with six (6) additional days (forty-eight) (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

2.      All other employees hired before March 1, 1988, shall be credited with five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service; he/she shall be credited with an additional five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's second anniversary date of continuous service; and shall thereafter be credited with six (6) additional days (forty-eight (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

3.      Employees hired after March 1, 1988, shall be credited with four (4) (thirty-two (32) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service and an additional four (4) days on each successive anniversary date of employment.

<div align="center">19</div>

**18.2    Waiting Period**

Such sick leave shall be applicable only in cases of bona fide illness or accident and shall be paid from the first (1st) workday's absence. In those cases where illness or injury occurs during working hours, the first work day's absence shall be calculated as the twenty-four (24) hour period following the time at which the employee leaves work by reason of illness or injury. Succeeding work days' absences, full pay until sick benefit allowance is used up.

If an employee is absent from work on the day before any of the holidays listed in Section 5 or on the day after any of such holidays, due to bona fide illness or accident, said holidays shall be considered a work day's absence within the meaning of this Section 18.

**18.3    Doctor's Certificate or Other Proof**

If an employee's illness results in absence from work of three (3) or more consecutive days, then a doctor's certificate or other reasonable proof of illness may be required by the Company.

**18.4    Payment Defined**

For the purposes of this Section 18, full pay shall mean pay for the regular daily schedule of working hours, for those days which the employee would have worked had the disability not occurred, calculated at straight-time.

An Employee's sick leave payment shall automatically be paid with each absence until the sick benefit allowance is used up.

**18.5    Unused Sick Leave Accumulation**

Unused sick leave may be accumulated from year to year. Accumulations in excess of thirty (30) days may, at the option of the employee, be converted to cash, if the employee so requests in writing within thirty (30) days of their qualifying date (January 1 or anniversary date).

Payment will be made by the payday following the qualifying date. Employees who quit or are terminated are not eligible for any cash conversion for unused sick leave.

**18.6    Integration**

In industrial injury or disability cases, Workers' Compensation or Unemployment Disability (UCD) benefits and sick benefit allowances shall be paid separately, but in the event Workers' Compensation payments or Unemployment Disability payments cover all or part of the period during which sick benefit allowances are paid, the sum of the two shall not exceed the sick benefit payable for said period, and the unused portion of accumulated sick leave will continue to be credited to the employee. Integration of sick leave benefits with Workers' Compensation or Unemployment Disability payments is to be automatic; the Company may not waive integration, and any employee entitled to Worker's Compensation or Unemployment Disability payments must apply therefore (in order that the principle of integration may be applied) before sick benefits are payable.

Employees may waive using sick leave in cases involving industrial injury or disability. The burden is on the employee to inform the Company of a waiver in writing.

**SECTION 19.   SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS**

**19.1    Scope of Agreement**

Except as otherwise specifically provided herein, this Agreement fully and completely incorporates the understanding of the parties hereto and constitutes the sole and entire agreement between the parties on any and all matters subject to collective bargaining. Neither party shall, during the term of this Agreement, demand any change therein nor shall either party be required to bargain with respect to any matter. Without limiting the generality of the above, both parties in their own behalf and on behalf of the respective members bound hereby, waive

any right to demand of the other any negotiation, bargaining, or change during the life of this Agreement with respect to pensions, retirement, health and welfare, annuity or insurance plans, or respecting any question of wages, hours or any other terms or conditions of employment; provided that nothing herein shall prohibit the parties from changing the terms of this Agreement by mutual agreement.

19.2   Separability of Provisions

Should any section, clause or provisions of this Agreement be declared illegal by final judgment of a court of competent jurisdiction, such invalidation of such section, clause or provision shall not invalidate the remaining portions hereof, and such remaining portions shall remain in full force and effect for the duration of this Agreement.

Upon such invalidation, the parties agree immediately to meet and negotiate substitute provisions for such parts or provisions rendered or declared illegal or an unfair labor practice. In the event the parties are unable to agree upon substitute provisions, the dispute may at the request of either the Company or the Union be referred to arbitration for settlement pursuant to the provisions of Section 9.3 hereof; but the power of the arbitrator shall be restricted and limited to determining a substitute provision to provide for the same specific objective and purpose of the provision rendered or declared illegal.

19.3   Unlawful Action Not Required

The parties agree that neither will willfully require the other or their respective members bound hereby to do or perform any act prohibited by law.

19.4   Government Controls

Should any provisions of this Agreement not be placed into effect because of government wage regulations or controls, and should such controls be subsequently amended, relaxed or terminated during the term of this Agreement, then and in that event such provision(s) as has not been placed into effect because of said regulations or controls will be effectuated on the date on which it is determined that it is legally possible to do so, but not retroactively in excess of six (6) months, provided that the legality of such action is established during the term of this Agreement. The Company and the Union agree to cooperate in the preparation and filing of any submission(s) which during the term of this Agreement are required under the regulations of the Cost of Living Council or any successor agency responsible for the administration of government wage controls.

## SECTION 20.   WAGES AND CLASSIFICATIONS

The classifications and hourly wage rates for employees covered by this Agreement are set forth in Appendix "A" hereto.

## SECTION 21.   PLANT CLOSURE AND RELOCATION

The Company shall notify the Union of a proposed plant shutdown or relocation within ninety (90) days as either of these occurrences becomes imminent. In the event of a total plant closure, the following items shall become effective:

1.   The Company agrees to severance pay for any employees displaced by a closure of the plant as contained in a Letter of Understanding attached to this Agreement.

2.   The Company agrees to pay an additional two (2) months of Health & Welfare coverage for any employee displaced by a closure who has less than three (3) complete calendar years of service. For Employees with more than three (3) calendar years of service, three (3) months of Health & Welfare coverage shall be paid.

21

In the event the Company relocates its operation to another area, the following shall be effective:

1. The Company will offer employment at any new location to displaced employees on the basis of seniority.

2. In the event an employee declines to transfer, the employee may elect to receive Health & Welfare coverage due as set forth above.

3. The Company and Union will make every effort to find jobs for employees displaced by a plant closure or unable to accept a transfer to a new location.

## SECTION 22.   SEVERANCE PAY

In the event of a plant closure during the term of this Agreement, severance pay will be paid as a supplement to unemployment benefits to provide the equivalent of the employee's weekly net take-home pay per the following schedule:

| Years of Service At Time of Termination | Number of Weeks Unemployment Benefit may be Supplemented |
|---|---|
| 24 years or more | 12 weeks |
| 22 years but less than 24 | 11 weeks |
| 20 years but less than 22 | 10 weeks |
| 18 years but less than 20 | 9 weeks |
| 16 years but less than 18 | 8 weeks |
| 14 years but less than 16 | 7 weeks |
| 12 years but less than 14 | 6 weeks |
| 10 years but less than 12 | 5 weeks |
| 8 years but less than 10 | 4 weeks |
| 6 years but less than   8 | 3 weeks |
| 4 years but less than   6 | 2 weeks |
| 1 year but less than   4 | 1 week |
| Less than 1 year | 0 |

In order to maintain benefits eligibility, employees must notify the payroll office every two (2) weeks, either by telephone or by mailing a photocopy of their current unemployment check.   Acceptance of any employment following termination will result in no further severance being made.

NOTE:

Employees choosing not to file for unemployment benefits will receive the same severance benefits as if they were receiving unemployment compensation.  However, they must still report their employment status every two (2) weeks if they wish to receive severance payments.

An employee receiving severance pay in accordance with the procedures set forth above who obtains another job and loses it for any reason shall be permitted one ninety (90) day period during which he/she shall notify the Company of the job loss and may be returned to the severance program set forth herein.

## SECTION 23.   SUB-CONTRACTING

The Company has the right to subcontract when it concludes that the work cannot be more economically or efficiently performed by employees.  The Company agrees that it will not sub-contract bargaining unit work with the sole intent of depleting the bargaining unit work force.  Upon demand, the Company agrees to supply the Union with all reasons for sub-contracting of any function causing loss of bargaining unit work.

22

## SECTION 24.  DURATION

This Agreement shall be effective January 1, 2007, except for those provisions of the Agreement which have been assigned other effective dates as herein above set forth and shall remain full force and effect to and including December 31, 2011, and shall continue thereafter from year to year, unless at least sixty (60) days prior thereto, or to the first (1st) day of January of any subsequent year either party shall file written notice with the other of its desire to amend, modify, or terminate this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this ____ day of _____, 2007.

GILLIG CORPORATION

By: _Dennis Howard_

Date: 4/23/08

By: _Pamela J. McKenna_

Date: 4/23/08

TEAMSTERS WAREHOUSE, WHOLESALE LIQUOR SALESPERSONS, MILK DRIVERS AND DAIRY EMPLOYEES, CONSTRUCTION AND BUILDING MATERIALS, NEWSPAPER AND PERIODICAL DRIVERS AND MISCELLANEOUS UNION, LOCAL 853, INTERNATIONAL BROTHERHOOD OF TEAMSTERS

By: _____

Date: 4/21/08

By: _Bo Morgan_

Date: 4/21/08

23

## APPENDIX "A"

### SECTION 1. CLASSIFICATIONS AND WAGE RATES

The classifications and minimum straight-time hourly wage rates covered by this Agreement shall be as follows (The Union reserves the right to allocate increases beginning in 2007, to pension or health and welfare, if needed):

|                       | 1/1/07   | 1/1/08  | 1/1/09  | 1/1/10  | 1/1/11  |
|-----------------------|----------|---------|---------|---------|---------|
| Working Foreperson*:  | $ 22.76  | $1.35*  | $1.40*  | $1.45*  | $1.50*  |
| Journeyperson:        | $ 21.76  | $1.35*  | $1.40*  | $1.45*  | $1.50*  |

*May be allocated by the Union towards Health and Welfare and / or Pension.

Employees in the position of Plant Maintenance and Tooling shall receive a five percent (5%) differential above journeyperson's rate (excludes janitors).

Employees may be interchanged between bodywork (Local 853) and paint preparation (Local 1176) to provide job coverage in cases of unplanned absenteeism, emergencies or extraordinary circumstances. The Company shall notify the respective chief shop steward of the need to interchange. In no event shall the ability to interchange be used to fill permanent vacancies.

*Replacement Working Forepersons: An employee designated to replace a Working Foreperson shall receive One Dollar ($1.00) per hour above the journeyperson rate of pay for each hour he or she functions as a temporary Working Foreperson. If the assignment requires a change of shift, Two Dollars ($2.00) per hour above the journeyperson rate of pay shall be paid.

### SECTION 2. PROGRESSION

Upon completion of one (1) year's service in the Specialist C classification, the employee shall be moved up to the Specialist B classification.

Upon completion of one (1) year's service in the Specialist B classification, the employee shall be moved up to the Specialist A classification.

An employee who has performed satisfactorily as a Specialist A for twelve (12) months will become a journeyperson; provided, however, that if the Company believes that the employee is not competent or qualified to perform the functions of a journeyperson in the department, it shall notify the Union in writing and, if the matter cannot be resolved within three (3) working days, the Company may submit the matter to a Board of Adjustment (pursuant to Section 9.2) which shall be comprised of persons who are qualified, by reason of training and experience, to evaluate the qualifications and competence of a journeyperson in the work involved. In such a case, members of the Board of Adjustment may question the employee directly about his/her job knowledge and experience and observe him/her performing the various functions of a journeyperson in the work involved.

Where there is a need and vacancy for a journeyperson in a department (and the job is not filled pursuant to the foregoing paragraph) the job shall be offered to the most senior qualified Specialist A in the department who has performed satisfactorily as a Specialist A for twelve (12) months or more; provided, however, that if the Company believes that the employee is not competent or qualified to perform the functions of a journeyperson in the department the matter may be adjusted in accordance with the foregoing paragraph.

If an employee is deemed not to be qualified as a journeyperson, he/she shall be afforded, upon written request, a reasonable opportunity to perform job functions required of a journeyperson which he/she had not previously been afforded a reasonable opportunity to perform.

24

All employees within a progression temporarily laid off, when re-hired shall be paid the same hourly rate of pay as when temporarily laid off and shall not lose any accumulated time worked toward the regular increase.

## SECTION 3. *WORKING FOREPERSONS*

There shall be at least one (1) *Working Foreperson in each department that has three (3) or more employees. If the Working Foreperson is not at work for more than two (2) weeks straight, he or she shall be replaced by another employee on a temporary basis. All employees elevated to Working Forepersons shall have their pay reflect the change in a timely manner.*

A working foreperson shall receive at least the rate listed for that classification, and shall not have the responsibility to hire or fire, or discipline, employees or effectively recommend such.

It is agreed and understood that this Agreement does not abridge the Company's rights to promote or demote, to or from the classification of working foreperson.

## SECTION 4.  MINIMUM RATES

The wage rates listed above are minimum rates for the classifications shown. The minimum rates listed shall not be used to reduce the wage rate of any employee now receiving more than the listed minimum rate for his classification.

## SECTION 5.  EMPLOYEES HIRED AFTER MARCH 1, 1988

A. The classifications and minimum straight-time hourly wage rates covered by the Agreement shall be as follows:

|  |  | 1/1/07 | 1/1/08 | 1/1/09 | 1/1/10 | 1/1/11 |
|---|---|---|---|---|---|---|
| Journeyperson | | Same as Section 1 | | | | |
| Specialist A | - | $ 19.85 | $1.35* | $1.40* | $1.45* | $1.50* |
| Specialist B | - | $ 18.85 | $1.35* | $1.40* | $1.45* | $1.50* |
| Specialist C | - | $ 17.85 | $1.35* | $1.40* | $1.45* | $1.50* |

*May be allocated by the Union towards Health and Welfare and / or Pension.

B. *Summer Hires may be utilized and shall be paid $1.50 per hour below the Specialist C rate.*

## SECTION 6.  ECONOMICS

6.1     **Annual Economics**

During the life of this Agreement, Wages, Pension and Health & Welfare shall be as follows:

| Year | Wages | Health & Welfare |
|---|---|---|
| 2007 | $1.30 | $25.00 per month |
| 2008 | $1.35* | $25.00 per month |
| 2009 | $1.40* | $25.00 per month |
| 2010 | $1.45* | $25.00 per month |
| 2011 | $1.50* | $25.00 per month |

*May be allocated by the Union towards Health and Welfare and / or Pension.

25

# CONTRACT EXTENSION
*Between*

## GILLIG, LLC & TEAMSTERS LOCAL 853

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2011 is hereby extended until midnight December 31, 2014, upon the terms and conditions set forth herein:

1. On January 1, 2012 an increase of $1.55 per hour shall be applied to wages, health and welfare and pension as allocated by Teamsters Local 853.

2. On January 1, 2013 an increase of $1.60 per hour shall be applied to wages, health and welfare and pension as allocated by Teamsters Local 853. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.28 per hour).

3. On January 1, 2014 an increase of $1.65 per hour shall be applied to wages, health and welfare and pension as allocated by Teamsters Local 853. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.31 per hour).

4. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

FOR THE COMPANY:

By: _____ Pres.

Date: 2/1/11

By: _____

Date: 2/1/11

FOR THE UNION:

By: _____

Date: 2/1/11

By: _____ Bo Morgan

Date: 2/1/11

# CONTRACT EXTENSION

## *Between*

## GILLIG, LLC & TEAMSTERS LOCAL 853

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2014 is hereby extended until midnight December 31, 2016, upon the terms and conditions set forth herein:

1.  On January 1, 2015 an increase of $1.45 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.12 per hour).

2.  On January 1, 2016 an increase of $1.50 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.13 per hour).

3.  All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**

By: _____

Date: 2/13/13

By: P. McKenna

Date: 2/13/13

**FOR THE UNION:**

By: _____

Date: 2/13/13

By: Bo Morgan

Date: 2/13/13

# CONTRACT EXTENSION

## *Between*

## GILLIG, LLC & TEAMSTERS LOCAL 853

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2016 is hereby extended until midnight December 31, 2023, upon the terms and conditions set forth herein:

1. On January 1, 2017 an increase of $1.55 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to the pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.13 per hour).

2. On January 1, 2018 an increase of $1.60 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.14 per hour).

3. On January 1, 2019 an increase of $1.65 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.15 per hour).

4. On January 1, 2020 an increase of $1.70 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.16 per hour).

5. On January 1, 2021 an increase of $1.75 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.17 per hour).

6. On January 1, 2022 an increase of $1.80 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.18 per hour).

7. On January 1, 2023 an increase of $1.85 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.19 per hour).

8. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.


**FOR THE COMPANY:**

By: _Pamela J. McKenna_

Date: _2|19|16_


**FOR THE UNION:**

By: _Bo Morgan_

Date: _2/19/16_

## LETTER OF UNDERSTANDING
### BETWEEN
### GILLIG CORPORATION
### AND
### TEAMSTERS LOCAL 853

Both parties agree to the following:

January 1, 2017 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan.  Total contribution rate is two dollars and sixty cents ($2.60).

January 1, 2018 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan.  Total contribution rate is three dollars and thirty-five cents ($3.35).

January 1, 2019 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan.  Total contribution rate is four dollars and ten cents ($4.10).

January 1, 2020 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan.  Total contribution rate is four dollars and eighty-five cents ($4.85).

January 1, 2021 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan.  Total contribution rate is five dollars and sixty cents ($5.60).

January 1, 2022 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan.  Total contribution rate is six dollars and thirty-five cents ($6.35).

January 1, 2023 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan.  Total contribution rate is seven dollars and ten cents ($7.10).

**FOR THE COMPANY:**                          **FOR THE UNION:**

Pam McKenna, Vice President                   Bo Morgan
Human Resources and Labor                     Vice President
Relations

# EXHIBIT 2

# A G R E E M E N T

between

## GILLIG CORPORATION

and

## AUTO, MARINE AND SPECIALTY PAINTERS
### District Council 16
### Local Union 1176

For the period:

January 1, 2007

through

December 31, 2009

Covering:  Paint Department Employees (Except Body Shop)
25800 Clawiter Road
Hayward, CA  94545

# TABLE OF CONTENTS

| SECTION | | TOPIC | PAGE |
|---|---|---|---|
| SECTION | 1 | RECOGNITION | 3 |
| SECTION | 2 | MANAGEMENT RIGHTS | 3 |
| SECTION | 3 | UNION SECURITY | 4 |
| SECTION | 4 | HOURS AND OVERTIME | 5 |
| SECTION | 5 | HOLIDAYS | 7 |
| SECTION | 6 | VACATIONS | 8 |
| SECTION | 7 | SENIORITY | 10 |
| SECTION | 8 | INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM | 11 |
| SECTION | 9 | SETTLEMENT OF DISPUTES | 12 |
| SECTION | 10 | STRIKE AND LOCKOUT | 14 |
| SECTION | 11 | HEALTH AND WELFARE | 14 |
| SECTION | 12 | PENSION PLAN | 15 |
| SECTION | 13 | NO DISCRIMINATION | 15 |
| SECTION | 14 | LEAVE OF ABSENCE | 15 |
| SECTION | 15 | UNION REPRESENTATIVES AND BULLETIN BOARDS | 16 |
| SECTION | 16 | INDUSTRIAL INJURIES | 17 |
| SECTION | 17 | GENERAL PROVISIONS | 17 |
| SECTION | 18 | SICK LEAVE | 18 |
| SECTION | 19 | SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS | 19 |
| SECTION | 20 | WAGES AND CLASSIFICATIONS (SEE ALSO APPENDIX "A") | 20 |
| SECTION | 21 | PLANT CLOSURE AND RELOCATION | 20 |
| SECTION | 22 | SEVERANCE | 21 |
| SECTION | 23 | SUB-CONTRACTING | 21 |
| SECTION | 24 | DURATION | 21 |
| APPENDIX | A | CLASSIFICATIONS AND WAGE RATES | 23 |
| | | PROGRESSION | 23 |
| | | WORKING FOREPERSONS | 24 |
| | | MINIMUM RATES | 24 |
| | | EMPLOYEES HIRED AFTER MARCH 1, 1988 | 24 |
| | | ECONOMICS | 24 |
| LETTER | | ATTENDANCE & TARDINESS CONTROL | 25 |
| LETTER | | FINISH PAINTER PREMIUM | 26 |
| LETTER | | VACATIONS & HOLIDAYS - "WORKABLE CREW" | 27 |
| LETTER | | DRUG AND ALCOHOL POLICY | 28 |
| LETTER | | MARTIN LUTHER KING'S BIRTHDAY | 29 |
| LETTER | | SENIORITY | 30 |
| LETTER | | 401(K) PLAN & ADMINISTRATION | 31 |

## AGREEMENT

This Agreement made and entered this _____day, of _____, 2007, by and between **GILLIG CORPORATION**, hereinafter called the **Employer**, and **AUTO, MARINE AND SPECIALTY PAINTERS UNION, DISTRICT COUNCIL 16, LOCAL UNION 1176**, hereinafter called the **Union**.

### WITNESSETH:

### SECTION 1. RECOGNITION

The Union is recognized as the sole collective bargaining agent for all Paint Department employees (excluding Body Shop employees), including working foremen, employed at the Employer's 25800 Clawiter Road, Hayward, California facility; excluding production control personnel, office clerical employees, guards and supervisors as defined in the Act.

In the event this facility is relocated in Alameda County, or if production and maintenance operations are expanded or transferred to another location in Alameda County, and if operations at the new location are substantially the same as, or directly connected with, the present operations so that the new location would be considered an accretion to the present bargaining unit under the National Labor Relations Act, this Agreement shall be in full force and effect at such new location.

### SECTION 2. MANAGEMENT RIGHTS

The management of the business and the direction of the working force including but not limited to the right to direct, plan, and control plant operations; to establish or schedule work to be performed; to hire and promote employees, and to discipline, or discharge employees for just cause; to discontinue jobs or work or to lay off employees for just cause; to discontinue jobs or work or to lay off employees for lack of work or other legitimate reasons not in conflict with this Agreement; to introduce new and improved; methods or facilities, to change existing methods or facilities, or to purchase supplies and service for the performance of its business; to determine the products to be manufactured and the process and means of manufacture; are exclusively the right of the management of the Employer and all rights inherently a function of management and not relinquished in this Agreement remain solely with management; provided that none of the above provisions shall be used for the purpose of discriminating against any employee because of his or her membership in the Union. Should a dispute arise concerning these management rights or responsibilities, the dispute should be treated in accordance with provisions of Section 9 of this Agreement and any decision reached pursuant to Section 9 must be within the scope and terms of this Agreement.

## SECTION 3.  UNION SECURITY

**3.1    Union Security**

It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement, shall remain members in good standing, and those who are not members on the effective date of this Agreement, shall on the thirty-first (31st) calendar day following the effective date of this Agreement, become and thereafter remain members in good standing in the Union.

It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall on the thirty-first (31st) calendar day following the beginning of such employment, become and thereafter remain members in good standing in the Union.

The Employer, upon written request of the Union, shall discharge any employee within seven (7) calendar days after receipt of such notice who fails to tender the periodic dues and initiation fees uniformly required by the Union as a condition of requiring or retaining membership in the Union.  If the Union has notified the Employer in writing prior to the expiration of the seven (7) days, that the employee has paid the amounts owing, the discharge shall not take place.

**3.2    Hiring**

The Employer agrees that in hiring to fill all vacancies or new positions in any classification covered by this Agreement, that they will hire through the office of the Union, provided the Union shall be able to furnish competent and experienced persons for the work required.

If the Union is unable to furnish qualified workers within twenty-four (24) hours after the Employer calls for them, the Employer shall be free to procure the workers from any other source.  All newly hired employees shall present management with a clearance slip from the Union prior to beginning work.

**3.3    Check-off of Union Dues**    *$51 Monthly    $26 District Council Monthly*

Upon receipt of a written assignment and authorization signed by the employee of a mutually acceptable form, the Employer agrees to deduct the regular monthly Union dues for the subsequent month from the pay of such employee.  The amount deducted shall be in accordance with the Union constitution.

Payment shall be made to the Union on or before the tenth (10th) day of the calendar month following the deduction.

An Employee's deductions shall begin in the first calendar month following receipt of the authorization card by the Employer.

Should the Employer not deduct dues from any employee's pay because of either insufficient earnings or absence for any reason during the deduction period, the Employer shall make appropriate deductions directed by the Union; provided however, it will be the sole responsibility of such employee to make the required dues payment directly to the Union Office.

The Union shall indemnify and save the Employer harmless against any and all claims, demands, suits, legal proceedings, or other forms of liability that shall arise out of or by reason of action taken or not taken by the Employer for the purpose of complying with any of the provisions of this Section or in reliance on any assignment furnished under such provisions.  The provisions of this Section shall be effective only in accordance and consistent with applicable provisions of federal and state law.

4

### 3.4    Deductions

The Employer, upon receipt of individual valid authorizations agreed to by the Employer and the Union, will make payroll deductions from wages of an employee for D.R.I.V.E., P.A.T., and credit union contributions. Remittances shall be in accordance with the authorization.

## SECTION 4.    HOURS AND OVERTIME

### 4.1    Regular Work Week

(Day Shift). The regular workweek at the straight time rate shall consist of five '(5) consecutive eight (8) hour working days from Monday through Friday. Payday will be weekly for all employees.

### 4.2    Regular Work Day

(Day Shift) The regular workday at the straight time rate shall consist of eight (8) consecutive hours, exclusive of meal period, during the regular workweek and between the hours of 5:00 a.m. and 1:30 p.m. The starting time and quitting time may be changed by mutual agreement between the Employer and the Union.

It is agreed and understood, however, that the Employer may at its discretion, schedule all, or part of, the stockroom, material handling, shipping-receiving, parts, and maintenance departments in a manner to provide eight (8) hours work between the hours of 6:00 a.m. and 4:00 p.m., Monday through Friday.

### 4.3    Minimum Hours

Employees who have seniority with their Employer and who are ordered to report to work on any day other than Saturday, Sunday and Holidays, and who do so at the specified time shall receive a minimum of eight (8) hours' work, or if eight (8) hours' work is not furnished, a minimum of eight (8) hours' pay at the straight time rate.

Employees having seniority who are ordered to report for work on Saturday, Sunday and Holidays and who do so at the specified time shall receive a minimum of four (4) hours' work, or if four (4) hours' work is not furnished, a minimum of four (4) hours' pay at the applicable rate; provided, however, that such minimums on Saturdays and Sundays are not applicable to continuous shift workers, whose regularly scheduled days off shall be substituted for Saturdays and Sundays. The above minimum hour requirements shall not apply if such employees quit, voluntarily lay off, or are discharged for cause.

The minimum guarantee shall not apply where work is not available due to circumstances beyond the Employer's control such as earthquake, fire, flood, lightning, calamity, public utility failure or shortage, insurrection, riot, strike, civil disturbance, adverse environmental condition, bomb threat, tear gas, or governmental order.

### 4.4    Shift Operations

A second or third shift may be established when more than one (1) shift is worked.

All employees on second or third shift at the time of the ratification of this agreement will keep the differential they individually presently enjoy (i.e. Journeypersons = $1.57, Specialist A = $1.38, Specialist B = $1.28, Specialist C = $1.18.) This differential will apply for these employees should they leave second or third shift and return to second or third shift at any future time.

Any employees who are hired on to or transfer to second or third shift after March 1, 1997, will receive a shift premium of $1.00 per hour. Any employee forced or required to work second or third shift for training purposes or special assignments will receive a shift differential as in the above paragraph, so long as they were hired before March 1, 1997.

There shall be a one-half (1/2) hour interval between the termination of the first shift and the beginning of the second shift. If the second shift on Friday should lap over into Saturday, there shall be no Saturday rate paid in this instance.

Employees will be offered work on any new shift created on the basis of Departmental Seniority. In the event that the desired number of employees wishing to work the new shift is not equal to the number needed by the Employer, employees will be assigned by inverse seniority.

The Employer may temporarily transfer a senior employee to a shift for a period not to exceed forty-five (45) workdays. At the end of forty-five (45) days, the senior employee will be transferred back to his/her previous job.

## 4.5    Overtime Rate

All the time worked over eight (8) hours in any one (1) day, or over forty (40) hours in any one (1) week or on Saturdays, shall be paid for at the rate of one and one-half (1 1/2) times the straight-time hourly rate. Work performed before the regular starting time or after the regular quitting time shall be considered overtime and shall be paid for at the rate of one and one-half (1 1/2) time the straight-time hourly rate. Work performed on Sundays shall be paid for at the rate of double (2) times the straight-time hourly rate. Work performed in excess of eight (8) hours on Saturdays or holidays shall be paid for at the rate of double (2) times the straight-time hourly rate. There shall be no pyramiding of premium rates.

## 4.6    Wash-Up and Breaks

Employees working in the Paint Department will be allowed a total of 10 minutes before conclusion of a shift to wash up and clean equipment. Bondo employees will be allowed a five minute wash up period when needed.

All full-time employees shall be entitled to two (2) ten minute breaks each day. One (1) break shall be in the first half of the shift and the other during the second half of the shift. An additional break of ten (10) minutes shall be taken at the end of the regular shift when three (3) or more hours of overtime is scheduled or anticipated.

## 4.7    Scheduled Overtime

The employees recognize their responsibility and obligation to perform overtime when requested by the Employer and the Employer agrees to give as much advance notice as conditions warrant when overtime is to be required. Disciplinary action will not be taken if less than 24 hours notice is given to work overtime. When overtime shifts are necessary, written notice will be posted at least five (5) working days in advance.

An employee shall not be obligated to work overtime provided he gives 24 hours notice to the Employer on forms provided, which shall, upon request, state the reason for not working the overtime. The notice form shall be initialed by his supervisor with a copy returned to the employee with the date and time received. There shall be no concerted refusal to work overtime and employees shall not abuse the right to refuse overtime by repeated unjustified refusals to work overtime.

Any employee transferring from his/her regular department into another department during the course of a work day will be eligible for overtime on a job continuation basis with the following exceptions:

(1) If overtime has been posted in that department prior to the lunch break and an employee is transferred in after lunch, he/she is not eligible for overtime on a job continuation basis within that department; further, he/she has no bumping rights of regular employees in that department who have already accepted overtime for that day.

(2) In cases where overtime hasn't been posted prior to the lunch break, an employee transferring into a department with less than two (2) hours remaining in the regular work day will not be eligible for overtime on a job continuation basis until all regular employees of that department and all employees transferred in with two (2) or more hours left in the regular work day have been asked.

6

4.8    **Weekday Overtime**

Overtime during the regular workweek will be given by job continuation. Any employee who is performing a specific job where overtime for that day is required will be asked to continue that job. If the employee asked refused the overtime, and no other employee is performing that job, the overtime will be offered to the most senior employee in that department who is qualified to perform the job required.

4.9    **Saturday, Sunday and Holiday Overtime**

Saturday, Sunday and Holiday overtime shall be offered to the most senior employee in the department on that shift who is qualified to perform the job required.

When the work force is reduced the senior employees will have the option of continuing the day, or leaving and allowing a junior employee to stay for the remainder of the day.

The Employer shall post a schedule of employees who are to work overtime on a Saturday, Sunday or Holiday at least twenty (20) hours in advance of the scheduled overtime. Any employee who claims he was denied an opportunity to work overtime shall notify his foreperson of his claim before the end of his last shift prior to the scheduled overtime, or be barred from making any such claim.

On Saturday, Sunday and Holidays, if only one shift is required to work overtime, assignments will be made by overall seniority in a department provided the most senior employee is qualified to perform the job required.

## SECTION 5. HOLIDAYS

5.1    **Paid Holidays**

The following days shall be observed as Holidays on which no work is performed, except as provided herein:

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| President's Day | Day after Thanksgiving |
| Memorial Day | Day before Christmas |
| Fourth of July | Christmas Day |
| Labor Day | 2 Floating Holidays* |

*A minimum of two weeks' advance notice must be given to the Employer before a floating holiday is granted and the Employer reserves the right to deny requests which would leave the Employer without the number of employees required to maintain a workable crew. Floating holidays that are scheduled and approved forty-five (45) days prior to the selected day shall not be subject to being bumped on the basis of seniority.

The Employer will allow a minimum of one (1) employee per day to take a floating holiday on any days where no more than ten (10%) percent of the workforce is known to be off.

*Any floating holiday not taken or scheduled to be taken by December 1st of any calendar year will be paid to the employee at the next regularly scheduled payday.

7

**5.2    Qualifying**

All regular employees (those continuously employed thirty (30) days or more) shall receive eight (8) hours pay at the employee's straight-time hourly rate even though no work is performed on the above-named holidays; provided, further, that such employees must work the full day on both the last regular working day immediately preceding the holiday and on the first regular working day following the holiday, and unless the employee so works he shall receive no pay for such holiday unless such absence on the regular working day before and after said holidays is due to the express written permission of the Employer or because of bona fide illness evidenced by a physician's certificate.

To be eligible for floating holidays an employee must be on the payroll for one year.

It is agreed that an employee may be no more than one half (1/2) hour late at the beginning of the scheduled day before or the scheduled day after the paid holiday and still qualify for holiday pay. Time lost over the above allowances shall be deducted from the employees' holiday pay at the rate of one for one.

If an employee is absent the last two (2) scheduled working days before a two-day holiday or the first two (2) scheduled working days after a two-day holiday or the last scheduled working day before and the first scheduled working day after a two-day holiday, the employee will lose two (2) days' holiday pay.

**5.3    Saturday and Sunday Holidays**

If any of the holidays designated in this Section falls on Sunday, the following Monday shall be observed. If any of such holiday falls on a Saturday, it shall be observed on the Friday immediately preceding.

Employees ordered to work on holidays listed in this Section 5 shall be paid at the rate of one and one-half (1 1/2) times the straight-time hourly rate: provided that an employee who is entitled to pay for any such Holiday if not worked, shall receive such Holiday pay in addition to the one and one-half (1 1/2) time he is paid for working.

## SECTION 6.    VACATIONS

**6.1    Duration and Pay**

An employee's anniversary date shall constitute the beginning of his or her vacation year. An employee must work a full year and be on the active payroll at the beginning of the last anniversary year in order to qualify for vacation benefits for the previous year. Vacation is considered to be a benefit earned for work performed during the previous year. Work time lost due to layoff or leave or absence will not be considered for vacation time earned. Vacation benefits will be prorated on the basis of time worked during the anniversary year less time spent on layoff or leave of absence, on the basis of one-twelfth (1/12) of the regular benefit entitlement for each full month worked during the anniversary year. For employees who are off of work due to disability or industrial injury or illness, sixteen-hundred (1600) hours worked or paid for in their anniversary year shall constitute qualification for full vacation pay. For pro-ration purposes, sixteen-hundred (1600) hours shall be used as the base.

Vacation Qualifications

One (1) week's vacation with pay after one (1) years' continuous service

Two (2) week's vacation with pay after two (2) years' continuous service

Three (3) weeks' vacation with pay after five (5) years' continuous service

Four (4) weeks' vacation with pay after fifteen (15) years' continuous service

Five (5) weeks' vacation with pay after twenty-five (25) years' continuous service

8

Vacation pay shall be computed at forty (40) times the straight-time hourly rate in each week's vacation.

**5.2   Vacation Schedule**

After the vacation is earned, vacation benefits may be taken at any time during the employee's anniversary year which is mutually agreeable between the employee and the Employer.  The Employer will usually not permit vacations to be scheduled during Inventory time.

A vacation schedule shall be posted during the month of December for employees to select their vacation periods for the next calendar year.  Vacations will be scheduled according to seniority within a department.  Once a vacation is scheduled, it shall not be changed except for emergency or proper cause, and seniority will not be recognized with respect to selecting a new vacation period. (Note: current calendar year vacations would have been bid the previous December.)

Full weeks will be scheduled prior to daily vacations.  An employee who has three (3), four (4), or five (5) weeks of vacation may schedule all of his/her entire vacation at once, but the Employer may, as business requires, permit no more than two (2) weeks to be taken at one time.

It is agreed, however, that the Employer may limit the number of employees out of any one department to a maximum of ten percent (10%) (to the nearest whole person, with a minimum of one (1) person in a department where ten percent (10%) does not equal a whole person).  It is further agreed that the Employer may schedule vacation requests to maintain a workable crew in a specific area within a department.

Upon the request of a laid off employee, the Employer shall pay all accrued vacation time at the time of the layoff.  If no request is made, the employee shall receive vacation pay and the time off when scheduled to take vacation assuming he/she has been recalled at that time.  A laid off employee may request payment for accrued vacation at any subsequent date if he did not request it at the time of the layoff, however, if he/she does so, unpaid time off upon return to work is waived.

**6.3   Not Cumulative**

Neither vacations nor vacation pay will be cumulative from year to year. No employee shall accept vacation pay in lieu of time off except when mutually agreed between Employer, Employee and the Union. Earned vacation pay shall not be lost.

**6.4   Pay in Advance**

Vacation paychecks shall be issued on the last scheduled working day preceding the employee's vacation period; provided, however, such employee shall have indicated his vacation date during the vacation bidding in December or has given the Employer one week's notice.  Such checks shall be in addition to the normal weekly earned check and shall be by a separate check.

**6.5   Holiday Within Vacation**

If a Holiday for which he/she would otherwise be paid falls within employee's vacation period, he/she shall receive an additional day off with pay.

**6.6   Accumulated Vacation Credit**

(1) No Employee shall receive vacation or pay until he/she has completed his/her introductory period.  His/her accrued vacation credit shall then be computed from time of hire.

(2) A seniority employee who is terminated for any cause shall be entitled to vacation pay for any unused vacation for which he qualified on the prior anniversary date and, in addition, vacation pay prorated from the prior anniversary date to the date of termination in accordance with the qualification schedule in Section 6.1.

9

(3) An employee who terminates after completing the introductory period set forth in Section 8.1 shall receive prorated vacation pay.

## SECTION 7. SENIORITY

**7.1    Definition and Qualification**

Seniority is defined as the length of time an employee has been continuously employed within the bargaining unit. Seniority shall not apply to any employee until he/she has completed his/her introductory period, as defined in Section 8. Once attained, seniority shall be effective as of the date of his/her employment, and it shall continue without interruption unless lost as provided herein. Seniority shall only be recognized where specifically provided herein.

An employee's seniority shall be lost and he/she shall be terminated when he/she:

      (1)    Formally quits.
      (2)    Is discharged for cause.
      (3)    Fails to show up for work or fails to call in for three (3) consecutive days.
      (4)    Fails to return to work from an official leave of absence.
      (5)    Fails to return to work within three (3) days after he/she has been notified by telephone or telegraph to report for work from layoff status.
      (6)    Is laid off for a period of :
           a)  Employees with less than four (4) years seniority – twelve (12) consecutive months
           b)  Employees with four (4) or more years - eighteen (18) consecutive months.
      (7)    Is unable to return from a medical leave of absence within the same time restraints as outlined in (6) above.

**7.2    Layoff and Recall**

Bargaining unit seniority shall be used to determine layoff and recall rights within a department regardless of how long an employee has been in a department or how he/she got there.

In the event a layoff in a department is necessary, the following procedure will be followed:

      (1)    For all layoffs, introductory employees shall be laid off before other employees
      (2)    Employees shall be laid off by seniority in the department affected, less senior first so long as the remaining employees are qualified to perform the work required.

Employees retained or re-hired because of seniority must be willing, competent and qualified to perform the work to be done.

A twenty-four (24) hour notice of layoff will be given to an employee who is to be laid off.

The foregoing shall not apply if the less senior employee is a finish painter, unless the senior employee has performed the job in the past at Gillig or elsewhere and if necessary, successfully passes a skills test.

**7.3    Seniority List**

The Employer shall keep an up-to-date departmental seniority list of all employees covered by this agreement and post the seniority list in a conspicuous place. This provision is for the convenience of the parties and in case of any dispute concerning the accuracy of the list, the provisions of this Agreement and not the posted list shall control. Employer shall at all times of layoff post a list of introductory employees.

7.4   **Salaried Positions**

If an employee is requested by management to fill a salaried position and accepts, he/she shall be excluded from the coverage of this Agreement. In the event the Employer subsequently transfers such employee or such employee requests a transfer back to a position covered by this Agreement within six (6) months from his/her promotion, he/she shall be credited with the seniority, which he had on the date he was promoted to his/her salaried position. The Employer shall notify the Union in writing of the date the employee begins the salaried position.

7.5   **Stewards Seniority**

All regular shop stewards shall have top seniority for purposes of layoff.

## SECTION 8.   INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM

8.1   **Introductory Period**

An introductory period of sixty (60) days shall be established. To this period shall be added the number of days an introductory employee is absent from work during the initial sixty (60) day period. Absences due to injuries covered by Worker's Compensation of less than a total of seven (7) days shall not be added to the sixty (60) days introductory period.

During the introductory period, an employee may be discharged for any reason, which, in the opinion of the Employer, is just and sufficient, except for legitimate Union activity.

8.2   **Right of Discharge**

For all offenses, other than those listed below, the Employer agrees to give a written warning prior to discharge. Written warnings will be removed from an employee's personnel file after twelve (12) months from the date the warning is given. No written warning need be given if the discharge is for:

a. Theft or willful damage to Company property or the property of another employee.

b. Possession of, or reporting under the influence of, intoxicating beverages, use of illegal drugs or controlled substances without a valid prescription.

c. Gross insubordination.

d. Fighting on Company Property.

e. Possession of firearms or explosives on Company premises.

f. Falsification of a time card or other Company record.

g. Failure to show up for work or fails to call in and misses three (3) consecutive shifts.

h. Participating in unsafe acts that endanger life.

I. Sleeping on the job during working hours.

When an employee is discharged, the Employer shall notify the Union within twenty-four (24) hours, in writing, of the action taken and the reasons for the action. A copy of the reasons for the discharge shall be given to the discharged employee.

11

**8.3    Appeals**

If any employee feels he/she has been unjustly discharged, he/she shall have the right to appeal his/her case to the Adjustment Board through the Union. Such appeals must be filed in writing by the Union within three (3) working days from the date the Union is notified by the Employer of such discharge and unless so filed the right of appeal is lost. It is agreed that no employee shall be discharged while he/she is on vacation, authorized leave of absence or absent due to bona fide illness.

**8.4    Discipline Procedure**

In all cases of discharge or written reprimand, the employee to be disciplined will be brought to the shop superintendent's office and the disciplinary action taken in the presence of a steward. After the passage of twelve (12) months, a written reprimand may not be used against an employee in discipline or discharge, and will be deleted from his/her personnel file.

**8.5    Absenteeism**

On evaluating absences for purposes of determining excessive absenteeism, the Company will not base disciplinary action upon any absence for holidays, vacations, Union business, state disability, industrial injuries, paid leaves, leaves pre-excused by management, except in cases of chronic absenteeism.

## SECTION 9.  SETTLEMENT OF DISPUTES

**9.1    Grievance Procedure**

In the event of any disputes or grievances which may arise concerning the application or enforcement of this Agreement, other than discharge (see Section 8.3), an aggrieved employee shall, within three (3) working days after he/she first had notice to the facts on which the grievance is based, discuss the grievance with his/her immediate supervisor, and both parties will endeavor to adjust the matter. Failing such adjustment, within three (3) working days, the aggrieved employee and the shop steward may take the grievance up with the plant superintendent and both parties shall endeavor to adjust the matter.

Failing such adjustment, within the next three (3) working days, the grievance may be taken up with the plant manager by the business agent, the shop steward and the aggrieved employee by their submitting a written statement of the grievance which states the specific facts and sections of the Agreement on which the grievance if based, and scheduling a grievance meeting within the next three (3) working days unless such time is extended by mutual agreement to a date certain.

At such plant grievance meeting, each party shall set forth fully and fairly the facts and contentions in support of its position and shall endeavor to adjust the matter. In the event of failure to adjust the matter at the plant grievance meeting, either party may, within the next three (3) working days, give written notice of its desire to obtain the formal determination of the dispute in accordance with the following provisions. (Complaints involving payment of compensation shall be in writing and no adjustments shall be retroactive for more than ninety (90) days.)

**9.2    Board of Adjustment**

Upon receipt of such notice, a representative of the Union and a representative of the Employer will, if unable to resolve the dispute, promptly establish a Board of Adjustment and prepare a written statement of the issue for submission to such Board of Adjustment; provided, however, either party, whereupon the grievance may be submitted directly to a neutral arbitrator as if a deadlock had been declared.

The Board shall consist of two (2) members selected by the Employer and two (2) members selected by the Union. The two (2) members selected by the Union shall not include representatives of the Local Union party to

12

this Agreement, and the two (2) members selected by the Employer shall not include persons on the payroll of the Employer who supervise, directly or indirectly, the aggrieved employee or who are otherwise involved in the dispute. The Board of Adjustment shall elect a Chairman and a Secretary and adopt rules of procedure. The Board shall proceed to hear the issue submitted to it promptly, each party being permitted to present such evidence as may be material. The Board shall have no jurisdiction or authority to add to, subtract from, or alter in any way the provisions of this Agreement, but shall have authority to interpret or apply the provisions thereof only to the extent necessary for determination of the grievance submitted to it for determination.

If a majority of the Board can agree on a determination of the grievance, it shall render such decision promptly in writing, a copy of such decision to be delivered to each party. Such decision of the Board shall be final and not serve as a precedent in any other case. If a majority of the Board cannot agree on a decision within a reasonable time after conclusion of the hearing, a deadlock shall be declared and the matter may be submitted by either party to a neutral arbitrator in the following manner.

9.3    <u>Arbitration and Selection of Arbitrator</u>

A neutral arbitrator shall be selected from a panel of seven arbitrators provided by the Federal Mediation and Conciliation Service. The parties shall then strike names from the list, the Union striking first. The last remaining named person shall be requested to be the arbitrator.

9.4    <u>Arbitrability</u>

Any claim or proposal by a party to add to or alter this Agreement, and any matter arising out of any such claim or proposal, shall not be arbitrable. Any dispute as to the arbitrability of any given matter shall be resolved by a court of competent jurisdiction and not by an arbitrator or Board of Adjustment, unless the parties specifically agree otherwise in writing.

9.5    <u>Arbitration Procedure in Discharge Cases</u>

In discharge cases, the hearing shall be held on the first available date and, unless specifically requested by the arbitrator or one of the parties, the case shall be heard and determined without transcript or filing of briefs and the arbitrator shall be instructed to issue his award from the bench if possible, or in any event within twenty-four (24) hours after the conclusion of the hearing, with an opinion, if requested by either party to be subsequently prepared.

9.6    <u>Arbitration Decision and Award</u>

Except as otherwise provided, the arbitrator shall issue his/her decision and award within thirty (30) days after the case is submitted for decision. The arbitrator shall have not authority to add to, delete from, or otherwise alter this Agreement. The award of the arbitrator, if consistent with the foregoing, shall be final and binding upon the Employer, the Union and all employees concerned.

9.7    <u>Cost of Arbitration</u>

Each party shall bear its own expense in presenting its case to the arbitrator. The expense of an arbitrator shall be divided equally between the parties.

9.8    <u>No Interruption of Work</u>

There shall be no interruption of work during the settlement of a grievance.

13

## SECTION 10.  STRIKE AND LOCKOUT

**10.1    Strikes**

The Union and its members agree not to engage in, endorse or encourage any strikes or stoppages of work during the term of this Agreement.

It shall not be a violation of this Section if individual employees of the Company covered by this contract refuse to cross a legitimate picket line at the Company established by another union, provided that:

1.  The striking union is the recognized collective bargaining representative of other employees of the Company.

2.  The picket line has been officially sanctioned by the Teamsters Joint Council No. 7 and /or the Central Labor Council of Alameda County, the Building Trades Council of Alameda County, or another appropriate labor body.

**10.2    Lockout**

The Employer agrees not to engage in a lockout during the term of this Agreement.

## SECTION 11.   HEALTH AND WELFARE

**11.1    Eligibility**

New employees of the Employer shall become eligible for participation in the Health, Welfare, Dental, Drug and Vision Plans upon the first of the month following completion of their introductory period of employment.

**11.2    Health & Welfare**

For employees who are members of Auto, Marine and Specialty Painters Union, Local 1176, the following applies:

The Employer agrees to pay the Board of Trustees of the Automotive Industries Welfare Fund for the term of this Agreement, The sum Of Nine Hundred Seventy Dollars ($970.00)

Should the Board of Trustees of the Automotive Industries Welfare Fund find it necessary from an experience factor to increase the premium in order to maintain the schedule of benefits, the Employer aggress to increase the premium payments upon notification by the Administrator of the Automotive Industries Welfare Fund through the duration of this Collective Bargaining Agreement, subject to the limitations set forth in Section 11.3 below.

**11.3    Employer Contribution**

Beginning January 1, 2007, and each year thereafter during the original term of this agreement, an additional $25.00 per employee per month shall become available.  If these additional funds are not needed for employee's health & welfare, they will automatically be placed into the Pension Plan, as set forth below.  The Union will advise the Employer no later than October 1st of each calendar year where the funds will be applied.

14

**SECTION 12. PENSION PLAN**

**12.1    Employer Contribution & Eligibility**

For employees who are members of Auto, Marine & Specialty Painters Union, Local 1176, the Employer shall pay the sum of $376.41 per month per employee to the Automotive Industries Pension Trust Fund to provide pension benefits.  Contribution amounts may vary based on Section 11.3 above.

The Employer shall transmit said pension payments to the Automotive Industries Pension Trust Fund, and the Employer shall pay Fifteen Dollars ($15.00) per month to the Supplemental Income 401(k) Plan Fund on the first (1st) day of each month, and in no event later than the fifteenth (15th) day of each month.

New employees of the Employer shall become eligible for participation in the Pension Plan upon the first (1st) day of the month following completion of ninety (90) calendar days of employment.

**SECTION 13.   NO DISCRIMINATION**

There shall be no discrimination of any kind because of race, creed, color, national origin, sex, or union activities against any employee or applicant for employment by the Employer or by anyone employed by the Employer; and to the extent prohibited by applicable state and federal law there shall be no discrimination because of age.

**SECTION 14.   LEAVE OF ABSENCE**

**14.1    Approved Leaves**

Employees with more than one (1) year of continuous service shall be granted leaves of absence of from not less than one (1) week to thirty (30) days.  Leaves in excess of thirty (30) days, not to exceed six (6) months, if granted, shall be in writing with a copy sent to the Union.

If the Company believes the number of leaves requested at any one time hampers the functioning of a department, after all other reasonable efforts are made to otherwise staff the department, it may deny further leaves, using seniority and need as its criteria for doing so.

Requests for unpaid funeral leave extensions may be for periods of less than one (1) week.

A vacation request which has been denied may not be changed to a request for a leave of absence and a request for a leave of absence may be denied when a full compliment of employees is on vacation.

A leave will be denied if the Company believes it has been requested to circumvent the attendance policy.  Such a denial is subject to the grievance procedure.  The Company may deny a leave that is an extension of a vacation; provided however, a one (1) week leave will be granted as an extension to a vacation for the purpose of traveling to a foreign country, if the ten percent (10%) departmental limitation is not exceeded.

An employee will only be granted a second leave of absence exceeding two (2) week's duration during the term of the Agreement if the employee uses, or has used, all remaining vacation and personal holidays in lieu of unpaid time off.

An employee on leave shall not engage in gainful employment without written permission from both the Company and the Union.

Vacation time shall not accrue while an employee is on a leave, nor shall holidays which occur during a leave be paid.

Family and medical leaves shall be granted in accordance with Federal and State laws and the regulations issued pursuant to such laws.

15

**14.2    Military Service**

Any employee covered by this Agreement and agreements supplementary hereto who leaves a position other than a temporary position with any Employer covered by this Agreement, for immediate induction into any of the armed forces of the United States, shall be re-employed if application is made within ninety (90) days after he/she is discharged from the armed forces, in accordance with the provisions of Section 9B of the Selected Services Act of 1948 and any official amendment or modification thereof.

**14.3    Funeral Leave**

In the event of a death in the immediate family of an employee who has completed the introductory period set forth in Section 8.1, shall be granted three (3) working days off with pay. Requests for unpaid funeral leave extensions may be for periods of less than one (1) week

This provision does not apply if the death occurs while the employee is off on leave of absence, layoff, or sick leave.

For the purpose of this provision, the immediate family shall be restricted to father, mother, brother, sister, spouse and child, mother-in-law, father-in-law, brother-in-law, sister-in-law, step-children, step-parents, grandparent, spouse's grandparent, and grandchild. At the request of the Employer, the employee shall furnish proof of death and relationship.

If a death in the immediate family occurs while an employee is on vacation, the employee shall have the option to cancel any unused portion of the vacation and use funeral leave, so long as the employee attends the funeral service.

**14.4    Jury Duty**

When an employee working under the jurisdiction of this Agreement necessarily loses time from work because of jury duty, the Company shall reimburse such employee at his full regular straight-time rate of pay, less whatever remuneration he may receive from other sources for said purpose.

In the event a day shift employee is released from jury duty at any time prior to the end of first shift lunch period, he/she shall return to work and shall be allowed a reasonable time to eat lunch.

In the event a second shift employee is released from jury duty at any time prior to the end of 1st shift lunch period, he/she will report to work at his/her regular starting time. If a second shift employee is released from jury duty after the end of first shift lunch period, but prior to 1:00 pm, he/she must report to work for at least half of their scheduled shift (by 6:00 pm). If, at the Employer's option, an employee is allowed to work more than four hours, any hours in excess of four (4) hours will be at 1½ times the employee's regular rate of pay. If a second shift employee is released after 1:00 pm, he/she need not report for work that day.

Third shift employees will be treated as if they were working first shift.

The employee shall be responsible to obtain documentation from the court indicating the date served, time released, and the amount of remuneration from the court in order to be eligible for pay for jury duty.

### SECTION 15.    UNION REPRESENTATIVES AND BULLETIN BOARDS

**15.1    Business Agents**

The business agent or qualified representative of the Union shall be allowed to visit the Employer's covered establishment for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The business agent or qualified representative of the Union shall report to the management of the office before proceeding to the plant. In the event he/she wishes to interview an employee, he/she shall

16

report to the employee's department supervisor and he/she shall be permitted to interview him/her privately in the office. He/she shall not interfere with the normal conduct of work.

**15.2    Stewards**

A steward and alternate steward may be provided for each shift, such stewards to be appointed by the Union or selected by the employees on the job. Grievances which may arise and which cannot be adjusted on the job shall be reported to the Union by the steward; provided, however, in no event shall the steward or the Union order any changes and no changes shall be made except with the consent of the Employer.

**15.3    Bulletin Boards**

The Employer shall provide a reasonable number of bulletin boards in places reasonably accessible to the employees covered by this Agreement for the purpose of posting notices of official Union business, such as times and places of meetings.

## SECTION 16.   INDUSTRIAL INJURIES

All industrial injuries, no matter how slight, must be reported to the supervisor, or Medical Department at the time the injury occurs. Any employee sent home by the Company or Company physician because of industrial injury or industrial disease shall be paid for the remainder of his/her shift.

The Company shall pay employees for any time lost during regular working hours in visits to the doctor in the case of an industrial injury or industrial disease, or shall make arrangements with the doctor that such visits shall be scheduled for after working hours. The Employer will not interfere with doctor visits which occur during working time once the visit is scheduled.

Any employee who is off work due to an industrial injury or industrial disease, the disability having been previously determined by the Company physician, shall be paid his/her regular rate of pay until disability payments are due him/her from the insurance company. The maximum payments shall be three (3) days' pay from any one injury, such payment to be made to employee upon request, except in the case of any employee whose injury exceeds fourteen (14) days.

## SECTION 17.   GENERAL PROVISIONS

**17.1    Safety**

Both the Employer and the Union shall expend every effort to see to it that the work performed under the terms and conditions of this Agreement is performed with a maximum degree of safety, consistent with the requirement to conduct efficient operations. The Employer's safety rules shall be posted in a conspicuous place.

The Employer shall convene a meeting of the Plant Safety Committee. There shall be a shop steward present at each safety committee meeting. The Employer will attempt to call a safety committee member to the scene of any accident.

A grievance filed concerning a safety matter, shall be moved through an expedited settlement process. If the parties are unable to agree on a solution concerning an issue of safety, within 72 hours of the time the issue is discussed, the parties shall choose the first available arbitrator from a panel of five (5) that have previously been designated by the parties. The parties shall ask the arbitrator to make a bench decision on the matter.

**17.2    Maintenance of Sanitary Facilities**

The Employer agrees to maintain a clean, sanitary washroom with toilet facilities.

17

**17.3** **New Processes and New Machines**

The Employer shall notify the Union in advance of any permanent layoff of seniority employee which is going to result from the installation of new machinery or new processes in order that the impact of such layoff upon the employee may be discussed. Such discussions are to be without recourse to the grievance procedure and without the right of strike or lockout; provided that in the event any new job classification are created or any permanent layoff is made because of the introduction of new machinery or new methods of operation, then the Union may refer to the grievance procedure set forth in this Agreement. Any dispute concerning the wage rates established by the Employer for such new classification and the question of whether such layoff was in accordance with the layoff provision set forth in the seniority section of the Agreement.

**17.4** **Shop Rules**

The Employer may make and enforce shop rules provided that they are posted in the plant and not in conflict with this Agreement. The Employer before posting any new rules shall send each rule to the Union five (5) days before posting in order to insure that there is no conflict with this Agreement. Should the Employer make any changes in its shop rules during the life of this Agreement, which the Union does not agree to, the Union shall have the right to protest such changes by the grievance procedure and the change shall not be placed in effect until the grievance is resolved.

**SECTION 18. SICK LEAVE**

**18.1** **Benefits**

Each employee who has been continuously employed by the Employer for a period of at least one (1) year shall be credited with sick leave as follows:

1. Each employee who, on April 1, 1977, was continuously employed for at least one (1) year, shall be credited as of that date with five (5) days (forty (40) straight-time hours) of sick leave; and effective January 1, 1978, he/she shall be credited with five (5) additional days (forty (40) straight-time hours) of sick leave; and shall thereafter be credited with six (6) additional days (forty-eight (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

2. All other employees hired before March 1, 1988, shall be credited with five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service; he/she shall be credited with an additional five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's second anniversary date of continuous service; and shall thereafter be credited with six (6) additional days (forty-eight (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

3. Employees hired after March 1, 1988, shall be credited with four (4) (thirty-two (32) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service and an additional four (4) days on each successive anniversary date of employment.

**18.2** **Waiting Period**

Such sick leave shall be applicable only in cases of bona fide illness or accident and shall be paid from the first (1st) workday's absence. In those cases where illness or injury occurs during working hours, the first work day's absence shall be calculated as the twenty-four (24) hour period following the time at which the employee leaves work by reason of illness or injury. Succeeding work days' absences, full pay until sick benefit allowance is used up.

If an employee is absent from work on the day before any of the holidays listed in Section 5 or on the day after any of such holidays, due to bona fide illness or accident, said holidays shall be considered a work day's absence within the meaning of this Section 18.

18

18.3    **Doctor's Certificate or Other Proof**

If an employee's illness results in absence from work of three (3) or more consecutive days, then a doctor's certificate or other reasonable proof of illness may be required by the Employer.

18.4    **Payment Defined**

For the purposes of this Section 18, full pay shall mean pay for the regular daily schedule of working hours, for those days which the employee would have worked had the disability not occurred, calculated at straight-time.

An Employee's sick leave payment shall automatically be paid with each absence until the sick benefit allowance is used up.

18.5    **Unused Sick Leave Accumulation**

Unused sick leave may be accumulated from year to year. Accumulations in excess of thirty (30) days may, at the option of the employee, be converted to cash, if the employee so requests in writing within thirty (30) days of their qualifying date (January 1 or anniversary date).

Payment will be made by the payday following the qualifying date. Employees who quit or are terminated are not eligible for any cash conversion for unused sick leave.

18.6    **Integration**

In industrial injury or disability cases, Workers' Compensation or Unemployment Disability (UCD) benefits and sick benefit allowances shall be paid separately, but in the event Workers' Compensation payments or Unemployment Disability payments cover all or part of the period during which sick benefit allowances are paid, the sum of the two shall not exceed the sick benefit payable for said period, and the unused portion of accumulated sick leave will continue to be credited to the employee. Integration of sick leave benefits with Workers' Compensation or Unemployment Disability payments is to be automatic; the Employer may not waive integration, and any employee entitled to Worker's Compensation or Unemployment Disability payments must apply therefore (in order that the principle of integration may be applied) before sick benefits are payable.

Employees may waive using sick leave in cases involving industrial injury or disability. The burden is on the employee to inform the Employer of a waiver in writing.

### SECTION 19.  SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS

19.1    **Scope of Agreement**

Except as otherwise specifically provided herein, this Agreement fully and completely incorporates the understanding of the parties hereto and constitutes the sole and entire agreement between the parties on any and all matters subject to collective bargaining. Neither party shall, during the term of this Agreement, demand any change therein nor shall either party be required to bargain with respect to any matter. Without limiting the generality of the above, both parties on their own behalf and on behalf of the respective members bound hereby, waive any right to demand of the other any negotiation, bargaining, or change during the life of this Agreement with respect to pensions, retirement, health and welfare, annuity or insurance plans, or respecting any question of wages, hours or any other terms or conditions of employment; provided that nothing herein shall prohibit the parties from changing the terms of this Agreement by mutual agreement.

19.2    **Separability of Provisions**

Should any section, clause or provisions of this Agreement be declared illegal by final judgment of a court of competent jurisdiction, such invalidation of such section, clause or provision shall not invalidate the remaining

19

portions hereof, and such remaining portions shall remain in full force and effect for the duration of this Agreement.

Upon such invalidation, the parties agree immediately to meet and negotiate substitute provisions for such parts or provisions rendered or declared illegal or an unfair labor practice. In the event the parties are unable to agree upon substitute provisions, the dispute may at the request of either the Employer or the Union be referred to arbitration for settlement pursuant to the provisions of Section 9.3 hereof; but the power of the arbitrator shall be restricted and limited to determining a substitute provision to provide for the same specific objective and purpose of the provision rendered or declared illegal.

**19.3** <u>Unlawful Action Not Required</u>

The parties agree that neither will willfully require the other or their respective members bound hereby to do or perform any act prohibited by law.

**19.4** <u>Government Controls</u>

Should any provisions of this Agreement not be placed into effect because of government wage regulations or controls, and should such controls be subsequently amended, relaxed or terminated during the term of this Agreement, then and in that event such provision(s) as has not been placed into effect because of said regulations or controls will be effectuated on the date on which it is determined that it is legally possible to do so, but not retroactively in excess of six (6) months, provided that the legality of such action is established during the term of this Agreement.

The Company and the Union agree to cooperate in the preparation and filing of any submission(s) which during the term of this Agreement are required under the regulations of the Cost of Living Council or any successor agency responsible for the administration of government wage controls.

## SECTION 20.  WAGES AND CLASSIFICATIONS

The classifications and hourly wage rates for employees covered by this Agreement are set forth in Appendix "A" hereto.

## SECTION 21.  PLANT CLOSURE AND RELOCATION

The Employer shall notify the Union of a proposed plant shutdown or relocation within ninety (90) days as either of these occurrences becomes imminent. In the event of a total plant closure, the following items shall become effective:

1. The Employer agrees to severance pay for any employees displaced by a closure of the plant as contained in a Letter of Understanding attached to this Agreement.

2. The Company agrees to pay an additional two (2) months of Health & Welfare coverage for any employee displaced by a closure who has less than three (3) complete calendar years of service. For Employees with more than three (3) calendar years of service, three (3) months of Health & Welfare coverage shall be paid.

In the event the Employer relocates its operation to another area, the following shall be effective:

1. The Employer will offer employment at any new location to displaced employees on the basis of seniority.

2. In the event an employee declines to transfer, the employee may elect to receive Health & Welfare coverage due as set forth above.

3. The Company and Union will make every effort to find jobs for employees displaced by a plant closure or unable to accept a transfer to a new location.

## SECTION 22.  SEVERANCE PAY

In the event of a plant closure during the term of this Agreement, severance pay will be paid as a supplement to unemployment benefits to provide the equivalent of the employee's weekly net take-home pay per the following schedule:

| Years of Service At Time of Termination | Number of Weeks Unemployment Benefit may be Supplemented |
|---|---|
| 24 years or more | 12 weeks |
| 22 years but less than 24 | 11 weeks |
| 20 years but less than 22 | 10 weeks |
| 18 years but less than 20 | 9 weeks |
| 16 years but less than 18 | 8 weeks |
| 14 years but less than 16 | 7 weeks |
| 12 years but less than 14 | 6 weeks |
| 10 years but less than 12 | 5 weeks |
| 8 years but less than 10 | 4 weeks |
| 6 years but less than 8 | 3 weeks |
| 4 years but less than 6 | 2 weeks |
| 1 year but less than 4 | 1 week |
| Less than 1 year | 0 |

In order to maintain benefits eligibility, employees must notify the payroll office every two (2) weeks, either by telephone or by mailing a photocopy of their current unemployment check.  Acceptance of any employment following termination will result in no further severance being made.

NOTE:

Employees choosing not to file for unemployment benefits will receive the same severance benefits as if they were receiving unemployment compensation.  However, they must still report their employment status every two (2) weeks if they wish to receive severance payments.

An employee receiving severance pay in accordance with the procedures set forth above who obtains another job and loses it for any reason shall be permitted one ninety (90) day period during which he/she shall notify the Company of the job loss and may be returned to the severance program set forth herein.

## SECTION 23.  SUB-CONTRACTING

The Company has the right to subcontract when it concludes that the work cannot be more economically or efficiently performed by employees.  The Employer agrees that it will not sub-contract bargaining unit work with the sole intent of depleting the bargaining unit work force.  Upon demand, the Company agrees to supply the Union with all reasons for sub-contracting of any function causing loss of bargaining unit work.

## SECTION 24.  DURATION

This Agreement shall be effective January 1, 2007, except for those provisions of the Agreement which have been assigned other effective dates as herein above set forth and shall remain full force and effect to and including December 31, 2011, and shall continue thereafter from year to year, unless at least sixty (60) days prior thereto, or to the first (1st) day of January of any subsequent year either party shall file written notice with the other of its desire to amend, modify, or terminate this Agreement.

21

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this ___ day of _____, 2007.

GILLIG CORPORATION                    AUTO, MARINE AND SPECIALTY
                                      PAINTERS UNION, LOCAL 1176
                                      DISTRICT COUNCIL 16

By: _____           By: _____

22

## APPENDIX "A"

## SECTION 1.  CLASSIFICATIONS AND WAGE RATES

The classifications and minimum straight-time hourly wage rates covered by this Agreement shall be as follows
(The Union reserves the right to allocate increases beginning in 2007, to pension or health and welfare, if needed):

|  | 1/1/07 | 1/1/08 | 1/1/09 |
|---|---|---|---|
| **Working Foreperson*:** | $ 23.31 | $ 24.66 | $ 26.06 |
| **Journeyperson:** | $ 22.31 | $ 23.66 | $ 25.06 |

Employees may be interchanged between bodywork (Local 853) and paint preparation (Local 1176) to provide
job coverage in cases of unplanned absenteeism, emergencies or extraordinary circumstances. The employer shall
notify the respective chief shop steward of the need to interchange. In no event shall the ability to interchange be
used to fill permanent vacancies.

*Replacement Working Forepersons: An employee designated to replace a Working Foreperson shall receive One
Dollar ($1.00) per hour above the journeyperson rate of pay for each hour he or she functions as a temporary
Working Foreperson.  If the assignment requires a change of shift, Two Dollars ($2.00) per hour above the
journeyperson rate of pay shall be paid.

## SECTION 2.  PROGRESSION

Upon completion of one (1) year's service in the Specialist C classification, the employee shall be moved up to
the Specialist B classification.

Upon completion of one (1) year's service in the Specialist B classification, the employee shall be moved up to
the Specialist A classification.

An employee who has performed satisfactorily as a Specialist A for twelve (12) months will become a
journeyperson; provided, however, that if the Employer believes that the employee is not competent or qualified
to perform the functions of a journeyperson in the department, it shall notify the Union in writing and, if the
matter cannot be resolved within three (3) working days, the Employer may submit the matter to a Board of
Adjustment (pursuant to Section 9.2) which shall be comprised of persons who are qualified, by reason of training
and experience, to evaluate the qualifications and competence of a journeyperson in the work involved.  In such a
case, members of the Board of Adjustment may question the employee directly about his/her job knowledge and
experience and observe him/her performing the various functions of a journeyperson in the work involved.

Where there is a need and vacancy for a journeyperson in a department (and the job is not filled pursuant to the
foregoing paragraph) the job shall be offered to the most senior qualified Specialist A in the department who has
performed satisfactorily as a Specialist A for twelve (12) months or more; provided, however, that if the
Employer believes that the employee is not competent or qualified to perform the functions of a journeyperson in
the department the matter may be adjusted in accordance with the foregoing paragraph.

If an employee is deemed not to be qualified as a journeyperson, he/she shall be afforded, upon written request, a
reasonable opportunity to perform job functions required of a journeyperson which he/she had not previously
been afforded a reasonable opportunity to perform.

All employees within a progression temporarily laid off, when re-hired shall be paid the same hourly rate of pay
as when temporarily laid off and shall not lose any accumulated time worked toward the regular increase.

23

## SECTION 3.  WORKING FOREPERSONS

There shall be at least one (1) Working Foreperson in each department that has three (3) or more employees. If the Working Foreperson is not at work for more than two (2) weeks straight, he or she shall be replaced by another employee on a temporary basis. All employees elevated to Working Forepersons shall have their pay reflect the change in a timely manner.

A working foreperson shall receive at least the rate listed for that classification, and shall not have the responsibility to hire or fire, or discipline, employees or effectively recommend such.

It is agreed and understood that this Agreement does not abridge the Employer's rights to promote or demote, to or from the classification of working foreperson.

## SECTION 4.   MINIMUM RATES

The wage rates listed above are minimum rates for the classifications shown.  The minimum rates listed shall not be used to reduce the wage rate of any employee now receiving more than the listed minimum rate for his classification.

## SECTION 5.   EMPLOYEES HIRED AFTER MARCH 1, 1988

A.  The classifications and minimum straight-time hourly wage rates covered by the Agreement shall be as follows:

|  | | 1/1/07 | 1/1/08 | 1/1/09 |
|---|---|---|---|---|
| Journeyperson | | Same as Section 1 | | |
| Specialist A | – | $ 20.40 | $ 21.75* | $ 23.15* |
| Specialist B | – | $ 19.40 | $ 20.75* | $ 22.15* |
| Specialist C | – | $ 18.40 | $ 19.75* | $ 21.15* |

*May be allocated by the Union towards Health & Welfare and/or Pension.

B.  Summer Hires may be utilized and shall be paid $1.50 per hour below the Specialist C rate.

## SECTION 6.  ECONOMICS

6.1  **Annual Economics**

During the life of this Agreement, Wages, Pension and Health & Welfare shall be as follows:

| Year | Wages | Health & Welfare |
|---|---|---|
| 2007 | $1.30* | $25.00 per month |
| 2008 | $1.35* | $25.00 per month |
| 2009 | $1.40* | $25.00 per month |

*May be allocated by the Union towards Health & Welfare and/or Pension.

24

## LETTER OF UNDERSTANDING

### ATTENDANCE AND TARDINESS CONTROL

Attendance shall be monitored by a point and warning system. The program is designed to control excessive absenteeism by assigning points for absences and tardiness and by making employees aware of where they are under the procedure.  Any warning that is not issued within three (3) working days of the unexcused absence or tardy shall not be counted under this program.

| | | |
|---|---|---|
| ½ point | Late [any time after one (1) hour but less than four (4) hours] |
| ½ point | Early out [more than one (1) hour but less than four (4) hours] |
| 1 point | Unpaid absence in excess of paid sick days |

One (1) point given for absences of one (1) day or consecutive days for bona fide illness evidenced by a doctor's or hospital certificate. Each day missed in excess of three (3) consecutive days will be assessed a point, in the absence of a certificate.

If a late and an early out occur on the same day, a total of one (1) point will be assessed. No more than a total of one (1) point will be assessed for any one day.

### SCHEDULE I

| POINTS | ACTION |
|---|---|
| 2 points | Step 1 – written counsel |
| 3 points | Step 2 – written warning |
| 6 points | Step 3 – 2nd written warning |
| 8 points | Step 4 – Final written warning |
| 9 points | Step 5 - Termination |

On the final calendar day of each year, all points shall expire except for those employees on Step 3, or beyond. Those employees shall be subject to the following schedule of points in the next year.

### SCHEDULE II

| ABSENCE POINTS | ACTION |
|---|---|
| 2 points | Step 1 – written warning |
| 4 points | Step 2 – Final written warning |
| 5 points | Step 3 – Termination |

Employees who are placed on Schedule II shall remain on that schedule for two years.

**Call-in Procedure**

The Company shall provide a system to document calls by time and date, for calls made prior to the switchboard opening.  Calls for absences must be received within one (1) hour of the start of the shift or will be considered "no call-no show".

**Excused Absences**

Vacation days, jury duty, holidays, paid sick days, and Company approved leaves, days that fall under FMLA, ADA, Worker's Compensation, or SDI.  Union Business when Employer is pre-notified.

FOR THE EMPLOYER                    FOR THE UNION

25

## LETTER OF UNDERSTANDING

### FINISH PAINTER'S PREMIUM

Assigned Finish Painters will be paid a premium of 3.00 per day effective April 1, 1991.

Assignment of jobs is at the sole discretion of management.

FOR THE EMPLOYER                    FOR THE UNION

## LETTER OF UNDERSTANDING

## HOLIDAYS & VACATIONS, "WORKABLE CREW"

This letter shall serve to interpret the "minimum" number of employees allowed off for Vacations and Floating Holidays in each department.

The Company shall continue the policy of not counting employees out on Funeral Leave or Medical Leave (work or non-work related) when establishing the minimum.

"Workable crew", as contained in the Vacation and Holiday sections of the Agreement, shall be interpreted as ten percent (10%) plus one (1) person allowed out of the department on a floating holiday per week. (Exception: See **Section 5. Floating Holidays**)

Where urgent verifiable reasons for a day off are presented to the Company, the Company shall allow an employee to utilize a Floating Holiday if the employee has one available for use. This shall not be subject to the pre-scheduling language contained in the Agreement.


FOR THE EMPLOYER                    FOR THE UNION


27

## LETTER OF UNDERSTANDING

### DRUG & ALCOHOL POLICY

It is understood between the parties that the Employer's Drug and Alcohol Policy as provided to the Unions on December 27, 1990, is made a part of this Collective Bargaining Agreement.

It is further understood than any employee who fails a drug and alcohol test will be afforded an opportunity to attend a T.A.R.P. rehabilitation program or another accredited rehabilitation program and will be returned to work without loss of seniority upon the successful completion of the program and the execution of a T.A.R.P. Return to Work Agreement. The program must be started immediately upon failing the test and only one opportunity for such rehabilitation will be offered to an employee. Failure of a second test any time after attending a rehabilitation program will result in termination. Failure to immediately agree to commence rehabilitation or failure to successfully complete the program will result in termination.

An employee, who enters the T.A.P. program voluntarily, may be subject to a Return-to-Work Agreement, and subject to random testing (maximum of four (4) times in any twelve (12) consecutive month period from their return to work). However, it shall be the employee's choice as to whether or not he/she wishes to participate in the program.

An employee in a voluntary T.A.P. program who tests positive, or who fails to fulfill the Return-to-Work Agreement will be eligible for one (1) additional referral. An employee under an involuntary referral will be subject to immediate termination upon testing positive or failing to fulfill the terms of the Return-to-Work Agreement.

FOR THE COMPANY                    FOR THE UNION

28

## LETTER OF UNDERSTANDING

### MARTIN LUTHER KING'S BIRTHDAY

Any employee wishing to celebrate Martin Luther King's birthday shall notify the Company at least two (2) weeks prior to the holiday.  The employee shall be allowed to take a floating holiday, vacation, sick leave, or unpaid excused day off.

In the event the number of requests exceed the amount required to maintain a workable crew, the Company reserves the right to deny requests on the basis of seniority.

FOR THE COMPANY          FOR THE UNION

29

## LETTER OF UNDERSTANDING

### SENIORITY

It is agreed by and between the parties that Section 7.1 of the Collective Bargaining Agreement shall include the interpretation set forth in this Letter of Understanding.

Where more than one employee is hired on the same working day, each employee's position on the seniority board shall be determined by the employee number assigned by the Company as employment offers are accepted. The lowest employee number indicates the highest seniority.

It is further understood that the manner of determining seniority when more than one employee has been hired on the same date, set forth herein, has been used prior to the execution of this Letter of Understanding and shall be recognized as determinative in all cases.


FOR THE COMPANY                    FOR THE UNION


30

## LETTER OF UNDERSTANDING

### 401(k) PLAN AND ADMINISTRATION

This Letter of Understanding will confirm that Gillig Corporation agrees to participate in the Supplemental Income Plan Trust Fund, 401(k) Plan, on behalf of the employees represented by Teamsters Local 853 and Painters Local 1176. Gillig Corporation agrees to make weekly deductions as directed by the employees and forward the deductions to the 401(k) Plan administrator on a monthly basis. Gillig Corporation also agrees that it will pay the monthly administrative fee on behalf of each participating employee.

FOR THE COMPANY                    FOR THE UNION

**CONTACT EXTENSION**

*Between*

**AUTO, MARINE AND SPECIALTY PAINTER
TEAMSTERS LOCAL 853
LOCAL 1176**

*And*

**GILLIG CORPORATION**

The current Collective Bargaining Agreement that expires at midnight on December 31, 2009 has been extended until midnight on December 31, 2011.

The only changes in the Agreement are economic and are as follows:

January 1, 2010:        $1.45 per hour (to be allocated), plus an additional $25.00 per month to be used for Health and Welfare increases.

If the $25.00 per month is not needed for Health and Welfare, then it will be applied to either the 401(k) Plan or Pension Plan(s).

January 1, 2011:        $1.50 per hour (to be allocated), plus an additional $25.00 per month to be used for Health and Welfare increases.

If the $25.00 per month is not needed for Health and Welfare, then it will be applied to either the 401(k) Plan or Pension Plan(s).

All other terms and conditions in the Collective Bargaining Agreement shall remain the same.

**FOR THE UNION:**                    **FOR THE EMPLOYER:**

By: _____              By: _____
Date: 4-23-08                           Date: 4/23/08

By: _____              By: _____
Date: _____           Date: 4/23/08

32

# CONTRACT EXTENSION
*Between*

## GILLIG, LLC & PAINTERS LOCAL 1176

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2011 is hereby extended until midnight December 31, 2014, upon the terms and conditions set forth herein:

1. On January 1, 2012 an increase of $1.55 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176.

2. On January 1, 2013 an increase of $1.57 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.31 per hour).

3. On January 1, 2014 an increase of $1.62 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.34 per hour).

4. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**                    **FOR THE UNION:**

By: _Pamela J. McKenna_              By: _Jose Santana_

Date: _2/10/11_                       Date: _2/10/11_

# CONTRACT EXTENSION

## *Between*

## GILLIG, LLC & PAINTERS LOCAL 1176

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2014 is hereby extended until midnight December 31, 2016, upon the terms and conditions set forth herein:

1.  On January 1, 2015 an increase of $1.69 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.13 per hour).

2.  On January 1, 2016 an increase of $1.74 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.14 per hour).

3.  All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**

By: *Pamela J. McKenna*

Date: 3/19/13

**FOR THE UNION:**

By: *Joe Santana*

Date: 3/19/13

# CONTRACT EXTENSION

*Between*

## GILLIG, LLC & PAINTERS LOCAL 1176

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2016 is hereby extended until midnight December 31, 2023, upon the terms and conditions set forth herein:

1. On January 1, 2017 an increase of $1.79 per hour shall be applied to wages, pension, and health & welfare, as allocated by Painters Local 1176.  In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.14 per hour).

2. On January 1, 2018 an increase of $1.84 per hour shall be applied to wages, pension, and health & welfare, as allocated by Painters Local 1176.  In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.15 per hour).

3. On January 1, 2019 an increase of $1.89 per hour shall be applied to wages, pension, and health & welfare as allocated by Painters Local 1176.  In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.16 per hour).

4. On January 1, 2020 an increase of $1.94 per hour shall be applied to wages, pension, and health & welfare as allocated by Painters Local 1176.  In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.17 per hour).

5. On January 1, 2021 an increase of $1.99 per hour shall be applied to wages, pension, and health and welfare as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.18 per hour).

6. On January 1, 2022 an increase of $2.04 per hour shall be applied to wages and health and welfare as allocated by Painters Local 1176.  In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.19 per hour).

7. On January 1, 2023 an increase of $2.09 per hour shall be applied to wages, pension and health and welfare as allocated by Painters Local 1176  In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.20 per hour).

8. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**

By: _____

Date: 12/27/16 _____

**FOR THE UNION:**

By: _____

Date: 12/19/2016 _____

**FOR THE COMPANY:**

By: Pamela J. McKenna

Date: 12/27/16 _____

**FOR THE UNION:**

By: _____

Date: _____

## LETTER OF UNDERSTANDING

### Summer Student Program

This letter will confirm the hiring of students for the summer months.

In order to provide employment for deserving students, Gillig may hire students for the summer months from May 31, 2016, through September 23, 2016, at a rate of $27.14 per hour. The provisions of the Agreement shall not apply unless the summer student continues to work beyond September 23, 2016, at which time he/she shall be deemed a regular employee and all time worked as a summer student shall count toward completion of the normal introductory period as defined in Section 7 of the Agreement.

It is understood that these individuals must be students and not considered a part of the collective bargaining unit. The company will not employ summer students if there are any regular employees with recall rights on layoff.

Summer students must be cleared through the Union office and will be required to pay a service fee of one hundred fifty-three dollars ($153.00). This shall be the total fee paid for the term of their entire employment as summer student employees. This amount is non-refundable.

**FOR THE COMPANY:**          **FOR THE UNION:**

Pamela J. McKenna     Date          Chris Christophersen          Date



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

</div>

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

On October 23, 2020, I served the foregoing document described as:

DEFENDANT'S NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kane Moon, Esq. | Attorneys for Plaintiff |
| Allen Feghali | RONALD TOLENTINO |
| MOON & YANG, APC | |
| 1055 W. Seventh St., #1880 | |
| Los Angeles, CA 90017 | |
| T: (213) 232-3128 / F: (213) 232-3125 | |
| E: kane.moon@moonyanglaw.com | |
| allen.feghali@moonyanglaw.com | |

☒    **(BY OVERNIGHT DELIVERY)**
I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒    **(STATE)**
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 23, 2020, at San Jose, California.

_____
Elise Dresser

<div align="center">1</div>

# EXHIBIT 7

Moon & Yang APC
Attn:  Moon, Kane
1055 W 7th St.
#1880
Los Angeles, CA    90017____

McManis Faulkner
Attn:  Warren, Michael
50 W. San Fernando St.
10th Floor
San Jose, CA    95113

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

---

Tolentino

                              Plaintiff/Petitioner(s)

                 VS.

Gillig, LLC

                              Defendant/Respondent(s)
                 (Abbreviated Title)

No. RG20073930

Order

Complaint - Other Employment

---

The Complaint - Other Employment was set for hearing on 10/27/2020 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

Case continued to 03:00 PM on 12/08/2020 in Department 23, Complex Determination Hearing, Administration Building, 1221 Oak Street, Oakland.

Dated:  10/27/2020

_S. DeBaca_    01-2-081

_____
CourtroomClerk Sonya Debaca

---

Order

EXHIBIT 8

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|

Moon & Yang
1055 W 7th St  1880 Los Angeles, CA 900172577

TELEPHONE NO.: (213) 232-3128 | FAX NO. (213) 232-3125 | E-MAIL ADDRESS *(Optional)*: seung.yang@moonyanglaw.com
ATTORNEY FOR *(Name)*: Plaintiff: Ronald Tolentino

**FILED**
**ALAMEDA COUNTY**

22659851

NOV 0 6 2020

CLERK OF THE SUPERIOR COURT
By _____ Deputy

FAX FILE

**ALAMEDA COUNTY COURT**

STREET ADDRESS: 1225 Fallon St.

MAILING ADDRESS:

CITY AND ZIP CODE: Oakland, CA 94612

BRANCH NAME:

| PLAINTIFF: Ronald Tolentino | CASE NUMBER: |
|---|---|
| DEFENDANT: Gillig, LLC | RG20073930 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: Tolentino v. Gillig, LLC |
|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☐ other *(specify documents)*:
3. a. Party served *(specify name of party as shown on documents served)*:
   **Gillig, LLC, a limited liability company**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **Universal Registered Agents, Inc.; Christy McCullough - Authorized to Receive**

   | Age: 45 | Weight: 250lbs | Hair: Blonde | Sex: Female |
   |---|---|---|---|
   | Height: 5'11" | Eyes: - | Race: Caucasian | |

4. Address where the party was served: **2020 Hurley Way, # Suite 350**
   **Sacramento, CA 95825**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 9/24/2020   (2) at *(time):* 10:57 AM

   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):*   **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/62173

NOV 0 6 2020

| PETITIONER: Ronald Tolentino | CASE NUMBER: |
| RESPONDENT: Gillig, LLC | RG20073930 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*                        (2) from *(city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) *(Code Civ. Proc., § 415.30.)*

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☑ On behalf of *(specify):* **Gillig, LLC, a limited liability company**
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☑ other: **LLC** |

7. **Person who served papers**

  a. Name: **Katrina Williams - DDS Legal Support**

  b. Address: **2900 Bristol Street  Costa Mesa, CA 92626**

  c. Telephone number: **(714) 662-5555**

  d. **The fee** for service was: **$ 103.90**

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

      (i) ☐ owner    ☐ employee    ☑ independent contractor.

      (ii) Registration No.: **2015-10**

      (iii) County: **Sacramento**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **9/28/2020**

**DDS Legal Support**
**2900 Bristol Street**
**Costa Mesa, CA 92626**
**(714) 662-5555**
**ddslegal.com**

_DDS_

**Katrina Williams**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)      ▶           (SIGNATURE)

EXHIBIT 9

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino | No. <u>RG20073930</u> |
| Plaintiff/Petitioner(s) | |
| VS. | Case Management Order |
| | Date:  12/02/2020 |
| Gillig, LLC | Time:  09:00 AM |
| | Dept:  23 |
| Defendant/Respondent(s) | Judge:  Brad Seligman |
| (Abbreviated Title) | |

**ORDER re: CASE MANAGEMENT**

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

**FURTHER CONFERENCE**

A further Case Management Conference is scheduled for 01/26/2021 at 03:00 PM in Dept. 23.

Counsel and self-represented litigants are reminded to check the court's register of action before appearing at any case management conference at least two days before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings postings on the website is for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). The court may be reached at Dept.23@alameda.courts.ca.gov.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110,  no later than five (5) court days prior to the CMC.  PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT VIA EMAIL TO CLERK BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

**NOTICES**

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  12/02/2020                                            *facsimile*

Judge Brad Seligman

# EXHIBIT 10

Moon & Yang APC
Attn:  Moon, Kane
1055 W 7th St.
#1880
Los Angeles, CA    90017____

McManis Faulkner
Attn:  Warren, Michael
50 W. San Fernando St.
10th Floor
San Jose, CA    95113

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino<br><br>           Plaintiff/Petitioner(s)<br><br>     VS.<br><br>Gillig, LLC<br><br>          Defendant/Respondent(s)<br>    (Abbreviated Title) | No. RG20073930<br><br>Order<br><br>Complaint - Other Employment |

The Complaint - Other Employment was set for hearing on 12/08/2020 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

Case continued to 09:00 AM on 03/09/2021 in Department 23, Complex Determination Hearing, Administration Building, 1221 Oak Street, Oakland.

Dated:  12/08/2020

_S. DeBaca_ 12-2-20

_____
CourtroomClerk Sonya Debaca

EXHIBIT 11

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Tolentino** | No. RG20073930 |
| Plaintiff/Petitioner(s) | |
| **VS.** | **Minutes** |
| **Gillig, LLC** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department    23                              Honorable   Brad Seligman            , Judge

Cause called for: Complex Determination Hearing on December 08, 2020.

Case continued to 09:00 AM on 03/09/2021 in Department 23, Complex Determination Hearing,
Administration Building, 1221 Oak Street, Oakland.

Minutes of     12/08/2020
Entered on      12/09/2020

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

**Minutes**

M14166870

EXHIBIT 12

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG20073930
Order After Hearing Re: of 12/08/2020

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 12/24/2020.

Chad Finke  Executive Officer / Clerk of the Superior Court

By  _____

Deputy Clerk

EXHIBIT 13



240748319

McManis Faulkner
Attn: Warren, Michael
50 W. San Fernando St.
10th Floor
San Jose, CA   95113

...rnia, County of Alameda
...eda County Courthouse

No. RG20073930

Order

Complaint - Other Employment

...g on 12/08/2020 at 03:00 PM in Department 23
...uling was published and has not been contested.

...ent 23, Complex Determination Hearing,

*S. Debaca*
CourtroomClerk Sonya Debaca

Order

EXHIBIT 14


24041515

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
San Francisco, CA 94102

_____

www.cand.uscourts.gov

Susan Y. Soong
Clerk of Court

General Court Number
415-522-2000

January 13, 2021

**FILED**
**ALAMEDA COUNTY**
JAN 19 2021
CLERK OF THE SUPERIOR COURT
By _____ B. OLIVER, Deputy

JAN 19 REC'D

Superior Court of California, County of Alameda
Rene C. Davidson Courthouse
1225 Fallon Street
Oakland CA 94612

**RE:  Ronald Tolentino v.  Gillig, LLC**
         **20-cv-07427-MMC**

Your Case Number:  **RG20073930**

Dear Clerk,

        Pursuant to an order remanding the above captioned case to your court, transmitted herewith are:

        ⊠  Certified original and one copy of this letter

        ⊠  Certified copy of docket entries

        ⊠  Certified copy of Remand Order

        ☐  Other

        Please send an acknowledgement of receipt of these documents to gina_agustine@cand.uscourts.gov.

                                        Sincerely,

**RECEIVED**
JAN 19 2021
By _____
ALAMEDA COUNTY RC

                                        Susan Y. Soong, Clerk

                                        by: Gina Agustine
                                        Case Systems Administrator
                                        (415) 522-2087

ECF DOCUMENT.

I hereby attest and certify this is a printed copy of a
document which was electronically filed with the United States
District Court for the Northern District of California
Date Filed: _____
SUSAN Y. SOONG, Clerk
By: _____GINA AGU_____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RG 20073930

|  |  |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated, | Case No. 20-cv-07427-MMC |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; REMANDING STATE LAW CLAIMS** |
| v. |  |
| GILLIG, LLC, |  |
| Defendant. |  |

Before the Court are the following two motions: (1) plaintiff Ronald Tolentino's ("Tolentino") "Motion to Remand," filed November 6, 2020, and (2) defendant Gillig, LLC's ("Gillig") "Motion to Dismiss," filed December 4, 2020. Both motions have been fully briefed. Having considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**BACKGROUND**

In the instant action, Tolentino, who was employed by Gillig as a maintenance worker from May 2002 to June 2020 (see Compl. ¶ 7), alleges Gillig "failed to pay [him] for all hours worked (including minimum wages and overtime compensation), failed to provide [him] with uninterrupted meal periods, failed to authorize and permit [him] to take uninterrupted rest periods, failed to maintain accurate records of the hours [he] worked, failed to timely pay all final wages to [him] when [Gillig] terminated [his] employment, and failed to furnish accurate wage statements to [him]" (see id. ¶ 14).

---

[1] By orders filed December 7, 2020, and January 4, 2021, the Court took the matters under submission.

1   Based thereon, Tolentino, on September 16, 2020, filed his complaint in the

2   Superior Court of California, in and for the County of Alameda, asserting, on behalf of

3   himself and a putative class, the following seven Causes of Action: (1) "Failure to Pay

4   Minimum Wages for All Hours Worked," (2) "Failure to Pay Overtime Wages," (3) "Failure

5   to Provide Meal Periods," (4) "Failure to Authorize and Permit Rest Periods," (5) "Failure

6   to Pay Wages of Discharged Employees – Waiting Time Penalties," (6) "Failure to

7   Provide and Maintain Accurate and Compliant Wage Records," and (7) "Violation of

8   California Business & Professions Code §§ 17200, et seq."

9   On October 22, 2020, Gillig removed the case to federal court, on the ground that

10  the asserted Causes of Action are preempted by federal labor law, specifically, § 301 of

11  the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Thereafter, Tolentino

12  moved to remand the case to state court, on the ground that this Court lacks subject

13  matter jurisdiction, and Gillig moved to dismiss all Causes of Action alleged therein,

14  pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

15                              **LEGAL STANDARD**

16  **A.     Motion to Remand**

17  "If at any time before final judgment it appears that the district court lacks subject

18  matter jurisdiction, the case shall be remanded," see 28 U.S.C. § 1447(c), and "federal

19  jurisdiction must be rejected if there is any doubt as to the right of removal in the first

20  instance," see Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).  The party

21  invoking the federal court's removal jurisdiction bears the burden of establishing federal

22  jurisdiction.  See Emrich v. Toche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).

23  **B.     Motion to Dismiss**

24  Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

25  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

26  under a cognizable legal theory."  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

27  699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

28  the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v.

United States District Court
Northern District of California

2

1   Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

2   complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

3   allegations." See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his

4   entitlement to relief requires more than labels and conclusions, and a formulaic recitation

5   of the elements of a cause of action will not do." See id. (internal quotation, citation, and

6   alteration omitted).

7       In analyzing a motion to dismiss, a district court must accept as true all material

8   allegations in the complaint and construe them in the light most favorable to the

9   nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

10  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

11  as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

12  662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be

13  enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555.

14  Courts "are not bound to accept as true a legal conclusion couched as a factual

15  allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

16  

17  **A.    Motion to Remand**

18      In his Motion to Remand, Tolentino argues Gillig "failed to establish federal

19  question jurisdiction under § 301 pre-emption of the Labor Management Relations Act."

20  (See Mot. to Remand at 2:3-6.)

21      Pursuant to section 301 of the LMRA, "[s]uits for violation of contracts between an

22  employer and a labor organization . . . may be brought in any district court of the United

23  States having jurisdiction of the parties." See 29 U.S.C. § 185.  "The preemptive force of

24  section 301 is so powerful that it displaces entirely any state cause of action for violation

25  of a collective bargaining agreement ["CBA"], and any state claim whose outcome

26  depends on analysis of the terms of the agreement." See Newberry v. Pac. Racing

27  Ass'n, 854 F.2d 1142, 1146 (9th Cir. 1988) (internal citation omitted).  "Once preempted,

28  any claim purportedly based on [a] . . . state law is considered, from its inception, a

United States District Court
Northern District of California

1    federal claim, and therefore arises under federal law." See Burnside v. Kiewit Pac. Corp.,

2    491 F.3d 1053, 1059 (9th Cir. 2007) (alteration in original) (internal quotation and citation

3    omitted).

4         To determine whether a state law claim is preempted by § 301, the Ninth Circuit

5    employs a "two-step test." See Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1152 (9th Cir.

6    2019).  First, courts ask "whether the asserted cause of action involves a right conferred

7    upon an employee by virtue of state law, not by a CBA." See Burnside, 491 F.3d at

8    1059. "If the right exists solely as a result of the CBA, then the claim is preempted." See

9    id. "If, however, the right exists independently of the CBA," the court must determine

10   "whether it is nevertheless substantially dependent on analysis of a collective-bargaining

11   agreement," see id. (internal quotation and citation omitted), which determination "turns

12   on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the

13   CBA," see Curtis, 913 F.3d at 1153 (alteration in original) (internal citation omitted).  "At

14   this second step of the analysis, claims are only preempted to the extent there is an

15   active dispute over the meaning of contract terms." See id. (internal quotations and

16   citation omitted).

17        Here, Gillig offers evidence, undisputed by Tolentino, that during the course of

18   Tolentino's employment with Gillig, he was subject to the terms of a CBA between Gillig

19   and Teamsters Local 853 ("Union"). (See Req. for Judicial Notice ("RJN") Ex. 1.)[2] Based

20   thereon, Gillig contends (1) Tolentino's overtime and untimely payment of wages claims

21   are preempted by § 301, on the basis that those claims involve rights that exist solely as

22   a result of the CBA, (2) Tolentino's minimum wage and rest break claims are preempted

23   by § 301, on the basis that those claims require "substantial interpretation" of the CBA

24   (see Opp. to Mot. to Remand at 5:22-6:1), and (3) Tolentino's remaining claims are either

25

26   ────────────

27        [2] Tolentino's unopposed Request for Judicial Notice of the above-referenced CBA
     is hereby GRANTED. See Hall v. Live Nation Worldwide, Inc., 146 F. Supp. 3d 1187,
     1192-93 (C.D. Cal. 2015) (taking judicial notice of CBA where defendant asserted

28   plaintiff's claims were completely preempted by LMRA).

United States District Court
Northern District of California

1    derivative of the foregoing claims or warrant the Court's exercise of supplemental

2    jurisdiction.

3        The Court next addresses the claims in the order discussed by Gillig in opposing

4    Tolentino's Motion to Remand.

5    **1.    Failure to Pay Overtime**

6        In the Second Cause of Action, Tolentino alleges Gillig failed to pay him overtime

7    compensation, in violation of section 510 of the California Labor Code.  Gillig argues the

8    Second Cause of Action is preempted and thus is subject to remand, as it "exists solely

9    as a result of the CBA."  (See Opp. to Mot. to Remand at 9:3-4); see also Burnside, 491

10   F.3d at 1059 (holding claim preempted where "right exists solely as a result of the CBA").

11   As discussed below, the Court agrees.

12       Section 510 of the California Labor Code sets forth the hours constituting overtime

13   hours and the rate of pay applicable thereto.  See Cal. Labor Code § 510.  The Labor

14   Code, however, further provides:

15       Sections 510 and 511 do not apply to an employee covered by a valid
16       collective bargaining agreement if the agreement expressly provides for the
         wages, hours of work, and working conditions of the employees, and if the
17       agreement provides premium wage rates for all overtime hours worked and
         a regular hourly rate of pay for those employees of not less than 30 percent
18       more than the state minimum wage.

19   See id. § 514.  "By its terms, therefore, the default definition of overtime and overtime

20   rates in section 510 does not apply to an employee who is subject to a qualifying CBA."

21   See Curtis, 913 F.3d at 1153-54.  Rather, under such circumstances, the employee's

22   "right to overtime exists solely as a result of the CBA."  See id. at 1155 (internal quotation

23   and citation omitted) (finding, where CBAs at issue "me[t] the requirements of section

24   514," plaintiff's overtime claim was preempted by LMRA).[3]  Here, it is undisputed that the

25   
_____

26       [3] The case on which Tolentino relies, Vasserman v. Henry Mayo Newhall Memorial
     Hospital, 65 F. Supp. 3d 932 (C.D. Cal. 2014), was decided before Curtis, and thus,
27   Tolentino's reliance thereon is unavailing.  See Fennix v. Tenderloin Hous. Clinic, Inc.,
     No. 20-CV-05207-DMR, 2020 WL 6462394, at *3 & n.3 (N.D. Cal. Nov. 3, 2020) (finding
28   claim preempted where plaintiff did not dispute CBA met requirements of section 514;
     noting Vasserman was "decided before Curtis and relied on caselaw explicitly abrogated

United States District Court
Northern District of California

1    relevant CBA meets the requirements set forth in section 514, and, consequently,

2    Tolentino's right to overtime exists solely as a result thereof.

3         Accordingly, the Second Cause of Action, to the extent it alleges failure to pay

4    overtime, is preempted by the LMRA.

5         **2.    Failure to Timely Pay Wages**

6         The First and Second Causes of Action are based in part on Gillig's alleged failure

7    to timely pay wages, in violation of section 204 of the California Labor Code.  Gillig

8    contends those claims, like Tolentino's overtime claim, "arise[] solely as a result of the

9    CBA."  (See Opp. to Mot. to Remand at 10:25-11:1.)  Again, the Court agrees.

10        Under the California Labor Code, employers are required to pay wages "twice

11   during each calendar month."  See Cal. Labor Code § 204(a).  When, however,

12   "employees are covered by a collective bargaining agreement that provides different pay

13   arrangements, those arrangements shall apply to the covered employees." See id.

14   § 204(c).  Here, it is undisputed that the subject CBA provides for such an arrangement,

15   specifically, the payment of wages on a weekly basis.  (See RJN Ex. 1 § 4.1 ("Payday will

16   be weekly for all employees.").)  Consequently, Tolentino's right to the timely payment of

17   wages "exists solely as a result [of] the CBA."  See Bradford v. Prof'l Tech. Sec. Servs.

18   Inc. (Protech), No. 20-CV-02242-WHO, 2020 WL 2747767, at *4 (N.D. Cal. May 27,

19   2020) (holding, where CBA provided for different pay arrangement than arrangement set

20   forth in section 204(a), "[plaintiff's] right to timely payment exist[ed] solely as a result [of]

21   the CBA and [was] preempted").

22        Accordingly, the First and Second Causes of Action, to the extent they allege

23   failure to timely pay wages, are preempted by the LMRA.

24        **3.    Failure to Pay Minimum Wages**

25        In the First Cause of Action, Tolentino alleges Gillig failed to compensate him for

26   all of the hours he worked and thus that he is entitled "to recover minimum wages for all

27   _____

28   by that decision").

United States District Court
Northern District of California

1    non-overtime hours worked for [Gillig]." (See Compl. ¶ 32.)  Although Gillig does not

2    contend Tolentino's right to minimum wages exists solely as a result of the CBA, see Cal.

3    Labor Code § 1197 (making it "unlawful" to pay "lower wage than the minimum" provided

4    by law), it contends resolution of Tolentino's claim based on such right "requires

5    substantial interpretation of the CBA" (see Opp. to Mot. to Remand at 11:17-20).

6    Specifically, Gillig argues, the Court must interpret Tolentino's "minimum pay rate" as "set

7    forth in Appendix A of the CBA, along with various minimum wage increases agreed to by

8    Gillig and the Union in multiple extension agreements."  (See id. at 11:20-23.)

9        Gillig fails, however, to identify an "active dispute," see Curtis, 913 F.3d at 1153, or

10   even a likely dispute, over the meaning of any terms in the CBA relevant to a

11   determination of Tolentino's pay rate, and "the fact that [Tolentino's] minimum wage rate

12   is defined by the CBA does not in itself create a dispute about the CBA's terms," see

13   Parker v. Cherne Contracting Corp., No. 18-CV-01912-HSG, 2019 WL 359989, at *6

14   (N.D. Cal. Jan. 29, 2019) (finding, where "[d]efendant has not identified any substantive

15   dispute over the language of the CBA that would require interpretation," plaintiff's

16   minimum wage claims are not preempted by LMRA).  Indeed, Tolentino is not challenging

17   the hourly figure applicable to the hours he worked; rather, he alleges there were hours

18   he worked for which he received no credit, i.e., no payment at all.  Thus, any reference to

19   the minimum wage rate provided in the CBA will be necessary only for the purpose of

20   calculating the appropriate amount, if any, of damages to which Tolentino is entitled, i.e.,

21   the sum attributable to any unpaid hours, and "the mere need to 'look to' the collective-

22   bargaining agreement for damages computation is no reason to hold the state-law claim

23   defeated by § 301."  See Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994) (holding,

24   "the bare fact that a collective-bargaining agreement will be consulted in the course of

25   state-law litigation plainly does not require the claim to be extinguished").

26       Accordingly, the First Cause of Action, to the extent it alleges a failure to pay

27   minimum wages, is not preempted by the LMRA, i.e., it remains, as pleaded, a state law

28   claim, and, as said claim and the claims over which the Court has original jurisdiction

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "derive from a common nucleus of operative fact," specifically, Tolentino's employment

2    relationship with Gillig, the Court finds it appropriate to exercise supplemental jurisdiction

3    over it.  See Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley

4    Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003) (internal quotations and

5    citations omitted).

6        **4.    Failure to Provide Rest Breaks**

7            In the Fourth Cause of Action, Tolentino alleges Gillig "failed to authorize [him] . . .

8    to take rest breaks."  (See Compl. ¶ 54.)  Gillig does not contend Tolentino's right to rest

9    breaks exists solely as a result of the CBA.  See Cal. Labor Code § 226.7.  Rather, Gillig

10   contends resolution of the Fourth Cause of Action "requires substantial interpretation of

11   the CBA."  (See Opp. to Mot. to Remand at 13:9-12.)  In support thereof, Gillig points to

12   section 4.6 of the CBA, which provides as follows:

13           All full-time employees shall be entitled to two (2) ten minute breaks each
             day.  One (1) break shall be in the first half of the shift and the other during
14           the second half of the shift.  An additional break of ten (10) minutes shall be
             taken at the end of the regular shift when three (3) or more hours of
15           overtime is scheduled or anticipated.

16   (See RJN Ex. 1 § 4.6.)  In particular, Gillig argues, the terms "shall be entitled," "regular

17   shift," and "anticipated" will require interpretation of the above-referenced provision.  (See

18   Opp. to Mot. to Remand at 13:21-23, 14:9-11.)

19           Gillig fails, however, to identify an active dispute as to the interpretation of any of

20   the above terms; to the extent Gillig argues there is a potential for dispute, and even

21   assuming, arguendo, a potential, rather than an active, dispute suffices for purposes of

22   § 301, see Curtis, 913 F.3d at 1153 (holding, "[a]t th[e] second step of the analysis,

23   claims are only preempted to the extent there is an active dispute over the meaning of

24   contract terms" (internal quotations and citation omitted)), Gillig's argument is not

25   persuasive.[4]

26   _____

27       [4] The case on which Gillig relies, Marquez v. Toll Global Forwarding (USA) Inc.,
     No. 218CV03054ODWASX, 2018 WL 3218102 (C.D. Cal. June 28, 2018), is readily
28   distinguishable on its facts, as the terms under consideration therein were different than
     the above-referenced terms; moreover, the parties "actively dispute[d]" them.  See

                                              8

1    First, as to the term "shall be entitled," there is, contrary to Gillig's assertion, no

2    meaningful distinction between that language and the statutory term "shall authorize and

3    permit."  See Cal. Code Regs. tit. 8, § 11160(11); see also Bradford, 2020 WL 2747767,

4    at *7 (finding CBA provision, pursuant to which employees were "entitled" to rest breaks,

5    "unambiguous").  Second, when read in context, there can be no real disagreement as to

6    the meaning of the term "regular shift."  (See RJN Ex. 1 § 4.2 ("Regular Workday (Day

7    Shift)") (providing, "[t]he regular workday . . . shall consist of eight (8) consecutive

8    hours").  Similarly, the meaning of the term "anticipated" overtime is not reasonably

9    subject to dispute.  In particular, "anticipated" overtime, when read in context, is

10   unscheduled overtime that has been offered to an employee and has not, by the end of

11   the employee's regular shift, been refused.  (See id. §§ 4.7-4.9.)

12   Accordingly, the Fourth Cause of Action is not preempted by the LMRA, i.e., it

13   remains, as pleaded, a state law claim, and, as said claim and the claims over which the

14   Court has original jurisdiction "derive from a common nucleus of operative fact,"

15   specifically, Tolentino's employment relationship with Gillig, the Court finds it appropriate

16   to exercise supplemental jurisdiction over it.  See Trs. of Constr. Indus. & Laborers

17   Health & Welfare Tr., 333 F.3d at 925 (internal quotations and citations omitted).

18   **5.    Remaining Causes of Action**

19   As noted, Gillig argues the remaining Causes of Action are either derivative of the

20   Causes of Action that are preempted by the LMRA or warrant the Court's exercise of

21   supplemental jurisdiction.  Specifically, Gillig contends (1) the Fifth, Sixth, and Seventh

22   Causes of Action are derivative of the claims over which the Court has original

23   jurisdiction, and (2) the Court should exercise supplemental jurisdiction over the Third

24   Cause of Action.[5]

25   _____

26   Marquez v. Toll Global Forwarding, 804 F. App'x 679, 681 (9th Cir. 2020).

27   [5] In its Motion to Dismiss, Gillig argues the Third Cause of Action, i.e., Tolentino's
meal period claim, is preempted by § 301, apparently basing such argument on the
28   CBA's "reference to lunch or meal periods in three separate provisions."  (See Mot. to
Dismiss at 13:26.)  Gillig fails, however, to identify any dispute, whether active or

United States District Court
Northern District of California

1    As discussed above, the First Cause of Action, to the extent it alleges a failure to

2    timely pay wages, and the Second Cause of Action, in its entirety, are preempted by the

3    LMRA.  To the extent the Fifth, Sixth, and Seventh Causes of Action are derivative

4    thereof, they likewise are preempted by the LMRA.  See Vasquez v. Packaging Corp. of

5    Am., No. CV 19-1935 PSG (PLAx), 2019 WL 4543106, at *4 (C.D. Cal. June 7, 2019)

6    (finding, where plaintiff's overtime claim was preempted by LMRA, plaintiff's remaining

7    claims were preempted by LMRA "to the extent they [were] derivative of [p]laintiff's

8    overtime claim").

9        As to the Third Cause of Action, in its entirety, as well as the Fifth, Sixth, and

10   Seventh Causes of Action, to the extent they are not derivative of the preempted claims,

11   the Court, for the same reasons as set forth above with respect to Tolentino's minimum

12   wage and rest break claims, finds it appropriate to exercise supplemental jurisdiction.

13   **6.    Conclusion: Motion to Remand**

14       In sum, to the extent Tolentino seeks an order remanding all asserted Causes of

15   Action to state court based on a lack of subject matter jurisdiction, the Motion to Remand

16   will be denied.

17   **B.    Motion to Dismiss**

18       In its Motion to Dismiss, Gillig argues Tolentino's claims are subject to dismissal

19   because Tolentino "failed to grieve and arbitrate his claims in accordance with the

20   requirements of the collective bargaining agreement." (See Mot. to Dismiss at 6:11-13.)

21   In support thereof, Gillig points to section 9 of the CBA, titled, "SETTLEMENT OF

22   DISPUTES," which sets forth the "Grievance Procedure" governing resolution of "any

23   disputes or grievances which may arise concerning the application or enforcement of

24   [said] Agreement." (See RJN Ex. 1 § 9.1.)  Specifically, as provided therein, an

25   "aggrieved employee," within three working days after such employee "first had notice to

26   [sic] the facts on which the grievance is based," is required to first raise the grievance

27

28   potential, as to the meaning of any terms contained therein.

United States District Court
Northern District of California

1   "with his/her immediate supervisor," to thereby "endeavor to adjust the matter," and, if

2   unsuccessful, to continue through a series of meetings with progressively higher-level

3   Gillig personnel, followed by submission to a "Board of Adjustment" consisting of Union

4   members selected by Gillig and the Union,[6] and, ultimately, a hearing by a "neutral

5   arbitrator," whose decision "shall be final and binding upon the Company, the Union and

6   all employees concerned." (See id. §§ 9.1-9.2, 9.6.)

7          In response, Tolentino does not dispute Gillig's assertion that he failed to exhaust

8   the grievance procedures set forth in the CBA. Rather, Tolentino argues, Gillig has failed

9   to show he agreed to "'a clear and unmistakable waiver' of [his] protected right to bring

10  statutory claims in a judicial forum." (See Opp. at 17:18-20 (internal citation omitted).)[7]

11         As to the Causes of Action over which the Court has original jurisdiction, however,

12  i.e., the preempted claims, such argument is unavailing for the reason that, as discussed

13  above, those claims involve rights that "exist[] solely as a result of the CBA" and not a

14  state statute. See Burnside, 491 F.3d at 1059. Consequently, as to those claims,

15  Tolentino's waiver of his right to bring statutory state law claims in a judicial forum is

16  irrelevant, and, given Tolentino's undisputed failure to exhaust the grievance procedures

17  set forth in the CBA, the First Cause of Action, to the extent it alleges untimely payment

18  of wages, the Second Cause of Action, in its entirety, and the Fifth, Sixth, and Seventh

19  Causes of Action, to extent they are derivative of the foregoing Causes of Action, are

20  subject to dismissal. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220-21 (1985)

21  (holding, where plaintiff's state law claim was preempted by § 301, such claim "should

22  have been dismissed for failure to make use of the grievance procedure established in

23  the collective-bargaining agreement or dismissed as pre-empted by § 301" (internal

24

25         [6] "If a majority of the Board can agree on a determination of the grievance," its
26  decision is "final." (See RJN Ex. 1 § 9.2.)

27         [7] In opposing Gillig's Motion to Dismiss, Tolentino again contends none of his
    claims are preempted by the LMRA. Having resolved that issue above, the Court does
28  not address it again here.

United States District Court
Northern District of California

1   citation omitted)).

2        Further, in light of the CBA's provision for final and binding resolution under the

3   Grievance Procedures set forth therein, the Court finds amendment of those Causes of

4   Action would be futile, and, consequently, leave to amend will be denied.  See Brown v.

5   Lucky Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001) (holding claims preempted by §

6   301 "should have been dismissed with prejudice," where plaintiff "failed to seek redress

7   as provided in the CBA," under which she agreed to "pursue such claims in binding

8   arbitration"; noting plaintiff "cannot now resort to the courts to adjudicate th[o]se claims").

9        As to Tolentino's claims that remain, as pleaded, state law claims, the Court's

10  jurisdiction is, as discussed above, supplemental in nature, and where, as here, a court

11  has dismissed the claims over which it has original jurisdiction, it may decline to exercise

12  supplemental jurisdiction.  See 28 U.S.C. § 1367(c)(3).  In this instance, given the early

13  stage of the proceedings, the Court declines to exercise supplemental jurisdiction over

14  the state law claims, and those claims will be remanded to state court.

15                              **CONCLUSION**

16        For the reasons stated above:

17        1.       Tolentino's Motion to Remand is hereby DENIED.

18        2.       Gillig's Motion to Dismiss is hereby GRANTED in part and DENIED in part

19  as follows:

20               a.       The First Cause of Action, to the extent it alleges untimely payment

21  of wages, is hereby DISMISSED with prejudice.

22               b.       The Second Cause of Action, in its entirety, is hereby DISMISSED

23  with prejudice.

24               c.       The Fifth, Sixth, and Seventh Causes of Action, to the extent they

25  are derivative of the above-referenced Causes of Action, are hereby DISMISSED with

26  prejudice.

27               d.       As to the First Cause of Action, to the extent it alleges a failure to

28  pay minimum wages, the Third Cause of Action, in its entirety, the Fourth Cause of

United States District Court
Northern District of California

12

1    Action, in its entirety, and the Fifth, Sixth, and Seventh Causes of Action, to the extent

2    they are not derivative of the claims dismissed above, the motion is DENIED, and those

3    Causes of Action are hereby REMANDED to the Superior Court of California, in and for

4    the County of Alameda.

5         **IT IS SO ORDERED.**

6

7    Dated: January 13, 2021

8                                                          MAXINE M. CHESNEY
                                                           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

13

CAND-ECF                                                    Page 1 of 8

ADRMOP,CLOSED

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:20-cv-07427-MMC
## Internal Use Only

Tolentino v. Gillig, LLC
Assigned to: Judge Maxine M. Chesney
Case in other court: Alameda County Superior
                  Court, RG20073930
Cause: 05:704 Labor Litigation

Date Filed: 10/22/2020
Date Terminated: 01/13/2021
Jury Demand: Plaintiff
Nature of Suit: 790 Labor: Other
Jurisdiction: Federal Question

**Plaintiff**
**Ronald Tolentino**
*individually and on behalf of all*
*others similarly situated*

represented by **Kane Moon**
Moon and Yang, APC
1055 West Seventh Street, Suite 1880
Los Angeles, CA 90017
(213) 232-3128
Fax: (213) 232-3125
Email:
kane.moon@moonyanglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allen Victor Feghali**
Moon and Yang, APC
1055 West Seventh Street, Suite 1880
Los Angeles, CA 90017
(213) 232-3128
Fax: (213) 232-3125
Email:
allen.feghali@moonyanglaw.com
*ATTORNEY TO BE NOTICED*

**Enzo Dalgat Nabiev**
Moon and Yang, APC
1055 West Seventh Street, Suite 1880
Los Angeles, CA 90017

ECF DOCUMENT
I hereby attest and certify this is a printed copy of a
document which was electronically filed with the United States
District Court for the Northern District of California.
Date Filed:
SUSAN Y. SOONG, Clerk
By: GINA AGUSTINE , Deputy Clerk

(213) 232-3128
Email:
enzo.nabiev@moonyanglaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Gillig, LLC**                    represented by **Michael Walter Warren**
*a limited liability company*                      McManis Faulkner
                                                   50 West San Fernando Street,
                                                   10th Floor
                                                   San Jose, CA 95113-2303
                                                   (408) 279-8700
                                                   Fax: (408) 279-3244
                                                   Email:
                                                   mwarren@mcmanislaw.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Craig Martin**
                                                   Willkie Far & Gallagher LLP
                                                   300 N. LaSalle
                                                   Chicago, IL 60654
                                                   (312) 728-9024
                                                   Fax: (312) 728-9199
                                                   Email: cmartin@willkie.com
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Matt D. Basil**
                                                   Willkie Farr & Gallagher LLP
                                                   300 N. LaSalle
                                                   Chicago, IL 60654
                                                   (312) 728-9020
                                                   Fax: (312) 728-9199
                                                   Email: mbasil@willkie.com
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **William Faulkner**
                                                   McManis Faulkner
                                                   50 West. San Fernando Street,

CAND-ECF                                                          Page 3 of 8

10th Floor
San Jose, CA 95113
(408) 279-8700
Fax: (408) 279-3244
Email:
wfaulkner@mcmanislaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/22/2020 | 1 | NOTICE OF REMOVAL of Action Under 28 U.S.C. Sections 1331, 1441 and 1446 from Alameda County Superior Court. Their case number is RG20073930. (Filing fee $400.00, receipt number 0971-15100660). Filed by Gillig, LLC. (Attachments: # 1 Civil Cover Sheet) (Warren, Michael) (Filed on 10/22/2020) Modified on 10/23/2020 (gbaS, COURT STAFF). (Entered: 10/22/2020) |
| 10/22/2020 | 2 | Declaration of Marla Loar in Support of 1 Notice of Removal, filed by Gillig, LLC. (Related document(s) 1 ) (Warren, Michael) (Filed on 10/22/2020) Modified on 10/23/2020 (gbaS, COURT STAFF). (Entered: 10/22/2020) |
| 10/22/2020 | | Answer to Removed Complaint (See Doc No. 1 -exhibit B) by Gillig, LLC. (gbaS, COURT STAFF) (Filed on 10/22/2020) (Entered: 10/23/2020) |
| 10/23/2020 | 3 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 310, receipt number 0971-15103647.) filed by Gillig, LLC. (Martin, Craig) (Filed on 10/23/2020) (Entered: 10/23/2020) |
| 10/23/2020 | 4 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 310, receipt number 0971-15103685.) filed by Gillig, LLC. (Basil, Matt) (Filed on 10/23/2020) (Entered: 10/23/2020) |
| 10/23/2020 | 5 | Certificate of Interested Entities by Gillig, LLC identifying Corporate Parent CC Industries, Inc. for Gillig, LLC. (Warren, Michael) (Filed on 10/23/2020) (Entered: 10/23/2020) |
| 10/23/2020 | 6 | Case assigned to Magistrate Judge Alex G. Tse. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-* |

|  |  | *Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 11/6/2020. (mbcS, COURT STAFF) (Filed on 10/23/2020) (Entered: 10/23/2020) |
|---|---|---|
| 10/23/2020 | 7 | **ORDER Granting Application for Admission of Pro Hac Vice signed by Magistrate Judge Alex G. Tse: granting 3 Motion for Pro Hac Vice. (shyS, COURT STAFF) (Filed on 10/23/2020)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **(Entered: 10/23/2020)** |
| 10/23/2020 | 8 | **ORDER Granting Application for Admission of Pro Hac Vice signed by Magistrate Judge Alex G. Tse: granting 4 Motion for Pro Hac Vice. (shyS, COURT STAFF) (Filed on 10/23/2020)** <br><br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **(Entered: 10/23/2020)** |
| 10/23/2020 | 9 | CERTIFICATE OF SERVICE by Gillig, LLC (Warren, Michael) (Filed on 10/23/2020) (Entered: 10/23/2020) |
| 10/23/2020 |  | (Court only) *** Attorney William Faulkner for Gillig, LLC, Kane Moon, Allen Victor Feghali for Ronald Tolentino added. (gbaS, COURT STAFF) (Filed on 10/23/2020) (Entered: 10/23/2020) |
| 10/23/2020 | 10 | **Initial Case Management Scheduling Order with ADR Deadlines: This case may fall within the Initial Discovery Protocols for Employment Cases Alleging Adverse Action. See General Order 71. Parties and Counsel are directed to review General Order 71 to determine whether it applies to this case, and to comply with that General Order if applicable.** <br><br> **Case Management Statement due by 1/15/2021. Initial Case** |

| | | |
|---|---|---|
| | | **Management Conference set for 1/22/2021 02:00 PM in San Francisco, Courtroom A, 15th Floor. (gbaS, COURT STAFF) (Filed on 10/23/2020) (Entered: 10/23/2020)** |
| 10/23/2020 | <u>11</u> | NOTICE of Appearance by Enzo Dalgat Nabiev (Nabiev, Enzo) (Filed on 10/23/2020) (Entered: 10/23/2020) |
| 11/03/2020 | <u>12</u> | Certificate of Interested Entities by Ronald Tolentino (Feghali, Allen) (Filed on 11/3/2020) (Entered: 11/03/2020) |
| 11/05/2020 | <u>13</u> | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Gillig, LLC.. (Warren, Michael) (Filed on 11/5/2020) (Entered: 11/05/2020) |
| 11/05/2020 | 14 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned. ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. *This is a text only docket entry; there is no document associated with this notice.* (shyS, COURT STAFF) (Filed on 11/5/2020) (Entered: 11/05/2020) |
| 11/06/2020 | <u>15</u> | **ORDER, Case Reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Maxine M. Chesney for all further proceedings. Magistrate Judge Alex G. Tse no longer assigned to the case. Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by The Clerk on 11/6/20. (Attachments: # <u>1</u> Notice of Eligibility for Video Recording)(haS, COURT STAFF) (Filed on 11/6/2020) (Entered: 11/06/2020)** |
| 11/06/2020 | <u>16</u> | **CASE MANAGEMENT SCHEDULING ORDER: Initial Case Management Conference set for 1/22/2021 at 10:30 AM in San Francisco, Courtroom 07, 19th Floor. Joint Case Management Statement due by 1/15/2021.. Signed by Judge** |

CAND-ECF                                                            Page 6 of 8

| | | |
|---|---|---|
| | | Maxine M. Chesney on 11/6/2020. (tlS, COURT STAFF) (Filed on 11/6/2020) (Entered: 11/06/2020) |
| 11/06/2020 | 17 | MOTION to Remand filed by Ronald Tolentino. Motion Hearing set for 12/11/2020 09:00 AM in San Francisco, Courtroom 07, 19th Floor before Judge Maxine M. Chesney. Responses due by 11/20/2020. Replies due by 11/27/2020. (Feghali, Allen) (Filed on 11/6/2020) (Entered: 11/06/2020) |
| 11/09/2020 | 18 | **ORDER DIRECTING DEFENDANT TO SUBMIT CHAMBERS COPY.** Signed by Judge Maxine M. Chesney on November 9, 2020. (mmclc2, COURT STAFF) (Filed on 11/9/2020) (Entered: 11/09/2020) |
| 11/20/2020 | 19 | OPPOSITION/RESPONSE (re 17 MOTION to Remand ) filed byGillig, LLC. (Attachments: # 1 Request for Judicial Notice in Support of Opposition to Motion to Remand)(Warren, Michael) (Filed on 11/20/2020) (Entered: 11/20/2020) |
| 11/23/2020 | 20 | REPLY (re 17 MOTION to Remand ) *In Support of* filed byRonald Tolentino. (Feghali, Allen) (Filed on 11/23/2020) (Entered: 11/23/2020) |
| 12/04/2020 | 21 | MOTION to Dismiss filed by Gillig, LLC. Motion Hearing set for 1/8/2021 09:00 AM in San Francisco, Courtroom 07, 19th Floor before Judge Maxine M. Chesney. Responses due by 12/18/2020. Replies due by 12/28/2020. (Attachments: # 1 Declaration Marla Loar, # 2 Proposed Order)(Warren, Michael) (Filed on 12/4/2020) (Entered: 12/04/2020) |
| 12/07/2020 | 22 | **ORDER VACATING HEARING ON PLAINTIFF'S MOTION TO REMAND.** Signed by Judge Maxine M. Chesney on December 7, 2020. (mmclc2, COURT STAFF) (Filed on 12/7/2020) (Entered: 12/07/2020) |
| 12/07/2020 | 🔒 | (Court only) ***Motions Submitted: 17 MOTION to Remand , ***Deadlines terminated. 22 Order. (tlS, COURT STAFF) (Filed on 12/7/2020) (Entered: 12/07/2020) |
| 12/14/2020 | 23 | CLERK'S NOTICE - JANUARY 22, 2021 INITIAL CASE MANAGEMENT CONFERENCE WILL BE HELD TELEPHONICALLY. The Court will initiate the call. Counsel participating in the conference call are directed to email their name and direct phone number to: mmccrd@cand.uscourts.gov. Due to multiple hearings, counsel are directed to be on telephone stand-by from 10:30 AM until called by the Court. |

| | | |
|---|---|---|
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (tlS, COURT STAFF) (Filed on 12/14/2020) (Entered: 12/14/2020) |
| 12/17/2020 | 24 | STIPULATION WITH PROPOSED ORDER *TO CONTINUE JANUARY 22, 2021 CASE MANAGEMENT CONFERENCE* filed by Ronald Tolentino. (Attachments: # 1 Proposed Order) (Feghali, Allen) (Filed on 12/17/2020) (Entered: 12/17/2020) |
| 12/18/2020 | 25 | **ORDER RE: JOINT STIPULATION RE: CONTINUATION OF JANUARY 22, 2021 CASE MANAGEMENT CONFERENCE.** The Initial Case Management Conference is continued from January 22, 2021, to March 19, 2021. Signed by Judge Maxine M. Chesney on December 18, 2020. (mmclc2, COURT STAFF) (Filed on 12/18/2020) (Entered: 12/18/2020) |
| 12/18/2020 | 26 | OPPOSITION/RESPONSE (re 21 MOTION to Dismiss ) filed byRonald Tolentino. (Feghali, Allen) (Filed on 12/18/2020) (Entered: 12/18/2020) |
| 12/18/2020 | | Set/Reset Deadlines:, Set/Reset Hearing re 25 Order,, Terminate Motions, Joint Case Management Statement due by 3/12/2021. Initial Case Management Conference reset to 3/19/2021 at 10:30 AM in San Francisco, Courtroom 07, 19th Floor. (tlS, COURT STAFF) (Filed on 12/18/2020) (Entered: 12/18/2020) |
| 12/28/2020 | 27 | REPLY Memorandum in support of ( 21 MOTION to Dismiss) filed by Gillig, LLC. (Warren, Michael) (Filed on 12/28/2020) Modified on 12/30/2020 (gbaS, COURT STAFF). (Entered: 12/28/2020) |
| 01/04/2021 | 28 | **ORDER VACATING HEARING ON DEFENDANT'S MOTION TO DISMISS.** Signed by Judge Maxine M. Chesney on January 4, 2021. (mmclc2, COURT STAFF) (Filed on 1/4/2021) (Entered: 01/04/2021) |
| 01/04/2021 | 🔒 | (Court only) ***Motions Submitted: 21 MOTION to Dismiss , ***Deadlines terminated. 28 Order. (tlS, COURT STAFF) (Filed on 1/4/2021) (Entered: 01/04/2021) |
| 01/13/2021 | 29 | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; REMANDING STATE LAW CLAIMS.** Signed by Judge Maxine M. Chesney on January 13, 2021. (mmclc2, COURT |

| | | STAFF) (Filed on 1/13/2021) (Entered: 01/13/2021) |
|---|---|---|
| 01/13/2021 | 🔒 | (Court only) ***Civil Case Terminated. (tlS, COURT STAFF) (Filed on 1/13/2021) (Entered: 01/13/2021) |
| 01/13/2021 | <u>30</u> | Certified copy of <u>29</u> Remand Order and docket sheet sent to Alameda County Superior Court. (gbaS, COURT STAFF) (Filed on 1/13/2021) (Entered: 01/13/2021) |

EXHIBIT 15

# Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino<br><div align="right">Plaintiff/Petitioner(s)</div><div align="center">VS.</div><br>Gillig, LLC<br><div align="right">Defendant/Respondent(s)</div><div align="center">(Abbreviated Title)</div> | No. <u>RG20073930</u><br><br>Case Management Order<br><br>Date:  01/26/2021<br>Time:  03:00 PM<br>Dept:  23<br>Judge:  Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case,  without a conference.
This has has been removed to federal court. it remains on the compliance calendar for tracking purposes only.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 12/28/2021 at 03:00 PM in Dept. 23.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  01/26/2021

_____
Judge Brad Seligman

EXHIBIT 16

**FILED BY FAX**
ALAMEDA COUNTY

January 26, 2021

CLERK OF
THE SUPERIOR COURT
By Lynn Wiley, Deputy

CASE NUMBER:
**RG20073930**

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Enzo Nabiev (SBN 332118)
   **MOON & YANG, APC**
3  1055 W. Seventh St., Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  E-mail: kane.moon@moonyanglaw.com
   E-mail: allen.feghali@moonyanglaw.com
6  E-mail: enzo.nabiev@moonyanglaw.com

7  Attorneys for Plaintiff Ronald Tolentino

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                     **FOR THE COUNTY OF ALEMEDA**

11  RONALD TOLENTINO, individually, and on      Case No.: RG20073930
    behalf of all others similarly situated,
12                                              [Hon. Brad Seligman, Dept. 23]
             Plaintiff,
13                                              **FIRST AMENDED CLASS ACTION AND**
                                                **REPRESENTATIVE ACTION**
14      vs.                                     **COMPLAINT:**

15                                              1.  Failure to Pay Minimum and Regular Rate
    GILLIG, LLC, a limited liability company; and    Wages [Cal. Lab. Code §§ 204, 1194,
16  DOES 1 through 10, inclusive,                   1194.2, and 1197];
                                                2.  Failure to Pay Overtime Compensation
17           Defendants                             [Cal. Lab. Code §§ 1194 and 1198];
                                                3.  Failure to Provide Meal Periods [Cal. Lab.
18                                                  Code §§ 226.7, 512];
                                                4.  Failure to Authorize and Permit Rest
19                                                  Breaks [Cal. Lab. Code §§ 226.7];
                                                5.  Failure to Timely Pay Final Wages at
20                                                  Termination [Cal. Lab. Code §§ 201-203];
                                                6.  Failure to Provide Accurate Itemized
21                                                  Wage Statements [Cal. Lab. Code § 226];
                                                7.  Unfair Business Practices [Cal. Bus. &
22                                                  Prof. Code §§ 17200, et seq.]; and
                                                8.  Civil Penalties Under PAGA [Cal. Lab.
23                                                  Code § 2699, et seq.].

24                                              **DEMAND FOR JURY TRIAL**

25

26

27

28

     FIRST AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1

## **TABLE OF CONTENTS**

2  INTRODUCTION & PRELIMINARY STATEMENT.................................................................. 1

3  THE PARTIES ....................................................................................................................... 3

4       A.    Plaintiff........................................................................................................... 3

5       B.    Defendants....................................................................................................... 3

6  CLASS ACTION ALLEGATIONS ........................................................................................ 7

7  FIRST CAUSE OF ACTION................................................................................................. 11

8  SECOND CAUSE OF ACTION............................................................................................ 12

9  THIRD CAUSE OF ACTION ............................................................................................... 14

10  FOURTH CAUSE OF ACTION ........................................................................................... 14

11  FIFTH CAUSE OF ACTION................................................................................................ 15

12  SIXTH CAUSE OF ACTION ............................................................................................... 16

13  SEVENTH CAUSE OF ACTION......................................................................................... 18

14  EIGHTH CAUSE OF ACTION............................................................................................ 21

15  PRAYER FOR RELIEF........................................................................................................ 23

16  DEMAND FOR JURY TRIAL ............................................................................................. 27

17

18

19

20

21

22

23

24

25

26

27

28

1      Plaintiff Roland Tolentino ("Plaintiff"), based upon facts that either have evidentiary

2 support or are likely to have evidentiary support after a reasonable opportunity for further

3 investigation and discovery, alleges as follows:

4                 **INTRODUCTION & PRELIMINARY STATEMENT**

5      1.      Plaintiff brings this action against Defendants Gillig, LLC, and Does 1 through 10

6 (collectively referred to as "Defendants") for California Labor Code violations and unfair

7 business practices stemming from Defendants' failure to pay minimum and regular rate wages,

8 failure to pay overtime wages, failure to provide meal periods, failure to authorize and permit

9 rest periods, failure to maintain accurate records of hours worked and meal periods, failure to

10 timely pay all wages to terminated employees, and failure to furnish accurate wage statements.

11      2.      Plaintiff brings the First through Seventh Causes of Action individually and as a

12 class action on behalf of herself and certain current and former employees of Defendants

13 (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully

14 below).The Class consists of Plaintiff and all other persons who have been employed by any

15 Defendant in California and classified as a non-exempt employee during the statute of limitations

16 period applicable to the claims pleaded here.

17      3.      Plaintiff brings the Eighth Cause of Action as a representative action under the

18 California Private Attorney General Act ("PAGA") to recover civil penalties that are owed to

19 Plaintiff, the State of California, and past and present non-exempt, hourly-paid employees of

20 Defendants who worked in California during the applicable statute of limitations period

21 (hereinafter referred to as the "Aggrieved Employees").

22      4.      Defendants own/owned and operate/operated an industry, business, and

23 establishment within the State of California, including Alameda County. As such, and based

24 upon all the facts and circumstances incident to Defendants' business in California, Defendants

25 are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare

26 Commission ("IWC"), and the California Business & Professions Code.

27      5.      Despite these requirements, throughout the statutory period Defendants

28 maintained a systematic, company-wide policy and practice of:

(a)     Failing to pay employees for all hours worked, including all minimum wages, overtime wages, in compliance with the California Labor Code and IWC Wage Orders;

(b)     Failing to maintain accurate records of the hours employees worked;

(c)     Failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal period violation occurred;

(d)     Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failing to pay an additional hour's pay for each workday a rest period violation occurred;

(e)     Willfully failing to pay employees all minimum wages, overtime wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates; and

(f)     Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

6.     On information and belief, Defendants, and each of them were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

7.     At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff, the Class, and the Aggrieved Employees.

1    Further, Defendants are responsible for each of the unlawful acts or omissions complained of

2    herein under the doctrine of "respondeat superior".

3                                   **THE PARTIES**

4    **A.    Plaintiff**

5          8.     Plaintiff is a California resident who worked for Defendants in Alameda County,

6    California as a maintenance worker from approximately May 2002 to June 2020.

7          9.     Plaintiff reserves the right to seek leave to amend this complaint to add new

8    plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v.*

9    *American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

10   **B.    Defendants**

11         10.    Plaintiff is informed and believes, and based upon that information and belief

12   alleges, that Defendant Gillig, LLC is:

13                (a)    A California limited partnership with its principal place of business in

14                       Alameda, California.

15                (b)    A business entity conducting business in numerous counties throughout the

16                       State of California, including in Alameda County; and

17                (c)    The former employer of Plaintiff, and the current and/or former employer

18                       of the putative Class. Gillig, LLC suffered and permitted Plaintiff, the

19                       Class, and the Aggrieved Employees to work, and/or controlled their

20                       wages, hours, or working conditions.

21         11.    Plaintiff does not know the true names or capacities of the persons or entities sued

22   herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names.

23   Each of the Doe Defendants was in some manner legally responsible for the damages suffered by

24   Plaintiff, the Class, and the Aggrieved Employees as alleged herein. Plaintiff will amend this

25   complaint to set forth the true names and capacities of these Defendants when they have been

26   ascertained, together with appropriate charging allegations, as may be necessary.

27         12.    At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and

28   each of them, were residents of, doing business in, availed themselves of the jurisdiction of,

                                          3

1  and/or injured a significant number of the Plaintiff, the Class, and the Aggrieved Employees in
2  the State of California.

3      13.    Plaintiff is informed and believes and thereon alleges that at all relevant times
4  each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and
5  the other employees described in the class definitions below, and exercised control over their
6  wages, hours, and working conditions. Plaintiff is informed and believes and thereon alleges
7  that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer,
8  director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest
9  and/or predecessor in interest of some or all of the other Defendants, and was engaged with some
10 or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to
11 some or all of the other Defendants so as to be liable for their conduct with respect to the matters
12 alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted
13 pursuant to and within the scope of the relationships alleged above, that each Defendant knew or
14 should have known about, and authorized, ratified, adopted, approved, controlled, aided and
15 abetted the conduct of all other Defendants.

16              **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

17     14.    Plaintiff Roland Tolentino worked for Defendants in Alameda County, California
18 as a maintenance worker. At all times Defendants classified Plaintiff as non-exempt from
19 California's overtime requirements. During the statutory time period, Plaintiff was typically
20 scheduled to work 5 days in a workweek, and typically in excess of 8 hours in a single workday.

21     15.    Throughout the statutory period, Defendants failed to pay Plaintiff for all hours
22 worked (including minimum wages and overtime compensation), failed to provide Plaintiff with
23 uninterrupted meal periods, failed to authorize and permit Plaintiff to take uninterrupted rest
24 periods, failed to maintain accurate records of the hours Plaintiff worked, failed to timely pay all
25 final wages to Plaintiff when Defendants terminated Plaintiff's employment, and failed to furnish
26 accurate wage statements to Plaintiff. As discussed below, Plaintiff's experience working for
27 Defendants was typical and illustrative.

28

16.    Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff, the Class, and the Aggrieved Employees for all hours worked, including all overtime wages. Defendants regularly use a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff, the Class, and the Aggrieved Employees properly for all the time they have actually worked, even though the realities of Defendants' operations are such that it is possible, practical, and feasible to count and pay for work time to the minute. As a result, Defendants frequently paid Plaintiff, the Class, and the Aggrieved Employees less than all their work time, some of which should have been paid at the overtime rate. As a further result, Defendants failed to maintain accurate records of the hours Plaintiff, the Class, and the Aggrieved Employees worked.

17.    Throughout the statutory period, Defendants have wrongfully failed to provide Plaintiff, the Class, and the Aggrieved Employees with legally compliant meal periods. Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved Employees to work in excess of five consecutive hours a day without providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff, the Class, and the Aggrieved Employees for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work. Defendants did not adequately inform Plaintiff, the Class, and the Aggrieved Employees of their right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work. Defendants also did not have adequate policies or practices to document and verify whether Plaintiff, the Class, and the Aggrieved Employees were taking their required meal periods. Accordingly, Defendants' policy and practice was to not provide meal periods to Plaintiff, the Class, and the Aggrieved Employees in compliance with California law.

18.    Throughout the statutory period, Defendants have wrongfully failed to authorize and permit Plaintiff, the Class, and the Aggrieved Employees to take timely and duty-free rest periods. Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved Employees to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four

1   hours of work (or major fraction of four hours), or without compensating Plaintiff, the Class, and

2   the Aggrieved Employees for rest periods that were not authorized or permitted.  Accordingly,

3   Defendants' policy and practice was to not authorize and permit Plaintiff, the Class, and the

4   Aggrieved Employees to take rest periods in compliance with California law.

5        19.    Throughout the statutory period, Defendants willfully failed and refused to timely

6   pay Plaintiff, the Class, and the Aggrieved Employees at the conclusion of their employment all

7   wages, including overtime wages, meal period premium wages, and rest period premium wages.

8        20.    Throughout the statutory period, Defendants failed to furnish Plaintiff, the Class,

9   and the Aggrieved Employees with accurate, itemized wage statements showing all applicable

10  hourly rates, and all gross and net wages earned (including correct hours worked, correct wages

11  earned for hours worked, correct overtime hours worked, correct wages for meal periods that

12  were not provided in accordance with California law, and correct wages for rest periods that were

13  not authorized and permitted to take in accordance with California law).  As a result of these

14  violations of California Labor Code § 226(a), Plaintiff, the Class, and the Aggrieved Employees

15  suffered injury because, among other things:

16        (a)    the violations led them to believe that they were not entitled to be paid

17                minimum wages, overtime wages, meal period premium wages, and rest

18                period premium wages to which they were entitled, even though they were

19                entitled;

20        (b)    the violations led them to believe that they had been paid the minimum,

21                overtime, meal period premium, and rest period premium wages to which

22                they were entitled, even though they had not been;

23        (c)    the violations led them to believe they were not entitled to be paid

24                minimum, overtime, meal period premium, and rest period premium wages

25                at the correct California rate even though they were;

26        (d)    the violations led them to believe they had been paid minimum, overtime,

27                meal period premium, and rest period premium wages at the correct

28                California rate even though they had not been;

      (e)   the violations hindered them from determining the amounts of minimum, overtime, meal period premium, and rest period premium owed to them;

      (f)   in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages owed to them, computations they would not have to make if the wage statements contained the required accurate information;

      (g)   by understating the wages truly due them, the violations caused them to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits;

      (h)   the wage statements inaccurately understated the wages, hours, and wage rates to which Plaintiff, the Class, and the Aggrieved Employees were entitled, and Plaintiff, the Class, and the Aggrieved Employees were paid less than the wages and wage rates to which they were entitled.

Thus, Plaintiff, the Class, and the Aggrieved Employees are owed the amounts provided for in California Labor Code § 226(e).

## CLASS ACTION ALLEGATIONS

21.   Plaintiff brings certain claims individually, as well as on behalf of each and all other persons similarly situated, and thus, seeks class certification under California Code of Civil Procedure § 382.

22.   All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

23.   The proposed Class consists of and is defined as:

All persons who worked for any Defendants in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent.

24.   At all material times, Plaintiff was a member of the Class.

25.   Plaintiff undertakes this concerted activity to improve the wages and working

1    conditions of all Class Members.

2        26.    There is a well-defined community of interest in the litigation and the Class is

3    readily ascertainable:

4            (a)    Numerosity: The members of the Class (and each subclass, if any) are so

5                numerous that joinder of all members would be unfeasible and impractical.

6                The membership of the entire Class is unknown to Plaintiff at this time,

7                however, the Class is estimated to be greater than 100 individuals and the

8                identity of such membership is readily ascertainable by inspection of

9                Defendants' records.

10           (b)    Typicality: Plaintiff is qualified to, and will, fairly and adequately protect

11               the interests of each Class Member with whom there is a shared, well-

12               defined community of interest, and Plaintiff's claims (or defenses, if any)

13               are typical of all Class Members' claims as demonstrated herein.

14           (c)    Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect

15               the interests of each Class Member with whom there is a shared, well-

16               defined community of interest and typicality of claims, as demonstrated

17               herein. Plaintiff has no conflicts with or interests antagonistic to any Class

18               Member. Plaintiff's attorneys, the proposed class counsel, are versed in

19               the rules governing class action discovery, certification, and settlement.

20               Plaintiff has incurred, and throughout the duration of this action, will

21               continue to incur costs and attorneys' fees that have been, are, and will be

22               necessarily expended for the prosecution of this action for the substantial

23               benefit of each class member.

24           (d)    Superiority: A Class Action is superior to other available methods for the

25               fair and efficient adjudication of the controversy, including consideration

26               of:

27               1)    The interests of the members of the Class in individually

28                   controlling the prosecution or defense of separate actions;

2)   The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

3)   The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4)   The difficulties likely to be encountered in the management of a class action.

(e)   Public Policy Considerations: The public policy of the State of California is to resolve the California Labor Code claims of many employees through a class action. Indeed, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are also fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means. Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights at the same time as their privacy is protected.

27.   There are common questions of law and fact as to the Class (and each subclass, if any) that predominate over questions affecting only individual members, including without limitation, whether, as alleged herein, Defendants have:

(a)   Failed to pay Class Members for all hours worked, including minimum wages, and overtime wages;

(b)   Failed to provide meal periods and pay meal period premium wages to Class Members;

(c)   Failed to authorize and permit rest periods and pay rest period premium wages to Class Members;

(d)   Failed to promptly pay all wages due to Class Members upon their discharge or resignation;

(e)   Failed to provide Class Members with accurate wages statements;

9

PROOF OF SERVICE

1         (f)   Failed to maintain accurate records of all hours Class Members worked,

2              and all meal periods Class Members took or missed; and

3         (g)   Violated California Business & Professions Code §§ 17200 *et. seq.* as a

4              result of their illegal conduct as described above.

5     28.    This Court should permit this action to be maintained as a class action pursuant to

6  California Code of Civil Procedure § 382 because:

7         (a)   The questions of law and fact common to the Class predominate over any

8              question affecting only individual members;

9         (b)   A class action is superior to any other available method for the fair and

10            efficient adjudication of the claims of the members of the Class;

11        (c)   The members of the Class are so numerous that it is impractical to bring all

12            members of the class before the Court;

13        (d)   Plaintiff, and the other members of the Class, will not be able to obtain

14            effective and economic legal redress unless the action is maintained as a

15            class action;

16        (e)   There is a community of interest in obtaining appropriate legal and

17            equitable relief for the statutory violations, and in obtaining adequate

18            compensation for the damages and injuries for which Defendants are

19            responsible in an amount sufficient to adequately compensate the members

20            of the Class for the injuries sustained;

21        (f)   Without class certification, the prosecution of separate actions by

22            individual members of the class would create a risk of:

23            1)   Inconsistent or varying adjudications with respect to individual

24               members of the Class which would establish incompatible standards

25               of conduct for Defendants; and/or

26            2)   Adjudications with respect to the individual members which would,

27               as a practical matter, be dispositive of the interests of other

28               members not parties to the adjudications, or would substantially

1    impair or impede their ability to protect their interests, including but
2    not limited to the potential for exhausting the funds available from
3    those parties who are, or may be, responsible Defendants; and,

4    (g)    Defendants have acted or refused to act on grounds generally applicable to
5    the Class, thereby making final injunctive relief appropriate with respect to
6    the class as a whole.

7    29.    Plaintiff contemplates the eventual issuance of notice to the proposed members of
8    the Class that would set forth the subject and nature of the instant action.  The Defendants' own
9    business records may be utilized for assistance in the preparation and issuance of the
10    contemplated notices.  To the extent that any further notices may be required, Plaintiff would
11    contemplate the use of additional techniques and forms commonly used in class actions, such as
12    published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by
13    other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

14    **FIRST CAUSE OF ACTION**

15    **(Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked)**

16    30.    Plaintiff incorporates by reference and re-alleges as if fully stated herein
17    paragraphs 1 through 20 in this Complaint.

18    31.    "Hours worked" is the time during which an employee is subject to the control of
19    an employer, and includes all the time the employee is suffered or permitted to work, whether or
20    not required to do so.

21    32.    At all relevant times herein mentioned, Defendants knowingly failed to pay to
22    Plaintiff and the Class compensation for all hours they worked.  By their failure to pay
23    compensation for each hour worked as alleged above, Defendants willfully violated the
24    provisions of Section 1194 of the California Labor Code, and any additional applicable Wage
25    Orders, which require such compensation to non-exempt employees.

26    33.    Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all
27    non-overtime hours worked for Defendants.

28

11
PROOF OF SERVICE

34.     By and through the conduct described above, Plaintiff and the Class have been deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

35.     By virtue of the Defendants' unlawful failure to pay additional compensation to Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class suffered, and will continue to suffer, damages in amounts which are presently unknown to Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which will be ascertained according to proof at trial.

36.     By failing to keep adequate time records required by California Labor Code § 1174(d), Defendants have made it difficult to calculate the full extent of minimum wage compensation due Plaintiff and the Class.

37.     Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum wages.

38.     California Labor Code section 204 requires employers to provide employees with all wages due and payable twice a month.  Throughout the statute of limitations period applicable to this cause of action, Plaintiff and the Class were entitled to be paid twice a month at rates required by law, including minimum wages.  However, during all such times, Defendants systematically failed and refused to pay Plaintiff and the Class all such wages due, and failed to pay those wages twice a month.

39.     Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 218.6, and 1194(a).

## SECOND CAUSE OF ACTION

### (Against all Defendants for Failure to Pay Overtime Wages)

40.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

41.    California Labor Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

42.    California Labor Code §§ 1194 and 1198 provide that employees in California shall not be employed more than eight hours in any workday unless they receive additional compensation beyond their regular wages in amounts specified by law.  Additionally, California Labor Code § 1198 states that the employment of an employee for longer hours than those fixed by the Industrial Welfare Commission is unlawful.

43.    At all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday, as employees of Defendants.

44.    At all times relevant hereto, Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code § 510 and 1198.  Plaintiff and the Class are regularly required to work overtime hours.

45.    By virtue of Defendants' unlawful failure to pay additional premium rate compensation to the Plaintiff and the Class for their overtime hours worked, Plaintiff and the Class have suffered, and will continue to suffer, damages in amounts which are presently unknown to them but which exceed the jurisdictional minimum of this Court and which will be ascertained according to proof at trial.

46.    By failing to keep adequate time records required by Labor Code § 1174(d), Defendants have made it difficult to calculate the full extent of overtime compensation due to Plaintiff and the Class.

47.    Plaintiff and the Class also request recovery of overtime compensation according to proof, interest, attorneys' fees and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes.

48.    California Labor Code § 204 requires employers to provide employees with all wages due and payable twice a month.  The Wage Orders also provide that every employer shall

13
PROOF OF SERVICE

1   pay to each employee, on the established payday for the period involved, overtime wages for all

2   overtime hours worked in the payroll period. Defendants failed to provide Plaintiff and the Class

3   with all compensation due, in violation of California Labor Code § 204.

### THIRD CAUSE OF ACTION

### (Against All Defendants for Failure to Provide Meal Periods)

6       49.     Plaintiff incorporates by reference and re-alleges as if fully stated herein

7   paragraphs 1 through 20 in this Complaint.

8       50.     Under California law, Defendants have an affirmative obligation to relieve the

9   Plaintiff and the Class of all duty in order to take their first daily meal periods no later than the

10  start of Plaintiff and the Class' sixth hour of work in a workday, and to take their second meal

11  periods no later than the start of the eleventh hour of work in the workday. Section 512 of the

12  California Labor Code, and Section 11 of the applicable Wage Orders require that an employer

13  provide unpaid meal periods of at least 30 minutes for each five-hour period worked. It is a

14  violation of Section 226.7 of the California Labor Code for an employer to require any employee

15  to work during any meal period mandated under any Wage Order.

16      51.     Despite these legal requirements, Defendants regularly failed to provide Plaintiff

17  and the Class with both meal periods as required by California law. By their failure to permit

18  and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact

19  that Defendants made it impossible or impracticable to take these uninterrupted meal periods),

20  Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and

21  the applicable Wage Orders.

22      52.     Under California law, Plaintiff and the Class are entitled to be paid one hour of

23  additional wages for each workday he or she was not provided with all required meal period(s),

24  plus interest thereon.

### FOURTH CAUSE OF ACTION

### (Against All Defendants for Failure to Authorize and Permit Rest Periods)

27      53.     Plaintiff incorporates by reference and re-alleges as if fully stated herein

28  paragraphs 1 through 20 in this Complaint.

PROOF OF SERVICE

1       54.    Defendants are required by California law to authorize and permit breaks of 10

2  uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than

3  two hours). Section 512 of the California Labor Code, the applicable Wage Orders require that

4  the employer permit and authorize all employees to take paid rest periods of 10 minutes each for

5  each 4-hour period worked. Thus, for example, if an employee's work time is 6 hours and ten

6  minutes, the employee is entitled to two rest breaks. Each failure to authorize rest breaks as so

7  required is itself a violation of California's rest break laws. It is a violation of Section 226.7 of

8  the California Labor Code for an employer to require any employee to work during any rest

9  period mandated under any Wage Order.

10      55.    Despite these legal requirements, Defendants failed to authorize Plaintiff and the

11  Class to take rest breaks, regardless of whether employees worked more than 4 hours in a

12  workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as

13  alleged above (or due to the fact that Defendants made it impossible or impracticable to take

14  these uninterrupted rest periods), Defendants willfully violated the provisions of Section 226.7 of

15  the California Labor Code and the applicable Wage Orders.

16      56.    Under California law, Plaintiff and the Class are entitled to be paid one hour of

17  premium wages rate for each workday he or she was not provided with all required rest break(s),

18  plus interest thereon.

19                 **FIFTH CAUSE OF ACTION**

20  **(Against all Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time**

21                              **Penalties)**

22      57.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

23  paragraphs 1 through 20 in this Complaint.

24      58.    At all times herein set forth, California Labor Code §§ 201 and 202 provide that if

25  an employer discharges an employee, the wages earned and unpaid at the time of discharge are

26  due and payable immediately, and that if an employee voluntarily leaves his or her employment,

27  his or her wages shall become due and payable not later than seventy-two (72) hours thereafter,

28

1    unless the employee has given seventy-two (72) hours previous notice of his or her intention to
2    quit, in which case the employee is entitled to his or her wages at the time of quitting.
3        59.    Within the applicable statute of limitations, the employment of Plaintiff and many
4    other members of the Class ended, i.e. was terminated by quitting or discharge, and the
5    employment of others will be.  However, during the relevant time period, Defendants failed, and
6    continue to fail to pay terminated Class Members, without abatement, all wages required to be
7    paid by California Labor Code sections 201 and 202 either at the time of discharge, or within
8    seventy-two (72) hours of their leaving Defendants' employ.
9        60.    Defendants' failure to pay Plaintiff and those Class members who are no longer
10   employed by Defendants their wages earned and unpaid at the time of discharge, or within
11   seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor
12   Code §§ 201 and 202.
13       61.    California Labor Code § 203 provides that if an employer willfully fails to pay
14   wages owed, in accordance with sections 201 and 202, then the wages of the employee shall
15   continue as a penalty wage from the due date, and at the same rate until paid or until an action is
16   commenced, but the wages shall not continue for more than thirty (30) days.
17       62.    Plaintiff and the Class are entitled to recover from Defendants their additionally
18   accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days
19   maximum pursuant to California Labor Code § 203.
20       63.    Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the
21   Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs
22   incurred in this action.

**SIXTH CAUSE OF ACTION**

**(Against all Defendants for Failure to Provide and Maintain Accurate and**

**Compliant Wage Records)**

26       64.    Plaintiff incorporates by reference and re-alleges as if fully stated herein
27   paragraphs 1 through 20 in this Complaint.
28

65.     At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

66.     Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list the true "total hours worked by the employee," and the failure to list the true net wages earned.

67.     As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff and the Class have suffered injury and damage to their statutorily-protected rights.

68.     Specifically, Plaintiff and the members of the Class have been injured by Defendants' intentional violation of California Labor Code § 226(a) because they were denied both their legal right to receive, and their protected interest in receiving, accurate, itemized wage statements under California Labor Code § 226(a).

69.     Calculation of the true wage entitlement for Plaintiff and the Class is difficult and time consuming. As a result of this unlawful burden, Plaintiff and the Class were also injured as a result of having to bring this action to attempt to obtain correct wage information following Defendants' refusal to comply with many of the mandates of California's Labor Code and related laws and regulations.

70.     Plaintiff and the Class are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or an aggregate penalty not exceeding four thousand dollars per employee.

71.     Plaintiff and the Class are also entitled to injunctive relief, as well as an award of attorney's fees and costs to ensure compliance with this section, pursuant to California Labor Code § 226(h).

## SEVENTH CAUSE OF ACTION

### (Against all Defendants for Violation of California Business & Professions Code §§ 17200, et seq.)

72.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

73.     Defendants, and each of them, are "persons" as defined under California Business & Professions Code § 17201.

74.     Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other Class members, and to the general public.  Plaintiff seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

75.     Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, et seq.

76.     A violation of California Business & Professions Code §§ 17200, et seq. may be predicated on the violation of any state or federal law.  All of the acts described herein as violations of, among other things, the California Labor Code, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business &Professions Code §§ 17200, et seq.

### Failure to Pay Minimum Wages

77.     Defendants' failure to pay minimum wages, and other benefits in violation of the

18
PROOF OF SERVICE

1    California Labor Code constitutes unlawful and/or unfair activity prohibited by California

2    Business & Professions Code §§ 17200, *et seq*.

**Failure to Pay Overtime Wages**

4        78.    Defendants' failure to pay overtime compensation and other benefits in violation

5    of California Labor Code §§ 510, 1194, and 1198constitutes unlawful and/or unfair activity

6    prohibited by California Business & Professions Code §§ 17200, *et seq*.

**Failure to Maintain Accurate Records of All Hours Worked**

8        79.    Defendants' failure to maintain accurate records of all hours worked in accordance

9    with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or

10    unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq*.

**Failure to Provide Meal Periods**

12        80.    Defendants' failure to provide meal periods in accordance with California Labor

13    Code §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or

14    unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq*.

**Failure to Maintain Accurate Records of Meal Periods**

16        81.    Defendants' failure to maintain accurate records of employee meal periods in

17    accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above,

18    constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code

19    §§ 17200, *et seq*.

**Failure to Authorize and Permit Rest Periods**

21        82.    Defendants' failure to authorize and permit rest periods in accordance with

22    California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful

23    and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq*.

**Failure to Provide Accurate Itemized Wage Statements**

25        83.    Defendants' failure to provide accurate itemized wage statements in accordance

26    with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity

27    prohibited by California Business & Professions Code §§ 17200, *et seq*.

28

84.    By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

85.    Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

86.    Plaintiff, individually, and on behalf of members of the putative Class, are entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

87.    Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

88.    Plaintiff, individually, and on behalf of members of the putative class, have no plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business practices. As a result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff, individually, and on behalf of members of the putative Class, suffered and will continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

89.    Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth herein above, they will continue to avoid paying the appropriate taxes, insurance and other withholdings.

20
PROOF OF SERVICE

90.     Pursuant to California Business & Professions Code §§ 17200, *et seq.*, Plaintiff and putative Class Members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and Class Members; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## EIGHTH CAUSE OF ACTION

### (Against all Defendants for Civil Penalties Under the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 et seq.)

91.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

92.     At all times herein mentioned, Defendants were subject to the Labor Code of the State of California and the applicable Industrial Welfare Commission Orders.

93.     California Labor Code § 2699(a) specifically provides for a private right of action to recover penalties for violations of the Labor Code: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

94.     Plaintiff has exhausted his administrative remedies pursuant to California Labor Code § 2699.3. On September 15, 2020, he gave written notice by online filing to the Labor and Workforce Development Agency and by certified mail to Defendants of the specific provisions of the Labor Code that Defendants have violated against Plaintiff and certain current and former aggrieved employees, including the facts and theories to support the violations. Plaintiff also paid the filing fee. Plaintiff's PAGA case number is LWDA-CM-806429-20.

95.    More than 65 days has elapsed since Plaintiff provided notice, but the Labor and Workforce Development Agency has not indicated that it intends to investigate Defendants' Labor Code violations discussed in the notice. Accordingly, Plaintiff may commence a civil action to recover penalties under Labor Code § 2699 pursuant to § 2699.3 for the violations of the Labor Code described in this Complaint. These penalties include, but are not limited to, penalties under California Labor Code §§ 210, 226.3, 558, and 2699(f)(2).

96.    In addition, Plaintiff seeks penalties for Defendants' violation of California Labor Code § 1174(d). Pursuant to California Labor Code § 1174.5, any person, including any entity, employing labor who willfully fails to maintain accurate and complete records required by California Labor Code § 1174 is subject to a penalty under § 1174.5. Pursuant to the applicable IWC Order § 7(A)(3), every employer shall keep time records showing when the employee begins and ends each work period. Meal periods, and total hours worked daily shall also be recorded. Additionally, pursuant to the applicable IWC Order § 7(A)(5), every employer shall keep total hours worked in the payroll period and applicable rates of pay.

97.    During the time period of employment for Plaintiff and the Aggrieved Employees, Defendants failed to maintain records pursuant to the Labor Code and IWC Orders by failing to maintain accurate records showing meal periods. Defendants' failure to provide and maintain records required by the Labor Code IWC Wage Orders deprived Plaintiff and the Aggrieved Employees the ability to know, understand and question the accuracy and frequency of meal periods. Therefore, Plaintiff and the Aggrieved Employees had no way to dispute the resulting failure to pay wages, all of which resulted in an unjustified economic enrichment to Defendants. As a direct result, Plaintiff and the Aggrieved Employees have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost interest on such wages and expenses and attorney's fees in seeking to compel Defendants to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial. Because of Defendants' knowing failure to comply with the Labor Code and applicable IWC Wage Orders, Plaintiff and the Aggrieved Employees have also suffered an injury in that they were prevented from knowing, understanding, and disputing the wage payments paid to them.

1    98.    Based on the conduct described in this Complaint, Plaintiff is entitled to an award

2  of civil penalties on behalf of himself, the State of California, and similarly Aggrieved

3  Employees of Defendants. The exact amount of the applicable penalties, in all, is in an amount

4  to be shown according to proof at trial. These penalties are in addition to all other remedies

5  permitted by law.

6    99.    In addition, Plaintiff seeks an award of reasonable attorney's fees and costs

7  pursuant to California Labor Code § 2699(g)(1), which states, "Any employee who prevails in

8  any action shall be entitled to an award of reasonable attorney's fees and costs."

9                                  **PRAYER FOR RELIEF**

10    Plaintiff, individually, and on behalf of all others similarly situated only with respect to

11  the class claims, pray for relief and judgment against Defendants, jointly and severally, as

12  follows:

13                                  Class Certification

14    1.    That this action be certified as a class action with respect to the First, Second,

15  Third, Fourth, Fifth, Sixth, and Eighth Causes of Action;

16    2.    That Plaintiff be appointed as the representative of the Class; and

17    3.    That counsel for Plaintiff be appointed as Class Counsel.

18

19                                  As to the First Cause of Action

20    4.    That the Court declare, adjudge and decree that Defendants violated California Labor

21  Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum

22  wages due;

23    5.    For general unpaid wages as may be appropriate;

24    6.    For pre-judgment interest on any unpaid compensation commencing from the date

25  such amounts were due;

26    7.    For liquidated damages;

27    8.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

28  California Labor Code § 1194(a); and,

                                        23
                                  PROOF OF SERVICE

1      9.  For such other and further relief as the Court may deem equitable and appropriate.

2                          As to the Second Cause of Action

3      10. That the Court declare, adjudge and decree that Defendants violated California Labor

4    Code §§ 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime

5    wages due;

6      11. For general unpaid wages at overtime wage rates as may be appropriate;

7      12. For pre-judgment interest on any unpaid overtime compensation commencing from

8    the date such amounts were due;

9      13. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

10   California Labor Code § 1194(a); and,

11     14. For such other and further relief as the Court may deem equitable and appropriate.

12                          As to the Third Cause of Action

13     15. That the Court declare, adjudge and decree that Defendants violated California Labor

14   Code §§ 226.7 and 512, and the IWC Wage Orders;

15     16. For unpaid meal period premium wages as may be appropriate;

16     17. For pre-judgment interest on any unpaid compensation commencing from the date

17   such amounts were due;

18     18. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

19   for costs of suit incurred herein; and

20     19. For such other and further relief as the Court may deem equitable and appropriate.

21                          As to the Fourth Cause of Action

22     20. That the Court declare, adjudge and decree that Defendants violated California Labor

23   Code §§ 226.7 and 512, and the IWC Wage Orders;

24     21. For unpaid rest period premium wages as may be appropriate;

25     22. For pre-judgment interest on any unpaid compensation commencing from the date

26   such amounts were due;

27     23. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

28   for costs of suit incurred herein; and

PROOF OF SERVICE

1      24. For such other and further relief as the Court may deem equitable and appropriate.

2                                As to the Fifth Cause of Action

3      25. That the Court declare, adjudge and decree that Defendants violated California Labor

4  Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of

5  termination of the employment;

6      26. For statutory wage penalties pursuant to California Labor Code § 203 for former

7  employees who have left Defendants' employ;

8      27. For pre-judgment interest on any unpaid wages from the date such amounts were due;

9      28. For reasonable attorneys' fees and for costs of suit incurred herein; and

10     29. For such other and further relief as the Court may deem equitable and appropriate.

11                               As to the Sixth Cause of Action

12     30. That the Court declare, adjudge and decree that Defendants violated the record

13  keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and

14  willfully failed to provide accurate itemized wage statements thereto;

15     31. For statutory penalties and actual damages pursuant to California Labor Code §

16  226(e);

17     32. For injunctive relief to ensure compliance with this section, pursuant to California

18  Labor Code § 226(h);

19     33. For reasonable attorneys' fees and for costs of suit incurred herein; and

20     34. For such other and further relief as the Court may deem equitable and appropriate.

21                              As to the Seventh Cause of Action

22     35. That the Court declare, adjudge and decree that Defendants violated California

23  Business & Professions Code §§ 17200, *et seq.* by failing to pay wages for all hours worked

24  (including minimum and overtime wages), failing to provide meal periods, failing to maintain

25  accurate records of meal periods, failing to authorize and permit rest periods, failing to maintain

26  accurate records of all hours worked and meal periods, and failing to furnish accurate wage

27  statements;

28

1     36. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment
2     interest from the day such amounts were due and payable;

3     37. For the appointment of a receiver to receive, manage and distribute any and all funds
4     disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a
5     result of violations of California Business & Professions Code §§ 17200 *et seq.*;

6     38. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California
7     Code of Civil Procedure § 1021.5;

8     39. For injunctive relief to ensure compliance with this section, pursuant to California
9     Business & Professions Code §§ 17200, *et seq.*; and,

10     40. For such other and further relief as the Court may deem equitable and appropriate.

11                        As to the Eighth Cause of Action

12     41. That the Court declare, adjudge and decree that Defendants violated the California
13     Labor Code by failing to pay all wages owed, including overtime, failure to provide meal
14     periods, failing to maintain accurate records of meal periods, failing to authorize and permit rest
15     periods, failing to pay final wages at termination, and failing to furnish accurate wage statements;

16     42. For all actual, consequential and incidental losses and damages, according to proof;

17     43. For all civil penalties pursuant to California Labor Code § 2699, *et seq.*, and all other
18     applicable Labor Code provisions;

19     44. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California
20     Labor Code § 2699; and,

21     45. For such other and further relief as the Court may deem equitable and appropriate.

22     //
23     //
24     //
25
26
27
28

26
PROOF OF SERVICE

1       <u>As to all Causes of Action</u>

2       46. For any additional relief that the Court deems just and proper.

3

4       Dated: January 21, 2021                    Respectfully submitted,

5                                                  MOON & YANG, APC

6
                                           By:     _____
7                                                  Kane Moon
                                                   Allen Feghali
8                                                  Attorneys for Plaintiff

9
                              **DEMAND FOR JURY TRIAL**
10
        Plaintiff demands a trial by jury as to all causes of action triable by jury.
11

12      Dated: January 21, 2021                    MOON & YANG, APC

13
                                           By:     _____
14                                                 Kane Moon
                                                   Allen Feghali
15                                                 Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">27</div>

1 **PROOF OF SERVICE**

2  STATE OF CALIFORNIA          )
                                ) ss
3  COUNTY OF LOS ANGELES        )

4
        I am employed in the county of Los Angeles, State of California.  I am over the age of 18
5  and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880,
   Los Angeles, California 90017.  On  January 26,2021, I served the foregoing document described
6  as:

7  **FIRST AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT**

8
     X    by placing ___ the original   X   a true copy thereof enclosed in sealed envelope(s)
9  addressed as follows:

10                          Wiliam Faulkner
                            Michael Warren
11                    **McMANIS FAULKNER, APC**
                      50 West San Fernando Street, 10th Floor
12                      San Jose, California 95113
                          Tel.: (408)279-8700
13                        Fax: (408)279-3244
                        mwarren@mcmanislaw.com
14

15                 *Attorneys for Defendant Gillig, LLC*

16  [X]   **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California.  The
          envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with
17        the firm's practice of collection and processing correspondence for mailing.  Under that
          practice it would be deposited with U.S. postal service on that same day with postage
18        thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am
          aware that on motion of the party served, service is presumed invalid if postal
19        cancellation date or postage meter date is more than one day after date of deposit for
20        mailing in affidavit.

21
     X    (State)      I declare under penalty of perjury under the laws of the State of
22                     California that the above is true and correct.

23
        Executed on January 26, 2021,at Los Angeles, California.
24

25   Ivette Hernandez
     Type or Print Name                                    Signature
26

27

28

                                          1
                                  PROOF OF SERVICE

# EXHIBIT 17

1  C. Martin as counsel *pro hac vice* on behalf of Defendant in connection with all aspects of the

2  above-captioned action.

3       Pursuant to Rule 9.40(e)(1) of the California Rules of Court, a copy of this Notice and

4  supporting papers, accompanied by a check in the amount of $50.00 has been served upon the

5  State Bar of California at its San Francisco office.

6       Mr. Martin's application is based upon this notice, the contemporaneously-filed

7  Application of Craig C. Martin to Appear *Pro Hac Vice*, the Declaration of Michael Warren and

8  exhibits thereto, the Memorandum of Points and Authorities in Support, and such other further

9  oral and documentary evidence as may be presented at the hearing on this matter.

10

11  DATED:  January 29, 2021                    McMANIS FAULKNER

12

13

14                                             MICHAEL WARREN
                                               Attorneys for Defendant
15                                             GILLIG, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF *EX PARTE* APPLICATION FOR ADMISSION *PRO HAC VICE* OF CRAIG C. MARTIN;
CASE NO. RG20073930

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

On January 29, 2021, I served the foregoing document described as:

NOTICE OF EX PARTE APPLICATION FOR ADMISSION PRO HAC VICE OF CRAIG C. MARTIN; MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR ADMISSION PRO HAC VICE; APPLICATION OF CRAIG C. MARTIN TO APPEAR PRO HAC VICE; DECLARATION OF MICHAEL WARREN IN SUPPORT OF EX PARTE APPLICATION FOR ADMISSION PRO HAC VICE; PROPOSED ORDER

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kane Moon, Esq.<br>Allen Feghali<br>MOON & YANG, APC<br>1055 W. Seventh St., #1880<br>Los Angeles, CA 90017<br>T: (213) 232-3128 / F: (213) 232-3125<br>E: kane.moon@moonyanglaw.com<br>allen.feghali@moonyanglaw.com | Attorneys for Plaintiff<br>RONALD TOLENTINO |

☒ **(BY MAIL)**

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this businesses' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Jose, California.

☒ **(STATE)**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 29, 2021, at San Jose, California.

_____
Elise Dresser

EXHIBIT 18

1   WILLIAM FAULKNER (83385)
    MICHAEL WARREN (223642)
2   McMANIS FAULKNER
    a Professional Corporation
3   50 West San Fernando Street, 10th Floor
    San Jose, California 95113
4   Telephone:    (408) 279-8700
    Facsimile:    (408) 279-3244
5   Email:    mwarren@mcmanislaw.com

6   CRAIG C. MARTIN (*Pro Hac Vice Pending*)
    MATT D. BASIL (*Pro Hac Vice Pending*)
7   WILLKIE FARR & GALLAGHER, LLP
    300 North LaSalle Street, Suite 5000
8   Chicago, Illinois 60654
    Telephone:    (312) 728-9000
9   Facsimile:    (312) 728-9199
    Email:    cmartin@willkie.com
10            mbasil@willkie.com

11  Attorneys for Defendant
    GILLIG, LLC

12

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14              FOR THE COUNTY OF ALAMEDA

15

16  RONALD TOLENTINO, individually, and on        Case No.: RG20073930
    behalf of all others similarly situated,
17                                                 **MEMORANDUM IN SUPPORT OR** ~~*EX*~~
                                                   ~~*PARTE*~~ **APPLICATION FOR ADMISSION**
18                Plaintiff,                       *PRO HAC VICE* **OF CRAIG C. MARTIN**

19          vs.                                    Date:         April 27, 2021
                                                   Time:         3:00 p.m.
20  GILLIG, LLC, a limited liability company; and  Department:   23
    DOES 1 through 10, inclusive,                  Judge:        Hon. Brad Seligman
21                                                 Reservation No.: R-2239481
                  Defendants.
22                                                 Complaint Filed:    September 16, 2020
                                                   Trial Date:         Not set
23

24

25  I.    **INTRODUCTION**

26          Defendant GILLIG, LLC ("Defendant"), requests that this Court grant its Application for

27  Admission *Pro Hac Vice* of Craig C. Martin (the "Application" and "Applicant," respectively)

28  pursuant to Rule 9.40 of the California Rules of Court. The Applicant has been retained by

                                                   1

ENDORSED
FILED
ALAMEDA COUNTY

FEB 1 7 2021

CLERK OF THE SUPERIOR COURT
By _____
                    Deputy

COPY

1   Defendant to represent it in this matter, is familiar with the information and issues in this lawsuit,

2   and his presence as counsel in this case will promote efficiency in the prosecution and defense of

3   this action.

4

5   II.     **INFORMATION REQUIRED BY RULE 9.40 OF THE CALIFORNIA RULES OF COURT**

6          The information required by Rule 9.40 of the California Rules of Court for admission as

7   counsel *pro hac vice* is set forth below and is verified in the accompanying Application of Craig

8   C. Martin and Declaration of Michael Warren in support of this Application to appear *pro hac*

9   *vice* in this matter on behalf of Defendant.

10         1.      Craig C. Martin is a lawyer with the following law firm:

11                 Willkie Farr & Gallagher, LLP
                   300 North LaSalle
12                 Chicago, IL 60654-3406
                   (312) 728-9050
13

14         2.      Mr. Martin was admitted to practice before the following courts on the following

15  dates:

16

| Court | Admission Date |
|---|---|
| United States Supreme Court | 1999 |
| United States Court of Appeals, Federal Circuit | 2004 |
| United States Court of Appeals, 2nd Circuit | 1993 |
| United States Court of Appeals, 3rd Circuit | 2000 |
| United States Court of Appeals, 4th Circuit | 2008 |
| United States Court of Appeals, 5th Circuit | 1998 |
| United States Court of Appeals, 6th Circuit | 2000 |
| United States Court of Appeals, 7th Circuit | 2001 |
| United States Court of Appeals 8th Circuit | 2002 |
| United States Court of Appeals, 9th Circuit | 1998 |
| United States Court of Appeals, 10th Circuit | 1989 |
| United States District Court for the District of Arizona | 1996 |
| United States District Court for the District of Colorado | 1988 |
| United States District Court for the Central District of Illinois | 2000 |
| United States District Court for the Southern District of Illinois | 1994 |
| United States District Court for the Northern District of Illinois | 1989 |

28

2

MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR ADMISSION *PRO HAC VICE* OF CRAIG C. MARTIN; CASE NO. RG20073930

| Court | Admission Date |
|---|---|
| United States District Court for the Northern District of Illinois – Trial Bar | 1990 |
| United States District Court for the Southern District of Illinois | 2000 |
| United States District Court for the Eastern District of Michigan | 1999 |
| United States District Court for the Western District of Michigan | 1999 |
| United States District Court for the Eastern District of Wisconsin | 2008 |
| Bar of the State of Colorado | 1988 |
| Bar of the State of Illinois | 1989 |

3.      Mr. Martin has not been disciplined by any court or administrative body, there are no disciplinary proceedings pending against him, and he has not resigned from representation during any pending disciplinary proceedings.

4.      Mr. Martin applied for admission *pro hac vice* on October 23, 2020 in the United States District Court, Northern District of California, in and for the matter entitled *Ronald Tolentino, et al. v. Gillig, LLC,* Case No. 20-cv-07427 MMC.  The order granting application for admission of attorney *pro hac vice* is dated October 23, 2020 (Docket No. 7).

5.      Michael Warren is an active member of the Bar of the State of California, and is the attorney of record in this case.  Mr. Warren's business address is:

> McManis Faulkner
> 50 West San Fernando Street
> San Jose, CA  95113
> Tel.: (408) 279-8700
> Fax: (408) 279-3244

6.      Mr. Martin's residence address is:

> 3739 North Lakewood Avenue
> Chicago, IL  60613

7.      Mr. Martin has been retained to assist in the representation of Defendant in this matter.

8.      Mr. Martin is not a resident of the State of California, is not regularly employed in the State of California, and is not regularly engaged in substantial business, professional, or other activities in the State of California.

3

1        9.    Mr. Martin understands that if this Application is granted, he will be subject to the

2    jurisdiction of the Courts of this State with respect to the law of the State governing the conduct

3    of attorneys to the same extent as a member of the State Bar of California.  Mr. Martin has

4    agreed to familiarize himself and to comply with the standards of professional conduct required

5    of members of the State Bar of California, and he understands that he will be subject to the

6    disciplinary jurisdiction of the State Bar with respect to any acts occurring in the court of

7    appearance.  Mr. Martin understands that Article 5, Division III, of the California Business &

8    Professions Code and the Rules of Procedure of the State Bar shall govern in any investigation or

9    proceeding conducted by the State Bar under Rule 9.40 of the California Rules of Court.

10       10.    Accompanying this Application is the Declaration of Michael Warren verifying

11   that in accordance with California Rule of Court 9.40, he has served a copy of all application

12   papers upon the State Bar of California, along with payment of the applicable fee in the amount

13   of $50.00.

14   **III.**    **CONCLUSION**

15       For the foregoing reasons, Defendant respectfully requests that the Court permit Craig C.

16   Martin to appear *pro hac vice* in this matter.

17

18   DATED:  January 29, 2021             McMANIS FAULKNER

19

20

21                                       MICHAEL WARREN

22                                       Attorneys for Defendant

                                    GILLIG, LLC

23

24

25

26

27

28

                                          4

# EXHIBIT 19

1  WILLIAM FAULKNER (83385)
2  MICHAEL WARREN (223642)
   McMANIS FAULKNER
3  a Professional Corporation
   50 West San Fernando Street, 10th Floor
4  San Jose, California 95113
   Telephone:    (408) 279-8700
5  Facsimile:    (408) 279-3244
   Email:        mwarren@mcmanislaw.com
6  CRAIG C. MARTIN (*Pro Hac Vice Pending*)
7  MATT D. BASIL (*Pro Hac Vice Pending*)
   WILLKIE FARR & GALLAGHER, LLP
8  300 North LaSalle Street, Suite 5000
   Chicago, Illinois  60654
9  Telephone:    (312) 728-9000
   Facsimile:    (312) 728-9199
10 Email:        cmartin@willkie.com
                 mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12

ENDORSED

FILED
ALAMEDA COUNTY

FEB 1 7 2021

CLERK OF THE SUPERIOR COURT
By _____
                    Deputy

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on      Case No.: RG20073930
   behalf of all others similarly situated,
17                                             DECLARATION OF MICHAEL
                                               WARREN IN SUPPORT OF ~~EX PARTE~~
18            Plaintiff,                        APPLICATION FOR ADMISSION *PRO*
                                               *HAC* VICE OF CRAIG C. MARTIN
19        vs.
                                               Date:          April 27, 2021
20 GILLIG, LLC, a limited liability company; and  Time:       3:00 p.m.
   DOES 1 through 10, inclusive,               Department:    23
21                                             Judge:         Hon. Brad Seligman
            Defendants.                         Reservation No.: R-2239481
22
                                               Complaint Filed:  September 16, 2020
23                                             Trial Date:       Not set

24

25 I, MICHAEL WARREN, declare as follows:

26        1.     I am an attorney duly admitted to practice before all of the courts of the State of

27 California.  I am a member in the law firm of McManis Faulkner, 50 West San Fernando Street,

28

1   San Jose, CA 95113, (408) 279-8700, counsel of record for Defendant GILLIG, LLC.

2   ("Defendant"), in the above-captioned matter. I am personally familiar with the matters set forth

3   herein, and if called to testify, I could and would competently testify thereto.

4           2.      I make this declaration in support of the Application of Craig C. Martin to appear

5   as counsel *pro hac vice* in this matter, and to be associated as counsel to Defendant in this matter.

6           3.      My colleague, Craig C. Martin, is associated with me as counsel of record in this

7   matter. The Court and opposing counsel may readily communicate with me regarding the

8   conduct of the case and also serve papers upon me.

9           4.      On January 29, 2021, I wrote an email to plaintiff's counsel, Allen Feghali, to

10  inform counsel that defendant will appear *ex parte* to apply for an order granting defendant's

11  application for admission *pro hac vice* of Craig C. Martin. Plaintiff's counsel informed me via

12  email that he did not oppose our application.

13          5.      On January 29, 2021, I caused to be served on the State Bar of California, via its

14  Admissions Applicant Portal, a copy of these papers, to wit: (a) Notice of Hearing on *Ex Parte*

15  Application for Admission *Pro Hac Vice* of Craig C. Martin; (b) Memorandum In Support of *Ex*

16  *Parte* Application for Admission *Pro Hac Vice* of Craig C. Martin; (c) Application of Craig C.

17  Martin; and (d) Declaration of Michael Warren. I also caused to be submitted online the

18  required filing fee in the amount of $50.00. Attached hereto as **Exhibit A** is a confirmation of

19  the online submission to the State Bar of California.

20          I declare under penalty of perjury under the laws of the State of California and the United

21  States of America that the foregoing is true and correct.

22

23  Dated: January 29, 2021

24                                                  MICHAEL WARREN

25

26

27

28

2

# EXHIBIT A

**Dresser, Elise**

| | |
|---|---|
| **From:** | State Bar of California - Special Admissions <special.admissions@calbar.ca.gov> |
| **Sent:** | Friday, January 29, 2021 3:26 PM |
| **To:** | cmartin@willkie.com; Dresser, Elise |
| **Subject:** | Pro Hac Vice Application Acknowledgement Notice |

 **The State Bar**
*of California*                                        OFFICE OF ADMISSIONS

**Application's Case Number:** 00640941
**Trial Case Name:** Ronald Tolentino v. Gillig, Inc., LLP
**Trial Case Number:** Alameda County Superior Court Case No. RG20073930

Dear Elise Dresser,

Your Pro Hac Vice application has been received and is pending review. For your application to be approved, you must have submitted an uploaded copy of the original Pro Hac Vice application, in addition to the application fee.

**If you failed to upload the original Pro Hac Vice application/document during the online application process, please follow the steps below to upload the completed document to your existing application:**

1. Login to the Applicant Community site.
2. Click the "Special Admissions" tab at the top of the home page, and then select the "Pro Hac Vice" option.
3. In the "Upload document(s) to a previously submitted application" box, select the "Next" button.
4. Follow the directions on the screen to search for the application using the application's "Case Number" (listed at the top of this message beginning with "00"), and upload the document(s).

Applicants who encounter problems gaining access to the Applicant Community, or those who have not yet created a password to the Applicant Community, should take the following steps:

1. Access the Applicant Community at admissions.calbar.ca.gov.
2. Click "Forgot your password."
3. Click "Send Password Reset Email."
4. Check your email and follow the instructions to reset your password.

If you paid by e-check (ACH), then your application will not be approved until we

1

can confirm that your payment processed, successfully. It may take up to 7 business days before the transaction is settled. In addition, if you owe any outstanding fees to the State Bar, your application cannot be approved until the fees are paid.

Once the application is deemed complete, you will receive an email notifying you of a successful filing.

If you have any questions, please contact the Special Admissions department at the number below.

Sincerely,


Office of Admissions
State Bar of California
(415) 538-2300


ref:_00Dt0TZax._500t0fkslH:ref

**Dresser, Elise**

| | |
|---|---|
| **From:** | State Bar of California - Admissions <admissions@calbar.ca.gov> |
| **Sent:** | Friday, January 29, 2021 3:25 PM |
| **To:** | Dresser, Elise |
| **Subject:** | State Bar Of California* Payment Has Been Received |



# The State Bar
## *of California*

180 Howard Street, San Francisco, CA 94105          415-538-2000

Dear Elise Dresser,

Thank you for submitting your payment. It is currently being processed. Please allow 7 days for the bank to
are any issues with your payment, you will be notified directly. A detailed breakdown of your transaction is b

Application Type :

Service Fee : $ 1.25

Total Paid Amount : $ 51.25

Payment Date : 01/29/2021

Sincerely,

State Bar Of California*
180 Howard St.
San Francisco, CA 94105
US

# EXHIBIT 20

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:    mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice Pending*)
   MATT D. BASIL (*Pro Hac Vice Pending*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois 60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:    cmartin@willkie.com
10           mbasil@willkie.com
   Attorneys for Defendant
11 GILLIG, LLC

12

                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
13
                             FOR THE COUNTY OF ALAMEDA
14

15
   RONALD TOLENTINO, individually, and on    Case No.: RG20073930
16 behalf of all others similarly situated,
                                              [PROPOSED] ORDER GRANTING
17              Plaintiff,                    APPLICATION FOR ADMISSION *PRO
                                              HAC* VICE OF CRAIG C. MARTIN
18      vs.
                                              Date:         April 27, 2021
19 GILLIG, LLC, a limited liability company; and   Time:    3:00 p.m.
20 DOES 1 through 10, inclusive,             Department:    23
                                              Judge:        Hon. Brad Seligman
21              Defendants.                    Reservation No.: R-2239481

22                                            Complaint Filed:  September 16, 2020
                                              Trial Date:       Not set
23

24

25      The Application of Craig C. Martin to be allowed to appear in this matter as counsel *pro*

26 *hac vice* on behalf of Defendant Gillig, LLC ("Defendant"), came on for hearing by the Court.

27 Having considered the application and all other papers submitted and the records and files

28
                                              1
   [PROPOSED] ORDER GRANTING APPLICATION OF CRAIG C. MARTIN TO APPEAR *PRO HAC VICE*;
   CASE NO. RG20073930

1  herein, and having determined that all conditions to admission as counsel *pro hac vice* as

2  outlined in Rule 9.40 of the California Rules of Court have been satisfied.

3      IT IS HEREBY ORDERED that the Application of Craig C. Martin is GRANTED and

4  Craig C. Martin may appear as counsel *pro hac vice* for Defendant.

5

6

7  Date: _____          _____

8                                         The Honorable Brad Seligman
                                           Judge of the Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 21

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:        mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice Pending*)
   MATT D. BASIL (*Pro Hac Vice Pending*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois 60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:        cmartin@willkie.com
10               mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12



ENDORSED
FILED
ALAMEDA COUNTY

FEB 1 7 2021

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                 FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on      Case No.: RG20073930
   behalf of all others similarly situated,
17                                             **APPLICATION OF CRAIG C. MARTIN**
                                               **TO APPEAR *PRO HAC VICE***
18            Plaintiff,
                                               Date:           April 27, 2021
19        vs.                                  Time:           3:00 p.m.
                                               Department:     23
20 GILLIG, LLC, a limited liability company; and   Judge:       Hon. Brad Seligman
   DOES 1 through 10, inclusive,              Reservation No.: R-2239481
21
              Defendants.                      Complaint Filed:  September 16, 2020
22                                             Trial Date:       Not set

23

24
        Pursuant to Rule 9.40 of the California Rules of Court, Craig C. Martin, hereby applies
25
   for admission *pro hac vice* to appear and participate in this case on behalf of defendant Gillig,
26
   LLC. The applicant hereby attests as follows:
27
        I reside at <u>3739 North Lakewood Avenue, Chicago, IL 60613</u>, and practice at Willkie
28
   Farr & Gallagher, LLP, 300 North LaSalle, Chicago, IL 60654-3406, telephone (312) 728-9050.

                                              1
   APPLICATION OF CRAIG C. MARTIN TO APPEAR *PRO HAC VICE*, Case No.: RG20073930

40414720.1

1        1.      I have been asked by defendant Gillig, LLC to appear on its behalf in this case.

2        2.      I have been admitted to practice before the following courts on the following

3  dates:

| Court | Admission Date |
|---|---|
| United States Supreme Court | 1999 |
| United States Court of Appeals, Federal Circuit | 2004 |
| United States Court of Appeals, 2nd Circuit | 1993 |
| United States Court of Appeals, 3rd Circuit | 2000 |
| United States Court of Appeals, 4th Circuit | 2008 |
| United States Court of Appeals, 5th Circuit | 1998 |
| United States Court of Appeals, 6th Circuit | 2000 |
| United States Court of Appeals, 7th Circuit | 2001 |
| United States Court of Appeals 8th Circuit | 2002 |
| United States Court of Appeals, 9th Circuit | 1998 |
| United States Court of Appeals, 10th Circuit | 1989 |
| United States District Court for the District of Arizona | 1996 |
| United States District Court for the District of Colorado | 1988 |
| United States District Court for the Central District of Illinois | 2000 |
| United States District Court for the Southern District of Illinois | 1994 |
| United States District Court for the Northern District of Illinois | 1989 |
| United States District Court for the Northern District of Illinois – Trial Bar | 1990 |
| United States District Court for the Southern District of Illinois | 2000 |
| United States District Court for the Eastern District of Michigan | 1999 |
| United States District Court for the Western District of Michigan | 1999 |
| United States District Court for the Eastern District of Wisconsin | 2008 |
| Bar of the State of Colorado | 1988 |
| Bar of the State of Illinois | 1989 |

3.      I am in good standing and eligible to practice in said courts.

4.      I am not currently suspended or disbarred in any court.

5.      I applied for admission *pro hac vice* on October 23, 2020 in the United States District Court, Northern District of California, in and for the matter entitled *Ronald Tolentino, et al. v. Gillig, LLC,* Case No. 20-cv-07427 MMC. The order granting application for admission of attorney *pro hac vice* is dated October 23, 2020 (Docket No. 7).

6.      Michael Warren is an active licensee of the State Bar of California, of the firm of McManis Faulkner, is the attorney of record in this matter, and practices at the following address

2

40414720.1

1    and telephone number: 50 West San Fernando Street, 10th Floor, San Jose, California 95113,

2    Telephone: (408) 279-8700.

3          Executed this 25th day of January, 2021, at Chicago, Illinois.  I declare under penalty of

4    perjury under the laws of the State of California that the foregoing is true and correct.

5

6    DATED:  January 25, 2021

7

8                                                                        CRAIG C. MARTIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLICATION OF CRAIG C. MARTIN TO APPEAR *PRO HAC VICE*; CASE NO. RG20073930

EXHIBIT 22

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:        mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice Pending*)
   MATT D. BASIL (*Pro Hac Vice Pending*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois 60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:        cmartin@willkie.com
10               mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12

ENDORSED
FILED
ALAMEDA COUNTY

FEB 1 7 2021

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on      Case No.: RG20073930
   behalf of all others similarly situated,
17                                             NOTICE OF APPLICATION FOR
                Plaintiff,                     ADMISSION *PRO HAC VICE* OF MATT
18                                             D. BASIL
19      vs.
                                               Date:          April 27, 2021
20 GILLIG, LLC, a limited liability company; and   Time:          3:00 p.m.
   DOES 1 through 10, inclusive,               Department:    23
21                                             Judge:         Hon. Brad Seligman
                Defendants.                    Reservation No.: R-2239480
22
                                               Complaint Filed:  September 16, 2020
23                                             Trial Date:       Not set

24          PLEASE TAKE NOTICE that on April 27, 2021, at 3:00 pm, or as soon thereafter as the

25 matter can be heard in Department 23 of the above-entitled Court, located at 1221 Oak Street,

26 Oakland, California 94612, Defendant GILLIG, LLC ("Defendant") will and hereby does apply

27 to the Court, pursuant to Rule 9.40 of the California Rules of Court, for an order admitting

28

                                               1
   NOTICE OF APPLICATION FOR ADMISSION *PRO HAC VICE* OF MATT D. BASIL;
   CASE NO. RG20073930

1  Matt D. Basil as counsel *pro hac vice* on behalf of Defendant in connection with all aspects of

2  the above-captioned action.

3       Pursuant to Rule 9.40(e)(1) of the California Rules of Court, a copy of this Notice and

4  supporting papers, accompanied by a check in the amount of $50.00 has been served upon the

5  State Bar of California at its San Francisco office.

6       Mr. Basil's application is based upon this notice, the contemporaneously-filed

7  Application of Matt D. Basil to Appear *Pro Hac Vice*, the Declaration of Michael Warren and

8  exhibits thereto, the Memorandum of Points and Authorities in Support, and such other further

9  oral and documentary evidence as may be presented at the hearing on this matter.

10

11  DATED:  January 29, 2021          McMANIS FAULKNER

12

13

14                        MICHAEL WARREN

15                        Attorneys for Defendant
                      GILLIG, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF *EX PARTE* APPLICATION FOR ADMISSION *PRO HAC VICE* OF MATT D. BASIL;
CASE NO. RG20073930

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

On January 29, 2021, I served the foregoing document described as:

NOTICE OF EX PARTE APPLICATION FOR ADMISSION PRO HAC VICE OF MATT D. BASIL; MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR ADMISSION PRO HAC VICE; APPLICATION OF MATT D. BASIL TO APPEAR PRO HAC VICE; DECLARATION OF MICHAEL WARREN IN SUPPORT OF EX PARTE APPLICATION FOR ADMISSION PRO HAC VICE; PROPOSED ORDER

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

Kane Moon, Esq.                          Attorneys for Plaintiff
Allen Feghali                            RONALD TOLENTINO
MOON & YANG, APC
1055 W. Seventh St., #1880
Los Angeles, CA 90017
T: (213) 232-3128 / F: (213) 232-3125
E: kane.moon@moonyanglaw.com
   allen.feghali@moonyanglaw.com

☒    **(BY MAIL)**
I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this businesses' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Jose, California.

☒    **(STATE)**
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 29, 2021, at San Jose, California.

_____
Elise Dresser

1

# EXHIBIT 23



1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10ᵗʰ Floor
   San Jose, California 95113.
4  Telephone:     (408) 279-8700
   Facsimile:      (408) 279-3244
5  Email:          mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice Pending*)
   MATT D. BASIL (*Pro Hac Vice Pending*)
7  WILLKIE·FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois  60654
   Telephone:     (312) 728-9000
9  Facsimile:      (312) 728-9199
   Email:          cmartin@willkie.com
10                 mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12

ENDORSED·

**FILED**
ALAMEDA COUNTY

FEB 1 7 2021

CLERK OF THE SUPERIOR COURT
By _____
                                    Deputy

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                  FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on     Case No.: RG20073930
   behalf of all others similarly situated,
17                                             **MEMORANDUM IN SUPPORT OF *EX***
                                               ***PARTE* APPLICATION FOR ADMISSION**
18              Plaintiff,                     ***PRO HAC VICE* OF MATT D. BASIL**

19      vs.                                    Date:          April 27, 2021
                                               Time:          3:00 p.m.
20 GILLIG, LLC, a limited liability company; and   Department:     23
   DOES 1 through 10, inclusive,              Judge:         Hon. Brad Seligman
21                                             **Reservation No.: R-2239480**
              Defendants.
22                                             Complaint Filed:    September 16, 2020
                                               Trial Date:         Not set
23

24

25 I.    **INTRODUCTION**

26       Defendant GILLIG, LLC ("Defendant"), requests that this Court grant its Application for

27 Admission *Pro Hac Vice* of Matt D. Basil (the "Application" and "Applicant," respectively)

28 pursuant to Rule 9.40 of the California Rules of Court.  The Applicant has been retained by

                                            1

1  Defendant to represent it in this matter, is familiar with the information and issues in this lawsuit,

2  and his presence as counsel in this case will promote efficiency in the prosecution and defense of

3  this action.

4  **II.    INFORMATION REQUIRED BY RULE 9.40 OF THE CALIFORNIA RULES OF COURT**

5       The information required by Rule 9.40 of the California Rules of Court for admission as

6  counsel *pro hac vice* is set forth below and is verified in the accompanying Application of Matt

7  D. Basil and Declaration of Michael Warren in support of this Application to appear *pro hac vice*

8  in this matter on behalf of Defendant.

9       1.    Matt D. Basil is a lawyer with the following law firm:

10          Willkie Farr & Gallagher, LLP
11          300 North LaSalle
            Chicago, IL 60654-3406
12          (312) 728-9020

13       2.    Mr. Basil was admitted to practice before the following courts on the following

14  dates:

| Court | Admission Date |
|---|---|
| United States District Court, Northern District of Illinois | 1997 |
| United States District Court, Northern District of Illinois (trial bar) | 2009 |
| United States Court of Appeals, Third Circuit | 2014 |
| United States District Court, Eastern District of Wisconsin | 2008 |
| United States Court of Appeals, 5th Circuit | 2009 |

19       3.    Mr. Basil has not been disciplined by any court or administrative body, there are

20  no disciplinary proceedings pending against him, and he has not resigned from representation

21  during any pending disciplinary proceedings.

22       4.    Mr. Basil applied for admission *pro hac vice* on October 23, 2020 in the United

23  States District Court, Northern District of California, in and for the matter entitled *Ronald*

24  *Tolentino, et al. v. Gillig, LLC,* Case No. 20-cv-07427 MMC.  The order granting application for

25  admission of attorney *pro hac vice* is dated October 23, 2020 (Docket No. 8).

26       5.    Michael Warren is an active member of the Bar of the State of California, and is

27  the attorney of record in this case.  Mr. Warren's business address is:

28

2

1

McManis Faulkner
50 West San Fernando Street
San Jose, CA 95113
Tel.: (408) 279-8700
Fax: (408) 279-3244

2

3

4      6.      Mr. Basil's residence address is:

5          3536 N. Bell Ave.
           Chicago, IL 60618

6

7      7.      Mr. Basil has been retained to assist in the representation of Defendant in this

8   matter.

9      8.      Mr. Basil is not a resident of the State of California, is not regularly employed in

10  the State of California, and is not regularly engaged in substantial business, professional, or other

11  activities in the State of California.

12     9.      Mr. Basil understands that if this Application is granted, he will be subject to the

13  jurisdiction of the Courts of this State with respect to the law of the State governing the conduct

14  of attorneys to the same extent as a member of the State Bar of California.  Mr. Basil has agreed

15  to familiarize himself and to comply with the standards of professional conduct required of

16  members of the State Bar of California, and he understands that he will be subject to the

17  disciplinary jurisdiction of the State Bar with respect to any acts occurring in the court of

18  appearance.  Mr. Basil understands that Article 5, Division III, of the California Business &

19  Professions Code and the Rules of Procedure of the State Bar shall govern in any investigation or

20  proceeding conducted by the State Bar under Rule 9.40 of the California Rules of Court.

21     10.     Accompanying this Application is the Declaration of Michael Warren verifying

22  that in accordance with California Rule of Court 9.40, he has served a copy of all application

23  papers upon the State Bar of California, along with payment of the applicable fee in the amount

24  of $50.00.

25  /////

26  /////

27  /////

28  /////

3

MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR ADMISSION *PRO HAC VICE* OF MATT
D. BASIL; CASE NO. RG20073930

1    **III.**    <u>**CONCLUSION**</u>

2          For the foregoing reasons, Defendant respectfully requests that the Court permit Matt D.

3   Basil to appear *pro hac vice* in this matter.

4

5   DATED:  January 29, 2021            McMANIS FAULKNER

6

7

8                                         MICHAEL WARREN
                                      Attorneys for Defendant

9                                       GILLIG, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF *EX PARTE* APPLICATION FOR ADMISSION *PRO HAC VICE* OF MATT
D. BASIL; CASE NO. RG20073930

EXHIBIT 24



1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10ᵗʰ Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:    mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice Pending*)
   MATT D. BASIL (*Pro Hac Vice Pending*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois  60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:    cmartin@willkie.com
10            mbasil@willkie.com

11  Attorneys for Defendant
    GILLIG, LLC
12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    FOR THE COUNTY OF ALAMEDA

15

16  RONALD TOLENTINO, individually, and on    Case No.:  RG20073930
    behalf of all others similarly situated,
17                                            **DECLARATION OF MICHAEL
                                              WARREN IN SUPPORT OF** *EX PARTE*
18            Plaintiff,                      **APPLICATION FOR ADMISSION** *PRO
                                              HAC* **VICE OF MATT D. BASIL**
19        vs.
                                              Date:        April 27, 2021
20  GILLIG, LLC, a limited liability company; and   Time:        3:00 p.m.
    DOES 1 through 10, inclusive,            Department:  23
21                                            Judge:       Hon. Brad Seligman
            Defendants.                       Reservation No.: R-2239480
22

23                                            Complaint Filed:  September 16, 2020
                                              Trial Date:       Not set
24

25      I, MICHAEL WARREN, declare as follows:

26      1.      I am an attorney duly admitted to practice before all of the courts of the State of

27  California.  I am a member in the law firm of McManis Faulkner, 50 West San Fernando Street,

28
                                              1
─────────────────────────────────────────────────────────────────────
DECLARATION OF MICHAEL WARREN IN SUPPORT OF *EX PARTE* APPLICATION FOR ADMISSION
*PRO HAC VICE* OF MATT D. BASIL; CASE NO. RG20073930

1  San Jose, CA 95113, (408) 279-8700, counsel of record for Defendant GILLIG, LLC.

2  ("Defendant"), in the above-captioned matter.  I am personally familiar with the matters set forth

3  herein, and if called to testify, I could and would competently testify thereto.

4       2.      I make this declaration in support of the Application of Matt D. Basil to appear as

5  counsel *pro hac vice* in this matter, and to be associated as counsel to Defendant in this matter.

6       3.      My colleague, Matt D. Basil, is associated with me as counsel of record in this

7  matter.  The Court and opposing counsel may readily communicate with me regarding the

8  conduct of the case and also serve papers upon me.

9       4.      On January 29, 2021, I wrote an email to plaintiff's counsel, Allen Feghali, to

10  inform counsel that defendant will appear *ex parte* to apply for an order granting defendant's

11  application for admission *pro hac vice* of Matt D. Basil.  Plaintiff's counsel informed me via

12  email that he did not oppose our application.

13       5.      On January 29, 2021, I caused to be served on the State Bar of California, via its

14  Admissions Applicant Portal, a copy of these papers, to wit: (a) Notice of Hearing on *Ex Parte*

15  Application for Admission *Pro Hac Vice* of Matt D. Basil; (b) Memorandum In Support of *Ex*

16  *Parte* Application for Admission *Pro Hac Vice* of Matt D. Basil; (c) Application of Matt D.

17  Basil; and (d) Declaration of Michael Warren.  I also caused to be submitted online the required

18  filing fee in the amount of $50.00.  Attached hereto as **Exhibit A** is a confirmation of the online

19  submission to the State Bar of California.

20       I declare under penalty of perjury under the laws of the State of California and the United

21  States of America that the foregoing is true and correct.

22

23  Dated:  January 29, 2021

24                                    MICHAEL WARREN

25

26

27

28

2

DECLARATION OF MICHAEL WARREN IN SUPPORT OF *EX PARTE* APPLICATION FOR ADMISSION
*PRO HAC VICE* OF MATT D. BASIL; CASE NO. RG20073930

# EXHIBIT A

**Dresser, Elise**

| | |
|---|---|
| **From:** | State Bar of California - Special Admissions <special.admissions@calbar.ca.gov> |
| **Sent:** | Friday, January 29, 2021 2:52 PM |
| **To:** | mbasil@willkie.com; Dresser, Elise |
| **Subject:** | Pro Hac Vice Application Acknowledgement Notice |

 **The State Bar of California**                                                **OFFICE OF ADMISSIONS**

**Application's Case Number:** 00640911
**Trial Case Name:** Ronald Tolentino v. Gillig, Inc., LLC
**Trial Case Number:** Alameda County Superior Court #RG20073930

Dear Elise Dresser,

Your Pro Hac Vice application has been received and is pending review. For your application to be approved, you must have submitted an uploaded copy of the original Pro Hac Vice application, in addition to the application fee.

**If you failed to upload the original Pro Hac Vice application/document during the online application process, please follow the steps below to upload the completed document to your existing application:**

1. Login to the Applicant Community site.
2. Click the "Special Admissions" tab at the top of the home page, and then select the "Pro Hac Vice" option.
3. In the "Upload document(s) to a previously submitted application" box, select the "Next" button.
4. Follow the directions on the screen to search for the application using the application's "Case Number" (listed at the top of this message beginning with "00"), and upload the document(s).

Applicants who encounter problems gaining access to the Applicant Community, or those who have not yet created a password to the Applicant Community, should take the following steps:

1. Access the Applicant Community at admissions.calbar.ca.gov.
2. Click "Forgot your password."
3. Click "Send Password Reset Email."
4. Check your email and follow the instructions to reset your password.

If you paid by e-check (ACH), then your application will not be approved until we

1

can confirm that your payment processed, successfully. It may take up to 7 business days before the transaction is settled. In addition, if you owe any outstanding fees to the State Bar, your application cannot be approved until the fees are paid.

Once the application is deemed complete, you will receive an email notifying you of a successful filing.

If you have any questions, please contact the Special Admissions department at the number below.

Sincerely,


Office of Admissions
State Bar of California
(415) 538-2300


ref:_00Dt0TZax._500t0fksKk:ref

**Dresser, Elise**

| | |
|---|---|
| **From:** | State Bar of California - Admissions <admissions@calbar.ca.gov> |
| **Sent:** | Friday, January 29, 2021 2:52 PM |
| **To:** | Dresser, Elise |
| **Subject:** | State Bar Of California* Payment Has Been Received |



# The State Bar
## *of California*

180 Howard Street, San Francisco, CA 94105                    415-538-2000

Dear Elise Dresser,

Thank you for submitting your payment. It is currently being processed. Please allow 7 days for the bank to
are any issues with your payment, you will be notified directly. A detailed breakdown of your transaction is b

Application Type :
Service Fee : $ 1.25
Total Paid Amount : $ 51.25
Payment Date : 01/29/2021

Sincerely,

State Bar Of California*
180 Howard St.
San Francisco, CA 94105
US

EXHIBIT 25

1 | WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
2 | McMANIS FAULKNER
a Professional Corporation
3 | 50 West San Fernando Street, 10th Floor
San Jose, California 95113
4 | Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
5 | Email:    mwarren@mcmanislaw.com

6 | CRAIG C. MARTIN (*Pro Hac Vice Pending*)
MATT D. BASIL (*Pro Hac Vice Pending*)
7 | WILLKIE FARR & GALLAGHER, LLP
300 North LaSalle Street, Suite 5000
8 | Chicago, Illinois 60654
Telephone:    (312) 728-9000
9 | Facsimile:    (312) 728-9199
Email:    cmartin@willkie.com
10 |    mbasil@willkie.com
Attorneys for Defendant
11 | GILLIG, LLC

12

13 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

14 | FOR THE COUNTY OF ALAMEDA

15

16 | RONALD TOLENTINO, individually, and on
behalf of all others similarly situated,    Case No.: RG20073930

17 |    Plaintiff,    **[PROPOSED] ORDER GRANTING
APPLICATION FOR ADMISSION *PRO
18 |    HAC* VICE OF MATT D. BASIL**

vs.
19 |    Date:    April 27, 2021
GILLIG, LLC, a limited liability company; and    Time:    3:00 p.m.
20 | DOES 1 through 10, inclusive,    Department:    23
Judge:    Hon. Brad Seligman
21 |    Defendants.    Reservation No.: R-2239480

22 |    Complaint Filed:    September 16, 2020
Trial Date:    Not set

23

24 |    The Application of Matt D. Basil to be allowed to appear in this matter as counsel *pro*

25 | *hac vice* on behalf of Defendant Gillig, LLC ("Defendant"), came on for hearing by the Court.

26 | Having considered the application and all other papers submitted and the records and files

27

28

1

[PROPOSED] ORDER GRANTING APPLICATION OF MATT D. BASIL TO APPEAR *PRO HAC VICE*;
CASE NO. RG20073930

1  herein, and having determined that all conditions to admission as counsel *pro hac vice* as

2  outlined in Rule 9.40 of the California Rules of Court have been satisfied.

3       IT IS HEREBY ORDERED that the Application of Matt D. Basil is GRANTED and

4  Matt D. Basil may appear as counsel *pro hac vice* for Defendant.

5

6

7  Date: _____                    _____

8                                                    The Honorable Brad Seligman
                                                     Judge of the Superior Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

EXHIBIT 26

1   WILLIAM FAULKNER (83385)
    MICHAEL WARREN (223642)
2   McMANIS FAULKNER
    a Professional Corporation
3   50 West San Fernando Street, 10th Floor
    San Jose, California 95113
4   Telephone:    (408) 279-8700
    Facsimile:    (408) 279-3244
5   Email:    mwarren@mcmanislaw.com

6   CRAIG C. MARTIN (*Pro Hac Vice Pending*)
    MATT D. BASIL (*Pro Hac Vice Pending*)
7   WILLKIE FARR & GALLAGHER, LLP
    300 North LaSalle Street, Suite 5000
8   Chicago, Illinois 60654
    Telephone:    (312) 728-9000
9   Facsimile:    (312) 728-9199
    Email:    cmartin@willkie.com
10            mbasil@willkie.com

11  Attorneys for Defendant
    GILLIG, LLC
12

ENDORSED
FILED
ALAMEDA COUNTY

FEB 1 7 2021

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14              FOR THE COUNTY OF ALAMEDA

15

16  RONALD TOLENTINO, individually, and on        Case No.: RG20073930
    behalf of all others similarly situated,
17                                                 APPLICATION OF MATT D. BASIL
                                                   TO APPEAR *PRO HAC VICE*
18              Plaintiff,
                                                   Date:         April 27, 2021
19       vs.                                       Time:         3:00 p.m.
                                                   Department:   23
20  GILLIG, LLC, a limited liability company; and  Judge:        Hon. Brad Seligman
    DOES 1 through 10, inclusive,                  Reservation No.: R-2239480
21
                Defendants.                         Complaint Filed:  September 16, 2020
22                                                 Trial Date:       Not set

23

24          Pursuant to Rule 9.40 of the California Rules of Court, Matt D. Basil, hereby applies for

25  admission *pro hac vice* to appear and participate in this case on behalf of defendant Gillig, LLC.

26  The applicant hereby attests as follows:

27          I reside at 3536 N. Bell Ave, Chicago, IL 60618, and practice at Willkie Farr &

28  Gallagher, LLP, 300 North LaSalle, Chicago, IL 60654-3406, telephone (312) 728-9020.

                                            i

1.    I have been asked by defendant Gillig, LLC to appear on its behalf in this case.

2.    I have been admitted to practice before the following courts on the following dates:

| Court | Admission Date |
|-------|----------------|
| United States District Court, Northern District of Illinois | 1997 |
| United States District Court, Northern District of Illinois (trial bar) | 2009 |
| United States Court of Appeals, Third Circuit | 2014 |
| United States District Court, Eastern District of Wisconsin | 2008 |
| United States Court of Appeals, 5th Circuit | 2009 |

3.    I am in good standing and eligible to practice in said courts.

4.    I am not currently suspended or disbarred in any court.

5.    I applied for admission *pro hac vice* on October 23, 2020 in the United States District Court, Northern District of California, in and for the matter entitled *Ronald Tolentino, et al. v. Gillig, LLC,* Case No. 20-cv-07427 MMC.  The order granting application for admission of attorney *pro hac vice* is dated October 23, 2020 (Docket No. 8).

6.    Michael Warren is an active licensee of the State Bar of California, of the firm of McManis Faulkner, is the attorney of record in this matter, and practices at the following address and telephone number: 50 West San Fernando Street, 10th Floor, San Jose, California 95113, Telephone: (408) 279-8700.

Executed this 21st day of January , 2021, at Chicago, Illinois.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


DATED:  January 21, 2021

_____
MATT D. BASIL

2

APPLICATION OF MATT D. BASIL TO APPEAR *PRO HAC VICE*; CASE NO. RG20073930

EXHIBIT 27

**FILED BY FAX**
ALAMEDA COUNTY
February 26, 2021
CLERK OF
THE SUPERIOR COURT
By Lynn Wiley, Deputy
CASE NUMBER:
RG20073930

Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Enzo Nabiev (SBN 332118)
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
E-mail: kane.moon@moonyanglaw.com
E-mail: allen.feghali@moonyanglaw.com
E-mail: enzo.nabiev@moonyanglaw.com

Attorneys for Plaintiff Ronald Tolentino

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated, | No. RG20073930 |
| Plaintiff, | [Hon. Brad Seligman, Dept. 23] |
| v. | **STIPULATION AND [PROPOSED] ORDER ALLOWING FILING OF SECOND AMENDED COMPLAINT** |
| GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive, | |
| Defendant. | |
| | Trial Date: Not yet set |

Plaintiff Ronald Tolentino ("Plaintiff") and Defendant Gillig, LLC, ("Defendant"),

through their respective counsel of record, hereby stipulate as follows:

**STIPULATION**

1.        Plaintiff and Defendant hereby stipulate that Plaintiff shall be granted leave to file

his Second Amended Complaint, attached hereto as Attachment 1, in the case entitled *Ronald*

*Tolentino, et al. v. Gillig, LLC*, Case No. RG20073930.

1      2.    This stipulation is not intended to and shall not operate as a waiver by any party

2  of any objections, defenses, or right to challenge any pleadings that may be filed as a result of

3  this stipulation. All parties reserve their rights to challenge the pleadings filed by any other party

4  in any authorized manner, including without limitation challenges by way of motion, demurrer,

5  answer, or other pleading.

6

7  DATED: February 25, 2021             MOON & YANG, APC

8

9

10                                KANE MOON

11                                ALLEN FEGHALI
                                    ENZO NABIEV

12                                Attorneys for Plaintiff
                                RONALD TOLENTINO

13

14  DATED: February 25, 2021             McMANIS FAULKNER

15

16

17                                  WILLIAM FAULKNER
                                MICHAEL WARREN

18

19                                Attorneys for Defendant
                                GILLIG, LLC

20

21                              **ORDER**

22  IT IS SO ORDERED.

23

24  DATED: _____

25                                THE HONORABLE BRAD SELIGMAN
                                JUDGE OF THE SUPERIOR COURT

26

27

28

                                    2

EXHIBIT A

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Enzo Nabiev (SBN 332118)
   **MOON & YANG, APC**
3  1055 W. Seventh St., Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  E-mail: kane.moon@moonyanglaw.com
   E-mail: allen.feghali@moonyanglaw.com
6  E-mail: enzo.nabiev@moonyanglaw.com

7  Attorneys for Plaintiff Ronald Tolentino

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                **FOR THE COUNTY OF ALEMEDA**

11  RONALD TOLENTINO, individually, and on       Case No.: RG20073930
    behalf of all others similarly situated,
12                                                [Hon. Brad Seligman, Dept. 23]

13              Plaintiff,                        **SECOND AMENDED CLASS ACTION
                                                  AND REPRESENTATIVE ACTION**
14      vs.                                       **COMPLAINT:**

15                                                1.  Failure to Pay Minimum and Regular Rate
    GILLIG, LLC, a limited liability company; and     Wages [Cal. Lab. Code §§ 1194, 1194.2,
16  DOES 1 through 10, inclusive,                     and 1197];
                                                  2.  Failure to Provide Meal Periods [Cal. Lab.
17              Defendants                             Code §§ 226.7, 512];
                                                  3.  Failure to Authorize and Permit Rest
18                                                    Breaks [Cal. Lab. Code §§ 226.7];
                                                  4.  Failure to Timely Pay Final Wages at
19                                                    Termination [Cal. Lab. Code §§ 201-203];
                                                  5.  Failure to Provide Accurate Itemized
20                                                    Wage Statements [Cal. Lab. Code § 226];
                                                  6.  Unfair Business Practices [Cal. Bus. &
21                                                    Prof. Code §§ 17200, et seq.]; and
                                                  7.  Civil Penalties Under PAGA [Cal. Lab.
22                                                    Code § 2699, et seq.].

23                                                **DEMAND FOR JURY TRIAL**

24

25

26

27

28

───────────────────────────────────────────────────
       SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1

## **TABLE OF CONTENTS**

2    INTRODUCTION & PRELIMINARY STATEMENT ............................................................ 1

3    THE PARTIES .................................................................................................................. 3

4          A.    Plaintiff........................................................................................................... 3

5          B.    Defendants...................................................................................................... 3

6    CLASS ACTION ALLEGATIONS..................................................................................... 7

7    FIRST CAUSE OF ACTION............................................................................................ 11

8    SECOND CAUSE OF ACTION...............................................**Error! Bookmark not defined.**

9    THIRD CAUSE OF ACTION .......................................................................................... 12

10   FOURTH CAUSE OF ACTION....................................................................................... 13

11   FIFTH CAUSE OF ACTION ........................................................................................... 14

12   SIXTH CAUSE OF ACTION........................................................................................... 15

13   SEVENTH CAUSE OF ACTION .................................................................................... 16

14

15   PRAYER FOR RELIEF..................................................................................................... 21

16   DEMAND FOR JURY TRIAL.......................................................................................... 25

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff Roland Tolentino ("Plaintiff"), based upon facts that either have evidentiary

2    support or are likely to have evidentiary support after a reasonable opportunity for further

3    investigation and discovery, alleges as follows:

4    ### INTRODUCTION & PRELIMINARY STATEMENT

5    1.    Plaintiff brings this action against Defendants Gillig, LLC, and Does 1 through 10

6    (collectively referred to as "Defendants") for California Labor Code violations and unfair

7    business practices stemming from Defendants' failure to pay minimum and regular rate wages,

8    failure to provide meal periods, failure to authorize and permit rest periods, failure to maintain

9    accurate records of hours worked and meal periods, failure to timely pay all wages to terminated

10    employees, and failure to furnish accurate wage statements.

11    2.    Plaintiff brings the First through Seventh Causes of Action individually and as a

12    class action on behalf of herself and certain current and former employees of Defendants

13    (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully

14    below).The Class consists of Plaintiff and all other persons who have been employed by any

15    Defendant in California and classified as a non-exempt employee during the statute of limitations

16    period applicable to the claims pleaded here.

17    3.    Plaintiff brings the Eighth Cause of Action as a representative action under the

18    California Private Attorney General Act ("PAGA") to recover civil penalties that are owed to

19    Plaintiff, the State of California, and past and present non-exempt, hourly-paid employees of

20    Defendants who worked in California during the applicable statute of limitations period

21    (hereinafter referred to as the "Aggrieved Employees").

22    4.    Defendants own/owned and operate/operated an industry, business, and

23    establishment within the State of California, including Alameda County. As such, and based

24    upon all the facts and circumstances incident to Defendants' business in California, Defendants

25    are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare

26    Commission ("IWC"), and the California Business & Professions Code.

27    5.    Despite these requirements, throughout the statutory period Defendants

28    maintained a systematic, company-wide policy and practice of:

1
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

(a) Failing to pay employees for all hours worked, including all minimum wages, in compliance with the California Labor Code and IWC Wage Orders;

(b) Failing to maintain accurate records of the hours employees worked;

(c) Failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal period violation occurred;

(d) Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failing to pay an additional hour's pay for each workday a rest period violation occurred;

(e) Willfully failing to pay employees all minimum wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates; and

(f) Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

6.      On information and belief, Defendants, and each of them were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

7.      At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff, the Class, and the Aggrieved Employees. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior".

1                                           **THE PARTIES**

2          **A.    Plaintiff**

3          8.      Plaintiff is a California resident who worked for Defendants in Alameda County,

4    California as a maintenance worker from approximately May 2002 to June 2020.

5          9.      Plaintiff reserves the right to seek leave to amend this complaint to add new

6    plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v.*

7    *American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

8          **B.    Defendants**

9          10.     Plaintiff is informed and believes, and based upon that information and belief

10   alleges, that Defendant Gillig, LLC is:

11                 (a)    A California limited partnership with its principal place of business in

12                        Alameda, California.

13                 (b)    A business entity conducting business in numerous counties throughout the

14                        State of California, including in Alameda County; and

15                 (c)    The former employer of Plaintiff, and the current and/or former employer

16                        of the putative Class. Gillig, LLC suffered and permitted Plaintiff, the

17                        Class, and the Aggrieved Employees to work, and/or controlled their

18                        wages, hours, or working conditions.

19         11.     Plaintiff does not know the true names or capacities of the persons or entities sued

20   herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names.

21   Each of the Doe Defendants was in some manner legally responsible for the damages suffered by

22   Plaintiff, the Class, and the Aggrieved Employees as alleged herein.  Plaintiff will amend this

23   complaint to set forth the true names and capacities of these Defendants when they have been

24   ascertained, together with appropriate charging allegations, as may be necessary.

25         12.     At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and

26   each of them, were residents of, doing business in, availed themselves of the jurisdiction of,

27   and/or injured a significant number of the Plaintiff, the Class, and the Aggrieved Employees in

28   the State of California.

3

1      13.    Plaintiff is informed and believes and thereon alleges that at all relevant times

2  each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and

3  the other employees described in the class definitions below, and exercised control over their

4  wages, hours, and working conditions. Plaintiff is informed and believes and thereon alleges

5  that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer,

6  director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest

7  and/or predecessor in interest of some or all of the other Defendants, and was engaged with some

8  or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to

9  some or all of the other Defendants so as to be liable for their conduct with respect to the matters

10  alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted

11  pursuant to and within the scope of the relationships alleged above, that each Defendant knew or

12  should have known about, and authorized, ratified, adopted, approved, controlled, aided and

13  abetted the conduct of all other Defendants.

14                 **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15      14.    Plaintiff Roland Tolentino worked for Defendants in Alameda County, California

16  as a maintenance worker.

17      15.    Throughout the statutory period, Defendants failed to pay Plaintiff for all hours

18  worked (including minimum wages), failed to provide Plaintiff with uninterrupted meal periods,

19  failed to authorize and permit Plaintiff to take uninterrupted rest periods, failed to maintain

20  accurate records of the hours Plaintiff worked, failed to timely pay all final wages to Plaintiff

21  when Defendants terminated Plaintiff's employment, and failed to furnish accurate wage

22  statements to Plaintiff. As discussed below, Plaintiff's experience working for Defendants was

23  typical and illustrative.

24      16.    Throughout the statutory period, Defendants maintained a policy and practice of

25  not paying Plaintiff, the Class, and the Aggrieved Employees for all hours worked. Defendants

26  regularly use a system of time rounding in a manner that resulted, over a period of time, in failing

27  to compensate Plaintiff, the Class, and the Aggrieved Employees properly for all the time they

28  have actually worked, even though the realities of Defendants' operations are such that it is

1    possible, practical, and feasible to count and pay for work time to the minute. As a result,

2    Defendants frequently paid Plaintiff, the Class, and the Aggrieved Employees less than all their

3    work time. As a further result, Defendants failed to maintain accurate records of the hours

4    Plaintiff, the Class, and the Aggrieved Employees worked.

5          17.    Throughout the statutory period, Defendants have wrongfully failed to provide

6    Plaintiff, the Class, and the Aggrieved Employees with legally compliant meal periods.

7    Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved Employees

8    to work in excess of five consecutive hours a day without providing a 30-minute, continuous and

9    uninterrupted, duty-free meal period for every five hours of work, or without compensating

10    Plaintiff, the Class, and the Aggrieved Employees for meal periods that were not provided by the

11    end of the fifth hour of work or tenth hour of work. Defendants did not adequately inform

12    Plaintiff, the Class, and the Aggrieved Employees of their right to take a meal period by the end

13    of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of

14    work. Defendants also did not have adequate policies or practices to document and verify

15    whether Plaintiff, the Class, and the Aggrieved Employees were taking their required meal

16    periods. Accordingly, Defendants' policy and practice was to not provide meal periods to

17    Plaintiff, the Class, and the Aggrieved Employees in compliance with California law.

18          18.    Throughout the statutory period, Defendants have wrongfully failed to authorize

19    and permit Plaintiff, the Class, and the Aggrieved Employees to take timely and duty-free rest

20    periods. Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved

21    Employees to work in excess of four consecutive hours a day without Defendants authorizing and

22    permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four

23    hours of work (or major fraction of four hours), or without compensating Plaintiff, the Class, and

24    the Aggrieved Employees for rest periods that were not authorized or permitted. Accordingly,

25    Defendants' policy and practice was to not authorize and permit Plaintiff, the Class, and the

26    Aggrieved Employees to take rest periods in compliance with California law.

27

28

1    19.    Throughout the statutory period, Defendants willfully failed and refused to timely

2    pay Plaintiff, the Class, and the Aggrieved Employees at the conclusion of their employment all

3    wages, meal period premium wages, and rest period premium wages.

4    20.    Throughout the statutory period, Defendants failed to furnish Plaintiff, the Class,

5    and the Aggrieved Employees with accurate, itemized wage statements showing all applicable

6    hourly rates, and all gross and net wages earned (including correct hours worked, correct wages

7    earned for hours worked, correct wages for meal periods that were not provided in accordance

8    with California law, and correct wages for rest periods that were not authorized and permitted to

9    take in accordance with California law).  As a result of these violations of California Labor Code

10   § 226(a), Plaintiff, the Class, and the Aggrieved Employees suffered injury because, among other

11   things:

12         (a)    the violations led them to believe that they were not entitled to be paid

13                minimum wages, meal period premium wages, and rest period premium

14                wages to which they were entitled, even though they were entitled;

15         (b)    the violations led them to believe that they had been paid the minimum,

16                meal period premium, and rest period premium wages to which they were

17                entitled, even though they had not been;

18         (c)    the violations led them to believe they were not entitled to be paid

19                minimum, meal period premium, and rest period premium wages at the

20                correct California rate even though they were;

21         (d)    the violations led them to believe they had been paid minimum, meal

22                period premium, and rest period premium wages at the correct California

23                rate even though they had not been;

24         (e)    the violations hindered them from determining the amounts of minimum,

25                meal period premium, and rest period premium owed to them;

26         (f)    in connection with their employment before and during this action, and in

27                connection with prosecuting this action, the violations caused them to have

28                to perform mathematical computations to determine the amounts of wages

6
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1          owed to them, computations they would not have to make if the wage

2          statements contained the required accurate information;

3        (g)   by understating the wages truly due them, the violations caused them to

4          lose entitlement and/or accrual of the full amount of Social Security,

5          disability, unemployment, and other governmental benefits;

6        (h)   the wage statements inaccurately understated the wages, hours, and wage

7          rates to which Plaintiff, the Class, and the Aggrieved Employees were

8          entitled, and Plaintiff, the Class, and the Aggrieved Employees were paid

9          less than the wages and wage rates to which they were entitled.

10  Thus, Plaintiff, the Class, and the Aggrieved Employees are owed the amounts provided for in

11  California Labor Code § 226(e).

12                      **CLASS ACTION ALLEGATIONS**

13     21.    Plaintiff brings certain claims individually, as well as on behalf of each and all

14  other persons similarly situated, and thus, seeks class certification under California Code of Civil

15  Procedure § 382.

16     22.    All claims alleged herein arise under California law for which Plaintiff seeks relief

17  authorized by California law.

18     23.    The proposed Class consists of and is defined as:

19     All persons who worked for any Defendants in California as an hourly-paid,
       non-exempt employee at any time during the period beginning four years before
20    the filing of the initial complaint in this action and ending when notice to the
21    Class is sent.

22     24.    At all material times, Plaintiff was a member of the Class.

23     25.    Plaintiff undertakes this concerted activity to improve the wages and working

24  conditions of all Class Members.

25     26.    There is a well-defined community of interest in the litigation and the Class is

26  readily ascertainable:

27        (a)   Numerosity: The members of the Class (and each subclass, if any) are so

28          numerous that joinder of all members would be unfeasible and impractical.

1    The membership of the entire Class is unknown to Plaintiff at this time,
2    however, the Class is estimated to be greater than 100 individuals and the
3    identity of such membership is readily ascertainable by inspection of
4    Defendants' records.

5    (b)    Typicality: Plaintiff is qualified to, and will, fairly and adequately protect
6           the interests of each Class Member with whom there is a shared, well-
7           defined community of interest, and Plaintiff's claims (or defenses, if any)
8           are typical of all Class Members' claims as demonstrated herein.

9    (c)    Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect
10          the interests of each Class Member with whom there is a shared, well-
11          defined community of interest and typicality of claims, as demonstrated
12          herein. Plaintiff has no conflicts with or interests antagonistic to any Class
13          Member. Plaintiff's attorneys, the proposed class counsel, are versed in
14          the rules governing class action discovery, certification, and settlement.
15          Plaintiff has incurred, and throughout the duration of this action, will
16          continue to incur costs and attorneys' fees that have been, are, and will be
17          necessarily expended for the prosecution of this action for the substantial
18          benefit of each class member.

19   (d)    Superiority: A Class Action is superior to other available methods for the
20          fair and efficient adjudication of the controversy, including consideration
21          of:
22          1)    The interests of the members of the Class in individually
23                controlling the prosecution or defense of separate actions;
24          2)    The extent and nature of any litigation concerning the controversy
25                already commenced by or against members of the Class;
26          3)    The desirability or undesirability of concentrating the litigation of
27                the claims in the particular forum; and
28          4)    The difficulties likely to be encountered in the management of a

8
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

class action.

(e)   Public Policy Considerations:  The public policy of the State of California is to resolve the California Labor Code claims of many employees through a class action.  Indeed, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are also fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means.  Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for the vindication of their rights at the same time as their privacy is protected.

27.   There are common questions of law and fact as to the Class (and each subclass, if any) that predominate over questions affecting only individual members, including without limitation, whether, as alleged herein, Defendants have:

(a)   Failed to pay Class Members for all hours worked, including minimum wages;

(b)   Failed to provide meal periods and pay meal period premium wages to Class Members;

(c)   Failed to authorize and permit rest periods and pay rest period premium wages to Class Members;

(d)   Failed to promptly pay all wages due to Class Members upon their discharge or resignation;

(e)   Failed to provide Class Members with accurate wages statements;

(f)   Failed to maintain accurate records of all hours Class Members worked, and all meal periods Class Members took or missed; and

(g)   Violated California Business & Professions Code §§ 17200 *et. seq.* as a result of their illegal conduct as described above.

28.   This Court should permit this action to be maintained as a class action pursuant to

9

1    California Code of Civil Procedure § 382 because:

2    (a)    The questions of law and fact common to the Class predominate over any

3           question affecting only individual members;

4    (b)    A class action is superior to any other available method for the fair and

5           efficient adjudication of the claims of the members of the Class;

6    (c)    The members of the Class are so numerous that it is impractical to bring all

7           members of the class before the Court;

8    (d)    Plaintiff, and the other members of the Class, will not be able to obtain

9           effective and economic legal redress unless the action is maintained as a

10          class action;

11   (e)    There is a community of interest in obtaining appropriate legal and

12          equitable relief for the statutory violations, and in obtaining adequate

13          compensation for the damages and injuries for which Defendants are

14          responsible in an amount sufficient to adequately compensate the members

15          of the Class for the injuries sustained;

16   (f)    Without class certification, the prosecution of separate actions by

17          individual members of the class would create a risk of:

18          1)    Inconsistent or varying adjudications with respect to individual

19                members of the Class which would establish incompatible standards

20                of conduct for Defendants; and/or

21          2)    Adjudications with respect to the individual members which would,

22                as a practical matter, be dispositive of the interests of other

23                members not parties to the adjudications, or would substantially

24                impair or impede their ability to protect their interests, including but

25                not limited to the potential for exhausting the funds available from

26                those parties who are, or may be, responsible Defendants; and,

27   (g)    Defendants have acted or refused to act on grounds generally applicable to

28          the Class, thereby making final injunctive relief appropriate with respect to

                                        10

1    the class as a whole.

2        29.    Plaintiff contemplates the eventual issuance of notice to the proposed members of

3    the Class that would set forth the subject and nature of the instant action. The Defendants' own

4    business records may be utilized for assistance in the preparation and issuance of the

5    contemplated notices. To the extent that any further notices may be required, Plaintiff would

6    contemplate the use of additional techniques and forms commonly used in class actions, such as

7    published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by

8    other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

9                        **FIRST CAUSE OF ACTION**

10       **(Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked)**

11       30.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

12   paragraphs 1 through 20 in this Complaint.

13       31.    "Hours worked" is the time during which an employee is subject to the control of

14   an employer, and includes all the time the employee is suffered or permitted to work, whether or

15   not required to do so.

16       32.    At all relevant times herein mentioned, Defendants knowingly failed to pay to

17   Plaintiff and the Class compensation for all hours they worked. By their failure to pay

18   compensation for each hour worked as alleged above, Defendants willfully violated the

19   provisions of Section 1194 of the California Labor Code, and any additional applicable Wage

20   Orders, which require such compensation to non-exempt employees.

21       33.    Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all

22   non-overtime hours worked for Defendants.

23       34.    By and through the conduct described above, Plaintiff and the Class have been

24   deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

25       35.    By virtue of the Defendants' unlawful failure to pay additional compensation to

26   Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class

27   suffered, and will continue to suffer, damages in amounts which are presently unknown to

28

11

1   Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which
2   will be ascertained according to proof at trial.

3        36.    By failing to keep adequate time records required by California Labor Code §
4   1174(d), Defendants have made it difficult to calculate the full extent of minimum wage
5   compensation due Plaintiff and the Class.

6        37.    Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are
7   entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum
8   wages.

9        38.    Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum
10  wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§
11  218.5, 218.6, and 1194(a).

12       39.

13                                **SECOND CAUSE OF ACTION**

14                **(Against All Defendants for Failure to Provide Meal Periods)**

15       40.    Plaintiff incorporates by reference and re-alleges as if fully stated herein
16  paragraphs 1 through 20 in this Complaint.

17       41.    Under California law, Defendants have an affirmative obligation to relieve the
18  Plaintiff and the Class of all duty in order to take their first daily meal periods no later than the
19  start of Plaintiff and the Class' sixth hour of work in a workday, and to take their second meal
20  periods no later than the start of the eleventh hour of work in the workday. Section 512 of the
21  California Labor Code, and Section 11 of the applicable Wage Orders require that an employer
22  provide unpaid meal periods of at least 30 minutes for each five-hour period worked. It is a
23  violation of Section 226.7 of the California Labor Code for an employer to require any employee
24  to work during any meal period mandated under any Wage Order.

25       42.    Despite these legal requirements, Defendants regularly failed to provide Plaintiff
26  and the Class with both meal periods as required by California law. By their failure to permit
27  and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact
28  that Defendants made it impossible or impracticable to take these uninterrupted meal periods),

1  Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and
2  the applicable Wage Orders.

3      43.    Under California law, Plaintiff and the Class are entitled to be paid one hour of
4  additional wages for each workday he or she was not provided with all required meal period(s),
5  plus interest thereon.

6                          **THIRD CAUSE OF ACTION**

7      **(Against All Defendants for Failure to Authorize and Permit Rest Periods)**

8      44.    Plaintiff incorporates by reference and re-alleges as if fully stated herein
9  paragraphs 1 through 20 in this Complaint.

10     45.    Defendants are required by California law to authorize and permit breaks of 10
11  uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than
12  two hours). Section 512 of the California Labor Code, the applicable Wage Orders require that
13  the employer permit and authorize all employees to take paid rest periods of 10 minutes each for
14  each 4-hour period worked. Thus, for example, if an employee's work time is 6 hours and ten
15  minutes, the employee is entitled to two rest breaks. Each failure to authorize rest breaks as so
16  required is itself a violation of California's rest break laws. It is a violation of Section 226.7 of
17  the California Labor Code for an employer to require any employee to work during any rest
18  period mandated under any Wage Order.

19     46.    Despite these legal requirements, Defendants failed to authorize Plaintiff and the
20  Class to take rest breaks, regardless of whether employees worked more than 4 hours in a
21  workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as
22  alleged above (or due to the fact that Defendants made it impossible or impracticable to take
23  these uninterrupted rest periods), Defendants willfully violated the provisions of Section 226.7 of
24  the California Labor Code and the applicable Wage Orders.

25     47.    Under California law, Plaintiff and the Class are entitled to be paid one hour of
26  premium wages rate for each workday he or she was not provided with all required rest break(s),
27  plus interest thereon.

28

1

2

3

**FOURTH CAUSE OF ACTION**

**(Against all Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time**

**Penalties)**

4    48.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

5    paragraphs 1 through 20 in this Complaint.

6    49.    At all times herein set forth, California Labor Code §§ 201 and 202 provide that if

7    an employer discharges an employee, the wages earned and unpaid at the time of discharge are

8    due and payable immediately, and that if an employee voluntarily leaves his or her employment,

9    his or her wages shall become due and payable not later than seventy-two (72) hours thereafter,

10    unless the employee has given seventy-two (72) hours previous notice of his or her intention to

11    quit, in which case the employee is entitled to his or her wages at the time of quitting.

12    50.    Within the applicable statute of limitations, the employment of Plaintiff and many

13    other members of the Class ended, i.e. was terminated by quitting or discharge, and the

14    employment of others will be. However, during the relevant time period, Defendants failed, and

15    continue to fail to pay terminated Class Members, without abatement, all wages required to be

16    paid by California Labor Code sections 201 and 202 either at the time of discharge, or within

17    seventy-two (72) hours of their leaving Defendants' employ.

18    51.    Defendants' failure to pay Plaintiff and those Class members who are no longer

19    employed by Defendants their wages earned and unpaid at the time of discharge, or within

20    seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor

21    Code §§ 201 and 202.

22    52.    California Labor Code § 203 provides that if an employer willfully fails to pay

23    wages owed, in accordance with sections 201 and 202, then the wages of the employee shall

24    continue as a penalty wage from the due date, and at the same rate until paid or until an action is

25    commenced; but the wages shall not continue for more than thirty (30) days.

26    53.    Plaintiff and the Class are entitled to recover from Defendants their additionally

27    accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days

28    maximum pursuant to California Labor Code § 203.

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1    54.    Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the

2    Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs

3    incurred in this action.

### FIFTH CAUSE OF ACTION

**(Against all Defendants for Failure to Provide and Maintain Accurate and**

**Compliant Wage Records)**

7    55.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

8    paragraphs 1 through 20 in this Complaint.

9    56.    At all material times set forth herein, California Labor Code § 226(a) provides that

10   every employer shall furnish each of his or her employees an accurate itemized wage statement

11   in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours

12   worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate

13   if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made

14   on written orders of the employee may be aggregated and shown as one item, (5) net wages

15   earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the

16   employee and the last four digits of his or her social security number or an employee

17   identification number other than a social security number, (8) the name and address of the legal

18   entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and

19   the corresponding number of hours worked at each hourly rate by the employee.

20   57.    Defendants have intentionally and willfully failed to provide employees with

21   complete and accurate wage statements.  The deficiencies include, among other things, the

22   failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list

23   the true "total hours worked by the employee," and the failure to list the true net wages earned.

24   58.    As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff

25   and the Class have suffered injury and damage to their statutorily-protected rights.

26   59.    Specifically, Plaintiff and the members of the Class have been injured by

27   Defendants' intentional violation of California Labor Code § 226(a) because they were denied

28

1  both their legal right to receive, and their protected interest in receiving, accurate, itemized wage
2  statements under California Labor Code § 226(a).

3      60.    Calculation of the true wage entitlement for Plaintiff and the Class is difficult and
4  time consuming. As a result of this unlawful burden, Plaintiff and the Class were also injured as
5  a result of having to bring this action to attempt to obtain correct wage information following
6  Defendants' refusal to comply with many of the mandates of California's Labor Code and related
7  laws and regulations.

8      61.    Plaintiff and the Class are entitled to recover from Defendants the greater of their
9  actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or
10  an aggregate penalty not exceeding four thousand dollars per employee.

11      62.    Plaintiff and the Class are also entitled to injunctive relief, as well as an award of
12  attorney's fees and costs to ensure compliance with this section, pursuant to California Labor
13  Code § 226(h).

14                           **SIXTH CAUSE OF ACTION**

15  **(Against all Defendants for Violation of California Business & Professions Code §§ 17200,**
16                                    **et seq.)**

17      63.    Plaintiff incorporates by reference and re-alleges as if fully stated herein
18  paragraphs 1 through 20 in this Complaint.

19      64.    Defendants, and each of them, are "persons" as defined under California Business
20  & Professions Code § 17201.

21      65.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,
22  unlawful, and harmful to Plaintiff, other Class members, and to the general public. Plaintiff seek
23  to enforce important rights affecting the public interest within the meaning of Code of Civil
24  Procedure § 1021.5.

25      66.    Defendants' activities, as alleged herein, are violations of California law, and
26  constitute unlawful business acts and practices in violation of California Business & Professions
27  Code §§ 17200, *et seq.*

28

67.     A violation of California Business & Professions Code §§ 17200, *et seq.* may be predicated on the violation of any state or federal law. All of the acts described herein as violations of, among other things, the California Labor Code, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business &Professions Code §§ 17200, *et seq.*

**Failure to Pay Minimum Wages**

68.     Defendants' failure to pay minimum wages, and other benefits in violation of the California Labor Code constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

**Failure to Maintain Accurate Records of All Hours Worked**

69.     Defendants' failure to maintain accurate records of all hours worked in accordance with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

**Failure to Provide Meal Periods**

70.     Defendants' failure to provide meal periods in accordance with California Labor Code §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

**Failure to Maintain Accurate Records of Meal Periods**

71.     Defendants' failure to maintain accurate records of employee meal periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

**Failure to Authorize and Permit Rest Periods**

72.     Defendants' failure to authorize and permit rest periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq.*

**Failure to Provide Accurate Itemized Wage Statements**

17

73.     Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

74.     By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

75.     Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

76.     Plaintiff, individually, and on behalf of members of the putative Class, are entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

77.     Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

78.     Plaintiff, individually, and on behalf of members of the putative class, have no plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business practices. As a result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff, individually, and on behalf of members of the putative Class, suffered and will continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

79.    Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth herein above, they will continue to avoid paying the appropriate taxes, insurance and other withholdings.

80.    Pursuant to California Business & Professions Code §§ 17200, *et seq.*, Plaintiff and putative Class Members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and Class Members; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## SEVENTH CAUSE OF ACTION

**(Against all Defendants for Civil Penalties Under the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 et seq.)**

81.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

82.    At all times herein mentioned, Defendants were subject to the Labor Code of the State of California and the applicable Industrial Welfare Commission Orders.

83.    California Labor Code § 2699(a) specifically provides for a private right of action to recover penalties for violations of the Labor Code: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

84.    Plaintiff has exhausted his administrative remedies pursuant to California Labor Code § 2699.3. On September 15, 2020, he gave written notice by online filing to the Labor and Workforce Development Agency and by certified mail to Defendants of the specific provisions of the Labor Code that Defendants have violated against Plaintiff and certain current and former

19

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1   aggrieved employees, including the facts and theories to support the violations. Plaintiff also

2   paid the filing fee. Plaintiff's PAGA case number is LWDA-CM-806429-20.

3       85.    More than 65 days has elapsed since Plaintiff provided notice, but the Labor and

4   Workforce Development Agency has not indicated that it intends to investigate Defendants'

5   Labor Code violations discussed in the notice. Accordingly, Plaintiff may commence a civil

6   action to recover penalties under Labor Code § 2699 pursuant to § 2699.3 for the violations of

7   the Labor Code described in this Complaint. These penalties include, but are not limited to,

8   penalties under California Labor Code §§ 210, 226.3, 558, and 2699(f)(2).

9       86.    In addition, Plaintiff seeks penalties for Defendants' violation of California Labor

10  Code § 1174(d). Pursuant to California Labor Code § 1174.5, any person, including any entity,

11  employing labor who willfully fails to maintain accurate and complete records required by

12  California Labor Code § 1174 is subject to a penalty under § 1174.5. Pursuant to the applicable

13  IWC Order § 7(A)(3), every employer shall keep time records showing when the employee

14  begins and ends each work period. Meal periods, and total hours worked daily shall also be

15  recorded. Additionally, pursuant to the applicable IWC Order § 7(A)(5), every employer shall

16  keep total hours worked in the payroll period and applicable rates of pay.

17      87.    During the time period of employment for Plaintiff and the Aggrieved Employees,

18  Defendants failed to maintain records pursuant to the Labor Code and IWC Orders by failing to

19  maintain accurate records showing meal periods. Defendants' failure to provide and maintain

20  records required by the Labor Code IWC Wage Orders deprived Plaintiff and the Aggrieved

21  Employees the ability to know, understand and question the accuracy and frequency of meal

22  periods. Therefore, Plaintiff and the Aggrieved Employees had no way to dispute the resulting

23  failure to pay wages, all of which resulted in an unjustified economic enrichment to Defendants.

24  As a direct result, Plaintiff and the Aggrieved Employees have suffered and continue to suffer,

25  substantial losses related to the use and enjoyment of such wages, lost interest on such wages and

26  expenses and attorney's fees in seeking to compel Defendants to fully perform its obligation

27  under state law, all to their respective damage in amounts according to proof at trial. Because of

28  Defendants' knowing failure to comply with the Labor Code and applicable IWC Wage Orders,

1   Plaintiff and the Aggrieved Employees have also suffered an injury in that they were prevented
2   from knowing, understanding, and disputing the wage payments paid to them.
3       88.    Based on the conduct described in this Complaint, Plaintiff is entitled to an award
4   of civil penalties on behalf of himself, the State of California, and similarly Aggrieved
5   Employees of Defendants.  The exact amount of the applicable penalties, in all, is in an amount
6   to be shown according to proof at trial.  These penalties are in addition to all other remedies
7   permitted by law.
8       89.    In addition, Plaintiff seeks an award of reasonable attorney's fees and costs
9   pursuant to California Labor Code § 2699(g)(1), which states, "Any employee who prevails in
10  any action shall be entitled to an award of reasonable attorney's fees and costs."

**PRAYER FOR RELIEF**

12      Plaintiff, individually, and on behalf of all others similarly situated only with respect to
13  the class claims, pray for relief and judgment against Defendants, jointly and severally, as
14  follows:

Class Certification

16      1.    That this action be certified as a class action with respect to the First, Second,
17  Third, Fourth, Fifth, Sixth, and Eighth Causes of Action;
18      2.  That Plaintiff be appointed as the representative of the Class; and
19      3.  That counsel for Plaintiff be appointed as Class Counsel.
20
21                        As to the First Cause of Action
22      4.  That the Court declare, adjudge and decree that Defendants violated California Labor
23  Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum
24  wages due;
25      5.  For general unpaid wages as may be appropriate;
26      6.  For pre-judgment interest on any unpaid compensation commencing from the date
27  such amounts were due;
28      7.  For liquidated damages;

21
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1    8.  For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

2   California Labor Code § 1194(a); and,

3    9.  For such other and further relief as the Court may deem equitable and appropriate.

4                          As to the Second Cause of Action

5    10. That the Court declare, adjudge and decree that Defendants violated California Labor

6   Code §§ 226.7 and 512, and the IWC Wage Orders;

7    11. For unpaid meal period premium wages as may be appropriate;

8    12. For pre-judgment interest on any unpaid compensation commencing from the date

9   such amounts were due;

10    13. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

11   for costs of suit incurred herein; and

12    14. For such other and further relief as the Court may deem equitable and appropriate.

13                          As to the Third Cause of Action

14    15. That the Court declare, adjudge and decree that Defendants violated California Labor

15   Code §§ 226.7 and 512, and the IWC Wage Orders;

16    16. For unpaid rest period premium wages as may be appropriate;

17    17. For pre-judgment interest on any unpaid compensation commencing from the date

18   such amounts were due;

19    18. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

20   for costs of suit incurred herein; and

21    19. For such other and further relief as the Court may deem equitable and appropriate.

22                          As to the Fourth Cause of Action

23    20. That the Court declare, adjudge and decree that Defendants violated California Labor

24   Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of

25   termination of the employment;

26    21. For statutory wage penalties pursuant to California Labor Code § 203 for former

27   employees who have left Defendants' employ;

28    22. For pre-judgment interest on any unpaid wages from the date such amounts were due;

                                    22
           SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

23. For reasonable attorneys' fees and for costs of suit incurred herein; and

24. For such other and further relief as the Court may deem equitable and appropriate.

As to the Fifth Cause of Action

25. That the Court declare, adjudge and decree that Defendants violated the record keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and willfully failed to provide accurate itemized wage statements thereto;

26. For statutory penalties and actual damages pursuant to California Labor Code § 226(e);

27. For injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h);

28. For reasonable attorneys' fees and for costs of suit incurred herein; and

29. For such other and further relief as the Court may deem equitable and appropriate.

As to the Sixth Cause of Action

30. That the Court declare, adjudge and decree that Defendants violated California Business & Professions Code §§ 17200, *et seq*. by failing to pay wages for all hours worked (including minimum wages), failing to provide meal periods, failing to maintain accurate records of meal periods, failing to authorize and permit rest periods, failing to maintain accurate records of all hours worked and meal periods, and failing to furnish accurate wage statements;

31. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment interest from the day such amounts were due and payable;

32. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code §§ 17200 *et seq*.;

33. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

34. For injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code §§ 17200, *et seq*.; and,

35. For such other and further relief as the Court may deem equitable and appropriate.

23

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

<u>As to the Seventh Cause of Action</u>

36. That the Court declare, adjudge and decree that Defendants violated the California Labor Code by failing to pay all wages owed, failure to provide meal periods, failing to maintain accurate records of meal periods, failing to authorize and permit rest periods, failing to pay final wages at termination, and failing to furnish accurate wage statements;

37. For all actual, consequential and incidental losses and damages, according to proof;

38. For all civil penalties pursuant to California Labor Code § 2699, *et seq.*, and all other applicable Labor Code provisions;

39. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code § 2699; and,

40. For such other and further relief as the Court may deem equitable and appropriate.

//

//

//

<u>As to all Causes of Action</u>

41. For any additional relief that the Court deems just and proper.

Dated: February 25, 2021                    Respectfully submitted,

                                            MOON & YANG, APC

                                      By:
                                            Kane Moon
                                            Allen Feghali
                                            Enzo Nabiev
                                            Attorneys for Plaintiff

<div align="center">24</div>
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all causes of action triable by jury.

Dated: February 25, 2021                    MOON & YANG, APC

                                        By: _____
                                            Kane Moon
                                            Allen Feghali
                                            Enzo Nabiev
                                            Attorneys for Plaintiff

---

25

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1                              **PROOF OF SERVICE**

2     STATE OF CALIFORNIA              )
                                       ) ss
3     COUNTY OF LOS ANGELES            )

4          I am employed in the county of Los Angeles, State of California. I am over the age of 18

5     and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880,

6     Los Angeles, California 90017. On February 25, 2021, I served the foregoing document described
      as:

7
                   **STIPULATION AND [PROPOSED] ORDER ALLOWING FILING OF SECOND**
8                                      **AMENDED COMPLAINT**

9          X   by placing ____ the original   X   a true copy thereof enclosed in sealed envelope(s)
      addressed as follows:
10
                                   Wiliam Faulkner
11                                 Michael Warren
                              **McMANIS FAULKNER, APC**
12                        50 West San Fernando Street, 10th Floor
                             San Jose, California 95113
13                            Tel.: (408)279-8700
                              Fax: (408)279-3244
14                       mwarren@memanislaw.com

15                       *Attorneys for Defendant Gillig, LLC*

16
      [X]   **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The
17          envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with
            the firm's practice of collection and processing correspondence for mailing. Under that
18          practice it would be deposited with U.S. postal service on that same day with postage
            thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am
19          aware that on motion of the party served, service is presumed invalid if postal
            cancellation date or postage meter date is more than one day after date of deposit for
20          mailing in affidavit.

21

22     X   (State)        I declare under penalty of perjury under the laws of the State of
                          California that the above is true and correct.
23

24     Executed on February 25, 2021 at Los Angeles, California.

25
       Ivette Hernandez
26     Type or Print Name                              Signature

27

28

                               ─────────────────────
                                  PROOF OF SERVICE

# EXHIBIT 28

ENDORSED
FILED
ALAMEDA COUNTY

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| William Faulkner (83385)/Michael Warren (223642)<br>McMANIS FAULKNER<br>50 W. San Fernando St., 10th Floor<br>San Jose, CA 95113 | 2021 MAR -2 AM 7 03<br><br>CLERK OF THE SUPERIOR COURT<br>BY Elaine Jefferson |

TELEPHONE NO.: (408) 279-8700    FAX NO.(Optional): (408) 279-3244
E-MAIL ADDRESS (Optional): mwarren@mcmanislaw.com
ATTORNEY FOR (Name): Defendant GILLIG, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
  STREET ADDRESS: 1221 Oak Street
  MAILING ADDRESS: 1221 Oak Street
  CITY AND ZIP CODE: Oakland, CA 94612
  BRANCH NAME: Administration Building

PLAINTIFF/PETITIONER:  RONALD TOLENTINO

DEFENDANT/RESPONDENT: GILLIG, LLC

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one):  [X] UNLIMITED CASE        [ ] LIMITED CASE<br>(Amount demanded          (Amount demanded is $25,000<br>exceeds $25,000)            or less) | RG20073930 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date: 3/16/2021          Time: 3:00 pm     Dept.: 23     Div.:          Room:
Address of court (if different from the address above):

[ ] Notice of Intent to Appear by Telephone, by (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1.  Party or parties (answer one):
    a. [X] This statement is submitted by party (name):   GILLIG, LLC
    b. [ ] This statement is submitted jointly by parties (names):

2.  Complaint and cross-complaint (to be answered by plaintiffs and cross-complainants only)
    a.    The complaint was filed on (date):
    b. [ ] The cross-complaint, if any, was filed on (date):

3.  Service (to be answered by plaintiffs and cross-complainants only)
    a. [ ] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
    b. [ ] The following parties named in the complaint or cross-complaint
        (1) [ ] have not been served (specify names and explain why not):

        (2) [ ] have been served but have not appeared and have not been dismissed (specify names):

        (3) [ ] have had a default entered against them (specify names):

    c. [ ] The following additional parties may be added (specify names, nature of involvement in case, and the date by which
            they may be served):

4.  Description of case
    a.    Type of case in    [X] complaint    [ ] cross-complaint      (Describe, including causes of action):
          Class action and representative action complaint for alleged failure to pay minimum/regular rate wage; provide meal
          periods and rest breaks, pay final wages at termination; provide accurate itemized wage
          statements.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. July 1, 2011]

CEB  Essential
ceb.com   Forms

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,<br>rules 3.720-3.730<br>www.courts.ca.gov

<div align="right">CM-110</div>

| PLAINTIFF/PETITIONER: RONALD TOLENTINO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GILLIG, LLC | RG20073930 |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Plaintiff alleges on an individual and class-wide basis failure to pay minimum wages, failure to provide meal and rest breaks, failure to pay final wages at termination, failure to provide accurate itemized wage statements, and derivative PAGA penalties.  Defendant denies Plaintiff's allegations.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☒ a jury trial. ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☒ days *(specify number):* 14-21 days
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:                    f.  Fax number:
e.  E-mail address:                       g.  Party represented:
☐ Additional representation is described in Attachment 8.

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1) For parties represented by counsel: Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).
(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under of Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CEB® | Essential
ceb.com | Forms™

CM-110

| PLAINTIFF/PETITIONER: RONALD TOLENTINO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GILLIG, LLC | RG20073930 |

10. c.   Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☒ | ☒ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CEB® | Essential<br>ceb.com | Forms®

CM-110

| PLAINTIFF/PETITIONER: RONALD TOLENTINO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GILLIG, LLC | RG20073930 |

**11. Insurance**

    a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

    b. Reservation of rights: ☐ Yes ☐ No

    c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**13. Related cases, consolidation, and coordination**

    a. ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

        ☐ Additional cases are described in Attachment 13a.

    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

Motion for Summary Adjudication

Motion to Decertify Class

**16. Discovery**

    a. ☐ The party or parties have completed all discovery.

    b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| Defendant | Written Discovery | TBD |
| Defendant | Depositions | TBD |
| Defendant | Expert Discovery | TBD |

    c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

**CASE MANAGEMENT STATEMENT**

CEB® | Essential
ceb.com | Forms™

CM-110

| PLAINTIFF/PETITIONER: RONALD TOLENTINO | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: GILLIG, LLC | RG20073930 |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: 3/1/2021

MICHAEL WARREN _____   ▶ _____

        (TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY)

_____   ▶ _____

        (TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY)

                                    ☐ Additional signatures are attached.

CEB · Essential
ceb.com | Forms

<div align="center">

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

</div>

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

On March 2, 2021, I served the foregoing document described as:

DEFENDANT'S CASE MANAGEMENT STATEMENT

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| Kane Moon, Esq.<br>Allen Feghali<br>MOON & YANG, APC<br>1055 W. Seventh St., #1880<br>Los Angeles, CA 90017<br>T: (213) 232-3128 / F: (213) 232-3125<br>E: kane.moon@moonyanglaw.com<br>    allen.feghali@moonyanglaw.com | Attorneys for Plaintiff<br>RONALD TOLENTINO |

☒   **(BY MAIL)**

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this businesses' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Jose, California.

☒   **(STATE)**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 2, 2021, at San Jose, California.

_____
Elise Dresser

<div align="center">

1

</div>

# EXHIBIT 29

CM-110

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Kane Moon (#249834); Allen Feghali (#301080); Enzo Nabiev (#332118)
Moon & Yang, APC
1055 West Seventh Street, Suite 1880, Los Angeles, CA 90017
TELEPHONE NO.: 213-232-3128          FAX NO. *(Optional):* 213-232-3125
E-MAIL ADDRESS *(Optional):* allen.feghali@moonyanglaw.com
ATTORNEY FOR *(Name):* Plaintiff Ronald Tolentino

**FILED BY FAX**
**ALAMEDA COUNTY**
**March 08, 2021**
**CLERK OF**
**THE SUPERIOR COURT**
By Xian-xii Bowie, Deputy
**CASE NUMBER:**
**RG20073930**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, 94612
BRANCH NAME: Rene C. Davidson Courthouse

PLAINTIFF/PETITIONER: Ronald Tolentino

DEFENDANT/RESPONDENT: Gillig, LLC

| **CASE MANAGEMENT STATEMENT** | | CASE NUMBER: |
|---|---|---|
| *(Check one):* [✓] **UNLIMITED CASE** (Amount demanded exceeds $25,000) | [ ] **LIMITED CASE** (Amount demanded is $25,000 or less) | RG20073930 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date: March 16, 2021          Time: 3:00 p.m.          Dept.: 23          Div.:          Room:
Address of court *(if different from the address above):*

[✓] **Notice of Intent to Appear by Telephone,** by *(name):* Allen Feghali

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [✓] This statement is submitted by party *(name):* Plaintiff Ronald Tolentino
   b. [ ] This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):* September 16, 2020
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [✓] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not):*
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*
      (3) [ ] have had a default entered against them *(specify names):*
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in [✓] complaint [ ] cross-complaint *(Describe, including causes of action):*
   Putative class action for Labor Code violations: (1) minimum wages; (2) overtime, (3) meal periods, (4) rest periods, (5) waiting time penalties; (6) wage statement violations; (7) unfair business practices; and (8) PAGA.

**CM-110**

| PLAINTIFF/PETITIONER: Ronald Tolentino | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Gillig, LLC | RG20073930 |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

Plaintiff was an employee of Defendant. Plaintiff alleges that Defendant violated the Labor Code by failing to pay all wages, including overtime, failing to have legally compliant policies and practices providing meal and rest periods, and failing to provide accurate wage statements. Plaintiff seeks class certification of her claims, as well as PAGA penalties.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☑ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☑ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☑ days *(specify number):* 10-20 days
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☑ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:          f. Fax number:
   e. E-mail address:          g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
    a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
       (1) For parties represented by counsel: Counsel ☑ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
       (2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
    b. **Referral to judicial arbitration or civil action mediation** *(if available).*
       (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
       (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
       (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: Ronald Tolentino | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Gillig, LLC | RG20073930 |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form **are willing** to participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☑ | ☑ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

CM-110

| PLAINTIFF/PETITIONER: Ronald Tolentino | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Gillig, LLC | RG20073930 |

**11. Insurance**
  a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
  b. Reservation of rights: ☐ Yes ☐ No
  c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**12. Jurisdiction**
  Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
  ☐ Bankruptcy ☐ Other *(specify)*:
  Status:

**13. Related cases, consolidation, and coordination**
  a. ☐ There are companion, underlying, or related cases.
    (1) Name of case:
    (2) Name of court:
    (3) Case number:
    (4) Status:
    ☐ Additional cases are described in Attachment 13a.
  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**14. Bifurcation**
  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**15. Other motions**
  ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**16. Discovery**
  a. ☐ The party or parties have completed all discovery.
  b. ☑ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| Plaintiff | Written discovery | August 2021 |
| Plaintiff | PMK deposition | October 2021 |

  c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Ronald Tolentino | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Gillig, LLC | RG20073930 |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☑ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: March 5, 2021

Allen Feghali
_____
(TYPE OR PRINT NAME)                                            ▸ _____
                                                                                        (SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)                                            ▸ _____
                                                                                        (SIGNATURE OF PARTY OR ATTORNEY)

                                                                                        ☐ Additional signatures are attached.

CM-110 [Rev. July 1, 2011]                    **CASE MANAGEMENT STATEMENT**                    Page 5 of 5

<div align="center">

**PROOF OF SERVICE**

</div>

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF LOS ANGELES        )

     I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017. On March 5, 2021, I served the foregoing document described as:

<div align="center">

**CASE MANAGEMENT STATEMENT**

</div>

    __X__ by placing ____ the original __X__ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

<div align="center">

William Faulkner
Michael Warren
**McMANIS FAULKNER, APC**
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Tel.: (408)279-8700
Fax: (408)279-3244
mwarren@mcmanislaw.com

*Attorneys for Defendant Gillig, LLC*

</div>

[X] **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__  (State)          I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 5, 2021 at Los Angeles, California.

Ivette Hernandez
Type or Print Name                                        Signature

<div align="center">

1
PROOF OF SERVICE

</div>

EXHIBIT 30

Moon & Yang APC
Attn: Moon, Kane
1055 W 7th St.
#1880
Los Angeles, CA   90017____

McManis Faulkner
Attn: Warren, Michael
50 W. San Fernando St.
10th Floor
San Jose, CA   95113

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

---

| | |
|---|---|
| Tolentino<br><br>                  Plaintiff/Petitioner(s)<br><br>      VS.<br><br><br>Gillig, LLC<br>                Defendant/Respondent(s)<br>   (Abbreviated Title) | No. <u>RG20073930</u><br><br>Order<br><br>Complaint - Other Employment |

The Complex Determination Hearing was set for hearing on 03/09/2021 at 03:00 PM in Department 23 before the Honorable Brad Seligman. The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA  94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

---

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Dated:  03/09/2021

facsimile

_____
Judge Brad Seligman

EXHIBIT 31

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Enzo Nabiev (SBN 332118)
   **MOON & YANG, APC**
3  1055 W. Seventh St., Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  E-mail: kane.moon@moonyanglaw.com
   E-mail: allen.feghali@moonyanglaw.com
6  E-mail: enzo.nabiev@moonyanglaw.com

7  Attorneys for Plaintiff Ronald Tolentino

ENDORSED
FILED
ALAMEDA COUNTY

MAR 0 9 2021

CLERK OF THE SUPERIOR COURT
By ___JHALISA CASTANEDA___
Deputy

8              SUPERIOR COURT OF CALIFORNIA,

9                  COUNTY OF ALAMEDA

10

11  RONALD TOLENTINO, individually, and on       No. RG20073930
    behalf of all others similarly situated,
12                                               [Hon. Brad Seligman, Dept. 23]
13          Plaintiff,
                                                 **STIPULATION AND [~~PROPOSED~~]
14  v.                                           ORDER ALLOWING FILING OF
                                                 SECOND AMENDED COMPLAINT**
15  GILLIG, LLC, a limited liability company;
    and DOES 1 through 10, inclusive,
16
17          Defendant.
18                                               Trial Date:  Not yet set
19

20

21          Plaintiff Ronald Tolentino ("Plaintiff") and Defendant Gillig, LLC, ("Defendant"),

22  through their respective counsel of record, hereby stipulate as follows:

23                          **STIPULATION**

24          1.      Plaintiff and Defendant hereby stipulate that Plaintiff shall be granted leave to file

25  his Second Amended Complaint, attached hereto as Attachment 1, in the case entitled *Ronald*

26  *Tolentino, et al. v. Gillig, LLC*, Case No. RG20073930.

27

28



---
1

STIPULATION AND [~~PROPOSED~~] ORDER ALLOWING FILING OF SECOND AMENDED COMPLAINT;
CASE NO. RG20073930

1     2.     This stipulation is not intended to and shall not operate as a waiver by any party

2  of any objections, defenses, or right to challenge any pleadings that may be filed as a result of

3  this stipulation.  All parties reserve their rights to challenge the pleadings filed by any other party

4  in any authorized manner, including without limitation challenges by way of motion, demurrer,

5  answer, or other pleading.

6

7  DATED:  February 25, 2021               MOON & YANG, APC

8

9

10

11                                    KANE MOON
                                    ALLEN FEGHALI

12                                    ENZO NABIEV

13                                    Attorneys for Plaintiff
                                    RONALD TOLENTINO

14

15  DATED:  February 25, 2021               McMANIS FAULKNER

16

17                                      WILLIAM FAULKNER
                                    MICHAEL WARREN

18

19                                    Attorneys for Defendant
                                    GILLIG, LLC

20

21                            ORDER

22  IT IS SO ORDERED.

23

24  DATED:  March 9, 2021

25                                    THE HONORABLE BRAD SELIGMAN
                                    JUDGE OF THE SUPERIOR COURT

26

27

28

STIPULATION AND [PROPOSED] ORDER ALLOWING FILING OF SECOND AMENDED COMPLAINT;
CASE NO. RG20073930

EXHIBIT A

Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Enzo Nabiev (SBN 332118)
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
E-mail: kane.moon@moonyanglaw.com
E-mail: allen.feghali@moonyanglaw.com
E-mail: enzo.nabiev@moonyanglaw.com

Attorneys for Plaintiff Ronald Tolentino

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALEMEDA**

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>        Defendants | Case No.: RG20073930<br><br>[Hon. Brad Seligman, Dept. 23]<br><br>**SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT:**<br><br>1. Failure to Pay Minimum and Regular Rate Wages [Cal. Lab. Code §§ 1194, 1194.2, and 1197];<br>2. Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512];<br>3. Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code §§ 226.7];<br>4. Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203];<br>5. Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226];<br>6. Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.]; and<br>7. Civil Penalties Under PAGA [Cal. Lab. Code § 2699, et seq.].<br><br>**DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

INTRODUCTION & PRELIMINARY STATEMENT ............................................................... 1

THE PARTIES ....................................................................................................................... 3

      A.   Plaintiff........................................................................................................................ 3

      B.   Defendants.................................................................................................................. 3

CLASS ACTION ALLEGATIONS...................................................................................... 7

FIRST CAUSE OF ACTION............................................................................................. 11

SECOND CAUSE OF ACTION..............................................**Error! Bookmark not defined.**

THIRD CAUSE OF ACTION ........................................................................................... 12

FOURTH CAUSE OF ACTION....................................................................................... 13

FIFTH CAUSE OF ACTION ........................................................................................... 14

SIXTH CAUSE OF ACTION........................................................................................... 15

SEVENTH CAUSE OF ACTION .................................................................................... 16

PRAYER FOR RELIEF.................................................................................................... 21

DEMAND FOR JURY TRIAL......................................................................................... 25

1        Plaintiff Roland Tolentino ("Plaintiff"), based upon facts that either have evidentiary

2   support or are likely to have evidentiary support after a reasonable opportunity for further

3   investigation and discovery, alleges as follows:

4                  **INTRODUCTION & PRELIMINARY STATEMENT**

5        1.    Plaintiff brings this action against Defendants Gillig, LLC, and Does 1 through 10

6   (collectively referred to as "Defendants") for California Labor Code violations and unfair

7   business practices stemming from Defendants' failure to pay minimum and regular rate wages,

8   failure to provide meal periods, failure to authorize and permit rest periods, failure to maintain

9   accurate records of hours worked and meal periods, failure to timely pay all wages to terminated

10   employees, and failure to furnish accurate wage statements.

11        2.    Plaintiff brings the First through Seventh Causes of Action individually and as a

12   class action on behalf of herself and certain current and former employees of Defendants

13   (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully

14   below).The Class consists of Plaintiff and all other persons who have been employed by any

15   Defendant in California and classified as a non-exempt employee during the statute of limitations

16   period applicable to the claims pleaded here.

17        3.    Plaintiff brings the Eighth Cause of Action as a representative action under the

18   California Private Attorney General Act ("PAGA") to recover civil penalties that are owed to

19   Plaintiff, the State of California, and past and present non-exempt, hourly-paid employees of

20   Defendants who worked in California during the applicable statute of limitations period

21   (hereinafter referred to as the "Aggrieved Employees").

22        4.    Defendants own/owned and operate/operated an industry, business, and

23   establishment within the State of California, including Alameda County. As such, and based

24   upon all the facts and circumstances incident to Defendants' business in California, Defendants

25   are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare

26   Commission ("IWC"), and the California Business & Professions Code.

27        5.    Despite these requirements, throughout the statutory period Defendants

28   maintained a systematic, company-wide policy and practice of:

(a)    Failing to pay employees for all hours worked, including all minimum wages, in compliance with the California Labor Code and IWC Wage Orders;

(b)    Failing to maintain accurate records of the hours employees worked;

(c)    Failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal period violation occurred;

(d)    Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failing to pay an additional hour's pay for each workday a rest period violation occurred;

(e)    Willfully failing to pay employees all minimum wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates; and

(f)    Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

6.    On information and belief, Defendants, and each of them were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

7.    At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff, the Class, and the Aggrieved Employees. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior".

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

<div align="center"><u>THE PARTIES</u></div>

A.    <u>Plaintiff</u>

8.    Plaintiff is a California resident who worked for Defendants in Alameda County, California as a maintenance worker from approximately May 2002 to June 2020.

9.    Plaintiff reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

B.    <u>Defendants</u>

10.    Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant Gillig, LLC is:

    (a)    A California limited partnership with its principal place of business in Alameda, California.

    (b)    A business entity conducting business in numerous counties throughout the State of California, including in Alameda County; and

    (c)    The former employer of Plaintiff, and the current and/or former employer of the putative Class. Gillig, LLC suffered and permitted Plaintiff, the Class, and the Aggrieved Employees to work, and/or controlled their wages, hours, or working conditions.

11.    Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff, the Class, and the Aggrieved Employees as alleged herein.  Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with appropriate charging allegations, as may be necessary.

12.    At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured a significant number of the Plaintiff, the Class, and the Aggrieved Employees in the State of California.

<div align="center">3<br>SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT</div>

13.     Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the other employees described in the class definitions below, and exercised control over their wages, hours, and working conditions.  Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.  Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.     Plaintiff Roland Tolentino worked for Defendants in Alameda County, California as a maintenance worker.

15.     Throughout the statutory period, Defendants failed to pay Plaintiff for all hours worked (including minimum wages), failed to provide Plaintiff with uninterrupted meal periods, failed to authorize and permit Plaintiff to take uninterrupted rest periods, failed to maintain accurate records of the hours Plaintiff worked, failed to timely pay all final wages to Plaintiff when Defendants terminated Plaintiff's employment, and failed to furnish accurate wage statements to Plaintiff.  As discussed below, Plaintiff's experience working for Defendants was typical and illustrative.

16.     Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff, the Class, and the Aggrieved Employees for all hours worked. Defendants regularly use a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff, the Class, and the Aggrieved Employees properly for all the time they have actually worked, even though the realities of Defendants' operations are such that it is

1    possible, practical, and feasible to count and pay for work time to the minute. As a result,

2    Defendants frequently paid Plaintiff, the Class, and the Aggrieved Employees less than all their

3    work time. As a further result, Defendants failed to maintain accurate records of the hours

4    Plaintiff, the Class, and the Aggrieved Employees worked.

5          17.     Throughout the statutory period, Defendants have wrongfully failed to provide

6    Plaintiff, the Class, and the Aggrieved Employees with legally compliant meal periods.

7    Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved Employees

8    to work in excess of five consecutive hours a day without providing a 30-minute, continuous and

9    uninterrupted, duty-free meal period for every five hours of work, or without compensating

10   Plaintiff, the Class, and the Aggrieved Employees for meal periods that were not provided by the

11   end of the fifth hour of work or tenth hour of work. Defendants did not adequately inform

12   Plaintiff, the Class, and the Aggrieved Employees of their right to take a meal period by the end

13   of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of

14   work. Defendants also did not have adequate policies or practices to document and verify

15   whether Plaintiff, the Class, and the Aggrieved Employees were taking their required meal

16   periods. Accordingly, Defendants' policy and practice was to not provide meal periods to

17   Plaintiff, the Class, and the Aggrieved Employees in compliance with California law.

18         18.     Throughout the statutory period, Defendants have wrongfully failed to authorize

19   and permit Plaintiff, the Class, and the Aggrieved Employees to take timely and duty-free rest

20   periods. Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved

21   Employees to work in excess of four consecutive hours a day without Defendants authorizing and

22   permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four

23   hours of work (or major fraction of four hours), or without compensating Plaintiff, the Class, and

24   the Aggrieved Employees for rest periods that were not authorized or permitted. Accordingly,

25   Defendants' policy and practice was to not authorize and permit Plaintiff, the Class, and the

26   Aggrieved Employees to take rest periods in compliance with California law.

27

28

19.     Throughout the statutory period, Defendants willfully failed and refused to timely pay Plaintiff, the Class, and the Aggrieved Employees at the conclusion of their employment all wages, meal period premium wages, and rest period premium wages.

20.     Throughout the statutory period, Defendants failed to furnish Plaintiff, the Class, and the Aggrieved Employees with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California law). As a result of these violations of California Labor Code § 226(a), Plaintiff, the Class, and the Aggrieved Employees suffered injury because, among other things:

(a)     the violations led them to believe that they were not entitled to be paid minimum wages, meal period premium wages, and rest period premium wages to which they were entitled, even though they were entitled;

(b)     the violations led them to believe that they had been paid the minimum, meal period premium, and rest period premium wages to which they were entitled, even though they had not been;

(c)     the violations led them to believe they were not entitled to be paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they were;

(d)     the violations led them to believe they had been paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they had not been;

(e)     the violations hindered them from determining the amounts of minimum, meal period premium, and rest period premium owed to them;

(f)     in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

owed to them, computations they would not have to make if the wage

statements contained the required accurate information;

(g)    by understating the wages truly due them, the violations caused them to

lose entitlement and/or accrual of the full amount of Social Security,

disability, unemployment, and other governmental benefits;

(h)    the wage statements inaccurately understated the wages, hours, and wage

rates to which Plaintiff, the Class, and the Aggrieved Employees were

entitled, and Plaintiff, the Class, and the Aggrieved Employees were paid

less than the wages and wage rates to which they were entitled.

Thus, Plaintiff, the Class, and the Aggrieved Employees are owed the amounts provided for in

California Labor Code § 226(e).

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings certain claims individually, as well as on behalf of each and all

other persons similarly situated, and thus, seeks class certification under California Code of Civil

Procedure § 382.

22.    All claims alleged herein arise under California law for which Plaintiff seeks relief

authorized by California law.

23.    The proposed Class consists of and is defined as:

All persons who worked for any Defendants in California as an hourly-paid,
non-exempt employee at any time during the period beginning four years before
the filing of the initial complaint in this action and ending when notice to the
Class is sent.

24.    At all material times, Plaintiff was a member of the Class.

25.    Plaintiff undertakes this concerted activity to improve the wages and working

conditions of all Class Members.

26.    There is a well-defined community of interest in the litigation and the Class is

readily ascertainable:

(a)    <u>Numerosity</u>:  The members of the Class (and each subclass, if any) are so

numerous that joinder of all members would be unfeasible and impractical.

1    The membership of the entire Class is unknown to Plaintiff at this time,

2    however, the Class is estimated to be greater than 100 individuals and the

3    identity of such membership is readily ascertainable by inspection of

4    Defendants' records.

5    (b)    Typicality:  Plaintiff is qualified to, and will, fairly and adequately protect

6         the interests of each Class Member with whom there is a shared, well-

7         defined community of interest, and Plaintiff's claims (or defenses, if any)

8         are typical of all Class Members' claims as demonstrated herein.

9    (c)    Adequacy:  Plaintiff is qualified to, and will, fairly and adequately protect

10        the interests of each Class Member with whom there is a shared, well-

11        defined community of interest and typicality of claims, as demonstrated

12        herein.  Plaintiff has no conflicts with or interests antagonistic to any Class

13        Member.  Plaintiff's attorneys, the proposed class counsel, are versed in

14        the rules governing class action discovery, certification, and settlement.

15        Plaintiff has incurred, and throughout the duration of this action, will

16        continue to incur costs and attorneys' fees that have been, are, and will be

17        necessarily expended for the prosecution of this action for the substantial

18        benefit of each class member.

19    (d)    Superiority:  A Class Action is superior to other available methods for the

20        fair and efficient adjudication of the controversy, including consideration

21        of:

22        1)    The interests of the members of the Class in individually

23             controlling the prosecution or defense of separate actions;

24        2)    The extent and nature of any litigation concerning the controversy

25             already commenced by or against members of the Class;

26        3)    The desirability or undesirability of concentrating the litigation of

27             the claims in the particular forum; and

28        4)    The difficulties likely to be encountered in the management of a

8

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1        class action.

2    (e)    Public Policy Considerations:  The public policy of the State of California

3           is to resolve the California Labor Code claims of many employees through

4           a class action.  Indeed, current employees are often afraid to assert their

5           rights out of fear of direct or indirect retaliation.  Former employees are

6           also fearful of bringing actions because they believe their former

7           employers might damage their future endeavors through negative

8           references and/or other means.  Class actions provide the class members

9           who are not named in the complaint with a type of anonymity that allows

10          for the vindication of their rights at the same time as their privacy is

11          protected.

12    27.    There are common questions of law and fact as to the Class (and each subclass, if

13   any) that predominate over questions affecting only individual members, including without

14   limitation, whether, as alleged herein, Defendants have:

15    (a)    Failed to pay Class Members for all hours worked, including minimum

16           wages;

17    (b)    Failed to provide meal periods and pay meal period premium wages to

18           Class Members;

19    (c)    Failed to authorize and permit rest periods and pay rest period premium

20           wages to Class Members;

21    (d)    Failed to promptly pay all wages due to Class Members upon their

22           discharge or resignation;

23    (e)    Failed to provide Class Members with accurate wages statements;

24    (f)    Failed to maintain accurate records of all hours Class Members worked,

25           and all meal periods Class Members took or missed; and

26    (g)    Violated California Business & Professions Code §§ 17200 *et. seq.* as a

27           result of their illegal conduct as described above.

28    28.    This Court should permit this action to be maintained as a class action pursuant to

9

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1    California Code of Civil Procedure § 382 because:

2         (a)    The questions of law and fact common to the Class predominate over any

3                question affecting only individual members;

4         (b)    A class action is superior to any other available method for the fair and

5                efficient adjudication of the claims of the members of the Class;

6         (c)    The members of the Class are so numerous that it is impractical to bring all

7                members of the class before the Court;

8         (d)    Plaintiff, and the other members of the Class, will not be able to obtain

9                effective and economic legal redress unless the action is maintained as a

10               class action;

11        (e)    There is a community of interest in obtaining appropriate legal and

12               equitable relief for the statutory violations, and in obtaining adequate

13               compensation for the damages and injuries for which Defendants are

14               responsible in an amount sufficient to adequately compensate the members

15               of the Class for the injuries sustained;

16        (f)    Without class certification, the prosecution of separate actions by

17               individual members of the class would create a risk of:

18               1)    Inconsistent or varying adjudications with respect to individual

19                     members of the Class which would establish incompatible standards

20                     of conduct for Defendants; and/or

21               2)    Adjudications with respect to the individual members which would,

22                     as a practical matter, be dispositive of the interests of other

23                     members not parties to the adjudications, or would substantially

24                     impair or impede their ability to protect their interests, including but

25                     not limited to the potential for exhausting the funds available from

26                     those parties who are, or may be, responsible Defendants; and,

27        (g)    Defendants have acted or refused to act on grounds generally applicable to

28               the Class, thereby making final injunctive relief appropriate with respect to

                                                10

1          the class as a whole.

2          29.    Plaintiff contemplates the eventual issuance of notice to the proposed members of

3   the Class that would set forth the subject and nature of the instant action. The Defendants' own

4   business records may be utilized for assistance in the preparation and issuance of the

5   contemplated notices. To the extent that any further notices may be required, Plaintiff would

6   contemplate the use of additional techniques and forms commonly used in class actions, such as

7   published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by

8   other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

9                          **FIRST CAUSE OF ACTION**

10      **(Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked)**

11         30.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

12   paragraphs 1 through 20 in this Complaint.

13         31.    "Hours worked" is the time during which an employee is subject to the control of

14   an employer, and includes all the time the employee is suffered or permitted to work, whether or

15   not required to do so.

16         32.    At all relevant times herein mentioned, Defendants knowingly failed to pay to

17   Plaintiff and the Class compensation for all hours they worked. By their failure to pay

18   compensation for each hour worked as alleged above, Defendants willfully violated the

19   provisions of Section 1194 of the California Labor Code, and any additional applicable Wage

20   Orders, which require such compensation to non-exempt employees.

21         33.    Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all

22   non-overtime hours worked for Defendants.

23         34.    By and through the conduct described above, Plaintiff and the Class have been

24   deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

25         35.    By virtue of the Defendants' unlawful failure to pay additional compensation to

26   Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class

27   suffered, and will continue to suffer, damages in amounts which are presently unknown to

28

                          11

1    Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which

2    will be ascertained according to proof at trial.

3        36.    By failing to keep adequate time records required by California Labor Code §

4    1174(d), Defendants have made it difficult to calculate the full extent of minimum wage

5    compensation due Plaintiff and the Class.

6        37.    Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are

7    entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum

8    wages.

9        38.    Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum

10    wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§

11    218.5, 218.6, and 1194(a).

12        39.

13                          **SECOND CAUSE OF ACTION**

14        **(Against All Defendants for Failure to Provide Meal Periods)**

15        40.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

16    paragraphs 1 through 20 in this Complaint.

17        41.    Under California law, Defendants have an affirmative obligation to relieve the

18    Plaintiff and the Class of all duty in order to take their first daily meal periods no later than the

19    start of Plaintiff and the Class' sixth hour of work in a workday, and to take their second meal

20    periods no later than the start of the eleventh hour of work in the workday. Section 512 of the

21    California Labor Code, and Section 11 of the applicable Wage Orders require that an employer

22    provide unpaid meal periods of at least 30 minutes for each five-hour period worked.  It is a

23    violation of Section 226.7 of the California Labor Code for an employer to require any employee

24    to work during any meal period mandated under any Wage Order.

25        42.    Despite these legal requirements, Defendants regularly failed to provide Plaintiff

26    and the Class with both meal periods as required by California law.  By their failure to permit

27    and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact

28    that Defendants made it impossible or impracticable to take these uninterrupted meal periods),

1    Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and

2    the applicable Wage Orders.

3        43.    Under California law, Plaintiff and the Class are entitled to be paid one hour of

4    additional wages for each workday he or she was not provided with all required meal period(s),

5    plus interest thereon.

6                            **THIRD CAUSE OF ACTION**

7        **(Against All Defendants for Failure to Authorize and Permit Rest Periods)**

8        44.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

9    paragraphs 1 through 20 in this Complaint.

10       45.    Defendants are required by California law to authorize and permit breaks of 10

11   uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than

12   two hours). Section 512 of the California Labor Code, the applicable Wage Orders require that

13   the employer permit and authorize all employees to take paid rest periods of 10 minutes each for

14   each 4-hour period worked. Thus, for example, if an employee's work time is 6 hours and ten

15   minutes, the employee is entitled to two rest breaks. Each failure to authorize rest breaks as so

16   required is itself a violation of California's rest break laws. It is a violation of Section 226.7 of

17   the California Labor Code for an employer to require any employee to work during any rest

18   period mandated under any Wage Order.

19       46.    Despite these legal requirements, Defendants failed to authorize Plaintiff and the

20   Class to take rest breaks, regardless of whether employees worked more than 4 hours in a

21   workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as

22   alleged above (or due to the fact that Defendants made it impossible or impracticable to take

23   these uninterrupted rest periods), Defendants willfully violated the provisions of Section 226.7 of

24   the California Labor Code and the applicable Wage Orders.

25       47.    Under California law, Plaintiff and the Class are entitled to be paid one hour of

26   premium wages rate for each workday he or she was not provided with all required rest break(s),

27   plus interest thereon.

28

<div align="center">

**FOURTH CAUSE OF ACTION**

**(Against all Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time Penalties)**

</div>

48.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

49.     At all times herein set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

50.     Within the applicable statute of limitations, the employment of Plaintiff and many other members of the Class ended, i.e. was terminated by quitting or discharge, and the employment of others will be.  However, during the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

51.     Defendants' failure to pay Plaintiff and those Class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code §§ 201 and 202.

52.     California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

53.     Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203.

<div align="center">

14

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

</div>

1    54.    Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the

2    Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs

3    incurred in this action.

### FIFTH CAUSE OF ACTION

4

5    (Against all Defendants for Failure to Provide and Maintain Accurate and

6                      Compliant Wage Records)

7    55.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

8    paragraphs 1 through 20 in this Complaint.

9    56.    At all material times set forth herein, California Labor Code § 226(a) provides that

10   every employer shall furnish each of his or her employees an accurate itemized wage statement

11   in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours

12   worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate

13   if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made

14   on written orders of the employee may be aggregated and shown as one item, (5) net wages

15   earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the

16   employee and the last four digits of his or her social security number or an employee

17   identification number other than a social security number, (8) the name and address of the legal

18   entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and

19   the corresponding number of hours worked at each hourly rate by the employee.

20   57.    Defendants have intentionally and willfully failed to provide employees with

21   complete and accurate wage statements.  The deficiencies include, among other things, the

22   failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list

23   the true "total hours worked by the employee," and the failure to list the true net wages earned.

24   58.    As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff

25   and the Class have suffered injury and damage to their statutorily-protected rights.

26   59.    Specifically, Plaintiff and the members of the Class have been injured by

27   Defendants' intentional violation of California Labor Code § 226(a) because they were denied

28

1    both their legal right to receive, and their protected interest in receiving, accurate, itemized wage

2    statements under California Labor Code § 226(a).

3        60.    Calculation of the true wage entitlement for Plaintiff and the Class is difficult and

4    time consuming.  As a result of this unlawful burden, Plaintiff and the Class were also injured as

5    a result of having to bring this action to attempt to obtain correct wage information following

6    Defendants' refusal to comply with many of the mandates of California's Labor Code and related

7    laws and regulations.

8        61.    Plaintiff and the Class are entitled to recover from Defendants the greater of their

9    actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or

10    an aggregate penalty not exceeding four thousand dollars per employee.

11        62.    Plaintiff and the Class are also entitled to injunctive relief, as well as an award of

12    attorney's fees and costs to ensure compliance with this section, pursuant to California Labor

13    Code § 226(h).

14                        **SIXTH CAUSE OF ACTION**

15    **(Against all Defendants for Violation of California Business & Professions Code §§ 17200,**

16                                **et seq.)**

17        63.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

18    paragraphs 1 through 20 in this Complaint.

19        64.    Defendants, and each of them, are "persons" as defined under California Business

20    & Professions Code § 17201.

21        65.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

22    unlawful, and harmful to Plaintiff, other Class members, and to the general public.  Plaintiff seek

23    to enforce important rights affecting the public interest within the meaning of Code of Civil

24    Procedure § 1021.5.

25        66.    Defendants' activities, as alleged herein, are violations of California law, and

26    constitute unlawful business acts and practices in violation of California Business & Professions

27    Code §§ 17200, *et seq.*

28

67.    A violation of California Business & Professions Code §§ 17200, *et seq.* may be predicated on the violation of any state or federal law.  All of the acts described herein as violations of, among other things, the California Labor Code, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business &Professions Code §§ 17200, *et seq.*

### Failure to Pay Minimum Wages

68.    Defendants' failure to pay minimum wages, and other benefits in violation of the California Labor Code constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Maintain Accurate Records of All Hours Worked

69.    Defendants' failure to maintain accurate records of all hours worked in accordance with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Provide Meal Periods

70.    Defendants' failure to provide meal periods in accordance with California Labor Code §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Maintain Accurate Records of Meal Periods

71.    Defendants' failure to maintain accurate records of employee meal periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Authorize and Permit Rest Periods

72.    Defendants' failure to authorize and permit rest periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq.*

### Failure to Provide Accurate Itemized Wage Statements

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

73.     Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

74.     By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

75.     Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

76.     Plaintiff, individually, and on behalf of members of the putative Class, are entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices.  Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

77.     Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

78.     Plaintiff, individually, and on behalf of members of the putative class, have no plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business practices.  As a result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff, individually, and on behalf of members of the putative Class, suffered and will continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1    79.    Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth

2    herein above, they will continue to avoid paying the appropriate taxes, insurance and other

3    withholdings.

4    80.    Pursuant to California Business & Professions Code §§ 17200, *et seq.*, Plaintiff

5    and putative Class Members are entitled to restitution of the wages withheld and retained by

6    Defendants during a period that commences four years prior to the filing of this complaint; a

7    permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and

8    Class Members; an award of attorneys' fees pursuant to California Code of Civil Procedure §

9    1021.5 and other applicable laws; and an award of costs.

10    <u>SEVENTH CAUSE OF ACTION</u>

11    **(Against all Defendants for Civil Penalties Under the Private Attorneys General Act of**

12    **2004, Cal. Lab. Code § 2698 et seq.)**

13    81.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

14    paragraphs 1 through 20 in this Complaint.

15    82.    At all times herein mentioned, Defendants were subject to the Labor Code of the

16    State of California and the applicable Industrial Welfare Commission Orders.

17    83.    California Labor Code § 2699(a) specifically provides for a private right of action

18    to recover penalties for violations of the Labor Code: "Notwithstanding any other provision of

19    law, any provision of this code that provides for a civil penalty to be assessed and collected by

20    the Labor and Workforce Development Agency or any of its departments, divisions,

21    commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative,

22    be recovered through a civil action brought by an aggrieved employee on behalf of himself or

23    herself and other current or former employees pursuant to the procedures specified in Section

24    2699.3."

25    84.    Plaintiff has exhausted his administrative remedies pursuant to California Labor

26    Code § 2699.3. On September 15, 2020, he gave written notice by online filing to the Labor and

27    Workforce Development Agency and by certified mail to Defendants of the specific provisions

28    of the Labor Code that Defendants have violated against Plaintiff and certain current and former

1  aggrieved employees, including the facts and theories to support the violations. Plaintiff also

2  paid the filing fee. Plaintiff's PAGA case number is LWDA-CM-806429-20.

3      85.    More than 65 days has elapsed since Plaintiff provided notice, but the Labor and

4  Workforce Development Agency has not indicated that it intends to investigate Defendants'

5  Labor Code violations discussed in the notice. Accordingly, Plaintiff may commence a civil

6  action to recover penalties under Labor Code § 2699 pursuant to § 2699.3 for the violations of

7  the Labor Code described in this Complaint. These penalties include, but are not limited to,

8  penalties under California Labor Code §§ 210, 226.3, 558, and 2699(f)(2).

9      86.    In addition, Plaintiff seeks penalties for Defendants' violation of California Labor

10  Code § 1174(d). Pursuant to California Labor Code § 1174.5, any person, including any entity,

11  employing labor who willfully fails to maintain accurate and complete records required by

12  California Labor Code § 1174 is subject to a penalty under § 1174.5. Pursuant to the applicable

13  IWC Order § 7(A)(3), every employer shall keep time records showing when the employee

14  begins and ends each work period. Meal periods, and total hours worked daily shall also be

15  recorded. Additionally, pursuant to the applicable IWC Order § 7(A)(5), every employer shall

16  keep total hours worked in the payroll period and applicable rates of pay.

17      87.    During the time period of employment for Plaintiff and the Aggrieved Employees,

18  Defendants failed to maintain records pursuant to the Labor Code and IWC Orders by failing to

19  maintain accurate records showing meal periods. Defendants' failure to provide and maintain

20  records required by the Labor Code IWC Wage Orders deprived Plaintiff and the Aggrieved

21  Employees the ability to know, understand and question the accuracy and frequency of meal

22  periods. Therefore, Plaintiff and the Aggrieved Employees had no way to dispute the resulting

23  failure to pay wages, all of which resulted in an unjustified economic enrichment to Defendants.

24  As a direct result, Plaintiff and the Aggrieved Employees have suffered and continue to suffer,

25  substantial losses related to the use and enjoyment of such wages, lost interest on such wages and

26  expenses and attorney's fees in seeking to compel Defendants to fully perform its obligation

27  under state law, all to their respective damage in amounts according to proof at trial. Because of

28  Defendants' knowing failure to comply with the Labor Code and applicable IWC Wage Orders,

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1    Plaintiff and the Aggrieved Employees have also suffered an injury in that they were prevented

2    from knowing, understanding, and disputing the wage payments paid to them.

3        88.    Based on the conduct described in this Complaint, Plaintiff is entitled to an award

4    of civil penalties on behalf of himself, the State of California, and similarly Aggrieved

5    Employees of Defendants.  The exact amount of the applicable penalties, in all, is in an amount

6    to be shown according to proof at trial.  These penalties are in addition to all other remedies

7    permitted by law.

8        89.    In addition, Plaintiff seeks an award of reasonable attorney's fees and costs

9    pursuant to California Labor Code § 2699(g)(1), which states, "Any employee who prevails in

10   any action shall be entitled to an award of reasonable attorney's fees and costs."

11                              **PRAYER FOR RELIEF**

12       Plaintiff, individually, and on behalf of all others similarly situated only with respect to

13   the class claims, pray for relief and judgment against Defendants, jointly and severally, as

14   follows:

15                              Class Certification

16       1.    That this action be certified as a class action with respect to the First, Second,

17   Third, Fourth, Fifth, Sixth, and Eighth Causes of Action;

18       2.  That Plaintiff be appointed as the representative of the Class; and

19       3.  That counsel for Plaintiff be appointed as Class Counsel.

20

21                          As to the First Cause of Action

22       4.  That the Court declare, adjudge and decree that Defendants violated California Labor

23   Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum

24   wages due;

25       5.  For general unpaid wages as may be appropriate;

26       6.  For pre-judgment interest on any unpaid compensation commencing from the date

27   such amounts were due;

28       7.  For liquidated damages;

1        8.  For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

2  California Labor Code § 1194(a); and,

3        9.  For such other and further relief as the Court may deem equitable and appropriate.

4                As to the Second Cause of Action

5        10. That the Court declare, adjudge and decree that Defendants violated California Labor

6  Code §§ 226.7 and 512, and the IWC Wage Orders;

7        11. For unpaid meal period premium wages as may be appropriate;

8        12. For pre-judgment interest on any unpaid compensation commencing from the date

9  such amounts were due;

10       13. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

11  for costs of suit incurred herein; and

12       14. For such other and further relief as the Court may deem equitable and appropriate.

13                As to the Third Cause of Action

14       15. That the Court declare, adjudge and decree that Defendants violated California Labor

15  Code §§ 226.7 and 512, and the IWC Wage Orders;

16       16. For unpaid rest period premium wages as may be appropriate;

17       17. For pre-judgment interest on any unpaid compensation commencing from the date

18  such amounts were due;

19       18. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

20  for costs of suit incurred herein; and

21       19. For such other and further relief as the Court may deem equitable and appropriate.

22                As to the Fourth Cause of Action

23       20. That the Court declare, adjudge and decree that Defendants violated California Labor

24  Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of

25  termination of the employment;

26       21. For statutory wage penalties pursuant to California Labor Code § 203 for former

27  employees who have left Defendants' employ;

28       22. For pre-judgment interest on any unpaid wages from the date such amounts were due;

23. For reasonable attorneys' fees and for costs of suit incurred herein; and

24. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Fifth Cause of Action</u>

25. That the Court declare, adjudge and decree that Defendants violated the record keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and willfully failed to provide accurate itemized wage statements thereto;

26. For statutory penalties and actual damages pursuant to California Labor Code § 226(e);

27. For injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h);

28. For reasonable attorneys' fees and for costs of suit incurred herein; and

29. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Sixth Cause of Action</u>

30. That the Court declare, adjudge and decree that Defendants violated California Business & Professions Code §§ 17200, *et seq.* by failing to pay wages for all hours worked (including minimum wages), failing to provide meal periods, failing to maintain accurate records of meal periods, failing to authorize and permit rest periods, failing to maintain accurate records of all hours worked and meal periods, and failing to furnish accurate wage statements;

31. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment interest from the day such amounts were due and payable;

32. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code §§ 17200 *et seq.*;

33. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

34. For injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code §§ 17200, *et seq.*; and,

35. For such other and further relief as the Court may deem equitable and appropriate.

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1

<u>As to the Seventh Cause of Action</u>

2    36. That the Court declare, adjudge and decree that Defendants violated the California

3    Labor Code by failing to pay all wages owed, failure to provide meal periods, failing to maintain

4    accurate records of meal periods, failing to authorize and permit rest periods, failing to pay final

5    wages at termination, and failing to furnish accurate wage statements;

6        37. For all actual, consequential and incidental losses and damages, according to proof;

7        38. For all civil penalties pursuant to California Labor Code § 2699, *et seq.*, and all other

8    applicable Labor Code provisions;

9        39. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California

10   Labor Code § 2699; and,

11       40. For such other and further relief as the Court may deem equitable and appropriate.

12   //

13   //

14   //

15

16

17

18

19

<u>As to all Causes of Action</u>

20   ، 41. For any additional relief that the Court deems just and proper.

21

22   Dated: February 25, 2021              Respectfully submitted,

23                                         MOON & YANG, APC

24

25                                   By: _____

                                         Kane Moon
26                                       Allen Feghali
                                         Enzo Nabiev
27                                       Attorneys for Plaintiff

28

                                      24
          SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2
Plaintiff demands a trial by jury as to all causes of action triable by jury.

3

4
Dated: February 25, 2021                    MOON & YANG, APC

5

6
By: _____

Kane Moon

7
Allen Feghali

Enzo Nabiev

8
Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

Case Number: RG20073930
Case Name: Tolentino v. Gillig, LLC

RE: STIPULATION AND ORDER ALLOWING FILING OF SECOND AMENDED
COMPLAINT

---

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed: 03/09/2021

*Jhalisa Castaneda*
Courtroom Clerk, Dept. 23

| | |
|---|---|
| Kane Moon<br>Allen Feghali<br>Enzo Nabiev<br>MOON & YANG, APC<br>1055 W. Seventh St., Suite 1880<br>Los Angeles, CA 90017<br>Kane.moon@moonyanglaw.com<br>Allen.feghali@moonyanglaw.com<br>Enzo.nabiev@moonyanglaw.com | *Attorneys for Plaintiff Ronald Tolentino* |
| William Faulkner<br>Michael Warren<br>McMANIS FAULKNER, APC<br>50 West San Fernando Street, 10th Floor<br>San Jose, CA 95113<br>mwarren@mcmanislaw.com | *Attorneys for Defendant Gillig, LLC* |

1

EXHIBIT 32

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG20073930
Order After Hearing Re: of 03/09/2021

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 03/10/2021.

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

EXHIBIT 33

ENDORSED
FILED
ALAMEDA COUNTY

MAR 1 1 2021

CLERK OF THE SUPERIOR COURT
By JHALISA CASTANEDA
Deputy

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

| | |
|---|---|
| TOLENTINO, <br><br>             Plaintiffs | Case No.  RG20073930 <br><br> INITIAL CASE MANAGEMENT ORDER <br><br> |
| GILLIG, LLC <br><br>             Defendants | ASSIGNED FOR ALL PRE-TRIAL PURPOSES  TO: JUDGE BRAD SELIGMAN, DEPARTMENT 23 |
| | |

The following order shall apply to all parties in this action:

1.  CASE MANAGEMENT CONFERENCES

At  Case  Management  Conferences  the  Court  will  address  discovery  issues,
schedules, and other subjects pursuant to CRC 3.750.  Counsel thoroughly familiar with
the case shall attend the Case Management Conferences.  See LRC, Rule 3.290.

At the Initial CCMC, the parties must be prepared to discuss at length the nature
of the case, both factually and legally, as well as the projected management of the case at
each stage.  This is not a perfunctory exercise.  The primary objective of the CCMC is to
develop a comprehensive plan for a just, speedy and economical determination of the
litigation.

Courtesy copies of statements must be delivered directly to Dept. 23.  The filing
and delivery date is not later than five court days before the conference.

The Court strongly prefers joint CCMC statements prepared in narrative form,
and not using Form CM-110, after counsel have met and conferred as required by CRC
3.724.  CCMC statements must address the following issues when applicable:

1

A.  A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B.  The number of parties and their posture, including a proposed structure of representation, (e.g., liaison/lead counsel or by committee) if applicable;

C.  Deadlines and limits on joinder of parties and amended or additional pleadings;

D.  Class discovery and class certification, if applicable;

E.  A proposed schedule for the conduct of the litigation including, but not limited to, a discovery plan, a plan for hearing remaining law and motion, and a projected trial date;

F.  An identification of all potential evidentiary issues involving confidentiality or protected evidence;

G.  A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1)  unserved parties and the reasons for the failure to serve;

(2)  unserved and/or unfiled cross-complaints;

(3)  related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4)  any possible jurisdictional or venue issues that may arise;

(5)  the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6)  unresolved law and motion matters;

(7)  requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8)  severance of issues for trial; and

(9)  calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H.  Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

Parties are advised to check the court's register of action before appearing at any case management conference, including the Initial Case Management, at least one day before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management

Orders are found in the Register of Action). Department 23 may be reached at Dept.23@alameda.courts.ca.gov.

2. NOTICE OF FEE CHANGES - JURY TRIAL FEE

Effective July 2, 2012, the advance jury fee is fixed at $150.00, and is no longer refundable. With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. See, C.C.P. 631(b).

3. DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the court until after an informal discovery conference pursuant to revised Local Rule 3.31 (January 1, 2019) except a party may request a discovery conference in a Case Management Conference Statement. The discovery conference is not a pro forma step before a motion. Requests for a discovery conference may be made, after meaningful meet and confer, by sending an email to the department clerk, copied to all counsel. The court will provide proposed dates. Parties are to meet and confer as to availability for the proposed dates. If one or more parties are not available on the proposed date(s), additional dates may be requested. Upon request, the court will consider telephonic appearances as well as calls from depositions in progress.

4. EMAILS TO COURT

Emails to the court are not part of the court record in this case and may be deleted without notice. Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 23 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the court's calendar, to give

4

notice that a hearing has been dropped or a settlement reached, to request a discovery

conference, emergency scheduling issues (i.e. running late to a hearing), to give notice

that a litigant intends to appear to contest a tentative ruling, to reply to an inquiry from

the clerk or research attorney of Department 23, to communicate with the courtroom

clerk regarding department 23 procedures, or other matters that the court has expressly

authorized in this case.

**5.** Pro Hac Vice Process

Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or,

if it is a time sensitive matter, a request for an order shortening time must be submitted.

Applications will not be considered on an ex parte basis. CRC 9.40.

6. NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting

orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 23 will

be published in the Court's website in the Register of Action for this case. The clerk of

the court WILL NOT serve each party a copy of future orders. Instead, unless otherwise

ordered, counsel shall obtain copies of all future orders from the Register of Action in

this case.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this

order on newly joined parties defendant not listed on the proof of service of this order and

file proof of service. Each party defendant joining any third party cross-defendant shall

have a continuing duty to serve a copy of this order on newly joined cross-defendants and

to file proof of service. The clerk is directed to serve a copy of this CASE

MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED: March 11, 2021

_____
**BRAD SELIGMAN**

BRAD SELIGMAN, JUDGE

_____

CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed:  3/11/2021

*Jhalisa Castaneda*
Courtroom Clerk, Dept. 23

| | |
|---|---|
| Kane Moon<br>Allen Feghali<br>MOON & YANG, APC<br>1055 W. Seventh Street, Suite 1880<br>Los Angeles, CA 90017<br>Kane.moon@moonyanglaw.com<br>Allen.feghali@moonyanglaw.com | *Attorneys for Plaintiff Ronald Tolentino* |
| William Faulkner<br>Michael Warren<br>McMANIS FAULKNER<br>A Professional Corporation<br>50 West San Fernando Street, 10th Floor<br>San Jose, CA 95113<br>mwarren@mcmanislaw.com | *Attorneys for Defendant Gillig, LLC* |

6

EXHIBIT 34

**FILED BY FAX**
ALAMEDA COUNTY
March 11, 2021
CLERK OF
THE SUPERIOR COURT
By Xian-xii Bowie, Deputy
CASE NUMBER:
RG20073930

1   Kane Moon (SBN 249834)
    Allen Feghali (SBN 301080)
2   Enzo Nabiev (SBN 332118)
    **MOON & YANG, APC**
3   1055 W. Seventh St., Suite 1880
    Los Angeles, California 90017
4   Telephone: (213) 232-3128
    Facsimile: (213) 232-3125
5   E-mail: kane.moon@moonyanglaw.com
    E-mail: allen.feghali@moonyanglaw.com
6   E-mail: enzo.nabiev@moonyanglaw.com

7   Attorneys for Plaintiff Ronald Tolentino

8

9                   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                        **FOR THE COUNTY OF ALAMEDA**
10

11  RONALD TOLENTINO, individually, and on          Case No.: RG20073930
    behalf of all others similarly situated,
12                                                   [Hon. Brad Seligman, Dept. 23]
                    Plaintiff,
13                                                   **SECOND AMENDED CLASS ACTION
                                                     AND REPRESENTATIVE ACTION
14          vs.                                      COMPLAINT:**

15                                                   1. Failure to Pay Minimum and Regular Rate
    GILLIG, LLC, a limited liability company; and       Wages [Cal. Lab. Code §§ 1194, 1194.2,
16  DOES 1 through 10, inclusive,                        and 1197];
                                                     2. Failure to Provide Meal Periods [Cal. Lab.
17                  Defendants                           Code §§ 226.7, 512];
                                                     3. Failure to Authorize and Permit Rest
18                                                      Breaks [Cal. Lab. Code §§ 226.7];
                                                     4. Failure to Timely Pay Final Wages at
19                                                      Termination [Cal. Lab. Code §§ 201-203];
                                                     5. Failure to Provide Accurate Itemized
20                                                      Wage Statements [Cal. Lab. Code § 226];
                                                     6. Unfair Business Practices [Cal. Bus. &
21                                                      Prof. Code §§ 17200, et seq.]; and
                                                     7. Civil Penalties Under PAGA [Cal. Lab.
22                                                      Code § 2699, et seq.].

23                                                   **DEMAND FOR JURY TRIAL**

24

25

26

27

28

                SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION & PRELIMINARY STATEMENT ............................................................ 1

THE PARTIES ........................................................................................................................ 3

    A.   Plaintiff.......................................................................................................................... 3

    B.   Defendants.................................................................................................................... 3

CLASS ACTION ALLEGATIONS ...................................................................................... 7

FIRST CAUSE OF ACTION ............................................................................................... 11

SECOND CAUSE OF ACTION................................................**Error! Bookmark not defined.**

THIRD CAUSE OF ACTION .............................................................................................. 12

FOURTH CAUSE OF ACTION........................................................................................... 13

FIFTH CAUSE OF ACTION ............................................................................................... 14

SIXTH CAUSE OF ACTION............................................................................................... 15

SEVENTH CAUSE OF ACTION ........................................................................................ 16

PRAYER FOR RELIEF........................................................................................................ 21

DEMAND FOR JURY TRIAL............................................................................................. 24

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1        Plaintiff Roland Tolentino ("Plaintiff"), based upon facts that either have evidentiary

2   support or are likely to have evidentiary support after a reasonable opportunity for further

3   investigation and discovery, alleges as follows:

4                **INTRODUCTION & PRELIMINARY STATEMENT**

5       1.     Plaintiff brings this action against Defendants Gillig, LLC, and Does 1 through 10

6   (collectively referred to as "Defendants") for California Labor Code violations and unfair

7   business practices stemming from Defendants' failure to pay minimum and regular rate wages,

8   failure to provide meal periods, failure to authorize and permit rest periods, failure to maintain

9   accurate records of hours worked and meal periods, failure to timely pay all wages to terminated

10   employees, and failure to furnish accurate wage statements.

11       2.     Plaintiff brings the First through Seventh Causes of Action individually and as a

12   class action on behalf of herself and certain current and former employees of Defendants

13   (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully

14   below).The Class consists of Plaintiff and all other persons who have been employed by any

15   Defendant in California and classified as a non-exempt employee during the statute of limitations

16   period applicable to the claims pleaded here.

17       3.     Plaintiff brings the Eighth Cause of Action as a representative action under the

18   California Private Attorney General Act ("PAGA") to recover civil penalties that are owed to

19   Plaintiff, the State of California, and past and present non-exempt, hourly-paid employees of

20   Defendants who worked in California during the applicable statute of limitations period

21   (hereinafter referred to as the "Aggrieved Employees").

22       4.     Defendants own/owned and operate/operated an industry, business, and

23   establishment within the State of California, including Alameda County. As such, and based

24   upon all the facts and circumstances incident to Defendants' business in California, Defendants

25   are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare

26   Commission ("IWC"), and the California Business & Professions Code.

27       5.     Despite these requirements, throughout the statutory period Defendants

28   maintained a systematic, company-wide policy and practice of:

1   (a) Failing to pay employees for all hours worked, including all minimum
2      wages, in compliance with the California Labor Code and IWC Wage
3      Orders;
4   (b) Failing to maintain accurate records of the hours employees worked;
5   (c) Failing to provide employees with timely and duty-free meal periods in
6      compliance with the California Labor Code and IWC Wage Orders, failing
7      to maintain accurate records of all meal periods taken or missed, and
8      failing to pay an additional hour's pay for each workday a meal period
9      violation occurred;
10   (d) Failing to authorize and permit employees to take timely and duty-free rest
11      periods in compliance with the California Labor Code and IWC Wage
12      Orders, and failing to pay an additional hour's pay for each workday a rest
13      period violation occurred;
14   (e) Willfully failing to pay employees all minimum wages, meal period
15      premium wages, and rest period premium wages due within the time period
16      specified by California law when employment terminates; and
17   (f) Failing to provide employees with accurate, itemized wage statements
18      containing all the information required by the California Labor Code and
19      IWC Wage Orders.
20  6.  On information and belief, Defendants, and each of them were on actual and
21 constructive notice of the improprieties alleged herein and intentionally refused to rectify their
22 unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were
23 willful and deliberate.
24  7.  At all relevant times, Defendants were and are legally responsible for all of the
25 unlawful conduct, policies, practices, acts and omissions as described in each and all of the
26 foregoing paragraphs as the employer of Plaintiff, the Class, and the Aggrieved Employees.
27 Further, Defendants are responsible for each of the unlawful acts or omissions complained of
28 herein under the doctrine of "respondeat superior".

**THE PARTIES**

A.   **Plaintiff**

8.      Plaintiff is a California resident who worked for Defendants in Alameda County, California as a maintenance worker from approximately May 2002 to June 2020.

9.      Plaintiff reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

B.   **Defendants**

10.      Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant Gillig, LLC is:

       (a)      A California limited partnership with its principal place of business in Alameda, California.

       (b)      A business entity conducting business in numerous counties throughout the State of California, including in Alameda County; and

       (c)      The former employer of Plaintiff, and the current and/or former employer of the putative Class. Gillig, LLC suffered and permitted Plaintiff, the Class, and the Aggrieved Employees to work, and/or controlled their wages, hours, or working conditions.

11.      Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff, the Class, and the Aggrieved Employees as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with appropriate charging allegations, as may be necessary.

12.      At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured a significant number of the Plaintiff, the Class, and the Aggrieved Employees in the State of California.

13.    Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the other employees described in the class definitions below, and exercised control over their wages, hours, and working conditions. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

14.    Plaintiff Roland Tolentino worked for Defendants in Alameda County, California as a maintenance worker.

15.    Throughout the statutory period, Defendants failed to pay Plaintiff for all hours worked (including minimum wages), failed to provide Plaintiff with uninterrupted meal periods, failed to authorize and permit Plaintiff to take uninterrupted rest periods, failed to maintain accurate records of the hours Plaintiff worked, failed to timely pay all final wages to Plaintiff when Defendants terminated Plaintiff's employment, and failed to furnish accurate wage statements to Plaintiff. As discussed below, Plaintiff's experience working for Defendants was typical and illustrative.

16.    Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff, the Class, and the Aggrieved Employees for all hours worked. Defendants regularly use a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff, the Class, and the Aggrieved Employees properly for all the time they have actually worked, even though the realities of Defendants' operations are such that it is

4

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1    possible, practical, and feasible to count and pay for work time to the minute. As a result,
2    Defendants frequently paid Plaintiff, the Class, and the Aggrieved Employees less than all their
3    work time. As a further result, Defendants failed to maintain accurate records of the hours
4    Plaintiff, the Class, and the Aggrieved Employees worked.

5          17.     Throughout the statutory period, Defendants have wrongfully failed to provide
6    Plaintiff, the Class, and the Aggrieved Employees with legally compliant meal periods.
7    Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved Employees
8    to work in excess of five consecutive hours a day without providing a 30-minute, continuous and
9    uninterrupted, duty-free meal period for every five hours of work, or without compensating
10   Plaintiff, the Class, and the Aggrieved Employees for meal periods that were not provided by the
11   end of the fifth hour of work or tenth hour of work. Defendants did not adequately inform
12   Plaintiff, the Class, and the Aggrieved Employees of their right to take a meal period by the end
13   of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of
14   work. Defendants also did not have adequate policies or practices to document and verify
15   whether Plaintiff, the Class, and the Aggrieved Employees were taking their required meal
16   periods. Accordingly, Defendants' policy and practice was to not provide meal periods to
17   Plaintiff, the Class, and the Aggrieved Employees in compliance with California law.

18         18.     Throughout the statutory period, Defendants have wrongfully failed to authorize
19   and permit Plaintiff, the Class, and the Aggrieved Employees to take timely and duty-free rest
20   periods. Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved
21   Employees to work in excess of four consecutive hours a day without Defendants authorizing and
22   permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four
23   hours of work (or major fraction of four hours), or without compensating Plaintiff, the Class, and
24   the Aggrieved Employees for rest periods that were not authorized or permitted. Accordingly,
25   Defendants' policy and practice was to not authorize and permit Plaintiff, the Class, and the
26   Aggrieved Employees to take rest periods in compliance with California law.

27
28

19.  Throughout the statutory period, Defendants willfully failed and refused to timely pay Plaintiff, the Class, and the Aggrieved Employees at the conclusion of their employment all wages, meal period premium wages, and rest period premium wages.

20.  Throughout the statutory period, Defendants failed to furnish Plaintiff, the Class, and the Aggrieved Employees with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California law).  As a result of these violations of California Labor Code § 226(a), Plaintiff, the Class, and the Aggrieved Employees suffered injury because, among other things:

        (a)  the violations led them to believe that they were not entitled to be paid minimum wages, meal period premium wages, and rest period premium wages to which they were entitled, even though they were entitled;

        (b)  the violations led them to believe that they had been paid the minimum, meal period premium, and rest period premium wages to which they were entitled, even though they had not been;

        (c)  the violations led them to believe they were not entitled to be paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they were;

        (d)  the violations led them to believe they had been paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they had not been;

        (e)  the violations hindered them from determining the amounts of minimum, meal period premium, and rest period premium owed to them;

        (f)  in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages

1        owed to them, computations they would not have to make if the wage

2        statements contained the required accurate information;

3        (g)    by understating the wages truly due them, the violations caused them to

4               lose entitlement and/or accrual of the full amount of Social Security,

5               disability, unemployment, and other governmental benefits;

6        (h)    the wage statements inaccurately understated the wages, hours, and wage

7               rates to which Plaintiff, the Class, and the Aggrieved Employees were

8               entitled, and Plaintiff, the Class, and the Aggrieved Employees were paid

9               less than the wages and wage rates to which they were entitled.

10   Thus, Plaintiff, the Class, and the Aggrieved Employees are owed the amounts provided for in

11   California Labor Code § 226(e).

12                              **CLASS ACTION ALLEGATIONS**

13        21.    Plaintiff brings certain claims individually, as well as on behalf of each and all

14   other persons similarly situated, and thus, seeks class certification under California Code of Civil

15   Procedure § 382.

16        22.    All claims alleged herein arise under California law for which Plaintiff seeks relief

17   authorized by California law.

18        23.    The proposed Class consists of and is defined as:

19        All persons who worked for any Defendants in California as an hourly-paid,
          non-exempt employee at any time during the period beginning four years before
20        the filing of the initial complaint in this action and ending when notice to the
21        Class is sent.

22        24.    At all material times, Plaintiff was a member of the Class.

23        25.    Plaintiff undertakes this concerted activity to improve the wages and working

24   conditions of all Class Members.

25        26.    There is a well-defined community of interest in the litigation and the Class is

26   readily ascertainable:

27        (a)    Numerosity: The members of the Class (and each subclass, if any) are so

28               numerous that joinder of all members would be unfeasible and impractical.

---
7
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

The membership of the entire Class is unknown to Plaintiff at this time, however, the Class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

(b)    Typicality: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' claims as demonstrated herein.

(c)    Adequacy: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff has no conflicts with or interests antagonistic to any Class Member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(d)    Superiority: A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

    1)    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

    2)    The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

    3)    The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    4)    The difficulties likely to be encountered in the management of a

8
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1          class action.

2          (e)    Public Policy Considerations:  The public policy of the State of California

3                 is to resolve the California Labor Code claims of many employees through

4                 a class action.  Indeed, current employees are often afraid to assert their

5                 rights out of fear of direct or indirect retaliation.  Former employees are

6                 also fearful of bringing actions because they believe their former

7                 employers might damage their future endeavors through negative

8                 references and/or other means.  Class actions provide the class members

9                 who are not named in the complaint with a type of anonymity that allows

10                for the vindication of their rights at the same time as their privacy is

11                protected.

12     27.    There are common questions of law and fact as to the Class (and each subclass, if

13     any) that predominate over questions affecting only individual members, including without

14     limitation, whether, as alleged herein, Defendants have:

15          (a)    Failed to pay Class Members for all hours worked, including minimum

16                 wages;

17          (b)    Failed to provide meal periods and pay meal period premium wages to

18                 Class Members;

19          (c)    Failed to authorize and permit rest periods and pay rest period premium

20                 wages to Class Members;

21          (d)    Failed to promptly pay all wages due to Class Members upon their

22                 discharge or resignation;

23          (e)    Failed to provide Class Members with accurate wages statements;

24          (f)    Failed to maintain accurate records of all hours Class Members worked,

25                 and all meal periods Class Members took or missed; and

26          (g)    Violated California Business & Professions Code §§ 17200 *et. seq.* as a

27                 result of their illegal conduct as described above.

28     28.    This Court should permit this action to be maintained as a class action pursuant to

9

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1   California Code of Civil Procedure § 382 because:

2       (a)  The questions of law and fact common to the Class predominate over any

3           question affecting only individual members;

4       (b)  A class action is superior to any other available method for the fair and

5           efficient adjudication of the claims of the members of the Class;

6       (c)  The members of the Class are so numerous that it is impractical to bring all

7           members of the class before the Court;

8       (d)  Plaintiff, and the other members of the Class, will not be able to obtain

9           effective and economic legal redress unless the action is maintained as a

10          class action;

11      (e)  There is a community of interest in obtaining appropriate legal and

12          equitable relief for the statutory violations, and in obtaining adequate

13          compensation for the damages and injuries for which Defendants are

14          responsible in an amount sufficient to adequately compensate the members

15          of the Class for the injuries sustained;

16      (f)  Without class certification, the prosecution of separate actions by

17          individual members of the class would create a risk of:

18          1)  Inconsistent or varying adjudications with respect to individual

19             members of the Class which would establish incompatible standards

20             of conduct for Defendants; and/or

21          2)  Adjudications with respect to the individual members which would,

22             as a practical matter, be dispositive of the interests of other

23             members not parties to the adjudications, or would substantially

24             impair or impede their ability to protect their interests, including but

25             not limited to the potential for exhausting the funds available from

26             those parties who are, or may be, responsible Defendants; and,

27      (g)  Defendants have acted or refused to act on grounds generally applicable to

28          the Class, thereby making final injunctive relief appropriate with respect to

1          the class as a whole.

2          29.     Plaintiff contemplates the eventual issuance of notice to the proposed members of

3    the Class that would set forth the subject and nature of the instant action.  The Defendants' own

4    business records may be utilized for assistance in the preparation and issuance of the

5    contemplated notices.  To the extent that any further notices may be required, Plaintiff would

6    contemplate the use of additional techniques and forms commonly used in class actions, such as

7    published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by

8    other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

9                                   **FIRST CAUSE OF ACTION**

10          **(Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked)**

11          30.     Plaintiff incorporates by reference and re-alleges as if fully stated herein

12    paragraphs 1 through 20 in this Complaint.

13          31.     "Hours worked" is the time during which an employee is subject to the control of

14    an employer, and includes all the time the employee is suffered or permitted to work, whether or

15    not required to do so.

16          32.     At all relevant times herein mentioned, Defendants knowingly failed to pay to

17    Plaintiff and the Class compensation for all hours they worked.  By their failure to pay

18    compensation for each hour worked as alleged above, Defendants willfully violated the

19    provisions of Section 1194 of the California Labor Code, and any additional applicable Wage

20    Orders, which require such compensation to non-exempt employees.

21          33.     Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all

22    non-overtime hours worked for Defendants.

23          34.     By and through the conduct described above, Plaintiff and the Class have been

24    deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

25          35.     By virtue of the Defendants' unlawful failure to pay additional compensation to

26    Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class

27    suffered, and will continue to suffer, damages in amounts which are presently unknown to

28

1 | Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which
2 | will be ascertained according to proof at trial.

3 |    36.  By failing to keep adequate time records required by California Labor Code §
4 | 1174(d), Defendants have made it difficult to calculate the full extent of minimum wage
5 | compensation due Plaintiff and the Class.

6 |    37.  Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are
7 | entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum
8 | wages.

9 |    38.  Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum
10 | wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§
11 | 218.5, 218.6, and 1194(a).

12 |    39.

13 | <div align="center">**SECOND CAUSE OF ACTION**</div>

14 | <div align="center">**(Against All Defendants for Failure to Provide Meal Periods)**</div>

15 |    40.  Plaintiff incorporates by reference and re-alleges as if fully stated herein
16 | paragraphs 1 through 20 in this Complaint.

17 |    41.  Under California law, Defendants have an affirmative obligation to relieve the
18 | Plaintiff and the Class of all duty in order to take their first daily meal periods no later than the
19 | start of Plaintiff and the Class' sixth hour of work in a workday, and to take their second meal
20 | periods no later than the start of the eleventh hour of work in the workday. Section 512 of the
21 | California Labor Code, and Section 11 of the applicable Wage Orders require that an employer
22 | provide unpaid meal periods of at least 30 minutes for each five-hour period worked. It is a
23 | violation of Section 226.7 of the California Labor Code for an employer to require any employee
24 | to work during any meal period mandated under any Wage Order.

25 |    42.  Despite these legal requirements, Defendants regularly failed to provide Plaintiff
26 | and the Class with both meal periods as required by California law. By their failure to permit
27 | and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact
28 | that Defendants made it impossible or impracticable to take these uninterrupted meal periods),

<div align="center">12</div>

1    Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and

2    the applicable Wage Orders.

3        43.     Under California law, Plaintiff and the Class are entitled to be paid one hour of

4    additional wages for each workday he or she was not provided with all required meal period(s),

5    plus interest thereon.

6                      **THIRD CAUSE OF ACTION**

7       **(Against All Defendants for Failure to Authorize and Permit Rest Periods)**

8        44.     Plaintiff incorporates by reference and re-alleges as if fully stated herein

9    paragraphs 1 through 20 in this Complaint.

10       45.     Defendants are required by California law to authorize and permit breaks of 10

11    uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than

12    two hours). Section 512 of the California Labor Code, the applicable Wage Orders require that

13    the employer permit and authorize all employees to take paid rest periods of 10 minutes each for

14    each 4-hour period worked. Thus, for example, if an employee's work time is 6 hours and ten

15    minutes, the employee is entitled to two rest breaks. Each failure to authorize rest breaks as so

16    required is itself a violation of California's rest break laws. It is a violation of Section 226.7 of

17    the California Labor Code for an employer to require any employee to work during any rest

18    period mandated under any Wage Order.

19       46.     Despite these legal requirements, Defendants failed to authorize Plaintiff and the

20    Class to take rest breaks, regardless of whether employees worked more than 4 hours in a

21    workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as

22    alleged above (or due to the fact that Defendants made it impossible or impracticable to take

23    these uninterrupted rest periods), Defendants willfully violated the provisions of Section 226.7 of

24    the California Labor Code and the applicable Wage Orders.

25       47.     Under California law, Plaintiff and the Class are entitled to be paid one hour of

26    premium wages rate for each workday he or she was not provided with all required rest break(s),

27    plus interest thereon.

28

1

## FOURTH CAUSE OF ACTION

2  **(Against all Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time**

3  **Penalties)**

4    48.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

5  paragraphs 1 through 20 in this Complaint.

6    49.    At all times herein set forth, California Labor Code §§ 201 and 202 provide that if

7  an employer discharges an employee, the wages earned and unpaid at the time of discharge are

8  due and payable immediately, and that if an employee voluntarily leaves his or her employment,

9  his or her wages shall become due and payable not later than seventy-two (72) hours thereafter,

10  unless the employee has given seventy-two (72) hours previous notice of his or her intention to

11  quit, in which case the employee is entitled to his or her wages at the time of quitting.

12    50.    Within the applicable statute of limitations, the employment of Plaintiff and many

13  other members of the Class ended, i.e. was terminated by quitting or discharge, and the

14  employment of others will be. However, during the relevant time period, Defendants failed, and

15  continue to fail to pay terminated Class Members, without abatement, all wages required to be

16  paid by California Labor Code sections 201 and 202 either at the time of discharge, or within

17  seventy-two (72) hours of their leaving Defendants' employ.

18    51.    Defendants' failure to pay Plaintiff and those Class members who are no longer

19  employed by Defendants their wages earned and unpaid at the time of discharge, or within

20  seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor

21  Code §§ 201 and 202.

22    52.    California Labor Code § 203 provides that if an employer willfully fails to pay

23  wages owed, in accordance with sections 201 and 202, then the wages of the employee shall

24  continue as a penalty wage from the due date, and at the same rate until paid or until an action is

25  commenced; but the wages shall not continue for more than thirty (30) days.

26    53.    Plaintiff and the Class are entitled to recover from Defendants their additionally

27  accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days

28  maximum pursuant to California Labor Code § 203.

54.     Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the

Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs

incurred in this action.

### FIFTH CAUSE OF ACTION

### (Against all Defendants for Failure to Provide and Maintain Accurate and

### Compliant Wage Records)

55.     Plaintiff incorporates by reference and re-alleges as if fully stated herein

paragraphs 1 through 20 in this Complaint.

56.     At all material times set forth herein, California Labor Code § 226(a) provides that

every employer shall furnish each of his or her employees an accurate itemized wage statement

in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours

worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate

if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made

on written orders of the employee may be aggregated and shown as one item, (5) net wages

earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the

employee and the last four digits of his or her social security number or an employee

identification number other than a social security number, (8) the name and address of the legal

entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and

the corresponding number of hours worked at each hourly rate by the employee.

57.     Defendants have intentionally and willfully failed to provide employees with

complete and accurate wage statements. The deficiencies include, among other things, the

failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list

the true "total hours worked by the employee," and the failure to list the true net wages earned.

58.     As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff

and the Class have suffered injury and damage to their statutorily-protected rights.

59.     Specifically, Plaintiff and the members of the Class have been injured by

Defendants' intentional violation of California Labor Code § 226(a) because they were denied

15

1   both their legal right to receive, and their protected interest in receiving, accurate, itemized wage
2   statements under California Labor Code § 226(a).

3       60.   Calculation of the true wage entitlement for Plaintiff and the Class is difficult and
4   time consuming. As a result of this unlawful burden, Plaintiff and the Class were also injured as
5   a result of having to bring this action to attempt to obtain correct wage information following
6   Defendants' refusal to comply with many of the mandates of California's Labor Code and related
7   laws and regulations.

8       61.   Plaintiff and the Class are entitled to recover from Defendants the greater of their
9   actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or
10  an aggregate penalty not exceeding four thousand dollars per employee.

11      62.   Plaintiff and the Class are also entitled to injunctive relief, as well as an award of
12  attorney's fees and costs to ensure compliance with this section, pursuant to California Labor
13  Code § 226(h).

14                          **SIXTH CAUSE OF ACTION**

15  **(Against all Defendants for Violation of California Business & Professions Code §§ 17200,**
16                                  **et seq.)**

17      63.   Plaintiff incorporates by reference and re-alleges as if fully stated herein
18  paragraphs 1 through 20 in this Complaint.

19      64.   Defendants, and each of them, are "persons" as defined under California Business
20  & Professions Code § 17201.

21      65.   Defendants' conduct, as alleged herein, has been, and continues to be, unfair,
22  unlawful, and harmful to Plaintiff, other Class members, and to the general public. Plaintiff seek
23  to enforce important rights affecting the public interest within the meaning of Code of Civil
24  Procedure § 1021.5.

25      66.   Defendants' activities, as alleged herein, are violations of California law, and
26  constitute unlawful business acts and practices in violation of California Business & Professions
27  Code §§ 17200, *et seq.*

28

16
SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

67.  A violation of California Business & Professions Code §§ 17200, *et seq.* may be predicated on the violation of any state or federal law. All of the acts described herein as violations of, among other things, the California Labor Code, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business &Professions Code §§ 17200, *et seq.*

### Failure to Pay Minimum Wages

68.  Defendants' failure to pay minimum wages, and other benefits in violation of the California Labor Code constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Maintain Accurate Records of All Hours Worked

69.  Defendants' failure to maintain accurate records of all hours worked in accordance with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Provide Meal Periods

70.  Defendants' failure to provide meal periods in accordance with California Labor Code §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Maintain Accurate Records of Meal Periods

71.  Defendants' failure to maintain accurate records of employee meal periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Authorize and Permit Rest Periods

72.  Defendants' failure to authorize and permit rest periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq.*

### Failure to Provide Accurate Itemized Wage Statements

17

73.     Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

74.     By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

75.     Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

76.     Plaintiff, individually, and on behalf of members of the putative Class, are entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices. Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

77.     Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

78.     Plaintiff, individually, and on behalf of members of the putative class, have no plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business practices. As a result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff, individually, and on behalf of members of the putative Class, suffered and will continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

18

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

79.    Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth herein above, they will continue to avoid paying the appropriate taxes, insurance and other withholdings.

80.    Pursuant to California Business & Professions Code §§ 17200, *et seq.*, Plaintiff and putative Class Members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and Class Members; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## SEVENTH CAUSE OF ACTION

**(Against all Defendants for Civil Penalties Under the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 et seq.)**

81.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

82.    At all times herein mentioned, Defendants were subject to the Labor Code of the State of California and the applicable Industrial Welfare Commission Orders.

83.    California Labor Code § 2699(a) specifically provides for a private right of action to recover penalties for violations of the Labor Code: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

84.    Plaintiff has exhausted his administrative remedies pursuant to California Labor Code § 2699.3. On September 15, 2020, he gave written notice by online filing to the Labor and Workforce Development Agency and by certified mail to Defendants of the specific provisions of the Labor Code that Defendants have violated against Plaintiff and certain current and former

1   aggrieved employees, including the facts and theories to support the violations.  Plaintiff also

2   paid the filing fee.  Plaintiff's PAGA case number is LWDA-CM-806429-20.

3          85.     More than 65 days has elapsed since Plaintiff provided notice, but the Labor and

4   Workforce Development Agency has not indicated that it intends to investigate Defendants'

5   Labor Code violations discussed in the notice. Accordingly, Plaintiff may commence a civil

6   action to recover penalties under Labor Code § 2699 pursuant to § 2699.3 for the violations of

7   the Labor Code described in this Complaint.  These penalties include, but are not limited to,

8   penalties under California Labor Code §§ 210, 226.3, 558, and 2699(f)(2).

9          86.     In addition, Plaintiff seeks penalties for Defendants' violation of California Labor

10  Code § 1174(d). Pursuant to California Labor Code § 1174.5, any person, including any entity,

11  employing labor who willfully fails to maintain accurate and complete records required by

12  California Labor Code § 1174 is subject to a penalty under § 1174.5. Pursuant to the applicable

13  IWC Order § 7(A)(3), every employer shall keep time records showing when the employee

14  begins and ends each work period. Meal periods, and total hours worked daily shall also be

15  recorded. Additionally, pursuant to the applicable IWC Order § 7(A)(5), every employer shall

16  keep total hours worked in the payroll period and applicable rates of pay.

17         87.     During the time period of employment for Plaintiff and the Aggrieved Employees,

18  Defendants failed to maintain records pursuant to the Labor Code and IWC Orders by failing to

19  maintain accurate records showing meal periods. Defendants' failure to provide and maintain

20  records required by the Labor Code IWC Wage Orders deprived Plaintiff and the Aggrieved

21  Employees the ability to know, understand and question the accuracy and frequency of meal

22  periods. Therefore, Plaintiff and the Aggrieved Employees had no way to dispute the resulting

23  failure to pay wages, all of which resulted in an unjustified economic enrichment to Defendants.

24  As a direct result, Plaintiff and the Aggrieved Employees have suffered and continue to suffer,

25  substantial losses related to the use and enjoyment of such wages, lost interest on such wages and

26  expenses and attorney's fees in seeking to compel Defendants to fully perform its obligation

27  under state law, all to their respective damage in amounts according to proof at trial. Because of

28  Defendants' knowing failure to comply with the Labor Code and applicable IWC Wage Orders,

1  Plaintiff and the Aggrieved Employees have also suffered an injury in that they were prevented

2  from knowing, understanding, and disputing the wage payments paid to them.

3        88.    Based on the conduct described in this Complaint, Plaintiff is entitled to an award

4  of civil penalties on behalf of himself, the State of California, and similarly Aggrieved

5  Employees of Defendants. The exact amount of the applicable penalties, in all, is in an amount

6  to be shown according to proof at trial. These penalties are in addition to all other remedies

7  permitted by law.

8        89.    In addition, Plaintiff seeks an award of reasonable attorney's fees and costs

9  pursuant to California Labor Code § 2699(g)(1), which states, "Any employee who prevails in

10 any action shall be entitled to an award of reasonable attorney's fees and costs."

11                            **PRAYER FOR RELIEF**

12       Plaintiff, individually, and on behalf of all others similarly situated only with respect to

13 the class claims, pray for relief and judgment against Defendants, jointly and severally, as

14 follows:

15                            Class Certification

16       1.    That this action be certified as a class action with respect to the First, Second,

17 Third, Fourth, Fifth, Sixth, and Eighth Causes of Action;

18       2.    That Plaintiff be appointed as the representative of the Class; and

19       3.    That counsel for Plaintiff be appointed as Class Counsel.

20

21                          As to the First Cause of Action

22       4.    That the Court declare, adjudge and decree that Defendants violated California Labor

23 Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum

24 wages due;

25       5.    For general unpaid wages as may be appropriate;

26       6.    For pre-judgment interest on any unpaid compensation commencing from the date

27 such amounts were due;

28       7.    For liquidated damages;

1           8.  For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

2    California Labor Code § 1194(a); and,

3           9.  For such other and further relief as the Court may deem equitable and appropriate.

4                         <u>As to the Second Cause of Action</u>

5           10. That the Court declare, adjudge and decree that Defendants violated California Labor

6    Code §§ 226.7 and 512, and the IWC Wage Orders;

7           11. For unpaid meal period premium wages as may be appropriate;

8           12. For pre-judgment interest on any unpaid compensation commencing from the date

9    such amounts were due;

10           13. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

11    for costs of suit incurred herein; and

12           14. For such other and further relief as the Court may deem equitable and appropriate.

13                         <u>As to the Third Cause of Action</u>

14           15. That the Court declare, adjudge and decree that Defendants violated California Labor

15    Code §§ 226.7 and 512, and the IWC Wage Orders;

16           16. For unpaid rest period premium wages as may be appropriate;

17           17. For pre-judgment interest on any unpaid compensation commencing from the date

18    such amounts were due;

19           18. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and

20    for costs of suit incurred herein; and

21           19. For such other and further relief as the Court may deem equitable and appropriate.

22                         <u>As to the Fourth Cause of Action</u>

23           20. That the Court declare, adjudge and decree that Defendants violated California Labor

24    Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of

25    termination of the employment;

26           21. For statutory wage penalties pursuant to California Labor Code § 203 for former

27    employees who have left Defendants' employ;

28           22. For pre-judgment interest on any unpaid wages from the date such amounts were due;

1    23. For reasonable attorneys' fees and for costs of suit incurred herein; and

2    24. For such other and further relief as the Court may deem equitable and appropriate.

3              As to the Fifth Cause of Action

4    25. That the Court declare, adjudge and decree that Defendants violated the record

5    keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and

6    willfully failed to provide accurate itemized wage statements thereto;

7    26. For statutory penalties and actual damages pursuant to California Labor Code §

8    226(e);

9    27. For injunctive relief to ensure compliance with this section, pursuant to California

10   Labor Code § 226(h);

11   28. For reasonable attorneys' fees and for costs of suit incurred herein; and

12   29. For such other and further relief as the Court may deem equitable and appropriate.

13             As to the Sixth Cause of Action

14   30. That the Court declare, adjudge and decree that Defendants violated California

15   Business & Professions Code §§ 17200, *et seq.* by failing to pay wages for all hours worked

16   (including minimum wages), failing to provide meal periods, failing to maintain accurate records

17   of meal periods, failing to authorize and permit rest periods, failing to maintain accurate records

18   of all hours worked and meal periods, and failing to furnish accurate wage statements;

19   31. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment

20   interest from the day such amounts were due and payable;

21   32. For the appointment of a receiver to receive, manage and distribute any and all funds

22   disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a

23   result of violations of California Business & Professions Code §§ 17200 *et seq.*;

24   33. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California

25   Code of Civil Procedure § 1021.5;

26   34. For injunctive relief to ensure compliance with this section, pursuant to California

27   Business & Professions Code §§ 17200, *et seq.*; and,

28   35. For such other and further relief as the Court may deem equitable and appropriate.

1      As to the Seventh Cause of Action

2          36. That the Court declare, adjudge and decree that Defendants violated the California

3   Labor Code by failing to pay all wages owed, failure to provide meal periods, failing to maintain

4   accurate records of meal periods, failing to authorize and permit rest periods, failing to pay final

5   wages at termination, and failing to furnish accurate wage statements;

6          37. For all actual, consequential and incidental losses and damages, according to proof;

7          38. For all civil penalties pursuant to California Labor Code § 2699, *et seq.*, and all other

8   applicable Labor Code provisions;

9          39. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California

10  Labor Code § 2699; and,

11         40. For such other and further relief as the Court may deem equitable and appropriate.

12                      As to all Causes of Action

13         41. For any additional relief that the Court deems just and proper.

14

15  Dated: March 9, 2021                          Respectfully submitted,

16                                                MOON & YANG, APC

17
                                                  By:
18                                                   Kane Moon
                                                     Allen Feghali
19                                                   Enzo Nabiev
                                                     Attorneys for Plaintiff
20

21                      **DEMAND FOR JURY TRIAL**

22       Plaintiff demands a trial by jury as to all causes of action triable by jury.

23

24  Dated: March 9, 2021                          MOON & YANG, APC

25                                                By:
26                                                   Kane Moon
                                                     Allen Feghali
27                                                   Enzo Nabiev
                                                     Attorneys for Plaintiff
28

                                            24
       SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF LOS ANGELES        )

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017. On March 10, 2021, I served the foregoing document described as:

**SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT**

__X__ by placing ____ the original __X__ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

William Faulkner
Michael Warren
**McMANIS FAULKNER, APC**
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Tel.: (408)279-8700
Fax: (408)279-3244
mwarren@mcmanislaw.com

*Attorneys for Defendant Gillig, LLC*

[X]   **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__   (State)        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 10, 2021 at Los Angeles, California.

__Ivette Hernandez__
Type or Print Name

_____
Signature

1
PROOF OF SERVICE

EXHIBIT 35

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino<br><div align="right">Plaintiff/Petitioner(s)</div><br><div align="center">VS.</div><br><br>Gillig, LLC<br><br><div align="right">Defendant/Respondent(s)</div><div align="center">(Abbreviated Title)</div> | No. <u>RG20073930</u><br><br>Case Management Order<br><br>Date:  03/16/2021<br>Time:  03:00 PM<br>Dept:  23<br>Judge:  Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference. The Second Amended Complaint was filed recently. The mc is continued for defendant to answer and for the parties to conduct discovery.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 04/27/2021 at 03:00 PM in Dept. 23.

A Joint Updated Case Management Statement in narrative form must be filed no later than 04/12/2021. If the foregoing date is a court holiday or a weekend, the time is extended to the next business day.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  03/16/2021

facsimile

_____
Judge Brad Seligman

EXHIBIT 36

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:    mwarren@mcmanislaw.com

6  CRAIG MARTIN (*Pro Hac Vice Application Pending*)
   MATT BASIL (*Pro Hac Vice Application Pending*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois 60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:    cmartin@willkie.com
10           mbasil@willkie.com

11
   Attorneys for Defendant
12 GILLIG, LLC

13

         SUPERIOR COURT OF THE STATE OF CALIFORNIA
14
             FOR THE COUNTY OF ALAMEDA
15

16

17 RONALD TOLENTINO, individually, and on    Case No.: RG20073930
   behalf of all others similarly situated,
18                                           **DEFENDANT'S ANSWER TO**
         Plaintiff,                          **PLAINTIFF'S SECOND AMENDED**
19                                           **COMPLAINT**
         vs.
20
   GILLIG, LLC, a limited liability company; and
21 DOES 1 through 10, inclusive,

22        Defendants.                        Complaint Filed:    September 16, 2020
                                             Trial Date:    Not set
23

24

25        Defendant Gillig, LLC ("Defendant"), hereby answers the Second Amended Complaint

26 of Plaintiff Ronald Tolentino ("Plaintiff") and the Putative Class as follows:

27                         <u>GENERAL DENIAL</u>

28        Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally

ENDORSED
FILED
ALAMEDA COUNTY

APR 09 2021

CLERK OF THE SUPERIOR COURT
By    NICOLE HALL
                    Deputy

APR 0 9 REC'D

1   denies each and every allegation of said Complaint, the whole thereof, including each and every

2   alleged cause of action contained therein, and further denies that Plaintiff is entitled to the relief

3   requested or any relief at all, that Plaintiff sustained or will sustain damages in the sum or sums

4   alleged, in any other sum, or at all, or is entitled to attorneys' fees in the sum or sums alleged, or

5   any other sum or sums, or at all.

6                                   **AFFIRMATIVE DEFENSES**

7          In further answer to Plaintiff's Second Amended Complaint (the "complaint"), Defendant

8   states the following facts as separate affirmative defenses to each of the allegations of Plaintiff's

9   Complaint:

10                                **FIRST AFFIRMATIVE DEFENSE**

11                              **[Failure to State a Cause of Action]**

12         As and for a first, separate and affirmative defense to the complaint, Defendant alleges

13  that Plaintiff's complaint, and each of the purported causes of action contained therein, fails to

14  state facts sufficient to constitute a cause or causes of action against Defendant.

15                               **SECOND AFFIRMATIVE DEFENSE**

16                                    **[Failure to Exhaust]**

17         As and for a further affirmative defense to the complaint, Defendant alleges that the

18  complaint and each cause of action alleged therein are barred because Plaintiff failed to timely

19  and completely exhaust his requisite administrative and/or contractual remedies available to

20  them under applicable Collective Bargaining Agreements, the California Labor Code or other

21  provisions of law prior to commencing this action.

22                                **THIRD AFFIRMATIVE DEFENSE**

23                                    **[Federal Preemption]**

24         As and for a further affirmative defense to the complaint, and to each and every cause of

25  action contained therein, Defendant alleges that to the extent Plaintiff's claims involve conduct

26  that is, or seek remedies that are, governed or regulated by federal law, such claims are

27  preempted.

28  ///

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

## FOURTH AFFIRMATIVE DEFENSE

### [Federal Preemption – Labor Management Relations Act]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are preempted by Section 301 of the Labor Management Relations Act.

## FIFTH AFFIRMATIVE DEFENSE

### [Binding Arbitration Under Collective Bargaining Agreement]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are preempted by collective bargaining agreements and subject to binding arbitration under those agreements.

## SIXTH AFFIRMATIVE DEFENSE

### [Preemption – Supremacy Clause]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant asserts that the Supremacy Clause of the United States Constitution bars Plaintiff's claims. *Lorrilard Tobacco Co. v. Reilly* (2001) 533 U.S. 525.

## SEVENTH AFFIRMATIVE DEFENSE

### [Field Preemption]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, cannot be maintained against Defendant because they are preempted by field preemption.

## EIGHTH AFFIRMATIVE DEFENSE

### [Non-Certifiable Class]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff cannot satisfy the requirements of California Code of Civil Procedure section 382 because individual questions of fact and law predominate over common questions, Plaintiffs' claims are not typical of those belonging to the

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

1 | putative class members, the class is not sufficiently numerous, and/or other class requirements

2 | cannot be satisfied. Accordingly, this action is not properly brought as a class action.

### NINTH AFFIRMATIVE DEFENSE

### [Inadequacy of Class Representative]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff is not a proper representative of the class he purports to represent.

### TENTH AFFIRMATIVE DEFENSE

### [Lack of Superiority]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the class action procedure is not the superior method for adjudicating Plaintiff's claims or the claims of the alleged class and, accordingly, this action is not properly brought as a class action.

### ELEVENTH AFFIRMATIVE DEFENSE

### [Lack of Standing]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff lacks standing to assert any purported cause of action alleged in the Complaint and lacks standing to represent the putative class.

### TWELFTH AFFIRMATIVE DEFENSE

### [Statute of Limitations]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the Complaint, and each and every purported cause of action alleged therein, is barred by the applicable statutes of limitations, including but not limited to, California Labor Code Section 203; California Code of Civil Procedure Sections 337,338, 339,340 and 343; and California Business & Professions Code Section 17208.

### THIRTEENTH AFFIRMATIVE DEFENSE

### [Waiver]

As and for a further affirmative defense to the complaint, and to each and every cause of

4

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

1 | action contained therein, Defendant alleges that by his own acts and omissions, Plaintiff has

2 | waived any claims and purported claims for relief contained in the complaint.

3 | <u>**FOURTEENTH AFFIRMATIVE DEFENSE**</u>

4 | **[Unclean Hands]**

5 | As and for a further affirmative defense to the complaint, and to each and every cause of

6 | action contained therein, Defendant alleges that Plaintiff's claims are barred by the doctrine of

7 | unclean hands.

8 | <u>**FIFTEENTH AFFIRMATIVE DEFENSE**</u>

9 | **[Laches]**

10 | As and for a further affirmative defense to the complaint, and to each and every

11 | cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the

12 | doctrine of laches.

13 | <u>**SIXTEENTH AFFIRMATIVE DEFENSE**</u>

14 | **[Estoppel]**

15 | As and for a further affirmative defense to the complaint, and to each and every

16 | cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the

17 | doctrine of estoppel.

18 | <u>**SEVENTEENTH AFFIRMATIVE DEFENSE**</u>

19 | **[Privilege and Justification]**

20 | As and for a further affirmative defense to the complaint, and to each and every cause of

21 | action contained therein, Defendant alleges that Plaintiff's claims are barred because Defendant's

22 | conduct was privileged and justified.

23 | <u>**EIGHTEENTH AFFIRMATIVE DEFENSE**</u>

24 | **[Adequate Remedies at Law]**

25 | As and for a further affirmative defense to the complaint, and to each and every cause of

26 | action contained therein, Defendant alleges that Plaintiff is not entitled to equitable relief insofar

27 | as he has adequate remedies at law.

28 | ///

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

## NINETEENTH AFFIRMATIVE DEFENSE

### [Set-Off/Offset/Recoupment]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the Complaint, and each and every purported cause of action alleged therein, is subject to setoff, offset and/or recoupment to the extent Plaintiff has already been compensated for the hours worked for which he seeks compensation here.

## TWENTIETH AFFIRMATIVE DEFENSE

### [Labor Code Section 203 – No Willful or Intentional Violation]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the putative class members are entitled to any additional compensation, it has not willfully or intentionally failed to pay any such additional compensation to Plaintiff and/or the putative class members, within the meaning and scope of California Labor Code section 203.

## TWENTY- FIRST AFFIRMATIVE DEFENSE

### [Bona Fide Dispute]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges there exists a *bona fide* dispute as to whether any further compensation is actually due to Plaintiff and/or the putative class members and, if so, the amount thereof.

## TWENTY- SECOND AFFIRMATIVE DEFENSE

### [Labor Code § 226 - No Intentional Failure]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the putative class members were not provided with a proper itemized statement of wages and deductions, Plaintiff and the putative class members are not entitled to recover damages or penalties because Defendant's alleged failure to comply with California Labor Code section 226 (a) was not a "knowing and intentional failure" under California Labor Code section 226(e).

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

1 | <u>**TWENTY- THIRD AFFIRMATIVE DEFENSE**</u>

2 | **[Lack of Specificity]**

3 | As and for a further affirmative defense to the complaint, and to each and every cause of

4 | action contained therein, Defendant alleges that Plaintiff has failed to alleged special damages

5 | with requisite specificity.

6 | <u>**TWENTY- FOURTH AFFIRMATIVE DEFENSE**</u>

7 | **[Civil Penalties Unconstitutional – Due Process and Separation of Powers]**

8 | As and for a further affirmative defense to the complaint, and to each and every cause of

9 | action contained therein, Defendant asserts the penalties sought in Plaintiff's Complaint violate

10 | the Due Process and Separation of Powers Clauses of the United States and California

11 | Constitutions. *Lockyer v. R.J. Reynolds Tobacco Co.,* 37 CaL 4th 707 (2005); *Ratner v.*

12 | *Chemical Bank New York Trust Co.,* 54 F.R.D. 412 (S.D.N.Y. 1972).

13 | <u>**TWENTY- FIFTH AFFIRMATIVE DEFENSE**</u>

14 | **[After-Acquired Evidence]**

15 | As and for a further affirmative defense to the complaint, and to each and every cause of

16 | action contained therein, Defendant alleges that Plaintiff is barred, in whole or in part, from

17 | recovery of any damages based upon the doctrine of after-acquired evidence.

18 | <u>**TWENTY- SIXTH AFFIRMATIVE DEFENSE**</u>

19 | **[Uncertainty]**

20 | As and for a further affirmative defense to the complaint, and to each and every cause of

21 | action contained therein, Defendant alleges the Complaint, and the claims asserted therein, are

22 | uncertain.

23 | <u>**TWENTY- SEVENTH AFFIRMATIVE DEFENSE**</u>

24 | **[Mitigation of Damages]**

25 | As and for a further affirmative defense to the complaint, and to each and every cause of

26 | action contained therein, Defendant alleges that Plaintiff and any purported class members, have

27 | failed to exercise reasonable care to mitigate their damages, if any were suffered, and that their

28 | right to recover against Defendant should be reduced and/or eliminated by such a failure.

7

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

## TWENTY- EIGHTH AFFIRMATIVE DEFENSE

### [Violation of Due Process]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that certification of a class, and the prosecution of a representative action on behalf of the general public under California Business and Professions Code section 17200 *et seq.,* as applied to the facts and circumstances of this case, would constitute a denial of Defendant's due process rights, both substantive and procedural, in violation of the Fourteenth Amendment to the United States Constitution and the California Constitution.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### [Breach of Duty]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges Plaintiff's claims, and those of any putative class members, are barred by their own breach of the duties owed to Defendant under California Labor Code section 2854, 2856, 2857, 2858 and/or 2859.

## THIRTIETH AFFIRMATIVE DEFENSE

### [No Penalties – Good Faith Dispute]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that any violation of the Labor Code or an Order of the Industrial Welfare Commission was an act or omission made in good faith and Defendant had reasonable grounds for believing that its wage payment practices complied with applicable laws and that any such act or omission was not a violation of the Labor Code, the common law or any Order of the Industrial Welfare Commission such that Plaintiff and/or the putative class members are not entitled to any penalties or damages in excess of any wages/overtime which might be found to be due. Specifically, Plaintiff cannot recover Labor Code section 203 or Labor Code section 226(e) civil penalties because any alleged failure to pay wages or provide compliant wage statements was based on a good faith dispute regarding the applicable law or facts.

8

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### [Failure to State a Claim for Attorneys' Fees and Costs]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the Complaint fails to state a claim for attorneys' fees under Labor Code section 226, Code of Civil Procedure 1021.5, Business and Professions Code section 17200, *et seq.,* or any other basis.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### [Failure to Following Instructions]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that any failure to comply with Defendant's work-time recording polices and requirements, was the result of failure by Plaintiff and/or the putative class members to follow Defendant's reasonable instructions.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### [No Harm Suffered]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff has not suffered and will not suffer irreparable harm or any harm as a result of any of the alleged conduct of Defendant.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### [Good Faith Business Practices]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's complaint and/or each purported cause of action therein is barred because, at all times, Defendant acted in good faith, did not engage in any unfair business practices, or otherwise violate any applicable laws.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### [Unlawful Delegation of Executive Authority]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiffs PAGA claim is barred to the extent private actions seeking PAGA penalties manifest an unlawful delegation of executive authority.

1    **THIRTY-SIXTH AFFIRMATIVE DEFENSE**

2    **[Employees Breach of Contract]**

3    As and for a further affirmative defense to the complaint, and to each and every cause of

4    action contained therein, Defendant alleges the existence of a valid and enforceable contract,

5    which bars or limits Plaintiff and the purported aggrieved employees from obtaining relief.

6    Defendant further alleges Plaintiff and the purported aggrieved employees breached the contract

7    which likewise bars or limits them from obtaining relief.

8    **THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

9    **[Employees Are Not Aggrieved Employees]**

10    As and for a further affirmative defense to the complaint, and to each and every cause of

11    action contained therein, Defendant alleges that Plaintiff's purported PAGA cause of action is

12    barred to the extent it seeks to recover penalties on behalf of individuals who are not "aggrieved

13    employees."

14    **THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

15    **[Penalties Beyond Initial Violation]**

16    As and for a further affirmative defense to the complaint, and to each and every cause of

17    action contained therein, Defendant alleges that the purported PAGA cause of action is barred to

18    the extent Plaintiff and the purported aggrieved employees seek penalties beyond the "initial"

19    violation described in California Labor Code section 2699 and/or any other applicable California

20    Labor Code provision.

21    **THIRTY-NINTH AFFIRMATIVE DEFENSE**

22    **[Doctrine of In Pari Delicto]**

23    As and for a further affirmative defense to the complaint, and to each and every cause of

24    action contained therein, Defendant alleges that to the extent Plaintiff and the purported

25    aggrieved employees were employees, which Defendant expressly denies, Plaintiff and the

26    purported aggrieved employees' claims are barred, in whole or in part, by the doctrine of in pari

27    delicto due to the conduct of Plaintiff and the purported aggrieved employees, including but not

28    limited to their voluntary waiver of the meal periods and rest breaks that they were provided the

10

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

1  opportunity to take, and their voluntary decision not to request reimbursement for any expenses
2  they incurred.

### FORTIETH AFFIRMATIVE DEFENSE

#### [Excessive Fines Violates Due Process]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiffs PAGA claim is barred pursuant to the Eighth Amendment of the United State Constitution and Article I, Section 17, of the California Constitution because the penalties impose excessive fines and violates the due process rights of Defendant.

### FORTY-FIRST AFFIRMATIVE DEFENSE

#### [Not an Aggrieved Employee]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's PAGA claim is barred because he is not aggrieved employee as that term is defined in Labor Code section 2699(c).

### FORTY-SECOND AFFIRMATIVE DEFENSE

#### [Hours Not Worked]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the hours for which Plaintiff and the purported aggrieved employees claim they are entitled to were not "hours worked" within the meaning of the applicable state and federal laws, and that Plaintiff and the purported aggrieved employees are not entitled to any penalties, income or compensation for these hours.

///
///
///
///
///
///
///

11

1    <u>**FORTY-THIRD AFFIRMATIVE DEFENSE**</u>

2    **[Additional Affirmative Defenses]**

3    Defendant has not yet completed a thorough investigation and study or completed

4    discovery of all facts and circumstances of the subject matter of the complaint and, accordingly,

5    reserves the right to amend, modify, revise, or supplement its Answer, and to plead such further

6    defenses and take such further actions as it deems proper and necessary in its defense upon

7    completion of said investigation and study.

8    WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

9    1.    That Plaintiff take nothing by this action and that the complaint be dismissed in its

10         entirety with prejudice;

11   2.    For all reasonable costs and attorneys' fees incurred by Defendant in connection

12         with the defense of this matter; and

13   3.    For such other and further relief as the Court in the exercise of its discretion

14         deems just and proper.

15

16   DATED:  April 9, 2021                          McMANIS FAULKNER

17

18   _____

19                                                    MICHAEL WARREN
                                                      Attorneys for Defendant
20                                                    GILLIG, LLC

21

22

23

24

25

26

27

28

12

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

On April 9, 2021, I served the foregoing document described as:

**DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

Kane Moon, Esq.                          Attorneys for Plaintiff
Allen Feghali                            RONALD TOLENTINO
MOON & YANG, APC
1055 W. Seventh St., #1880
Los Angeles, CA  90017
T:  (213) 232-3128 / F:  (213) 232-3125
E:  kane.moon@moonyanglaw.com
    allen.feghali@moonyanglaw.com

☒    **(BY MAIL)**
     I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this businesses' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Jose, California.

☒    **(STATE)**
     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 9, 2021, at San Jose, California.

_____
Elise Dresser

1

EXHIBIT 37

FILED BY FAX
ALAMEDA COUNTY

April 12, 2021

CLERK OF
THE SUPERIOR COURT
By Shabra Iyamu, Deputy

CASE NUMBER:
RG20073930

1   Kane Moon (SBN 249834)
        kane.moon@moonyanglaw.com
2   Allen Feghali (SBN 301080)
        allen.feghali@moonyanglaw.com
3   Enzo Nabiev (SBN 332118)
        enzo.nabiev@moonyanglaw.com
4   **MOON & YANG, APC**
    1055 W. Seventh St., Suite 1880
5   Los Angeles, California 90017
    Telephone: (213) 232-3128
6   Facsimile: (213) 232-3125

7   Attorneys for Plaintiff Ronald Tolentino

8   WILLIAM FAULKNER (83385)
    MICHAEL WARREN (223642)
9   McMANIS FAULKNER
    a Professional Corporation
10  50 West San Fernando Street, 10th Floor
    San Jose, California 95113
11  Telephone:   (408) 279-8700
    Facsimile:   (408) 279-3244
12  Email: mwarren@mcmanislaw.com

13  Attorneys for Defendant
    GILLIG, LLC
14

15              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16                    **FOR THE COUNTY OF ALAMEDA**

17
    RONALD TOLENTINO, individually, and on        Case No.: RG20073930
18  behalf of all others similarly situated,
                                                   [Hon. Judge Brad Seligman]
19              Plaintiff,
                                                   **JOINT INITIAL CASE MANAGEMENT**
20                                                 **CLASS ACTION RESPONSE**
            vs.                                    **STATEMENT**
21
22  GILLIG, LLC, a limited liability company; and  Date:  April 27, 2021
    DOES 1 through 10, inclusive,                  Time:  03:00 p.m.
23                                                 Dept.: 23
            Defendants
24
25                                                 Action Filed: September 16, 2020
26
27
28

1    Pursuant to this Court's Initial Case Management Order, counsel for Plaintiff Ronald

2    Tolentino ("Plaintiff") and Defendant Gillig, LLC. ("Defendant") (Plaintiff and Defendant are the

3    "Parties") met and conferred, and now submit this Joint Initial Case Management Class Action

4    Response Statement in advance of the Initial Case Management Conference set for April 27, 2021.

5    The format of this Report follows the items stated in the Initial Case Management Order and

6    addresses the matters counsel were ordered to discuss in advance of the Case Management

7    Conference.

8    **1.    BRIEF FACTUAL SUMMARY OF ISSUES:**

9

10    **Issues:** This case is a putative wage and hour class action.  Plaintiff alleges that

11    Defendant: (1) failed to pay minimum wages and straight time wages; (2) failed to provide meal

     periods; (3) failed to authorize and permit rest periods; (4) failed to timely pay all wages to

12    terminated employees; (5) failed to furnish accurate itemized wage statements; (6) violated

13    California's Unfair Competition Law, California Business and Professions Code section 17200 *et*

14    *seq;* and (7) Civil Penalties Under the PAGA. Plaintiff brings his first six causes of action as

15    class claims on behalf of, "All persons who worked for any Defendant in California as an hourly,

16    non-exempt employee at any time during the period beginning four years before the filing of the

17    initial complaint in this action and ending when notice to the Class is sent."

18            Defendant denies Plaintiff's allegations.  Defendant asserts that Plaintiff along with other

19    putative class members were paid all wages owed, and were provided compliant meal and rest

20    breaks in accordance with the applicable Collective Bargaining Agreements and state law.

21    Defendant also asserts that Plaintiff cannot set forth the necessary elements to establish liability

22    under Labor Code section 226.  Finally, Defendant argues that Plaintiff cannot establish the

23    requirements for certifying a class action or for maintaining a class representative lawsuit under

24    PAGA for his claims.

25

26    **2.    NUMBER OF PARTIES AND THEIR POSTURE:**

27            There are two parties involved in this matter.

28

1   **Plaintiff is represented by:**
2   Kane Moon (SBN 249834)
    kane.moon@moonyanglaw.com
3   Allen Feghali (SBN 301080)
    allen.feghali@moonyanglaw.com
4   Enzo Nabiev (SBN 332118)
    enzo.nabiev@moonyanglaw.com
5   **MOON & YANG, APC**
    1055 W. Seventh St., Suite 1880
6   Los Angeles, California 90017
7   Telephone: (213) 232-3128
    Facsimile: (213) 232-3125
8
    **Defendant is represented by:**
9   WILLIAM FAULKNER (83385)
    wfaulkner@mcmanislaw.com
10  MICHAEL WARREN (223642)
    mwarren@mcmanislaw.com
11  McMANIS FAULKNER
    50 West San Fernando Street, 10th Floor
12  San Jose, California 95113
    Telephone:     (408) 279-8700
13  Facsimile:     (408) 279-3244
14  CRAIG MARTIN (*Pro Hac Vice Application Pending*)
    cmartin@willkie.com
15  MATT BASIL (*Pro Hac Vice Application Pending*)
    mbasil@willkie.com
16  WILLKIE FARR & GALLAGHER, LLP
    300 North LaSalle Street, Suite 5000
17  Chicago, Illinois 60654
    Telephone:     (312) 728-9000
18  Facsimile:     (312) 728-9199
19
20  3.    **DEADLINES ON JOINDER OF PARTIES/AMENDED PLEADINGS:**
21          Plaintiff does not anticipate adding additional class representatives. Plaintiff, however,
22  reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, in order
23  to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan*
24  *Association* (1971) 5 Cal.3d 864, 872, and other applicable law.
25          Plaintiff also does not intend to name additional defendants, but reserves the right to do so
26  in the event discovery reveals that additional defendants should be named.
27
28

1    Defendant does not anticipate adding any cross-defendants or joining any other parties as

2  co-defendants. Defendant, however, reserves the right to seek leave to add cross-defendants or co-

3  defendants, if necessary.

4  **4.    CLASS DISCOVERY AND CLASS CERTIFICATION**

5    The Parties agree to discovery being phased between certification and merits discovery with

6  the understanding that there may be some overlap between certification and merits discovery, and

7  will attempt to resolve all discovery disputes informally. To the extent that any discovery disputes

8  arise that the Parties cannot resolve between themselves, the Parties agree to participate in informal

9  discovery conferences with the Court.

10  **5.    PROPOSED SCHEDULE FOR LITIGATION**

11    The Parties respectfully requests that the Court set a further status conference six months

12  after the initial case management conference. At that time, the Parties will be better situated to

13  provide the Court with a proposed filing deadline for Plaintiff's class certification motion and

14  the accompanying trial deadlines.

15

16  **6.    POTENTIAL EVIDENTIARY ISSUES INVOLVING**

17       **CONFIDENTIAL/PROTECTED EVIDENCE:**

18    At this time, the Parties are not aware of any evidentiary issues involving confidential

19  evidence.

20  **7.    UNSERVED PARTIES**

21    There are no unserved parties.

22  **8.    UNSERVED CROSS-COMPLAINTS**

23    At this time, the Parties do not intend to add cross-complaints.

24  **9.    RELATED ACTIONS PENDING:**

25    The Parties believe there are no related actions pending.

26  **10.   JURISDICTIONAL/VENUE ISSUES:**

27    Plaintiff believes there are none.

28

3
JOINT INITIAL STATUS CONFERENCE CLASS ACTION RESPONSE STATEMENT

1         Defendant asserts that Plaintiff's minimum wage and rest break claims are covered by the

2 applicable Collective Bargaining Agreements, and thus subject to the mandatory arbitration

3 provisions of those Agreements. The Honorable Maxine Chesney of the United States District

4 Court previously ruled in this case that an order compelling arbitration of those claims was

5 premature because there was not yet an "active dispute" as to the interpretation of the relevant

6 provisions in the Collective Bargaining Agreement ("CBA"). It is Defendant's position that in the

7 event an "active dispute" arises as to the interpretation of relevant terms of the CBA related to

8 minimum wage and rest breaks, those claims are subject to the mandatory arbitration provisions of

9 the CBA.

10 **11.    STATUS OF DISCOVERY:**

11         Plaintiff has propounded an initial set of written discovery requests and is awaiting

12 Defendant's responses.

13         Defendant will serve on Plaintiff Request for Production of Documents, Special

14 Interrogatories; Form Interrogatories – Employment, and Requests for Admissions. Once

15 Defendant has had an opportunity to review Plaintiff's motion for class certification, Defendant

16 anticipates serving additional written discovery regarding class action issues for purposes of filing

17 its opposition to class certification. Defendant also anticipates deposing Plaintiff prior to filing its

18 opposition. After the hearing on Plaintiff's motion for class certification, Defendant anticipates

19 conducting additional class-wide discovery if Plaintiff's motion for class certification is granted.

20 **12.    UNRESOLVED LAW AND MOTION MATTERS:**

21         The Parties believe there are none at this time.

22

23 **13.    ALTERNATIVE DISPUTE RESOLUTION:**

24         Plaintiff prefers private mediation and is willing to consider early mediation if appropriate

25 data is made available in advance of an early mediation.

26         Defendant is also agreeable to early private mediation once the parties have completed an

27 initial phase of required discovery.

28 **14.    SEVERANCE OF ISSUES FOR TRIAL:**

1    The Parties will meet and confer regarding bifurcation when the case nears trial and the
2    Parties have a more complete understanding of the issues that will be presented, and the evidence
3    necessary to support or refute the claims. The Parties foresee potentially requesting bifurcation
4    between liability and damages.

5

6    **15.    CALENDAR CONFLICTS FOR PARTIES AFFECTING TRIAL DATE**

7        At this time, the Parties believe it is premature to discuss any calendar conflicts given that
8    we have not scheduled a trial date.

9

10    Dated: April 12, 2021                      Respectfully submitted,

11                                               MOON & YANG, APC

12                                        By: _____
13                                               Kane Moon
                                                 Allen Feghali
14                                               Enzo Nabiev
                                                 Attorneys for Plaintiff
15

16

17    Dated: 4/12/21                             MCMANIS FAULKNER

18

19                                        By: _____
20                                               William Faulkner
                                                 Michael Warren
21                                               Attorneys for Defendant

22

23

24

25

26

27

28

5
JOINT INITIAL STATUS CONFERENCE CLASS ACTION RESPONSE STATEMENT

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA        )

3                                   ) ss

COUNTY OF LOS ANGELES     )

4

5      I am employed in the county of Los Angeles, State of Califonia. I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017. On April 12, 2021, I served the foregoing document described as:

6

7

**JOINT INITIAL CASE MANANGEMENT CLASS ACTION RESPONSE STATEMENT**

8   X  by placing ___ the original  X  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

9

10                         William Faulkner

                        Michael Warren

11               **McMANIS FAULKNER, APC**

        50 West San Fernando Street, 10th Floor

12              San Jose, California 95113

             Tel.: (408)279-8700

13              Fax: (408)279-3244

          mwarren@mcmanislaw.com

14

15          *Attorneys for Defendant Gillig, LLC*

16  [✓]  **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17

18

19

20

21

22   X  (State)      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24      Executed on April 12, 2021, at Los Angeles, California.

25

26   ___Ivette Hernandez___                */s/ Ivette Hernandez*___

         Name                        Signature

27

28

PROOF OF SERVICE

EXHIBIT 38

# Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino | No. <u>RG20073930</u> |
| Plaintiff/Petitioner(s) | |
| | Case Management Order |
| VS. | |
| | Date: 04/27/2021 |
| | Time: 03:00 PM |
| Gillig, LLC | Dept: 23 |
| | Judge: Brad Seligman |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 08/03/2021 at 03:00 PM in Dept. 23.

Parties to propose class certification motion filing deadline and meet and confer re mediation and discovery plan.

Counsel and self-represented litigants are reminded to check the court's register of action before appearing at any case management conference at least two days before any scheduled appearance to determine if the court has issued a tentative case management order. If published, this tentative case management order will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings postings on the website is for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). The court may be reached at Dept.23@alameda.courts.ca.gov.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT VIA EMAIL TO CLERK BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  04/27/2021

facsimile

_____

Judge Brad Seligman

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Tolentino VS Gillig, LLC | RG20073930 |

ADDITIONAL ADDRESSEES

McManis Faulkner
Attn:  Faulkner, William
50 W San Fernando St Ste 1000
San Jose, CA   95113

EXHIBIT 39

Moon & Yang APC
Attn: Moon, Kane
1055 W 7th St.
#1880
Los Angeles, CA   90017____

McManis Faulkner
Attn: Warren, Michael
50 W. San Fernando St.
10th Floor
San Jose, CA   95113____

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>Gillig, LLC<br><br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. <u>RG20073930</u><br><br>Order<br><br>Motion for Pro Hac Vice<br>Granted |

The Motion for Pro Hac Vice was set for hearing on 04/27/2021 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The motions of attorneys Craig C. Martin and Matt D. Basil to appear pro hac vice on behalf of defendant Gillig, LLC are GRANTED.  On or before the anniversary of the date of this order counsel must pay a renewal fee of five hundred dollars ($500). (Govt. Code § 70617(e)(2).)  The Court SETS a compliance hearing for May 3, 2022 in Department 23, Administration Building (Fourth Floor), 1221 Oak Street, Oakland.  If the renewal fees have been paid at least 10 calendar days before the hearing, then no appearance will be required.

Prevailing party shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.

Dated:  04/27/2021

_facsimile_

_____
Judge Brad Seligman

---

Order

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Tolentino VS Gillig, LLC | RG20073930 |

ADDITIONAL ADDRESSEES

McManis Faulkner
Attn: Faulkner, William
50 W San Fernando St Ste 1000
San Jose, CA   95113

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG20073930
Order After Hearing Re: of 04/27/2021

# DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 04/29/2021.
Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

digital

_____
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**
COUNTY OF ALAMEDA
René C. Davidson Courthouse
1225 Fallon Street
Oakland, CA 94612



RECEIVED
MAY 03 2021
BY: _____



U.S. POSTAGE >> PITNEY BOWES

ZIP 94612   $ 000.51⁰
02 4W
0000371203 APR 29 2021

McManis Faulkner
Attn: Warren, Michael
50 W. San Fernando St.
10th Floor
San Jose, CA   95113____

of California  County of Alameda

0811082415 0054

EXHIBIT 40

Kane Moon (SBN 249834)
    kane.moon@moonyanglaw.com
Allen Feghali (SBN 301080)
    allen.feghali@moonyanglaw.com
Enzo Nabiev (SBN 332118)
    enzo.nabiev@moonyanglaw.com
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff Ronald Tolentino

WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:   (408) 279-8700
Facsimile:   (408) 279-3244
Email: mwarren@mcmanislaw.com

CRAIG MARTIN (*Pro Hac Vice*)
cmartin@willkie.com
MATT BASIL (*Pro Hac Vice*)
mbasil@willkie.com
WILLKIE FARR & GALLAGHER, LLP
300 North LaSalle Street, Suite 5000
Chicago, Illinois 60654
Telephone:   (312) 728-9000
Facsimile:   (312) 728-9199

Attorneys for Defendant
GILLIG, LLC

**FILED BY FAX**
ALAMEDA COUNTY

July 27, 2021

CLERK OF
THE SUPERIOR COURT
By Cheryl Clark, Deputy

CASE NUMBER:
**RG20073930**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated, | Case No.: RG20073930 |
| Plaintiff, | [Hon. Judge Brad Seligman] |
| vs. | **JOINT FURTHER STATUS CONFERENCE REPORT** |
| GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive, | DATE:   August 3, 2021<br>TIME:   3:00 P.M.<br>DEPT.:   23 |
| Defendants | Action Filed:        September 16, 2020<br>Trial Date:        None Set |

1

1        Pursuant to this Court's Order issued on April 27, 2021, counsel for Plaintiff Ronald

2   Tolentino ("Plaintiff") and Defendant Gillig, LLC ("Defendant") (Plaintiff and Defendant are the

3   "Parties") met and conferred, and now submit this Joint Further Status Conference Statement in

4   advance of the Further Status Conference set for August 3, 2021.

5        The Parties have discussed the claims and defenses in this action. The Parties have each

6   served discovery, and Defendant provided responses. Plaintiff will provide discovery responses

7   shortly. After discussing this case, the Parties agreed to mediate this case following an initial

8   round of written discovery and an informal exchange of information. A mediation has been

9   scheduled for November 9, 2021, with mediator Tripper Ortman. Given the Parties' interests in

10  attempting to resolve this matter, the Parties believe it is premature to set a deadline for Plaintiff to

11  file a motion for class certification. The Parties request that this status conference be continued to

12  a date 30 days after the scheduled mediation, at which time, the Parties will have completed

13  mediation, and will have a better idea of how this case will proceed.

14                               Respectfully Submitted,

15  DATED: _____July 27_____, 2021    MOON & YANG, APC

16                               By:    /s/ Enzo Nabiev

17                               KANE MOON
18                               ALLEN FEGHALI
                                 ENZO NABIEV
19                               Attorneys for Plaintiff Ronald Tolentino

20  DATED: July 27_____, 2021    McMANIS FAULKNER

21                               By:    /s/ Michael Warren

22                               MICHAEL WARREN
23                               WILLIAM FAULKNER
                                 Attorneys for Defendant Gillig, LLC
24

25

26

27

28

**JOINT FURTHER STATUS CONFERENCE REPORT**

**PROOF OF SERVICE**

1

2  STATE OF CALIFORNIA                    )
                                         ) ss
3  COUNTY OF LOS ANGELES                 )

4       I am employed in the county of Los Angeles, State of California. I am over the age of 18
5  and not a party to the within action; my business address is 1055 West Seventh Street, Suite
   1880, Los Angeles, California 90017. On **July 27, 2021**, I served the foregoing document
6  described as:

7              **JOINT FURTHER STATUS CONFERENCE REPORT**

8  X__ by placing ___ the original  X  a true copy thereof enclosed in sealed envelope(s)
   addressed as follows:

9

10                                                        CRAIG MARTIN
        WILLIAM FAULKNER                                  MATT BASIL
11      MICHAEL WARREN                          **WILLKIE FARR & GALLAGHER,**
        **McMANIS FAULKNER**                              **LLP**
12      a Professional Corporation             300 North LaSalle Street, Suite 5000
        50 West San Fernando Street, 10th Floor          Chicago, Illinois 60654
13      San Jose, California 95113                     cmartin@willkie.com
        mwarren@mcmanislaw.com                         mbasil@willkie.com

14

15  [X]    **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California.
           The envelope was mailed with postage thereon fully prepaid. I am "readily familiar"
16         with the firm's practice of collection and processing correspondence for mailing.
           Under that practice it would be deposited with U.S. postal service on that same day
17         with postage thereon fully prepaid at Los Angeles, California in the ordinary course
           of business. I am aware that on motion of the party served, service is presumed
18         invalid if postal cancellation date or postage meter date is more than one day after
           date of deposit for mailing in affidavit.

19
        I declare under penalty of perjury under the laws of the State of California that the
20  foregoing is true and correct.

21      Executed this **July 27, 2021** at Los Angeles, California.

22
        Ivette Hernandez                              _/s/ Ivette Hernandez_
23            Name                                        Signature

24

25

26

27

28

                                        1
                                PROOF OF SERVICE

EXHIBIT 41

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Tolentino <br> Plaintiff/Petitioner(s) <br><br> VS. <br><br> Gillig, LLC <br> Defendant/Respondent(s) <br> (Abbreviated Title) | No. <u>RG20073930</u> <br><br> Case Management Order <br><br> Date:  08/03/2021 <br> Time:  03:00 PM <br> Dept:  23 <br> Judge:  Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 12/07/2021 at 03:00 PM in Dept. 23.

Counsel and self-represented litigants are reminded to check the court's register of action before appearing at any case management conference at least two days before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings postings on the website is for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). The court may be reached at Dept.23@alameda.courts.ca.gov.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110,  no later than five (5) court days prior to the CMC.  PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT VIA EMAIL TO CLERK BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

The Court orders counsel and/or self-represented parties to obtain a copy of this order from the court's website  http://www.alameda.courts.ca.gov/domainweb.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated:  08/03/2021

Judge Brad Seligman

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Tolentino VS Gillig, LLC | RG20073930 |

ADDITIONAL ADDRESSEES

McManis Faulkner
Attn: Faulkner, William
50 W San Fernando St Ste 1000
San Jose, CA   95113

# EXHIBIT 42

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
11/30/2021 at 04:04:15 PM
By: Elaine Jefferson, Deputy Clerk

Kane Moon (SBN 249834)
    kane.moon@moonyanglaw.com
Allen Feghali (SBN 301080)
    allen.feghali@moonyanglaw.com
Enzo Nabiev (SBN 332118)
    enzo.nabiev@moonyanglaw.com
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff Ronald Tolentino

WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email: mwarren@mcmanislaw.com

CRAIG MARTIN (*Pro Hac Vice*)
cmartin@willkie.com
MATT BASIL (*Pro Hac Vice*)
mbasil@willkie.com
WILLKIE FARR & GALLAGHER, LLP
300 North LaSalle Street, Suite 5000
Chicago, Illinois  60654
Telephone:    (312) 728-9000
Facsimile:    (312) 728-9199

Attorneys for Defendant
GILLIG, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated, | Case No.: RG20073930 |
| Plaintiff, | [Hon. Judge Brad Seligman] |
| vs. | **JOINT FURTHER STATUS CONFERENCE REPORT** |
| GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive, | DATE:    December 7, 2021<br>TIME:    3:00 P.M.<br>DEPT.:    23 |
| Defendants | Action Filed:    September 16, 2020<br>Trial Date:    None Set |

1

Pursuant to this Court's Order issued on July 29, 2021, counsel for Plaintiff Ronald Tolentino ("Plaintiff") and Defendant Gillig, LLC ("Defendant") (Plaintiff and Defendant are the "Parties") met and conferred, and now submit this Joint Further Status Conference Statement in advance of the Further Status Conference set for December 7, 2021.

The Parties agreed to mediate this case following an informal exchange of information. A mediation had been scheduled for November 9, 2021, with mediator Tripper Ortman. However, the Parties require additional time to conduct the informal exchange of information in order to have an effective mediation. The Parties have agreed to reschedule the mediation for June 21, 2022. Given the Parties' interests in attempting to resolve this matter, the Parties believe it is premature to set a deadline for Plaintiff to file a motion for class certification. However, if the Court is inclined to set a deadline for Plaintiff's certification motion then Plaintiff would propose 12 months after the scheduled mediation. The Parties request that this status conference be continued to a date 30 days after the scheduled mediation, at which time, the Parties will have completed mediation, and can inform the court whether the Parties were able to resolve this matter.

Respectfully Submitted,

DATED:   November 30, 2021          MOON & YANG, APC

By:   /s/ Enzo Nabiev

KANE MOON
ALLEN FEGHALI
ENZO NABIEV
Attorneys for Plaintiff Ronald Tolentino

DATED: November 30, 2021          McMANIS FAULKNER

By:   /s/ Michael Warren

MICHAEL WARREN
WILLIAM FAULKNER
Attorneys for Defendant Gillig, LLC

**PROOF OF SERVICE**

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) ss |
| COUNTY OF LOS ANGELES | ) |

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On **November 30, 2021**, I served the foregoing document described as:

**JOINT FURTHER STATUS CONFERENCE REPORT**

<u>X</u>  by placing ___ the original  <u>X</u>  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| WILLIAM FAULKNER | CRAIG MARTIN |
| MICHAEL WARREN | MATT BASIL |
| **McMANIS FAULKNER, APC** | **WILLKIE FARR & GALLAGHER,** |
| 50 West San Fernando Street, 10th Floor | **LLP** |
| San Jose, California 95113 | 300 North LaSalle Street, Suite 5000 |
| mwarren@mcmanislaw.com | Chicago, Illinois  60654 |
| | cmartin@willkie.com |
| | mbasil@willkie.com |

[X]    **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed this **November 30, 2021** at Los Angeles, California.

| | |
|---|---|
| <u>Jessica Reyes Flores</u> | <u>     /s/ Jessica Reyes Flores     </u> |
| Name | Signature |

EXHIBIT 43

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

| | |
|---|---|
| Ronald Tolentino<br>Plaintiff/Petitioner(s)<br>vs.<br>Gillig, LLC<br>Defendant/Respondent(s) | No.      RG20073930<br><br>Date:    12/07/2021<br>Time:    3:00 PM<br>Dept:    23<br>Judge:   Brad Seligman<br><br>ORDER re: Case Management<br>Conference |

ORDER RE: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

On the Court's own motion, the Case Management Conference scheduled for 12/07/2021 is continued to 07/19/2022 at 3:00 PM in Department 23 at Rene C. Davidson Courthouse.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated: 12/07/2021

Brad Seligman / Judge

EXHIBIT 44

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse, Department 23

## JUDICIAL OFFICER: HONORABLE BRAD SELIGMAN

Courtroom Clerk: Jhalisa Castaneda                                    CSR: None

---

**RG20073930**                                                    December 7, 2021
                                                                      3:00 PM

**Tolentino VS Gillig, LLC**

---

### MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Case Management Conference**

ORDER RE: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

On the Court's own motion, the Case Management Conference scheduled for 12/07/2021 is continued to 07/19/2022 at 3:00 PM in Department 23 at Rene C. Davidson Courthouse.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Chad Fluke, Executive Officer / Clerk of the Court

By:          J. Castaneda, Deputy Clerk
                    Minutes of: 12/07/2021
                    Entered on: 12/07/2021

# EXHIBIT 45

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse, Department 23

## JUDICIAL OFFICER: HONORABLE BRAD SELIGMAN

Courtroom Clerk: Nicole Hall                                    CSR: None

**RG20073930**                                             May 3, 2022
                                                              3:00 PM

**Tolentino VS Gillig, LLC**

**MINUTES**

**NATURE OF PROCEEDINGS: Compliance Hearing**

ORDER RE: CASE MANAGEMENT

The Court has ordered the following after review of the case.

The Compliance Hearing scheduled for 05/03/2022 is continued to 05/02/2023 at 03:00 PM in
Department 23 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

By:          N. Hall, Deputy Clerk
                       Minutes of: 05/03/2022
                       Entered on: 05/03/2022

EXHIBIT 46

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ALAMEDA**

**RG20073930: Tolentino VS Gillig, LLC**
**05/03/2022 Compliance Hearing in Department 23**

Tentative Ruling

ORDER RE: CASE MANAGEMENT

The Court has ordered the following after review of the case.

The Compliance Hearing scheduled for 05/03/2022 is continued to 05/02/2023 at 03:00 PM in Department 23 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

EXHIBIT 47

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
07/12/2022 at 12:36:07 PM
By: Lynn Wiley,
Deputy Clerk

Kane Moon (SBN 249834)
    kane.moon@moonyanglaw.com
Allen Feghali (SBN 301080)
    allen.feghali@moonyanglaw.com
Enzo Nabiev (SBN 332118)
    enzo.nabiev@moonyanglaw.com
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff Roland Tolentino

WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email: mwarren@mcmanislaw.com

CRAIG MARTIN (*Pro Hac Vice*)
cmartin@willkie.com
MATT BASIL (*Pro Hac Vice*)
mbasil@willkie.com
WILLKIE FARR & GALLAGHER, LLP
300 North LaSalle Street, Suite 5000
Chicago, Illinois  60654
Telephone:    (312) 728-9000
Facsimile:    (312) 728-9199

Attorneys for Defendant
GILLIG, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants | Case No.: RG20073930<br><br>[Hon. Judge Brad Seligman]<br><br>**JOINT FURTHER CASE MANAGEMNT STATEMENT**<br><br>DATE:    July 19, 2022<br>TIME:    3:00 P.M.<br>DEPT.:    23<br><br>Action Filed:    September 16, 2020<br>Trial Date:    None Set |

1

1    Pursuant to this Court's Order, counsel for Plaintiff Ronald Tolentino ("Plaintiff") and

2 Defendant Gillig, LLC ("Defendant") (Plaintiff and Defendant are the "Parties") met and

3 conferred, and now submit this Joint Further Case Management Statement in advance of the

4 Further Case Management Conference set for July 19, 2022.

5    The Parties attended a mediation on June 21, 2022, with experienced mediator Tripper

6 Ortman. Unfortunately, the Parties were not able to resolve the dispute at the mediation. Since the

7 mediation, the Parties have resumed formal discovery and are currently meeting and conferring

8 regarding previous discovery responses that were served prior to agreeing to mediation. Given that

9 discovery was produced informally ahead of the mediation and recently resumed formal

10 discovery, the Parties request a filing deadline for Plaintiff's motion for class certification of 9-12

11 months after the upcoming Further Case Management Conference.

12

13                          Respectfully Submitted,

14 DATED:July 12, 2022          MOON & YANG, APC

15                          By:    /s/ Enzo Nabiev

16                          KANE MOON
17                          ALLEN FEGHALI
                            ENZO NABIEV
18                          Attorneys for Plaintiff Roland Tolentino

19 DATED: July 12, 2022         McMANIS FAULKNER

20                          By:    /s/ Michael Warren

21                          MICHAEL WARREN
22                          WILLIAM FAULKNER
                            Attorneys for Defendant Gillig, LLC

23

24

25

26

27

28

# PROOF OF SERVICE

STATE OF CALIFORNIA         )
                                             ) ss

COUNTY OF LOS ANGELES   )

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On **July 12, 2022**, I served the foregoing document described as:

## JOINT FURTHER STATUS CONFERENCE REPORT

X_  by placing ___ the original  X_  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| WILLIAM FAULKNER (83385)<br>MICHAEL WARREN (223642)<br>**McMANIS FAULKNER**<br>50 West San Fernando Street, 10th Floor<br>San Jose, California 95113<br>Telephone:    (408) 279-8700<br>Facsimile:    (408) 279-3244<br>Email: mwarren@mcmanislaw.com | CRAIG MARTIN (Pro Hac Vice)<br>cmartin@willkie.com<br>MATT BASIL (Pro Hac Vice)<br>mbasil@willkie.com<br>**WILLKIE FARR & GALLAGHER, LLP**<br>300 North LaSalle Street, Suite 5000<br>Chicago, Illinois  60654<br>Telephone:    (312) 728-9000<br>Facsimile:    (312) 728-9199 |

### *Attorneys for Defendants*

[X]    **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed this **July 12, 2022** at Los Angeles, California.

_____Janelle Jickain_____               _____
        Name                                 Signature

EXHIBIT 48

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

| | |
|---|---|
| Ronald Tolentino | No.    RG20073930 |
| Plaintiff/Petitioner(s) | |
| vs. | Date:   07/19/2022 |
| Gillig, LLC | Time:   3:00 PM |
| Defendant/Respondent(s) | Dept:   23 |
| | Judge:  Brad Seligman |
| | ORDER re: Case Management |
| | Conference |

ORDER RE: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

The Case Management Conference scheduled for 07/19/2022 is continued to 11/15/2022 at 03:00 PM in Department 23 at Rene C. Davidson Courthouse.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC.

Plaintiff shall file his class certification motion by 4/24/2023.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated: 07/19/2022

Brad Seligman / Judge

---

ORDER re: Case Management Conference                                    Page 1 of 1

EXHIBIT 49

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse, Department 23

### JUDICIAL OFFICER: HONORABLE BRAD SELIGMAN

Courtroom Clerk: Jhalisa Castaneda                                  CSR: None

---

**RG20073930**                                                      July 19, 2022
                                                                    3:00 PM

**Tolentino VS Gillig, LLC**

---

**MINUTES**

**APPEARANCES:**

Plaintiff Ronald Tolentino represented by Enzo Nabiev appearing on behalf of Kane Moon via
virtual conference.
Defendant Gillig, LLC represented by Michael Warren via virtual conference.

**NATURE OF PROCEEDINGS: Case Management Conference**

ORDER RE: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case
Management Conference.

The Case Management Conference scheduled for 07/19/2022 is continued to 11/15/2022 at 03:00
PM in Department 23 at Rene C. Davidson Courthouse.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint)
in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council
Form CM-110, no later than five (5) court days prior to the CMC.

Plaintiff shall file his class certification motion by 4/24/2023.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

By:                      J. Castaneda, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

Minutes of: 07/19/2022
Entered on: 07/20/2022

EXHIBIT 50

1  Kane Moon (SBN 249834)
   E-mail: kane.moon@moonyanglaw.com
2  Allen Feghali (SBN 301080)
   E-mail: allen.feghali@moonyanglaw.com
3  Enzo Nabiev (SBN 332118)
   E-mail: enzo.nabiev@moonyanglaw.com
4  Julie Sohyun Oh (SBN 341157)
   E-mail: julie.oh@moonyanglaw.com
5  **MOON & YANG, APC**
   1055 W. Seventh St., Suite 1880
6  Los Angeles, California 90017
   Telephone: (213) 232-3128
7  Facsimile: (213) 232-3125

8  Attorneys for Plaintiff Roland Tolentino

9  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
10 **McMANIS FAULKNER**
   50 West San Fernando Street, 10th Floor
11 San Jose, California 95113
   Telephone:    (408) 279-8700
12 Facsimile:    (408) 279-3244
   Email: mwarren@mcmanislaw.com
13
   Attorneys for Defendant GILLIG, LLC
14
   [*Additional Counsel Listed on Following Page*]
15

16            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17                   **FOR THE COUNTY OF ALAMEDA**

18

19 RONALD TOLENTINO, individually, and       Case No.: RG20073930
   on behalf of all others similarly situated,
20                                             [Hon. Judge Brad Seligman]
21            Plaintiff,
                                               **JOINT FURTHER CASE MANAGEMNT**
22     vs.                                     **CONFERENCE STATEMENT**

23                                             Date:      November 15, 2022
   GILLIG, LLC, a limited liability company;   Time:      3:00 P.M.
24 and DOES 1 through 10, inclusive,           Dept.:     23

25            Defendants                       Action Filed:  September 16, 2020
                                               Trial Date:    Not Set
26

27

28

---

i

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
11/07/2022 at 03:35:51 PM
By: Miya Williams,
Deputy Clerk

1   CRAIG MARTIN (*Pro Hac Vice*)
    cmartin@willkie.com
2   MATT BASIL (*Pro Hac Vice*)
    mbasil@willkie.com
3   WILLKIE FARR & GALLAGHER, LLP
    300 North LaSalle Street, Suite 5000
4   Chicago, Illinois  60654
    Telephone:    (312) 728-9000
5   Facsimile:    (312) 728-9199

6   Attorneys for Defendant
    GILLIG, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT FURTHER CASE MANAGEMENT CONFERENCE STATEMENT**

1         Pursuant to this Court's Order, counsel for Plaintiff Ronald Tolentino ("Plaintiff") and

2    Defendant Gillig, LLC ("Defendant") (Plaintiff and Defendant are collectively the "Parties") met

3    and conferred, and now submit this Joint Further Case Management Statement in advance of the

4    Further Case Management Conference set for November 15, 2022.

5         Since the last Case Management Conference, the Parties have completed the *Belaire-West*

6    notice process, and Plaintiff's counsel has obtained the class contact list. In addition, Defendant

7    has taken the deposition of Plaintiff. Plaintiff also intends on taking depositions of percipient

8    witnesses, including Defendant's Person Most Knowledgeable.

9

10                              Respectfully Submitted,

11   DATED: November 7, 2022          MOON & YANG, APC

12

13                              By: _____

14                              Kane Moon
                                Allen Feghali

15                              Enzo Nabiev
                                Julie Sohyun Oh

16                              Attorneys for Plaintiff Roland Tolentino

17

18   DATED: November 7, 2022          McMANIS FAULKNER

19                              By:   */s/ Michael Warren* _____

20                              MICHAEL WARREN
                                WILLIAM FAULKNER

21                              Attorneys for Defendant Gillig, LLC

22

23

24

25

26

27

28

**JOINT FURTHER CASE MANAGEMNT CONFERENCE STATEMENT**

# PROOF OF SERVICE

STATE OF CALIFORNIA            )
                                    ) ss

COUNTY OF LOS ANGELES    )

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On **November 7, 2022**, I served the foregoing document described as:

## JOINT FURTHER CASE MANAGEMENT CONFERENCE STATEMENT

<u>X</u>  by placing ___ the original  <u>X</u>  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| WILLIAM FAULKNER (83385)<br>MICHAEL WARREN (223642)<br>**McMANIS FAULKNER**<br>50 West San Fernando Street, 10th Floor<br>San Jose, California 95113<br>Telephone: (408) 279-8700<br>Facsimile: (408) 279-3244<br>Email: mwarren@mcmanislaw.com | CRAIG MARTIN (Pro Hac Vice)<br>cmartin@willkie.com<br>MATT BASIL (Pro Hac Vice)<br>mbasil@willkie.com<br>**WILLKIE FARR & GALLAGHER, LLP**<br>300 North LaSalle Street, Suite 5000<br>Chicago, Illinois 60654<br>Telephone: (312) 728-9000<br>Facsimile: (312) 728-9199 |

### *Attorneys for Defendants GILLIG, LLC*

[X]    **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed this **November 7, 2022** at Los Angeles, California.

_____Janelle Jickain_____              _____
          Name                                     Signature

EXHIBIT 51

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

| | |
|---|---|
| Ronald Tolentino | No.    RG20073930 |
| Plaintiff/Petitioner(s) | |
| vs. | Date:    11/15/2022 |
| Gillig, LLC | Time:    3:00 PM |
| Defendant/Respondent(s) | Dept:    23 |
| | Judge:    Brad Seligman |
| | ORDER re: Case Management |
| | Conference |

ORDER RE: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

The Case Management Conference scheduled for 11/15/2022 is continued to 05/09/2023 at 03:00 PM in Department 23 at Rene C. Davidson Courthouse.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC.

Plaintiff shall file his class certification motion by 4/24/2023.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated: 11/15/2022

Brad Seligman / Judge

EXHIBIT 52

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse, Department 23

### JUDICIAL OFFICER: HONORABLE BRAD SELIGMAN

Courtroom Clerk: Jhalisa Castaneda                                          CSR: None

---

**RG20073930**                                                  November 15, 2022
                                                                        3:00 PM

**Tolentino VS Gillig, LLC**

---

### MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Case Management Conference**

ORDER RE: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case
Management Statements, without a conference.

The Case Management Conference scheduled for 11/15/2022 is continued to 05/09/2023 at 03:00
PM in Department 23 at Rene C. Davidson Courthouse.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint)
in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council
Form CM-110, no later than five (5) court days prior to the CMC.

Plaintiff shall file his class certification motion by 4/24/2023.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

By:        _J. Castaneda, Deputy Clerk_
                      Minutes of: 11/15/2022
                      Entered on: 11/15/2022

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

EXHIBIT 53

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
03/28/2023 at 10:47:25 AM
By: Gina Fu,
Deputy Clerk

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:        mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice*)
   MATT D. BASIL (*Pro Hac Vice*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois  60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:        cmartin@willkie.com
10                mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on      Case No.: RG20073930
   behalf of all others similarly situated,
17                                              **NOTICE OF MOTION FOR JUDGMENT**
                                                **ON THE PLEADINGS AND/OR MOTION**
18              Plaintiff,                      ***IN LIMINE* TO EXCLUDE ALL**
                                                **EVIDENCE RE: PLAINTIFF'S**
19       vs.                                    **MINIMUM WAGE CLAIM FOR**
                                                **ALLEGED OVERTIME HOURS**
20 GILLIG, LLC, a limited liability company; and **WORKED**
   DOES 1 through 10, inclusive,
21                                              Date:        May 2, 2023
                Defendants.                     Time:        9:15 a.m.
22                                              Department:  23
                                                Judge:       Hon. Brad Seligman
23                                              **Reservation No. 527421920323**

24                                              Complaint Filed:    September 16, 2020
                                                Trial Date:         Not set
25

26        TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

27        PLEASE TAKE NOTICE that on May 2, 2023, at 9:15 a.m. in Department 23 of the

28 Alameda County Superior Court, located at the Rene C. Davidson Courthouse, 1225 Fallon St,

                                        1

Oakland, CA 94612, defendant Gillig, LLC will, and hereby does, move for judgment on the pleadings, or in the alternative motion *in limine* to exclude all evidence regarding Plaintiff's claim for minimum wages for alleged overtime worked, as to Plaintiff's First Cause of Action set forth in his complaint therein.

This motion is made pursuant to this notice, the memorandum of points and authorities, request for judicial notice, all documents filed in this action, and on such evidence as may be allowed at the hearing on this matter.

DATED: March 24, 2023

McMANIS FAULKNER

_____
MICHAEL WARREN
Attorneys for Defendant GILLIG, LLC

WILLKIE FARR & GALLAGHER, LLP
CRAIG MARTIN (*Pro Hac Vice*)
MATT BASIL (*Pro Hac Vice*)
Attorneys for Defendant GILLIG, LLC

 Superior Court of Alameda County Public Portal

# Make a Reservation

## Tolentino VS Gillig, LLC

Case Number: RG20073930    Case Type: Unlimited Civil    Category: Other Employment Complaint Case
Date Filed: 2020-09-16    Location: Rene C. Davidson Courthouse - Department 23

## Reservation

| | |
|---|---|
| Case Name: | Case Number: |
| Tolentino VS Gillig, LLC | RG20073930 |
| Type: | Status: |
| Motion for Judgment on the Pleadings | RESERVED |
| Filing Party: | Location: |
| Gillig, LLC (Defendant) | Rene C. Davidson Courthouse - Department 23 |
| Date/Time: | Number of Motions: |
| 05/02/2023 9:15 AM | 1 |
| Reservation ID: | Confirmation Code: |
| 527421920323 | CR-OMNT4WAUXBTEFGPAP |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion for Judgment on the Pleadings | 0.00 | 1 | 0.00 |
| Court Technology Fee | 1.00 | 1 | 1.00 |
| TOTAL | | | $1.00 |

## Payment

| | |
|---|---|
| Amount: | Type: |
| $1.00 | Visa |
| Account Number: | Authorization: |
| XXXX5350 | 02959D |
| Payment Date: | |
| 1969-12-31 | |

🖶 Print Receipt    ➕ Reserve Another Hearing    👤 View My Reservations

EXHIBIT 54

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**03/28/2023 at 10:47:25 AM**
By: Gina Fu,
Deputy Clerk

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:     (408) 279-3244
5  Email:          mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice*)
   MATT D. BASIL (*Pro Hac Vice*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois 60654
   Telephone:    (312) 728-9000
9  Facsimile:     (312) 728-9199
   Email:          cmartin@willkie.com
10                  mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12

13         SUPERIOR COURT OF THE STATE OF CALIFORNIA

14              FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on        Case No.:  RG20073930
   behalf of all others similarly situated,
17                                                **MEMORANDUM OF POINTS AND**
                                                  **AUTHORITIES IN SUPPORT OF**
18          Plaintiff,                            **DEFENDANT'S MOTION FOR**
                                                  **JUDGMENT ON THE PLEADINGS**
19     vs.                                        **AND/OR MOTION *IN LIMINE* TO**
                                                  **EXCLUDE ALL EVIDENCE RE:**
20 GILLIG, LLC, a limited liability company; and  **PLAINTIFF'S MINIMUM WAGE CLAIM**
   DOES 1 through 10, inclusive,                  **FOR ALLEGED OVERTIME HOURS**
21                                                **WORKED**
          Defendants.
22                                                Date:              May 2, 2023
                                                  Time:              9:15 a.m.
23                                                Department:     23
                                                  Judge:             Hon. Brad Seligman
24                                                **Reservation No.:  527421920323**

25                                                Complaint Filed:     September 16, 2020
                                                  Trial Date:            Not set
26

27

28                                        1

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 5

II.  STATEMENT OF THE FACTS ..................................................................................... 6

III. ARGUMENT ................................................................................................................. 8

      A.   Standard For Motion For Judgment On the Pleadings/Motion *In Limine* To Exclude All Evidence ......................................................... 8

      B.   Plaintiff Cannot Seek Recovery Of Any "Overtime" As Defined By The CBA As A Matter Of Law ............................................................... 10

      C.   Plaintiff Admits He Seeks Only "Non-Overtime Hours" In His Minimum Wage Claim And Thus Is Barred From Seeking "Overtime" As Defined By The CBA ........................................................ 11

IV.  CONCLUSION ............................................................................................................ 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

# TABLE OF AUTHORITIES

Cases

*Arizona v. California,*
   (1983) 460 U.S. 605 ................................................................................10

*Blank v. Kirwan,*
   (1985) 39 Cal. 3d 311 ...............................................................................9

*Bockrath v. Aldrich Chemical Co., Inc.,*
   (1999) 21 Cal. 4th 71 ...............................................................................10

*Del E. Webb Corp. v. Structural Materials Co.,*
   (1981) 123 Cal. App. 3d 593 ...................................................................10

*Edwards v. Centex Real Estate Corp.,*
   (1997) 53 Cal.App.4th 15 .........................................................................9

*Le Francios v. Goel,*
   (2005) 35 Cal.4th 1094 .............................................................................9

*People v. Whitt,*
   (1990) 51 Cal.3d 620 ...............................................................................10

*Rakestraw v. California Physicians' Service,*
   (2000) 81 Cal. App. 4th 39 .......................................................................9

*Searle v. Allstate Life Ins. Co.,*
   (1985) 38 Cal.3d 425 ...............................................................................10

*State Ex Rel. Metz v. CCC Information Services, Inc.,*
   (2007) 149 Cal. App. 4th 402 ..................................................................10

*Stoops v. Abbassi,*
   (2002) 100 Cal. App. 4th 644 ...................................................................9

*Valerio v. Andrew Youngquist Construction,*
   (2002) 103 Cal.App.4th 1264 ..................................................................12

*Williams v. MacFrugal's Bargain-Close-Outs, Inc.,*
   (1998) 67 Cal. App. 4th 479 .....................................................................9

*Williams v. Southern California Gas Co.,*
   (2009) 176 Cal. App. 4th 591 ..................................................................10

3

1

2

*Zelig v. County of Los Angeles,*
  (2002) 27 Cal. 4th 1112 ...........................................................................................................9

3    Statutes

4

Cal. Code Civ. Proc. § 437 ...........................................................................................................9
Cal. Code Civ. Proc. § 438 ...........................................................................................................8
Cal. Code Civ. Proc. § 438(a)(2) ...................................................................................................8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO.
RG20073930

# I.    INTRODUCTION

Defendant Gillig, LLC ("Gillig") hereby moves for judgment on the pleadings on Plaintiff's claim for minimum wages as to any and all work performed "before the regular starting time or after the regular quitting time" on the grounds such time constitutes "overtime" under the applicable collective bargaining agreement ("CBA") and thus subject to dismissal pursuant to the United States District Court's previous order dismissing Plaintiff's overtime claim as preempted by the Labor Management Relations Act ("LMRA").   In the alternative, Gillig moves this court *in limine* to exclude all evidence of work performed "before the regular starting time or after the regular quitting time."   The relief that Gillig seeks should not be controversial, as Plaintiff admits in his Complaint that his minimum wage claim is factually limited to "non-overtime hours," thus any evidence regarding "overtime" is irrelevant, immaterial, and must not be considered.

Plaintiff's Complaint initially included a claim for overtime.   After removing the case to federal court, Gillig moved to dismiss Plaintiff's Complaint on the basis that his claims were subject to the terms of the CBA and thus preempted by the LMRA.   The federal court granted Gillig's motion in part, and dismissed Plaintiff's overtime claim in its entirety.   The remaining claims were then remanded to this Court.

Despite the unequivocal dismissal of his overtime claim, Plaintiff now attempts to circumvent the federal court's order and the terms of the CBA by arguing that he is entitled to recover unpaid time for work performed *before* the regular starting time or *after* the regular quitting time as part of his minimum wage claim.   Plaintiff's apparent theory for this assertion is to allege that Gillig rounded "down" the time worked by Plaintiff by excluding time worked *before* his regular starting time or *after* his regular quitting time. But Plaintiff cannot maintain this claim as a matter of law and thus to the extent his minimum wage claim involves "overtime" as defined in the CBA, his claim is subject to dismissal.

This is a critical issue in this case and warrants the Court's determination at this stage before additional time and resources, of both the court and the parties, are consumed with

5

1    litigating the case.  The parties have engaged in mediation, however, this issue left unresolved

2    prevents a mediated resolution.   Therefore, Gillig respectfully requests that its motion for

3    judgment on the pleadings, or in alternative motion for a motion *in limine* to exclude evidence,

4    be granted.

5    **II.    STATEMENT OF THE FACTS**

6    Gillig is a leading manufacturer of heavy-duty transit buses in the United States.  The

7    Company was founded in 1890 in San Francisco and moved its headquarters from Hayward to

8    Livermore in July 2017. (Request for Judicial Notice In Support Of Defendant's Motion For

9    Judgment On The Pleadings Judgment On The Pleadings And/Or Motion In Limine To Exclude

10   All Evidence Re: Plaintiff's Minimum Wage Claim For Alleged Overtime Hours Worked

11   ("RJN"), Exh. A., Declaration of Marla Loar In Support Of Motion To Dismiss ("Loar Decl."), ¶

12   3.)  Gillig's factory workforce is largely unionized.   Factory employees either belong to

13   Teamsters Local 853 ("Local 853") or the Auto, Marine and Specialty Painters Local 1176

14   ("Local 1176").  The employment of Local 853 members and Local 1176 members are governed

15   by separate, but almost identical CBAs.  (RJN, Exh. A, Exhibit 1, Local 853 CBA, and Exhibit 2.

16   2, Local 1176 CBA.)

17   Plaintiff was an employee of Gillig from May 2002 to June 2020, and he was a member

18   of Local 853 during that period.    (RJN, Exh A., Loar Decl, ¶¶ 3 and 4.)   The terms and

19   conditions of Plaintiff's employment were subject to and governed by the CBA between Gillig

20   and Local 853. (*Id.*, ¶ 4, Exhibit 1.)  Plaintiff was represented by Local 853 and at all relevant

21   times his employment was governed by the terms of the CBA.  (*Id.*, ¶ 4.)[1]

22   The CBA contains a mandatory and binding arbitration provision requiring an aggrieved

23   employee to follow specific grievance and arbitration procedures for "any disputes or grievances

24

25   _____

[1] As defined in Plaintiff's complaint, members of the proposed class are represented by either the
26   Local 853 or Local 1176.  The employment of members of Local 1176 are governed by a
     separate, but almost identical CBA.  (RJN, Exh. A., Loar Decl., Exhs. 1 and 2.)  However, since
27   Plaintiff's employment was governed by the CBA between Gillig and Local 853, Gillig will refer
     solely to that CBA for purposes of this motion.

28                                                          6

which may arise concerning the application or enforcement of this Agreement." (*Id.*, Exhibit 1, CBA, Section 9.1.) The CBA sets forth a specific provision governing overtime in Section 4.5, which provides the following:

> "All the time worked over eight (8) hours in any one (1) day, or over forty (40) hours in any one (1) week or on Saturdays, shall be paid for at the rate of one and one-half (1 1/2) times the straight-time hour rate. <u>Work performed before the regular starting time or after the regular quitting time shall be considered overtime and shall be paid for at the rate of one and one-half (1 1/2) time the straight-time hourly rate.</u> Work performed on Sundays shall be paid for at the rate of double (2) times the straight-time hourly rate. Work performed in excess of eight (8) hours on Saturdays or holidays shall be paid for at the rate of double (2) times the straight-time hourly rate. There shall be no pyramiding of premium rates."

(*Id.*, Exhibit 1, CBA, Section 4.5) (emphasis added).

On September 16, 2020, Plaintiff Ronald Tolentino ("Plaintiff"), individually and on behalf of all persons similarly situated, filed a complaint in this Court, Case No. RG20073930. Plaintiff alleged the following causes of action: (1) minimum wage violations and untimely wage payments; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to timely pay final wages; (6) wage statement violations; and (7) unfair business practices.

Gillig removed this case to federal court based on federal jurisdiction and subsequently filed a motion to dismiss Plaintiff's claims on the grounds they are preempted by Section 301 of the LMRA and thus must be grieved in accordance with the requirements of the CBA. United States District Court Judge Maxine M. Chesney granted in part and denied in part Gillig's motion finding, among other things, that Plaintiff's "right to overtime exists solely as a result [of the CBA]" and thus his overtime claim was preempted by the LMRA. (RJN, Exh. B, Order Denying Plaintiff's Motion To Remand; Granting In Part And Denying In Part Defendant's Motion To Dismiss; Remanding State Law Claims, p. 6:1-4.) Judge Chesney further dismissed Plaintiff's overtime claim "in its entirety" on the basis that Plaintiff failed to exhaust the grievance procedures set forth in the CBA. (*Id.*, p. 11:14-23.) The surviving causes of action were then remanded to this Court. (*Id.*)

On or about March 9, 2021, Plaintiff filed the operative Second Amended Class Action

1 Complaint ("Amended Complaint" or "Complaint") alleging the same causes of action as the

2 initial complaint, absent the dismissed overtime claim, and including a new cause of action under

3 the Private Attorney's General Act. (RJN, Exh. C.)  The only remaining cause of action seeking

4 unpaid wages is Plaintiff's First Cause of Action for Failure to Pay Minimum and Regular Rate

5 Wages.  Specifically, Plaintiff claims that he "and the Class are entitled to recover minimum

6 wages for all non-overtime hours worked for Defendant[s]." (emphasis added) (*Id.*, ¶ 33.)  Gillig

7 answered Plaintiff's Amended Complaint on or about April 9, 2021.  (RJN, Exh. D., Defendant's

8 Answer To Plaintiff's Second Amended Complaint.)  Gillig's answer asserted a general denial

9 and raised a number of affirmative defenses, including the affirmative defenses that Plaintiff's

10 claims are preempted by Section 301 of the LMRA and subject to binding arbitration under the

11 CBA. (*Id.*, p. 3:1-11.)

12     Despite the dismissal of his overtime claim, Plaintiff continues to seek recovery of

13 alleged unpaid wages based on a clock rounding theory.  Specifically, Plaintiff claims

14 "Defendant regularly use[sic] a system of time rounding in a manner that resulted, over a period

15 of time, in failing to compensate Plaintiff and the Class properly for all the time they have

16 actually worked..." (RJN, Exh. E, Plaintiff Ronald Tolentino's Objections And Responses To

17 Defendant Gillig, LLC's First Set Of Special Interrogatories, p. 5:12-15.)  To the extent that

18 Plaintiff's minimum wage claim seeks alleged unpaid wages for work performed "before the

19 regular starting time or after the regular quitting time" (i.e., "overtime" as defined in the CBA)

20 such a claim must be dismissed in accordance with the federal court's order dismissing

21 Plaintiff's overtime claim, or in the alternative, any evidence regarding work performed "before

22 the regular starting time or after the regular quitting time" must be excluded.

23 **III.    ARGUMENT**

24     **A.    Standard For Motion For Judgment On the Pleadings/Motion *In Limine* To
        Exclude All Evidence.**
25

26     California Code of Civil Procedure section 438 states, in pertinent part, "[t]he court may

27 upon its own motion grant a motion for judgment on the pleadings."  Cal. Code Civ. Proc. §

28

1   438(a)(2); *Le Francios v. Goel* (2005) 35 Cal.4th 1094, 1107-1009 (a party may request that the

2   Court grant a motion "upon its own motion.")  There is no requirement that the Court grant the

3   motion unaided by the parties.  "A motion for judgment on the pleadings may be made at any

4   time either prior to the trial or at the trial itself." *Stoops v. Abbassi* (2002) 100 Cal. App. 4th

5   644, 650.  "Such a motion may be made on the same grounds as those supporting a general

6   demurrer, *i.e.*, that the pleading at issue fails to state facts sufficient to constitute a legally

7   cognizable claim or defense." *Id*.  The burden of proof is on the plaintiff to show a viable claim

8   to overcome a motion for judgment on the pleadings. *Blank v. Kirwan* (1985) 39 Cal. 3d 311,

9   318; *Stoops*, *supra*, 100 Cal. App. 4th at 650.  The plaintiff must allege facts sufficient to

10  establish every element of each cause of action. *Rakestraw v. California Physicians' Service*

11  (2000) 81 Cal. App. 4th 39, 43.  In reviewing the sufficiency of a Complaint, the Court assumes

12  the truth of all well-pled allegations but does not assume the validity of contentions, deductions

13  or conclusions of fact or law. *Zelig v. County of Los Angeles* (2002) 27 Cal. 4th 1112, 1126.  In

14  granting a motion for judgment on the pleadings, "[l]eave to amend is properly denied

15  where…the facts are not in dispute and no liability exists under the law." *Williams v.*

16  *MacFrugal's Bargain-Close-Outs, Inc.* (1998) 67 Cal. App. 4th 479, 485.  Applying this

17  standard to Plaintiff's Complaint, Gillig's motion for judgment on the pleadings should be

18  granted.

19       A motion *in limine* to exclude all evidence "is essentially the same as a general demurrer

20  or motion for judgment on the pleadings seeking to end the trial without the introduction of

21  evidence." *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 26-27.  A motion *in*

22  *limine* to exclude all evidence "is properly sustained where even if the plaintiff's allegations

23  were proved, they would not establish a cause of action." *Id*.

24       The grounds for a motion for judgment on the pleadings or motion *in limine* to exclude

25  all evidence must appear on the face of the challenged pleading and/or from matters which may

26  be judicially noticed.  Cal. Code Civil Proc. § 437; *Edwards, supra,* 53 Cal.App.4th at 26-27.

27  Matters of which a Court is specifically authorized to judicially notice include a party's

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO.
RG20073930

discovery responses and deposition testimony which contradicts the allegations in the party's challenged pleading. *Bockrath v. Aldrich Chemical Co., Inc.* (1999) 21 Cal. 4th 71, 83 (the allegations in a complaint should be disregarded when they conflict with the plaintiff's judicially noticed discovery responses); *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal. App. 3d 593, 604-605 ("[t]he court will take judicial notice of records such as admissions, answers to interrogatories, affidavits, and the like when considering a [pleading attack], only where they contain statements of the plaintiff or his [or her] agent which are inconsistent with the allegations of the pleading before the court.")

The Court is expressly permitted to judicially notice such documents under "[t]he principle of truthful pleading, and is applied for the same reasons in the similar situation of pleaded exhibits which contradict allegations" in a complaint. *Williams v. Southern California Gas Co.* (2009) 176 Cal. App. 4th 591, 598. "A plaintiff may not avoid a demurrer [or other dispositive motion] by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false." *State Ex Rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal. App. 4th 402, 412. In this action, the law of the case and Plaintiff's own judicial admissions prevent him from claiming minimum wages for alleged overtime, *i.e.*, "work performed before the regular starting time or after the regular quitting time."

## B. Plaintiff Cannot Seek Recovery Of Any "Overtime" As Defined By The CBA As A Matter Of Law.

Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to control the same issues in subsequent stages of the same case. *Arizona v. California* (1983) 460 U.S. 605, 618. This doctrine is applied even when the prior decision appears to be in error. *People v. Whitt* (1990) 51 Cal.3d 620, 638. "The primary purpose served by the law-of-the-case rule is one of judicial economy." *Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435. The doctrine prevents the parties from seeking reconsideration of an already decided issue in the same case absent some significant change in circumstances. See *People v.*

1   *Whitt* (1990) 51 Cal.3d 620, 638.

2       Here, the federal court held that Plaintiff's overtime claim was preempted by the LMRA

3   because it found his right to overtime existed solely as a result of the CBA. (RJN, Exh. B., p.

4   6:2.)  The federal court further dismissed Plaintiff's overtime claim for failure to grieve and

5   arbitrate his claim in accordance with the requirements of the CBA. (*Id.*, pp. 11-12.)  It is

6   undisputed that the CBA defines overtime as "[w]ork performed before the regular starting time

7   or after the regular quitting time." (RJN, Exh. A., Exhibit 1, CBA, Section 4.5).  Therefore,

8   pursuant to the federal court's order dismissing Plaintiff's overtime claim as preempted by the

9   LMRA and subject to the terms of the CBA, Plaintiff's rounding argument cannot seek recovery

10  for "work performed before the regular starting time or after the regular quitting time," as such

11  time, if any, would be considered overtime under the CBA.

12      The law of the case doctrine precludes Plaintiff from circumventing the federal court's

13  order and avoiding the terms of the CBA.  Simply stated, if Plaintiff seeks recovery of wages for

14  "work performed before the regular starting time or after the regular quitting time" then he is

15  seeking overtime pursuant to the CBA and his claim must be dismissed in accordance with the

16  federal court's order.

17      **C.    Plaintiff Admits He Seeks Only "Non-Overtime Hours" In His Minimum
            Wage Claim And Thus Is Barred From Seeking "Overtime" As Defined By
18          The CBA.**

19      Plaintiff's First Cause of Action claims he and the Class are entitled to recover minimum

20  wages for all "non-overtime hours" worked for Gillig.  (RJN, Exh. C, ¶ 33 ["Accordingly,

21  Plaintiff and Class are entitled to recover minimum wages for all non-overtime hours worked for

22  Defendants"] and ¶ 35 ["By virtue of the Defendants' unlawful failure to pay additional

23  compensation to Plaintiff and the Class for their non-overtime hours worked without

24  pay…"])(emphasis added.)  As such, Plaintiff admits his minimum wage claim is factually

25  limited to "non-overtime hours" which, consistent with the law of the case and terms of the

26  CBA, must not include "[w]ork performed before the regular starting time or after the regular

27  quitting time." (RJN, Exh. A., Exhibit 1, CBA, Section 4.5.)

28                                         11

1     The admission of fact in a pleading is a "judicial admission."  As explained in Witkin:

2 "An admission in the pleadings is not treated procedurally as evidence; i.e., the pleading need not

3 (and should not) be offered in evidence, but may be commented on in argument and relied on as

4 part of the case.  And it is fundamentally different from evidence: It is a waiver of proof of a fact

5 by conceding its truth, and it has the effect of removing the matter from the issues. Under the

6 doctrine of 'conclusiveness of pleadings,' a pleader is bound by well pleaded material allegations

7 or by failure to deny well pleaded material allegations. [Citations.]" 4 Witkin, Cal. Procedure

8 (6th ed. 2023) Pleading, § 464.  "Because an admission in the pleadings forbids the consideration

9 of contrary evidence, any discussion of such evidence is irrelevant and immaterial." *Valerio v.*

10 *Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 127.

11     Plaintiff does not claim in his Complaint, nor can he claim without triggering the terms of

12 the CBA, that he and the Class are entitled to minimum wages for overtime hours worked.

13 Instead, Plaintiff admits his minimum wage claim is factually limited to alleged "non-overtime

14 hours" worked.  Therefore, any evidence regarding overtime or "work performed before the

15 regular starting time or after the regular quitting time" is irrelevant and immaterial, and must be

16 removed from consideration.  Consequently, any claim by Plaintiff that he and the Class are

17 entitled to minimum wages for overtime worked under a rounding theory is subject to dismissal.

18 **IV.     CONCLUSION**

19     For the above stated reasons, Gillig respectfully requests this Court grant Gillig's motion

20 for judgment on the pleadings.  Alternatively, Gillig requests this Court sustain its *motion in*

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO.
RG20073930

1    *limine* to exclude all evidence regarding Plaintiff's claim for minimum wages for alleged "work

2    performed before the regular starting time or after the regular quitting time."

3

4    DATED:  March 24, 2023                McMANIS FAULKNER

5

6

7                                      MICHAEL WARREN

8                                        WILLKIE FARR & GALLAGHER, LLP
                                       CRAIG MARTIN (*Pro Hac Vice*)

9                                        MATT BASIL *(Pro Hac Vice)*
                                       Attorneys for Defendant GILLIG, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO.
RG20073930

EXHIBIT 55

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
03/28/2023 at 10:47:25 AM
By: Gina Fu,
Deputy Clerk

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:        mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice*)
   MATT D. BASIL (*Pro Hac Vice*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois  60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:        cmartin@willkie.com
10               mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on      Case No.:  RG20073930
   behalf of all others similarly situated,
17                                              **REQUEST FOR JUDICIAL NOTICE IN**
                                                **SUPPORT OF DEFENDANT GILLIG,**
18            Plaintiff,                        **LLC'S MOTION FOR JUDGMENT ON**
                                                **THE PLEADINGS AND/OR MOTION *IN***
19     vs.                                      ***LIMINE* TO EXCLUDE ALL EVIDENCE**
                                                **RE: PLAINTIFF'S MINIMUM WAGE**
20 GILLIG, LLC, a limited liability company; and **CLAIM FOR ALLEGED OVERTIME**
   DOES 1 through 10, inclusive,                **HOURS WORKED**
21
              Defendants.                       Date:         May 2, 2023
22                                              Time:         9:15 a.m.
                                                Department:   23
23                                              Judge:        Hon. Brad Seligman
                                                **Reservation No.: 527421920323**
24
                                                Complaint Filed:    September 16, 2020
25                                              Trial Date:         Not set

26

27

28
                                        1

Pursuant to Evidence Code section 451 and 452, Defendant GILLIG, LLC ("Gillig") asks this Court to take judicial notice of the following court records, referenced and submitted in support of Defendant's Motion For Judgment On The Pleadings And/Or Motion In Limine To Exclude All Evidence Re: Plaintiff's Minimum Wage Claim For Alleged Overtime Hours Worked:

1.    Declaration of Marla Loar In Support of Motion to Dismiss [Fed. R. Civ. P. 12(B)(6), filed with the United States District Court For The Northern District Of California San Francisco, on December 4, 2020, a true and correct copy of which is attached hereto as **Exhibit A**.

2.    Order Denying Plaintiff's Motion To Remand; Granting In Part And Denying In Part Defendant's Motion To Dismiss; Remanding State Law Claims, issued by United States District Judge Maxine M. Chesney on January 13, 2021, a true and correct copy of which is attached hereto as **Exhibit B**.

3.    Second Amended Class Action And Representative Action Complaint, filed by Plaintiff on or about March 9, 2021, a true and correct copy of which is attached hereto as **Exhibit C**.

4.    Defendant's Answer To Plaintiff's Second Amended Complaint, filed by Defendant on April 9, 2021, On December 20, 2022, a true and correct copy of which is attached hereto **Exhibit D**.

5.    Plaintiff Ronald Tolentino's Objections And Responses To Defendant Gillig, LLC's First Set Of Special Interrogatories, served by mail on Defendant on August 11, 2021, a true and correct copy of which is attached hereto as **Exhibit E.**

The Court may take judicial notice of any matter specified in Evidence Code section 452. Judicial notice of the above court records is proper under Evidence Code section 452, subdivision (d), which permits judicial notice of "[r]ecords of (1) any court of this state…" (*See In re A.B.* (2008) 164 Cal.App.4th 832, 839 [judicial notice may be taken "of a record of any court in this state."].) Judicial notice of the above answer to interrogatories is proper pursuant to

1    *Bockrath v. Aldrich Chemical Co., Inc.* (1999) 21 Cal. 4th 71, 83 (the allegations in a complaint

2    should be disregarded when they conflict with the plaintiff's judicially noticed discovery

3    responses) and *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal. App. 3d 593, 604-

4    605 ("[t]he court will take judicial notice of records such as admissions, answers to

5    interrogatories, affidavits, and the like when considering a [pleading attack], only where they

6    contain statements of the plaintiff or his [or her] agent which are inconsistent with the allegations

7    of the pleading before the court.")

8

9    DATED: March 24, 2023           McMANIS FAULKNER

10

11

12                               MICHAEL WARREN
                               Attorneys for Defendant

13                                GILLIG, LLC

14                                WILLKIE FARR & GALLAGHER, LLP
                               CRAIG MARTIN

15                                MATT BASIL
                               Attorneys for Defendant GILLIG, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT   A

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:        mwarren@mcmanislaw.com

6

7  CRAIG MARTIN (*Pro Hac Vice*)
   MATT BASIL (*Pro Hac Vice*)
8  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
9  Chicago, Illinois  60654
   Telephone:    (312) 728-9000
10 Facsimile:    (312) 728-9199
   Email:        cmartin@willkie.com
11               mbasil@willkie.com

12

   Attorneys for Defendant
13 GILLIG, LLC

14

15                 UNITED STATES DISTRICT COURT

16           FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                        SAN FRANCISCO

18 RONALD TOLENTINO, individually, and on    Case No.:  20-cv-07427 MMC
   behalf of all others similarly situated,
19                                           **DECLARATION OF MARLA LOAR IN**
              Plaintiff,                      **SUPPORT OF MOTION TO DISMISS**
20                                           **[FED. R. CIV. P. 12(B)(6)]**
        vs.
21                                           Hearing Date:     January 8, 2021
   GILLIG, LLC, a limited liability company; and   Time:             9:00 a.m.
22 DOES 1 through 10, inclusive,            Courtroom:        7, 19th Floor

23            Defendants.

24

25       I, MARLA LOAR, declare as follows:

26       1.      I am currently employed as Vice President, Human Resources for Gillig, LLC

27 ("Gillig").  I have been employed by Gillig since 2016.  I am providing this declaration in support

28 of Gillig's Motion to Dismiss.  I have personal knowledge of the facts set forth herein, which are

                                            1
   DECLARATION OF MARLA LOAR IN SUPPORT OF MOTION TO DISMISS

1 | known by me to be true and correct, and if called as a witness, I could and would competently
2 | testify thereto.

3 |     2.    As a Vice President, Human Resources, I have access to and knowledge of records
4 | and other information retained by Gillig pertaining to its current and former employees. My role
5 | also requires that I be familiar with Gillig's policies. I also have access to, and familiarity with,
6 | Gillig's employee personnel files, employee time records, and payroll records.

7 |     3.    Ronald Tolentino was employed by Gillig and worked for Gillig during the period
8 | of May 2002 to June 2020. Gillig is a leading manufacturer of heavy-duty transit buses in the
9 | United States. It has been in business since 1890.

10 |     4.    I have reviewed the Complaint in the above-captioned matter, including the
11 | definition of the proposed class. Members of the proposed class are represented by either
12 | Teamsters Local 853 or by Auto, Marine and Specialty Painters Local 1176 (collectively
13 | "Unions") and their employment is governed by separate CBAs between Gillig and both Unions,
14 | respectively. Ronald Tolentino was a member of Teamsters Local 853 during his entire
15 | employment with Gillig, and thus his employment was subject to the CBA between Gillig and
16 | Teamsters Local 853. A true and correct copy of the two active CBAs between Gillig and
17 | Teamsters Local 853 and Local 1176, respectively, are attached hereto as Exhibits 1 and 2.

18 |     I declare under penalty of perjury under the laws of the State of California and the United
19 | States of America that the foregoing is true and correct.

20 | DATED: December 4, 2020 at Livermore, CA

21 |
22 |                                 _MARLA LOAR_
23 |
24 |
25 |
26 |
27 |
28 |

DECLARATION OF MARLA LOAR IN SUPPORT OF MOTION TO DISMISS

**EXHIBIT 1**

A G R E E M E N T

between

GILLIG CORPORATION

and

TEAMSTERS LOCAL 853

For the period:

January 1, 2007

through

December 31, 2011

Covering:  Production and Maintenance Employees
25800 Clawiter Road
Hayward, CA  94545

# TABLE OF CONTENTS

| SECTION | | TOPIC | PAGE |
|---|---|---|---|
| SECTION | 1 | RECOGNITION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| SECTION | 2 | MANAGEMENT RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| SECTION | 3 | UNION SECURITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| SECTION | 4 | HOURS AND OVERTIME. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| SECTION | 5 | HOLIDAYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| SECTION | 6 | VACATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| SECTION | 7 | SENIORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| SECTION | 8 | INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM . . . . . . | 12 |
| SECTION | 9 | SETTLEMENT OF DISPUTES. . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| SECTION | 10 | STRIKE AND LOCKOUT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| SECTION | 11 | HEALTH AND WELFARE. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| SECTION | 12 | PENSION PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| SECTION | 13 | NO DISCRIMINATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| SECTION | 14 | LEAVE OF ABSENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| SECTION | 15 | UNION REPRESENTATIVES AND BULLETIN BOARDS . . . . . . . . | 18 |
| SECTION | 16 | INDUSTRIAL INJURIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| SECTION | 17 | GENERAL PROVISIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| SECTION | 18 | SICK LEAVE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| SECTION | 19 | SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS. | 20 |
| SECTION | 20 | WAGES AND CLASSIFICATIONS (SEE ALSO APPENDIX "A") . . . | 21 |
| SECTION | 21 | PLANT CLOSURE AND RELOCATION. . . . . . . . . . . . . . . . . . . | 21 |
| SECTION | 22 | SEVERANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| SECTION | 23 | SUB-CONTRACTING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| SECTION | 24 | DURATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| APPENDIX | A | CLASSIFICATIONS AND WAGE RATES. . . . . . . . . . . . . . . . . . | 24 |
| | | PROGRESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| | | LEADPERSONS & FOREPERSONS . . . . . . . . . . . . . . . . . . . . . | 25 |
| | | MINIMUM RATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| | | EMPLOYEES HIRED AFTER MARCH 1, 1988 . . . . . . . . . . . . . . | 25 |
| | | ECONOMICS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| LETTER | | ATTENDANCE & TARDINESS CONTROL . . . . . . . . . . . . . . . . | 26 |
| LETTER | | VACATIONS & HOLIDAYS - "WORKABLE CREW" . . . . . . . . . . | 27 |
| LETTER | | DRUG AND ALCOHOL POLICY. . . . . . . . . . . . . . . . . . . . . . . | 28 |
| LETTER | | MARTIN LUTHER KING'S BIRTHDAY . . . . . . . . . . . . . . . . . . | 29 |
| LETTER | | SENIORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 |

# AGREEMENT

This Agreement made and entered this _____day, of _____, 2007, by and between **GILLIG CORPORATION**, hereinafter called the **Company**, and **TEAMSTERS LOCAL #853, INTERNATIONAL BROTHERHOOD OF TEAMSTERS**, hereinafter called the **Union**.

## WITNESSETH:

## SECTION 1. RECOGNITION

The Union is recognized as the sole collective bargaining agent for all production and maintenance, employees, including working foremen, employed at the Company's 25800 Clawiter Road, Hayward, California facility; excluding production control personnel, office clerical employees, guards and supervisors as defined in the Act.

In the event this facility is relocated in Alameda County, or if production and maintenance operations are expanded or transferred to another location in Alameda County, and if operations at the new location are substantially the same as, or directly connected with, the present operations so that the new location would be considered an accretion to the present bargaining unit under the National Labor Relations Act, this Agreement shall be in full force and effect at such new location.

## SECTION 2. MANAGEMENT RIGHTS

The management of the business and the direction of the working force including but not limited to the right to direct, plan, and control plant operations; to establish or schedule work to be performed; to hire and promote employees, and to discipline, or discharge employees for just cause; to discontinue jobs or work or to lay off employees for just cause; to discontinue jobs or work or to lay off employees for lack of work or other legitimate reasons not in conflict with this Agreement; to introduce new and improved; methods or facilities, to change existing methods or facilities, or to purchase supplies and service for the performance of its business; to determine the products to be manufactured and the process and means of manufacture; are exclusively the right of the management of the Company and all rights inherently a function of management and not relinquished in this Agreement remain solely with management; provided that none of the above provisions shall be used for the purpose of discriminating against any employee because of his or her membership in the Union. Should a dispute arise concerning these management rights or responsibilities, the dispute should be treated in accordance with provisions of Section 9 of this Agreement and any decision reached pursuant to Section 9 must be within the scope and terms of this Agreement.

## SECTION 3. UNION SECURITY

3.1     **Union Security**

It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement, shall remain members in good standing, and those who are not members on the effective date of this Agreement, shall on the thirty-first (31st) calendar day following the effective date of this Agreement, become and thereafter remain members in good standing in the Union.

It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall on the thirty-first (31st) calendar day following the beginning of such employment, become and thereafter remain members in good standing in the Union. The Company, upon written request of the Union, shall discharge any employee within seven (7) calendar days after receipt of such notice who fails to tender the periodic dues and initiation fees uniformly required by the Union as a condition of requiring or retaining membership in the Union. If the Union has notified the Company in writing prior to the expiration of the seven (7) days, that the employee has paid the amounts owing, the discharge shall not take place.

3

**3.2   Hiring**

The Company agrees that in hiring to fill all vacancies or new positions in any classification covered by this Agreement, that they will hire through the office of the Union, provided the Union shall be able to furnish competent and experienced persons for the work required.

If the Union is unable to furnish qualified workers within twenty-four (24) hours after the Company calls for them, the Company shall be free to procure the workers from any other source. All newly hired employees shall present management with a clearance slip from the Union prior to beginning work.

**3.3   Check-off of Union Dues**

Upon receipt of a written assignment and authorization signed by the employee of a mutually acceptable form, the Company agrees to deduct the regular monthly Union dues for the subsequent month from the pay of such employee. The amount deducted shall be in accordance with the Union constitution.

Payment shall be made to the Union on or before the tenth (10th) day of the calendar month following the deduction.

An Employee's deductions shall begin in the first calendar month following receipt of the authorization card by the Company.

Should the Company not deduct dues from any employee's pay because of either insufficient earnings or absence for any reason during the deduction period, the Company shall make appropriate deductions directed by the Union; provided however, it will be the sole responsibility of such employee to make the required dues payment directly to the Union Office.

The Union shall indemnify and save the Company harmless against any and all claims, demands, suits, legal proceedings, or other forms of liability that shall arise out of or by reason of action taken or not taken by the Company for the purpose of complying with any of the provisions of this Section or in reliance on any assignment furnished under such provisions. The provisions of this Section shall be effective only in accordance and consistent with applicable provisions of federal and state law.

**3.4   Deductions**

The Company, upon receipt of individual valid authorizations agreed to by the Company and the Union, will make payroll deductions from wages of an employee for D.R.I.V.E., P.A.T., and credit union contributions. Remittances shall be in accordance with the authorization.

## SECTION 4.   HOURS AND OVERTIME

**4.1   Regular Work Week**

(Day Shift). The regular workweek at the straight time rate shall consist of five (5) consecutive eight (8) hour working days from Monday through Friday. Payday will be weekly for all employees.

**4.2   Regular Work Day**

(Day Shift) The regular workday at the straight time rate shall consist of eight (8) consecutive hours, exclusive of meal period, during the regular workweek and between the hours of 5:00 a.m. and 1:30 p.m. The starting time and quitting time may be changed by mutual agreement between the Company and the Union.

It is agreed and understood, however, that the Company may at its discretion, schedule all, or part of, the stockroom, material handling, shipping-receiving, parts, and maintenance departments in a manner to provide eight (8) hours work between the hours of 6:00 a.m. and 4:00 p.m., Monday through Friday.

4

4.3  **Minimum Hours**

Employees who have seniority with the Company and who are ordered to report to work on any day other than Saturday, Sunday and Holidays, and who do so at the specified time shall receive a minimum of eight (8) hours' work, or if eight (8) hours' work is not furnished, a minimum of eight (8) hours' pay at the straight time rate.

Employees having seniority who are ordered to report for work on Saturday, Sunday and Holidays and who do so at the specified time shall receive a minimum of four (4) hours' work, or if four (4) hours' work is not furnished, a minimum of four (4) hours' pay at the applicable rate; provided, however, that such minimums on Saturdays and Sundays are not applicable to continuous shift workers, whose regularly scheduled days off shall be substituted for Saturdays and Sundays. The above minimum hour requirements shall not apply if such employees quit, voluntarily lay off, or are discharged for cause.

The minimum guarantee shall not apply where work is not available due to circumstances beyond the Company's control such as earthquake, fire, flood, lightning, calamity, public utility failure or shortage, insurrection, riot, strike, civil disturbance, adverse environmental condition, bomb threat, tear gas, or governmental order.

4.4  **Shift Operations**

A second or third shift may be established when more than one (1) shift is worked.

All employees on second or third shift as of March 1, 1997 will keep the differential they individually presently enjoy (i.e. Journeypersons = $1.57, Specialist A = $1.38, Specialist B = $1.28, Specialist C = $1.18. This differential will apply for these employees should they leave second or third shift and return to second or third shift at any future time.

Any employees who are hired on to or transfer to second or third shift after March 1, 1997, will receive a shift premium of $1.00 per hour. Any employee forced or required to work second or third shift for training purposes or special assignments will receive a shift differential as in the above paragraph, so long as they were hired before March 1, 1997.

There shall be a one-half (1/2) hour interval between the termination of the first shift and the beginning of the second shift. If the second shift on Friday should lap over into Saturday, there shall be no Saturday rate paid in this instance.

Employees will be offered work on any new shift created on the basis of Departmental Seniority. In the event that the desired number of employees wishing to work the new shift is not equal to the number needed by the Company, employees will be assigned by inverse seniority.

The Company may temporarily transfer a senior employee to a shift for a period not to exceed forty-five (45) workdays. At the end of forty-five (45) days, the senior employee will be transferred back to his/her previous job.

4.5  **Overtime Rate**

All the time worked over eight (8) hours in any one (1) day, or over forty (40) hours in any one (1) week or on Saturdays, shall be paid for at the rate of one and one-half (1 1/2) times the straight-time hourly rate. Work performed before the regular starting time or after the regular quitting time shall be considered overtime and shall be paid for at the rate of one and one-half (1 1/2) time the straight -time hourly rate. Work performed on Sundays shall be paid for at the rate of double (2) times the straight-time hourly rate. Work performed in excess of eight (8) hours on Saturdays or holidays shall be paid for at the rate of double (2) times the straight-time hourly rate. There shall be no pyramiding of premium rates.

4.6  **Wash-Up and Breaks**

All full-time employees shall be entitled to two (2) ten minute breaks each day. One (1) break shall be in the first half of the shift and the other during the second half of the shift. An additional break of ten (10) minutes shall be

5

taken at the end of the regular shift when three (3) or more hours of overtime is scheduled or anticipated.

**4.7    Scheduled Overtime**

The employees recognize their responsibility and obligation to perform overtime when requested by the Company and the Company agrees to give as much advance notice as conditions warrant when overtime is to be required. Disciplinary action will not be taken if less than 24 hours notice is given to work overtime. When overtime shifts are necessary, written notice will be posted at least five (5) working days in advance.

An employee shall not be obligated to work overtime provided he gives 24 hours notice to the Company on forms provided, which shall, upon request, state the reason for not working the overtime. The notice form shall be initialed by his supervisor with a copy returned to the employee with the date and time received. There shall be no concerted refusal to work overtime and employees shall not abuse the right to refuse overtime by repeated unjustified refusals to work overtime:

Any employee transferring from his/her regular department into another department during the course of a work day will be eligible for overtime on a job continuation basis with the following exceptions:

> (1) If overtime has been posted in that department prior to the lunch break and an employee is transferred in after lunch, he/she is not eligible for overtime on a job continuation basis within that department; further, he/she has no bumping rights of regular employees in that department who have already accepted overtime for that day.

> (2) In cases where overtime hasn't been posted prior to the lunch break, an employee transferring into a department with less than two (2) hours remaining in the regular work day will not be eligible for overtime on a job continuation basis until all regular employees of that department and all employees transferred in with two (2) or more hours left in the regular work day have been asked.

**4.8    Weekday Overtime**

Overtime during the regular workweek will be given by job continuation. Any employee who is performing a specific job where overtime for that day is required will be asked to continue that job. If the employee asked refused the overtime, and no other employee is performing that job, the overtime will be offered to the most senior employee in that department who is qualified to perform the job required.

**4.9    Saturday, Sunday and Holiday Overtime**

Saturday, Sunday and Holiday overtime shall be offered to the most senior employee in the department on that shift who is qualified to perform the job required.

When the work force is reduced the senior employees will have the option of continuing the day, or leaving and allowing a junior employee to stay for the remainder of the day.

The Company shall post a schedule of employees who are to work overtime on a Saturday, Sunday or Holiday at least twenty (20) hours in advance of the scheduled overtime. Any employee who claims he was denied an opportunity to work overtime shall notify his foreperson or supervisor of his claim before the end of his last shift prior to the scheduled overtime, or be barred from making any such claim.

On Saturday, Sunday and Holidays, if only one shift is required to work overtime, assignments will be made by overall seniority in a department provided the most senior employee is qualified to perform the job required.

6

# SECTION 5. HOLIDAYS

5.1    **Paid Holidays**

The following days shall be observed as Holidays on which no work is performed, except as provided herein:

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| President's Day | Day after Thanksgiving |
| Memorial Day | Day before Christmas |
| Fourth of July · | Christmas Day |
| Labor Day | 2 Floating Holidays* |

*A minimum of two weeks' advance notice must be given to the Company before a floating holiday is granted and the Company reserves the right to deny requests which would leave the Company without the number of employees required to maintain a workable crew. Floating holidays that are scheduled and approved forty-five (45) days prior to the selected day shall not be subject to being bumped on the basis of seniority.

The Company will allow a minimum of one (1) employee per day to take a floating holiday on any days where no more than ten (10%) percent of the workforce is known to be off.

*Any floating holiday not taken or scheduled to be taken by December 1st of any calendar year will be paid to the employee at the next regularly scheduled payday.

5.2    **Qualifying**

All regular employees (those continuously employed thirty (30) days or more) shall receive eight (8) hours pay at the employee's straight-time hourly rate even though no work is performed on the above-named holidays; provided, further, that such employees must work the full day on both the last regular working day immediately preceding the holiday and on the first regular working day following the holiday, and unless the employee so works he shall receive no pay for such holiday unless such absence on the regular working day before and after said holidays is due to the express written permission of the Company or because of bona fide illness evidenced by a physician's certificate.

To be eligible for floating holidays an employee must be on the payroll for one year.

It is agreed that an employee may be no more than one half (1/2) hour late at the beginning of the scheduled day before or the scheduled day after the paid holiday and still qualify for holiday pay. Time lost over the above allowances shall de deducted from the employees' holiday pay at the rate of one for one.

If an employee is absent the last two (2) scheduled working days before a two-day holiday or the first two (2) scheduled working days after a two-day holiday or the last scheduled working day before and the first scheduled working day after a two-day holiday, the employee will lose two (2) days' holiday pay.

5.3    **Saturday and Sunday Holidays**

If any of the holidays designated in this Section falls on Sunday, the following Monday shall be observed. If any of such holiday falls on a Saturday, it shall be observed on the Friday immediately preceding.

Employees ordered to work on holidays listed in this Section 5 shall be paid at the rate of one and one-half (1 1/2) times the straight-time hourly rate: provided that an employee who is entitled to pay for any such Holiday if not worked, shall receive such Holiday pay in addition to the one and one-half (1 1/2) time he is paid for working.

7

# SECTION 6.  VACATIONS

### 6.1    Duration and Pay

An employee's anniversary date shall constitute the beginning of his or her vacation year. An employee must work a full year and be on the active payroll at the beginning of the last anniversary year in order to qualify for vacation benefits for the previous year. Vacation is considered to be a benefit earned for work performed during the previous year. Work time lost due to layoff or leave or absence will not be considered for vacation time earned. Vacation benefits will be prorated on the basis of time worked during the anniversary year less time spent on layoff or leave of absence, on the basis of one-twelfth (1/12) of the regular benefit entitlement for each full month worked during the anniversary year. For employees who are off of work due to disability or industrial injury or illness, sixteen-hundred (1600) hours worked or paid for in their anniversary year shall constitute qualification for full vacation pay. For pro-ration purposes, sixteen-hundred (1600) hours shall be used as the base.

### Vacation Qualifications

One (1) week's vacation with pay after one (1) years' continuous service

Two (2) week's vacation with pay after two (2) years' continuous service

Three (3) weeks' vacation with pay after five (5) years' continuous service

Four (4) weeks' vacation with pay after fifteen (15) years' continuous service

Five (5) weeks' vacation with pay after twenty-five (25) years' continuous service

Vacation pay shall be computed at forty (40) times the straight -time hourly rate in each week's vacation.

### 6.2    Vacation Schedule

After the vacation is earned, vacation benefits may be taken at any time during the employee's anniversary year which is mutually agreeable between the employee and the Company. The Company will usually not permit vacations to be scheduled during Inventory time.

A vacation schedule shall be posted during the month of December for employees to select their vacation periods for the next calendar year. Vacations will be scheduled according to seniority within a department. Once a vacation is scheduled, it shall not be changed except for emergency or proper cause, and seniority will not be recognized with respect to selecting a new vacation period. (Note: current calendar year vacations would have been bid the previous December.)

Full weeks will be scheduled prior to daily vacations. An employee who has three (3), four (4), or five (5) weeks of vacation may schedule all of his/her entire vacation at once, but the Company may, as business requires, permit no more than two (2) weeks to be taken at one time.

It is agreed, however, that the Company may limit the number of employees out of any one department to a maximum of ten percent (10%) (to the nearest whole person, with a minimum of one (1) person in a department where ten percent (10%) does not equal a whole person). It is further agreed that the Company may schedule vacation requests to maintain a workable crew in a specific area within a department.

Upon the request of a laid off employee, the Company shall pay all accrued vacation time at the time of the layoff. If no request is made, the employee shall receive vacation pay and the time off when scheduled to take vacation assuming he/she has been recalled at that time. A laid off employee may request payment for accrued vacation at any subsequent date if he did not request it at the time of the layoff, however, if he/she does so, unpaid time off upon return to work is waived.

8

**6.3**    Not Cumulative

Neither vacations nor vacation pay will be cumulative from year to year. No employee shall accept vacation pay in lieu of time off except when mutually agreed between Company, Employee and the Union. Earned vacation pay shall not be lost.

**6.4**    Pay in Advance

Vacation paychecks shall be issued on the last scheduled working day preceding the employee's vacation period; provided, however, such employee shall have indicated his vacation date during the vacation bidding in December or has given the Company one week's notice. Such checks shall be in addition to the normal weekly earned check and shall be by a separate check.

**6.5**    Holiday Within Vacation

If a Holiday for which he/she would otherwise be paid falls within employee's vacation period, he/she shall receive an additional day off with pay.

**6.6**    Accumulated Vacation Credit

(1)  No Employee shall receive vacation or pay until he/she has completed his/her introductory period. Accrued vacation credit shall then be computed from time of hire.

(2)  A seniority employee who is terminated for any cause shall be entitled to vacation pay for any unused vacation for which he qualified on the prior anniversary date and, in addition, vacation pay prorated from the prior anniversary date to the date of termination in accordance with the qualification schedule in Section 6.1.

(3)  An employee who terminates after completing the introductory period set forth in Section 8.1 shall receive prorated vacation pay.

## SECTION 7.  SENIORITY

**7.1**    Definition and Qualification

Seniority is defined as the length of time an employee has been continuously employed within the bargaining unit. Seniority shall not apply to any employee until he/she has completed his/her introductory period, as defined in Section 8. Once attained, seniority shall be effective as of the date of his/her employment, and it shall continue without interruption unless lost as provided herein. Seniority shall only be recognized where specifically provided herein.

An employee's seniority shall be lost and he/she shall be terminated when he/she:

      (1)   Formally quits.
      (2)   Is discharged for cause.
      (3)   Fails to show up for work or fails to call in for three (3) consecutive days.
      (4)   Fails to return to work from an official leave of absence.
      (5)   Fails to return to work within three (3) days after he/she has been notified by telephone or telegraph to report for work from layoff status.
      (6)   Is laid off for a period of :
            a)  Employees with less than four (4) years seniority - twelve (12) consecutive months.
            b)  Employees with four (4) or more years - eighteen (18) consecutive months.
      (7)   Is unable to return from a medical leave of absence within the same time restraints as outlined in (6) above.

9

7.2    Layoff and Recall

These departments shall be recognized for the purposes of layoff and recall: Body Shop, Chassis, Electrical, Fabrication, Final, Frame, Maintenance, Paint, Sheet Metal, Tooling, Trim, Warehouse, Parts, and Labor Pool. Bargaining unit seniority shall be used to determine layoff and recall rights within a department regardless of how long an employee has been in a department or how he/she got there.

In the event a layoff in a department is necessary, the following procedure will be followed:

(1)    For all layoffs, introductory employees shall be laid off before other employees

(2)    Employees shall be laid off by seniority in the department affected, less senior first so long as the remaining employees are qualified to perform the work required. Any employee laid off from one department may exercise his/her seniority and bump a less senior employee from any department if:

a) 1.    He/she was previously assigned to that department for a minimum of twenty (20) consecutive days or more and has performed the work of the employee he/she wants to bump for at least ten (10) days, and

2.    He/she has satisfactorily performed in that department within the last three (3) years.

OR

b)    If an employee does not qualify as stipulated above, he/she may also qualify to bump as follows:

1. Welders in Departments 05 and 04 may bump to either by seniority
2. Electricians may bump by seniority to an electrical job in any department
3. Employees in Warehouse and Parts departments are entitled to cross bump.

Employees retained or re-hired because of seniority must be willing, competent and qualified to perform the work to be done.

A twenty-four (24) hour notice of layoff will be given to an employee who is to be laid off, except no notice will be required for the employee who is displaced through bumping.

(3) Employees who exercise their bumping rights through this bumping clause shall be paid their regular rate of pay in their new job.

(4) Once an employee has exhausted all bumping possibilities contained in paragraph 2, he/she shall be allowed to bump a less senior employee who is still working provided he/she is qualified to perform the work of the employee to be bumped. This shall only be applicable if the more senior employee is subject to lay-off from the active payroll.

The foregoing shall not apply if the less senior employee is a welder, machine operator, electrician, finish painter or finish bodyman, unless the senior employee has performed the job in the past at Gillig or elsewhere and if necessary successfully passes a skills test.

(5) Laid off employees will be recalled to work into the departments from which they are laid off in reverse order of their layoff. Employees displaced by the bumping procedure will return to their former departments according to their seniority, more senior first. In the event a job becomes available in a department from which no employees are on layoff, the Company will, before he hires a new employee to fill the opening, recall from layoff the most senior employee who is qualified.

10

### 7.3 Seniority List

The Company shall keep an up-to-date departmental seniority list of all employees covered by this agreement and post the seniority list in a conspicuous place. This provision is for the convenience of the parties and in case of any dispute concerning the accuracy of the list, the provisions of this Agreement and not the posted list shall control. Company shall at all times of layoff post a list of introductory employees.

### 7.4 Salaried Positions

If an employee is requested by management to fill a salaried position and accepts, he/she shall be excluded from the coverage of this Agreement. In the event the Company subsequently transfers such employee or such employee requests a transfer back to a position covered by this Agreement within six (6) months from his/her promotion, he/she shall be credited with the seniority, which he had on the date he was promoted to his/her salaried position. The Company shall notify the Union in writing of the date the employee begins the salaried position.

### 7.5 Department Transfer Requests and Involuntary Transfers

1. Employees with at least one (1) year of seniority, who are not on a final warning for attendance, shall be given the opportunity to designate a department they wish to transfer to. This designation may be made any time, by submitting a transfer form to the Human Resource Department. The Human Resource Department will attempt to grant a job transfer request at any time that business conditions will allow the transfer, without the disruption of normal operations. On a regular basis, all job transfer requests will be reviewed prior to hiring a new employee. An employee will be allowed to maintain a single job transfer request on file at any time. The Company will post the results of the selection.

   LABOR POOL: Labor pool employees shall be permitted to work within a department without their presence constituting an "opening" within said department for transfer purposes, under the following circumstances: filling in for vacation relief, for employees off of work due to medical reasons, absences, absences due to disabilities shorter than sixty (60) days in duration, or for short term special projects that do not exceed one project or sixty (60) days duration.

   When two equally qualified employees are seeking a transfer to the same department, and a transfer is granted, seniority shall prevail.
   An employee who has been transferred at his/her request shall not be allowed to request another transfer for one (1) year.
   Employees shall be deemed to be temporarily unqualified for transfer if they are currently on a written final disciplinary warning.
   An employee who has been transferred to another shift at his or her request will not be allowed to request another shift transfer for one (1) year.

2. Whenever it is necessary to involuntarily transfer an employee to another department, the employee and the shop steward shall be informed of the reason(s) for that transfer. The employee involuntarily transferred shall have the right to submit a transfer request or a request to return to the department he or she was transferred from. The Company shall attempt to honor such requests within ninety (90) working days; provided, however, upon showing cause, the Company shall have the option of delaying honoring the request for a period of six (6) months.

   The company shall not be limited to the six (6) months referred to above if the employee was moved due to reduction in production in a department, the employee was moved to avoid being laid off or the plant is in a layoff situation.

   Prior to temporarily transferring employees out of their normal assignments, the Company will first exhaust the Labor Pool and/or summer help, if these individuals are qualified to do the necessary work.

11

7.6    **Stewards Seniority**

All regular shop stewards shall have top seniority for purposes of layoff.

## SECTION 8.  INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM

8.1    **Introductory Period**

An introductory period of sixty (60) days shall be established.  To this period shall be added the number of days an introductory employee is absent from work during the initial sixty (60) day period.  Absences due to injuries covered by Worker's Compensation of less than a total of seven (7) days shall not be added to the sixty (60) days introductory period.

During the introductory period, an employee may be discharged for any reason, which, in the opinion of the Company, is just and sufficient, except for legitimate Union activity.

8.2    **Right of Discharge**

For all offenses, other than those listed below, the Company agrees to give a written warning prior to discharge.  Written warnings will be removed from an employee's personnel file after twelve (12) months from the date the warning is given.  No written warning need be given if the discharge is for:

a.  Theft or willful damage to Company property or the property of another employee.

b.  Possession of, or reporting under the influence of, intoxicating beverages, use of illegal drugs or controlled substances without a valid prescription.

c.  Gross insubordination.

d.  Fighting on Company Property.

e.  Possession of firearms or explosives on Company premises.

f.  Falsification of a time card or other Company record.

g.  Failure to show up for work or fails to call in and misses three (3) consecutive shifts.

h.  Participating in unsafe acts that endanger life.

I.  Sleeping on the job during working hours.

When an employee is discharged, the Company shall notify the Union within twenty-four (24) hours, in writing, of the action taken and the reasons for the action.  A copy of the reasons for the discharge shall be given to the discharged employee.

8.3    **Appeals**

If any employee feels he/she has been unjustly discharged, he/she shall have the right to appeal his/her case to the Adjustment Board through the Union.  Such appeals must be filed in writing by the Union within three (3) working days from the date the Union is notified by the Company of such discharge and unless so filed the right of appeal is lost.  It is agreed that no employee shall be discharged while he/she is on vacation, authorized leave of absence or absent due to bona fide illness.

12

8.4     **Discipline Procedure**

In all cases of discharge or written reprimand, the employee to be disciplined will be brought to the shop superintendent's office and the disciplinary action taken in the presence of a steward. After the passage of twelve (12) months, a written reprimand may not be used against an employee in discipline or discharge, and will be deleted from his/her personnel file.

8.5     **Absenteeism**

On evaluating absences for purposes of determining excessive absenteeism, the Company will not base disciplinary action upon any absence for holidays, vacations, Union business, state disability, industrial injuries, paid leaves, leaves pre-excused by management, except in cases of chronic absenteeism.

## SECTION 9. SETTLEMENT OF DISPUTES

9.1     **Grievance Procedure**

In the event of any disputes or grievances which may arise concerning the application or enforcement of this Agreement, other than discharge (see Section 8.3), an aggrieved employee shall, within three (3) working days after he/she first had notice to the facts on which the grievance is based, discuss the grievance with his/her immediate supervisor, and both parties will endeavor to adjust the matter. Failing such adjustment, within three (3) working days, the aggrieved employee and the shop steward may take the grievance up with the plant superintendent and both parties shall endeavor to adjust the matter. Failing such adjustment, within the next three (3) working days, the grievance may be taken up with the plant manager by the business agent, the shop steward and the aggrieved employee by their submitting a written statement of the grievance which states the specific facts and sections of the Agreement on which the grievance if based, and scheduling a grievance meeting within the next three (3) working days unless such time is extended by mutual agreement to a date certain.

At such plant grievance meeting, each party shall set forth fully and fairly the facts and contentions in support of its position and shall endeavor to adjust the matter. In the event of failure to adjust the matter at the plant grievance meeting, either party may, within the next three (3) working days, give written notice of its desire to obtain the formal determination of the dispute in accordance with the following provisions. (Complaints involving payment of compensation shall be in writing and no adjustments shall be retroactive for more than ninety (90) days.)

9.2     **Board of Adjustment**

Upon receipt of such notice, a representative of the Union and a representative of the Company will, if unable to resolve the dispute, promptly establish a Board of Adjustment and prepare a written statement of the issue for submission to such Board of Adjustment; provided, however, either party, whereupon the grievance may be submitted directly to a neutral arbitrator as if a deadlock had been declared.

The Board shall consist of two (2) members selected by the Company and two (2) members selected by the Union. The two (2) members selected by the Union shall not include representatives of the Local Union party to this Agreement, and the two (2) members selected by the Company shall not include persons on the payroll of the Company who supervise, directly or indirectly, the aggrieved employee or who are otherwise involved in the dispute. The Board of Adjustment shall elect a Chairman and a Secretary and adopt rules of procedure. The Board shall proceed to hear the issue submitted to it promptly, each party being permitted to present such evidence as may be material. The Board shall have no jurisdiction or authority to add to, subtract from, or alter in any way the provisions of this Agreement, but shall have authority to interpret or apply the provisions thereof only to the extent necessary for determination of the grievance submitted to it for determination.

If a majority of the Board can agree on a determination of the grievance, it shall render such decision promptly in writing, a copy of such decision to be delivered to each party. Such decision of the Board shall be final and not serve as a precedent in any other case. If a majority

13

of the Board cannot agree on a decision within a reasonable time after conclusion of the hearing, a deadlock shall be declared and the matter may be submitted by either party to a neutral arbitrator in the following manner.

**9.3     Arbitration and Selection of Arbitrator**

A neutral arbitrator shall be selected from a panel of seven arbitrators provided by the Federal Mediation and Conciliation Service. The parties shall then strike names from the list, the Union striking first. The last remaining named person shall be requested to be the arbitrator.

**9.4     Arbitrability**

Any claim or proposal by a party to add to or alter this Agreement, and any matter arising out of any such claim or proposal, shall not be arbitrable. Any dispute as to the arbitrability of any given matter shall be resolved by a court of competent jurisdiction and not by an arbitrator or Board of Adjustment, unless the parties specifically agree otherwise in writing.

**9.5     Arbitration Procedure in Discharge Cases**

In discharge cases, the hearing shall be held on the first available date and, unless specifically requested by the arbitrator or one of the parties, the case shall be heard and determined without transcript or filing of briefs and the arbitrator shall be instructed to issue his award from the bench if possible, or in any event within twenty-four (24) hours after the conclusion of the hearing, with an opinion, if requested by either party to be subsequently prepared.

**9.6     Arbitration Decision and Award**

Except as otherwise provided, the arbitrator shall issue his/her decision and award within thirty (30) days after the case is submitted for decision. The arbitrator shall have no authority to add to, delete from, or otherwise alter this Agreement. The award of the arbitrator, if consistent with the foregoing, shall be final and binding upon the Company, the Union and all employees concerned.

**9.7     Cost of Arbitration**

Each party shall bear its own expense in presenting its case to the arbitrator. The expense of an arbitrator shall be divided equally between the parties.

**9.8     No Interruption of Work**

There shall be no interruption of work during the settlement of a grievance.

## SECTION 10. STRIKE AND LOCKOUT

**10.1     Strikes**

The Union and its members agree not to engage in, endorse or encourage any strikes or stoppages of work during the term of this Agreement.

It shall not be a violation of this Section if individual employees of the Company covered by this contract refuse to cross a legitimate picket line at the Company established by another union, provided that:

1.      The striking union is the recognized collective bargaining representative of other employees of the Company.

2.      The picket line has been officially sanctioned by the Teamsters Joint Council No. 7 and /or the Central Labor Council of Alameda County, the Building Trades Council of Alameda County, or another appropriate labor body.

14

10.2     Lockout

The Company agrees not to engage in a lockout during the term of this Agreement.

<p style="text-align:center;">SECTION 11.  HEALTH AND WELFARE</p>

11.1     Eligibility

New employees of the Company shall become eligible for participation in the Health, Welfare, Dental, Drug and Vision Plans upon the first of the month following completion of three (3) consecutive calendar months in which the employee has worked or been paid for eighty (80) hours.

11.2     Health & Welfare

For employees who are members of Teamsters Local 853, the following applies:

1.  Fund.  There is an established jointly trusteed health and welfare fund known as Teamsters Benefit Trust Fund, Plan IIIA (hereinafter called the Fund) which provides life insurance benefits for eligible employees and their eligible dependents, hospital-medical benefits for eligible retired employees and their eligible dependents, dental care benefits for eligible employees and their eligible dependents, prescription drug benefits for eligible employees and their eligible dependents, orthodontic benefits for eligible employees and their eligible dependents, and disability benefits for eligible employees only in the amount of forty dollars ($40.00) per week, for a maximum period of twenty-six (26) weeks per calendar year. The disability benefits shall be provided through the Teamsters Benefits Trust Fund, and the cost shall be borne by the Company, subject to the limitations set forth in 11.4.

2.  The Company shall begin payments to the Fund on behalf of any employee who works or is paid for (80) hours in a calendar month. This shall begin with the employee's first month of employment.

11.3     Illness or Injury

Employees with seniority who are off the job due to a bona fide illness or injury for a period in excess of three (3) months - the waiver of premium period - shall be entitled to three (3) additional months' full benefit coverage, including their eligible dependents, and the Company shall be required to make the required contribution on their behalf for the duration of said employee's disability, not to exceed three (3) months.

11.4     Company Contribution

Effective January 1, 2007, the Company shall pay the sum of One Thousand Fifty-Two Dollars and Eighty Cents ($1052.80) per month, per employee, to the Teamsters Benefit Trust Fund Plan IIIA for employee's health & welfare. Additionally, beginning January 1, 2008, and each year thereafter during the term of this agreement, an additional Twenty-Five Dollars ($25.00) per employee, per month, shall become available for future increase. These amounts shall be cumulative and unused amounts shall be available for subsequent years. If these additional funds are not needed for employee's health & welfare, they will automatically be placed into the Pension Plan, as set forth below. The Union will advise the Company no later than December 1st of each calendar year where the funds will be applied on the next January 1st.

In the event the Union chooses to subscribe to a less expensive plan than the current TBT Plan IIIA, the Company agrees to the following:

The Company will allow the complete difference in costs (the difference between Plan IIIA and a less expensive new plan) to be contributed to each employee's SIP 401(k) account. Future cost increases in the subsequent years will be backed out of the contribution account, after the Twenty-Five Dollars ($25.00) cited in the preceding paragraph is credited to the increased contribution rate. The remaining amount, if any, will continue to be contributed to the SIP 401(k) Plan. If

<p style="text-align:center;">15</p>

the increases exceed the original difference, the employees will be required to divert the difference from the scheduled wage increase in accordance with the provisions of the preceding paragraph.

## SECTION 12. PENSION PLANS

### 12.1   Company Contribution & Eligibility

Effective January 1, 2007, for employees who are members of Teamsters Local 853, the Company shall pay the sum of Three Hundred Eighty Dollars and Sixty-Six Cents ($380.66) per month per employee to the Automotive Industries Pension Trust Fund to provide pension benefits.

In addition to the amounts listed in the paragraph above, the Company shall pay Fifteen Dollars ($15.00) per month to the Supplemental Income 401 (k) Plan. The Company agrees to make weekly pre-tax deductions as directed by the employees and forward the deductions, along with the above referenced contribution, to the 401(k) Plan administrator on a timely basis as required by law. The Company also agrees to pay the monthly administrative fee on behalf of each participating employee.

The Company shall transmit said pension payments to the Automotive Industries Pension Trust Fund, the Supplemental Pension Benefit Trust Fund and the Supplemental Income 401(k) Plan Fund on the first (1st) day of each month, and in no event later than the fifteenth (15th) day of each month.

New employees of the Company shall become eligible for participation in the Pension Plan upon the first (1st) day of the month following completion of ninety (90) calendar days of employment.

## SECTION 13.   NO DISCRIMINATION

There shall be no discrimination of any kind because of race, creed, color, national origin, sex, or union activities against any employee or applicant for employment by the Company or by anyone employed by the Company; and to the extent prohibited by applicable state and federal law there shall be no discrimination because of age.

## SECTION 14.   LEAVE OF ABSENCE

### 14.1   Approved Leaves

Employees with more than one (1) year of continuous service shall be granted leaves of absence of from not *less* than one (1) week to thirty (30) days. Leaves in excess of thirty (30) days, not to exceed six (6) months, if granted, shall be in writing with a copy sent to the Union. Personal leaves of absence will not be granted to employees on a final for attendance.

Prior to receiving a personal leave of absence, an employee must first have used all available earned vacation and all earned personal holidays.

If the Company believes the number of leaves requested at any one time hampers the functioning of a department, after all other reasonable efforts are made to otherwise staff the department, it may deny further leaves, using seniority and need as its criteria for doing so.

Requests for unpaid funeral leave extensions may be for periods of less than one (1) week.

A vacation request, which has been denied, may not be changed to a request for a leave of absence and a request for a leave of absence may be denied when a full compliment of employees is on vacation.

A leave will be denied if the Company believes it has been requested to circumvent the attendance policy. Such a denial is subject to the grievance procedure. The Company may deny a leave that is an extension of a vacation; provided however, a one (1) week leave will be granted as an extension to a vacation for the purpose of traveling to a foreign country, if the ten percent (10%) departmental limitation is not exceeded.

16

An employee on any leave shall not engage in gainful employment without written permission from both the Company and the Union.

Vacation time shall not accrue while an employee is on a leave, nor shall holidays which occur during a leave be paid.

Family and medical leaves shall be granted in accordance with Federal and State laws and the regulations issued pursuant to such laws.

14.2 **Military Service**

Any employee covered by this Agreement and agreements supplementary hereto who leaves a position other than a temporary position with any Company covered by this Agreement, for immediate induction into any of the armed forces of the United States, shall be re-employed if application is made within ninety (90) days after he/she is discharged from the armed forces, in accordance with the provisions of Section 9B of the Selected Services Act of 1948 and any official amendment or modification thereof.

14.3 **Funeral Leave**

In the event of a death in the immediate family of an employee who has completed the introductory period set forth in Section 8.1, shall be granted three (3) working days off with pay. Requests for unpaid funeral leave extensions may be for periods of less than one (1) week

This provision does not apply if the death occurs while the employee is off on leave of absence, layoff, or sick leave.

For the purpose of this provision, the immediate family shall be restricted to father, mother, brother, sister, spouse and child, mother-in-law, father-in-law, brother-in-law, sister-in-law, step-children, step-parents, grandparent, spouse's grandparent, and grandchild. At the request of the Company, the employee shall furnish proof of death and relationship.

If a death in the immediate family occurs while an employee is on vacation, the employee shall have the option to cancel any unused portion of the vacation and use funeral leave, so long as the employee attends the funeral service.

14.4 **Jury Duty**

When an employee working under the jurisdiction of this Agreement necessarily loses time from work because of jury duty, the Company shall reimburse such employee at his full regular straight-time rate of pay, less whatever remuneration he may receive from other sources for said purpose.

In the event a day shift employee is released from jury duty at any time prior to the end of first shift lunch period, he/she shall return to work and shall be allowed a reasonable time to eat lunch.

In the event a second shift employee is released from jury duty at any time prior to the end of 1st shift lunch period, he/she will report to work at his/her regular starting time. If a second shift employee is released from jury duty after the end of first shift lunch period, but prior to 1:00 pm, he/she must report to work for at least half of their scheduled shift (by 6:00 pm). If, at the Company's option, an employee is allowed to work more than four hours, any hours in excess of four (4) hours will be at 1½ times the employee's regular rate of pay. If a second shift employee is released after 1:00 pm, he/she need not report for work that day.

Third shift employees will be treated as if they were working first shift.

17

The employee shall be responsible to obtain documentation from the court indicating the date served, time released, and the amount of remuneration from the court in order to be eligible for pay for jury duty.

## SECTION 15. UNION REPRESENTATIVES AND BULLETIN BOARDS

15.1    **Business Agents**

The business agent or qualified representative of the Union shall be allowed to visit the Company's covered establishment for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The business agent or qualified representative of the Union shall report to the management of the office before proceeding to the plant. In the event he/she wishes to interview an employee, he/she shall report to the employee's department supervisor and he/she shall be permitted to interview him/her privately in the office. He/she shall not interfere with the normal conduct of work.

15.2    **Stewards**

A steward and alternate steward may be provided for each shift, such stewards to be appointed by the Union or selected by the employees on the job. Grievances which may arise and which cannot be adjusted on the job shall be reported to the Union by the steward; provided, however, in no event shall the steward or the Union order any changes and no changes shall be made except with the consent of the Company.

15.3    **Bulletin Boards**

The Company shall provide a reasonable number of bulletin boards in places reasonably accessible to the employees covered by this Agreement for the purpose of posting notices of official Union business, such as times and places of meetings.

## SECTION 16. INDUSTRIAL INJURIES

All industrial injuries, no matter how slight, must be reported to the supervisor, or Medical Department at the time the injury occurs. Any employee sent home by the Company or Company physician because of industrial injury or industrial disease shall be paid for the remainder of his/her shift.

The Company shall pay employees for any time lost during regular working hours in visits to the doctor in the case of an industrial injury or industrial disease, or shall make arrangements with the doctor that such visits shall be scheduled for after working hours. The Company will not interfere with doctor visits which occur during working time once the visit is scheduled.

Any employee who is off work due to an industrial injury or industrial disease, the disability having been previously determined by the Company physician, shall be paid his/her regular rate of pay until disability payments are due him/her from the insurance company. The maximum payments shall be three (3) days' pay from any one injury, such payment to be made to employee upon request, except in the case of any employee whose injury exceeds fourteen (14) days.

## SECTION 17. GENERAL PROVISIONS

17.1    **Safety**

Both the Company and the Union shall expend every effort to see to it that the work performed under the terms and conditions of this Agreement is performed with a maximum degree of safety, consistent with the requirement to conduct efficient operations. The Company's safety rules shall be posted in a conspicuous place.

The Company shall convene a meeting of the Plant Safety Committee. There shall be two shop stewards present at each safety committee meeting. The Company will attempt to call a safety committee member to the scene of any accident.

A grievance filed concerning a safety matter, shall be moved through an expedited settlement process. If the parties are unable to agree on a solution concerning an issue of safety, within 72 hours of the time the issue is discussed, the parties shall choose the first available arbitrator

18

from a panel of five (5) that have previously been designated by the parties. The parties shall ask the arbitrator to make a bench decision on the matter.

17.2 **Maintenance of Sanitary Facilities**

The Company agrees to maintain a clean, sanitary washroom with toilet facilities.

17.3 **New Processes and New Machines**

The Company shall notify the Union in advance of any permanent layoff of seniority employee which is going to result from the installation of new machinery or new processes in order that the impact of such layoff upon the employee may be discussed. Such discussions are to be without recourse to the grievance procedure and without the right of strike or lockout; provided that in the event any new job classification are created or any permanent layoff is made because of the introduction of new machinery or new methods of operation, then the Union may refer to the grievance procedure set forth in this Agreement. Any dispute concerning the wage rates established by the Company for such new classification and the question of whether such layoff was in accordance with the layoff provision set forth in the seniority section of the Agreement.

17.4 **Shop Rules**

The Company may make and enforce shop rules provided that they are posted in the plant and not in conflict with this Agreement. The Company before posting any new rules shall send each rule to the Union five (5) days before posting in order to insure that there is no conflict with this Agreement. Should the Company make any changes in its shop rules during the life of this Agreement, which the Union does not agree to, the Union shall have the right to protest such changes by the grievance procedure and the change shall not be placed in effect until the grievance is resolved.

## SECTION 18.  SICK LEAVE

18.1 **Benefits**

Each employee who has been continuously employed by the Company for a period of at least one (1) year shall be credited with sick leave as follows:

1.  Each employee who, on April 1, 1977, was continuously employed for at least one (1) year, shall be credited as of that date with five (5) days (forty (40) straight-time hours) of sick leave; and effective January 1, 1978, he/she shall be credited with five (5) additional days (forty (40) straight-time hours) of sick leave; and shall thereafter be credited with six (6) additional days (forty-eight) (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

2.  All other employees hired before March 1, 1988, shall be credited with five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service; he/she shall be credited with an additional five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's second anniversary date of continuous service; and shall thereafter be credited with six (6) additional days (forty-eight (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

3.  Employees hired after March 1, 1988, shall be credited with four (4) (thirty-two (32) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service and an additional four (4) days on each successive anniversary date of employment.

**18.2    Waiting Period**

Such sick leave shall be applicable only in cases of bona fide illness or accident and shall be paid from the first (1st) workday's absence. In those cases where illness or injury occurs during working hours, the first work day's absence shall be calculated as the twenty-four (24) hour period following the time at which the employee leaves work by reason of illness or injury. Succeeding work days' absences, full pay until sick benefit allowance is used up.

If an employee is absent from work on the day before any of the holidays listed in Section 5 or on the day after any of such holidays, due to bona fide illness or accident, said holidays shall be considered a work day's absence within the meaning of this Section 18.

**18.3    Doctor's Certificate or Other Proof**

If an employee's illness results in absence from work of three (3) or more consecutive days, then a doctor's certificate or other reasonable proof of illness may be required by the Company.

**18.4    Payment Defined**

For the purposes of this Section 18, full pay shall mean pay for the regular daily schedule of working hours, for those days which the employee would have worked had the disability not occurred, calculated at straight-time.

An Employee's sick leave payment shall automatically be paid with each absence until the sick benefit allowance is used up.

**18.5    Unused Sick Leave Accumulation**

Unused sick leave may be accumulated from year to year. Accumulations in excess of thirty (30) days may, at the option of the employee, be converted to cash, if the employee so requests in writing within thirty (30) days of their qualifying date (January 1 or anniversary date).

Payment will be made by the payday following the qualifying date. Employees who quit or are terminated are not eligible for any cash conversion for unused sick leave.

**18.6    Integration**

In industrial injury or disability cases, Workers' Compensation or Unemployment Disability (UCD) benefits and sick benefit allowances shall be paid separately, but in the event Workers' Compensation payments or Unemployment Disability payments cover all or part of the period during which sick benefit allowances are paid, the sum of the two shall not exceed the sick benefit payable for said period, and the unused portion of accumulated sick leave will continue to be credited to the employee. Integration of sick leave benefits with Workers' Compensation or Unemployment Disability payments is to be automatic; the Company may not waive integration, and any employee entitled to Worker's Compensation or Unemployment Disability payments must apply therefore (in order that the principle of integration may be applied) before sick benefits are payable.

Employees may waive using sick leave in cases involving industrial injury or disability. The burden is on the employee to inform the Company of a waiver in writing.

**SECTION 19.  SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS**

**19.1    Scope of Agreement**

Except as otherwise specifically provided herein, this Agreement fully and completely incorporates the understanding of the parties hereto and constitutes the sole and entire agreement between the parties on any and all matters subject to collective bargaining. Neither party shall, during the term of this Agreement, demand any change therein nor shall either party be required to bargain with respect to any matter. Without limiting the generality of the above, both parties in their own behalf and on behalf of the respective members bound hereby, waive

20

any right to demand of the other any negotiation, bargaining, or change during the life of this Agreement with respect to pensions, retirement, health and welfare, annuity or insurance plans, or respecting any question of wages, hours or any other terms or conditions of employment; provided that nothing herein shall prohibit the parties from changing the terms of this Agreement by mutual agreement.

19.2    <u>Separability of Provisions</u>

Should any section, clause or provisions of this Agreement be declared illegal by final judgment of a court of competent jurisdiction, such invalidation of such section, clause or provision shall not invalidate the remaining portions hereof, and such remaining portions shall remain in full force and effect for the duration of this Agreement.

Upon such invalidation, the parties agree immediately to meet and negotiate substitute provisions for such parts or provisions rendered or declared illegal or an unfair labor practice. In the event the parties are unable to agree upon substitute provisions, the dispute may at the request of either the Company or the Union be referred to arbitration for settlement pursuant to the provisions of Section 9.3 hereof; but the power of the arbitrator shall be restricted and limited to determining a substitute provision to provide for the same specific objective and purpose of the provision rendered or declared illegal.

19.3    <u>Unlawful Action Not Required</u>

The parties agree that neither will willfully require the other or their respective members bound hereby to do or perform any act prohibited by law.

19.4    <u>Government Controls</u>

Should any provisions of this Agreement not be placed into effect because of government wage regulations or controls, and should such controls be subsequently amended, relaxed or terminated during the term of this Agreement, then and in that event such provision(s) as has not been placed into effect because of said regulations or controls will be effectuated on the date on which it is determined that it is legally possible to do so, but not retroactively in excess of six (6) months, provided that the legality of such action is established during the term of this Agreement. The Company and the Union agree to cooperate in the preparation and filing of any submission(s) which during the term of this Agreement are required under the regulations of the Cost of Living Council or any successor agency responsible for the administration of government wage controls.

<div align="center">

## SECTION 20.   WAGES AND CLASSIFICATIONS
</div>

The classifications and hourly wage rates for employees covered by this Agreement are set forth in Appendix "A" hereto.

<div align="center">

## SECTION 21.   PLANT CLOSURE AND RELOCATION
</div>

The Company shall notify the Union of a proposed plant shutdown or relocation within ninety (90) days as either of these occurrences becomes imminent. In the event of a total plant closure, the following items shall become effective:

1.    The Company agrees to severance pay for any employees displaced by a closure of the plant as contained in a Letter of Understanding attached to this Agreement.

2.    The Company agrees to pay an additional two (2) months of Health & Welfare coverage for any employee displaced by a closure who has less than three (3) complete calendar years of service. For Employees with more than three (3) calendar years of service, three (3) months of Health & Welfare coverage shall be paid.

<div align="center">

21
</div>

In the event the Company relocates its operation to another area, the following shall be effective:

1. The Company will offer employment at any new location to displaced employees on the basis of seniority.

2. In the event an employee declines to transfer, the employee may elect to receive Health & Welfare coverage due as set forth above.

3. The Company and Union will make every effort to find jobs for employees displaced by a plant closure or unable to accept a transfer to a new location.

### SECTION 22. SEVERANCE PAY

In the event of a plant closure during the term of this Agreement, severance pay will be paid as a supplement to unemployment benefits to provide the equivalent of the employee's weekly net take-home pay per the following schedule:

| Years of Service At Time of Termination | Number of Weeks Unemployment Benefit may be Supplemented |
|---|---|
| 24 years or more | 12 weeks |
| 22 years but less than 24 | 11 weeks |
| 20 years but less than 22 | 10 weeks |
| 18 years but less than 20 | 9 weeks |
| 16 years but less than 18 | 8 weeks |
| 14 years but less than 16 | 7 weeks |
| 12 years but less than 14 | 6 weeks |
| 10 years but less than 12 | 5 weeks |
| 8 years but less than 10 | 4 weeks |
| 6 years but less than 8 | 3 weeks |
| 4 years but less than 6 | 2 weeks |
| 1 year but less than 4 | 1 week |
| Less than 1 year | 0 |

In order to maintain benefits eligibility, employees must notify the payroll office every two (2) weeks, either by telephone or by mailing a photocopy of their current unemployment check. Acceptance of any employment following termination will result in no further severance being made.

NOTE:

Employees choosing not to file for unemployment benefits will receive the same severance benefits as if they were receiving unemployment compensation. However, they must still report their employment status every two (2) weeks if they wish to receive severance payments.

An employee receiving severance pay in accordance with the procedures set forth above who obtains another job and loses it for any reason shall be permitted one ninety (90) day period during which he/she shall notify the Company of the job loss and may be returned to the severance program set forth herein.

### SECTION 23. SUB-CONTRACTING

The Company has the right to subcontract when it concludes that the work cannot be more economically or efficiently performed by employees. The Company agrees that it will not sub-contract bargaining unit work with the sole intent of depleting the bargaining unit work force. Upon demand, the Company agrees to supply the Union with all reasons for sub-contracting of any function causing loss of bargaining unit work.

22

## SECTION 24. DURATION

This Agreement shall be effective January 1, 2007, except for those provisions of the Agreement which have been assigned other effective dates as herein above set forth and shall remain full force and effect to and including December 31, 2011, and shall continue thereafter from year to year, unless at least sixty (60) days prior thereto, or to the first (1st) day of January of any subsequent year either party shall file written notice with the other of its desire to amend, modify, or terminate this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this ____ day of _____, 2007.

GILLIG CORPORATION

By: _~Dennis Howard~_

Date: 4/23/08

By: _~Pamela J. McKenna~_

Date: 4/23/08

TEAMSTERS WAREHOUSE, WHOLESALE
LIQUOR SALESPERSONS, MILK DRIVERS AND
DAIRY EMPLOYEES, CONSTRUCTION AND
BUILDING MATERIALS, NEWSPAPER AND
PERIODICAL DRIVERS AND MISCELLANEOUS
UNION, LOCAL 853, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS

By: _~signature~_

Date: 4/21/08

By: _~Bo Morgan~_

Date: 4/21/08

23

## APPENDIX "A"

### SECTION 1. CLASSIFICATIONS AND WAGE RATES

The classifications and minimum straight-time hourly wage rates covered by this Agreement shall be as follows (The Union reserves the right to allocate increases beginning in 2007, to pension or health and welfare, if needed):

|  | 1/1/07 | 1/1/08 | 1/1/09 | 1/1/10 | 1/1/11 |
|---|---|---|---|---|---|
| Working Foreperson*: | $ 22.76 | $1.35* | $1.40* | $1.45* | $1.50* |
| Journeyperson: | $ 21.76 | $1.35* | $1.40* | $1.45* | $1.50* |

*May be allocated by the Union towards Health and Welfare and / or Pension.

Employees in the position of Plant Maintenance and Tooling shall receive a five percent (5%) differential above journeyperson's rate (excludes janitors).

Employees may be interchanged between bodywork (Local 853) and paint preparation (Local 1176) to provide job coverage in cases of unplanned absenteeism, emergencies or extraordinary circumstances. The Company shall notify the respective chief shop steward of the need to interchange. In no event shall the ability to interchange be used to fill permanent vacancies.

*Replacement Working Forepersons: An employee designated to replace a Working Foreperson shall receive One Dollar ($1.00) per hour above the journeyperson rate of pay for each hour he or she functions as a temporary Working Foreperson. If the assignment requires a change of shift, Two Dollars ($2.00) per hour above the journeyperson rate of pay shall be paid.

### SECTION 2. PROGRESSION

Upon completion of one (1) year's service in the Specialist C classification, the employee shall be moved up to the Specialist B classification.

Upon completion of one (1) year's service in the Specialist B classification, the employee shall be moved up to the Specialist A classification.

An employee who has performed satisfactorily as a Specialist A for twelve (12) months will become a journeyperson; provided, however, that if the Company believes that the employee is not competent or qualified to perform the functions of a journeyperson in the department, it shall notify the Union in writing and, if the matter cannot be resolved within three (3) working days, the Company may submit the matter to a Board of Adjustment (pursuant to Section 9.2) which shall be comprised of persons who are qualified, by reason of training and experience, to evaluate the qualifications and competence of a journeyperson in the work involved. In such a case, members of the Board of Adjustment may question the employee directly about his/her job knowledge and experience and observe him/her performing the various functions of a journeyperson in the work involved.

Where there is a need and vacancy for a journeyperson in a department (and the job is not filled pursuant to the foregoing paragraph) the job shall be offered to the most senior qualified Specialist A in the department who has performed satisfactorily as a Specialist A for twelve (12) months or more; provided, however, that if the Company believes that the employee is not competent or qualified to perform the functions of a journeyperson in the department the matter may be adjusted in accordance with the foregoing paragraph.

If an employee is deemed not to be qualified as a journeyperson, he/she shall be afforded, upon written request, a reasonable opportunity to perform job functions required of a journeyperson which he/she had not previously been afforded a reasonable opportunity to perform.

24

All employees within a progression temporarily laid off, when re-hired shall be paid the same hourly rate of pay as when temporarily laid off and shall not lose any accumulated time worked toward the regular increase.

## SECTION 3. *WORKING FOREPERSONS*

There shall be at least one (1) *Working Foreperson* in each department *that has three (3) or more employees. If the Working Foreperson is not at work for more than two (2) weeks straight, he or she shall be replaced by another employee on a temporary basis. All employees elevated to Working Forepersons shall have their pay reflect the change in a timely manner.*

A working foreperson shall receive at least the rate listed for that classification, and shall not have the responsibility to hire or fire, or discipline, employees or effectively recommend such.

It is agreed and understood that this Agreement does not abridge the Company's rights to promote or demote, to or from the classification of working foreperson.

## SECTION 4. MINIMUM RATES

The wage rates listed above are minimum rates for the classifications shown. The minimum rates listed shall not be used to reduce the wage rate of any employee now receiving more than the listed minimum rate for his classification.

## SECTION 5. EMPLOYEES HIRED AFTER MARCH 1, 1988

A. The classifications and minimum straight-time hourly wage rates covered by the Agreement shall be as follows:

|  |  | 1/1/07 | 1/1/08 | 1/1/09 | 1/1/10 | 1/1/11 |
|---|---|---|---|---|---|---|
| Journeyperson |  | Same as Section 1 |  |  |  |  |
| Specialist A | - | $ 19.85 | $1.35* | $1.40* | $1.45* | $1.50* |
| Specialist B | - | $ 18.85 | $1.35* | $1.40* | $1.45* | $1.50* |
| Specialist C | - | $ 17.85 | $1.35* | $1.40* | $1.45* | $1.50* |

*May be allocated by the Union towards Health and Welfare and / or Pension.

B. *Summer Hires may be utilized and shall be paid $1.50 per hour below the Specialist C rate.*

## SECTION 6. ECONOMICS

6.1 **Annual Economics**

During the life of this Agreement, Wages, Pension and Health & Welfare shall be as follows:

| Year | Wages | Health & Welfare |
|---|---|---|
| 2007 | $1.30 | $25.00 per month |
| 2008 | $1.35* | $25.00 per month |
| 2009 | $1.40* | $25.00 per month |
| 2010 | $1.45* | $25.00 per month |
| 2011 | $1.50* | $25.00 per month |

*May be allocated by the Union towards Health and Welfare and / or Pension.

25

# CONTRACT EXTENSION
*Between*

## GILLIG, LLC & TEAMSTERS LOCAL 853

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2011 is hereby extended until midnight December 31, 2014, upon the terms and conditions set forth herein:

1. On January 1, 2012 an increase of $1.55 per hour shall be applied to wages, health and welfare and pension as allocated by Teamsters Local 853.

2. On January 1, 2013 an increase of $1.60 per hour shall be applied to wages, health and welfare and pension as allocated by Teamsters Local 853. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.28 per hour).

3. On January 1, 2014 an increase of $1.65 per hour shall be applied to wages, health and welfare and pension as allocated by Teamsters Local 853. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.31 per hour).

4. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**

By: _Jt R. Enock_, Pres.

Date: _2/1/11_

By: _Pamela J. McKenna_

Date: _2/1/11_

**FOR THE UNION:**

By: _[signature]_

Date: _2/1/11_

By: _Bo Morgan_

Date: _2/1/11_

# CONTRACT EXTENSION

*Between*

## GILLIG, LLC & TEAMSTERS LOCAL 853

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2014 is hereby extended until midnight December 31, 2016, upon the terms and conditions set forth herein:

1. On January 1, 2015 an increase of $1.45 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.12 per hour).

2. On January 1, 2016 an increase of $1.50 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.13 per hour).

3. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.


**FOR THE COMPANY:**

By: _____

Date: *2/13/13*

By: P. McKenna

Date: 2/13/13


**FOR THE UNION:**

By: _____

Date: 2/13/13

By: Bo Morg

Date: 2/13/13

# CONTRACT EXTENSION

*Between*

## GILLIG, LLC & TEAMSTERS LOCAL 853

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2016 is hereby extended until midnight December 31, 2023, upon the terms and conditions set forth herein:

1. On January 1, 2017 an increase of $1.55 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to the pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.13 per hour).

2. On January 1, 2018 an increase of $1.60 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.14 per hour).

3. On January 1, 2019 an increase of $1.65 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.15 per hour).

4. On January 1, 2020 an increase of $1.70 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.16 per hour).

5. On January 1, 2021 an increase of $1.75 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.17 per hour).

6. On January 1, 2022 an increase of $1.80 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.18 per hour).

7. On January 1, 2023 an increase of $1.85 per hour shall be applied to wages and health and welfare as allocated by Teamsters Local 853 with an additional $.25 an hour to be applied to pension plan (WCTTP). In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.19 per hour).

8. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**

By: Pamela J. McKenna

Date: 2/19/16

**FOR THE UNION:**

By: Bo Morgan

Date: 2/19/16

**LETTER OF UNDERSTANDING**
**BETWEEN**
**GILLIG CORPORATION**
**AND**
**TEAMSTERS LOCAL 853**

Both parties agree to the following:

January 1, 2017 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan. Total contribution rate is two dollars and sixty cents ($2.60).

January 1, 2018 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan. Total contribution rate is three dollars and thirty-five cents ($3.35).

January 1, 2019 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan. Total contribution rate is four dollars and ten cents ($4.10).

January 1, 2020 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan. Total contribution rate is four dollars and eighty-five cents ($4.85).

January 1, 2021 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan. Total contribution rate is five dollars and sixty cents ($5.60).

January 1, 2022 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan. Total contribution rate is six dollars and thirty-five cents ($6.35).

January 1, 2023 – An additional fifty cents ($0.50) to be allocated to the Western Conference of Teamsters Pension Plan. Total contribution rate is seven dollars and ten cents ($7.10).

**FOR THE COMPANY:**                                    **FOR THE UNION:**


Pam McKenna, Vice President                            Bo Morgan
Human Resources and Labor                              Vice President
Relations

**EXHIBIT 2**

# A G R E E M E N T

between

## GILLIG CORPORATION

and

## AUTO, MARINE AND SPECIALTY PAINTERS
### District Council 16
### Local Union 1176

For the period:

January 1, 2007

through

December 31, 2009

Covering:  Paint Department Employees (Except Body Shop)
25800 Clawiter Road
Hayward, CA  94545

# TABLE OF CONTENTS

| SECTION | | TOPIC | PAGE |
|---|---|---|---|
| SECTION | 1 | RECOGNITION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| SECTION | 2 | MANAGEMENT RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| SECTION | 3 | UNION SECURITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| SECTION | 4 | HOURS AND OVERTIME. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| SECTION | 5 | HOLIDAYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| SECTION | 6 | VACATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| SECTION | 7 | SENIORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| SECTION | 8 | INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM . . . . . . . | 11 |
| SECTION | 9 | SETTLEMENT OF DISPUTES. . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| SECTION | 10 | STRIKE AND LOCKOUT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| SECTION | 11 | HEALTH AND WELFARE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| SECTION | 12 | PENSION PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| SECTION | 13 | NO DISCRIMINATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| SECTION | 14 | LEAVE OF ABSENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| SECTION | 15 | UNION REPRESENTATIVES AND BULLETIN BOARDS . . . . . . . . | 16 |
| SECTION | 16 | INDUSTRIAL INJURIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| SECTION | 17 | GENERAL PROVISIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| SECTION | 18 | SICK LEAVE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| SECTION | 19 | SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS. | 19 |
| SECTION | 20 | WAGES AND CLASSIFICATIONS (SEE ALSO APPENDIX "A") . . . | 20 |
| SECTION | 21 | PLANT CLOSURE AND RELOCATION. . . . . . . . . . . . . . . . . . . . | 20 |
| SECTION | 22 | SEVERANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| SECTION | 23 | SUB-CONTRACTING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| SECTION | 24 | DURATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | | | |
| APPENDIX | A | CLASSIFICATIONS AND WAGE RATES. . . . . . . . . . . . . . . . . . . . | 23 |
| | | PROGRESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| | | WORKING FOREPERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| | | MINIMUM RATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| | | EMPLOYEES HIRED AFTER MARCH 1, 1988 . . . . . . . . . . . . . . . | 24 |
| | | ECONOMICS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| | | | |
| LETTER | | ATTENDANCE & TARDINESS CONTROL . . . . . . . . . . . . . . . . . | 25 |
| LETTER | | FINISH PAINTER PREMIUM. . . . . . . . . . . . . . . . . . . . . . . . . . . | 26 |
| LETTER | | VACATIONS & HOLIDAYS - "WORKABLE CREW" . . . . . . . . . . . | 27 |
| LETTER | | DRUG AND ALCOHOL POLICY. . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| LETTER | | MARTIN LUTHER KING'S BIRTHDAY . . . . . . . . . . . . . . . . . . . | 29 |
| LETTER | | SENIORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 |
| LETTER | | 401(K) PLAN & ADMINISTRATION. . . . . . . . . . . . . . . . . . . . . . | 31 |

2

# AGREEMENT

This Agreement made and entered this _____ day, of _____, 2007, by and between **GILLIG CORPORATION**, hereinafter called the **Employer**, and **AUTO, MARINE AND SPECIALTY PAINTERS UNION, DISTRICT COUNCIL 16, LOCAL UNION 1176,** hereinafter called the **Union**.

## WITNESSETH:

## SECTION 1. RECOGNITION

The Union is recognized as the sole collective bargaining agent for all Paint Department employees (excluding Body Shop employees), including working foremen, employed at the Employer's 25800 Clawiter Road, Hayward, California facility; excluding production control personnel, office clerical employees, guards and supervisors as defined in the Act.

In the event this facility is relocated in Alameda County, or if production and maintenance operations are expanded or transferred to another location in Alameda County, and if operations at the new location are substantially the same as, or directly connected with, the present operations so that the new location would be considered an accretion to the present bargaining unit under the National Labor Relations Act, this Agreement shall be in full force and effect at such new location.

## SECTION 2. MANAGEMENT RIGHTS

The management of the business and the direction of the working force including but not limited to the right to direct, plan, and control plant operations; to establish or schedule work to be performed; to hire and promote employees, and to discipline, or discharge employees for just cause; to discontinue jobs or work or to lay off employees for just cause; to discontinue jobs or work or to lay off employees for lack of work or other legitimate reasons not in conflict with this Agreement; to introduce new and improved; methods or facilities, to change existing methods or facilities, or to purchase supplies and service for the performance of its business; to determine the products to be manufactured and the process and means of manufacture; are exclusively the right of the management of the Employer and all rights inherently a function of management and not relinquished in this Agreement remain solely with management; provided that none of the above provisions shall be used for the purpose of discriminating against any employee because of his or her membership in the Union. Should a dispute arise concerning these management rights or responsibilities, the dispute should be treated in accordance with provisions of Section 9 of this Agreement and any decision reached pursuant to Section 9 must be within the scope and terms of this Agreement.

3

## SECTION 3.  UNION SECURITY

3.1    **Union Security**

It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement, shall remain members in good standing, and those who are not members on the effective date of this Agreement, shall on the thirty-first (31st) calendar day following the effective date of this Agreement, become and thereafter remain members in good standing in the Union.

It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall on the thirty-first (31st) calendar day following the beginning of such employment, become and thereafter remain members in good standing in the Union.

The Employer, upon written request of the Union, shall discharge any employee within seven (7) calendar days after receipt of such notice who fails to tender the periodic dues and initiation fees uniformly required by the Union as a condition of requiring or retaining membership in the Union.  If the Union has notified the Employer in writing prior to the expiration of the seven (7) days, that the employee has paid the amounts owing, the discharge shall not take place.

3.2    **Hiring**

The Employer agrees that in hiring to fill all vacancies or new positions in any classification covered by this Agreement, that they will hire through the office of the Union, provided the Union shall be able to furnish competent and experienced persons for the work required.

If the Union is unable to furnish qualified workers within twenty-four (24) hours after the Employer calls for them, the Employer shall be free to procure the workers from any other source.  All newly hired employees shall present management with a clearance slip from the Union prior to beginning work.

3.3    **Check-off of Union Dues**    # 51 Monthly    # 26 District Council Monthly

Upon receipt of a written assignment and authorization signed by the employee of a mutually acceptable form, the Employer agrees to deduct the regular monthly Union dues for the subsequent month from the pay of such employee.  The amount deducted shall be in accordance with the Union constitution.

Payment shall be made to the Union on or before the tenth (10th) day of the calendar month following the deduction.

An Employee's deductions shall begin in the first calendar month following receipt of the authorization card by the Employer.

Should the Employer not deduct dues from any employee's pay because of either insufficient earnings or absence for any reason during the deduction period, the Employer shall make appropriate deductions directed by the Union; provided however, it will be the sole responsibility of such employee to make the required dues payment directly to the Union Office.

The Union shall indemnify and save the Employer harmless against any and all claims, demands, suits, legal proceedings, or other forms of liability that shall arise out of or by reason of action taken or not taken by the Employer for the purpose of complying with any of the provisions of this Section or in reliance on any assignment furnished under such provisions.  The provisions of this Section shall be effective only in accordance and consistent with applicable provisions of federal and state law.

4

## 3.4 Deductions

The Employer, upon receipt of individual valid authorizations agreed to by the Employer and the Union, will make payroll deductions from wages of an employee for D.R.I.V.E., P.A.T., and credit union contributions. Remittances shall be in accordance with the authorization.

## SECTION 4.   HOURS AND OVERTIME

### 4.1    Regular Work Week

(Day Shift).  The regular workweek at the straight time rate shall consist of five '(5) consecutive eight (8) hour working days from Monday through Friday.  Payday will be weekly for all employees.

### 4.2    Regular Work Day

(Day Shift)  The regular workday at the straight time rate shall consist of eight (8) consecutive hours, exclusive of meal period, during the regular workweek and between the hours of 5:00 a.m.and 1:30 p.m.  The starting time and quitting time may be changed by mutual agreement between the Employer and the Union.

It is agreed and understood, however, that the Employer may at its discretion, schedule all, or part of, the stockroom, material handling, shipping-receiving, parts, and maintenance departments in a manner to provide eight (8) hours work between the hours of 6:00 a.m. and 4:00 p.m., Monday through Friday.

### 4.3    Minimum Hours

Employees who have seniority with their Employer and who are ordered to report to work on any day other than Saturday, Sunday and Holidays, and who do so at the specified time shall receive a minimum of eight (8) hours' work, or if eight (8) hours' work is not furnished, a minimum of eight (8) hours' pay at the straight time rate.

Employees having seniority who are ordered to report for work on Saturday, Sunday and Holidays and who do so at the specified time shall receive a minimum of four (4) hours' work, or if four (4) hours' work is not furnished, a minimum of four (4) hours' pay at the applicable rate; provided, however, that such minimums on Saturdays and Sundays are not applicable to continuous shift workers, whose regularly scheduled days off shall be substituted for Saturdays and Sundays.  The above minimum hour requirements shall not apply if such employees quit, voluntarily lay off, or are discharged for cause.

The minimum guarantee shall not apply where work is not available due to circumstances beyond the Employer's control such as earthquake, fire, flood, lightning, calamity, public utility failure or shortage, insurrection, riot, strike, civil disturbance, adverse environmental condition, bomb threat, tear gas, or governmental order.

### 4.4    Shift Operations

A second or third shift may be established when more than one (1) shift is worked.

All employees on second or third shift at the time of the ratification of this agreement will keep the differential they individually presently enjoy (i.e. Journeypersons = $1.57, Specialist A = $1.38, Specialist B = $1.28, Specialist C = $1.18.)  This differential will apply for these employees should they leave second or third shift and return to second or third shift at any future time.

Any employees who are hired on to or transfer to second or third shift after March 1, 1997, will receive a shift premium of $1.00 per hour. Any employee forced or required to work second or third shift for training purposes or special assignments will receive a shift differential as in the above paragraph, so long as they were hired before March 1, 1997.

5

There shall be a one-half (1/2) hour interval between the termination of the first shift and the beginning of the second shift. If the second shift on Friday should lap over into Saturday, there shall be no Saturday rate paid in this instance.

Employees will be offered work on any new shift created on the basis of Departmental Seniority. In the event that the desired number of employees wishing to work the new shift is not equal to the number needed by the Employer, employees will be assigned by inverse seniority.

The Employer may temporarily transfer a senior employee to a shift for a period not to exceed forty-five (45) workdays. At the end of forty-five (45) days, the senior employee will be transferred back to his/her previous job.

## 4.5 Overtime Rate

All the time worked over eight (8) hours in any one (1) day, or over forty (40) hours in any one (1) week or on Saturdays, shall be paid for at the rate of one and one-half (1 1/2) times the straight-time hourly rate. Work performed before the regular starting time or after the regular quitting time shall be considered overtime and shall be paid for at the rate of one and one-half (1 1/2) time the straight-time hourly rate. Work performed on Sundays shall be paid for at the rate of double (2) times the straight-time hourly rate. Work performed in excess of eight (8) hours on Saturdays or holidays shall be paid for at the rate of double (2) times the straight-time hourly rate. There shall be no pyramiding of premium rates.

## 4.6 Wash-Up and Breaks

Employees working in the Paint Department will be allowed a total of 10 minutes before conclusion of a shift to wash up and clean equipment. Bondo employees will be allowed a five minute wash up period when needed.

All full-time employees shall be entitled to two (2) ten minute breaks each day. One (1) break shall be in the first half of the shift and the other during the second half of the shift. An additional break of ten (10) minutes shall be taken at the end of the regular shift when three (3) or more hours of overtime is scheduled or anticipated.

## 4.7 Scheduled Overtime

The employees recognize their responsibility and obligation to perform overtime when requested by the Employer and the Employer agrees to give as much advance notice as conditions warrant when overtime is to be required. Disciplinary action will not be taken if less than 24 hours notice is given to work overtime. When overtime shifts are necessary, written notice will be posted at least five (5) working days in advance.

An employee shall not be obligated to work overtime provided he gives 24 hours notice to the Employer on forms provided, which shall, upon request, state the reason for not working the overtime. The notice form shall be initialed by his supervisor with a copy returned to the employee with the date and time received. There shall be no concerted refusal to work overtime and employees shall not abuse the right to refuse overtime by repeated unjustified refusals to work overtime.

Any employee transferring from his/her regular department into another department during the course of a work day will be eligible for overtime on a job continuation basis with the following exceptions:

(1) If overtime has been posted in that department prior to the lunch break and an employee is transferred in after lunch, he/she is not eligible for overtime on a job continuation basis within that department; further, he/she has no bumping rights of regular employees in that department who have already accepted overtime for that day.

(2) In cases where overtime hasn't been posted prior to the lunch break, an employee transferring into a department with less than two (2) hours remaining in the regular work day will not be eligible for overtime on a job continuation basis until all regular employees of that department and all employees transferred in with two (2) or more hours left in the regular work day have been asked.

6

**4.8    Weekday Overtime**

Overtime during the regular workweek will be given by job continuation. Any employee who is performing a specific job where overtime for that day is required will be asked to continue that job. If the employee asked refused the overtime, and no other employee is performing that job, the overtime will be offered to the most senior employee in that department who is qualified to perform the job required.

**4.9    Saturday, Sunday and Holiday Overtime**

Saturday, Sunday and Holiday overtime shall be offered to the most senior employee in the department on that shift who is qualified to perform the job required.

When the work force is reduced the senior employees will have the option of continuing the day, or leaving and allowing a junior employee to stay for the remainder of the day.

The Employer shall post a schedule of employees who are to work overtime on a Saturday, Sunday or Holiday at least twenty (20) hours in advance of the scheduled overtime. Any employee who claims he was denied an opportunity to work overtime shall notify his foreperson of his claim before the end of his last shift prior to the scheduled overtime, or be barred from making any such claim.

On Saturday, Sunday and Holidays, if only one shift is required to work overtime, assignments will be made by overall seniority in a department provided the most senior employee is qualified to perform the job required.

## SECTION 5.  HOLIDAYS

**5.1    Paid Holidays**

The following days shall be observed as Holidays on which no work is performed, except as provided herein:

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| President's Day | Day after Thanksgiving |
| Memorial Day | Day before Christmas |
| Fourth of July | Christmas Day |
| Labor Day | 2 Floating Holidays* |

*A minimum of two weeks' advance notice must be given to the Employer before a floating holiday is granted and the Employer reserves the right to deny requests which would leave the Employer without the number of employees required to maintain a workable crew. Floating holidays that are scheduled and approved forty-five (45) days prior to the selected day shall not be subject to being bumped on the basis of seniority.

The Employer will allow a minimum of one (1) employee per day to take a floating holiday on any days where no more than ten (10%) percent of the workforce is known to be off.

*Any floating holiday not taken or scheduled to be taken by December 1st of any calendar year will be paid to the employee at the next regularly scheduled payday.

7

## 5.2    Qualifying

All regular employees (those continuously employed thirty (30) days or more) shall receive eight (8) hours pay at the employee's straight-time hourly rate even though no work is performed on the above-named holidays; provided, further, that such employees must work the full day on both the last regular working day immediately preceding the holiday and on the first regular working day following the holiday, and unless the employee so works he shall receive no pay for such holiday unless such absence on the regular working day before and after said holidays is due to the express written permission of the Employer or because of bona fide illness evidenced by a physician's certificate.

To be eligible for floating holidays an employee must be on the payroll for one year.

It is agreed that an employee may be no more than one half (1/2) hour late at the beginning of the scheduled day before or the scheduled day after the paid holiday and still qualify for holiday pay.  Time lost over the above allowances shall be deducted from the employees' holiday pay at the rate of one for one.

If an employee is absent the last two (2) scheduled working days before a two-day holiday or the first two (2) scheduled working days after a two-day holiday or the last scheduled working day before and the first scheduled working day after a two-day holiday, the employee will lose two (2) days' holiday pay.

## 5.3    Saturday and Sunday Holidays

If any of the holidays designated in this Section falls on Sunday, the following Monday shall be observed.  If any of such holiday falls on a Saturday, it shall be observed on the Friday immediately preceding.

Employees ordered to work on holidays listed in this Section 5 shall be paid at the rate of one and one-half (1 1/2) times the straight-time hourly rate:  provided that an employee who is entitled to pay for any such Holiday if not worked, shall receive such Holiday pay in addition to the one and one-half (1 1/2) time he is paid for working.

## SECTION 6.    VACATIONS

## 6.1    Duration and Pay

An employee's anniversary date shall constitute the beginning of his or her vacation year.  An employee must work a full year and be on the active payroll at the beginning of the last anniversary year in order to qualify for vacation benefits for the previous year.  Vacation is considered to be a benefit earned for work performed during the previous year.  Work time lost due to layoff or leave or absence will not be considered for vacation time earned.  Vacation benefits will be prorated on the basis of time worked during the anniversary year less time spent on layoff or leave of absence, on the basis of one-twelfth (1/12) of the regular benefit entitlement for each full month worked during the anniversary year.  For employees who are off of work due to disability or industrial injury or illness, sixteen-hundred (1600) hours worked or paid for in their anniversary year shall constitute qualification for full vacation pay.  For pro-ration purposes, sixteen-hundred (1600) hours shall be used as the base.

Vacation Qualifications

One (1) week's vacation with pay after one (1) years' continuous service

Two (2) week's vacation with pay after two (2) years' continuous service

Three (3) weeks' vacation with pay after five (5) years' continuous service

Four (4) weeks' vacation with pay after fifteen (15) years' continuous service

Five (5) weeks' vacation with pay after twenty-five (25) years' continuous service

8

Vacation pay shall be computed at forty (40) times the straight-time hourly rate in each week's vacation.

**6.2    Vacation Schedule**

After the vacation is earned, vacation benefits may be taken at any time during the employee's anniversary year which is mutually agreeable between the employee and the Employer. The Employer will usually not permit vacations to be scheduled during Inventory time.

A vacation schedule shall be posted during the month of December for employees to select their vacation periods for the next calendar year. Vacations will be scheduled according to seniority within a department. Once a vacation is scheduled, it shall not be changed except for emergency or proper cause, and seniority will not be recognized with respect to selecting a new vacation period. (Note: current calendar year vacations would have been bid the previous December.)

Full weeks will be scheduled prior to daily vacations. An employee who has three (3), four (4), or five (5) weeks of vacation may schedule all of his/her entire vacation at once, but the Employer may, as business requires, permit no more than two (2) weeks to be taken at one time.

It is agreed, however, that the Employer may limit the number of employees out of any one department to a maximum of ten percent (10%) (to the nearest whole person, with a minimum of one (1) person in a department where ten percent (10%) does not equal a whole person). It is further agreed that the Employer may schedule vacation requests to maintain a workable crew in a specific area within a department.

Upon the request of a laid off employee, the Employer shall pay all accrued vacation time at the time of the layoff. If no request is made, the employee shall receive vacation pay and the time off when scheduled to take vacation assuming he/she has been recalled at that time. A laid off employee may request payment for accrued vacation at any subsequent date if he did not request it at the time of the layoff, however, if he/she does so, unpaid time off upon return to work is waived.

**6.3    Not Cumulative**

Neither vacations nor vacation pay will be cumulative from year to year. No employee shall accept vacation pay in lieu of time off except when mutually agreed between Employer, Employee and the Union. Earned vacation pay shall not be lost.

**6.4    Pay in Advance**

Vacation paychecks shall be issued on the last scheduled working day preceding the employee's vacation period; provided, however, such employee shall have indicated his vacation date during the vacation bidding in December or has given the Employer one week's notice. Such checks shall be in addition to the normal weekly earned check and shall be by a separate check.

**6.5    Holiday Within Vacation**

If a Holiday for which he/she would otherwise be paid falls within employee's vacation period, he/she shall receive an additional day off with pay.

**6.6    Accumulated Vacation Credit**

(1) No Employee shall receive vacation or pay until he/she has completed his/her introductory period. His/her accrued vacation credit shall then be computed from time of hire.

(2) A seniority employee who is terminated for any cause shall be entitled to vacation pay for any unused vacation for which he qualified on the prior anniversary date and, in addition, vacation pay prorated from the prior anniversary date to the date of termination in accordance with the qualification schedule in Section 6.1.

9

(3) An employee who terminates after completing the introductory period set forth in Section 8.1 shall receive prorated vacation pay.

## SECTION 7. SENIORITY

### 7.1 Definition and Qualification

Seniority is defined as the length of time an employee has been continuously employed within the bargaining unit. Seniority shall not apply to any employee until he/she has completed his/her introductory period, as defined in Section 8. Once attained, seniority shall be effective as of the date of his/her employment, and it shall continue without interruption unless lost as provided herein. Seniority shall only be recognized where specifically provided herein.

An employee's seniority shall be lost and he/she shall be terminated when he/she:

    (1)    Formally quits.
    (2)    Is discharged for cause.
    (3)    Fails to show up for work or fails to call in for three (3) consecutive days.
    (4)    Fails to return to work from an official leave of absence.
    (5)    Fails to return to work within three (3) days after he/she has been notified by telephone or telegraph to report for work from layoff status.
    (6)    Is laid off for a period of :
        a)  Employees with less than four (4) years seniority - twelve (12) consecutive months
        b)  Employees with four (4) or more years - eighteen (18) consecutive months.
    (7)    Is unable to return from a medical leave of absence within the same time restraints as outlined in (6) above.

### 7.2 Layoff and Recall

Bargaining unit seniority shall be used to determine layoff and recall rights within a department regardless of how long an employee has been in a department or how he/she got there.

In the event a layoff in a department is necessary, the following procedure will be followed:

    (1)    For all layoffs, introductory employees shall be laid off before other employees
    (2)    Employees shall be laid off by seniority in the department affected, less senior first so long as the remaining employees are qualified to perform the work required.

Employees retained or re-hired because of seniority must be willing, competent and qualified to perform the work to be done.

A twenty-four (24) hour notice of layoff will be given to an employee who is to be laid off.

The foregoing shall not apply if the less senior employee is a finish painter, unless the senior employee has performed the job in the past at Gillig or elsewhere and if necessary, successfully passes a skills test.

### 7.3 Seniority List

The Employer shall keep an up-to-date departmental seniority list of all employees covered by this agreement and post the seniority list in a conspicuous place. This provision is for the convenience of the parties and in case of any dispute concerning the accuracy of the list, the provisions of this Agreement and not the posted list shall control. Employer shall at all times of layoff post a list of introductory employees.

10

### 7.4    Salaried Positions

If an employee is requested by management to fill a salaried position and accepts, he/she shall be excluded from the coverage of this Agreement. In the event the Employer subsequently transfers such employee or such employee requests a transfer back to a position covered by this Agreement within six (6) months from his/her promotion, he/she shall be credited with the seniority, which he had on the date he was promoted to his/her salaried position. The Employer shall notify the Union in writing of the date the employee begins the salaried position.

### 7.5    Stewards Seniority

All regular shop stewards shall have top seniority for purposes of layoff.

## SECTION 8.   INTRODUCTORY PERIOD, DISCIPLINE, ABSENTEEISM

### 8.1    Introductory Period

An introductory period of sixty (60) days shall be established. To this period shall be added the number of days an introductory employee is absent from work during the initial sixty (60) day period. Absences due to injuries covered by Worker's Compensation of less than a total of seven (7) days shall not be added to the sixty (60) days introductory period.

During the introductory period, an employee may be discharged for any reason, which, in the opinion of the Employer, is just and sufficient, except for legitimate Union activity.

### 8.2    Right of Discharge

For all offenses, other than those listed below, the Employer agrees to give a written warning prior to discharge. Written warnings will be removed from an employee's personnel file after twelve (12) months from the date the warning is given. No written warning need be given if the discharge is for:

a. Theft or willful damage to Company property or the property of another employee.

b. Possession of, or reporting under the influence of, intoxicating beverages, use of illegal drugs or controlled substances without a valid prescription.

c. Gross insubordination.

d. Fighting on Company Property.

e. Possession of firearms or explosives on Company premises.

f. Falsification of a time card or other Company record.

g. Failure to show up for work or fails to call in and misses three (3) consecutive shifts.

h. Participating in unsafe acts that endanger life.

I. Sleeping on the job during working hours.

When an employee is discharged, the Employer shall notify the Union within twenty-four (24) hours, in writing, of the action taken and the reasons for the action. A copy of the reasons for the discharge shall be given to the discharged employee.

11

## 8.3    Appeals

If any employee feels he/she has been unjustly discharged, he/she shall have the right to appeal his/her case to the Adjustment Board through the Union. Such appeals must be filed in writing by the Union within three (3) working days from the date the Union is notified by the Employer of such discharge and unless so filed the right of appeal is lost. It is agreed that no employee shall be discharged while he/she is on vacation, authorized leave of absence or absent due to bona fide illness.

## 8.4    Discipline Procedure

In all cases of discharge or written reprimand, the employee to be disciplined will be brought to the shop superintendent's office and the disciplinary action taken in the presence of a steward. After the passage of twelve (12) months, a written reprimand may not be used against an employee in discipline or discharge, and will be deleted from his/her personnel file.

## 8.5    Absenteeism

On evaluating absences for purposes of determining excessive absenteeism, the Company will not base disciplinary action upon any absence for holidays, vacations, Union business, state disability, industrial injuries, paid leaves, leaves pre-excused by management, except in cases of chronic absenteeism.

## SECTION 9.  SETTLEMENT OF DISPUTES

## 9.1    Grievance Procedure

In the event of any disputes or grievances which may arise concerning the application or enforcement of this Agreement, other than discharge (see Section 8.3), an aggrieved employee shall, within three (3) working days after he/she first had notice to the facts on which the grievance is based, discuss the grievance with his/her immediate supervisor, and both parties will endeavor to adjust the matter. Failing such adjustment, within three (3) working days, the aggrieved employee and the shop steward may take the grievance up with the plant superintendent and both parties shall endeavor to adjust the matter.

Failing such adjustment, within the next three (3) working days, the grievance may be taken up with the plant manager by the business agent, the shop steward and the aggrieved employee by their submitting a written statement of the grievance which states the specific facts and sections of the Agreement on which the grievance if based, and scheduling a grievance meeting within the next three (3) working days unless such time is extended by mutual agreement to a date certain.

At such plant grievance meeting, each party shall set forth fully and fairly the facts and contentions in support of its position and shall endeavor to adjust the matter. In the event of failure to adjust the matter at the plant grievance meeting, either party may, within the next three (3) working days, give written notice of its desire to obtain the formal determination of the dispute in accordance with the following provisions. (Complaints involving payment of compensation shall be in writing and no adjustments shall be retroactive for more than ninety (90) days.)

## 9.2    Board of Adjustment

Upon receipt of such notice, a representative of the Union and a representative of the Employer will, if unable to resolve the dispute, promptly establish a Board of Adjustment and prepare a written statement of the issue for submission to such Board of Adjustment; provided, however, either party, whereupon the grievance may be submitted directly to a neutral arbitrator as if a deadlock had been declared.

The Board shall consist of two (2) members selected by the Employer and two (2) members selected by the Union. The two (2) members selected by the Union shall not include representatives of the Local Union party to

this Agreement, and the two (2) members selected by the Employer shall not include persons on the payroll of the Employer who supervise, directly or indirectly, the aggrieved employee or who are otherwise involved in the dispute. The Board of Adjustment shall elect a Chairman and a Secretary and adopt rules of procedure. The Board shall proceed to hear the issue submitted to it promptly, each party being permitted to present such evidence as may be material. The Board shall have no jurisdiction or authority to add to, subtract from, or alter in any way the provisions of this Agreement, but shall have authority to interpret or apply the provisions thereof only to the extent necessary for determination of the grievance submitted to it for determination.

If a majority of the Board can agree on a determination of the grievance, it shall render such decision promptly in writing, a copy of such decision to be delivered to each party. Such decision of the Board shall be final and not serve as a precedent in any other case. If a majority of the Board cannot agree on a decision within a reasonable time after conclusion of the hearing, a deadlock shall be declared and the matter may be submitted by either party to a neutral arbitrator in the following manner.

**9.3    Arbitration and Selection of Arbitrator**

A neutral arbitrator shall be selected from a panel of seven arbitrators provided by the Federal Mediation and Conciliation Service. The parties shall then strike names from the list, the Union striking first. The last remaining named person shall be requested to be the arbitrator.

**9.4    Arbitrability**

Any claim or proposal by a party to add to or alter this Agreement, and any matter arising out of any such claim or proposal, shall not be arbitrable. Any dispute as to the arbitrability of any given matter shall be resolved by a court of competent jurisdiction and not by an arbitrator or Board of Adjustment, unless the parties specifically agree otherwise in writing.

**9.5    Arbitration Procedure in Discharge Cases**

In discharge cases, the hearing shall be held on the first available date and, unless specifically requested by the arbitrator or one of the parties, the case shall be heard and determined without transcript or filing of briefs and the arbitrator shall be instructed to issue his award from the bench if possible, or in any event within twenty-four (24) hours after the conclusion of the hearing, with an opinion, if requested by either party to be subsequently prepared.

**9.6    Arbitration Decision and Award**

Except as otherwise provided, the arbitrator shall issue his/her decision and award within thirty (30) days after the case is submitted for decision. The arbitrator shall have not authority to add to, delete from, or otherwise alter this Agreement. The award of the arbitrator, if consistent with the foregoing, shall be final and binding upon the Employer, the Union and all employees concerned.

**9.7    Cost of Arbitration**

Each party shall bear its own expense in presenting its case to the arbitrator. The expense of an arbitrator shall be divided equally between the parties.

**9.8    No Interruption of Work**

There shall be no interruption of work during the settlement of a grievance.

13

# SECTION 10. STRIKE AND LOCKOUT

**10.1**   **Strikes**

The Union and its members agree not to engage in, endorse or encourage any strikes or stoppages of work during the term of this Agreement.

It shall not be a violation of this Section if individual employees of the Company covered by this contract refuse to cross a legitimate picket line at the Company established by another union, provided that:

1. The striking union is the recognized collective bargaining representative of other employees of the Company.

2. The picket line has been officially sanctioned by the Teamsters Joint Council No. 7 and /or the Central Labor Council of Alameda County, the Building Trades Council of Alameda County, or another appropriate labor body.

**10.2**   **Lockout**

The Employer agrees not to engage in a lockout during the term of this Agreement.

# SECTION 11.   HEALTH AND WELFARE

**11.1**   **Eligibility**

New employees of the Employer shall become eligible for participation in the Health, Welfare, Dental, Drug and Vision Plans upon the first of the month following completion of their introductory period of employment.

**11.2**   **Health & Welfare**

For employees who are members of Auto, Marine and Specialty Painters Union, Local 1176, the following applies:

The Employer agrees to pay the Board of Trustees of the Automotive Industries Welfare Fund for the term of this Agreement, The sum Of Nine Hundred Seventy Dollars ($970.00)

Should the Board of Trustees of the Automotive Industries Welfare Fund find it necessary from an experience factor to increase the premium in order to maintain the schedule of benefits, the Employer aggress to increase the premium payments upon notification by the Administrator of the Automotive Industries Welfare Fund through the duration of this Collective Bargaining Agreement, subject to the limitations set forth in Section 11.3 below.

**11.3**   **Employer Contribution**

Beginning January 1, 2007, and each year thereafter during the original term of this agreement, an additional $25.00 per employee per month shall become available. If these additional funds are not needed for employee's health & welfare, they will automatically be placed into the Pension Plan, as set forth below. The Union will advise the Employer no later than October 1st of each calendar year where the funds will be applied.

14

## SECTION 12. PENSION PLAN

**12.1** **Employer Contribution & Eligibility**

For employees who are members of Auto, Marine & Specialty Painters Union, Local 1176, the Employer shall pay the sum of $376.41 per month per employee to the Automotive Industries Pension Trust Fund to provide pension benefits. Contribution amounts may vary based on Section 11.3 above.

The Employer shall transmit said pension payments to the Automotive Industries Pension Trust Fund, and the Employer shall pay Fifteen Dollars ($15.00) per month to the Supplemental Income 401(k) Plan Fund on the first (1st) day of each month, and in no event later than the fifteenth (15th) day of each month.

New employees of the Employer shall become eligible for participation in the Pension Plan upon the first (1st) day of the month following completion of ninety (90) calendar days of employment.

## SECTION 13. NO DISCRIMINATION

There shall be no discrimination of any kind because of race, creed, color, national origin, sex, or union activities against any employee or applicant for employment by the Employer or by anyone employed by the Employer; and to the extent prohibited by applicable state and federal law there shall be no discrimination because of age.

## SECTION 14. LEAVE OF ABSENCE

**14.1** **Approved Leaves**

Employees with more than one (1) year of continuous service shall be granted leaves of absence of from not less than one (1) week to thirty (30) days. Leaves in excess of thirty (30) days, not to exceed six (6) months, if granted, shall be in writing with a copy sent to the Union.

If the Company believes the number of leaves requested at any one time hampers the functioning of a department, after all other reasonable efforts are made to otherwise staff the department, it may deny further leaves, using seniority and need as its criteria for doing so.

Requests for unpaid funeral leave extensions may be for periods of less than one (1) week.

A vacation request which has been denied may not be changed to a request for a leave of absence and a request for a leave of absence may be denied when a full compliment of employees is on vacation.

A leave will be denied if the Company believes it has been requested to circumvent the attendance policy. Such a denial is subject to the grievance procedure. The Company may deny a leave that is an extension of a vacation; provided however, a one (1) week leave will be granted as an extension to a vacation for the purpose of traveling to a foreign country, if the ten percent (10%) departmental limitation is not exceeded.

An employee will only be granted a second leave of absence exceeding two (2) week's duration during the term of the Agreement if the employee uses, or has used, all remaining vacation and personal holidays in lieu of unpaid time off.

An employee on leave shall not engage in gainful employment without written permission from both the Company and the Union.

Vacation time shall not accrue while an employee is on a leave, nor shall holidays which occur during a leave be paid.

Family and medical leaves shall be granted in accordance with Federal and State laws and the regulations issued pursuant to such laws.

15

**14.2    Military Service**

Any employee covered by this Agreement and agreements supplementary hereto who leaves a position other than a temporary position with any Employer covered by this Agreement, for immediate induction into any of the armed forces of the United States, shall be re-employed if application is made within ninety (90) days after he/she is discharged from the armed forces, in accordance with the provisions of Section 9B of the Selected Services Act of 1948 and any official amendment or modification thereof.

**14.3    Funeral Leave**

In the event of a death in the immediate family of an employee who has completed the introductory period set forth in Section 8.1, shall be granted three (3) working days off with pay. Requests for unpaid funeral leave extensions may be for periods of less than one (1) week.

This provision does not apply if the death occurs while the employee is off on leave of absence, layoff, or sick leave.

For the purpose of this provision, the immediate family shall be restricted to father, mother, brother, sister, spouse and child, mother-in-law, father-in-law, brother-in-law, sister-in-law, step-children, step-parents, grandparent, spouse's grandparent, and grandchild. At the request of the Employer, the employee shall furnish proof of death and relationship.

If a death in the immediate family occurs while an employee is on vacation, the employee shall have the option to cancel any unused portion of the vacation and use funeral leave, so long as the employee attends the funeral service.

**14.4    Jury Duty**

When an employee working under the jurisdiction of this Agreement necessarily loses time from work because of jury duty, the Company shall reimburse such employee at his full regular straight-time rate of pay, less whatever remuneration he may receive from other sources for said purpose.

In the event a day shift employee is released from jury duty at any time prior to the end of first shift lunch period, he/she shall return to work and shall be allowed a reasonable time to eat lunch.

In the event a second shift employee is released from jury duty at any time prior to the end of 1st shift lunch period, he/she will report to work at his/her regular starting time. If a second shift employee is released from jury duty after the end of first shift lunch period, but prior to 1:00 pm, he/she must report to work for at least half of their scheduled shift (by 6:00 pm). If, at the Employer's option, an employee is allowed to work more than four hours, any hours in excess of four (4) hours will be at 1½ times the employee's regular rate of pay. If a second shift employee is released after 1:00 pm, he/she need not report for work that day.

Third shift employees will be treated as if they were working first shift.

The employee shall be responsible to obtain documentation from the court indicating the date served, time released, and the amount of remuneration from the court in order to be eligible for pay for jury duty.

## SECTION 15.   UNION REPRESENTATIVES AND BULLETIN BOARDS

**15.1    Business Agents**

The business agent or qualified representative of the Union shall be allowed to visit the Employer's covered establishment for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The business agent or qualified representative of the Union shall report to the management of the office before proceeding to the plant. In the event he/she wishes to interview an employee, he/she shall

report to the employee's department supervisor and he/she shall be permitted to interview him/her privately in the office. He/she shall not interfere with the normal conduct of work.

15.2 <u>Stewards</u>

A steward and alternate steward may be provided for each shift, such stewards to be appointed by the Union or selected by the employees on the job. Grievances which may arise and which cannot be adjusted on the job shall be reported to the Union by the steward; provided, however, in no event shall the steward or the Union order any changes and no changes shall be made except with the consent of the Employer.

15.3 <u>Bulletin Boards</u>

The Employer shall provide a reasonable number of bulletin boards in places reasonably accessible to the employees covered by this Agreement for the purpose of posting notices of official Union business, such as times and places of meetings.

## SECTION 16. INDUSTRIAL INJURIES

All industrial injuries, no matter how slight, must be reported to the supervisor, or Medical Department at the time the injury occurs. Any employee sent home by the Company or Company physician because of industrial injury or industrial disease shall be paid for the remainder of his/her shift.

The Company shall pay employees for any time lost during regular working hours in visits to the doctor in the case of an industrial injury or industrial disease, or shall make arrangements with the doctor that such visits shall be scheduled for after working hours. The Employer will not interfere with doctor visits which occur during working time once the visit is scheduled.

Any employee who is off work due to an industrial injury or industrial disease, the disability having been previously determined by the Company physician, shall be paid his/her regular rate of pay until disability payments are due him/her from the insurance company. The maximum payments shall be three (3) days' pay from any one injury, such payment to be made to employee upon request, except in the case of any employee whose injury exceeds fourteen (14) days.

## SECTION 17. GENERAL PROVISIONS

17.1 <u>Safety</u>

Both the Employer and the Union shall expend every effort to see to it that the work performed under the terms and conditions of this Agreement is performed with a maximum degree of safety, consistent with the requirement to conduct efficient operations. The Employer's safety rules shall be posted in a conspicuous place.

The Employer shall convene a meeting of the Plant Safety Committee. There shall be a shop steward present at each safety committee meeting. The Employer will attempt to call a safety committee member to the scene of any accident.

A grievance filed concerning a safety matter, shall be moved through an expedited settlement process. If the parties are unable to agree on a solution concerning an issue of safety, within 72 hours of the time the issue is discussed, the parties shall choose the first available arbitrator from a panel of five (5) that have previously been designated by the parties. The parties shall ask the arbitrator to make a bench decision on the matter.

17.2 <u>Maintenance of Sanitary Facilities</u>

The Employer agrees to maintain a clean, sanitary washroom with toilet facilities.

17

## 17.3 New Processes and New Machines

The Employer shall notify the Union in advance of any permanent layoff of seniority employee which is going to result from the installation of new machinery or new processes in order that the impact of such layoff upon the employee may be discussed. Such discussions are to be without recourse to the grievance procedure and without the right of strike or lockout; provided that in the event any new job classification are created or any permanent layoff is made because of the introduction of new machinery or new methods of operation, then the Union may refer to the grievance procedure set forth in this Agreement. Any dispute concerning the wage rates established by the Employer for such new classification and the question of whether such layoff was in accordance with the layoff provision set forth in the seniority section of the Agreement.

## 17.4 Shop Rules

The Employer may make and enforce shop rules provided that they are posted in the plant and not in conflict with this Agreement. The Employer before posting any new rules shall send each rule to the Union five (5) days before posting in order to insure that there is no conflict with this Agreement. Should the Employer make any changes in its shop rules during the life of this Agreement, which the Union does not agree to, the Union shall have the right to protest such changes by the grievance procedure and the change shall not be placed in effect until the grievance is resolved.

## SECTION 18. SICK LEAVE

## 18.1 Benefits

Each employee who has been continuously employed by the Employer for a period of at least one (1) year shall be credited with sick leave as follows:

1. Each employee who, on April 1, 1977, was continuously employed for at least one (1) year, shall be credited as of that date with five (5) days (forty (40) straight-time hours) of sick leave; and effective January 1, 1978, he/she shall be credited with five (5) additional days (forty (40) straight-time hours) of sick leave; and shall thereafter be credited with six (6) additional days (forty-eight (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

2. All other employees hired before March 1, 1988, shall be credited with five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service; he/she shall be credited with an additional five (5) days (forty (40) straight-time hours) of sick leave effective on the employee's second anniversary date of continuous service; and shall thereafter be credited with six (6) additional days (forty-eight (48) straight-time hours) of sick leave upon the completion of each additional full year of continuous service.

3. Employees hired after March 1, 1988, shall be credited with four (4) (thirty-two (32) straight-time hours) of sick leave effective on the employee's first anniversary date of continuous service and an additional four (4) days on each successive anniversary date of employment.

## 18.2 Waiting Period

Such sick leave shall be applicable only in cases of bona fide illness or accident and shall be paid from the first (1st) workday's absence. In those cases where illness or injury occurs during working hours, the first work day's absence shall be calculated as the twenty-four (24) hour period following the time at which the employee leaves work by reason of illness or injury. Succeeding work days' absences, full pay until sick benefit allowance is used up.

If an employee is absent from work on the day before any of the holidays listed in Section 5 or on the day after any of such holidays, due to bona fide illness or accident, said holidays shall be considered a work day's absence within the meaning of this Section 18.

18

### 18.3 Doctor's Certificate or Other Proof

If an employee's illness results in absence from work of three (3) or more consecutive days, then a doctor's certificate or other reasonable proof of illness may be required by the Employer.

### 18.4 Payment Defined

For the purposes of this Section 18, full pay shall mean pay for the regular daily schedule of working hours, for those days which the employee would have worked had the disability not occurred, calculated at straight-time.

An Employee's sick leave payment shall automatically be paid with each absence until the sick benefit allowance is used up.

### 18.5 Unused Sick Leave Accumulation

Unused sick leave may be accumulated from year to year. Accumulations in excess of thirty (30) days may, at the option of the employee, be converted to cash, if the employee so requests in writing within thirty (30) days of their qualifying date (January 1 or anniversary date).

Payment will be made by the payday following the qualifying date. Employees who quit or are terminated are not eligible for any cash conversion for unused sick leave.

### 18.6 Integration

In industrial injury or disability cases, Workers' Compensation or Unemployment Disability (UCD) benefits and sick benefit allowances shall be paid separately, but in the event Workers' Compensation payments or Unemployment Disability payments cover all or part of the period during which sick benefit allowances are paid, the sum of the two shall not exceed the sick benefit payable for said period, and the unused portion of accumulated sick leave will continue to be credited to the employee. Integration of sick leave benefits with Workers' Compensation or Unemployment Disability payments is to be automatic; the Employer may not waive integration, and any employee entitled to Worker's Compensation or Unemployment Disability payments must apply therefore (in order that the principle of integration may be applied) before sick benefits are payable.

Employees may waive using sick leave in cases involving industrial injury or disability. The burden is on the employee to inform the Employer of a waiver in writing.

## SECTION 19. SCOPE OF AGREEMENT AND SEPARABILITY OF PROVISIONS

### 19.1 Scope of Agreement

Except as otherwise specifically provided herein, this Agreement fully and completely incorporates the understanding of the parties hereto and constitutes the sole and entire agreement between the parties on any and all matters subject to collective bargaining. Neither party shall, during the term of this Agreement, demand any change therein nor shall either party be required to bargain with respect to any matter. Without limiting the generality of the above, both parties on their own behalf and on behalf of the respective members bound hereby, waive any right to demand of the other any negotiation, bargaining, or change during the life of this Agreement with respect to pensions, retirement, health and welfare, annuity or insurance plans, or respecting any question of wages, hours or any other terms or conditions of employment; provided that nothing herein shall prohibit the parties from changing the terms of this Agreement by mutual agreement.

### 19.2 Separability of Provisions

Should any section, clause or provisions of this Agreement be declared illegal by final judgment of a court of competent jurisdiction, such invalidation of such section, clause or provision shall not invalidate the remaining

19

portions hereof, and such remaining portions shall remain in full force and effect for the duration of this Agreement.

Upon such invalidation, the parties agree immediately to meet and negotiate substitute provisions for such parts or provisions rendered or declared illegal or an unfair labor practice. In the event the parties are unable to agree upon substitute provisions, the dispute may at the request of either the Employer or the Union be referred to arbitration for settlement pursuant to the provisions of Section 9.3 hereof; but the power of the arbitrator shall be restricted and limited to determining a substitute provision to provide for the same specific objective and purpose of the provision rendered or declared illegal.

**19.3 Unlawful Action Not Required**

The parties agree that neither will willfully require the other or their respective members bound hereby to do or perform any act prohibited by law.

**19.4 Government Controls**

Should any provisions of this Agreement not be placed into effect because of government wage regulations or controls, and should such controls be subsequently amended, relaxed or terminated during the term of this Agreement, then and in that event such provision(s) as has not been placed into effect because of said regulations or controls will be effectuated on the date on which it is determined that it is legally possible to do so, but not retroactively in excess of six (6) months, provided that the legality of such action is established during the term of this Agreement.

The Company and the Union agree to cooperate in the preparation and filing of any submission(s) which during the term of this Agreement are required under the regulations of the Cost of Living Council or any successor agency responsible for the administration of government wage controls.

## SECTION 20. WAGES AND CLASSIFICATIONS

The classifications and hourly wage rates for employees covered by this Agreement are set forth in Appendix "A" hereto.

## SECTION 21. PLANT CLOSURE AND RELOCATION

The Employer shall notify the Union of a proposed plant shutdown or relocation within ninety (90) days as either of these occurrences becomes imminent. In the event of a total plant closure, the following items shall become effective:

1. The Employer agrees to severance pay for any employees displaced by a closure of the plant as contained in a Letter of Understanding attached to this Agreement.

2. The Company agrees to pay an additional two (2) months of Health & Welfare coverage for any employee displaced by a closure who has less than three (3) complete calendar years of service. For Employees with more than three (3) calendar years of service, three (3) months of Health & Welfare coverage shall be paid.

In the event the Employer relocates its operation to another area, the following shall be effective:

1. The Employer will offer employment at any new location to displaced employees on the basis of seniority.

2. In the event an employee declines to transfer, the employee may elect to receive Health & Welfare coverage due as set forth above.

3. The Company and Union will make every effort to find jobs for employees displaced by a plant closure or unable to accept a transfer to a new location.

20

## SECTION 22.  SEVERANCE PAY

In the event of a plant closure during the term of this Agreement, severance pay will be paid as a supplement to unemployment benefits to provide the equivalent of the employee's weekly net take-home pay per the following schedule:

| Years of Service At Time of Termination | Number of Weeks Unemployment Benefit may be Supplemented |
|---|---|
| 24 years or more | 12 weeks |
| 22 years but less than 24 | 11 weeks |
| 20 years but less than 22 | 10 weeks |
| 18 years but less than 20 | 9 weeks |
| 16 years but less than 18 | 8 weeks |
| 14 years but less than 16 | 7 weeks |
| 12 years but less than 14 | 6 weeks |
| 10 years but less than 12 | 5 weeks |
| 8 years but less than 10 | 4 weeks |
| 6 years but less than 8 | 3 weeks |
| 4 years but less than 6 | 2 weeks |
| 1 year but less than 4 | 1 week |
| Less than 1 year | 0 |

In order to maintain benefits eligibility, employees must notify the payroll office every two (2) weeks, either by telephone or by mailing a photocopy of their current unemployment check.  Acceptance of any employment following termination will result in no further severance being made.

NOTE:

Employees choosing not to file for unemployment benefits will receive the same severance benefits as if they were receiving unemployment compensation.  However, they must still report their employment status every two (2) weeks if they wish to receive severance payments.

An employee receiving severance pay in accordance with the procedures set forth above who obtains another job and loses it for any reason shall be permitted one ninety (90) day period during which he/she shall notify the Company of the job loss and may be returned to the severance program set forth herein.

## SECTION 23.  SUB-CONTRACTING

The Company has the right to subcontract when it concludes that the work cannot be more economically or efficiently performed by employees.  The Employer agrees that it will not sub-contract bargaining unit work with the sole intent of depleting the bargaining unit work force.  Upon demand, the Company agrees to supply the Union with all reasons for sub-contracting of any function causing loss of bargaining unit work.

## SECTION 24.  DURATION

This Agreement shall be effective January 1, 2007, except for those provisions of the Agreement which have been assigned other effective dates as herein above set forth and shall remain full force and effect to and including December 31, 2011, and shall continue thereafter from year to year, unless at least sixty (60) days prior thereto, or to the first (1st) day of January of any subsequent year either party shall file written notice with the other of its desire to amend, modify, or terminate this Agreement.

21

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this ___ day of _____, 2007.

GILLIG CORPORATION

AUTO, MARINE AND SPECIALTY
PAINTERS UNION, LOCAL 1176
DISTRICT COUNCIL 16

By: _____

By: _____

22

## APPENDIX "A"

### SECTION 1. CLASSIFICATIONS AND WAGE RATES

The classifications and minimum straight-time hourly wage rates covered by this Agreement shall be as follows (The Union reserves the right to allocate increases beginning in 2007, to pension or health and welfare, if needed):

|  | 1/1/07 | 1/1/08 | 1/1/09 |
|---|---|---|---|
| Working Foreperson*: | $ 23.31 | $ 24.66 | $ 26.06 |
| Journeyperson: | $ 22.31 | $ 23.66 | $ 25.06 |

Employees may be interchanged between bodywork (Local 853) and paint preparation (Local 1176) to provide job coverage in cases of unplanned absenteeism, emergencies or extraordinary circumstances. The employer shall notify the respective chief shop steward of the need to interchange. In no event shall the ability to interchange be used to fill permanent vacancies.

*Replacement Working Forepersons: An employee designated to replace a Working Foreperson shall receive One Dollar ($1.00) per hour above the journeyperson rate of pay for each hour he or she functions as a temporary Working Foreperson. If the assignment requires a change of shift, Two Dollars ($2.00) per hour above the journeyperson rate of pay shall be paid.

### SECTION 2. PROGRESSION

Upon completion of one (1) year's service in the Specialist C classification, the employee shall be moved up to the Specialist B classification.

Upon completion of one (1) year's service in the Specialist B classification, the employee shall be moved up to the Specialist A classification.

An employee who has performed satisfactorily as a Specialist A for twelve (12) months will become a journeyperson; provided, however, that if the Employer believes that the employee is not competent or qualified to perform the functions of a journeyperson in the department, it shall notify the Union in writing and, if the matter cannot be resolved within three (3) working days, the Employer may submit the matter to a Board of Adjustment (pursuant to Section 9.2) which shall be comprised of persons who are qualified, by reason of training and experience, to evaluate the qualifications and competence of a journeyperson in the work involved. In such a case, members of the Board of Adjustment may question the employee directly about his/her job knowledge and experience and observe him/her performing the various functions of a journeyperson in the work involved.

Where there is a need and vacancy for a journeyperson in a department (and the job is not filled pursuant to the foregoing paragraph) the job shall be offered to the most senior qualified Specialist A in the department who has performed satisfactorily as a Specialist A for twelve (12) months or more; provided, however, that if the Employer believes that the employee is not competent or qualified to perform the functions of a journeyperson in the department the matter may be adjusted in accordance with the foregoing paragraph.

If an employee is deemed not to be qualified as a journeyperson, he/she shall be afforded, upon written request, a reasonable opportunity to perform job functions required of a journeyperson which he/she had not previously been afforded a reasonable opportunity to perform.

All employees within a progression temporarily laid off, when re-hired shall be paid the same hourly rate of pay as when temporarily laid off and shall not lose any accumulated time worked toward the regular increase.

23

## SECTION 3. WORKING FOREPERSONS

There shall be at least one (1) Working Foreperson in each department that has three (3) or more employees. If the Working Foreperson is not at work for more than two (2) weeks straight, he or she shall be replaced by another employee on a temporary basis. All employees elevated to Working Forepersons shall have their pay reflect the change in a timely manner.

A working foreperson shall receive at least the rate listed for that classification, and shall not have the responsibility to hire or fire, or discipline, employees or effectively recommend such.

It is agreed and understood that this Agreement does not abridge the Employer's rights to promote or demote, to or from the classification of working foreperson.

## SECTION 4. MINIMUM RATES

The wage rates listed above are minimum rates for the classifications shown. The minimum rates listed shall not be used to reduce the wage rate of any employee now receiving more than the listed minimum rate for his classification.

## SECTION 5. EMPLOYEES HIRED AFTER MARCH 1, 1988

A. The classifications and minimum straight-time hourly wage rates covered by the Agreement shall be as follows:

|  |  | 1/1/07 | 1/1/08 | 1/1/09 |
|---|---|---|---|---|
| Journeyperson |  | Same as Section 1 |  |  |
| Specialist A | - | $ 20.40 | $ 21.75* | $ 23.15* |
| Specialist B | - | $ 19.40 | $ 20.75* | $ 22.15* |
| Specialist C | - | $ 18.40 | $ 19.75* | $ 21.15* |

*May be allocated by the Union towards Health & Welfare and/or Pension.

B. Summer Hires may be utilized and shall be paid $1.50 per hour below the Specialist C rate.

## SECTION 6. ECONOMICS

6.1 **Annual Economics**

During the life of this Agreement, Wages, Pension and Health & Welfare shall be as follows:

| Year | Wages | Health & Welfare |
|---|---|---|
| 2007 | $1.30* | $25.00 per month |
| 2008 | $1.35* | $25.00 per month |
| 2009 | $1.40* | $25.00 per month |

*May be allocated by the Union towards Health & Welfare and/or Pension.

24

## LETTER OF UNDERSTANDING

## ATTENDANCE AND TARDINESS CONTROL

Attendance shall be monitored by a point and warning system. The program is designed to control excessive absenteeism by assigning points for absences and tardiness and by making employees aware of where they are under the procedure. Any warning that is not issued within three (3) working days of the unexcused absence or tardy shall not be counted under this program.

| | |
|---|---|
| ½ point | Late [any time after one (1) hour but less than four (4) hours] |
| ½ point | Early out [more than one (1) hour but less than four (4) hours] |
| 1 point | Unpaid absence in excess of paid sick days |

One (1) point given for absences of one (1) day or consecutive days for bona fide illness evidenced by a doctor's or hospital certificate. Each day missed in excess of three (3) consecutive days will be assessed a point, in the absence of a certificate.

If a late and an early out occur on the same day, a total of one (1) point will be assessed. No more than a total of one (1) point will be assessed for any one day.

### SCHEDULE I

| POINTS | ACTION |
|---|---|
| 2 points | Step 1 – written counsel |
| 3 points | Step 2 – written warning |
| 6 points | Step 3 – 2nd written warning |
| 8 points | Step 4 – Final written warning |
| 9 points | Step 5 - Termination |

On the final calendar day of each year, all points shall expire except for those employees on Step 3, or beyond. Those employees shall be subject to the following schedule of points in the next year.

### SCHEDULE II

| ABSENCE POINTS | ACTION |
|---|---|
| 2 points | Step 1 – written warning |
| 4 points | Step 2 – Final written warning |
| 5 points | Step 3 – Termination |

Employees who are placed on Schedule II shall remain on that schedule for two years.

### Call-in Procedure

The Company shall provide a system to document calls by time and date, for calls made prior to the switchboard opening. Calls for absences must be received within one (1) hour of the start of the shift or will be considered "no call-no show".

### Excused Absences

Vacation days, jury duty, holidays, paid sick days, and Company approved leaves, days that fall under FMLA, ADA, Worker's Compensation, or SDI. Union Business when Employer is pre-notified.

FOR THE EMPLOYER          FOR THE UNION

25

## LETTER OF UNDERSTANDING

### FINISH PAINTER'S PREMIUM

Assigned Finish Painters will be paid a premium of 3.00 per day effective April 1, 1991.

Assignment of jobs is at the sole discretion of management.

FOR THE EMPLOYER          FOR THE UNION

26

### LETTER OF UNDERSTANDING

### HOLIDAYS & VACATIONS, "WORKABLE CREW"

This letter shall serve to interpret the "minimum" number of employees allowed off for Vacations and Floating Holidays in each department.

The Company shall continue the policy of not counting employees out on Funeral Leave or Medical Leave (work or non-work related) when establishing the minimum.

"Workable crew", as contained in the Vacation and Holiday sections of the Agreement, shall be interpreted as ten percent (10%) plus one (1) person allowed out of the department on a floating holiday per week. (**Exception: See Section 5. Floating Holidays**)

Where urgent verifiable reasons for a day off are presented to the Company, the Company shall allow an employee to utilize a Floating Holiday if the employee has one available for use. This shall not be subject to the pre-scheduling language contained in the Agreement.


FOR THE EMPLOYER                    FOR THE UNION

27

## LETTER OF UNDERSTANDING

### DRUG & ALCOHOL POLICY

It is understood between the parties that the Employer's Drug and Alcohol Policy as provided to the Unions on December 27, 1990, is made a part of this Collective Bargaining Agreement.

It is further understood than any employee who fails a drug and alcohol test will be afforded an opportunity to attend a T.A.R.P. rehabilitation program or another accredited rehabilitation program and will be returned to work without loss of seniority upon the successful completion of the program and the execution of a T.A.R.P. Return to Work Agreement. The program must be started immediately upon failing the test and only one opportunity for such rehabilitation will be offered to an employee. Failure of a second test any time after attending a rehabilitation program will result in termination. Failure to immediately agree to commence rehabilitation or failure to successfully complete the program will result in termination.

An employee, who enters the T.A.P. program voluntarily, may be subject to a Return-to-Work Agreement, and subject to random testing (maximum of four (4) times in any twelve (12) consecutive month period from their return to work). However, it shall be the employee's choice as to whether or not he/she wishes to participate in the program.

An employee in a voluntary T.A.P. program who tests positive, or who fails to fulfill the Return-to-Work Agreement will be eligible for one (1) additional referral. An employee under an involuntary referral will be subject to immediate termination upon testing positive or failing to fulfill the terms of the Return-to-Work Agreement.

FOR THE COMPANY                    FOR THE UNION

28

## LETTER OF UNDERSTANDING

### MARTIN LUTHER KING'S BIRTHDAY

Any employee wishing to celebrate Martin Luther King's birthday shall notify the Company at least two (2) weeks prior to the holiday. The employee shall be allowed to take a floating holiday, vacation, sick leave, or unpaid excused day off.

In the event the number of requests exceed the amount required to maintain a workable crew, the Company reserves the right to deny requests on the basis of seniority.

FOR THE COMPANY          FOR THE UNION

29

## LETTER OF UNDERSTANDING

### SENIORITY

It is agreed by and between the parties that Section 7.1 of the Collective Bargaining Agreement shall include the interpretation set forth in this Letter of Understanding.

Where more than one employee is hired on the same working day, each employee's position on the seniority board shall be determined by the employee number assigned by the Company as employment offers are accepted. The lowest employee number indicates the highest seniority.

It is further understood that the manner of determining seniority when more than one employee has been hired on the same date, set forth herein, has been used prior to the execution of this Letter of Understanding and shall be recognized as determinative in all cases.

FOR THE COMPANY           FOR THE UNION

30

## LETTER OF UNDERSTANDING

### 401(k) PLAN AND ADMINISTRATION

This Letter of Understanding will confirm that Gillig Corporation agrees to participate in the Supplemental Income Plan Trust Fund, 401(k) Plan, on behalf of the employees represented by Teamsters Local 853 and Painters Local 1176. Gillig Corporation agrees to make weekly deductions as directed by the employees and forward the deductions to the 401(k) Plan administrator on a monthly basis. Gillig Corporation also agrees that it will pay the monthly administrative fee on behalf of each participating employee.


FOR THE COMPANY                    FOR THE UNION

31

# CONTACT EXTENSION

*Between*

## AUTO, MARINE AND SPECIALTY PAINTER
## TEAMSTERS LOCAL 853
## LOCAL 1176

*And*

## GILLIG CORPORATION

The current Collective Bargaining Agreement that expires at midnight on December 31, 2009 has been extended until midnight on December 31, 2011.

The only changes in the Agreement are economic and are as follows:

January 1, 2010:     $1.45 per hour (to be allocated), plus an additional $25.00 per month to be used for Health and Welfare increases.

If the $25.00 per month is not needed for Health and Welfare, then it will be applied to either the 401(k) Plan or Pension Plan(s).

January 1, 2011:     $1.50 per hour (to be allocated), plus an additional $25.00 per month to be used for Health and Welfare increases.

If the $25.00 per month is not needed for Health and Welfare, then it will be applied to either the 401(k) Plan or Pension Plan(s).

All other terms and conditions in the Collective Bargaining Agreement shall remain the same.

**FOR THE UNION:**                          **FOR THE EMPLOYER:**

By: _____                By: _____

Date: 4-23-08                              Date: 4/23/08

By: _____                By: _____

Date: _____              Date: 4/23/08

32

# CONTRACT EXTENSION
*Between*

## GILLIG, LLC & PAINTERS LOCAL 1176

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2011 is hereby extended until midnight December 31, 2014, upon the terms and conditions set forth herein:

1. On January 1, 2012 an increase of $1.55 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176.

2. On January 1, 2013 an increase of $1.57 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.31 per hour).

3. On January 1, 2014 an increase of $1.62 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned surcharge of 12 ½ % of current contribution ($.34 per hour).

4. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**

By: *Pamela J. McKenna*

Date: 2/10/11

**FOR THE UNION:**

By: *Jose Santana*

Date: 2/10/11

# CONTRACT EXTENSION

*Between*

## GILLIG, LLC & PAINTERS LOCAL 1176

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2014 is hereby extended until midnight December 31, 2016, upon the terms and conditions set forth herein:

1.  On January 1, 2015 an increase of $1.69 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.13 per hour).

2.  On January 1, 2016 an increase of $1.74 per hour shall be applied to wages, health and welfare and pension as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.14 per hour).

3.  All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**                     **FOR THE UNION:**

By: _Pamela J. McKenna_                  By: _Joe Santana_

Date: _3/19/13_                          Date: _3/19/13_

# CONTRACT EXTENSION

## *Between*

## GILLIG, LLC & PAINTERS LOCAL 1176

It is hereby agreed, by and between the above parties that the Collective Bargaining Agreement that expires at midnight on December 31, 2016 is hereby extended until midnight December 31, 2023, upon the terms and conditions set forth herein:

1. On January 1, 2017 an increase of $1.79 per hour shall be applied to wages, pension, and health & welfare, as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.14 per hour).

2. On January 1, 2018 an increase of $1.84 per hour shall be applied to wages, pension, and health & welfare, as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.15 per hour).

3. On January 1, 2019 an increase of $1.89 per hour shall be applied to wages, pension, and health & welfare as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the planned supplemental contribution of 5% of current contribution ($.16 per hour).

4. On January 1, 2020 an increase of $1.94 per hour shall be applied to wages, pension, and health & welfare as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.17 per hour).

5. On January 1, 2021 an increase of $1.99 per hour shall be applied to wages, pension, and health and welfare as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.18 per hour).

6. On January 1, 2022 an increase of $2.04 per hour shall be applied to wages and health and welfare as allocated by Painters Local 1176. In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.19 per hour).

7. On January 1, 2023 an increase of $2.09 per hour shall be applied to wages, pension and health and welfare as allocated by Painters Local 1176  In addition, Gillig, LLC shall pay to the Automotive Pension Plan the supplemental contribution of 5% of current contribution ($.20 per hour).

8. All other terms and conditions in the aforementioned Collective Bargaining Agreement shall remain as written.

**FOR THE COMPANY:**

By: _____

Date: 12/27/16 _____

**FOR THE UNION:**

By: _____

Date: 12/19/2016 _____

**FOR THE COMPANY:**

By: Daniel J. McKenna

Date: 12/27/16 _____

**FOR THE UNION:**

By: _____

Date: _____

## LETTER OF UNDERSTANDING

### Summer Student Program

This letter will confirm the hiring of students for the summer months.

In order to provide employment for deserving students, Gillig may hire students for the summer months from May 31, 2016, through September 23, 2016, at a rate of $27.14 per hour. The provisions of the Agreement shall not apply unless the summer student continues to work beyond September 23, 2016, at which time he/she shall be deemed a regular employee and all time worked as a summer student shall count toward completion of the normal introductory period as defined in Section 7 of the Agreement.

It is understood that these individuals must be students and not considered a part of the collective bargaining unit. The company will not employ summer students if there are any regular employees with recall rights on layoff.

Summer students must be cleared through the Union office and will be required to pay a service fee of one hundred fifty-three dollars ($153.00). This shall be the total fee paid for the term of their entire employment as summer student employees. This amount is non-refundable.

**FOR THE COMPANY:**       **FOR THE UNION:**

_Pamela J. McKenna_  5/30/16    _Chris Christophersen_  5-30-16
Pamela J. McKenna   Date    Chris Christophersen    Date



# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD TOLENTINO, individually, and
on behalf of all others similarly situated,

　　　　　Plaintiff,

　　v.

GILLIG, LLC,

　　　　　Defendant.

Case No. 20-cv-07427-MMC

**ORDER DENYING PLAINTIFF'S
MOTION TO REMAND; GRANTING IN
PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS;
REMANDING STATE LAW CLAIMS**

　　　　Before the Court are the following two motions: (1) plaintiff Ronald Tolentino's

("Tolentino") "Motion to Remand," filed November 6, 2020, and (2) defendant Gillig, LLC's

("Gillig") "Motion to Dismiss," filed December 4, 2020.  Both motions have been fully

briefed.  Having considered the papers filed in support of and in opposition to the

motions, the Court rules as follows.[1]

**BACKGROUND**

　　　　In the instant action, Tolentino, who was employed by Gillig as a maintenance

worker from May 2002 to June 2020 (see Compl. ¶ 7), alleges Gillig "failed to pay [him]

for all hours worked (including minimum wages and overtime compensation), failed to

provide [him] with uninterrupted meal periods, failed to authorize and permit [him] to take

uninterrupted rest periods, failed to maintain accurate records of the hours [he] worked,

failed to timely pay all final wages to [him] when [Gillig] terminated [his] employment, and

failed to furnish accurate wage statements to [him]" (see id. ¶ 14).

---

　　　　[1] By orders filed December 7, 2020, and January 4, 2021, the Court took the
matters under submission.

Based thereon, Tolentino, on September 16, 2020, filed his complaint in the Superior Court of California, in and for the County of Alameda, asserting, on behalf of himself and a putative class, the following seven Causes of Action: (1) "Failure to Pay Minimum Wages for All Hours Worked," (2) "Failure to Pay Overtime Wages," (3) "Failure to Provide Meal Periods," (4) "Failure to Authorize and Permit Rest Periods," (5) "Failure to Pay Wages of Discharged Employees – Waiting Time Penalties," (6) "Failure to Provide and Maintain Accurate and Compliant Wage Records," and (7) "Violation of California Business & Professions Code §§ 17200, et seq."

On October 22, 2020, Gillig removed the case to federal court, on the ground that the asserted Causes of Action are preempted by federal labor law, specifically, § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Thereafter, Tolentino moved to remand the case to state court, on the ground that this Court lacks subject matter jurisdiction, and Gillig moved to dismiss all Causes of Action alleged therein, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

### A. Motion to Remand

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," see 28 U.S.C. § 1447(c), and "federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," see Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996). The party invoking the federal court's removal jurisdiction bears the burden of establishing federal jurisdiction. See Emrich v. Toche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).

### B. Motion to Dismiss

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

United States District Court
Northern District of California

Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

### A.     Motion to Remand

In his Motion to Remand, Tolentino argues Gillig "failed to establish federal question jurisdiction under § 301 pre-emption of the Labor Management Relations Act." (See Mot. to Remand at 2:3-6.)

Pursuant to section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties." See 29 U.S.C. § 185. "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement ["CBA"], and any state claim whose outcome depends on analysis of the terms of the agreement." See Newberry v. Pac. Racing Ass'n, 854 F.2d 1142, 1146 (9th Cir. 1988) (internal citation omitted). "Once preempted, any claim purportedly based on [a] . . . state law is considered, from its inception, a

United States District Court
Northern District of California

1  federal claim, and therefore arises under federal law."  See Burnside v. Kiewit Pac. Corp.,

2  491 F.3d 1053, 1059 (9th Cir. 2007) (alteration in original) (internal quotation and citation

3  omitted).

4      To determine whether a state law claim is preempted by § 301, the Ninth Circuit

5  employs a "two-step test."  See Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1152 (9th Cir.

6  2019).  First, courts ask "whether the asserted cause of action involves a right conferred

7  upon an employee by virtue of state law, not by a CBA."  See Burnside, 491 F.3d at

8  1059.  "If the right exists solely as a result of the CBA, then the claim is preempted."  See

9  id.  "If, however, the right exists independently of the CBA," the court must determine

10  "whether it is nevertheless substantially dependent on analysis of a collective-bargaining

11  agreement," see id. (internal quotation and citation omitted), which determination "turns

12  on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the

13  CBA," see Curtis, 913 F.3d at 1153 (alteration in original) (internal citation omitted).  "At

14  this second step of the analysis, claims are only preempted to the extent there is an

15  active dispute over the meaning of contract terms."  See id. (internal quotations and

16  citation omitted).

17      Here, Gillig offers evidence, undisputed by Tolentino, that during the course of

18  Tolentino's employment with Gillig, he was subject to the terms of a CBA between Gillig

19  and Teamsters Local 853 ("Union").  (See Req. for Judicial Notice ("RJN") Ex. 1.)[2]  Based

20  thereon, Gillig contends (1) Tolentino's overtime and untimely payment of wages claims

21  are preempted by § 301, on the basis that those claims involve rights that exist solely as

22  a result of the CBA, (2) Tolentino's minimum wage and rest break claims are preempted

23  by § 301, on the basis that those claims require "substantial interpretation" of the CBA

24  (see Opp. to Mot. to Remand at 5:22-6:1), and (3) Tolentino's remaining claims are either

25

26      _____

27      [2] Tolentino's unopposed Request for Judicial Notice of the above-referenced CBA
is hereby GRANTED.  See Hall v. Live Nation Worldwide, Inc., 146 F. Supp. 3d 1187,
1192-93 (C.D. Cal. 2015) (taking judicial notice of CBA where defendant asserted

28  plaintiff's claims were completely preempted by LMRA).

United States District Court
Northern District of California

1  derivative of the foregoing claims or warrant the Court's exercise of supplemental

2  jurisdiction.

3       The Court next addresses the claims in the order discussed by Gillig in opposing

4  Tolentino's Motion to Remand.

5       **1.      Failure to Pay Overtime**

6       In the Second Cause of Action, Tolentino alleges Gillig failed to pay him overtime

7  compensation, in violation of section 510 of the California Labor Code.  Gillig argues the

8  Second Cause of Action is preempted and thus is subject to remand, as it "exists solely

9  as a result of the CBA."  (See Opp. to Mot. to Remand at 9:3-4); see also Burnside, 491

10 F.3d at 1059 (holding claim preempted where "right exists solely as a result of the CBA").

11 As discussed below, the Court agrees.

12      Section 510 of the California Labor Code sets forth the hours constituting overtime

13 hours and the rate of pay applicable thereto.  See Cal. Labor Code § 510.  The Labor

14 Code, however, further provides:

15         Sections 510 and 511 do not apply to an employee covered by a valid
           collective bargaining agreement if the agreement expressly provides for the
16         wages, hours of work, and working conditions of the employees, and if the
           agreement provides premium wage rates for all overtime hours worked and
17         a regular hourly rate of pay for those employees of not less than 30 percent
           more than the state minimum wage.
18

19 See id. § 514.  "By its terms, therefore, the default definition of overtime and overtime

20 rates in section 510 does not apply to an employee who is subject to a qualifying CBA."

21 See Curtis, 913 F.3d at 1153-54.  Rather, under such circumstances, the employee's

22 "right to overtime exists solely as a result of the CBA."  See id. at 1155 (internal quotation

23 and citation omitted) (finding, where CBAs at issue "me[t] the requirements of section

24 514," plaintiff's overtime claim was preempted by LMRA).[3]  Here, it is undisputed that the

25 _____

26      [3] The case on which Tolentino relies, Vasserman v. Henry Mayo Newhall Memorial
   Hospital, 65 F. Supp. 3d 932 (C.D. Cal. 2014), was decided before Curtis, and thus,
27 Tolentino's reliance thereon is unavailing.  See Fennix v. Tenderloin Hous. Clinic, Inc.,
   No. 20-CV-05207-DMR, 2020 WL 6462394, at *3 & n.3 (N.D. Cal. Nov. 3, 2020) (finding
28 claim preempted where plaintiff did not dispute CBA met requirements of section 514;
   noting Vasserman was "decided before Curtis and relied on caselaw explicitly abrogated

United States District Court
Northern District of California

1    relevant CBA meets the requirements set forth in section 514, and, consequently,

2    Tolentino's right to overtime exists solely as a result thereof.

3        Accordingly, the Second Cause of Action, to the extent it alleges failure to pay

4    overtime, is preempted by the LMRA.

5        **2.**    **Failure to Timely Pay Wages**

6        The First and Second Causes of Action are based in part on Gillig's alleged failure

7    to timely pay wages, in violation of section 204 of the California Labor Code.  Gillig

8    contends those claims, like Tolentino's overtime claim, "arise[] solely as a result of the

9    CBA."  (See Opp. to Mot. to Remand at 10:25-11:1.)  Again, the Court agrees.

10       Under the California Labor Code, employers are required to pay wages "twice

11   during each calendar month."  See Cal. Labor Code § 204(a).  When, however,

12   "employees are covered by a collective bargaining agreement that provides different pay

13   arrangements, those arrangements shall apply to the covered employees."  See id.

14   § 204(c).  Here, it is undisputed that the subject CBA provides for such an arrangement,

15   specifically, the payment of wages on a weekly basis.  (See RJN Ex. 1 § 4.1 ("Payday will

16   be weekly for all employees.").)  Consequently, Tolentino's right to the timely payment of

17   wages "exists solely as a result [of] the CBA."  See Bradford v. Prof'l Tech. Sec. Servs.

18   Inc. (Protech), No. 20-CV-02242-WHO, 2020 WL 2747767, at *4 (N.D. Cal. May 27,

19   2020) (holding, where CBA provided for different pay arrangement than arrangement set

20   forth in section 204(a), "[plaintiff's] right to timely payment exist[ed] solely as a result [of]

21   the CBA and [was] preempted").

22       Accordingly, the First and Second Causes of Action, to the extent they allege

23   failure to timely pay wages, are preempted by the LMRA.

24       **3.**    **Failure to Pay Minimum Wages**

25       In the First Cause of Action, Tolentino alleges Gillig failed to compensate him for

26   all of the hours he worked and thus that he is entitled "to recover minimum wages for all

27   _____

28   by that decision").

United States District Court
Northern District of California

1    non-overtime hours worked for [Gillig]." (See Compl. ¶ 32.) Although Gillig does not

2    contend Tolentino's right to minimum wages exists solely as a result of the CBA, see Cal.

3    Labor Code § 1197 (making it "unlawful" to pay "lower wage than the minimum" provided

4    by law), it contends resolution of Tolentino's claim based on such right "requires

5    substantial interpretation of the CBA" (see Opp. to Mot. to Remand at 11:17-20).

6    Specifically, Gillig argues, the Court must interpret Tolentino's "minimum pay rate" as "set

7    forth in Appendix A of the CBA, along with various minimum wage increases agreed to by

8    Gillig and the Union in multiple extension agreements." (See id. at 11:20-23.)

9         Gillig fails, however, to identify an "active dispute," see Curtis, 913 F.3d at 1153, or

10   even a likely dispute, over meaning of any terms in the CBA relevant to a

11   determination of Tolentino's pay rate, and "the fact that [Tolentino's] minimum wage rate

12   is defined by the CBA does not in itself create a dispute about the CBA's terms," see

13   Parker v. Cherne Contracting Corp., No. 18-CV-01912-HSG, 2019 WL 359989, at *6

14   (N.D. Cal. Jan. 29, 2019) (finding, where "[d]efendant has not identified any substantive

15   dispute over the language of the CBA that would require interpretation," plaintiff's

16   minimum wage claims are not preempted by LMRA). Indeed, Tolentino is not challenging

17   the hourly figure applicable to the hours he worked; rather, he alleges there were hours

18   he worked for which he received no credit, i.e., no payment at all. Thus, any reference to

19   the minimum wage rate provided in the CBA will be necessary only for the purpose of

20   calculating the appropriate amount, if any, of damages to which Tolentino is entitled, i.e.,

21   the sum attributable to any unpaid hours, and "the mere need to 'look to' the collective-

22   bargaining agreement for damages computation is no reason to hold the state-law claim

23   defeated by § 301." See Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994) (holding,

24   "the bare fact that a collective-bargaining agreement will be consulted in the course of

25   state-law litigation plainly does not require the claim to be extinguished").

26        Accordingly, the First Cause of Action, to the extent it alleges a failure to pay

27   minimum wages, is not preempted by the LMRA, i.e., it remains, as pleaded, a state law

28   claim, and, as said claim and the claims over which the Court has original jurisdiction

"derive from a common nucleus of operative fact," specifically, Tolentino's employment relationship with Gillig, the Court finds it appropriate to exercise supplemental jurisdiction over it.  See Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003) (internal quotations and citations omitted).

### 4. Failure to Provide Rest Breaks

In the Fourth Cause of Action, Tolentino alleges Gillig "failed to authorize [him] . . . to take rest breaks."  (See Compl. ¶ 54.)  Gillig does not contend Tolentino's right to rest breaks exists solely as a result of the CBA.  See Cal. Labor Code § 226.7.  Rather, Gillig contends resolution of the Fourth Cause of Action "requires substantial interpretation of the CBA."  (See Opp. to Mot. to Remand at 13:9-12.)  In support thereof, Gillig points to section 4.6 of the CBA, which provides as follows:

> All full-time employees shall be entitled to two (2) ten minute breaks each day.  One (1) break shall be in the first half of the shift and the other during the second half of the shift.  An additional break of ten (10) minutes shall be taken at the end of the regular shift when three (3) or more hours of overtime is scheduled or anticipated.

(See RJN Ex. 1 § 4.6.)  In particular, Gillig argues, the terms "shall be entitled," "regular shift," and "anticipated" will require interpretation of the above-referenced provision.  (See Opp. to Mot. to Remand at 13:21-23, 14:9-11.)

Gillig fails, however, to identify an active dispute as to the interpretation of any of the above terms; to the extent Gillig argues there is a potential for dispute, and even assuming, arguendo, a potential, rather than an active, dispute suffices for purposes of § 301, see Curtis, 913 F.3d at 1153 (holding, "[a]t th[e] second step of the analysis, claims are only preempted to the extent there is an active dispute over the meaning of contract terms" (internal quotations and citation omitted)), Gillig's argument is not persuasive.[4]

---

[4] The case on which Gillig relies, Marquez v. Toll Global Forwarding (USA) Inc., No. 218CV03054ODWASX, 2018 WL 3218102 (C.D. Cal. June 28, 2018), is readily distinguishable on its facts, as the terms under consideration therein were different than the above-referenced terms; moreover, the parties "actively dispute[d]" them.  See

United States District Court
Northern District of California

United States District Court
Northern District of California

1   First, as to the term "shall be entitled," there is, contrary to Gillig's assertion, no

2   meaningful distinction between that language and the statutory term "shall authorize and

3   permit." See Cal. Code Regs. tit. 8, § 11160(11); see also Bradford, 2020 WL 2747767,

4   at *7 (finding CBA provision, pursuant to which employees were "entitled" to rest breaks,

5   "unambiguous"). Second, when read in context, there can be no real disagreement as to

6   the meaning of the term "regular shift." (See RJN Ex. 1 § 4.2 ("Regular Workday (Day

7   Shift)") (providing, "[t]he regular workday . . . shall consist of eight (8) consecutive

8   hours"). Similarly, the meaning of the term "anticipated" overtime is not reasonably

9   subject to dispute. In particular, "anticipated" overtime, when read in context, is

10  unscheduled overtime that has been offered to an employee and has not, by the end of

11  the employee's regular shift, been refused. (See id. §§ 4.7-4.9.)

12  Accordingly, the Fourth Cause of Action is not preempted by the LMRA, i.e., it

13  remains, as pleaded, a state law claim, and, as said claim and the claims over which the

14  Court has original jurisdiction "derive from a common nucleus of operative fact,"

15  specifically, Tolentino's employment relationship with Gillig, the Court finds it appropriate

16  to exercise supplemental jurisdiction over it. See Trs. of Constr. Indus. & Laborers

17  Health & Welfare Tr., 333 F.3d at 925 (internal quotations and citations omitted).

18      **5.    Remaining Causes of Action**

19  As noted, Gillig argues the remaining Causes of Action are either derivative of the

20  Causes of Action that are preempted by the LMRA or warrant the Court's exercise of

21  supplemental jurisdiction. Specifically, Gillig contends (1) the Fifth, Sixth, and Seventh

22  Causes of Action are derivative of the claims over which the Court has original

23  jurisdiction, and (2) the Court should exercise supplemental jurisdiction over the Third

24  Cause of Action.[5]

25  _____

26  Marquez v. Toll Global Forwarding, 804 F. App'x 679, 681 (9th Cir. 2020).

27  [5] In its Motion to Dismiss, Gillig argues the Third Cause of Action, i.e., Tolentino's
    meal period claim, is preempted by § 301, apparently basing such argument on the
28  CBA's "reference to lunch or meal periods in three separate provisions." (See Mot. to
    Dismiss at 13:26.) Gillig fails, however, to identify any dispute, whether active or

9

United States District Court
Northern District of California

As discussed above, the First Cause of Action, to the extent it alleges a failure to timely pay wages, and the Second Cause of Action, in its entirety, are preempted by the LMRA. To the extent the Fifth, Sixth, and Seventh Causes of Action are derivative thereof, they likewise are preempted by the LMRA. See Vasquez v. Packaging Corp. of Am., No. CV 19-1935 PSG (PLAx), 2019 WL 4543106, at *4 (C.D. Cal. June 7, 2019) (finding, where plaintiff's overtime claim was preempted by LMRA, plaintiff's remaining claims were preempted by LMRA "to the extent they [were] derivative of [p]laintiff's overtime claim").

As to the Third Cause of Action, in its entirety, as well as the Fifth, Sixth, and Seventh Causes of Action, to the extent they are not derivative of the preempted claims, the Court, for the same reasons as set forth above with respect to Tolentino's minimum wage and rest break claims, finds it appropriate to exercise supplemental jurisdiction.

### 6.    Conclusion: Motion to Remand

In sum, to the extent Tolentino seeks an order remanding all asserted Causes of Action to state court based on a lack of subject matter jurisdiction, the Motion to Remand will be denied.

## B.    Motion to Dismiss

In its Motion to Dismiss, Gillig argues Tolentino's claims are subject to dismissal because Tolentino "failed to grieve and arbitrate his claims in accordance with the requirements of the collective bargaining agreement." (See Mot. to Dismiss at 6:11-13.) In support thereof, Gillig points to section 9 of the CBA, titled, "SETTLEMENT OF DISPUTES," which sets forth the "Grievance Procedure" governing resolution of "any disputes or grievances which may arise concerning the application or enforcement of [said] Agreement." (See RJN Ex. 1 § 9.1.) Specifically, as provided therein, an "aggrieved employee," within three working days after such employee "first had notice to [sic] the facts on which the grievance is based," is required to first raise the grievance

_____

potential, as to the meaning of any terms contained therein.

1    "with his/her immediate supervisor," to thereby "endeavor to adjust the matter," and, if

2    unsuccessful, to continue through a series of meetings with progressively higher-level

3    Gillig personnel, followed by submission to a "Board of Adjustment" consisting of Union

4    members selected by Gillig and the Union,[6] and, ultimately, a hearing by a "neutral

5    arbitrator," whose decision "shall be final and binding upon the Company, the Union and

6    all employees concerned." (See id. §§ 9.1-9.2, 9.6.)

7         In response, Tolentino does not dispute Gillig's assertion that he failed to exhaust

8    the grievance procedures set forth in the CBA. Rather, Tolentino argues, Gillig has failed

9    to show he agreed to "'a clear and unmistakable waiver' of [his] protected right to bring

10   statutory claims in a judicial forum." (See Opp. at 17:18-20 (internal citation omitted).)[7]

11        As to the Causes of Action over which the Court has original jurisdiction, however,

12   i.e., the preempted claims, such argument is unavailing for the reason that, as discussed

13   above, those claims involve rights that "exist[] solely as a result of the CBA" and not a

14   state statute. See Burnside, 491 F.3d at 1059. Consequently, as to those claims,

15   Tolentino's waiver of his right to bring statutory state law claims in a judicial forum is

16   irrelevant, and, given Tolentino's undisputed failure to exhaust the grievance procedures

17   set forth in the CBA, the First Cause of Action, to the extent it alleges untimely payment

18   of wages, the Second Cause of Action, in its entirety, and the Fifth, Sixth, and Seventh

19   Causes of Action, to extent they are derivative of the foregoing Causes of Action, are

20   subject to dismissal. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220-21 (1985)

21   (holding, where plaintiff's state law claim was preempted by § 301, such claim "should

22   have been dismissed for failure to make use of the grievance procedure established in

23   the collective-bargaining agreement or dismissed as pre-empted by § 301" (internal

24

25        [6] "If a majority of the Board can agree on a determination of the grievance," its
     decision is "final." (See RJN Ex. 1 § 9.2.)
26

27        [7] In opposing Gillig's Motion to Dismiss, Tolentino again contends none of his
     claims are preempted by the LMRA. Having resolved that issue above, the Court does
28   not address it again here.

United States District Court
Northern District of California

1    citation omitted)).

2         Further, in light of the CBA's provision for final and binding resolution under the

3    Grievance Procedures set forth therein, the Court finds amendment of those Causes of

4    Action would be futile, and, consequently, leave to amend will be denied.  See Brown v.

5    Lucky Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001) (holding claims preempted by §

6    301 "should have been dismissed with prejudice," where plaintiff "failed to seek redress

7    as provided in the CBA," under which she agreed to "pursue such claims in binding

8    arbitration"; noting plaintiff "cannot now resort to the courts to adjudicate th[o]se claims").

9         As to Tolentino's claims that remain, as pleaded, state law claims, the Court's

10   jurisdiction is, as discussed above, supplemental in nature, and where, as here, a court

11   has dismissed the claims over which it has original jurisdiction, it may decline to exercise

12   supplemental jurisdiction.  See 28 U.S.C. § 1367(c)(3).  In this instance, given the early

13   stage of the proceedings, the Court declines to exercise supplemental jurisdiction over

14   the state law claims, and those claims will be remanded to state court.

## CONCLUSION

16   For the reasons stated above:

17   1.    Tolentino's Motion to Remand is hereby DENIED.

18   2.    Gillig's Motion to Dismiss is hereby GRANTED in part and DENIED in part

19   as follows:

20        a.    The First Cause of Action, to the extent it alleges untimely payment

21   of wages, is hereby DISMISSED with prejudice.

22        b.    The Second Cause of Action, in its entirety, is hereby DISMISSED

23   with prejudice.

24        c.    The Fifth, Sixth, and Seventh Causes of Action, to the extent they

25   are derivative of the above-referenced Causes of Action, are hereby DISMISSED with

26   prejudice.

27        d.    As to the First Cause of Action, to the extent it alleges a failure to

28   pay minimum wages, the Third Cause of Action, in its entirety, the Fourth Cause of

Action, in its entirety, and the Fifth, Sixth, and Seventh Causes of Action, to the extent they are not derivative of the claims dismissed above, the motion is DENIED, and those Causes of Action are hereby REMANDED to the Superior Court of California, in and for the County of Alameda.

**IT IS SO ORDERED.**

Dated: January 13, 2021

MAXINE M. CHESNEY
United States District Judge

# EXHIBIT C

Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Enzo Nabiev (SBN 332118)
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
E-mail: kane.moon@moonyanglaw.com
E-mail: allen.feghali@moonyanglaw.com
E-mail: enzo.nabiev@moonyanglaw.com

Attorneys for Plaintiff Ronald Tolentino

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>            Defendants | Case No.: RG20073930<br><br>[Hon. Brad Seligman, Dept. 23]<br><br>**SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT:**<br><br>1. Failure to Pay Minimum and Regular Rate Wages [Cal. Lab. Code §§ 1194, 1194.2, and 1197];<br>2. Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512];<br>3. Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code §§ 226.7];<br>4. Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203];<br>5. Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226];<br>6. Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.]; and<br>7. Civil Penalties Under PAGA [Cal. Lab. Code § 2699, et seq.].<br><br>**DEMAND FOR JURY TRIAL** |

1

## **TABLE OF CONTENTS**

2   INTRODUCTION & PRELIMINARY STATEMENT ................................................................ 1

3   THE PARTIES ...................................................................................................... 3

4        A.   Plaintiff...................................................................................................... 3

5        B.   Defendants.................................................................................................. 3

6   CLASS ACTION ALLEGATIONS ........................................................................... 7

7   FIRST CAUSE OF ACTION .................................................................................. 11

8   SECOND CAUSE OF ACTION...........................................**Error! Bookmark not defined.**

9   THIRD CAUSE OF ACTION ................................................................................ 12

10  FOURTH CAUSE OF ACTION ............................................................................. 13

11  FIFTH CAUSE OF ACTION ................................................................................. 14

12  SIXTH CAUSE OF ACTION ................................................................................ 15

13  SEVENTH CAUSE OF ACTION ........................................................................... 16

14

15  PRAYER FOR RELIEF........................................................................................ 21

16  DEMAND FOR JURY TRIAL............................................................................... 24

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

Plaintiff Roland Tolentino ("Plaintiff"), based upon facts that either have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, alleges as follows:

## INTRODUCTION & PRELIMINARY STATEMENT

1.    Plaintiff brings this action against Defendants Gillig, LLC, and Does 1 through 10 (collectively referred to as "Defendants") for California Labor Code violations and unfair business practices stemming from Defendants' failure to pay minimum and regular rate wages, failure to provide meal periods, failure to authorize and permit rest periods, failure to maintain accurate records of hours worked and meal periods, failure to timely pay all wages to terminated employees, and failure to furnish accurate wage statements.

2.    Plaintiff brings the First through Seventh Causes of Action individually and as a class action on behalf of herself and certain current and former employees of Defendants (hereinafter collectively referred to as the "Class" or "Class Members" and defined more fully below).The Class consists of Plaintiff and all other persons who have been employed by any Defendant in California and classified as a non-exempt employee during the statute of limitations period applicable to the claims pleaded here.

3.    Plaintiff brings the Eighth Cause of Action as a representative action under the California Private Attorney General Act ("PAGA") to recover civil penalties that are owed to Plaintiff, the State of California, and past and present non-exempt, hourly-paid employees of Defendants who worked in California during the applicable statute of limitations period (hereinafter referred to as the "Aggrieved Employees").

4.    Defendants own/owned and operate/operated an industry, business, and establishment within the State of California, including Alameda County. As such, and based upon all the facts and circumstances incident to Defendants' business in California, Defendants are subject to the California Labor Code, Wage Orders issued by the Industrial Welfare Commission ("IWC"), and the California Business & Professions Code.

5.    Despite these requirements, throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of:

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

(a)    Failing to pay employees for all hours worked, including all minimum wages, in compliance with the California Labor Code and IWC Wage Orders;

(b)    Failing to maintain accurate records of the hours employees worked;

(c)    Failing to provide employees with timely and duty-free meal periods in compliance with the California Labor Code and IWC Wage Orders, failing to maintain accurate records of all meal periods taken or missed, and failing to pay an additional hour's pay for each workday a meal period violation occurred;

(d)    Failing to authorize and permit employees to take timely and duty-free rest periods in compliance with the California Labor Code and IWC Wage Orders, and failing to pay an additional hour's pay for each workday a rest period violation occurred;

(e)    Willfully failing to pay employees all minimum wages, meal period premium wages, and rest period premium wages due within the time period specified by California law when employment terminates; and

(f)    Failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders.

6.    On information and belief, Defendants, and each of them were on actual and constructive notice of the improprieties alleged herein and intentionally refused to rectify their unlawful policies. Defendants' violations, as alleged above, during all relevant times herein were willful and deliberate.

7.    At all relevant times, Defendants were and are legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiff, the Class, and the Aggrieved Employees. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of "respondeat superior".

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

## THE PARTIES

### A.  Plaintiff

8.      Plaintiff is a California resident who worked for Defendants in Alameda County, California as a maintenance worker from approximately May 2002 to June 2020.

9.      Plaintiff reserves the right to seek leave to amend this complaint to add new plaintiffs, if necessary, in order to establish suitable representative(s) pursuant to *La Sala v. American Savings and Loan Association* (1971) 5 Cal.3d 864, 872, and other applicable law.

### B.  Defendants

10.     Plaintiff is informed and believes, and based upon that information and belief alleges, that Defendant Gillig, LLC is:

    (a)     A California limited partnership with its principal place of business in Alameda, California.

    (b)     A business entity conducting business in numerous counties throughout the State of California, including in Alameda County; and

    (c)     The former employer of Plaintiff, and the current and/or former employer of the putative Class. Gillig, LLC suffered and permitted Plaintiff, the Class, and the Aggrieved Employees to work, and/or controlled their wages, hours, or working conditions.

11.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Each of the Doe Defendants was in some manner legally responsible for the damages suffered by Plaintiff, the Class, and the Aggrieved Employees as alleged herein.  Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, together with appropriate charging allegations, as may be necessary.

12.     At all times mentioned herein, the Defendants named as Does 1-10, inclusive, and each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or injured a significant number of the Plaintiff, the Class, and the Aggrieved Employees in the State of California.

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

13.    Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the other employees described in the class definitions below, and exercised control over their wages, hours, and working conditions.  Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.  Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.    Plaintiff Roland Tolentino worked for Defendants in Alameda County, California as a maintenance worker.

15.    Throughout the statutory period, Defendants failed to pay Plaintiff for all hours worked (including minimum wages), failed to provide Plaintiff with uninterrupted meal periods, failed to authorize and permit Plaintiff to take uninterrupted rest periods, failed to maintain accurate records of the hours Plaintiff worked, failed to timely pay all final wages to Plaintiff when Defendants terminated Plaintiff's employment, and failed to furnish accurate wage statements to Plaintiff.  As discussed below, Plaintiff's experience working for Defendants was typical and illustrative.

16.    Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff, the Class, and the Aggrieved Employees for all hours worked. Defendants regularly use a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff, the Class, and the Aggrieved Employees properly for all the time they have actually worked, even though the realities of Defendants' operations are such that it is

4

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1   possible, practical, and feasible to count and pay for work time to the minute. As a result,

2   Defendants frequently paid Plaintiff, the Class, and the Aggrieved Employees less than all their

3   work time. As a further result, Defendants failed to maintain accurate records of the hours

4   Plaintiff, the Class, and the Aggrieved Employees worked.

5      17. Throughout the statutory period, Defendants have wrongfully failed to provide

6   Plaintiff, the Class, and the Aggrieved Employees with legally compliant meal periods.

7   Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved Employees

8   to work in excess of five consecutive hours a day without providing a 30-minute, continuous and

9   uninterrupted, duty-free meal period for every five hours of work, or without compensating

10  Plaintiff, the Class, and the Aggrieved Employees for meal periods that were not provided by the

11  end of the fifth hour of work or tenth hour of work. Defendants did not adequately inform

12  Plaintiff, the Class, and the Aggrieved Employees of their right to take a meal period by the end

13  of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of

14  work. Defendants also did not have adequate policies or practices to document and verify

15  whether Plaintiff, the Class, and the Aggrieved Employees were taking their required meal

16  periods. Accordingly, Defendants' policy and practice was to not provide meal periods to

17  Plaintiff, the Class, and the Aggrieved Employees in compliance with California law.

18     18. Throughout the statutory period, Defendants have wrongfully failed to authorize

19  and permit Plaintiff, the Class, and the Aggrieved Employees to take timely and duty-free rest

20  periods. Defendants regularly, but not always, required Plaintiff, the Class, and the Aggrieved

21  Employees to work in excess of four consecutive hours a day without Defendants authorizing and

22  permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four

23  hours of work (or major fraction of four hours), or without compensating Plaintiff, the Class, and

24  the Aggrieved Employees for rest periods that were not authorized or permitted. Accordingly,

25  Defendants' policy and practice was to not authorize and permit Plaintiff, the Class, and the

26  Aggrieved Employees to take rest periods in compliance with California law.

27

28

19.     Throughout the statutory period, Defendants willfully failed and refused to timely pay Plaintiff, the Class, and the Aggrieved Employees at the conclusion of their employment all wages, meal period premium wages, and rest period premium wages.

20.     Throughout the statutory period, Defendants failed to furnish Plaintiff, the Class, and the Aggrieved Employees with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California law).  As a result of these violations of California Labor Code § 226(a), Plaintiff, the Class, and the Aggrieved Employees suffered injury because, among other things:

(a)     the violations led them to believe that they were not entitled to be paid minimum wages, meal period premium wages, and rest period premium wages to which they were entitled, even though they were entitled;

(b)     the violations led them to believe that they had been paid the minimum, meal period premium, and rest period premium wages to which they were entitled, even though they had not been;

(c)     the violations led them to believe they were not entitled to be paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they were;

(d)     the violations led them to believe they had been paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they had not been;

(e)     the violations hindered them from determining the amounts of minimum, meal period premium, and rest period premium owed to them;

(f)     in connection with their employment before and during this action, and in connection with prosecuting this action, the violations caused them to have to perform mathematical computations to determine the amounts of wages

owed to them, computations they would not have to make if the wage statements contained the required accurate information;

(g)    by understating the wages truly due them, the violations caused them to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits;

(h)    the wage statements inaccurately understated the wages, hours, and wage rates to which Plaintiff, the Class, and the Aggrieved Employees were entitled, and Plaintiff, the Class, and the Aggrieved Employees were paid less than the wages and wage rates to which they were entitled.

Thus, Plaintiff, the Class, and the Aggrieved Employees are owed the amounts provided for in California Labor Code § 226(e).

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings certain claims individually, as well as on behalf of each and all other persons similarly situated, and thus, seeks class certification under California Code of Civil Procedure § 382.

22.    All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

23.    The proposed Class consists of and is defined as:

All persons who worked for any Defendants in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent.

24.    At all material times, Plaintiff was a member of the Class.

25.    Plaintiff undertakes this concerted activity to improve the wages and working conditions of all Class Members.

26.    There is a well-defined community of interest in the litigation and the Class is readily ascertainable:

(a)    Numerosity:  The members of the Class (and each subclass, if any) are so numerous that joinder of all members would be unfeasible and impractical.

The membership of the entire Class is unknown to Plaintiff at this time, however, the Class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable by inspection of Defendants' records.

(b) <u>Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' claims as demonstrated herein.

(c) <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom there is a shared, well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff has no conflicts with or interests antagonistic to any Class Member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

(d) <u>Superiority</u>: A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1) The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

2) The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

3) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4) The difficulties likely to be encountered in the management of a

8

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1                  class action.

2            (e)    <u>Public Policy Considerations</u>:  The public policy of the State of California

3                  is to resolve the California Labor Code claims of many employees through

4                  a class action.  Indeed, current employees are often afraid to assert their

5                  rights out of fear of direct or indirect retaliation.  Former employees are

6                  also fearful of bringing actions because they believe their former

7                  employers might damage their future endeavors through negative

8                  references and/or other means.  Class actions provide the class members

9                  who are not named in the complaint with a type of anonymity that allows

10                for the vindication of their rights at the same time as their privacy is

11                protected.

12      27.     There are common questions of law and fact as to the Class (and each subclass, if

13 any) that predominate over questions affecting only individual members, including without

14 limitation, whether, as alleged herein, Defendants have:

15           (a)    Failed to pay Class Members for all hours worked, including minimum

16                wages;

17           (b)    Failed to provide meal periods and pay meal period premium wages to

18                Class Members;

19           (c)    Failed to authorize and permit rest periods and pay rest period premium

20                wages to Class Members;

21           (d)    Failed to promptly pay all wages due to Class Members upon their

22                discharge or resignation;

23           (e)    Failed to provide Class Members with accurate wages statements;

24           (f)    Failed to maintain accurate records of all hours Class Members worked,

25                and all meal periods Class Members took or missed; and

26           (g)    Violated California Business & Professions Code §§ 17200 *et. seq.* as a

27                result of their illegal conduct as described above.

28      28.     This Court should permit this action to be maintained as a class action pursuant to

California Code of Civil Procedure § 382 because:

    (a)    The questions of law and fact common to the Class predominate over any question affecting only individual members;

    (b)    A class action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the Class;

    (c)    The members of the Class are so numerous that it is impractical to bring all members of the class before the Court;

    (d)    Plaintiff, and the other members of the Class, will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

    (e)    There is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

    (f)    Without class certification, the prosecution of separate actions by individual members of the class would create a risk of:

        1)    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and/or

        2)    Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but not limited to the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants; and,

    (g)    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to

1    the class as a whole.

2        29.    Plaintiff contemplates the eventual issuance of notice to the proposed members of

3    the Class that would set forth the subject and nature of the instant action. The Defendants' own

4    business records may be utilized for assistance in the preparation and issuance of the

5    contemplated notices. To the extent that any further notices may be required, Plaintiff would

6    contemplate the use of additional techniques and forms commonly used in class actions, such as

7    published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by

8    other methods suitable to the Class and deemed necessary and/or appropriate by the Court.

9    **FIRST CAUSE OF ACTION**

10   **(Against all Defendants for Failure to Pay Minimum Wages for All Hours Worked)**

11       30.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

12   paragraphs 1 through 20 in this Complaint.

13       31.    "Hours worked" is the time during which an employee is subject to the control of

14   an employer, and includes all the time the employee is suffered or permitted to work, whether or

15   not required to do so.

16       32.    At all relevant times herein mentioned, Defendants knowingly failed to pay to

17   Plaintiff and the Class compensation for all hours they worked. By their failure to pay

18   compensation for each hour worked as alleged above, Defendants willfully violated the

19   provisions of Section 1194 of the California Labor Code, and any additional applicable Wage

20   Orders, which require such compensation to non-exempt employees.

21       33.    Accordingly, Plaintiff and the Class are entitled to recover minimum wages for all

22   non-overtime hours worked for Defendants.

23       34.    By and through the conduct described above, Plaintiff and the Class have been

24   deprived of their rights to be paid wages earned by virtue of their employment with Defendants.

25       35.    By virtue of the Defendants' unlawful failure to pay additional compensation to

26   Plaintiff and the Class for their non-overtime hours worked without pay, Plaintiff and the Class

27   suffered, and will continue to suffer, damages in amounts which are presently unknown to

28

1  Plaintiff and the Class, but which exceed the jurisdictional minimum of this Court, and which

2  will be ascertained according to proof at trial.

3      36.    By failing to keep adequate time records required by California Labor Code §

4  1174(d), Defendants have made it difficult to calculate the full extent of minimum wage

5  compensation due Plaintiff and the Class.

6      37.    Pursuant to California Labor Code section 1194.2, Plaintiff and the Class are

7  entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum

8  wages.

9      38.    Plaintiff and the Class are also entitled to seek recovery of all unpaid minimum

10 wages, interest, and reasonable attorneys' fees and costs pursuant to California Labor Code §§

11 218.5, 218.6, and 1194(a).

12     39.

13                    **SECOND CAUSE OF ACTION**

14        **(Against All Defendants for Failure to Provide Meal Periods)**

15     40.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

16 paragraphs 1 through 20 in this Complaint.

17     41.    Under California law, Defendants have an affirmative obligation to relieve the

18 Plaintiff and the Class of all duty in order to take their first daily meal periods no later than the

19 start of Plaintiff and the Class' sixth hour of work in a workday, and to take their second meal

20 periods no later than the start of the eleventh hour of work in the workday. Section 512 of the

21 California Labor Code, and Section 11 of the applicable Wage Orders require that an employer

22 provide unpaid meal periods of at least 30 minutes for each five-hour period worked.  It is a

23 violation of Section 226.7 of the California Labor Code for an employer to require any employee

24 to work during any meal period mandated under any Wage Order.

25     42.    Despite these legal requirements, Defendants regularly failed to provide Plaintiff

26 and the Class with both meal periods as required by California law.  By their failure to permit

27 and authorize Plaintiff and the Class to take all meal periods as alleged above (or due to the fact

28 that Defendants made it impossible or impracticable to take these uninterrupted meal periods),

1    Defendants willfully violated the provisions of Section 226.7 of the California Labor Code and

2    the applicable Wage Orders.

3        43.    Under California law, Plaintiff and the Class are entitled to be paid one hour of

4    additional wages for each workday he or she was not provided with all required meal period(s),

5    plus interest thereon.

6                              **THIRD CAUSE OF ACTION**

7    **(Against All Defendants for Failure to Authorize and Permit Rest Periods)**

8        44.    Plaintiff incorporates by reference and re-alleges as if fully stated herein

9    paragraphs 1 through 20 in this Complaint.

10       45.    Defendants are required by California law to authorize and permit breaks of 10

11   uninterrupted minutes for each four hours of work or major fraction of four hours (i.e. more than

12   two hours).  Section 512 of the California Labor Code, the applicable Wage Orders require that

13   the employer permit and authorize all employees to take paid rest periods of 10 minutes each for

14   each 4-hour period worked.  Thus, for example, if an employee's work time is 6 hours and ten

15   minutes, the employee is entitled to two rest breaks.  Each failure to authorize rest breaks as so

16   required is itself a violation of California's rest break laws.  It is a violation of Section 226.7 of

17   the California Labor Code for an employer to require any employee to work during any rest

18   period mandated under any Wage Order.

19       46.    Despite these legal requirements, Defendants failed to authorize Plaintiff and the

20   Class to take rest breaks, regardless of whether employees worked more than 4 hours in a

21   workday. By their failure to permit and authorize Plaintiff and the Class to take rest periods as

22   alleged above (or due to the fact that Defendants made it impossible or impracticable to take

23   these uninterrupted rest periods), Defendants willfully violated the provisions of Section 226.7 of

24   the California Labor Code and the applicable Wage Orders.

25       47.    Under California law, Plaintiff and the Class are entitled to be paid one hour of

26   premium wages rate for each workday he or she was not provided with all required rest break(s),

27   plus interest thereon.

28

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

## FOURTH CAUSE OF ACTION

**(Against all Defendants for Failure to Pay Wages of Discharged Employees – Waiting Time Penalties)**

48.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

49.    At all times herein set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

50.    Within the applicable statute of limitations, the employment of Plaintiff and many other members of the Class ended, i.e. was terminated by quitting or discharge, and the employment of others will be.  However, during the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

51.    Defendants' failure to pay Plaintiff and those Class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code §§ 201 and 202.

52.    California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

53.    Plaintiff and the Class are entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code § 203.

54.    Pursuant to California Labor Code §§ 218.5, 218.6 and 1194, Plaintiff and the Class are also entitled to an award of reasonable attorneys' fees, interest, expenses, and costs incurred in this action.

## FIFTH CAUSE OF ACTION

### (Against all Defendants for Failure to Provide and Maintain Accurate and Compliant Wage Records)

55.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

56.    At all material times set forth herein, California Labor Code § 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized wage statement in writing showing nine pieces of information, including: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

57.    Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements.  The deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiff and the Class, the failure to list the true "total hours worked by the employee," and the failure to list the true net wages earned.

58.    As a result of Defendants' violation of California Labor Code § 226(a), Plaintiff and the Class have suffered injury and damage to their statutorily-protected rights.

59.    Specifically, Plaintiff and the members of the Class have been injured by Defendants' intentional violation of California Labor Code § 226(a) because they were denied

both their legal right to receive, and their protected interest in receiving, accurate, itemized wage statements under California Labor Code § 226(a).

60.    Calculation of the true wage entitlement for Plaintiff and the Class is difficult and time consuming.  As a result of this unlawful burden, Plaintiff and the Class were also injured as a result of having to bring this action to attempt to obtain correct wage information following Defendants' refusal to comply with many of the mandates of California's Labor Code and related laws and regulations.

61.    Plaintiff and the Class are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or an aggregate penalty not exceeding four thousand dollars per employee.

62.    Plaintiff and the Class are also entitled to injunctive relief, as well as an award of attorney's fees and costs to ensure compliance with this section, pursuant to California Labor Code § 226(h).

## SIXTH CAUSE OF ACTION

**(Against all Defendants for Violation of California Business & Professions Code §§ 17200, et seq.)**

63.    Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

64.    Defendants, and each of them, are "persons" as defined under California Business & Professions Code § 17201.

65.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other Class members, and to the general public.  Plaintiff seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

66.    Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq.*

67.     A violation of California Business & Professions Code §§ 17200, *et seq.* may be predicated on the violation of any state or federal law. All of the acts described herein as violations of, among other things, the California Labor Code, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent and unscrupulous, and thereby constitute unfair, unlawful and/or fraudulent business practices in violation of California Business &Professions Code §§ 17200, *et seq.*

### Failure to Pay Minimum Wages

68.     Defendants' failure to pay minimum wages, and other benefits in violation of the California Labor Code constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Maintain Accurate Records of All Hours Worked

69.     Defendants' failure to maintain accurate records of all hours worked in accordance with California Labor Code § 1174.5 and the IWC Wage Orders constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Provide Meal Periods

70.     Defendants' failure to provide meal periods in accordance with California Labor Code §§ 226.7 and 512, and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Maintain Accurate Records of Meal Periods

71.     Defendants' failure to maintain accurate records of employee meal periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

### Failure to Authorize and Permit Rest Periods

72.     Defendants' failure to authorize and permit rest periods in accordance with California Labor Code § 226.7 and the IWC Wage Orders, as alleged above, constitutes unlawful and/or unfair activity prohibited by Business and Professions Code §§ 17200, *et seq.*

### Failure to Provide Accurate Itemized Wage Statements

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

73.    Defendants' failure to provide accurate itemized wage statements in accordance with California Labor Code § 226, as alleged above, constitutes unlawful and/or unfair activity prohibited by California Business & Professions Code §§ 17200, *et seq.*

74.    By and through their unfair, unlawful and/or fraudulent business practices described herein, the Defendants, have obtained valuable property, money and services from Plaintiff, and all persons similarly situated, and have deprived Plaintiff, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

75.    Plaintiff and the Class Members suffered monetary injury as a direct result of Defendants' wrongful conduct.

76.    Plaintiff, individually, and on behalf of members of the putative Class, are entitled to, and do, seek such relief as may be necessary to disgorge money and/or property which the Defendants have wrongfully acquired, or of which Plaintiff and the Class have been deprived, by means of the above-described unfair, unlawful and/or fraudulent business practices.  Plaintiff and the Class are not obligated to establish individual knowledge of the wrongful practices of Defendants in order to recover restitution.

77.    Plaintiff, individually, and on behalf of members of the putative class, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining the Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

78.    Plaintiff, individually, and on behalf of members of the putative class, have no plain, speedy, and/or adequate remedy at law to redress the injuries which the Class Members suffered as a consequence of the Defendants' unfair, unlawful and/or fraudulent business practices.  As a result of the unfair, unlawful and/or fraudulent business practices described above, Plaintiff, individually, and on behalf of members of the putative Class, suffered and will continue to suffer irreparable harm unless the Defendants, and each of them, are restrained from continuing to engage in said unfair, unlawful and/or fraudulent business practices.

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

79.     Plaintiff also alleges that if Defendants are not enjoined from the conduct set forth herein above, they will continue to avoid paying the appropriate taxes, insurance and other withholdings.

80.     Pursuant to California Business & Professions Code §§ 17200, *et seq.*, Plaintiff and putative Class Members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and Class Members; an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

<u>**SEVENTH CAUSE OF ACTION**</u>

**(Against all Defendants for Civil Penalties Under the Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 et seq.)**

81.     Plaintiff incorporates by reference and re-alleges as if fully stated herein paragraphs 1 through 20 in this Complaint.

82.     At all times herein mentioned, Defendants were subject to the Labor Code of the State of California and the applicable Industrial Welfare Commission Orders.

83.     California Labor Code § 2699(a) specifically provides for a private right of action to recover penalties for violations of the Labor Code: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

84.     Plaintiff has exhausted his administrative remedies pursuant to California Labor Code § 2699.3.  On September 15, 2020, he gave written notice by online filing to the Labor and Workforce Development Agency and by certified mail to Defendants of the specific provisions of the Labor Code that Defendants have violated against Plaintiff and certain current and former

aggrieved employees, including the facts and theories to support the violations. Plaintiff also paid the filing fee. Plaintiff's PAGA case number is LWDA-CM-806429-20.

85.     More than 65 days has elapsed since Plaintiff provided notice, but the Labor and Workforce Development Agency has not indicated that it intends to investigate Defendants' Labor Code violations discussed in the notice. Accordingly, Plaintiff may commence a civil action to recover penalties under Labor Code § 2699 pursuant to § 2699.3 for the violations of the Labor Code described in this Complaint. These penalties include, but are not limited to, penalties under California Labor Code §§ 210, 226.3, 558, and 2699(f)(2).

86.     In addition, Plaintiff seeks penalties for Defendants' violation of California Labor Code § 1174(d). Pursuant to California Labor Code § 1174.5, any person, including any entity, employing labor who willfully fails to maintain accurate and complete records required by California Labor Code § 1174 is subject to a penalty under § 1174.5. Pursuant to the applicable IWC Order § 7(A)(3), every employer shall keep time records showing when the employee begins and ends each work period. Meal periods, and total hours worked daily shall also be recorded. Additionally, pursuant to the applicable IWC Order § 7(A)(5), every employer shall keep total hours worked in the payroll period and applicable rates of pay.

87.     During the time period of employment for Plaintiff and the Aggrieved Employees, Defendants failed to maintain records pursuant to the Labor Code and IWC Orders by failing to maintain accurate records showing meal periods. Defendants' failure to provide and maintain records required by the Labor Code IWC Wage Orders deprived Plaintiff and the Aggrieved Employees the ability to know, understand and question the accuracy and frequency of meal periods. Therefore, Plaintiff and the Aggrieved Employees had no way to dispute the resulting failure to pay wages, all of which resulted in an unjustified economic enrichment to Defendants. As a direct result, Plaintiff and the Aggrieved Employees have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost interest on such wages and expenses and attorney's fees in seeking to compel Defendants to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial. Because of Defendants' knowing failure to comply with the Labor Code and applicable IWC Wage Orders,

Plaintiff and the Aggrieved Employees have also suffered an injury in that they were prevented from knowing, understanding, and disputing the wage payments paid to them.

88.    Based on the conduct described in this Complaint, Plaintiff is entitled to an award of civil penalties on behalf of himself, the State of California, and similarly Aggrieved Employees of Defendants. The exact amount of the applicable penalties, in all, is in an amount to be shown according to proof at trial. These penalties are in addition to all other remedies permitted by law.

89.    In addition, Plaintiff seeks an award of reasonable attorney's fees and costs pursuant to California Labor Code § 2699(g)(1), which states, "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs."

## **PRAYER FOR RELIEF**

Plaintiff, individually, and on behalf of all others similarly situated only with respect to the class claims, pray for relief and judgment against Defendants, jointly and severally, as follows:

### Class Certification

1.    That this action be certified as a class action with respect to the First, Second, Third, Fourth, Fifth, Sixth, and Eighth Causes of Action;

2.    That Plaintiff be appointed as the representative of the Class; and

3.    That counsel for Plaintiff be appointed as Class Counsel.

### As to the First Cause of Action

4.    That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 204 and 1194 and applicable IWC Wage Orders by willfully failing to pay all minimum wages due;

5.    For general unpaid wages as may be appropriate;

6.    For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

7.    For liquidated damages;

8. For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code § 1194(a); and,

9. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Second Cause of Action</u>

10. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 226.7 and 512, and the IWC Wage Orders;

11. For unpaid meal period premium wages as may be appropriate;

12. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

13. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and for costs of suit incurred herein; and

14. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Third Cause of Action</u>

15. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 226.7 and 512, and the IWC Wage Orders;

16. For unpaid rest period premium wages as may be appropriate;

17. For pre-judgment interest on any unpaid compensation commencing from the date such amounts were due;

18. For reasonable attorneys' fees under California Code of Civil Procedure § 1021.5, and for costs of suit incurred herein; and

19. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Fourth Cause of Action</u>

20. That the Court declare, adjudge and decree that Defendants violated California Labor Code §§ 201, 202, and 203 by willfully failing to pay all compensation owed at the time of termination of the employment;

21. For statutory wage penalties pursuant to California Labor Code § 203 for former employees who have left Defendants' employ;

22. For pre-judgment interest on any unpaid wages from the date such amounts were due;

23. For reasonable attorneys' fees and for costs of suit incurred herein; and

24. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Fifth Cause of Action</u>

25. That the Court declare, adjudge and decree that Defendants violated the record keeping provisions of California Labor Code § 226(a) and applicable IWC Wage Orders, and willfully failed to provide accurate itemized wage statements thereto;

26. For statutory penalties and actual damages pursuant to California Labor Code § 226(e);

27. For injunctive relief to ensure compliance with this section, pursuant to California Labor Code § 226(h);

28. For reasonable attorneys' fees and for costs of suit incurred herein; and

29. For such other and further relief as the Court may deem equitable and appropriate.

<u>As to the Sixth Cause of Action</u>

30. That the Court declare, adjudge and decree that Defendants violated California Business & Professions Code §§ 17200, *et seq.* by failing to pay wages for all hours worked (including minimum wages), failing to provide meal periods, failing to maintain accurate records of meal periods, failing to authorize and permit rest periods, failing to maintain accurate records of all hours worked and meal periods, and failing to furnish accurate wage statements;

31. For restitution of unpaid wages to Plaintiff and all Class Members and prejudgment interest from the day such amounts were due and payable;

32. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code §§ 17200 *et seq.*;

33. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure § 1021.5;

34. For injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code §§ 17200, *et seq.*; and,

35. For such other and further relief as the Court may deem equitable and appropriate.

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

1

<div align="center">

As to the Seventh Cause of Action

</div>

2    36. That the Court declare, adjudge and decree that Defendants violated the California

3  Labor Code by failing to pay all wages owed, failure to provide meal periods, failing to maintain

4  accurate records of meal periods, failing to authorize and permit rest periods, failing to pay final

5  wages at termination, and failing to furnish accurate wage statements;

6    37. For all actual, consequential and incidental losses and damages, according to proof;

7    38. For all civil penalties pursuant to California Labor Code § 2699, *et seq.*, and all other

8  applicable Labor Code provisions;

9    39. For reasonable attorneys' fees and costs of suit incurred herein pursuant to California

10  Labor Code § 2699; and,

11    40. For such other and further relief as the Court may deem equitable and appropriate.

12

<div align="center">

As to all Causes of Action

</div>

13    41. For any additional relief that the Court deems just and proper.

14

15  Dated: March 9, 2021                    Respectfully submitted,

16                                          MOON & YANG, APC

17

18                              By:  _____
                                     Kane Moon
19                                   Allen Feghali
                                     Enzo Nabiev
20                                   Attorneys for Plaintiff

21

<div align="center">

**DEMAND FOR JURY TRIAL**

</div>

22    Plaintiff demands a trial by jury as to all causes of action triable by jury.

23

24  Dated: March 9, 2021                    MOON & YANG, APC

25                              By:  _____
                                     Kane Moon
26                                   Allen Feghali
                                     Enzo Nabiev
27                                   Attorneys for Plaintiff

28

<div align="center">

24

SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT

</div>

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA                    )
                                       ) ss
3

COUNTY OF LOS ANGELES                  )

4

5        I am employed in the county of Los Angeles, State of California. I am over the age of 18
and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880,
6    Los Angeles, California 90017. On March 10, 2021, I served the foregoing document described as:

7        **SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION**
                                **COMPLAINT**

8
     X    by placing ___ the original   X   a true copy thereof enclosed in sealed envelope(s)
9    addressed as follows:

                              William Faulkner
10                              Michael Warren
                          **McMANIS FAULKNER, APC**
11                   50 West San Fernando Street, 10th Floor
                          San Jose, California 95113
12                            Tel.: (408)279-8700
                             Fax: (408)279-3244
13                        mwarren@mcmanislaw.com

14
                     *Attorneys for Defendant Gillig, LLC*
15

16   [X]  **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The
          envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with
17        the firm's practice of collection and processing correspondence for mailing. Under that
          practice it would be deposited with U.S. postal service on that same day with postage
18        thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am
          aware that on motion of the party served, service is presumed invalid if postal
19        cancellation date or postage meter date is more than one day after date of deposit for
          mailing in affidavit.
20

21
     X    (State)       I declare under penalty of perjury under the laws of the State of
22                      California that the above is true and correct.

23        Executed on March 10, 2021 at Los Angeles, California.

24

25   Ivette Hernandez
     Type or Print Name                              Signature
26

27

28

                                        1
                              PROOF OF SERVICE



PITNEY BOWES
$2.00 ₀
US POSTAGE
FIRST-CLASS
02 6W0004897271
2000164320
ZIP 90017
MAR 10 2021



RECEIVED

MAR 16 2021

BY:_____



**MOON & YANG, APC**
ATTORNEYS AT LAW
1055 W. SEVENTH STREET, SUITE 1880, LOS ANGELES, CA 90017

William Faulkner
Michael Warren
**McMANIS FAULKNER, APC**
50 West San Fernando Street, 10th Floor
San Jose, California 95113

# EXHIBIT D

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   a Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:     (408) 279-8700
   Facsimile:      (408) 279-3244
5  Email:          mwarren@mcmanislaw.com

6  CRAIG MARTIN (*Pro Hac Vice Application Pending*)
   MATT BASIL (*Pro Hac Vice Application Pending*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois 60654
   Telephone:     (312) 728-9000
9  Facsimile:      (312) 728-9199
   Email:          cmartin@willkie.com
10                 mbasil@willkie.com

11
   Attorneys for Defendant
12 GILLIG, LLC

13

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                     FOR THE COUNTY OF ALAMEDA

16

17 RONALD TOLENTINO, individually, and on      Case No.: RG20073930
   behalf of all others similarly situated,
18                                             **DEFENDANT'S ANSWER TO
          Plaintiff,                           PLAINTIFF'S SECOND AMENDED
19                                             COMPLAINT**
          vs.
20
   GILLIG, LLC, a limited liability company; and
21 DOES 1 through 10, inclusive,

22        Defendants.                          Complaint Filed:    September 16, 2020
                                               Trial Date:         Not set
23

24

25        Defendant Gillig, LLC ("Defendant"), hereby answers the Second Amended Complaint

26 of Plaintiff Ronald Tolentino ("Plaintiff") and the Putative Class as follows:

27                          **GENERAL DENIAL**

28        Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally

ENDORSED
FILED
ALAMEDA COUNTY

APR 09 2021

CLERK OF THE SUPERIOR COURT
By   NICOLE HALL
                    Deputy

APR 09 REC'D

1

1 | denies each and every allegation of said Complaint, the whole thereof, including each and every

2 | alleged cause of action contained therein, and further denies that Plaintiff is entitled to the relief

3 | requested or any relief at all, that Plaintiff sustained or will sustain damages in the sum or sums

4 | alleged, in any other sum, or at all, or is entitled to attorneys' fees in the sum or sums alleged, or

5 | any other sum or sums, or at all.

6 | **AFFIRMATIVE DEFENSES**

7 | In further answer to Plaintiff's Second Amended Complaint (the "complaint"), Defendant

8 | states the following facts as separate affirmative defenses to each of the allegations of Plaintiff's

9 | Complaint:

10 | **FIRST AFFIRMATIVE DEFENSE**

11 | **[Failure to State a Cause of Action]**

12 | As and for a first, separate and affirmative defense to the complaint, Defendant alleges

13 | that Plaintiff's complaint, and each of the purported causes of action contained therein, fails to

14 | state facts sufficient to constitute a cause or causes of action against Defendant.

15 | **SECOND AFFIRMATIVE DEFENSE**

16 | **[Failure to Exhaust]**

17 | As and for a further affirmative defense to the complaint, Defendant alleges that the

18 | complaint and each cause of action alleged therein are barred because Plaintiff failed to timely

19 | and completely exhaust his requisite administrative and/or contractual remedies available to

20 | them under applicable Collective Bargaining Agreements, the California Labor Code or other

21 | provisions of law prior to commencing this action.

22 | **THIRD AFFIRMATIVE DEFENSE**

23 | **[Federal Preemption]**

24 | As and for a further affirmative defense to the complaint, and to each and every cause of

25 | action contained therein, Defendant alleges that to the extent Plaintiff's claims involve conduct

26 | that is, or seek remedies that are, governed or regulated by federal law, such claims are

27 | preempted.

28 | ///

2

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

1

## FOURTH AFFIRMATIVE DEFENSE

2

### [Federal Preemption – Labor Management Relations Act]

3 As and for a further affirmative defense to the complaint, and to each and every cause of

4 action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are

5 preempted by Section 301 of the Labor Management Relations Act.

6

## FIFTH AFFIRMATIVE DEFENSE

7

### [Binding Arbitration Under Collective Bargaining Agreement]

8 As and for a further affirmative defense to the complaint, and to each and every cause of

9 action contained therein, Defendant asserts that Plaintiff's claims are barred in that they are

10 preempted by collective bargaining agreements and subject to binding arbitration under those

11 agreements.

12

## SIXTH AFFIRMATIVE DEFENSE

13

### [Preemption – Supremacy Clause]

14 As and for a further affirmative defense to the complaint, and to each and every cause of

15 action contained therein, Defendant asserts that the Supremacy Clause of the United States

16 Constitution bars Plaintiff's claims. *Lorrilard Tobacco Co. v. Reilly* (2001) 533 U.S. 525.

17

## SEVENTH AFFIRMATIVE DEFENSE

18

### [Field Preemption]

19 As and for a further affirmative defense to the complaint, and to each and every

20 cause of action contained therein, Defendant alleges that the Complaint and each cause of action

21 set forth therein, or some of them, cannot be maintained against Defendant because they are

22 preempted by field preemption.

23

## EIGHTH AFFIRMATIVE DEFENSE

24

### [Non-Certifiable Class]

25 As and for a further affirmative defense to the complaint, and to each and every cause of

26 action contained therein, Defendant alleges that Plaintiff cannot satisfy the requirements of

27 California Code of Civil Procedure section 382 because individual questions of fact and law

28 predominate over common questions, Plaintiffs' claims are not typical of those belonging to the

3

putative class members, the class is not sufficiently numerous, and/or other class requirements cannot be satisfied. Accordingly, this action is not properly brought as a class action.

### NINTH AFFIRMATIVE DEFENSE

### [Inadequacy of Class Representative]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff is not a proper representative of the class he purports to represent.

### TENTH AFFIRMATIVE DEFENSE

### [Lack of Superiority]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the class action procedure is not the superior method for adjudicating Plaintiff's claims or the claims of the alleged class and, accordingly, this action is not properly brought as a class action.

### ELEVENTH AFFIRMATIVE DEFENSE

### [Lack of Standing]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff lacks standing to assert any purported cause of action alleged in the Complaint and lacks standing to represent the putative class.

### TWELFTH AFFIRMATIVE DEFENSE

### [Statute of Limitations]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the Complaint, and each and every purported cause of action alleged therein, is barred by the applicable statutes of limitations, including but not limited to, California Labor Code Section 203; California Code of Civil Procedure Sections 337,338, 339,340 and 343; and California Business & Professions Code Section 1 7208.

### THIRTEENTH AFFIRMATIVE DEFENSE

### [Waiver]

As and for a further affirmative defense to the complaint, and to each and every cause of

4

1  action contained therein, Defendant alleges that by his own acts and omissions, Plaintiff has

2  waived any claims and purported claims for relief contained in the complaint.

### FOURTEENTH AFFIRMATIVE DEFENSE

#### [Unclean Hands]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the doctrine of unclean hands.

### FIFTEENTH AFFIRMATIVE DEFENSE

#### [Laches]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the doctrine of laches.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### [Estoppel]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's claims are barred by the doctrine of estoppel.

### SEVENTEENTH AFFIRMATIVE DEFENSE

#### [Privilege and Justification]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's claims are barred because Defendant's conduct was privileged and justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### [Adequate Remedies at Law]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff is not entitled to equitable relief insofar as he has adequate remedies at law.

///

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

## NINETEENTH AFFIRMATIVE DEFENSE

### [Set-Off/Offset/Recoupment]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the Complaint, and each and every purported cause of action alleged therein, is subject to setoff, offset and/or recoupment to the extent Plaintiff has already been compensated for the hours worked for which he seeks compensation here.

## TWENTIETH AFFIRMATIVE DEFENSE

### [Labor Code Section 203 – No Willful or Intentional Violation]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the putative class members are entitled to any additional compensation, it has not willfully or intentionally failed to pay any such additional compensation to Plaintiff and/or the putative class members, within the meaning and scope of California Labor Code section 203.

## TWENTY- FIRST AFFIRMATIVE DEFENSE

### [Bona Fide Dispute]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges there exists a *bona fide* dispute as to whether any further compensation is actually due to Plaintiff and/or the putative class members and, if so, the amount thereof.

## TWENTY- SECOND AFFIRMATIVE DEFENSE

### [Labor Code § 226 - No Intentional Failure]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that, even assuming *arguendo* Plaintiff and/or the putative class members were not provided with a proper itemized statement of wages and deductions, Plaintiff and the putative class members are not entitled to recover damages or penalties because Defendant's alleged failure to comply with California Labor Code section 226 (a) was not a "knowing and intentional failure" under California Labor Code section 226(e).

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

1

## TWENTY- THIRD AFFIRMATIVE DEFENSE

### [Lack of Specificity]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff has failed to alleged special damages with requisite specificity.

## TWENTY- FOURTH AFFIRMATIVE DEFENSE

### [Civil Penalties Unconstitutional – Due Process and Separation of Powers]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant asserts the penalties sought in Plaintiff's Complaint violate the Due Process and Separation of Powers Clauses of the United States and California Constitutions. *Lockyer v. R.J. Reynolds Tobacco Co.,* 37 CaL 4th 707 (2005); *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412 (S.D.N.Y. 1972).

## TWENTY- FIFTH AFFIRMATIVE DEFENSE

### [After-Acquired Evidence]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff is barred, in whole or in part, from recovery of any damages based upon the doctrine of after-acquired evidence.

## TWENTY- SIXTH AFFIRMATIVE DEFENSE

### [Uncertainty]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges the Complaint, and the claims asserted therein, are uncertain.

## TWENTY- SEVENTH AFFIRMATIVE DEFENSE

### [Mitigation of Damages]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff and any purported class members, have failed to exercise reasonable care to mitigate their damages, if any were suffered, and that their right to recover against Defendant should be reduced and/or eliminated by such a failure.

## TWENTY- EIGHTH AFFIRMATIVE DEFENSE

### [Violation of Due Process]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that certification of a class, and the prosecution of a representative action on behalf of the general public under California Business and Professions Code section 17200 *et seq.,* as applied to the facts and circumstances of this case, would constitute a denial of Defendant's due process rights, both substantive and procedural, in violation of the Fourteenth Amendment to the United States Constitution and the California Constitution.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### [Breach of Duty]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges Plaintiff's claims, and those of any putative class members, are barred by their own breach of the duties owed to Defendant under California Labor Code section 2854, 2856, 2857, 2858 and/or 2859.

## THIRTIETH AFFIRMATIVE DEFENSE

### [No Penalties – Good Faith Dispute]

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that any violation of the Labor Code or an Order of the Industrial Welfare Commission was an act or omission made in good faith and Defendant had reasonable grounds for believing that its wage payment practices complied with applicable laws and that any such act or omission was not a violation of the Labor Code, the common law or any Order of the Industrial Welfare Commission such that Plaintiff and/or the putative class members are not entitled to any penalties or damages in excess of any wages/overtime which might be found to be due. Specifically, Plaintiff cannot recover Labor Code section 203 or Labor Code section 226(e) civil penalties because any alleged failure to pay wages or provide compliant wage statements was based on a good faith dispute regarding the applicable law or facts.

1

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

2

**[Failure to State a Claim for Attorneys' Fees and Costs]**

3    As and for a further affirmative defense to the complaint, and to each and every cause of

4    action contained therein, Defendant alleges that the Complaint fails to state a claim for attorneys'

5    fees under Labor Code section 226, Code of Civil Procedure 1021.5, Business and Professions

6    Code section 17200, *et seq.,* or any other basis.

7

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

8

**[Failure to Following Instructions]**

9    As and for a further affirmative defense to the complaint, and to each and every cause of

10   action contained therein, Defendant alleges that any failure to comply with Defendant's work-

11   time recording polices and requirements, was the result of failure by Plaintiff and/or the putative

12   class members to follow Defendant's reasonable instructions.

13

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

14

**[No Harm Suffered]**

15   As and for a further affirmative defense to the complaint, and to each and every cause of

16   action contained therein, Defendant alleges that Plaintiff has not suffered and will not suffer

17   irreparable harm or any harm as a result of any of the alleged conduct of Defendant.

18

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

19

**[Good Faith Business Practices]**

20   As and for a further affirmative defense to the complaint, and to each and every cause of

21   action contained therein, Defendant alleges that Plaintiff's complaint and/or each purported

22   cause of action therein is barred because, at all times, Defendant acted in good faith, did not

23   engage in any unfair business practices, or otherwise violate any applicable laws.

24

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

25

**[Unlawful Delegation of Executive Authority]**

26   As and for a further affirmative defense to the complaint, and to each and every cause of

27   action contained therein, Defendant alleges that Plaintiffs PAGA claim is barred to the extent

28   private actions seeking PAGA penalties manifest an unlawful delegation of executive authority.

9

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**[Employees Breach of Contract]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges the existence of a valid and enforceable contract, which bars or limits Plaintiff and the purported aggrieved employees from obtaining relief. Defendant further alleges Plaintiff and the purported aggrieved employees breached the contract which likewise bars or limits them from obtaining relief.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

**[Employees Are Not Aggrieved Employees]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's purported PAGA cause of action is barred to the extent it seeks to recover penalties on behalf of individuals who are not "aggrieved employees."

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

**[Penalties Beyond Initial Violation]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the purported PAGA cause of action is barred to the extent Plaintiff and the purported aggrieved employees seek penalties beyond the "initial" violation described in California Labor Code section 2699 and/or any other applicable California Labor Code provision.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

**[Doctrine of In Pari Delicto]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that to the extent Plaintiff and the purported aggrieved employees were employees, which Defendant expressly denies, Plaintiff and the purported aggrieved employees' claims are barred, in whole or in part, by the doctrine of in pari delicto due to the conduct of Plaintiff and the purported aggrieved employees, including but not limited to their voluntary waiver of the meal periods and rest breaks that they were provided the

10

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

1  opportunity to take, and their voluntary decision not to request reimbursement for any expenses
2  they incurred.

### FORTIETH AFFIRMATIVE DEFENSE

**[Excessive Fines Violates Due Process]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiffs PAGA claim is barred pursuant to the Eighth Amendment of the United State Constitution and Article I, Section 17, of the California Constitution because the penalties impose excessive fines and violates the due process rights of Defendant.

### FORTY-FIRST AFFIRMATIVE DEFENSE

**[Not an Aggrieved Employee]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that Plaintiff's PAGA claim is barred because he is not aggrieved employee as that term is defined in Labor Code section 2699(c).

### FORTY-SECOND AFFIRMATIVE DEFENSE

**[Hours Not Worked]**

As and for a further affirmative defense to the complaint, and to each and every cause of action contained therein, Defendant alleges that the hours for which Plaintiff and the purported aggrieved employees claim they are entitled to were not "hours worked" within the meaning of the applicable state and federal laws, and that Plaintiff and the purported aggrieved employees are not entitled to any penalties, income or compensation for these hours.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

## FORTY-THIRD AFFIRMATIVE DEFENSE

### [Additional Affirmative Defenses]

Defendant has not yet completed a thorough investigation and study or completed discovery of all facts and circumstances of the subject matter of the complaint and, accordingly, reserves the right to amend, modify, revise, or supplement its Answer, and to plead such further defenses and take such further actions as it deems proper and necessary in its defense upon completion of said investigation and study.

WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

1.  That Plaintiff take nothing by this action and that the complaint be dismissed in its entirety with prejudice;

2.  For all reasonable costs and attorneys' fees incurred by Defendant in connection with the defense of this matter; and

3.  For such other and further relief as the Court in the exercise of its discretion deems just and proper.

DATED: April 9, 2021

McMANIS FAULKNER

MICHAEL WARREN
Attorneys for Defendant
GILLIG, LLC

DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CASE NO. RG20073930

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

On April 9, 2021, I served the foregoing document described as:

### DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

Kane Moon, Esq.                          Attorneys for Plaintiff
Allen Feghali                            RONALD TOLENTINO
MOON & YANG, APC
1055 W. Seventh St., #1880
Los Angeles, CA  90017
T:  (213) 232-3128 / F:  (213) 232-3125
E:  kane.moon@moonyanglaw.com
    allen.feghali@moonyanglaw.com

☒    **(BY MAIL)**
I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this businesses' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Jose, California.

☒    **(STATE)**
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 9, 2021, at San Jose, California.

Elise Dresser

1

# EXHIBIT E

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Enzo Nabiev (SBN 332118)
   **MOON & YANG, APC**
3  1055 W. Seventh St., Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  E-mail: kane.moon@moonyanglaw.com
   E-mail: allen.feghali@moonyanglaw.com
6  E-mail: enzo.nabiev@moonyanglaw.com

7  *Attorneys for Plaintiff Ronald Tolentino*

8
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
                    **FOR THE COUNTY OF ALAMEDA**
10

11
   RONALD TOLENTINO, individually, and on     Case No.: RG20073930
12 behalf of all others similarly situated,
                                              **PLAINTIFF RONALD TOLENTINO'S**
13              Plaintiff,                     **OBJECTIONS AND RESPONSES TO**
                                              **DEFENDANT GILLIG, LLC'S FIRST SET**
14         vs.                                **OF SPECIAL INTERROGATORIES**

15

16 GILLIG, LLC, a limited liability company;
   and DOES 1 through 10, inclusive,
17
                Defendants                    Complaint filed:    September 16, 2020
18                                            Trial date:         Not set

19

20

21

22

23

24

25

26

27

28

PLAINTIFF RONALD TOLENTINO'S OBJECTIONS AND RESPONSES TO DEFENDANT GILLIG, LLC'S SPECIAL
INTERROGATORIES, SET NO. ONE

1  PROPOUNDING PARTY:    Defendant Gillig, LLC

2  RESPONDING PARTY:    Plaintiff Ronald Tolentino

3  SET NUMBER:    One (1)

4  Plaintiff Ronald Tolentino provides the following responses to Defendant Gillig, LLC's

5  First Set of Special Interrogatories – General. Plaintiff has not yet completed investigation,

6  discovery, or trial preparation for this action. Consequently, the following responses are given

7  without prejudice to Plaintiff's right to produce subsequently discovered facts.

8  This introduction applies to each and every response herein and shall be incorporated

9  by this reference as though set forth in full to each and every response. The following

10  responses will be based solely upon facts, issues, documents and other information in the

11  possession, custody, or control of Plaintiff at the time of the preparation of these responses.

12  Discovery will continue as long as permitted by statute, order of the court, or stipulation of the

13  parties, and investigation of Plaintiff shall continue to and through trial on this matter and any

14  further prosecution of this matter.

15  **PRELIMINARY STATEMENT**

16  Plaintiff has made a diligent and reasonable inquiry to respond to the interrogatories.

17  However, as discovery is continuing, Plaintiff's investigation into the facts relating to this

18  action is ongoing and incomplete. Plaintiff reserves the right to supplement, modify, amend or

19  withdraw any of his responses and objections in compliance with the Code of Civil Procedure,

20  if it appears that at any time inadvertent errors or admissions have been made or to present

21  evidence that may hereafter be discovered or become available to his. In responding to the

22  interrogatories, Plaintiff does not waive and expressly reserves his rights in any proceeding in

23  this action or any other action to: (1) raise any evidentiary issues (e.g., authenticity,

24  foundation, relevance, materiality, privilege, or admissibility); (2) object to the use or

25  introduction into evidence of these responses; and (3) object on any grounds to other

26  document demands or discovery involving the subject matter of these interrogatories.

27  Plaintiff expressly reserves any and all rights and privileges under the Code of Civil

28  Procedure, the Local Rules of the Court, and any other applicable statute, common law or rule.

PLAINTIFF RONALD TOLENTINO'S OBJECTIONS AND RESPONSES TO DEFENDANT GILLIG, LLC'S SPECIAL
INTERROGATORIES, SET NO. ONE

1    The failure to assert such rights and privileges shall not constitute a waiver thereof, either with

2    respect to these objections or with respect to any future discovery responses or objections.  In

3    addition, provision of information in partial response to any or all of an interrogatory is not to

4    be deemed a waiver of any objection(s) lodged by Plaintiff to the remainder of the

5    interrogatory, nor as consent to responding or providing information other than that which is

6    expressly provided in response to the interrogatory.

7                                **GENERAL OBJECTIONS**

8         Plaintiff asserts the following general objections in response to Defendant's

9    interrogatories:

10        1.    Plaintiff objects to the interrogatories to the extent that the documents or

11   information sought therein are protected from discovery by the attorney-client privilege, the

12   work product doctrine, or other applicable privilege, doctrine or immunity.  Plaintiff hereby

13   claims such privileges and protections to the extent implicated by each request and excludes

14   privileged and protected documents and information from his responses to the interrogatories.

15   Any disclosure of such protected or privileged documents or information is inadvertent and is

16   not intended to waive those privileges or protections.

17        2.    Plaintiff objects to the interrogatories to the extent that they seek documents

18   that are unavailable to Plaintiff or in the possession, custody, or control of third parties.

19   Further, Plaintiff objects to the interrogatories to the extent that they call to produce

20   documents that can more readily, conveniently and in a less burdensome fashion be obtained

21   from others by other means.

22        3.    Plaintiff objects to the interrogatories to the extent that they seek documents

23   that already are in the possession, custody or control of Defendant, already have been

24   provided to Defendant (including as part of court filings in this action), or are publicly

25   available or could otherwise be obtained by Defendant by alternative and less-burdensome

26   means.

27        4.    Plaintiff objects to the interrogatories to the extent that they are overbroad,

28   burdensome or harassing, and to the extent they seek documents that are irrelevant or

immaterial to the claims or defenses in this action and/or are not reasonably calculated to lead to the discovery of admissible evidence. In addition, Plaintiff objects to the interrogatories to the extent that compliance with the interrogatories would be unduly burdensome and would cause undue time and expense to Plaintiff that is not commensurate with Defendant's legitimate discovery needs.

5.      Plaintiff objects to the interrogatories to the extent they seek documents during dates outside of Plaintiff's employment with Defendant. Such requests for documents are overbroad, burdensome, and are not reasonably calculated to lead to discovery of relevant evidence.

6.      Plaintiff objects to the interrogatories to the extent they seek confidential and private, personal information regarding Plaintiff's activities, finances, and spending that is unrelated to his work for Defendant at issue in this case and that is irrelevant to the claims and defenses at issue. As such interrogatories requesting confidential, private, and personal information regarding Plaintiff's activities, finances, and spending are neither relevant nor reasonably calculated to lead to the discovery of relevant evidence, the probative value of any such information is outweighed by Plaintiff's interests in preserving his confidentiality, his right to privacy or any other applicable privilege. Further, Plaintiff objects to such interrogatories for confidential, private, and personal information regarding Plaintiff's activities, finances, and spending unrelated to his work for Defendant as harassing.

## OBJECTIONS AND RESPONSES TO SPECIAL INTERROGATORIES

### SPECIAL INTERROGATORY NO. 1:

State all facts on which YOU base YOUR contention that DEFENDANT failed to pay YOU and "the Class" (as defined in YOUR Complaint) wages owed for all regular hours (i.e., non-overtime hours) worked, as specifically alleged in paragraphs 32, 33, 35, and 36 of YOUR Complaint.

1    **RESPONSE TO INTERROGATORY NO. 1:**

2          Plaintiff hereby incorporates by reference each and every objection set forth above in

3    the General Objections as though fully set forth herein. Plaintiff objects on the grounds that

4    discovery is still in its early stages, and Defendant has not yet provided discovery, which

5    could reveal information and documents that are relevant to the merits of Plaintiff's claims.

6    Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the

7    attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this

8    Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive

9    information that could help answer this request is more likely to be in Defendant's possession,

10   custody or control. Subject to and without waiving the foregoing objections, and to the extent

11   he understands this Interrogatory, Plaintiff responds as follows:

12         Defendant regularly use a system of time rounding in a manner that resulted, over a

13   period of time, in failing to compensate Plaintiff and the Class properly for all the time they

14   have actually worked, even though the realities of Defendant operations are such that it is

15   possible, practical, and feasible to count and pay for work time to the minute. As a result,

16   Defendants frequently paid Plaintiff and the Class less than all their work time. Further,

17   Plaintiff, and the Class, earned non-discretionary bonuses.  Defendant, however, failed to

18   include these non-discretionary bonuses earned by Plaintiff, the Class, and Aggrieved

19   Employees for calculating the regular rate of pay.  Finally, Plaintiff would have to wait in line

20   for approximately one minute before being able to clock into work each day.  Discovery is

21   ongoing, and Plaintiff reserves the right to amend this response.

22

23   **SPECIAL INTERROGATORY NO.2:**

24         IDENTIFY the number of unpaid regular hours (non-overtime hours) YOU claim

25   DEFENDANT owes YOU since September 16, 2016, including the basis for YOUR calculation.

26   **RESPONSE TO INTERROGATORY NO. 2:**

27         Plaintiff hereby incorporates by reference each and every objection set forth above in

28   the General Objections as though fully set forth herein. Plaintiff objects to this Interrogatory

1  to the extent that it seeks information protected by the attorney-client privilege and/or attorney

2  work product doctrine. Plaintiff objects to this Interrogatory on the grounds that it is unduly

3  burdensome and oppressive because responsive information that could help answer this

4  request is more likely to be in Defendant's possession, custody or control. Subject to and

5  without waiving the foregoing objections, and to the extent he understands this Interrogatory,

6  Plaintiff responds as follows:

7      Currently, Plaintiff does not know the number of unpaid regular hours for which he did

8  not receive all wages owed. However, Plaintiff believes he was not paid all wages for all days

9  and hours that he worked throughout his employment for Defendant based on Defendant's

10  rounding practices, waiting in line to clock-in, and Defendant's failure to include the non-

11  discretionary bonuses earned by Plaintiff, for calculating the regular rate of pay. Plaintiff

12  believes responsive information would likely be in Defendant's possession. Discovery and

13  investigation are ongoing, and Plaintiff reserves the right to amend this response.

14

15  **SPECIAL INTERROGATORY NO. 3:**

16  State all facts on which YOU base YOUR contention that DEFENDANT failed to

17  provide YOU and "the Class" (as defined in YOUR Complaint) with legally required meal

18  periods, as specifically alleged in paragraphs 42 and 43 of YOUR Complaint.

19  **RESPONSE TO INTERROGATORY NO. 3:**

20      Plaintiff hereby incorporates by reference each and every objection set forth above in

21  the General Objections as though fully set forth herein. Plaintiff objects on the grounds that

22  discovery is still in its early stages, and Defendant has not yet provided discovery, which

23  could reveal information and documents that are relevant to the merits of Plaintiff's claims.

24  Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the

25  attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this

26  Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive

27  information that could help answer this request is more likely to be in Defendant's possession,

28  custody or control. Subject to and without waiving the foregoing objections, and to the extent

PLAINTIFF RONALD TOLENTINO'S OBJECTIONS AND RESPONSES TO DEFENDANT GILLIG, LLC'S SPECIAL
INTERROGATORIES, SET NO. ONE

he understands this Interrogatory, Plaintiff responds as follows:

Defendant regularly failed to provide 30-minute uninterrupted meal periods to Plaintiff and the putative class. On occasions, meal breaks would be short, interrupted, missed, or late. Further, Plaintiff's time and payroll records show that Plaintiff's meal periods were not recorded as required by law. Discovery and investigation are ongoing, and Plaintiff reserves the right to amend this response.

**SPECIAL INTERROGATORY NO. 4:**

IDENTIFY the number of legally required meal periods YOU allege DEFENDANT failed to provide YOU since September 16, 2016, including the basis for YOUR calculation.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff hereby incorporates by reference each and every objection set forth above in the General Objections as though fully set forth herein. Plaintiff objects on the grounds that discovery is still in its early stages, and Defendant has not yet provided discovery, which could reveal information and documents that are relevant to the merits of Plaintiff's claims. Plaintiff objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive information that could help answer this request is more likely to be in Defendant's possession, custody or control. Subject to and without waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

Plaintiff does not currently recall the number of legally required meal periods Defendant failed to provide him. However, Plaintiff believes he regularly was not provided with a legally compliant meal period regularly throughout his employment for Defendant. Discovery and investigation are ongoing, and Plaintiff reserves the right to amend this response.

1    **SPECIAL INTERROGATORY NO. 5:**

2        State all facts on which YOU base YOUR contention that DEFENDANT failed to

3    provide YOU and "the Class" (as defined in YOUR Complaint) with rest periods, as

4    specifically alleged in paragraphs 46 and 47 of YOUR Complaint.

5    **RESPONSE TO INTERROGATORY NO. 5:**

6        Plaintiff hereby incorporates by reference each and every objection set forth above in

7    the General Objections as though fully set forth herein. Plaintiff objects on the grounds that

8    discovery is still in its early stages, and Defendant has not yet provided discovery, which

9    could reveal information and documents that are relevant to the merits of Plaintiff's claims.

10    Plaintiff further objects to this Interrogatory on the grounds that the defined terms render it

11    overbroad, vague, and ambiguous. Plaintiff objects to this Interrogatory to the extent that it

12    seeks information protected by the attorney-client privilege and/or attorney work product

13    doctrine. Plaintiff objects to this interrogatory on the grounds that it is premature in that it

14    calls the testimony of an expert who has not yet been retained.  Subject to and without

15    waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff

16    responds as follows:

17        During the course of Plaintiff's employment, he and the putative class were not

18    authorized or permitted to take 10-minute, uninterrupted rest breaks for every four hours

19    worked, or major fraction thereof. During his employment, Plaintiff's rest breaks were

20    sometimes short, late, or interrupted. Discovery and investigation are ongoing, and Plaintiff

21    reserves the right to amend this response.

22

23    **SPECIAL INTERROGATORY NO. 6:**

24        IDENTIFY the number of rest periods YOU allege DEFENDANT failed to authorize

25    YOU to take since September 16, 2016, including the basis for YOUR calculation.

26    **RESPONSE TO INTERROGATORY NO. 6:**

27        Plaintiff hereby incorporates by reference each and every objection set forth above in

28    the General Objections as though fully set forth herein. Plaintiff objects to this Interrogatory

PLAINTIFF RONALD TOLENTINO'S OBJECTIONS AND RESPONSES TO DEFENDANT GILLIG, LLC'S SPECIAL
INTERROGATORIES, SET NO. ONE

on the grounds that it is unduly burdensome and oppressive because responsive information that could help answer this request is more likely to be in Defendant's possession, custody or control. Plaintiff further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Subject to and without waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

Plaintiff does not currently recall the number of rest periods that Defendant failed to authorize. However, Plaintiff believes he regularly was not provided with legally compliant rest periods while working for Defendant. Discovery and investigation are ongoing, and Plaintiff reserves the right to amend this response.

**SPECIAL INTERROGATORY NO. 7:**

State all facts on which YOU base YOUR contention that DEFENDANT intentionally and willfully failed to provide YOU and "the Class" (as defined in YOUR Complaint) with complete and accurate wage statements, as specifically alleged in paragraphs 57 through 60 of YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff hereby incorporates by reference each and every objection set forth above in the General Objections as though fully set forth herein. Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive information that could help answer this request is more likely to be in Defendant's possession, custody or control. Plaintiff further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Subject to and without waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

Plaintiff was not paid wages for all days and hours that he worked due to Defendant's rounding practices, waiting in line to clock into work, and Defendant's failure to include the non-discretionary bonuses earned by Plaintiff, for calculating the regular rate of pay. This

failure is falsely reflected on the wage statements. Discovery and investigation are ongoing, and Plaintiff reserves the right to amend this response.

**SPECIAL INTERROGATORY NO. 8:**

State all facts on which YOU base YOUR contention that YOUR "claims are typical of all Class Members' claims," as specifically alleged in paragraph 26(b) of YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff hereby incorporates by reference each and every objection set forth above in the General Objections as though fully set forth herein. Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive information that could help answer this request is more likely to be in Defendant's possession, custody or control. Plaintiff further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

Plaintiff's claims are typical of all class members claims because Defendant regularly used a system of time rounding for all non-exempt employees in a manner that resulted, over a period of time, in failing to compensate Plaintiff and the Class properly for all the time they have actually worked. As a result, Defendant frequently paid Plaintiff and the Class less than all of their work time. Further, Plaintiff, and the Class, earned non-discretionary bonuses. Defendants, however, failed to include these non-discretionary bonuses earned by Plaintiff, and the Class, for calculating the regular rate of pay. Additionally, Defendant's meal period policies and practices required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work. Finally, Defendant's rest period policies and practices required Plaintiff and the Class to work in excess of four consecutive hours a day without providing a 10-minute, continuous and uninterrupted, duty-

1   free rest period or without compensating Plaintiff and the Class for rest periods that were not

2   provided by the end of the fifth hour of work. Discovery and investigation are ongoing, and

3   Plaintiff reserves the right to amend this response.

4

5   **SPECIAL INTERROGATORY NO. 9:**

6        IDENTIFY any and all damages YOU claim against DEFENDANT, including the basis

7   for the calculations.

8   **RESPONSE TO INTERROGATORY NO. 9:**

9        Plaintiff hereby incorporates by reference each and every objection set forth above in

10   the General Objections as though fully set forth herein. Plaintiff objects on the grounds that

11   discovery is still in its early stages, and Defendant has not yet provided discovery, which

12   could reveal information and documents that are relevant to the merits of Plaintiff's claims.

13   Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and

14   oppressive because responsive information that could help answer this request is more likely

15   to be in Defendant's possession, custody or control. Plaintiff further objects to this

16   Interrogatory to the extent that it seeks information protected by the attorney-client privilege

17   and/or attorney work product doctrine. Subject to and without waiving the foregoing

18   objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

19        Plaintiff's damages in this action are provided by statute and identified specifically in

20   the First Amended Complaint. In addition to statutory damages for failure to pay all wages

21   owed, failure to provide or authorize meal periods, failure to authorize and permit rest breaks,

22   failure to pay all wages owed at the time of termination of the employment relationship, and

23   Civil Penalties provided by PAGA for the aforementioned violations, Plaintiff seeks attorneys'

24   fees, costs, prejudgment interest, and any other relief that the Court may deem appropriate.

25   Discovery is ongoing and Plaintiff reserves the right to amend this response.

26

27   **SPECIAL INTERROGATORY NO. 10:**

28        IDENTIFY any and all penalties YOU claim against DEFENDANT, including the

1 | basis for the calculations.

2

3 | **RESPONSE TO INTERROGATORY NO. 10:**

4 |     Plaintiff hereby incorporates by reference each and every objection set forth above in

5 | the General Objections as though fully set forth herein. Plaintiff objects on the grounds that

6 | discovery is still in its early stages, and Defendant has not yet provided discovery, which

7 | could reveal information and documents that are relevant to the merits of Plaintiff's claims.

8 | Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and

9 | oppressive because responsive information that could help answer this request is more likely

10 | to be in Defendant's possession, custody or control. Plaintiff further objects to this

11 | Interrogatory to the extent that it seeks information protected by the attorney-client privilege

12 | and/or attorney work product doctrine. Subject to and without waiving the foregoing

13 | objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

14 |     Defendant violated multiple Labor Code statutes, including but not limited to, Labor

15 | Code § 204, 510, 1194, 1197, and 1198 by failing to pay for all hours worked, including

16 | minimum wages, straight time wages and overtime wages; Labor Code § 226.7, 512 and

17 | applicable Wage Orders by failing to provide meal periods; Labor Code § 226.7 and

18 | applicable Wage Orders by failing to authorize and permit rest periods; Labor Code § 1174.5

19 | and applicable Wage Orders by failing to maintain accurate records of hours worked and meal

20 | periods taken or missed; Labor Code §§ 201 to 203 by willfully failing to pay all wages owed

21 | at termination; and Labor Code § 226 by failing to provide accurate itemized wage statements.

22 | Therefore, on behalf of all Aggrieved Employees, Plaintiff seeks applicable penalties related

23 | to the violations alleged above pursuant to the PAGA. These include, but are not limited to,

24 | penalties under Labor Code §§ 210, 226.3, 558, 1174.5, 1197.1, and 2699(f)(2). Discovery

25 | and investigation are ongoing, and Plaintiff reserves the right to amend this response.

26

27 | **SPECIAL INTERROGATORY NO. 11:**

28 |     IDENTIFY each witness who supports YOUR contention that DEFENDANT failed to

pay YOU wages owed for all regular hours (i.e., non-overtime hours) worked, as specifically alleged in paragraphs 32, 33, 35, and 36 of YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff hereby incorporates by reference each and every objection set forth above in the General Objections as though fully set forth herein. Plaintiff objects on the grounds that discovery is still in its early stages, and Defendant has not yet provided discovery, which could reveal information and documents that are relevant to the merits of Plaintiff's claims. Plaintiff objects on the grounds that discovery is still in its early stages, and Defendant has not yet provided discovery, which could reveal information and documents that are relevant to the merits of Plaintiff's claims. Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive information that could help answer this request is more likely to be in Defendant's possession, custody or control. Plaintiff further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

Plaintiff, Defendant, Defendant's employees, agents, and/or officers including Anthony Stockton (Supervisor), Dave Duncan (Superintendent/Supervisor), Willie Hernandez (Supervisor), and Anthony Zentenelli (Supervisor).

**SPECIAL INTERROGATORY NO. 12:**

IDENTIFY each witness who supports YOUR contention that DEFENDANT failed to provide YOU with legally required meal periods, as specifically alleged in paragraphs 42 and 43 of YOUR Complaint.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff hereby incorporates by reference each and every objection set forth above in the General Objections as though fully set forth herein. Plaintiff objects on the grounds that

discovery is still in its early stages, and Defendant has not yet provided discovery, which could reveal information and documents that are relevant to the merits of Plaintiff's claims. Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive information that could help answer this request is more likely to be in Defendant's possession, custody or control. Plaintiff further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

Plaintiff, Defendant, Defendant's employees, agents, and/or officers including Anthony Stockton (Supervisor), Dave Duncan (Superintendent/Supervisor), Willie Hernandez (Supervisor), and Anthony Zentenelli (Supervisor)

**SPECIAL INTERROGATORY NO. 13:**

IDENTIFY each witness who supports YOUR contention that DEFENDANT failed to provide YOU with legally required rest periods, as specifically alleged in paragraphs 46 and 47 of YOUR Complaint.

 **RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff hereby incorporates by reference each and every objection set forth above in the General Objections as though fully set forth herein. Plaintiff objects to this Interrogatory on the grounds that it is unduly burdensome and oppressive because responsive information that could help answer this request is more likely to be in Defendant's possession, custody or control. Plaintiff further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objections, and to the extent he understands this Interrogatory, Plaintiff responds as follows:

///

///

///

1    Plaintiff, Defendant, Defendant's employees, agents, and/or officers including Anthony

2   Stockton (Supervisor), Dave Duncan (Superintendent/Supervisor), Willie Hernandez

3   (Supervisor), and Anthony Zentenelli (Supervisor).

4

5   Dated:    August 12, 2021                 **MOON & YANG, APC**

6                                      By: _____

7                                          Kane Moon
                                           Allen Feghali
8                                          Enzo Nabiev

9                                          Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF RONALD TOLENTINO'S OBJECTIONS AND RESPONSES TO DEFENDANT GILLIG, LLC'S SPECIAL
INTERROGATORIES, SET NO. ONE

## VERIFICATION

I am the plaintiff in this action. I am familiar with the contents of the document entitled

**OBJECTIONS AND RESPONSES TO DEFENDANT GILLIG, LLC'S SPECIAL
INTERROGATORIES, SET NO. ONE**

The information supplied therein is based on my own personal knowledge and/or has

been supplied by my attorneys or other agents and/or compiled from available documents and

is therefore provided as required by law. The information contained in the foregoing document

is true, except as to the matters which were provided by my attorneys or other agents or

compiled from available documents, including all contentions and opinions, and, as to those

matters, I am informed and believe that they are true.

I declare under penalty of perjury under the laws of the State of California and the

United States that the foregoing is true and correct.

Executed on _____8/11/2021_____ at San Francisco, California

DocuSigned by:

_____
EB7B703D910B49F...
Roland Tolentino

---

PLAINTIFF'S VERIFICATION

**PROOF OF SERVICE**

STATE OF CALIFORNIA         )
                              ) ss
COUNTY OF LOS ANGELES    )

      I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017. On August 13, 2021, I served the foregoing document described as:

**PLAINTIFF RONALD TOLENTINO'S OBJECTIONS AND RESPONSES TO DEFENDANT GILLIG, LLC'S FIRST SET OF SPECIAL INTERROGATORIES**

 X   by placing ___ the original  X  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| WILLIAM FAULKNER | CRAIG MARTIN |
| MICHAEL WARREN | MATT BASIL |
| **McMANIS FAULKNER** | **WILLKIE FARR & GALLAGHER, LLP** |
| 50 West San Fernando Street, 10th Floor | |
| San Jose, California 95113 | 300 North LaSalle Street, Suite 5000 |
| Telephone:  (408) 279-8700 | Chicago, Illinois 60654 |
| Facsimile:   (408) 279-3244 | cmartin@willkie.com |
| mwarren@mcmanislaw.com | mbasil@willkie.com |

*Attorneys for Defendant Gillig, LLC*

[X]  **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

 X  (State)      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

      Executed on August 13, 2021 at Los Angeles, California.


_____        _____
      Name                                        Signature

Ivette Hernandez

EXHIBIT 56

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
03/28/2023 at 10:47:25 AM
By: Gina Fu,
Deputy Clerk

1 │ WILLIAM FAULKNER (83385)
  │ MICHAEL WARREN (223642)
2 │ McMANIS FAULKNER
  │ a Professional Corporation
3 │ 50 West San Fernando Street, 10th Floor
  │ San Jose, California 95113
4 │ Telephone:    (408) 279-8700
  │ Facsimile:    (408) 279-3244
5 │ Email:        mwarren@mcmanislaw.com

6 │ CRAIG C. MARTIN (*Pro Hac Vice*)
  │ MATT D. BASIL (*Pro Hac Vice*)
7 │ WILLKIE FARR & GALLAGHER, LLP
  │ 300 North LaSalle Street, Suite 5000
8 │ Chicago, Illinois 60654
  │ Telephone:    (312) 728-9000
9 │ Facsimile:    (312) 728-9199
  │ Email:        cmartin@willkie.com
10│               mbasil@willkie.com

11│ Attorneys for Defendant
  │ GILLIG, LLC
12│

13│                SUPERIOR COURT OF THE STATE OF CALIFORNIA

14│                        FOR THE COUNTY OF ALAMEDA

15│

16│ RONALD TOLENTINO, individually, and on      Case No.: RG20073930
  │ behalf of all others similarly situated,
17│                                             **PROOF OF SERVICE**
18│              Plaintiff,
  │                                             Date:          May 2, 2023
19│        vs.                                  Time:          9:15 a.m.
  │                                             Department:    23
20│ GILLIG, LLC, a limited liability company; and   Judge:         Hon. Brad Seligman
  │ DOES 1 through 10, inclusive,                **Reservation No.: 527421920323**
21│                                             Complaint Filed:    September 16, 2020
  │              Defendants.                     Trial Date:         Not set
22│

23│ ///

24│ ///

25│ ///

26│ ///

27│ ///

28│ ///

                                        1
PROOF OF SERVICE; CASE NO. RG20073930

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

3

4

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113.  My email address is: edresser@mcmanislaw.com.

5

On March 24, 2023, I served the foregoing document described as:

6

7

NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE RE: PLAINTIFF'S MINIMUM WAGE CLAIM FOR ALLEGED OVERTIME HOURS WORKED

8

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE RE: PLAINTIFF'S MINIMUM WAGE CLAIM FOR ALLEGED OVERTIME HOURS WORKED

10

11

12

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT GILLIG, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE RE: PLAINTIFF'S MINIMUM WAGE CLAIM FOR ALLEGED OVERTIME HOURS WORKED

13

14

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

15

16

Kane Moon, Esq.                                    Attorneys for Plaintiff
Allen Feghali, Esq.                               RONALD TOLENTINO

17

Enzo Nabiev, Esq.

18

Julie Oh, Esq.
MOON & YANG, APC

19

1055 W. Seventh St., #1880
Los Angeles, CA  90017

20

T:  (213) 232-3128 / F:  (213) 232-3125
E:  kane.moon@moonyanglaw.com

21

    allen.feghali@moonyanglaw.com

22

    enzo.nabiev@moonyanglaw.com
    julie.oh@moonyanglaw.com

23

24

| X |   **(BY MAIL)**

25

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this businesses' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am employed in the county where the

26

27

28

2

PROOF OF SERVICE; CASE NO. RG20073930

mailing occurred.  The envelope or package was placed in the mail at San Jose, California.

☒ **(ELECTRONIC MAIL)**

Based on a court order or an agreement of the parties to accept service by email or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above or on the attached service list.

Executed on March 24, 2023, at San Jose, California.

Elise Dresser

PROOF OF SERVICE; CASE NO. RG20073930

EXHIBIT 57

1   Kane Moon (SBN 249834)
    Allen Feghali (SBN 301080)
2   Jacquelyne VanEmmerik (SBN 339338)
    **MOON & YANG, APC**
3   1055 West Seventh Street, Suite 1880
    Los Angeles, California 90017
4   Telephone: (213) 232-3128
    Facsimile: (213) 232-3125
5   Email: kane.moon@moonyanglaw.com
    Email: allen.feghali@moonyanglaw.com
6   Email: jacquelyne.vanemmerik@moonyanglaw.com

7   *Attorneys for Plaintiff,*
    *Ronald Tolentino*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
04/19/2023 at 03:55:41 PM
By: Tanisha Wordlow,
Deputy Clerk

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF ALAMEDA**

10  RONALD TOLENTINO, individually, and        Case No.: RG20073930
    on behalf of all others similarly situated,
11                                              [Honorable Brad Seligman, Department 23]
                    *Plaintiff*,
12                                              **OPPOSITION TO DEFENDANT GILLIG,**
                                                **LCC'S MOTION FOR JUDGMENT ON**
13          vs.                                 **THE PLEADINGS AND/OR MOTION *IN***
                                                ***LIMINE* TO EXCLUDE ALL EVIDENCE**
14  GILLIG, LLC, a limited liability company;   **RE: PLAINTIFF'S MINIMUM WAGE**
    and DOES 1 through 10, inclusive,           **CLAIM FOR ALLEGED OVERTIME**
15                                              **HOURS WORKED**
                    *Defendants*.
16                                              Date: May 2, 2023
17                                              Time: 9:15 a.m.
                                                Dept.: 23
18
                                                Action Filed: September 16, 2020
19                                              Trial Date: Not Set

20

21

22

23

24

25

26

27

28

I.    <u>INTRODUCTION</u>

To succeed on a motion for judgment on the pleadings, the movant defendant must establish that the court does not have jurisdiction over the subject of the alleged cause of action or that the complaint does not state facts sufficient to constitute a cause of action against the movant defendant. *California Code of Civil Procedure section 438(c)(1)(B)(i-ii)*. In its Motion, Defendant Gillig, LLC ("Defendant") fails to establish either. In the first instance, Defendant argues that this Court does not have jurisdiction over the alleged cause of action for Failure to Pay Minimum Wages, proffering that the unpaid time at issue constitutes overtime; overtime falls within the scope of the collective bargaining agreements between Defendant and the putative Class; and claims for violation of such agreements fall within the scope of federal jurisdiction, pursuant to Section 301 of the Labor Management Relations Act. *29 U.S. Code section 185*. On the same basis, Defendant implicitly disputes that Plaintiff states facts sufficient to constitute a cause of action for Failure to Pay Minimum Wages against Defendant. In characterizing the unpaid time at issue as overtime, Defendant convolutes what is, at bottom, a basic demand for minimum wages, made pursuant to the plain language of *Labor Code* section 1194 and evidenced by the implicating data produced and testified to by Defendant. On this premise, and for the reasons explicated below, Defendant's Motion must fail.

II.    <u>STATEMENT OF RELEVANT FACTS</u>

Plaintiff Ronald Tolentino ("Plaintiff") filed a class action complaint against Defendant in the Alameda County Superior Court on September 16, 2020. The complaint alleged: Failure to Pay Minimum and Regular Rate Wages [*Labor Code* sections 204, 1194, 1194.2, and 1197]; Failure to Pay Overtime Compensation [*Labor Code* sections 1194 and 1198]; Failure to Provide Meal Periods [*Labor Code* sections 226.7 and 512]; Failure to Authorize and Permit Rest Breaks [*Labor Code* section 226.7]; Failure to Timely Pay Final Wages at Termination [*Labor Code* sections 201-203]; Failure To Provide Accurate Itemized Wage Statements [*Labor Code* section 226]; and Unfair Business Practices [*Business and Professions Code* sections 17200, et seq.], on behalf of all non-exempt employees who worked for Defendant in California from September 16, 2016, to the date the Class notice is sent.

OPPOSITION TO DEFENDANT GILLIG, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND/OR MOTION *IN LIMINE*

1    Defendant removed the matter to the United States District Court for the Northern

2  District of California on or around October 22, 2020. In support of removal, Defendant

3  contended that putative Class Members were subject to one of two substantially similar

4  collective bargaining agreements; that the matter alleged claims for violation of such

5  agreements; and that Section 301 of the Labor Management Relations Act therefore granted

6  federal jurisdiction over such claims. Defendant then filed a Motion to Dismiss on December 4,

7  2020, which argued the above claims were either preempted by Section 301 of the Labor

8  Management Relations Act or precluded by *Labor Code* sections 204(c) and 514. The Court

9  granted the motion in part and denied the motion in part, holding that *Labor Code* sections

10  204(c) and 514 did in fact preclude the putative Class from pursuing an overtime or timely

11  wages claim, or any derivative claim thereof, but that the remaining claims were not preempted

12  and to be remanded to the Alameda County Superior Court.

13    Following remand, the Parties engaged in an initial phase of discovery, then in a private

14  mediation with professional mediator, Tripper Ortman, Esq. The mediation did not result in

15  settlement, and the Parties continued their exchange of data and information thereafter.

16  Defendant deposed Plaintiff on October 26, 2022, and Plaintiff deposed Defendant's designated

17  Person Most Knowledgeable on April 4, 2023. The Court has ordered Plaintiff to file a Motion

18  for Class Certification by April 24, 2023, about one week before the Hearing on Defendant's

19  Motion for Judgment on the Pleadings, which Defendant filed on or around March 24, 2023.

20  III.    LEGAL STANDARD

21    The purpose and effect of a general demurrer and motion for judgment on the pleadings

22  are treated the same under the California Rules of Civil Procedure. *Payne v. Anaheim Memorial*

23  *Medical Center, Inc*. (2005) 130 Cal.App.4th 729, 746. For this reason, the same rules of

24  procedure that apply to a general demurrer apply to a motion for judgment on the pleadings.

25  *Davis v. Ross* (2019) 39 Cal.App.5th 627, 629. These rules include that the movant defendant

26  must establish that the court does not have jurisdiction over the subject of the alleged cause of

27  action or that the complaint does not state facts sufficient to constitute a cause of action against

28  the movant defendant. *California Code of Civil Procedure section 438(c)(1)(B)(i-ii)*.

OPPOSITION TO DEFENDANT GILLIG, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND/OR MOTION *IN LIMINE*

1    IV.    <u>DISCUSSION</u>

2          A.    <u>Defendant Is Liable To The Putative Class For Unpaid Minimum Wages Pursuant</u>

3          <u>To The Plain Language Of *Labor Code* Section 1194.</u>

4          Defendant is liable to the putative Class for unpaid minimum wages pursuant to the plain

5    language of *Labor Code* section 1194. *Labor Code* section 1194 states: "Notwithstanding [an]

6    agreement to work for a lesser wage, [an] employee receiving less than the legal minimum

7    wage…applicable to the employee is entitled to recover in a civil action the unpaid balance of the

8    full amount of this minimum wage." For over two decades, this provision has been interpreted to

9    require California employers, irrespective of an applicable collective bargaining agreement, to

10   remunerate their employees for all time worked and at not less than the minimum wage. *Gutierrez v.*

11   *Brand Energy Services of California, Inc.* (2020) 50 Cal.App.5th 786, 800.

12         This requirement is consistent with the fundamental California labor law principle that the

13   right to minimum wage is unwaivable, as it precludes employers from superseding, and employees

14   from relinquishing, this right through contract. *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 455;

15   *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 340; *Flowers v. Los Angeles*

16   *County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 82 ["[E]mployees may

17   not agree to waive their entitlement to the minimum wage [Citations omitted], nor may a collective

18   bargaining agreement waive that right."] It also underlies the implications that, no matter how an

19   employer classifies time worked under an applicable collective bargaining agreement, including as

20   regular time, overtime or double time, that time must be paid and at not less than the minimum

21   wage; and, that a collective bargaining agreement is inconsequential when an employer has not paid

22   its employees minimum wages for all time worked. *Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th

23   762, 782 ["Whatever the task or period promised as a basis for compensation…an employer must

24   pay no less than the minimum wage for all hours worked."] ["[A]n employer who...promises to pay

25   by the hour may not compensate any given hour at less than the minimum wage."]; *Gutierrez*, *supra*,

26   50 Cal.App.5th at 799-800.

27         These implications underpin the alleged cause of action for Failure to Pay Minimum Wages:

28   Each support the fact that Defendant—which admits that it did not and does not compensate the

OPPOSITION TO DEFENDANT GILLIG, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND/OR MOTION *IN LIMINE*

putative Class, *at all*, for any and all work performed between the putative Class' clock-in times and scheduled start times—is liable to the putative Class for this unpaid time, at the minimum wage, even if Defendant unilaterally classifies it as overtime under its collective bargaining agreements; and its collective bargaining agreements are inconsequential in this context, as Defendant has not paid *any wages* for this time worked.

Defendant attempts to exploit its collective bargaining agreements to shield itself from liability for basic wages by mischaracterizing the nature of the alleged cause of action for Failure to Pay Minimum Wages as a claim for overtime wages, which would otherwise be preempted. Indeed, Defendant claims that the unpaid time at issue, i.e., the time between the putative Class' clock-in times and scheduled start times, is time that extends beyond the putative Class' typical eight-hour shifts, and therefore, constitutes overtime pursuant to its collective bargaining agreements, which define overtime as "time worked over eight hours."

The unpaid time at issue, however, occurred at the beginning of each shift, not at the end. For this reason alone, such time is not time worked *over* eight hours, but rather time worked *within* eight hours. That Defendant failed to pay overtime for the time period extending beyond the putative Class' eight-hour shifts, e.g., the last ten minutes of the putative Class' shifts, may be true *but is not at issue here*. Further, even if the unpaid time at issue were overtime, which it is not, the cause of action for minimum wages, as provided under *Labor Code* section 1194, remains available to any employee who has not been paid minimum wages for all time worked, as this cause of action is independent from the classification, or nature, of the unpaid time. Thus, so long as an employee has not been paid minimum wages for all time worked, that employee has an actionable claim for minimum wages in state court, even if the employee may be entitled to additional wages in another context. *Oman*, *supra*, 9 Cal.5th at 782; *Flowers*, *supra*, 243 Cal.App.4th at 82, citing *Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1297 ["State wage and hour laws 'reflect the strong public policy favoring protection of workers' general welfare and "society's interest in a stable job market." [Citations omitted.]' They are therefore liberally construed in favor of protecting workers."] The fact that the right to minimum wages cannot be waived reinforces this point, as it bears on the irrelevance of the classification of any unpaid time to the actionability of a claim for unpaid minimum wages.

1

      B.      <u>Defendant Is Liable To The Putative Class For Unpaid Minimum Wages, As</u>

2

                <u>Evidenced By The Implicating Data Produced And Testified To By Defendant.</u>

3

      Defendant is liable to the putative Class for unpaid minimum wages, as evidenced by the

4

implicating data produced and testified to by Defendant. The implicating data produced and testified

5

to by Defendant is twofold. First, it is comprised of the time and corresponding payroll records of the

6

putative Class, which indicate, on their face, that Defendant did not remunerate employees for all time

7

worked, including the time between the putative Class' clock-in times and scheduled start times.

8

*Declaration of Jacquelyne VanEmmerik, Exhibit A.* Second, it is comprised of testimony, which

9

substantiates the fact that Defendant did not remunerate employees for all time worked and

10

simultaneously establishes, in direct contradiction of Defendant's Motion, that Defendant does not in

11

fact consider the unpaid time at issue to be overtime. Indeed, Defendant does not consider such time

12

to be time worked at all:

13

    8  MS. VAN EMMERIK:

14

    9    Q· Okay. So I have just a few more questions

15

   10  related to Exhibit A, and then we'll move on from it

16

   11  after that.

17

   12    So just so I'm clear, is it fair and

18

   13  accurate to say that Gillig does not pay nonexempt

19

   14  hourly employees anything for the time between their

20

   15  clock-in time so the in time indicated on the time

21

   16  sheet and the scheduled time indicated also on the

22

   17  time sheet?

23

   18  MR. WARREN: Objection; lacks foundation,

24

   19  misstates testimony.

25

   20  THE DEPONENT: I'll go back to in this

26

   21  situation, the 1:50 time to 2:00 o'clock is, yes,

27

   22  not paid time because it's not work time. We pay

28

   23  them for worked time. (Deposition of Gillig, LLC [Marla Loar designated] at 50:8-23.)

1    The inconsistency between this testimony and the overtime argument made in Defendant's

2  Motion calls into question whether the latter was adopted to evade liability in state court, as

3  Defendant's overtime argument supports, albeit inadequately, preemption and preclusion of the

4  alleged cause of action for Failure to Pay Minimum Wages in state court, in light of Section 301 of

5  the Labor Management Relations Act and *Labor Code* section 514, respectively. Despite this alarming

6  inconsistency, in its less than three pages of argument, Defendant fails to demonstrate that the unpaid

7  time at issue is in fact overtime, and more broadly, that Defendant should, in effect, be permitted to

8  circumvent paying putative Class Members minimum wages, pursuant to *Labor Code* section 1194,

9  for all time worked.

10  V.    <u>CONCLUSION</u>

11    Plaintiff respectfully requests that the Court deny Defendant's Motion for Judgment on the

12  Pleadings and/or Motion *In Limine* to Exclude Evidence.

13

14  Dated: April 19, 2023                Respectfully submitted,

15                          MOON & YANG, APC

16

17                    By:  _Jacquelyne VanEmm_____

18                          Kane Moon, Esq.
                          Allen Feghali, Esq.
19                          Jacquelyne VanEmmerik, Esq.

20                          Attorneys for *Plaintiff, Ronald Tolentino*

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT GILLIG, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND/OR MOTION *IN LIMINE*

**PROOF OF SERVICE**

STATE OF CALIFORNIA     )
            ) ss
COUNTY OF LOS ANGELES   )

   I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On April 19, 2023, I served the foregoing document described as:

**OPPOSITION TO DEFENDANT GILLIG, LCC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE RE: PLAINTIFF'S MINIMUM WAGE CLAIM FOR ALLEGED OVERTIME HOURS WORKED**

X   by placing ___ the original  X   a true copy thereof enclosed in sealed envelope(s) addressed as follows:

<div align="center">

WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
**McMANIS FAULKNER**
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
Email: mwarren@mcmanislaw.com

CRAIG MARTIN (Pro Hac Vice)
cmartin@willkie.com
MATT BASIL (Pro Hac Vice)
mbasil@willkie.com
**WILLKIE FARR & GALLAGHER, LLP**
300 North LaSalle Street, Suite 5000
Chicago, Illinois 60654
Telephone: (312) 728-9000
Facsimile: (312) 728-9199

***Attorneys for Defendant GILLIG, LLC***

</div>

[✓]  **BY U.S. MAIL**:  I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

 X   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

   Executed on April 19, 2023, at Los Angeles, California.

1

| Janelle Jickain | |
| --- | --- |
| Name | Signature |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

EXHIBIT 58

Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Jacquelyne VanEmmerik (SBN 339338)
**MOON & YANG, APC**
1055 West Seventh Street, Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
Email: kane.moon@moonyanglaw.com
Email: allen.feghali@moonyanglaw.com
Email: jacquelyne.vanemmerik@moonyanglaw.com

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
04/19/2023 at 03:55:41 PM
By: Tanisha Wordlow,
Deputy Clerk

*Attorneys for Plaintiff,*
*Ronald Tolentino*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| RONALD TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>  vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>    *Defendants*. | Case No.: RG20073930<br><br>[Honorable Brad Seligman, Department 23]<br><br>**DECLARATION OF JACQUELYNE VANEMMERIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT GILLIG, LCC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE RE: PLAINTIFF'S MINIMUM WAGE CLAIM FOR ALLEGED OVERTIME HOURS WORKED**<br><br>Date: May 2, 2023<br>Time: 9:15 a.m.<br>Dept.: 23<br><br>Action Filed: September 16, 2020<br>Trial Date: Not Set |

<u>DECLARATION OF JACQUELYNE VANEMMERIK</u>

I, JACQUELYNE VANEMMERIK, declare as follows:

1.      I am an attorney at law duly licensed to practice as such before all Courts of the State of California and am one of the attorneys of record for Plaintiff Ronald Tolentino ("Plaintiff"). This declaration is made in support of Plaintiff's Opposition to Defendant Gillig, LLC's Motion for Judgment on the Pleadings and/or Motion *In Limine*. I have personal knowledge of the matters set forth herein and could competently testify to the facts described herein.

2.      Plaintiff filed a class action complaint against Defendant in the Alameda County Superior Court on September 16, 2020. The complaint alleged: Failure to Pay Minimum and Regular Rate Wages [*Labor Code* sections 204, 1194, 1194.2, and 1197]; Failure to Pay Overtime Compensation [*Labor Code* sections 1194 and 1198]; Failure to Provide Meal Periods [*Labor Code* sections 226.7 and 512]; Failure to Authorize and Permit Rest Breaks [*Labor Code* section 226.7]; Failure to Timely Pay Final Wages at Termination [*Labor Code* sections 201-203]; Failure To Provide Accurate Itemized Wage Statements [*Labor Code* section 226]; and Unfair Business Practices [*Business and Professions Code* sections 17200, et seq.], on behalf of all non-exempt employees who worked for Defendant Gillig, LLC ("Defendant") in California from September 16, 2016, to the date the Class notice is sent.

3.      Defendant removed the matter to the United States District Court for the Northern District of California on or around October 22, 2020. In support of removal, Defendant contended that putative Class Members were subject to one of two substantially similar collective bargaining agreements; that the matter alleged claims for violation of such agreements; and that Section 301 of the Labor Management Relations Act therefore granted federal jurisdiction over such claims. Defendant then filed a Motion to Dismiss on December 4, 2020, which argued the above claims were either preempted by Section 301 of the Labor Management Relations Act or precluded by *Labor Code* sections 204(c) and 514. The Court granted the motion in part and denied the motion in part, holding that *Labor Code* sections 204(c) and 514 did in fact preclude the putative Class from pursuing an overtime or timely

1   wages claim, or any derivative claim thereof, but that the remaining claims were not preempted

2   and to be remanded to the Alameda County Superior Court.

3   4.    Following remand, the Parties engaged in an initial phase of discovery, then in a private

4   mediation with professional mediator, Tripper Ortman, Esq. The mediation did not result in

5   settlement, and the Parties continued their exchange of data and information thereafter.

6   Defendant deposed Plaintiff on October 26, 2022, and Plaintiff deposed Defendant's designated

7   Person Most Knowledgeable on April 4, 2023. The Court has ordered Plaintiff to file a Motion

8   for Class Certification by April 24, 2023, about one week before the Hearing on Defendant's

9   Motion for Judgment on the Pleadings, which Defendant filed on or around March 24, 2023.

10  5.    Attached hereto as Exhibit 1 is a true and correct copy of the April 3, 2023 deposition

11  transcript of Marla Loar, including Exhibit A thereto. Extraneous pages not containing testimony

12  referenced in Plaintiff's Opposition to Defendant Gillig, LLC's Motion for Judgment on the

13  Pleadings and/or Motion *in Limine* have been removed to condense the exhibit size.

14      I declare under penalty of perjury, under the laws of the State of California and United

15  States of America, that the foregoing is true and correct.

16      Executed this April 19, 2023, in Los Angeles, California.

17

18      _____
        Jacquelyne VanEmmerik, Esq.

19

20

21

22

23

24

25

26

27

28

2

DECLARATION OF JACQUELYNE VANEMMERIK IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT GILLIG, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR
MOTION *IN LIMINE*

# Exhibit 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA


RONALD TOLENTINO, individually,   )
and on behalf of all others      )
similarly situated,                   )
                                       )
               Plaintiff,       )
                                      )
            vs.               ) Case No.
                                      ) RG20073930
GILLIG, LLC, a limited liability  )
company; and DOES 1 through 10,   )
inclusive,                        )
                                       )
            Defendants.      )
_____ )




REMOTE VIDEOTAPED DEPOSITION OF MARLA LOAR,

AS PERSON MOST KNOWLEDGEABLE FOR GILLIG, LLC

MONDAY, APRIL 3, 2023, 10:06 A.M.






STENOGRAPHICALLY REPORTED BY:

Tami L. Le, CSR No. 8716, RPR

Job No. 84341

**MARLA LOAR, PMK**

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                     FOR THE COUNTY OF ALAMEDA

 3

 4   RONALD TOLENTINO, individually,    )
     and on behalf of all others       )
 5   similarly situated,               )
                                       )
 6             Plaintiff,              )
                                       ) Case No.
 7   vs.                               ) RG20073930
                                       )
 8   GILLIG, LLC, a limited liability  )
     company; and DOES 1 through 10,   )
 9   inclusive,                        )
                                       )
10             Defendants.             )
     _____)

11

12

13

14

15           REMOTE VIDEOTAPED DEPOSITION of MARLA LOAR,

16   AS PERSON MOST KNOWLEDGEABLE FOR GILLIG, LLC, taken

17   on behalf of the Plaintiffs, with all participants

18   appearing remotely via Zoom videoconference,

19   commencing at 10:06 a.m., on Monday, April 3, 2023,

20   before Tami L. Le, Certified Shorthand Reporter

21   8716, in and for the State of California.

22

23

24

25
```

```
 1    REMOTE APPEARANCES:

 2

 3    For the Plaintiffs:

 4             MOON & YANG, APC
               BY:  JACQUELYNE VAN EMMERIK, ESQ.
 5             1055 West Seventh Street
               Suite 1880
 6             Los Angeles, California  90017
               213.232.3128
 7             jacquelyne.vanemmerik@moonyanglaw.com

 8

 9    For Defendant GILLIG, LLC:

               McMANIS FAULKNER
10             BY:  MICHAEL WARREN, ESQ.
               50 West San Fernando Street
11             10th Floor
               San Jose, California  95113
12             408.279.8700
               mwarren@mcmanislaw.com

13

14    The Videographer:

15             Dash Arnott

16

17

18

19

20

21

22

23

24

25
```

**MARLA LOAR, PMK**

**April 03, 2023**

```
 1                    I N D E X

 2   WITNESS:  Marla Loar

 3   EXAMINATION                              PAGE

 4   By Ms. Van Emmerik                          6

 5

 6   PLAINTIFFS' EXHIBITS FOR IDENTIFICATION:

 7   Exhibit A  - Kronos report for Roland          37
                  Tolentino, Bates-stamped
 8                D00410 through D00423

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**MARLA LOAR, PMK**

**April 03, 2023**

1          MS. VAN EMMERIK:  Yes, please.  Thank you.

2          THE VIDEOGRAPHER:  The time is 11:25 a.m.,

3   and we're now off the record.

4          (Recess taken.)

5          THE VIDEOGRAPHER:  The time is 11:38 a.m.

6   We're back on the record.

7          MS. VAN EMMERIK:  Thank you.

8   BY MS. VAN EMMERIK:

9      Q    Okay.  So I have just a few more questions

10  related to Exhibit A, and then we'll move on from it

11  after that.

12         So just so I'm clear, is it fair and

13  accurate to say that Gillig does not pay nonexempt

14  hourly employees anything for the time between their

15  clock-in time so the in time indicated on the time

16  sheet and the scheduled time indicated also on the

17  time sheet?

18         MR. WARREN:  Objection; lacks foundation,

19  misstates testimony.

20         THE DEPONENT:  I'll go back to in this

21  situation, the 1:50 time to 2:00 o'clock is, yes,

22  not paid time because it's not work time.  We pay

23  them for worked time.

24  BY MS. VAN EMMERIK:

25     Q    This is true, to be clear, for all

# Exhibit A

4/15/2021

Tolentino, Roland
061547

Requested by **Heskett, Tracy**

https://gilliglic.prd.mykronos.com/tk-print#/

⏱ 10/14/2019 - 12/31/2019    🔄 4/15/2021 1:57 PM

## Timecard

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 1... | | | 2:00 PM | | | | | | | | | | 8.00 |
| Tue 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 16.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 24.00 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 32.00 |
| Fri 10/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 40.00 |
| Sat 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 48.00 |
| Sun 1... | | | | | | | | | | | | | 48.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 56.00 |
| Tue 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 64.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 72.00 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | | | | 8.00 | 8.00 | 80.00 |
| Fri 10/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 88.00 |
| Sat 10... | | | | | ⋮ | | | ⋮ | | | | | 88.00 |
| Sun 1... | | | | | | | | | VAC | 8.00 | | 8.00 | 88.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 96.00 |
| Tue 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 104.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 112.00 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 120.00 |
| Fri 11/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 128.00 |

D00410

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sun 1... | | | | | | | | | | | | | 248.58 |
| Sat 11... | | | | | | | | | | | | | 248.58 |
| Fri 11/... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 248.58 |
| Thu 1... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 240.58 |
| Wed 1... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 232.58 |
| Tue 1... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 224.58 |
| Mon 1... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 216.58 |
| Sun 1... | | | | | | | | | | | | | 208.58 |
| Sat 11... | | | | | | | | | | | | | 208.58 |
| Fri 11/... | | | 2:00 PM | | | | | | FHOL | 8.00 | | 8.00 | 208.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 200.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 192.58 |
| Tue 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 184.58 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 176.58 |
| Sun 1... | | | | | | | | | | | | | 168.58 |
| Sat 11... | | | | | | | | | | | | | 168.58 |
| Fri 11/... | 2:00 PM - 10:30 PM | | 1:25 PM | 10:30... | | | | | | | 8.58 | 8.58 | 168.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 160.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 152.00 |
| Tue 11... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 144.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 136.00 |
| Sun 1... | | | | | | | | | | | | | 128.00 |
| Sat 11... | | | | | | | | | | | | | 128.00 |

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Thu 1... | 2:00 PM - 10:30 PM | IIII | | | | | | | HOL | 8.00 ▲ | | | |
| Wed 1... | | | 12:00 ... | | ⋮ | | | | VAC Pre ... | 8.00 | | 8.00 | 272.58 |
| Tue 11... | | | 12:00 ... | | ⋮ | | | | VAC Pre ... | 8.00 | | 8.00 | 264.58 |
| Mon 1... | | | 12:00 ... | | | | | | VAC Pre ... | 8.00 | | 8.00 | 256.58 |
| Fri 11/... | 2:00 PM - 10:30 PM | | 2:00 PM | 10:30 ... | | | | | Thanksgi... | 8.00 | | 16.00 | 288.58 |
| | | | | | | | | | Day After... | 8.00 | 8.00 | 16.00 | 304.58 |
| Sat 11... | | | | | | | | | | | | | 304.58 |
| Sun 1... | | | | | | | | | | | | | 304.58 |
| Mon 1... | | | 2:00 PM | | | | | | SICK | 8.00 | | 8.00 | 312.58 |
| Tue 12... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30 ... | | | | | | | 8.00 | 8.00 | 320.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | | | | | | | | | 8.00 | 328.58 |
| Thu 1... | | | 2:00 PM | | | | | | VAC | 8.00 | | 8.00 | 336.58 |
| Fri 12/... | | | 2:00 PM | | | | | | VAC | 8.00 | | 8.00 | 344.58 |
| Sat 12... | | | | | | | | | | | | | 344.58 |
| Sun 1... | | | | | | | | | | | | | 344.58 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30 ... | | | | | | | 8.00 | 8.00 | 352.58 |
| Tue 12... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30 .. | | | | | | | 8.00 | 8.00 | 360.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30 ... | | | | | | | 8.00 | 8.00 | 368.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30 ... | ⋮ | | | | | | 8.00 | 8.00 | 376.58 |
| Fri 12/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30 ... | ⋮ | | | | | | 8.00 | 8.00 | 384.58 |
| Sat 12... | | | | | | | | | | | | | 384.58 |

https://gilliglic.prd.mykronos.com/lk-print#/

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Sun 1... | | | | | | | | | | | | | 384.58 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | | 392.58 |
| Tue 12... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 400.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:51 PM | 10:30... | | | | | | | 8.00 | 8.00 | 408.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 416.58 |
| Fri 12/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 424.58 |
| Sat 12... | | | | | | | | | | | | | 424.58 |
| Sun 1... | | | | | | | | | | | | | 424.58 |
| Mon 1... | | | | | | | | | | | | | 424.58 |
| Tue 12... | 2:00 PM - 10:30 PM | | 2:00 PM | 10:30... | ⋮ | | | | Christma... | 8.00 | 8.00 | 16.00 | 440.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 2:00 PM | 10:30... | ⋮ | | | | Christma... | 8.00 | 8.00 | 16.00 | 456.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 464.58 |
| Fri 12/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 472.58 |
| Sat 12... | | | | | ⋮ | | | ⋮ | | | | | 472.58 |
| Sun 1... | | | | | | | | | | | | | 472.58 |
| Mon 1... | | | 2:00 PM | | | | | | VAC | 8.00 | | 8.00 | 480.58 |
| Tue 12... | | | 2:00 PM | | | | | | VAC | 8.00 | | 8.00 | 488.58 |

4/15/2021

**Tolentino, Roland**
061547

Requested by **Heskett, Tracy**

https://gillglic.prd.mykronos.com/lk-print#/

🕐 1/01/2020 - 3/31/2020   🔄 4/15/2021 1:59 PM

**Timecard**

*(handwritten: 2020, circled)*

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wed 1... | 2:00 PM - 10:30 PM | | 2:00 PM | 10:30... | | | | | New Year... | 8.00 | 8.00 | 16.00 | 16.00 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 24.00 |
| Fri 1/03 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 32.00 |
| Sat 1/... | | | | | | | | | | | | | 32.00 |
| Sun 1/... | | | | | | | | | | | | | 32.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 40.00 |
| Tue 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 48.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 56.00 |
| Thu 1/... | 2:00 PM - 10:30 PM | | 1:51 PM | 10:30... | | | | | | | 8.00 | 8.00 | 64.00 |
| Fri 1/10 | 2:00 PM - 10:30 PM | | 1:51 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 72.00 |
| Sat 1/... | | | | | ⋮ | | | ⋮ | | | | | 72.00 |
| Sun 1/... | | | | | ⋮ | | | ⋮ | | | | | 72.00 |
| Mon 1... | 2:00 PM - 10:30 PM | ⌁ | 2:00 PM | | | | | | JURY | 8.00 | | 8.00 | 80.00 |
| Tue 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 88.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 96.00 |
| Thu 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 104.00 |
| Fri 1/17 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 112.00 |

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sat 1/.. | | | | | | | | | | | | | 112.00 |
| Sun 1/.. | | | | | | | | | | | | | 112.00 |
| Mon 1/.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | 8.00 | 8.00 | 120.00 |
| Tue 1/.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | 8.00 | 8.00 | 128.00 |
| Wed 1/.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | 8.00 | 8.00 | 136.00 |
| Thu 1/.. | 2:00 PM - 10:30 PM | | 1:51 PM | 8:30 PM | | | | | WC Paid.. | 2.00 | 6.00 | | 144.00 |
| Fri 1/24 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 152.00 |
| Sat 1/.. | | | | | ⋮ | | | ⋮ | | | | | 152.00 |
| Sun 1/.. | | | | | ⋮ | | | ⋮ | | | | | 152.00 |
| Mon 1/.. | | | 12:00.. | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 160.00 |
| Tue 1/.. | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 168.00 |
| Wed 1/.. | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 176.00 |
| Thu 1/.. | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 184.00 |
| Fri 1/31 | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 192.00 |
| Sat 2/.. | | | | | | | | | | | | | 192.00 |
| Sun 2/.. | | | | | | | | | | | | | 192.00 |
| Mon 2.. | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 200.00 |
| Tue 2/.. | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 208.00 |
| Wed 2.. | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 216.00 |
| Thu 2/.. | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 224.00 |
| Fri 2/07 | | | 12:00.. | | | | | | WC | 8.00 | | 8.00 | 232.00 |
| Sat 2/.. | | | | | | | | | | | | | 232.00 |

D00415

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Sun 2/... | | | | | | | | | | | | | 232.00 |
| Mon 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 240.00 |
| Tue 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 248.00 |
| Wed 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 256.00 |
| Thu 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 264.00 |
| Fri 2/14 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 272.00 |
| Sat 2/... | | | | | | | | | | | | | 272.00 |
| Sun 2/... | | | | | | | | | | | | | 272.00 |
| Mon 2/... | | | 2:00 PM | | | | | | HOL | -8.00 | | | |
| | | | | | | | | | President... | 8.00 | | 8.00 | 280.00 |
| | | | | | | | | | | | | | |
| Tue 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 288.00 |
| Wed 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 296.00 |
| Thu 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 304.00 |
| Fri 2/21 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 312.00 |
| Sat 2/... | | | | | | | | | | | | | 312.00 |
| Sun 2/... | | | | | | | | | | | | | 312.00 |
| Mon 2/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 320.00 |
| Tue 2/... | | | 2:00 PM | | ⋮ | | | | WC | 8.00 | | 8.00 | 328.00 |
| Wed 2/... | | | 2:00 PM | | ⋮ | | | | WC | 8.00 | | 8.00 | 336.00 |
| Thu 2/... | | | 2:00 PM | | ⋮ | | | | WC | 8.00 | | 8.00 | 344.00 |
| Fri 2/28 | | | 2:00 PM | | ⋮ | | | | WC | 8.00 | | 8.00 | 352.00 |
| Sat 2/... | | | | | | | | | | | | | 352.00 |

4/15/2021

https://gilligllc.prd.mykronos.com/tk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sun 3/.. | | | | | | | | | | | | | 352.00 |
| Mon 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 360.00 |
| Tue 3/.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 368.00 |
| Wed 3.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 376.00 |
| Thu 3/.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 384.00 |
| Fri 3/06 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 392.00 |
| Sat 3/.. | | | | | | | | | | | | | 392.00 |
| Sun 3/.. | | | | | | | | | | | | | 392.00 |
| Mon 3.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 400.00 |
| Tue 3/.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 408.00 |
| Wed 3.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 416.00 |
| Thu 3/.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 424.00 |
| Fri 3/13 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 432.00 |
| Sat 3/.. | | | | | ⋮ | | | ⋮ | | | | | 432.00 |
| Sun 3/.. | | | | | ⋮ | | | ⋮ | | | | | 432.00 |
| Mon 3.. | | | 2:00 PM | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 440.00 |
| Tue 3/.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 448.00 |
| Wed 3.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 456.00 |
| Thu 3/.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 464.00 |
| Fri 3/20 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 472.00 |
| Sat 3/.. | | | | | | | | | | | | | 472.00 |
| Sun 3/.. | | | | | | | | | | | | | 472.00 |
| Mon 3.. | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 480.00 |

D00417

4/5

https://gilligllc.prd.mykronos.com/lk-print/#/

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tue 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 488.00 |
| Wed 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 496.00 |
| Thu 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 504.00 |
| Fri 3/27 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 512.00 |
| Sat 3/... | | | | | | | | | | | | 8.00 | 512.00 |
| Sun 3/... | | | | | | | | | | | | | 512.00 |
| Mon 3... | | | 5:00 AM | | | | | | COVID | 8.00 | | 8.00 | 520.00 |
| Tue 3/... | | | 5:00 AM | | | | | | COVID | 8.00 | | 8.00 | 528.00 |

https://gilligllc.prd.mykronos.com/lk-print/#/

D00418

4/15/2021

**Tolentino, Roland**
061547

Requested by **Heslett, Tracy**

https://gilliglic.prd.mykronos.com/lk-print/#/

🕐 4/01/2020 - 6/30/2020    🔄 4/15/2021 1:59 PM

## Timecard

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wed 4/.. | 2020 | | 5:00 AM | | | | | | COVID | 8.00 | | 8.00 | 8.00 |
| Thu 4/.. | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 16.00 |
| Fri 4/03 | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 24.00 |
| Sat 4/.. | | | | | | | | | | | | | 24.00 |
| Sun 4/.. | | | | | | | | | | | | | 24.00 |
| Mon 4/.. | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 32.00 |
| Tue 4/.. | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 40.00 |
| Wed 4/.. | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 48.00 |
| Thu 4/.. | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 56.00 |
| Fri 4/10 | | | 5:00 AM | | ⋮ | | | ⋮ | COVID | 8.00 ◢ | | 8.00 | 64.00 |
| Sat 4/.. | | | | | ⋮ | | | ⋮ | | | | | 64.00 |
| Sun 4/.. | | | | | ⋮ | | | ⋮ | | | | | 64.00 |
| Mon 4/.. | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 72.00 |
| Tue 4/.. | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 80.00 |
| Wed 4/.. | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 88.00 |
| Thu 4/.. | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 96.00 |
| Fri 4/17 | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 104.00 |
| Sat 4/.. | | | | | | | | | | | | | 104.00 |
| Sun 4/.. | | | | | | | | | | | | | 104.00 |

D00419

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 4/... | | | | | | | | | | | | | 104.00 |
| Tue 4/... | | | | | | | | | | | | | 104.00 |
| Wed 4/... | | | | | | | | | | | | | 104.00 |
| Thu 4/... | | | | | | | | | | | | | 104.00 |
| Fri 4/24 | | | | | | | | | VAC Pd 0... | 16.00 | | 16.00 | 120.00 |
| Sat 4/... | | | | | | | | | | | | | 120.00 |
| Sun 4/... | | | | | | | | | | | | | 120.00 |
| Mon 4/... | | | | | | | | | | | | | 120.00 |
| Tue 4/... | | | | | :: | | | :: | | | | | 120.00 |
| Wed 4/... | | | | | :: | | | :: | | | | | 120.00 |
| Thu 4/... | | | | | :: | | | :: | | | | | 120.00 |
| Fri 5/01 | | | | | | | | | | | | | 120.00 |
| Sat 5/... | | | | | | | | | | | | | 120.00 |
| Sun 5/... | | | | | | | | | | | | | 120.00 |
| Mon 5... | | | | | | | | | | | | | 120.00 |
| Tue 5/... | | | | | | | | | | | | | 120.00 |
| Wed 5... | | | | | | | | | | | | | 120.00 |
| Thu 5/... | | | | | | | | | | | | | 120.00 |
| Fri 5/08 | | | | | | | | | | | | | 120.00 |
| Sat 5/... | | | | | | | | | | | | | 120.00 |
| Sun 5/... | | | | | | | | | | | | | 120.00 |
| Mon 5... | 2:00 PM - 10:30 PM | | 1:57 PM | 10:30... | | | | | | | 8.00 | 8.00 | 128.00 |
| Tue 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 136.00 |

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wed 5... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 144.00 |
| Thu 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 152.00 |
| Fri 5/15 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ... | | | | | | 8.00 | 8.00 | 160.00 |
| Sat 5/... | | | | | ... | | | | | | | | 160.00 |
| Sun 5/... | | | | | ... | | | | | | | | 160.00 |
| Mon 5... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 168.00 |
| Tue 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 176.00 |
| Wed 5... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 184.00 |
| Thu 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 192.00 |
| Fri 5/22 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 200.00 |
| Sat 5/... | | | | | | | | | | | | | 200.00 |
| Sun 5/... | | | | | | | | | | | | | 200.00 |
| Mon 5... | 2:00 PM - 10:30 PM | |||| | | | | | Memorial... | 8.00 | | 8.00 | 208.00 |
| Tue 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 216.00 |
| Wed 5... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 224.00 |
| Thu 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 232.00 |
| Fri 5/29 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 240.00 |
| Sat 5/... | | | | | | | | ... | | | | | 240.00 |
| Sun 5/... | | | | | | | | ... | | | | | 240.00 |
| Mon 6... | 2:00 PM - 10:30 PM | ■■ | 2:00 PM | | ... | | | ... | SICK | 8.00 | | 8.00 | 248.00 |
| Tue 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 256.00 |

https://glliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Wed 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 264.00 |
| Thu 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 272.00 |
| Fri 6/005 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 280.00 |
| Sat 6/... | | | | | | | | | | | | | 280.00 |
| Sun 6/... | | | | | | | | | | | | | 280.00 |
| Mon 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 288.00 |
| Tue 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 296.00 |
| Wed 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 304.00 |
| Thu 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 312.00 |
| Fri 6/12 | 2:00 PM - 10:30 PM | ▬ | 2:00 PM | | | | | | SUSPE... | 8.00 | | | 320.00 |
| Sat 6/... | | | | | | | | | | | | | 320.00 |
| Sun 6/... | | | | | | | | | | | | | 320.00 |
| Mon 6... | 2:00 PM - 10:30 PM | ▬ | 2:00 PM | | ... | | | ... | SUSPE... | 8.00 | | | 328.00 |
| Tue 6/... | | | 2:00 PM | 10:30... | ... | | | ... | | | 8.00 | 8.00 | 336.00 |
| Wed 6... | | | | | | | | | | | | | 336.00 |
| Thu 6/... | | | | | | | | | | | | | 336.00 |
| Fri 6/19 | | | | | | | | | | | | | 336.00 |
| Sat 6/... | | | | | | | | | | | | | 336.00 |
| Sun 6/... | | | | | | | | | | | | | 336.00 |
| Mon 6... | | | | | | | | | | | | | 336.00 |
| Tue 6/... | | | | | | | | | | | | | 336.00 |

4/15/2021

https://gilligilic.prd.mykronos.com/lk-print/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|----|----|----------|----|----|----------|----------|--------|-------|-------|--------|
| Wed 6... | | | | | | | | | | | | | 336.00 |
| Thu 6/... | | | | | | | | | | | | | 336.00 |
| Fri 6/26 | | | | | | | | | | | | | 336.00 |
| Sat 6/... | | | | | | | | | | | | | 336.00 |
| Sun 6/... | | | | | | | | | | | | | 336.00 |
| Mon 6... | | | | | | | | | | | | | 336.00 |
| Tue 6/... | | | | | | | | | | | | | 336.00 |

https://gilligilic.prd.mykronos.com/lk-print/

D00423

**PROOF OF SERVICE**

STATE OF CALIFORNIA           )
                                   ) ss

COUNTY OF LOS ANGELES     )

        I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On April 19, 2023, I served the foregoing document described as:

**DECLARATION OF JACQUELYNE VANEMMERIK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT GILLIG, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE***

X__ by placing ___ the original  X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

<div align="center">

WILLIAM FAULKNER (83385)
MICHAEL WARREN (223642)
**McMANIS FAULKNER**
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
Email: mwarren@mcmanislaw.com

CRAIG MARTIN (Pro Hac Vice)
cmartin@willkie.com
MATT BASIL (Pro Hac Vice)
mbasil@willkie.com
**WILLKIE FARR & GALLAGHER, LLP**
300 North LaSalle Street, Suite 5000
Chicago, Illinois 60654
Telephone: (312) 728-9000
Facsimile: (312) 728-9199

*Attorneys for Defendant GILLIG, LLC*

</div>

[✓]  **BY U.S. MAIL**:  I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_X__  (State)        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 19, 2023, at Los Angeles, California.

<div align="center">

1
PROOF OF SERVICE

</div>

1

2    _____            _____
            Janelle Jickain                                Signature
3                Name

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

# EXHIBIT 59

Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Jacquelyne VanEmmerik (SBN 339338)
**MOON & YANG, APC**
1055 West Seventh Street, Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
Email: kane.moon@moonyanglaw.com
Email: allen.feghali@moonyanglaw.com
Email: jacquelyne.vanemmerik@moonyanglaw.com

*Attorneys for Plaintiff,*
*Roland Tolentino*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**04/24/2023 at 06:33:51 PM**
By: Anita Dhir,
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| ROLAND TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>  vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>   *Defendants*. | Case No.: RG20073930<br><br>[Honorable Brad Seligman, Department 23]<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: May 30, 2023<br>Time: 9:15 a.m.<br>Dept.: 23<br><br>Reservation ID: 296057941352<br><br>Complaint Filed: September 16, 2020<br>Trial Date: Not Set |

**TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 30, 2023, at 9:15 a.m., in Department 23 of the Superior Court of the State of California for the County of Alameda, located at 1221 Oak Streat, Oakland, California 94612, pursuant to California Code of Civil Procedure section 382, Plaintiff Roland Tolentino will move this Court for an Order:

1. That certifies the Class proposed herein;

2. That appoints Plaintiff Roland Tolentino as representative of the Class proposed herein, or later proposed and approved by the Court, and any other subclass the Court may devise;

3. That appoints Kane Moon, Allen Feghali, and Jacquelyne VanEmmerik of Moon & Yang, APC as Class Counsel; and,

4. That issues such other Orders as necessary to effectuate the certification Order of the Court.

The Motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Kane Moon and Exhibits filed therewith, the Declaration of Lena Arai and Exhibits filed therewith, the pleadings and records on file in this Action, and such additional argument and evidence presented at the Hearing on the Motion.

Respectfully submitted,

Dated: April 24, 2023                    MOON & YANG, APC

By:_____
   Kane Moon, Esq.
   Allen Feghali, Esq.
   Jacquelyne VanEmmerik, Esq.

   *Attorneys for Plaintiff,*
   *Roland Tolentino*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... iii

I.    INTRODUCTION ........................................................................................................ 1

II.   APPLICABLE LEGAL STANDARD ......................................................................... 2

III.  RELEVANT PROCEDURAL HISTORY ................................................................... 2

IV.   STATEMEMT OF CLAIMS ....................................................................................... 3

V.    THE PARTIES ............................................................................................................. 3

    A.   Plaintiff Roland Tolentino And The Class ...................................................... 3

    B.   Defendant Gillig, LLC .................................................................................... 2

VI.   STATEMENT OF FACTS ........................................................................................... 4

    A.   Defendant Did Not Remunerate Class Members For All On-The-Clock Hours .......... 4

    B.   Defendant Did Not Incorporate All Non-Discretionary Remuneration When
           Calculating Class Members' Regular Rates of Pay ........................................ 6

    C.   Defendant Regularly Provided Class Members With Noncompliant Meal Periods ..... 8

    D.   Defendant Regularly Provided Class Members With Noncompliant Rest Breaks ..... 11

VI.   DISCUSSION ............................................................................................................. 13

    A.   THE COURT SHOULD CERTIFY THE CLASS BECAUSE IT MEETS ALL
           REQUIREMENTS FOR CERTIFICATION UNDER CALIFORNIA CODE OF
           CIVIL PROCEDURE SECTION 382 ..................................................... 13

          1.   The Class Is Ascertainable ................................................................. 13

          2.   The Class Is Sufficiently Numerous ................................................... 14

          3.   There Is A Well-Defined Community Of Interest .............................. 14

               a)   There Are Predominant Common Questions Of Law Or Fact With
                     Respect To All Causes Of Action ........................................... 14

                    i.   Failure To Pay Minimum And Regular Rate Wages ...................... 15

                    ii.   Failure To Provide Meal Periods. .................................................. 17

                    iii.   Failure To Authorize And Permit Rest Breaks .............................. 18

     iv. Failure To Timely Pay Final Wages At Termination And Other

       Derivative Causes Of Action ........................................................... 18

    b) The Class Representative Has Claims Or Defenses Typical Of The

     Class ................................................................................................... …19

    c) The Class Representative Can Adequately Represent The Class ............. 20

   4. There Are Substantial Benefits From Certification That Render Proceeding As

    A Class Superior To The Alternatives ............................................................... 20

V. CONCLUSION ............................................................................................................ 22

Case No.:  RG20073930       Page ii      *Roland Tolentino v. Gillig, LLC*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**

2

CALIFORNIA DECISIONAL AUTHORITY

3

*Blue Chip Stamps v. Superior Court*, 18 Cal. 3d 381 (1976) ..............................................20, 21

4

*Bowles v. Superior Court*, 44 Cal. 2d 574 (1955)............................................................... 14

5

*Brinker Rest. Corp. v. Super. Ct*., 53 Cal. 4th at 1003, 1022, 1029, 1039........................... 2, 6, 13, 16, 19

6

*Classen v. Weller*, 145 Cal. App. 3d 27 (1983)................................................................... 19

7

*Daar v. Yellow Cab,* 67 Cal.2d at 706 ................................................................................ 11

8

*Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1 (2014) .................................................... 17

9

*Faulkinbury v. Boyd & Associates, Inc*., 216 Cal. App. 4th 220 (2013) ................................... 7

10

*Ferra v. Loews Hollywood Hotel, LLC, 11 Cal.5th 858* (2021) ........................................... 8

11

*Fireside Bank v. Superior Court*, 40 Cal. 4th 1069 (2007) .............................................2, 19

12

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) .........................................................20, 21

13

*Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524 (2008) .................................... 19

14

*Hebbard v. Colgrove*, 28 Cal. App. 3d 1017 (1972)............................................................ 14

15

*Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908 (2001) ...............................13, 14

16

*Jaimez v. Daiohs USA, Inc.* 181 Cal. App. 4th 1286 (2010)...............................................14, 19

17

*Linder v. Thrifty Oil Co.,* 23 Cal. 4th 429 (2000)..........................................................2, 14, 20

18

*Marin v. Costco Wholesale Corp., 169 Cal.App.4th 804, 807 (2008)*................................... 8

19

*McGhee v. Bank of America*, 60 Cal. App. 3d 442 (1976)...................................................20

20

*Murphy v. Kenneth Cole Productions, Inc., 40 Cal.4th 1094 (Cal., 2007)*................................ 8

21

*Noel v. Thrifty Payless, Inc*., 7 Cal. 5th 955, 980 (2019)..................................................... 13

22

*Reyes v. Los Angeles County Bd. of Supervisors*, 196 Cal. App. 3d 1263 (1979) ................... 14

23

*Richmond v. Dart Indus. Inc.*, 29 Cal. 3d 462 (1981)......................................................... 14

24

*Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)................................2, 19

25

*Seastrom v. Neways, Inc.*, 149 Cal. App. 4th 1496 (2007)................................................... 19

26

27

FEDERAL DECISIONAL AUTHORITY

28

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)............................................................. 2

STATUTES

Business and Professions Code §§ 17200, et. seq.................................................. 1, 2, 3, 15, 18

Code of Civil Procedure § 382 ............................................................................13, 14

Labor Code §§ 201-203 ............................................................................3, 18

Labor Code §§ 226, et. seq. ................................................................ 3, 15, 16, 17, 18

Labor Code § 512 ............................................................................3, 17

Labor Code sections §§ 1194, et. seq. ................................................................2, 16

Labor Code §§ 2698, et. seq ............................................................................1, 15

1       MEMORANDUM OF POINTS AND AUTHORITIES

2   I.      INTRODUCTION

3           The instant action is a wage and hour class and representative action filed by Plaintiff Roland

4   Tolentino ("Plaintiff") on behalf of himself and all hourly-paid or non-exempt persons employed in

5   California by Defendant Gillig, LLC ("Defendant") on or after September 16, 2016. In the operative

6   second amended class and representative action complaint, Plaintiff alleges that Defendant: failed to pay

7   minimum wages; failed to pay regular rate wages; failed to provide meal periods; failed to authorize and

8   permit rest breaks; and violated derivative obligations arising under the California Labor Code ("*Labor*

9   *Code*") and California Business and Professions Code ("*Business and Professions Code*").

10          These allegations arose as a result of the policies and practices Defendant implemented and

11  engaged in throughout the Class Period: policies and practices that are antithetical to California labor law

12  and precedent, and that affected the Class on a collective and uniform basis. These policies and practices

13  include shaving time from time records, resulting in a systematic underpayment of minimum wages to

14  Class Members; not incorporating all non-discretionary remunerations into regular rate wage calculations,

15  resulting in a systematic underpayment of regular rate wages to Class Members; requiring Class Members

16  to return to their work stations before the end of their respective meal periods, resulting in consistently

17  short and interrupted meal periods; and requiring Class Members to return to their work stations before

18  the end of their respective rest breaks, resulting in consistently short and interrupted rest breaks.

19          These policies and practices form the basis of the instant Motion, and in particular, the fact that the

20  Class shares predominant common questions of law and fact; that the Class is ascertainable and

21  sufficiently numerous; that Plaintiff alleges claims and defenses typical of the Class; that Plaintiff and his

22  Counsel of Record have no conflict of interest with the Class; and that proceeding as a class action is

23  superior to separate, individual actions brought by hourly-paid workers with overlapping wage and hour

24  claims. Plaintiff moves the Court, in light of these conditions, to deem to instant action appropriate for

25  class treatment and to certify the following Class: "**All persons employed by Defendant Gillig, LLC in**

26  **an hourly-paid or non-exempt position in California at any time on or after September 16, 2016.**"

27  [Plaintiff reserves the right to request certification of any subclasses as are necessary to manage this Class,

28  including, but not limited to, penalty subclasses limited in time by all applicable statute of limitations.]

1    II.    APPLICABLE LEGAL STANDARD

2         The propriety of a class action turns not on whether the plaintiff will prevail on the merits, but

3    whether the requirements of class certification are met. *See Sav-On Drug Stores, Inc. v. Superior Court*,

4    34 Cal.4th 319, 326 (2004); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Brinker v.*

5    *Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1023 (2012), citing *Fireside Bank v. Superior*

6    *Court*, 40 Cal.4th 1069, 1083-1086 (2007), and *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 439-440 (2000)

7    ("A class certification motion is not a license for a free-floating inquiry into the validity of the

8    complaint's allegations; rather, resolution of disputes over the merits of a case generally must be

9    postponed until after class certification has been decided, with the court assuming for purposes of the

10   certification motion that any claims have merit.") However, "issues affecting the merits of a case may be

11   enmeshed with class action requirements." *Id.*, at 443. "The rule is that a court may consider[] how

12   various claims and defenses relate and may affect the court of the litigation" even though such

13   "considerations...overlap the case's merits." *Fireside Bank*, 40 Cal.4th at 1092.

14   III.    RELEVANT PROCEDURAL HISTORY

15        Plaintiff filed a class action complaint against Defendant in the Superior Court of the State of

16   California for the County of Alameda on September 16, 2020. The complaint alleged eight causes of

17   action under the *Labor Code* and *Business and Professions Code* on behalf of Plaintiff and all hourly-

18   paid or non-exempt persons employed in California by Defendant from September 26, 2016 to the date

19   the Class Notice is sent. Defendant removed the matter to the United States District Court for the

20   Northern District of California on October 22, 2020. Defendant then filed a motion to dismiss on

21   December 4, 2020, which contended that all causes of action were preempted by Section 301 of the

22   Labor Relations Management Act and/or precluded by *Labor Code* sections 204(c) or 514. The Court

23   granted the motion in part and denied the motion in part, holding that *Labor Code* sections 204(c) and

24   514 did in fact preclude the Class from pursuing the overtime and timely wages causes of action, and all

25   derivative claims thereof, but that the remaining causes of action were not preempted and to be remanded

26   to the Superior Court. Following remand, Plaintiff filed a first, then a second amended class and

27   representative action complaint, the latter of which is operative at this time.

28

1    IV.    STATEMENT OF CLAIMS

2        The operative second amended class and representative action complaint alleges: (1) Failure to

3    Pay Minimum and Regular Rate Wages (*Labor Code* sections 204, 1194, 1194.2, 1197, and 1771); (2)

4    Failure to Provide Meal Periods (*Labor Code* sections 204, 223, 226.7, 512, and 1198); (3) Failure to

5    Authorize and Permit Rest Breaks (*Labor Code* sections 204, 223, 226.7, and 1198); (4) Failure to

6    Timely Pay Final Wages at Termination (*Labor Code* sections 201-203); (5) Failure to Provide Accurate

7    Itemized Wage Statements (*Labor Code* section 226(a)); (6) Unfair Business Practices (*Business and*

8    *Professions Code* sections 17200, et. seq.); and (7) Civil Penalties (*Labor Code* sections 2698, et. seq.).

9    V.    THE PARTIES

10        A.    Plaintiff Roland Tolentino And The Class

11        Plaintiff Roland Tolentino worked for Defendant Gillig, LLC as a Maintenance Worker in

12    California from approximately May 2002 to June 2020. Declaration of Kane Moon ("Moon Decl."),

13    Exhibit ("Exh.") 6. Plaintiff was an hourly-paid, non-exempt employee throughout the duration of his

14    employment with Defendant. *Id.*

15        The Class is defined as: All persons employed by Defendant Gillig, LLC in an hourly-paid or

16    non-exempt position in California at any time on or after September 16, 2016 ("Class Members"). The

17    Class is comprised of union and nonunion employees; a vast majority of the Class, including Plaintiff,

18    are union employees. Moon Decl., Exh. 1, Deposition of Person Most Qualified, Marla Loar ("Loar

19    Depo."), at 71:18-72:5. There are an estimated 910 Class Members as of April 30, 2021. *Id.*, Exh. 2.

20        B.    Defendant Gillig, LLC

21        Defendant Gillig, LLC is a designer, manufacturer, and seller of transit buses in the United

22    States. Loar Depo., at 78:7-16. Defendant sells buses to customers in each state. *Id.* Defendant has

23    two offices in the United States: the Core Facility located in Livermore, California, and the Parts

24    Warehouse located in Hayward, California. *Id.*, at 18:19-19:4, 20:18-21:3; 26:16-17. Class

25    Members work at each location. *Id.*, at 21:11-13. However, the vast majority of the Class work at

26    the Core Facility located in Livermore, California. *Id.*, at 21:4-10. The Core Facility is comprised

27    of an office building and a production floor. *Id.*, at 31:16-32:3. The production floor is comprised

28    of roughly twenty-five to thirty subdepartments. *Id.*, at 32:9-14.

Despite their locational distinction, the Core Facility and Parts Warehouse have the same or similar hours of operation, with at least one Class Member on duty at each location during all hours of operation. Loar Depo., at 20:10-12, 21:21-22:2. Class Members engage in the same or similar work at the Core Facility and Parts Warehouse. *Id*., at 20:4-9; 25:5-23. This work includes, but is not limited to, production- and warehouse-related duties, such as receiving packages, packing packages, managing inventory, and driving forklifts. *Id.*

VI.    STATEMENT OF FACTS

A.    Defendant Did Not Remunerate Class Members For All On-The-Clock Hours

Defendant admits in sworn deposition testimony that it did not remunerate Class Members for all on-the-clock hours. Defendant requires all Class Members to clock in and clock out of each shift, irrespective of the location at which the Class Member works. *Id*., at 28:17-23. Defendant has maintained this requirement and used the same timekeeping system, Kronos, since September 16, 2016. *Id*., at 29:10-20, 11:11-14. All Class Members who are union employees work in the Production Department. *Id*., at 70:13-21. About ten to fifteen percent of Class Members who are nonunion employees also work in the Production Department. *Id*., at 71:9-17.

Class Members who work in the Production Department make up a majority of the Class: in the high ninetieth percentile. *Id*., at 71:18-72:5. All Class Members who work in the Production Department clock in using a magnetic time card, which the employee swipes at the Kronos timekeeping machine located within his or her department. *Id*., at 32:20-24. When an employee swipes the magnetic time card, the Kronos timekeeping machine creates a time record, or a record of the hour and minute on which the card was swiped. *Id*., at 36:7-21. Such time record is used to calculate the pay of the Class Members who work in the Production Department. *Id.* at 37:3-8.

However, its use is limited: where a Class Member has clocked in *after* his or her scheduled shift time, that Class Member is paid according to his or her **time record** that day. *Id*., at 72:12-22. In contrast, where a Class Member has clocked in *before* his or her scheduled shift time, that Class Member is paid according to his or her **scheduled shift time** that day. *Id*., at 73:14-74:5, 11:15-19, Exhibit ("Exh.") A. Defendant therefore disregards its own time records and pays Class Members based on shaved time:

9      Q  Okay. So I have just a few more questions

10   related to Exhibit A, and then we'll move on from it

11   after that.

12        So just so I'm clear, is it fair and

13   accurate to say that Gillig does not pay nonexempt

14   hourly employees anything for the time between their

15   clock-in time[,] so the in time indicated on the time

16   sheet[,] and the scheduled time[,] indicated also on the

17   time sheet?

18   MR. WARREN: Objection; lacks foundation,

19   misstates testimony.

20   THE DEPONENT: I'll go back to in this

21   situation, the 1:50 time to 2:00 o'clock is, yes,

22   not paid time because it's not work time. We pay

23   them for worked time. Loar Depo., at 50:8-23.

This testimony is consistent with Plaintiff's data expert's analysis of the Kronos Time Data, which was produced by Defendant during formal discovery: From February 2019 through December 2022, Plaintiff's data expert "was able to extract 45,673 records with 149 distinct employee IDs" and to determine that "all 149 employees (100%) have rounded time, based on the difference between an employee's total shift hours punched (the amounts in the "In" and "Out" columns) and "Shift" hours. Out of 45,673 shifts[,] 45,619 (99.88%) have rounded time of between one and 69 minutes." Declaration of Lena Arai, PhD. ("Arai Decl."), ¶¶ 5, 10, 21. Extrapolated to the Class, these findings and Ms. Loar's testimony reveal a distinct time shaving policy, resulting in significant underpayment to the entire Class.

Defendant attempts to rationalize this underpayment with two inconsistent arguments: first, as indicated in the above testimony, it contends the time shaved was not time worked, and thus, unqualified for remuneration under the *Labor Code*; and second, as advocated in Defendant's Motion for Judgment on the Pleadings, it contends the time shaved was overtime, and thus, outside the scope of the minimum wage cause of action alleged in the operative second amended class and representative action complaint.

Both arguments are deficient, as well as inapt for consideration at this procedural juncture: Foremost, Plaintiff and other Class Members attest to the fact that the time at issue was time spent under the control of Defendant, and therefore, qualified for remuneration under the *Labor Code*. Moon Decl., Exh. 3-5, ¶ 4 (Class Members declaring that they were permitted "to clock in and begin working up to 10 minutes before [their] scheduled shift, and no one at Gillig prevented [them] from working before [their] scheduled shift. However, [they were] getting paid based on [their] scheduled shift rather than the actual time [they] worked.")

Further, a determination of whether the time at issue was time worked and/or overtime under California law is a legal question concerning the minimum wages cause of action, and therefore, does not bear on whether the Class is certifiable, except to the extent it is a common question of law and fact shared amongst the Class. *See Brinker Restaurant Corp.*, 53 Cal.4th 1004 (holding that a trial court need not decide legal elements of a claim before deciding class certification).

Here, the undisputed facts demonstrate that Defendant regularly failed to pay the entire Class for all on-the-clock time throughout the duration of the putative Class Period, on a uniform, systematic, and indiscriminate basis, i.e., without variation among differing shifts, positions and/or department, and assigned work location, as a result of its violative time shaving policy and practice.

B.    Defendant Did Not Incorporate All Non-Discretionary Remuneration When Calculating Class Members' Regular Rates Of Pay

Defendant did not incorporate all non-discretionary remuneration when calculating Class Members' regular rates of pay. Defendant utilized an attendance incentive program in which it awarded all Class Members who are union employees a $2,000.00 annual bonus for perfect attendance ("Perfect Attendance Award"):

15  Q  Are you aware of whether Gillig gives any

16  bonuses to nonexempt hourly paid employees?

17  A  We provide a bonus for union nonexempt

18  employees.· It's a perfect attendance award is

19  actually what we call it. Loar Depo., at 58:14-19.

1    Defendant defines perfect attendance as timely attendance on all planned days. Loar Depo., at

2  58:14-59:22. Defendant defines planned days as scheduled work days. *Id*. Planned days therefore

3  exclude scheduled vacation days. *Id*. Based on these definitions, the Perfect Attendance Award is non-

4  discretionary, as it is awarded through satisfaction of objective criteria, independent of discretionary

5  considerations, and based on incentive. *See e.g., Faulkinbury v. Boyd & Associates, Inc.*, (2010) 112

6  Cal.Rptr.3d 72 (2010). Indeed, even disqualification from the Perfect Attendance Award is based on

7  objective criteria:

8        7  Q   Can you provide an example of an exception [to the Perfect Attendance Award]

9        8  just so I get a sense of...

10        9  A   Someone is out sick. Calls in sick.

11       10  Q   If somebody's out sick, for instance, is

12       11  there a process -- like, would they need to submit a

13       12  doctor's note of some sort in order to preserve

14       13  their eligibility for the bonus? Like, are there

15       14  additional actions that the employee needs to take

16       15  in order to...

17       16  A   No. If you're out sick, you -- you're

18       17  excluded from the program. Loar Depo., at 59:7-17.

19    Despite being designated as the Person Most Qualified to testify on Defendant's behalf as to the

20  calculation and payment of compensation, including, but not limited to, meal period premiums, Ms. Loar

21  did not know whether Defendant incorporates the Perfect Attendance Award into putative Class

22  Members' respective regular rates of pay:

23       12  Q   Does Gillig incorporate the perfect

24       13  attendance bonus into its employees' respective

25       14  regular rates of pay?

26       15  A   I would need to research that answer. I

27       16  don't know that. Loar Depo., at 60:12-16.

28

1      Even so, it is evident from the time and corresponding payroll records of the Class, which were

2   produced by Defendant during formal discovery, that while Defendant awarded Class Members

3   incentive awards, including annual Perfect Attendance Awards, it did not incorporate such incentive

4   awards into those Class Members' respective regular rates of pay for purposes of paying their meal

5   period premium wages. Arai Decl., ¶¶ 47-48. Indeed, as detailed below, the same time and payroll

6   records indicate that Defendant never paid meal period premiums as a result of its auto-deduction policy.

7   *Id.*, at ¶ 34; *see generally, Marin v. Costco Wholesale Corp.,* 169 Cal.App.4th 804, 807 (2008),

8   quoting 29 C.F.R. 778.209(a) ("When the amount of the bonus can be ascertained, it must be apportioned

9   back over the workweeks of the period during which it may be said to have been earned."); *see also*

10   *Murphy v. Kenneth Cole Productions, Inc.,* 40 Cal.4th 1094, 1102–03 (Cal., 2007). *Ferra v. Loews*

11   *Hollywood Hotel, LLC,* 11 Cal.5th 858, 280 (2021). For this reason, is undeniable that Defendant failed

12   to pay due meal premium wages at the proper regular rate.

13      Here, the undisputed facts demonstrate that Defendant regularly failed to incorporate all non-

14   discretionary remuneration when calculating Class Members' regular rates of pay on a uniform,

15   systematic, and indiscriminate basis, i.e., without variation among differing shifts, positions and/or

16   department, and assigned work location, as a result of its violative calculation practice.

17      C.      Defendant Regularly Provided Class Members With Noncompliant Meal Periods

18      Defendant regularly provided Class Members with noncompliant meal periods, i.e., short,

19   interrupted, and/or missed meal periods. Established above: Defendant has used the same timekeeping

20   system, Kronos, since September 16, 2016; all Class Members who are union employees work in the

21   Production Department; about ten to fifteen percent of Class Members who are nonunion employees also

22   work in the Production Department; Class Members who work in the Production Department make up a

23   vast majority of the Class: in the high ninetieth percentile; and all Class Members who work in the

24   Production Department clock in using a magnetic time card, which the employee swipes at the Kronos

25   timekeeping machine located within his or her department. *See citations above.* All Class Members who

26   work in the Production Department ("production line Class Members"), i.e., who use the magnetic time

27   card to clock in, irrespective of their scheduled shift time, and without deviation, did not clock in and out

28   for lunch throughout the duration of the Class Period:

2    Q    Do you know what this document is?

3    A    Yes. It looks like a report from our

4    Kronos system.

5    Q    What kind of report?

6    A    A time card report.

7    Q    Does this time card report look like a

8    report that would come from a magnetic log in or

9    computer log in or both?

10    A    Magnetic log in.

11    Q    How does it differ from a report that might

12    be produced from a computer log in?

13    A    A computer log in will have the meal period

14    in and out, if applicable.

15    Q    Is it fair and accurate to say that this

16    time report is typical of those produced from an

17    employee clocking in and out using the magnetic log

18    in?

19    A    That's correct. Loar Depo., at 38:2-19; *see also* Loar Depo., at 43:17-18.

Instead, all production line Class Members are governed by a bell system. *Id.*, at 61:1-3. The bell system is comprised of a first bell, which rings at the start of each meal period; a second bell, which rings precisely twenty-five minutes after the first bell; and a final bell, which rings precisely thirty-minutes after the first bell. Moon Decl., Exh. 3-4, ¶ 5. The first bell signifies the start of the meal period, and the final bell signifies both the end of the meal period and the time at which production line Class Members were expected to restart work:

7    Q    Okay. Thank you.

8    Then just some clarifying questions about

9    the bell system. So you indicated that there is a

10    bell that rings at the start and end of each meal

11   and rest period; is that accurate -- with respect to

12· ·union workers in production?

13   A   Yes, there's a bell that rings at the start

14   of a meal period and an end of the meal period.

15   Q   Okay. And are employees expected

16   to -- those same employees that were just defined,

17   were they expected to be back at their workstations

18   by the time the bell rang, or would the bell ring

19   and then employees would be alerted as to needing to

20   get back to work?

21   A   The ringing of the end of the meal period

22   bell is an indication to begin work again just like

23   the start of a shift bell is to indicate starting

24   work. The end of the meal period bell is to

25   indicate to return to work --

 1   Q   Okay.

 2   A   -- start working again.

Loar Depo., at 74:6-75:2.

Though not mentioned in this testimony, the second bell signifies that employees have exactly five minutes to return to their work stations. Moon Decl., Exh. 3-4, ¶ 5. It is this bell, and the general, de facto circumstances generated by the bell system, which underlie the fact that production line Class Members routinely received short and interrupted meal periods. Indeed, such Class Members would end their meal period once the second bell rang in order to get back to their work stations before the final bell rang and the production line restarted. Plaintiff and other Class Members testify to this reality. *Id.* (Production line Class Members declaring that "[they were] expected to be at [their] station[s] when the third bell rang because the production line would start as soon as that bell rang. Because [they were] not able to leave [their] station until the first bell rang and had to return before the third bell rang, [their] meal breaks were routinely less than 30 minutes."); *See also* Moon Decl., Exh. 6, ¶ 9-10.

1      This testimony is consistent with Plaintiff's data expert's analysis of the Kronos Time Data,

2   which was produced by Defendant in formal discovery: From February 2019 through December 2022,

3   Plaintiff's data expert "identified 43,091 (94.35%) shifts with a difference of exactly 30 minutes (0.5

4   hours) between the "Shift" hours and the "Scheduled" hours, indicating meal periods are auto-deducted.

5   Furthermore, 147 out of 149 employees (98.66%) have at least one auto-deducted meal period." Arai

6   Decl., ¶ 9. Because only production line Class Members had their meal periods auto-deducted, it can be

7   deduced from this data that roughly 94.35% of meal periods were short or interrupted as a result of

8   Defendant's bell system, as all production line Class Members were subject to Defendant's violative

9   meal period policy and practice that required employees to restart their work by the third meal period

10   bell. It can also be deduced that, because meal periods were automatically deducted from their time

11   records, such Class Members were consistently not paid meal period premiums for these noncompliant

12   meal periods.

13      Here, the undisputed facts demonstrate that Defendant regularly required production line Class

14   Members, who make up over ninety percent of the putative Class, to return to their work stations before

15   the end of their thirty-minute lunch period, so that they could restart work precisely at the ring of the

16   third meal period bell, and that this policy and practice affected such Class Members on a uniform,

17   systematic, and indiscriminate basis, i.e., without variation among differing shifts, positions and/or

18   department, and assigned work location.

19      D.      Defendant Regularly Provided Class Members With Noncompliant Rest Breaks

20      Defendant regularly provided Class Members with noncompliant rest breaks, i.e., short,

21   interrupted, and/or missed rest breaks. Defendant used the same bell system for rest breaks as it did for

22   meal breaks:

23      8   Q   Is the same bell system used for union

24      9   employees breaking for lunch also used for those

25      10   same employees breaking for their rest period?

26      11   A   Yes, the bell system is used for the rest

27      12   periods as well.

28   Loar Depo., at 67:8-12.

1    Though rest breaks and meal periods differ with respect to the times taken and length of time,

2    i.e., ten minutes, rather than thirty minutes, the bell system similarly resulted in production line Class

3    Members routinely receiving short and interrupted rest breaks, as such Class Members were also

4    required to be back at their work stations by the second and final bell. Moon Decl., Exh. 3-5 ¶ 6

5    (Production line Class Members declaring that "[d]uring [their] employment [they] took [their] rest

6    breaks based on a bell schedule. There was only one bell to indicate when a rest break started and a

7    second bell, exactly 10 minutes later, that indicated when [their rest] break ended. [They were] expected

8    to be at [their] station when the second bell rang because the production line would start as soon as that

9    bell rang. Because [they were] not able to leave [their] station until the first bell rang and had to return

10   before the second bell rang, [their] rest breaks were routinely less than 10 minutes."); *see also* Moon

11   Decl., Exh. 6, ¶¶ 11-12.

12      This testimony is consistent with Plaintiff's data expert's analysis of the Kronos Time Data,

13   which was produced by Defendant in formal discovery: From February 2019 through December 2022,

14   Plaintiff's data expert "identified 45,651 work shifts (99.95% of the total) of at least 3.50 hours in length

15   and therefore eligible for a rest period." Arai Decl., ¶ 8. Because rest breaks were paid, Defendant did not

16   auto-deduct any time from Class Members' daily time records for rest breaks, as it did for meal periods.

17   Nonetheless, Defendant failed to provide code compliant rest breaks to all production line Class

18   Members on a daily basis. For this reason, "[s]hould liability be determined in Plaintiff['s] favor, class-

19   wide damages can be assessed by multiplying the number of shifts greater than 3.5 hours by the

20   applicable violation rate and by the statutory penalty equal to one hour at the employee's regular rate of

21   pay, with prejudgment interest, offsetting any rest period premium payments made. *Id*., at ¶ 47.

22      Here, the undisputed facts demonstrate that Defendant regularly required production line Class

23   Members, who make up over ninety percent of the putative Class, to return to their work stations before

24   the end of their ten-minute rest break, so that they could restart work precisely at the second and final

25   bell, and that this policy and practice affected such Class Members on a uniform, systematic, and

26   indiscriminate basis, i.e., without variation among differing shifts, positions and/or department, and

27   assigned work location.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES

1    VII.    DISCUSSION

2         A.    THE COURT SHOULD CERTIFY THE CLASS BECAUSE IT MEETS ALL

3              REQUIREMENTS FOR CERTIFICATION UNDER CALIFORNIA CODE OF CIVIL

4              PROCEDURE SECTION 382

5         The Court should certify the Class because it meets all requirements for certification under

6    California Code of Civil Procedure section 382. California Code of Civil Procedure section 382 states:

7    "when the question is one of a common or general interest, of many persons, or when the parties are

8    numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for

9    the benefit of all." Pursuant to this section, a party advocating class treatment must demonstrate: an

10   ascertainable class, a sufficiently numerous class, a well-defined community of interest; and substantial

11   benefits from certification that render proceeding as a class superior to the alternatives. *Brinker Rest.*

12   *Corp.*, 53 Cal.4th at 1021. Here, Plaintiff can demonstrate each requirement.

13                      **1.    The Class Is Ascertainable**

14        A class is ascertainable "when it is defined 'in terms of objective characteristics...' that make 'the

15   ultimate identification of class members possible when that identification becomes necessary." *Noel v.*

16   *Thrifty Payless, Inc.*, 7 Cal. 5th 955, 980 (2019), citing *Hicks v. Kaufman and Broad Home Corp.* 89 Cal.

17   App.4th 908, 915 (2001).

18        Here, the class is defined in terms of objective characteristics. The objective characteristics

19   include: the employer of the Class Member, i.e., Defendant; the nature of the position held by the Class

20   Member, i.e., hourly-paid or non-exempt; the state in which the Class Member held the position, i.e.,

21   California; and the time period during which the Class Member held the position, i.e., on or after

22   September 16, 2016. Each characteristic is objective, as its existence is dependent on a fact or condition

23   devoid of subjective feelings, prejudices or interpretations. Each characteristic also relates to a specific,

24   precise and neutral fact or condition of the Class Member. These qualities made identification of the

25   Class Members possible throughout class certification discovery and thus, will make the ultimate

26   identification of Class Members possible at the time a Class Notice becomes necessary. For these

27   reasons, the Class is ascertainable.

28

---

1

### 2.    The Class Is Sufficiently Numerous

A class is sufficiently numerous when "maintenance of a class action would be advantageous to the judicial process and to the litigants." *Collins v. Rocha*, 7 Cal.3d 232, 238 (1972). The class size need not meet a set number to be maintained. *Hebbard v. Colgrove*, 28 Cal.App.3d 1017, 1030 (1972). Indeed, the requirement of California Code of Civil Procedure section 382 that there be 'many' parties is indefinite and liberally construed. *Rose v. City of Hayward*, 126 Cal.App.3d 926, 934 (1981). Here, there are approximately 910 Class Members. Moon Decl., Exh. 2. This size is far greater than previously deemed numerous by California courts. In fact, the California Supreme Court has upheld a class with as few as ten members. *See e.g., Bowles v. Superior Court*, 44 Cal. 2d 574 (1955). For these reasons, the Class is sufficiently numerous.

### 3.    There Is A Well-Defined Community Of Interest

There is a well-defined community of interest when: there are predominant common questions of law or fact; the class representative has claims or defenses typical of the class; and the class representative can adequately represent the class. *Richmond v. Dart Industries, Inc.*, 29 Cal.3d 462, 470 (1981); *see also Linder*, 23 Cal.4th at 435.

#### a)    There Are Predominant Common Questions Of Law Or Fact With Respect To All Causes Of Action

There are predominant common questions of law or fact "if the defendant's liability can be determined by [questions of law or fact] common to all members of the class...even if the members must individually prove their damages." *Hicks*, 89 Cal.App.4th at 916. Questions of law or fact are common to all members of a class if they may be resolved through common proof. *Jaimez v. Daiohs USA, Inc.*, 181 Cal.App.4th 1286, 1305 (2010). As for predominance, it "is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.'" *Sav-on*, 34 Cal. 4th at 334, quoting *Reyes v. Los Angeles County Bd. of Supervisors*, 196 Cal. App. 3d 1263, 1278 (1979). Thus, "[i]ndividual issues do not render class certification inappropriate so long as such issues may effectively be managed." *Id*. This is especially so where the key difference between class members solely concerns their damages. *See id.; see also, Hicks*, 89 Cal.App.4th at 916.

Here, common questions include, but are not limited to: i. Whether or not Defendant paid minimum wages to Class Members for all time worked; ii. Whether or not Defendant paid Class Members meal period premium wages at the appropriate regular rate; iii. Whether or not Defendant provided compliant meal periods to Class Members; iv. Whether or not Defendant provided compliant rest breaks to Class Members; v. Whether or not Defendant paid compensation timely upon separation of employment to former Class Members; vi. Whether or not Defendant is liable for waiting-time penalties pursuant to *Labor Code* section 203; vii. Whether or not Defendant is liable for wage statement penalties pursuant to *Labor Code* section 226; viii. Whether or not Defendant engaged in unlawful or unfair business practices that affected Class Members in violation of *Business and Professions Code* sections 17200-17208; and ix. Whether or not Defendant is liable for civil penalties pursuant to the *Labor Code* Private Attorneys General Act of 2004. Resolution of these questions depends, primarily, upon common questions of law. Many of the key factual issues are undisputed; instead, their legal significance is at issue. As a result, class treatment is not only appropriate, but desirable and manageable.

i)    *Failure To Pay Minimum And Regular Rate Wages*

The first cause of action for Failure to Pay Minimum and Regular Wages pursuant to *Labor Code* sections 204, 1194, 1194.2, 1197, and 1771 raises the following mixed questions of law and fact: i. Whether or not the time between Class Members' clock in time and scheduled start time is time worked; ii. Whether or not the time between Class Members' clock in time and scheduled start time is overtime; iii. Whether or not Class Members were under the direction and control of Defendant between their clock in time and scheduled start time; iv. Whether or not Defendant is liable to Class Members for minimum wages for any unpaid time between their respective clock in times and scheduled start times; v. Whether or not the annual Perfect Attendance Bonus provided to production line Class Members was non-discretionary; and vi. Whether or not the annual Perfect Attendance Bonus was incorporated into each recipient Class Member's regular rate of pay for meal period premium wages throughout the entire year in which he or she received such bonus.

These mixed questions of law and fact are common among all Class Members for the simple fact that all Class Members were subject to the same violative timekeeping and payment policies of Defendant. Though individual issues could arise as to damages, the same legal and factual issues must be

answered for any Class Member, on an individual or classwide basis, to establish Defendant is liable for

unpaid minimum wages. For example, any Class Member would need to prove that, under the law, he or

she is entitled to all time worked, and that, factually, the time at issue was unpaid time worked. This is a

viable and manageable task:

In *Troester v. Starbucks Corp.,* 5 Cal.5th 829 (2018), the California Supreme Court substantiated

the core principle that "employees be paid for all time worked." *Id.* at 1124, *as modified on denial of*

*reh'g* (Aug. 29, 2018). Examining the long historical precedent of such principle, the Supreme Court

noted that, in 1947, the California Industrial Welfare Commission defined "hours worked" to encompass

all time spent under the employer's control:

> It is also instructive that the IWC in defining "hours worked" appeared to give little weight to the customary employment practices that informed Congress's decision to enact the Portal-to-Portal Act and instead placed more importance on the policy of ensuring that employees are fully compensated for all time spent in the employer's control.

*Troester*, 5 Cal. 5th 829, 421 P.3d at 1123. The Court further recognized that California's wage

and hour laws care for "small things," indicating that infringements of obligations in even tiny amounts

are improper:

> We have said that application of a de minimis rule is inappropriate when "the law under which this action is prosecuted does care for small things." (*Francais v. Somps*, 92 Cal. 503, 506, 28 P. 592 (1891).) In deciding whether application of the de minimis rule in this case would be consistent with the governing wage order and Labor Code statutes, we observe that the regulatory scheme of which the relevant statutes and wage order provisions are a part is indeed concerned with "small things." For example, California law ensures that most nonexempt employees receive two daily 10-minute rest breaks. (Wage Order No. 5, subd. (12)(A); see *Brinker Rest. Corp*, *supra*, 53 Cal.4th at p. 1031, 139 Cal.Rptr.3d 315, 273 P.3d 513.) We have interpreted Wage Order No. 5 as requiring strict adherence to that requirement, and we have scrupulously guarded against encroachments on this 10-minute period. Thus, we recently held that the obligation to relieve employees of any work-related duties during the rest period barred employers from requiring employees to be on call during their rest breaks and that breach of this duty triggers an employer's obligation under section 226.7, subdivision (b) to pay the employee an additional hour of pay. (*ABM Security*, *supra*, 2 Cal.5th at p. 265, 211 Cal.Rptr.3d 634, 385 P.3d 823.)

*Troester*, 5 Cal. 5th 829, 421 P.3d at 1122-23. The Court also re-emphasized the remedial

purpose of California's wage and hour laws, calling for liberal construction of all wage payment

obligations in favor of employees:

> In light of the Wage Order's remedial purpose requiring a liberal construction, its directive to compensate employees for all time worked, the evident priority it accorded that mandate notwithstanding customary employment arrangements, and its concern with small amounts of time, we conclude that the de minimis doctrine has no application under the circumstances presented here. An employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine. As the facts here demonstrate, a few extra minutes of work each day can add up.

*Troester*, 5 Cal. 5th 829, 421 P.3d at 1125. Based on these strong policies, the Court held that employers must bear the burden of determining how to ensure that all time is paid, taking every effort to avoid placing the burden of any difficulty recording time on the employee.

> But employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring work time.

*Troester*, 5 Cal. 5th 829, 421 P.3d at 1125. Applying these principles, the Court extrapolated that even a couple of minutes a day constituted time that should be accounted for in some way, and it should be paid.

In view of this precedent, Class Members can collectively demonstrate that Defendant consistently shaved time from their time records in a manner inconsistent with the *Labor Code* by simply producing samples of their time records, which are the same and/or substantially similar. For this reason, the question of whether Defendant is liable to the Class for minimum wages turns on the same legal and factual inquiries. This is just one example of numerous in which Class Members' legal and factual burdens overlap in this Action.

<div align="center">

*ii)    Failure To Provide Meal Periods*

</div>

The second cause of action for Failure to Provide Meal Periods pursuant to *Labor Code* sections 204, 223, 226.7, 512, and 1198 raises the following mixed questions of law and fact: i. Whether or not Defendant failed to relieve its employees of all duties during meal periods; ii. Whether or not Defendant relinquished control over its employees during meal periods; iii. Whether or not Defendant's uniform policy and practice of requiring Class Members to return to their work stations by the third and final meal period bell interfered with Class Members' ability to take full, uninterrupted meal periods; iv. Whether or not Defendant paid any meal period premium wages throughout the Class Period; and v. Whether or not Defendant is liable for meal period premium wages as a result of its meal period policies and practices.

These mixed questions of law and fact are common among all Class Members for the simple fact that all Class Members were subject to the same violative meal period policies and practices of

1   Defendant. Though individual issues could arise as to damages, the same legal and factual issues must be

2   answered for any Class Member, on an individual or classwide basis, to establish Defendant is liable for

3   meal period premium wages.

4                                 *iii)*        *Failure To Authorize And Permit Rest Breaks*

5           The third cause of action for Failure to Authorize and Permit Rest Breaks pursuant to *Labor*

6   *Code* sections 204, 223, 226.7, and 1198 raises the following mixed questions of law and fact: i. Whether

7   or not Defendant failed to relieve its employees of all duties during rest breaks; ii. Whether or not

8   Defendant relinquished control over its employees during rest breaks; iii. Whether or not Defendant's

9   uniform policy and practice of requiring Class Members to return to their work stations by the second

10  and final rest break bell interfered with Class Members' ability to take full, uninterrupted rest breaks; iv.

11  Whether or not Defendant paid any rest breaks premium wages throughout the Class Period; and v.

12  Whether or not Defendant is liable for rest breaks premium wages as a result of its rest breaks policies

13  and practices.

14          These mixed questions of law and fact are common among all Class Members for the simple fact

15  that all Class Members were subject to the same violative rest break policies and practices of Defendant.

16  Though individual issues could arise as to damages, the same legal and factual issues must be answered

17  for any Class Member, on an individual or classwide basis, to establish Defendant is liable for rest break

18  premium wages.

19                               *iv)*       *Failure To Timely Pay Final Wages At Termination And Other*

20                                       *Derivative Causes Of Action*

21          The remaining cause of actions for Failure to Timely Pay Final Wages at Termination pursuant to

22  *Labor Code* sections 201-203, Failure to Provide Accurate Itemized Wage Statements pursuant to *Labor*

23  *Code* section 226(a), Unfair Business Practices pursuant to *Business and Professions Code* sections

24  17200, et seq., and Civil Penalties pursuant to *Labor Code* sections 2698, et seq. are each grounded in

25  and dependent on the common questions of the law and fact presented by the first three causes of action.

26  For the simple fact that all Class Members will need to answer the same legal and factual questions

27  outlined above in order to establish liability under these derivative claims, these claims too possess

28  common questions of law and fact.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES

1

*b)        The Class Representative Has Claims Or Defenses Typical Of The Class*

2          A class representative has claims or defenses typical of the class when "other members have the

3  same or similar injury, [when] the action is based on conduct which is not unique to the named plaintiffs,

4  and [when] other class members have been injured by the same course of conduct." *Seastrom v. Neways,*

5  *Inc.*, 149 Cal. App. 4th 1496, 1502 (2007) (providing that the purpose of the typicality requirement "is to

6  assure that the interest of the named representative aligns with the interests of the class"); *See also,*

7  *Classen v. Weller* (1983) 145 Cal.App.3d 27, 46 ("[I]t has never been the law in California that the class

8  representative must have *identical* interest with the class members"); *See, e.g.*, *Ghazaryan v. Diva*

9  *Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1534 (2008), citing *Fireside Bank*, 40 Cal.4th at 1089, and *Sav-*

10  *On*, 34 Cal. 4th at 326, approved by *Jaimez*, 181 Cal. App. 4th at 1298 and *Brinker Rest. Corp. v. Super.*

11  *Ct.*, 53 Cal. 4th 1004 (2012); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("[C]lass

12  certification is inappropriate where a putative class representative is subject to unique defenses which

13  threaten to become the focus of the litigation.")

14          Here, Plaintiff is a former non-exempt and hourly-paid employee of Defendant; Plaintiff worked

15  for Defendant in California; Plaintiff worked five days per workweek and eight hours per workday;

16  Plaintiff worked in the Production Department at the Core Facility in Livermore, California; and Plaintiff

17  was subject to the employment policies and practices of Defendant, which are the basis of his claims and

18  the legal theories in support thereof. Moon Decl., Exh. 6. The Class Members are also non-exempt or

19  hourly-paid employees of Defendant, who worked for Defendant in California, who worked the same

20  average number of workdays and workweeks as Plaintiff, who largely worked in the Production

21  Department at the Core Facility in Livermore, California, and who are subject to the same policies and

22  practices as Plaintiff, which are also the basis of their claims and alleged legal theories. Thus, Plaintiff

23  and the Class Members share the same claims, and ergo, defenses, stemming from Defendant's

24  violations of the *Labor Code* and relevant wage order. Accordingly, Plaintiff, as class representative, has

25  claims and defenses typical of the Class.

26

*c)        The Class Representative Can Adequately Represent The Class*

27          A class representative can adequately represent the class when he or she is represented by

28  counsel qualified to conduct the pending litigation; and his or her interests are not antagonistic to those of

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES

the class. *McGhee v. Bank of America*, 60 Cal.App.3d 442, 451 (1976). In other words, when the plaintiff has adequate counsel, the plaintiff may represent the entire class absent any disabling conflicts of interest that might hinder his or her ability to represent the class. *Id.*

Here, Plaintiff retained counsel with extensive experience in prosecuting complex wage and hour class and representative actions, rendering them qualified to conduct the pending litigation. See Moon Decl., ¶¶ 3-14. Further, such counsel do not have any conflicts of interest with Plaintiff or any absent Class Members. *Id.*, at ¶ 15. In addition, Plaintiff does not have any interests antagonistic to those of the Class, including to any particular Class Member. *Id.*, Exh. 6, ¶ 18. Indeed, Plaintiff has committed to placing the interests of the Class above his own. *Id.*, Exh. 6, ¶ 15. Of upmost interest to Plaintiff is that all Class Members are reasonably compensated for any and all meritorious violations they suffered at the hand of Defendant, and that Defendant, through this action, is deterred from committing similar violations in the future. *Id.*, Exh. 6, ¶ 18. Plaintiff therefore has adequate counsel, and there is an absence of any disabling conflicts of interest that might affect Plaintiff's ability to impartially represent the Class. For these reasons, the Court should appoint Plaintiff as Class Representative for the Class and appoint his counsel as Class Counsel.

## 4.    There Are Substantial Benefits From Certification That Render Proceeding As A Class Superior To The Alternatives

A court will find there are substantial benefits from certification that render proceeding as a class superior to the alternatives on balance of all relevant considerations, including, but not limited to: the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress the alleged wrongdoing. *See Linder*, 23 Cal. 4th at 434; *Gentry v. Superior Court*, 42 Cal. 4th 443, 457-462 (2007); *Leyva v. Medline Ind.*, 716 F.3d 510, 515 (9th Cir. 2013).

Here, on balance of the below relevant considerations, proceeding as a class action is a superior means of resolving the instant action:

   a)    A class action is an efficient method for enforcing state policy. *See Linder*, 23 Cal. 4th at 445-446, quoting *Blue Chip Stamps v. Superior Court*, 18 Cal. 3d 381, 385-386 (1976) (conc. opn. of Tobriner, J.)) ("Courts should consider 'the role of the class action in

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES

deterring and addressing wrongdoing'"); *see also Flowers v. Los Angeles County Metropolitan Transportation Authority*, 243 Cal.App.4th 66, 82 (2015), citing *Cash v. Winn*, 205 Cal.App.4th 1285, 1297 (2012) ("State wage and hour laws 'reflect the strong public policy favoring protection of workers' general welfare and "society's interest in a stable job market"); *Gentry v. Superior Court*, 42 Cal. 4th 443, 462 (2007) (finding class actions essential to deterrence.) Here, a class action is likely the only means to deter and redress the alleged *Labor Code* violations committed by Defendant, as the Class Members here, who have small but nevertheless meritorious claims, are unlikely to adjudicate or otherwise resolve such claims on an individual basis, in light of the time, effort, and expense required to pursue individual actions;

b)  A class action, particularly in employment litigation, is superior because, frequently, employees are unaware of the wrongfulness of the employer's conduct: "Similarly, it may often be the case that the illegal employer conduct escapes the attention of employees." *Id.* at 461. Here, it is unlikely any significant portion of the Class is aware of the variety of obligations imposed by the *Labor Code*;

c)  A class action is superior to individual litigation, as it will provide current employees with insulation from fear of retaliation. *Gentry*, 42 Cal. 4th at 459. Federal courts concur. *Id.*, collecting federal cases. Here, Class Members will be insulated from potential retaliation through the class action mechanism;

d)  The Class is not particularly large and thus will present little in the way of management difficulty, as a non-trivial percentage of the Class could testify at a trial without being particularly burdensome or consuming many days of trial time;

e)  Plaintiffs have no information about any other actions currently pending against Defendant for the same types of claims asserted in this matter, and therefore, there is a low likelihood of inconsistent results in the event this case proceeds as a class action; and finally

f)  Due to the uniformity of Defendant's timekeeping behaviors, resolving the legality of its practices in a single forum is desirable and efficient to the Class Members and Court, as

1     the class action device will enable the Court to manage this litigation in a manner that

2     serves the economics of time, effort, and expense for the litigants and judicial system.

3   VIII.    **CONCLUSION**

4          For the foregoing reasons, Plaintiff respectfully requests that the Court grant class certification as

5   requested.

6

7                                        Respectfully submitted,

8   Dated: April 24, 2023               MOON & YANG, APC

9

10                               By: _____

11                                    Kane Moon, Esq.
                                     Allen Feghali, Esq.
12                                   Jacquelyne VanEmmerik, Esq.

13                                   *Attorneys for Plaintiff,*
                                    *Roland Tolentino*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES

# PROOF OF SERVICE

STATE OF CALIFORNIA ) 
                                    ) ss
COUNTY OF LOS ANGELES ) 

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On April 24, 2023, I served the foregoing document described as:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

 X   by placing ___ the original  X  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| WILLIAM FAULKNER (83385) | CRAIG MARTIN (Pro Hac Vice) |
| MICHAEL WARREN (223642) | cmartin@willkie.com |
| **McMANIS FAULKNER** | MATT BASIL (Pro Hac Vice) |
| 50 West San Fernando Street, 10th Floor | mbasil@willkie.com |
| San Jose, California 95113 | **WILLKIE FARR & GALLAGHER, LLP** |
| Telephone: (408) 279-8700 | |
| Facsimile: (408) 279-3244 | 300 North LaSalle Street, Suite 5000 |
| Email: mwarren@mcmanislaw.com | Chicago, Illinois 60654 |
| | Telephone: (312) 728-9000 |
| | Facsimile: (312) 728-9199 |

### *Attorneys for Defendant GILLIG, LLC*

[X]  **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

 X  (State)      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

      Executed on April 24, 2023, at Los Angeles, California.

Janelle Jickain_____         _____
        Name                                   Signature

Superior Court of Alameda County Public Portal

# Reschedule a Reservation

| Reservation | |
|---|---|
| Reservation ID: | |
| 296057941352 | |
| Reservation Type: | |
| Motion re: (Motion for Class Certification) | |
| Case Number: | |
| RG20073930 | |
| Case Title: | |
| Tolentino VS Gillig, LLC | |
| Filing Party: | |
| Ronald Tolentino (Plaintiff) | |
| Location: | |
| Rene C. Davidson Courthouse - Department 23 | |
| Date/Time: | |
| May 23rd 2023, 9:15AM | |
| Status: | |
| RESERVED | |
| Number of Motions: | |
| 1 | |

**Motions to Reschedule**

Motion re: (Motion for Class Certification)

***Reschedule To***:
Date:  05/30/2023 9:15 AM
Location:  Rene C. Davidson Courthouse - Department 23

**Fees**

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Reschedule Fee | 1.00 | 1 | 1.00 |



| Description | Fee | Qty | Amount |
|---|---|---|---|
| TOTAL | | | $1.00 |

## Payment

| | |
|---|---|
| Amount:<br>$1.00 | Type:<br>Visa |
| Account Number:<br>XXXX4529 | Authorization:<br>04148G |
| Payment Date:<br>1969-12-31 | |

🖶 Print Receipt    ✚ Reserve Another Hearing    👤 View My Reservations

Terms of Service

Contact Us

About this Site

Copyright © Journal Technologies, USA. All rights reserved.

EXHIBIT 60

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Jacquelyne VanEmmerik (SBN 339338)
   **MOON & YANG, APC**
3  1055 West Seventh Street, Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  Email: kane.moon@moonyanglaw.com
   Email: allen.feghali@moonyanglaw.com
6  Email: jacquelyne.vanemmerik@moonyanglaw.com

7  *Attorneys for Plaintiff,*
   *Roland Tolentino*

8

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
04/24/2023 at 06:33:51 PM
By: Anita Dhir,
Deputy Clerk

9
      **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10
            **FOR THE COUNTY OF ALAMEDA**

11 | ROLAND TOLENTINO, individually, and on behalf of all others similarly situated,

Case No.: RG20073930

[Honorable Brad Seligman, Department 23]

12        *Plaintiff,*

CLASS ACTION

13        vs.

**DECLARATION OF KANE MOON IN**
14 | GILLIG, LLC, a limited liability company; and **SUPPORT OF PLAINTIFF'S MOTION FOR**
   DOES 1 through 10, inclusive, **CLASS CERTIFICATION**

15        *Defendants.*

Date: May 30, 2023
16 Time: 9:15 a.m.
   Dept.: 23

17
Reservation ID: 296057941352
18

Complaint Filed: September 16, 2020
19 Trial Date: Not Set

20

21

22

23

24

25

26

27

28

1

**DECLARATION OF KANE MOON**

2

I, Kane Moon, declare as follows:

3
4
5
6
7
8

     1.   I am admitted, in good standing, to practice as an attorney in the State of California and the United States District Court for the Central, Northern, and Southern Districts of California. I have never been subject to discipline by the State Bar of California. I am a fully qualified, adult resident of the State of California and, if called as a witness, I could and would testify truthfully to the matters set forth herein. All of the matters set forth herein are within my personal knowledge, except those matters that are stated to be upon information and belief. As to such matters, I believe them to be true.

9
10

     2.   This Declaration is made in support of Plaintiff's Motion for Class Certification, and in particular, in support of Plaintiff's adequacy as Class Representative:

11

**MY EXPERIENCE AND QUALIFICATIONS**

12
13
14
15

     3.   I received a Bachelor of Arts in History from the University of California, Los Angeles in 1998. I received my Juris Doctorate from Loyola Marymount Law School in 2006. I became an Active Member of the State Bar of California in June 2007 and have been an Active Member in good standing continuously since. I have been selected to Super Lawyers from 2020-2023.

16
17
18
19
20
21
22
23

     4.   I co-founded Moon & Yang, APC in March 2010. My practice is focused exclusively on advocating for the rights of employees in wage-and-hour litigation, almost entirely in class actions. The firm and its lawyers have successfully settled hundreds of cases over the past decade, including class action cases. The firm and its lawyers have also tried both bench and jury trials, representing both plaintiffs and defendants, relating to employment matters. The firm and its lawyers have further been appointed lead or co-lead class counsel in federal and state courts in California. In fact, in addition to the instant Action, I am class counsel for dozens of other putative wage-and-hour class-action lawsuits pending in various state and federal jurisdictions throughout California.

24
25
26
27
28

     5.   For the past decade, I have built my practice to have an emphasis on employment and related civil litigation cases and have both prosecuted and defended employment-related litigation cases. I have been heavily, successfully, and continuously involved in active litigation and trial work, and have conducted bench and jury trials on behalf of both employees and employers in wage and hour cases.

6.    I am highly experienced in prosecuting and defending employment matters, particularly class actions. The following is a list of some of our recent class action settlements that have received preliminary and final approval: *Mark Brulee, et al. v. DAL Global Services, LLC* (C.D. Cal. Dec. 20,2018) No. CV 17-6433 JVS(JCGx), 2018 WL 6616659 (class size approx. 2,650; lead counsel) (In approving my $650 hourly rate, the Court found: "Class Counsel's declarations show that the attorneys are experienced and successful litigators.  Other courts have approved the attorneys' current rates for the Moon & Yang, APC attorneys."  (*Id*. at *10.); *Sison v. Cha Hollywood Medical Center, L.P.*, LASC BC6441 29 (class size approx. 2,100; co-counsel); *Jones v. Fitness Alliance, LLC*, Riverside Superior Court PSC1404079 (class size approx. 1,000; lead counsel); *Gomez v. H Mart Companies, Inc.*, LASC BC671525 (class size approx. 2,500; co-counsel); *Montoya v. Golden 1 Credit Union*, Sacramento Superior Court 34-2018-00228252 (class size approx. 1,900; lead counsel);  *Campa v. Bloomingdeals, Inc.*, LASC BC700366 (class size approx. 1,500; lead counsel); *Black v. Mission Healthcare Services, Inc.*, LASC 19STCV04602 (class size approx. 1,000; lead counsel); *Onofre v. Caitac Garment Processing, Inc.*, LASC BC702283 (class size approx. 750; lead counsel); *Martinez v. Bail Hotline Bail Bonds, Inc.*, LASC BC700131 (class size approx. 173; lead counsel); *Jones v. Citiguard, Inc.*, LASC BC664890 (class size approx. 587; lead counsel); *Slaughter v. ACA Security Stems, LP*, LASC BC699137 (class size approx. 300; lead counsel); *Taylor v. Sherman's Delicatessen & Bakery, LLC*, LASC BC722765 (class size approx. 515; lead counsel); *Vertti v. Bagcraft Papercon III, LLC*, LASC 19STCV12729 (class size approx. 260; lead counsel); *Rodriguez v. Rossmoyne, Inc.,* LASC BC699137 (class size approx. 220; lead counsel); *Vargas v. AMS Paving, Inc.*, LASC BC722767 (case approx. 260; lead counsel);  *Garcia v. Comfy U.S.A. Apparel, Inc.*, LASC BC709630 (class size approx. 210; lead counsel); *Lagos v. ThyssenKrupp Elevator Corporation*, LASC BC682972 ($750,000 for 79 Class Members; lead counsel); *Aparicio v. Lineage Logistics, LLC*, LASC BC722764 (class size approx. 155; lead counsel).

7.    In addition to myself, Allen Feghali, Esq., a Partner at Moon & Yang, APC, and Jacquelyne VanEmmerik, Esq., a second-year Associate Attorney at Moon & Yang, APC, have worked on this matter:

**ALLEN FEGHALI'S EXPERIENCE AND QUALIFICATIONS**

8.   Allen Feghali received his Bachelor of Arts in Global and International Studies from the University of California, Santa Barbara in 2011, and his Juris Doctorate from the University of La Verne College of Law in 2014. Mr. Feghali became an Active Member of the State Bar of California in December 2014 and has been an Active Member in good standing continuously since. Mr. Feghali is a current member of the California Employment Lawyers Association (CELA) and has been selected by Super Lawyers as a "Southern California Rising Star" each year from 2020 to 2023.

9.   Mr. Feghali is a partner at Moon & Yang, APC, where he began working in May 2015. Mr. Feghali's practice focuses on advocating for the rights of employees at the trial- and appellate- court level. Prior to approximately June 2018, with the exception of a handful of cases, Mr. Feghali's practice focused on individual FEHA and wrongful termination claims, as well as individual wage and hour claims. In June 2018, Mr. Feghali became heavily involved in the firm's class action practice, and since that time, has almost exclusively litigated wage and hour class and PAGA actions.

10.  During Mr. Feghali's tenure with Moon & Yang, APC, Mr. Feghali has played a critical role in obtaining outstanding results for employees who have been wronged by their employers. Mr. Feghali's litigation experience includes, but is not limited to:

      a.  Mr. Feghali prepared the briefing in the matter of *Rivera et al. v. Clearpath Federal Credit Union* (LASC No. 19STCV33504), which resulted in a certification order on all causes of action following contested briefing in a wage-and-hour class action, in March 2021.

      b.  Mr. Feghali prepared the briefing in a contested class certification motion in the matter of *Dawson et al. v. GoHealth, LLC*, et al. (No. CGC-19-577790), which was granted in part and denied in part in April 2022.

      c.  Mr. Feghali prepared the briefing in a contested class certification motion in the matter of *Brown v. NTI-CA, Inc., et al.* (No. 21STCV04397), which is not currently scheduled for hearing.

d.   Mr. Feghali was part of a team that prepared the briefing in a contested class certification motion in the matter of *Thong, et al. v. Outlook Resources, Inc., et al.* (No. 19STCV44400), which was granted in part and denied in part in October 2022.

e.   Mr. Feghali prepared the briefing which resulted in a remand order in the matter of *Andrade v. Rehrig Pacific Corp.* (C.D. Cal. April 22, 2020, No. CV 20-1448 FMP (RAOx)) 2020 WL 1934954, where Defendant removed a wage-and-hour class alleging that Plaintiff's claims were pre-empted by the Labor Management Relations Act.

f.   Mr. Feghali briefed, argued, and won the matter of *Lee et al. v. The Christian Herald, U.S.A., Inc.* (Cal. Ct. App. Dec. 12, 2017, No. B266853) 2017 WL 6333905, at *1. There, the Court of Appeal reversed a dismissal of an individual defendant following the trial court's granting of a demurrer without leave to amend relating to alter ego allegations.

g.   Mr. Feghali prepared the briefing which resulted in a remand order in the matter of *Sotelo v. Belfor USA Group, Inc.* (C.D. Cal. March 13, 2018, No. 2:17–cv–09056–RSWL–MRWx) 2018 WL 1352910. Defendants sought to remove the case based on the inclusion of a "sham defendant," but the court agreed with my briefing which argued that the individual defendant, who was alleged to have harassed the plaintiff under FEHA, was a proper defendant.

h.   Prior to 2018, Mr. Feghali was the lead counsel, or co-lead counsel, in individual employment matters that settled for $850,000.00, $375,000.00, and $250,000.00. In addition to the foregoing, Mr. Feghali has resolved or assisted in the resolution of over 100 cases which has resulted in millions of dollars of unpaid wages being returned to low-wage employees.

i.   Mr. Feghali has participated as lead, or co-lead counsel, in the litigation and resolution of over 100 wage-and-hour class actions, including obtaining preliminary and final approval of settlements. A selection of cases wherein he served as lead or co-lead class counsel includes, but is not limited to, the following:

i.  *Barahona v. Methodist Hosp. of Cal.* (No. 20STCV09876) ($5,000,000);

ii.  *Stanley Black & Decker Wage and Hour Cases* (No. JCCP5218) ($3,500,000)

iii.  *Vazquez v. St. Mar 2.0 Incorporated* (37-2021-00042702-CU-OE-CTL) ($2,250,000)

iv.  *Duncan v. Infineon Technologies Americas Corp.* (21STCV16872) ($2,500,000)

v.  *Aquino v. Coast King Packing, LLC* (21CV002448) ($2,300,000)

vi.  *Martinez, et al. v. Curative LLC* (21STCV20778) ($1,500,000)

vii.  *Calderon v. Installed Building Products* (37-2021-00035844-CU-OE-CTL) ($1,500,000)

viii.  *Majdoub v. Argent Hotel Management* (No. CGC-20-582921) ($1,800,000)

ix.  *Fuentes v. Covid Clinic, Inc.* (No. CIVSB2106806) ($1,526,317.57)

x.  *Rahman, et al. v. Gate Gourmet, Inc.* (3:20-cv-03047) ($3,850,000)

xi.  *Pagoulatos v. Coast Hills Credit Union* (No. 20CV02801) ($1,100,000)

xii.  *Hammers v. Redwood Oil Company, Inc.* (SCV-269625) ($1,180,000)

xiii.  *Cuadras v. R.C. Wendt Painting, Inc.* (No. BC705964) ($1,400,000)

xiv.  *Zaragoza v. The Roman Catholic Bishop of Fresno* (22CV-00282) ($1,500,000)

xv.  *Garcia v. San Jose Water Company* (22CV396328) ($1,200,000)

xvi.  *Garcia v. Tri-Valley Plastering, Inc.* (22CECG00591) ($1,100,000)

xvii.  *Garcia v. Tapia Enter., Inc.* ($2,137,651 for 507 class members)

xviii.  *Cha v. Center Point, Inc.* (CIV2102081) ($1,000,000)

xix.  *Sison v. Cha Hollywood Med. Ctr., L.P.* (No. BC644129) (2,137 class members)

xx.  *Lagos v. ThyssenKrupp Elevator Corp.* (No. BC682972) ($750,000 for 79 class members)

xxi.  *Montoya v. Golden 1 Credit Union* (No. 34-2018-00228252) ($1,250,000).

## JACQUELYNE VANEMMERIK'S EXPERIENCE AND QUALIFICATIONS

11. Ms. VanEmmerik received her Bachelor of Arts in Law, History and Culture from the University of Southern California in 2017, and her Juris Doctorate from the University of California, Davis School of Law, in 2021. Ms. VanEmmerik became an Active Member of the State Bar of California in December 2021 and has been an Active Member in good standing continuously since.

12. During law school, Ms. VanEmmerik served as a Senior Articles Editor of the Environmental Law and Policy Journal, and as a Judicial Extern for the Honorable Todd W. Eddins of the Supreme Court of Hawai'i.

13. Jacquelyne VanEmmerik became an associate attorney at Moon & Yang, APC in 2021. Ms. VanEmmerik represents employees in all aspects of employment litigation, including wage and hour class and representative actions involving claims related to overtime and minimum wages, meal and rest break violations, improper wage statements, the California Private Attorneys General Act, and unfair business practices.

14. During her employment at Moon & Yang, APC, Ms. VanEmmerik has played a critical role in obtaining outstanding results for employees who have been wronged by their employers. Her litigation experience includes, but is not limited to, participation in the litigation and resolution of approximately 50 wage and hour class and representative actions.

15. I am unaware of any interest of Moon & Yang, APC, or its lawyers, that is adverse to the interests of any Class Member. No such adverse interest have been identified by me or anyone herein.

## SUPERIORITY

16. Class Counsel has no information about any other actions currently pending against Defendant for the same or similar claims asserted in this matter.

## NUMEROSITY

17. Class Member contact data was requested in discovery and ultimately produced by Defendant. The Class list includes 910 persons (who are current and former employees). Defendant's responses to Special Interrogatories 2 & 3 provides information sufficient to assess numerosity of the proposed Class. See, Exhibit 2, identified below.

1

**EXHIBITS**

2      18.    On April 4, 2021, Jacquelyne VanEmmerik took the Deposition of Marla Loar, who was

3    designated by Defendant as the Person Most Knowledgeable with respect to certain identified categories

4    ("Loar Depo."). A true and correct copy of the Loar Depo. is attached hereto as Exhibit 1; and a true and

5    correct copy of an exemplar of Plaintiff Tolentino's time records, which was produced by Defendant in

6    formal discovery and cited to throughout the Loar Depo., is attached to Exhibit 1 as Exhibit A.

7      19.    On March 15, 2021, my office propounded its First Set of Special Interrogatories on

8    Defendant. On or around April 20, 2021, Defendant served responses thereto. A true and correct copy of

9    Defendant's Responses to Plaintiff's Special Interrogatories, Set One, is attached hereto as Exhibit 2.

10     20.    On April 12, 2023, Essa Ababesh, a putative Class Member in the instant Action, attested

11   to certain facts relating to this Action. A true and correct copy of her Declaration is attached hereto as

12   Exhibit 3.

13     21.    On April 21, 2023, Juan Alvaraz, a putative Class Member in the instant Action, attested

14   to certain facts relating to this Action. A true and correct copy of his Declaration is attached hereto as

15   Exhibit 4.

16     22.    On April 21, 2023, Steven Andersen, a putative Class Member in the instant Action,

17   attested to certain facts relating to this Action. A true and correct copy of his Declaration is attached

18   hereto as Exhibit 5.

19     23.    On April 24, 2023, Ronald Tolentino, the putative Class Representative in the instant

20   Action, attested to certain facts relating to this Action. A true and correct copy of his Declaration is

21   attached hereto as Exhibit 6.

22          I declare under penalty of perjury, under the laws of the State of California and the United States

23   of America, that the foregoing is true and correct.

24          Executed this April 24, 2023, at Los Angeles, California.

25

26                                                         Kane Moon, Esq.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA


RONALD TOLENTINO, individually,  )
and on behalf of all others      )
similarly situated,              )
                                 )
            Plaintiff,            )
                                 )
            vs.                   ) Case No.
                                 ) RG20073930
GILLIG, LLC, a limited liability )
company; and DOES 1 through 10,  )
inclusive,                       )
                                 )
            Defendants.           )
_____ )


REMOTE VIDEOTAPED DEPOSITION OF MARLA LOAR,

AS PERSON MOST KNOWLEDGEABLE FOR GILLIG, LLC

MONDAY, APRIL 3, 2023, 10:06 A.M.


STENOGRAPHICALLY REPORTED BY:

Tami L. Le, CSR No. 8716, RPR

Job No. 84341

MARLA LOAR, PMK

April 03, 2023

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                   FOR THE COUNTY OF ALAMEDA

 3

 4   RONALD TOLENTINO, individually,    )
     and on behalf of all others        )
 5   similarly situated,                )
                                        )
 6          Plaintiff,                  )
                                        ) Case No.
 7   vs.                                ) RG20073930
                                        )
 8   GILLIG, LLC, a limited liability   )
     company; and DOES 1 through 10,    )
 9   inclusive,                         )
                                        )
10          Defendants.                 )
     _____)

11

12

13

14

15              REMOTE VIDEOTAPED DEPOSITION of MARLA LOAR,

16   AS PERSON MOST KNOWLEDGEABLE FOR GILLIG, LLC, taken

17   on behalf of the Plaintiffs, with all participants

18   appearing remotely via Zoom videoconference,

19   commencing at 10:06 a.m., on Monday, April 3, 2023,

20   before Tami L. Le, Certified Shorthand Reporter

21   8716, in and for the State of California.

22

23

24

25
```

MARLA LOAR, PMK

```
 1   REMOTE APPEARANCES:

 2

 3   For the Plaintiffs:

 4            MOON & YANG, APC
             BY:  JACQUELYNE VAN EMMERIK, ESQ.
 5           1055 West Seventh Street
             Suite 1880
 6           Los Angeles, California  90017
             213.232.3128
 7           jacquelyne.vanemmerik@moonyanglaw.com

 8

 9   For Defendant GILLIG, LLC:

             McMANIS FAULKNER
10           BY:  MICHAEL WARREN, ESQ.
             50 West San Fernando Street
11           10th Floor
             San Jose, California  95113
12           408.279.8700
             mwarren@mcmanislaw.com

13

14   The Videographer:

15            Dash Arnott

16

17

18

19

20

21

22

23

24

25
```

MARLA LOAR, PMK

**April 03, 2023**

```
 1                      I N D E X

 2   WITNESS:  Marla Loar

 3   EXAMINATION                              PAGE

 4   By Ms. Van Emmerik                          6

 5

 6   PLAINTIFFS' EXHIBITS FOR IDENTIFICATION:

 7   Exhibit A  - Kronos report for Roland      37
                  Tolentino, Bates-stamped
 8                D00410 through D00423

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              MONDAY, APRIL 3, 2023, 10:06 A.M.

2                            oOo

3         THE VIDEOGRAPHER:  Good morning.  My name

4    is Dash Arnott, videographer, representing First

5    Legal Deposition Services.  Today is

6    April 3rd, 2023.  The time is 10:06 a.m. Pacific

7    time, and we are now going on the record.

8              This is the video recorded deposition of

9    Marla Loar in the matter of Ronald Tolentino versus

10   Gillig, LLC, Case No. RG20073930, and is being taken

11   on behalf of the plaintiffs' counsel, Moon & Yang.

12             This deposition is being taken remotely by

13   videoconference.  Due to the nature of remote

14   reporting, please pause briefly before speaking to

15   ensure all parties are heard completely.

16             May we please have introductions of counsel

17   and whom they represent.

18         MS. VAN EMMERIK:  Good morning.  My name is

19   Jacquelyne VanEmmerik, and I represent plaintiff

20   Ronald Tolentino.

21         MR. WARREN:  Good morning.  This is Michael

22   Warren of McManis Faulkner.  I'm representing

23   defendant Gillig, LLC.

24         THE VIDEOGRAPHER:  Thank you.

25             The court reporter today is Tami Le, who

```
 1   will now swear in the witness.
 2            (Witness sworn.)
 3            MS. VAN EMMERIK:  Great.  I think we're
 4   ready to begin.  Thank you, Dash.
 5
 6                      MARLA LOAR,
 7            having been first duly sworn, was
 8            examined and testified as follows:
 9
10                      EXAMINATION
11   BY MS. VAN EMMERIK:
12      Q    Hello.  My name is Jacquelyne VanEmmerik,
13   as I already mentioned.  I represent plaintiff
14   Ronald Tolentino in the matter of Tolentino versus
15   Gillig, LLC, and I'll be asking you some questions
16   today.  Thank you for joining me.
17            Can you please state your full name for the
18   record.
19      A    Marla Loar.
20      Q    Thank you.
21            Can you please spell your full name for the
22   record.
23      A    M-A-R-L-A, last name L-O-A-R.
24      Q    Thank you.
25            Before I begin asking you questions about
```

1    the case, I'm going to cover a few rules for the

2    deposition to make sure we're all on the same page.

3    The first rule is that nobody is permitted to assist

4    you during the deposition apart from your attorney,

5    who may make objections or instruct you not to

6    answer when he finds appropriate.

7            Do you have any questions about this rule?

8    A    No.

9    Q    The second rule is that you are not allowed

10   to use your cell phone or any documents to assist

11   you during the deposition.  Therefore, if you have

12   any difficulty recalling information, you may not

13   refer to your cell phone or any documents to refresh

14   your memory.  You may, however, state that you do

15   not recall the information.  So long as it is true,

16   that answer is perfectly acceptable.

17           Do you have any questions about this rule?

18   A    No.

19   Q    The third rule is that you must answer my

20   questions truthfully.  Your testimony today is given

21   under oath, which is the same oath you would take

22   were you providing your testimony in court.

23           Do you understand that you must answer my

24   questions truthfully?

25   A    Yes.

1       Q    Do you understand that answering a question

2   untruthfully carries with it the same penalties for

3   perjury that a courtroom oath would?

**4       A    Yes.**

5       Q    Okay.  The fourth rule is that unless your

6   lawyer instructs you not to answer my question, you

7   must provide an answer.  This is true even when your

8   lawyer objects to my question.  You may, however,

9   request that I rephrase or repeat my question.  I'm

10  happy to do that.

11          Do you have any questions about this rule?

**12      A    No.**

13      Q    The fifth rule is that you must provide

14  your answers aloud in words.  This is because the

15  court reporter cannot record nodding or shrugging

16  and needs to be able to transcribe your answer.

17          Do you have any questions about this rule?

**18      A    No.**

19      Q    The last rule is that -- well, the last

20  rule is really a request, and it's that you wait

21  until I finish asking my question before you begin

22  responding to it.  This is to ensure the court

23  reporter can accurately transcribe our conversation.

24          Do you have any questions about this?

**25      A    No.**

MARLA LOAR, PMK

**April 03, 2023**

1      Q     Okay.  Great.  So now that the rules are

2    covered, I have a few remaining remarks before we

3    get started.

4          The first is that if you don't understand a

5    question or any part of it, please tell me.  I'll

6    rephrase it or try to help you understand it.  If

7    you don't tell me that you do not understand the

8    question, I'll assume that you understood it and

9    that your answer is responsive to it.

10          Can we have that agreement?

11     **A     Yes.**

12      Q     Thank you.

13          You're welcome to take a break at any time.

14    Just ask.  However, I request that if I've asked a

15    question that you provide a complete answer before

16    the break.

17          Can we have that agreement?

18     **A     Yes.**

19      Q     So today I'm entitled to your best

20    testimony.  Your best testimony means your honest

21    response based on your firsthand knowledge.  So I

22    don't -- I don't want you to guess, but I might

23    request that you provide me with your best estimate.

24          To provide an example of the difference

25    between a guess and an estimate, a guess is what you

1   would give me if I asked you what breed of dog I

2   have.  Since you've never met my dog, you would have

3   to guess; right?  But if I asked you for the

4   measurements of maybe the table you're sitting at,

5   you could provide me an estimate because it's right

6   in front of you.

7           Do you understand the difference between a

8   guess and an estimate?

9       A    Yes.

10      Q    Thank you.

11          Are you currently taking any prescription

12  medication that might impair your ability to give

13  your best testimony today?

14      A    No.

15      Q    So this is the deposition of the business

16  Gillig, LLC.

17          Do you understand that?

18      A    Yes.

19      Q    Do you understand that if I say "Gillig,"

20  I'm referring to Gillig, LLC?

21      A    Yes.

22      Q    Do you understand that Gillig has

23  designated you as the person most qualified to

24  testify on its behalf as to certain topics?

25      A    Yes.

MARLA LOAR, PMK

**April 03, 2023**

1     Q     So this deposition concerns the class
2     action entitled Tolentino versus Gillig, LLC.  A
3     class action is a lawsuit, if you don't know, filed
4     by or on behalf of a group of people.  Do you
5     understand that this case is a class action?
6     **A     Yes.**
7     Q     In this case, the class action covers the
8     time period from September 16th, 2016 to the present
9     and was filed on behalf of all nonexempt hourly paid
10    employees employed by Gillig in California.
11          Do you understand that if I say "class
12    period," I'm referring to the period of time from
13    September 16th, 2016 to the present?
14    **A     Yes.**
15    Q     Do you understand that if I say,
16    quote/unquote, "employees" or "nonexempt hourly paid
17    employees," I'm referring only to nonexempt hourly
18    paid employees employed by Gillig in California?
19    **A     Yes.**
20    Q     Thank you.  I apologize.  That was a
21    mouthful.
22          Okay.  So the second amended complaint is
23    the operative complaint in this action.  It sets out
24    the claims of the lawsuit.
25          Have you read the second amended complaint?

MARLA LOAR, PMK

**April 03, 2023**

1       A    Yes.

2       Q    Do you understand what this case is about

3   generally?

4       A    Generally.

5       Q    Have you assisted in searching for

6   responsive documents requested by plaintiff or

7   counsel for plaintiff in this action?

8       A    Can you repeat the question, please.

9       Q    Sure.

10           Have you assisted in searching for

11  responsive documents, meaning documents that respond

12  to requests made by plaintiff or counsel for

13  plaintiff, in this action?

14      A    Yes.

15      Q    Have you spoken with anyone other than your

16  attorney about this lawsuit?

17      A    Yes.

18      Q    Who did you speak with?

19      A    Dan Troye, Micah Denecour, Tracy Heskett,

20  Ralph Lora, Nyxoa Nguyen.

21      Q    Are you able to spell the last name?

22      A    Of the last --

23      Q    Nyxoa?

24      A    Nyxoa is spelled N-Y-X-O-A.  Nguyen is

25  N-G-U-Y-E-N.

MARLA LOAR, PMK

**April 03, 2023**

 1      Q    Thank you.

 2           When -- did you speak to each of these

 3    people at different times or at the same time?

 4      **A    At different times.**

 5      Q    Are you able to recall when you spoke to

 6    each of them generally?

 7      **A    Generally within the last several weeks.**

 8      Q    Okay.  Did you meet with your attorney

 9    before you came to the deposition today?

10      **A    I have.**

11      Q    Without telling me what you discussed, can

12    you tell me when you met with your attorney?

13      **A    Last week.**

14      Q    Was anyone present during your conversation

15    with your attorney --

16      **A    Yes.**

17      Q    -- besides you and your attorney?

18      **A    Yes.  Our -- our counsel, Gillig's counsel,**

19    **as well.**

20      Q    Did you review any documents to prepare for

21    the deposition today?

22      **A    I did.**

23      Q    What documents did you review?

24      **A    Both CBAs, collective bargaining**

25    **agreements, the employee handbook that's nonunion, a**

1   couple of wage statements similar to what we

2   provided to you, the -- Tolentino's employee file.

3   That covers everything.  Sorry.  New-hire packets as

4   well, our new-hire packets.

5        Q     I'm going to ask a little bit about you.

6              What's the highest level of education

7   you've received?

8        A     A bachelor's degree.

9        Q     From what university?

10       A     Santa Barbara.

11       Q     University of California?

12       A     Yes, Santa Barbara.  That's correct.

13  University of California Santa Barbara.

14       Q     Have you received any specialized training

15  in any fields apart from, you know --

16       A     No.

17       Q     -- your bachelor's degree?

18             So you have not received specialized

19  training in California employment law?

20       A     I've received training throughout my career

21  experience but not specialized certifications

22  outside of -- I did complete the SHRM certification.

23       Q     And what did the SHRM certification entail?

24       A     It entails the application to practical HR

25  methodologies and theories, et cetera.

1     Q     And was that a certification offered by

2  Gillig as part of your employment?

3     **A     No.  It's a certification offered by an**

4  **outside third party.**

5     Q     Who is your current employer?

6     **A     Gillig, LLC.**

7     Q     And where is -- where is your office

8  located specifically?

9     **A     Livermore, California.**

10    Q     What is your job title at Gillig?

11    **A     Vice president of human resources.**

12    Q     How long have you held this position?

13    **A     Just under seven years.  Well, I've been at**

14 **Gillig for seven years.  My apologies.  This**

15 **position for three-and-a-half years.**

16    Q     What positions have you held before your

17 current position?

18    **A     At Gillig?**

19    Q     At Gillig, yes.

20    **A     Director of HR.**

21    Q     Is that the only prior position you held?

22    **A     That's correct.**

23    Q     So you held that one for about

24 three-and-a-half years as well?

25    **A     Approximately, yeah.**

MARLA LOAR, PMK

**April 03, 2023**

1      Q     Did you receive any training from Gillig

2   before beginning this position, your current

3   position?

4      **A     No.**

5      Q     And what does your current position as vice

6   president of human resources entail?

7      **A     I run the human resources department.  I**

8   **have staff under me.  I'm responsible for everything**

9   **related to employment life cycle, such as hiring,**

10  **development, discipline, terminations as well as**

11  **other things like HR programs and events.**

12     Q     Is that throughout the entire company or

13  just at your -- the Liverpool location?

14     **A     Livermore.  It's --**

15           (Simultaneous speaking.)

16     Q     Livermore, excuse me.

17     **A     -- entire company.**

18     Q     Okay.

19     **A     Entire company.**

20     Q     Okay.  What are your day-to-day duties and

21  responsibilities as vice president of human

22  resources?

23     **A     They vary from day to day, but anywhere**

24  **from attending meetings, having discussions with**

25  **employees, discussions with my staff, approving**

MARLA LOAR, PMK

**April 03, 2023**

1   areas, things such as invoices or various employment

2   actions, interviewing, making recommendations for

3   comp, compensation.  There's a lot -- a lot to it.

4       Q    Have your duties and responsibilities

5   changed or evolved in any way over the past

6   three-and-a-half years that you've held this

7   position?

8       A    **Not significantly, no.**

9       Q    Do you report to any employees?

10      A    **Yes.**

11      Q    Who do you report to?

12      A    **Our CEO, Derek Maunus.**

13      Q    Anyone else?

14      A    **No.**

15      Q    Do any employees report to you?

16      A    **Yes.**

17      Q    How many employees?

18      A    **Currently 15.**

19      Q    What are the job titles of the employees

20  who report to you?

21      A    **There's various titles.  Do you want me to**

22  **list them all?**

23      Q    If you can.

24      A    **Okay.  HR specialists, I have two HR**

25  **specialists.  I have three recruiters, two temps, a**

1    HR manager, HR business partner, director of HR, two
2    payroll specialists, one payroll specialist and a
3    benefit specialist.  It's a combined title.  A
4    doctor, an HEHNS safety manager, an HRS analyst.  I
5    think I captured everybody there.
6         Q    Thank you.
7              In what countries does Gillig operate?
8         A    United States.
9         Q    In what U.S. states does Gillig operate?
10        A    Can you clarify that question.
11        Q    Sure.
12             In what states within the United States
13   does Gillig perform its principal business
14   operations?
15        A    We work in all 50 states, so we sell to
16   customers in all 50 states.
17        Q    So does Gillig hold offices in each state?
18        A    No.
19        Q    Do you know in which states Gillig has an
20   office?
21        A    California.
22        Q    Just California?
23        A    Just California.
24        Q    Is the -- are there multiple offices
25   located in California or just one?

1      A      There are two.

2      Q      In which counties are those offices

3   located?

4      A      Both in Alameda.

5           MR. WARREN:  Counsel?

6           MS. VAN EMMERIK:  Yes.

7           MR. WARREN:  Before you go any further, I

8   just want to make sure I understand what topic

9   we're -- are we into the topics at this point, and

10  what topic are we going into?

11          MS. VAN EMMERIK:  At this point I'm just

12  establishing kind of the general makeup of the

13  company.  Does that answer your question?

14          MR. WARREN:  Yes.  I just -- there -- you

15  know, it's a PMK depo, so I just want to make sure

16  that those topics which she has been designated,

17  that she's being asked those questions.  So just

18  mindful of that.  Okay?

19          MS. VAN EMMERIK:  Sure.  I will be getting

20  into the topics indicated in the notice shortly, but

21  in order to ask those questions in a way that makes

22  sense, I need to establish some preliminary

23  information.  If Marla is not aware of the

24  information or doesn't know it, that's -- that's

25  fine if it wasn't indicated in the topic list.

**April 03, 2023**

```
 1              MR. WARREN:  Okay.
 2              MS. VAN EMMERIK:  Thank you.
 3     BY MS. VAN EMMERIK:
 4        Q    So are the two offices both located in
 5     Alameda, are they the same in nature, meaning do
 6     they engage in the same or similar business
 7     operations?
 8        A    Similar business-related business
 9     operations.
10        Q    Are the hours of operation the same in each
11     office?
12        A    Similar.
13        Q    Do you have roughly the same amount of
14     people, people including exempt and nonexempt
15     employees of Gillig, work at each location?
16        A    Not similar numbers.  Smaller numbers at
17     the other location.
18        Q    Do you have a way in which you
19     differentiate, like through label or name, the two
20     different offices?
21        A    Yes.  Parts warehouse is the other
22     location.
23        Q    So there's parts warehouse, and then what's
24     the name of the other location or the label?
25        A    Livermore location.  I don't -- we don't
```

MARLA LOAR, PMK

**April 03, 2023**

1    necessarily label it.

2        Q    Okay.

3        A    **Or core facility.**

4        Q    Do you know how many nonexempt hourly paid

5    employees currently work at the parts warehouse?

6        A    **I do not.**

7        Q    Do you know generally the same for the

8    Livermore location?

9        A    **General numbers, approximately just under**

10   **600.  575, something around those numbers.**

11       Q    But there are, in fact, hourly nonexempt

12   employees that work at each location?

13       A    **That's correct.**

14       Q    Throughout the class period, has the number

15   of employees, nonexempt hourly employees of Gillig,

16   increased?

17       A    **Yes.**

18       Q    Do you know for what reason the workforce

19   size increased?

20       A    **Increase in production.**

21       Q    So you mentioned that there is at least one

22   nonexempt hourly employee that works at each

23   location, Alameda office.  Do you know whether

24   there's at least one nonexempt hourly paid employee

25   on duty at each location during all hours of

1    operation?

**2        A      Yes.**

3        Q      Are the Gillig offices organized by

4    department?

**5        A      Yes.**

6        Q      Are you able to list the departments?

**7        A      It's extensive.  I don't know that I'd**

**8    capture all of them.**

9              (Simultaneous speaking.)

10             MR. WARREN:  Yeah, Counsel, I -- Counsel,

11    I -- and I have been, I think, accommodating, but

12    this does -- this does sound like you're going into

13    PMK issues.  Is this related to a specific topic --

14             MS. VAN EMMERIK:  I am.

15             MR. WARREN:  -- or is she not being -- or

16    is she not being -- testifying as a PMK at this

17    point?

18             MS. VAN EMMERIK:  I believe our topics

19    indicated on the notice concern policies and

20    practices relative to all nonexempt hourly employees

21    at all California locations.  And my questions so

22    far and my upcoming questions that are still within

23    the realm of general questions help me -- are going

24    to help me understand the day-to-day operations of

25    each of these class -- putative class members.  And

MARLA LOAR, PMK

**April 03, 2023**

1   for that reason, I'm asking about how many employees

2   are at each location and -- and the general makeup

3   of each of the offices.

4            MR. WARREN:  Okay.  So, I mean, can you

5   point to me a specific topic?  Is she -- is she

6   testifying as a PMK at this point?  That's what I'm

7   trying to understand.  Because I think the way you

8   kind of described this was, "So this is background.

9   I'm getting into the PMK topics."  It does sound

10  like you're going into PMK topics.  I just want to

11  understand which PMK topics --

12           MS. VAN EMMERIK:  Oh.

13           MR. WARREN:  -- so that she's clear in her

14  mind.

15           MS. VAN EMMERIK:  I think I'm going to

16  cover pretty much every topic indicated on the

17  notice.

18           MR. WARREN:  Okay.  So she -- she -- we did

19  object to several of these topics, and I did inform

20  your colleagues that with respect to Topics No. 2

21  and 13, Ms. Loar is not the PMK for that.  Gillig

22  does not have a PMK for those two topics.  They're

23  just -- as they're described, as they're phrased --

24           MS. VAN EMMERIK:  Okay.

25           MR. WARREN:  -- it's just too broad

1  so -- for any one person to address.

2         MS. VAN EMMERIK:  That's no problem.  I'm

3  close to being done with this section.  I really

4  just want to know the general makeup of the offices,

5  and I think that --

6         MR. WARREN:  I'll let you go a little

7  further -- I'll let you go -- yeah.  I'll let you go

8  a little further, but I do want to make sure that

9  we're staying within the scope of the PMK notice.

10  Thank you.

11         MS. VAN EMMERIK:  Sure.  You're also

12  welcome to object on the basis of relevance if you'd

13  like to maintain that objection, but, again, I'm

14  almost done with this section, and we'll move on to

15  the nonobjected-to topics of the PMK depo notice.

16  BY MS. VAN EMMERIK:

17     Q    Okay.  So we were discussing the

18  organization of each of the offices.  You said that

19  there's an extensive list of departments.  Is that

20  true for each office?

21     **A    No.  Primarily Livermore.**

22     Q    Are you aware of what departments make up

23  the parts warehouse?

24     **A    Generally.**

25     Q    Can you provide more detail about the

1    departments at that location?

2        A    There's two departments.  Parts -- they're

3    both parts warehouse.  One is nonunion, doesn't fall

4    under this class, and one is the union.

5        Q    Okay.  And what do the union nonexempt

6    hourly employees typically do at the parts

7    warehouse?

8        A    Warehouse-related work.

9        Q    Which is what exactly?  Or do you have

10   specific examples of warehouse work?

11       A    It's the receiving packages, packing

12   packages, managing inventory, driving forklifts.

13       Q    Is the nature of that work distinct from

14   the nature of the work of the nonexempt employees

15   who work at the Livermore location?

16       A    Can you repeat the question.

17       Q    Sure.  I can rephrase.

18            The warehouse work undertaken by nonexempt

19   hourly employees at the parts warehouse location, is

20   that the same work that is engaged in at the

21   Livermore location by other nonexempt employees?

22       A    Yes.  In our warehouse in Livermore, yes,

23   similar work but -- yes.

24       Q    Do nonexempt hourly employees engage in

25   other -- other work at the Livermore location in

1   addition to warehouse work?

**2       A    Yes.**

3       Q    Can you tell me what that is generally?

**4       A    It's very broad.  They're assemblers and**

**5   maintenance workers, and we have temps that work in**

**6   the office.**

7            MR. WARREN:  Yeah, I'm going to object

8   belatedly.  This sounds like it's under Topic 2,

9   which we objected to as being overly broad and that

10  Ms. Loar is not being designated as a PMK for every

11  job title and job duty within the company, so I

12  state my objection for the record.

13  BY MS. VAN EMMERIK:

14      Q    Do you work at each Alameda location, or

15  are you just at Livermore?

**16      A    I primarily work at Livermore.  I**

**17  occasionally go to the other location in Hayward.**

18      Q    For what reasons would you go to the parts

19  warehouse location?

**20      A    Employee events, employee issues.**

21      Q    So irrespective of their location, their

22  department, or job title, were all nonexempt hourly

23  paid employees subject to the same timekeeping

24  policy of Gillig?

25           MR. WARREN:  I'm going -- I'm going to

1  object as lacks foundation.  Again, it's beyond the

2  scope of the PMK, this PMK, of this person most

3  qualified.

4           Do you understand the question?

5           THE DEPONENT:  Can you repeat it.

6           MS. VAN EMMERIK:  Can we briefly go off the

7  record, actually, so that we can clarify a few

8  things?

9           MR. WARREN:  Sure.

10          THE VIDEOGRAPHER:  The time is 10:40 a.m.

11  We're now off the record.

12          (Discussion held off the record.)

13          THE VIDEOGRAPHER:  The time is 10:43 a.m.

14  We're back on the record.

15          MS. VAN EMMERIK:  Thank you.

16  BY MS. VAN EMMERIK:

17     Q    So to repeat my last question, were all

18  nonexempt -- or are all nonexempt hourly paid

19  employees subject to the same timekeeping policy at

20  Gillig?

21          MR. WARREN:  And I'm going to repeat my

22  objection.  Lacks foundation.

23  BY MS. VAN EMMERIK:

24     Q    You can answer my question, Marla, if you

25  understand it.

MARLA LOAR, PMK

**April 03, 2023**

1          MR. WARREN:  And it's also overbroad.

2          THE DEPONENT:  For the union production

3     employees, yes.  They have two -- two CBAs that they

4     follow:  Painters and union.

5     BY MS. VAN EMMERIK:

6      Q    Are you able to explain what that

7     timekeeping policy is?

8      **A    Can you be more specific.**

9      Q    Sure.

10         So the time- -- the timekeeping policy that

11    you reference with regard to union production

12    employees, can you detail what that timekeeping

13    policy entails?

14     **A    Is there a specific area of the timekeeping**

15    **policy you would like me to cover?**

16     Q    I guess broadly.  What -- let me repeat.

17         Are nonexempt hourly employees required to

18    clock in and clock out of each shift?

19     **A    Yes.**

20     Q    Is this true for all nonexempt hourly

21    employees who work at Gillig in the Alameda

22    locations?

23     **A    Yes.**

24     Q    Are these employees informed of this policy

25    when they begin working at Gillig?

1      **A      Yes.**

2      Q      Are they informed through written

3      documentation or verbally or both?

4      **A      Combination of both.**

5      Q      In terms of the written documentation, is

6      it through the employee handbook or other document?

7      **A      Through our welcome letter for the union,**

8      **production employees, as well as the CBA, and our**

9      **employee handbook for nonunion.**

10     Q      Does Gillig use a timekeeping system?

11     **A      Yes.**

12     Q      Do you know the name of that system?

13     **A      Kronos.**

14     Q      Could you spell that for me, please.

15     **A      K-R-O-N-O-S.**

16     Q      Thank you.

17            Is this the same timekeeping system that

18     was used throughout the duration of the class

19     period?

20     **A      Yes.**

21     Q      Can you explain how nonexempt hourly

22     employees interface with the timekeeping system,

23     meaning do they scan a finger?  Do they have to log

24     in with a -- with login information?

25     **A      The union employees use a magnetic card to**

1  swipe in and out.  And the nonunion employees log in

2  through a web-based portal.

3      Q    How do the nonunion employees log in and

4  out with a web portal?  Is that with a computer?

5      A    Yeah, with a computer, with their computer.

6      Q    You said with their own personal computer?

7      A    Well, work-assigned computer.

8      Q    Okay.  So with respect to the union

9  employees who use a magnetic card, are there

10 multiple locations in which the timekeeping system

11 is located for them to clock in, or is there only

12 one location?

13     A    Yes.  No, there's multiple.  Each

14 department has one.

15     Q    Can you provide an estimate of how many

16 departments there are?

17     A    In which --

18     Q    At the Liver- -- Livermore location.

19     A    This goes back.  A estimate would be

20 something around 35 to 40.

21     Q    So are there 35 to 40 clock-in time

22 systems -- or timekeeping systems where you can use

23 the magnetic card?

24     A    There's 25 to 30 for union.  The rest of

25 the departments I was including are corporate,

1    though.  They wouldn't have a clock in.  They'd be

2    using individual computers.

3        Q    So is it fair and accurate to say there is

4    a timekeeping system for union employees in each

5    department in which a union employee works?

6        A    Yes.

7        Q    And is that just one timekeeping system, or

8    can there be multiple within one department?

9        A    There could be multiple in some

10   departments.

11       Q    Why might there be multiple in some

12   departments and not others?

13       A    Because some departments work across the

14   plant, so their employees might clock in in another

15   time clock that's closer to the workstation.

16       Q    Just so I have an understanding of the

17   process for clocking in.  Is Gillig an office

18   building, the Livermore location?

19       A    Yes, we have an office building.

20       Q    Do you know about how many floors there are

21   in the office building?

22       A    Two.

23       Q    So on those two floors, there's 35 to 40

24   departments?

25       A    No.  We have a production floor as well

1    because we're manufacturing, so we have a production

2    floor which is part of the building, then we have an

3    office building.

4        Q    Okay.  And do nonexempt hourly employees

5    work in each of those floors, so the production

6    floor and then the two within the office building?

7        A    They could, yes.  Majority work in the

8    production.

9        Q    Do you know about how many departments

10   there are within the production floor, or is

11   production its own department?

12       A    It is a department, but they have

13   subdepartments.  So I would say 25 to 30 departments

14   within the production floor.

15       Q    And is there a clock-in system at each

16   subdepartment, or is there just --

17       A    Those are the departments I was referring

18   to.

19       Q    Okay.  Got it.

20           So just so I have it clear, when a union

21   employee clocks in, they have a magnetic card they

22   use to swipe the timekeeping system located within

23   their department and/or subdepartment?

24       A    Their department.  Their -- it's -- when I

25   said "subdepartment," production is one large

MARLA LOAR, PMK

**April 03, 2023**

1    organization, and they have departments that make

2    up.  There's not a massive -- a major department of

3    production.  That's just what we refer to them as.

4         Q    Okay.

5         A    So all the departments in production are

6    called production.

7         Q    Okay.  So apart from -- apart from what I

8    said about subdepartments, is that accurate?

9         A    Can you repeat the statement.

10        Q    Sure.

11             So union employees clock in by swiping

12   their magnetic card at the timekeeping system

13   located within their department?

14        A    That's correct.

15        Q    Would there be any reason for an employee

16   to swipe in at a different department?

17        A    Not to my knowledge.  Their card is kept in

18   their department, so they'd have to pick up their

19   card and walk somewhere else to clock in.

20        Q    Okay.  Where are the cards located --

21        A    In their department, next to --

22        Q    -- relative to the timekeeping system?

23             Sorry.

24        A    In their department, next to the time

25   card -- the time clock.

MARLA LOAR, PMK

**April 03, 2023**

1    Q    And then for nonunion employees, they clock

2    in also at their respective departments and do so by

3    logging in to their work-assigned computer?

4    **A    They log in to their computers, wherever**

5    **their computers are at.**

6    Q    Can you provide details as to what logging

7    in entails?  For example, do they have to type in,

8    like, a username and password or --

9    **A    That's correct.  They need to type -- they**

10    **have individual username and passwords.**

11    Q    Do each -- scratch that.

12         Irrespective of how an employee --

13    nonexempt hourly employee clocks in, whether it's

14    through the magnetic card or logging in on his or

15    her work computer, does the timekeeping system log

16    their time the same way?

17         MR. WARREN:  Objection; vague as to the

18    term "same way."

19         THE DEPONENT:  Can you repeat the question.

20    BY MS. VAN EMMERIK:

21    Q    Sure.

22         So you differentiated between the way in

23    which union employees and nonunion employees clock

24    in; is that correct?

25    **A    That's correct.**

1      Q    Irrespective of how these employees clock

2   in or the way in which they clock in, does the

3   timekeeping system record their clock-in time in the

4   same way?  For example, if, but not necessarily if,

5   the timekeeping system for the magnetic card users

6   logs a clock-in time with the hour, minute, and

7   seconds, would that be the same for a clock in

8   through the -- through a work computer?  Like, is

9   the timekeeping system logging the time in the same

10  way?

11      **A    I can't speak to the technology behind it,**

12  **but I can speak to their time cards look similar.**

13      Q    Okay.  And by "look similar" you mean they

14  each document in the same way the time that each

15  employee clocked in?

16      **A    Similarly.**

17      Q    Is it similarly or the same?

18          MR. WARREN:  Objection; vague.

19          THE DEPONENT:  It's so general, it's hard

20  for me to answer that question.

21  BY MS. VAN EMMERIK:

22      Q    Does a time record produced for an

23  individual who clocked in with a magnetic card, does

24  that resemble or is it exactly the same as the time

25  record produced for a person who clocked in using

1    their -- the work computer?

2        **A    Again, they are similar.  I don't know what**

3    **you're going to look at specifically in the time**

4    **record.  There's a lot of data in the time record.**

5    **So, yes, similar in nature.  They stamp the time**

6    **that they clock in and note the time they clock in.**

7        Q    I guess framed differently, do the time

8    records reflect all employees' -- "employees" as in

9    nonexempt hourly employees -- actual clock-in and

10   clock-out times?

11           MR. WARREN:  Objection; vague as to the

12   term "actual clock-in, clock-out time."

13   BY MS. VAN EMMERIK:

14       Q    Would you like me to define "actual," or do

15   you understand?

16       **A    Please define "actual."**

17       Q    So "actual" would be the hour, minute, and

18   seconds that the employee clocked in, for example,

19   1:54 p.m. and 34 seconds.

20       **A    I believe they record the hours and the**

21   **minutes the same.**

22       Q    Are the time records produced by the

23   timekeeping system used to calculate nonexempt

24   hourly employees' paychecks?

25       **A    The timekeeping system collects the hours**

1    worked.   It's not -- but it does not calculate the

2    pay.

3         Q    So to differentiate between calculating the

4    pay and using it to calculate the pay, do the time

5    records -- or excuse me -- are the time records used

6    in order to calculate the pay --

7         A    Yes.

8         Q    -- of nonexempt hourly employees?

9              So I'm going to drop an exhibit into the

10   chat marked as Exhibit A.  Let me know if you can't

11   see it.

12             (Plaintiffs' Exhibit A was subsequently

13        marked for identification.)

14             THE DEPONENT:  I don't see it.

15   BY MS. VAN EMMERIK:

16        Q    Please let me know when you can see the

17   document.

18             THE DEPONENT:  Just save it to the --

19             MR. WARREN:  Yeah, just save it, uh-huh.

20             THE DEPONENT:  I can see it.

21   BY MS. VAN EMMERIK:

22        Q    Okay.  So take a moment to review the

23   document.  It doesn't have to be in nitty-gritty

24   detail, but just glance over it, and let me know

25   when you're done reviewing it.

1    **A    I'm done.**

2    Q    Do you know what this document is?

3    **A    Yes.  It looks like a report from our**

4    **Kronos system.**

5    Q    What kind of report?

6    **A    A time card report.**

7    Q    Does this time card report look like a

8    report that would come from a magnetic log in or

9    computer log in or both?

10    **A    Magnetic log in.**

11    Q    How does it differ from a report that might

12    be produced from a computer log in?

13    **A    A computer log in will have the meal period**

14    **in and out, if applicable.**

15    Q    Is it fair and accurate to say that this

16    time report is typical of those produced from an

17    employee clocking in and out using the magnetic log

18    in?

19    **A    That's correct.**

20    Q    Okay.  So can you please look at the column

21    labeled "In" on the first page of the document

22    Bates-stamped D00410.

23    **A    Can you repeat that.**

24    Q    Sure.

25    So on the first page, which is

1    Bates-stamped D00410 in the bottom right-hand

2    corner, can you please look at the column labeled

3    "In," I-N.

4           Do you see what I'm referring to?

5    **A    Yeah.**

6    Q    Okay.

7    **A    I just had to scroll down.**

8    Q    Oh, okay.

9    **A    I apologize.**

10   Q    Can you please explain what this column

11   represents.

12   **A    It indicates the time that the individual**

13   **clocked in or in punch time.**

14   Q    By "clocked in" do you mean scanned his or

15   her magnetic card -- or his, rather, since it's

16   his --

17   **A    It's the time in which -- give me a second.**

18   **I got to blow it up.  It's small.**

19   Q    Okay.

20   **A    Yeah, it looks like the time that they**

21   **clock in to the magnetic -- with the magnetic strip.**

22   Q    Okay.  So is it fair and accurate to say

23   that at -- apart from the first column, which says

24   "2:00 PM," every other day indicated on that first

25   page, the employee which is -- who is identified in

1    the upper left-hand corner scanned in with their

2    magnetic card at 1:50?

3        **A       That looks to be the case, yes.**

4        Q    Is 1:50 reflective of that precise time

5    that Mr. Tolentino scanned his card, or does the

6    system -- or has the system in some way rounded this

7    number such that he scanned in at the exact same

8    minute of every day listed on that first page?

9        **A       It's my understanding it's the time he**

10   **clocked in.**

11       Q    Apart from it being -- potentially being

12   the exact time that he clocked in on each day, might

13   there be any other reason that this record indicates

14   that he clocked in precisely at 1:50 each day

15   indicated on this first page?

16           MR. WARREN:  I'm going to object; calls for

17   speculation.

18   BY MS. VAN EMMERIK:

19       Q    I can provide an example to make it more

20   concrete.

21       **A       Appreciate that.**

22       Q    So, for instance, if Mr. Tolentino or --

23   let's stick with Mr. Tolentino.  If Mr. Tolentino

24   clocked in at 1:49 p.m. but the system did not allow

25   him to clock in until 1:50 p.m., would the system

1    change his time to reflect that 1:50 p.m. time such
2    that all of these times came out to be the exact
3    same time every day?  That's just an example.
4        A    It's my understanding they are unable to
5    clock in before 1:50 in his particular case.
6        Q    Okay.  So applying that to the general
7    timekeeping policy of Gillig at each of these
8    California locations, is it the policy of Gillig
9    that employees cannot clock in before ten
10   minutes -- or ten minutes ahead of their respective
11   shifts?
12       A    That's correct.
13       Q    So on this same first page, the column
14   labeled "Out" --
15       A    Uh-huh.
16       Q    -- does that column represent the clock-out
17   time of the individual indicated on the first page
18   of this exhibit?
19       A    That would be my understanding.
20       Q    And do you see the column labeled "Shift"
21   on that same first page?
22       A    Not "Shift."  "Schedule"?
23       Q    "Shift."  It's the third column from the
24   right.
25       A    Yes.

1      Q    Can you please explain what "Shift" means

2    in the context of this time record.

3      **A    It appears to calculate the number of hours**

4    **worked.**

5      Q    So you mentioned that you know that this is

6    a record -- a time record produced from an

7    individual who clocked in using a magnetic

8    strip -- or, excuse me, card because it does not

9    indicate the meal period clock-in and clock-out

10   times; is that correct?

11     **A    That's correct.**

12     Q    And you said that the "Shift" column

13   represents the number of hours worked; is that

14   correct?

15     **A    It appears, yes.**

16     Q    So the "Schedule" column

17   indicated -- labeled, the second column from the

18   right-hand -- oh, sorry, from the left-hand side of

19   this time card, that reflects the schedule of the

20   individual indicated or identified in the upper

21   left-hand corner of the same first page of

22   Exhibit A; is that correct?

23     **A    Yes, that's correct.**

24     Q    So the schedule for this individual for

25   each day indicated on this initial page was from

1    2:00 p.m. to 10:30 p.m.; is that correct?

**2**       **A    That's correct.**

3       Q    The number of hours between these two time

4    periods is ten-and-a-half hours; is that correct --

5    or, sorry, eight-and-a-half hours?  Excuse me.

**6**       **A    Yes, that's correct.**

7       Q    And because the "Shift" column which we

8    identified before indicates eight hours, is it fair

9    and accurate to say that that time does not include

10   the time that this individual clocked in and out for

11   their 30-minute meal period?

12          MR. WARREN:  Objection; lacks foundation.

13   BY MS. VAN EMMERIK:

14      Q    If you understand my question, you can

15   answer it.  Otherwise, I'm happy to --

16          (Simultaneous speaking.)

**17      A    So the union employees don't clock in and**

**18   out for their meal period.**

19      Q    Right.  So the schedule reflects that this

20   individual was scheduled to work eight-and-a-half

21   hours on each of the days indicated on this time

22   record; is that correct?

**23      A    It appears so, yes.**

24      Q    But the "Shift" column indicates that the

25   individual only worked eight hours; is that correct?

MARLA LOAR, PMK

April 03, 2023

1      A      Yes.

2      Q      Okay.  So my question has to do with that

3  missing 30 minutes.  Even though the individual

4  indicated on his time card did not clock in and out

5  for his or her meal period, is that 30 minutes

6  unaccounted for in the "Shift" column attributed to

7  the meal period?

8      A      Yes, it's attributed to the meal period.

9      Q      Okay.  Based on the in and out time punches

10 of the individual reflected in this -- on this first

11 page, this person clocked in and out at 1:50 p.m.

12 and 10:30 p.m., respectively; is that correct?

13     A      That's correct.

14     Q      Can you explain why -- where that ten

15 minutes of time between 1:50 p.m. and 2:00 p.m., his

16 scheduled time, is reflected in the "Shift" column?

17     A      It's not reflected because we don't start

18 work until the start of shift.  The clock-in time

19 doesn't reflect his starting work time.

20     Q      Can you explain in more detail how you

21 differentiate between clock-in time and, quote,

22 "starting work time," end quote?

23     A      Starting work time is the time the shift

24 starts and the work is to begin.  The clock-in time

25 is the time that they went to the time clock and

MARLA LOAR, PMK

**April 03, 2023**

1    punched in.

2        Q    So Gillig, as you mentioned, permits

3    employees, nonexempt hourly employees, to clock in

4    ten minutes before his or her scheduled shift; is

5    that accurate?

6        A    That's accurate.

7            MR. WARREN:  Counsel, I'm going to just

8    object to this line of questions.  This is going

9    into an area of -- it's governed by, actually, the

10    CBA.  Any time that's worked before the shift, any

11    time that's worked after the start of the shift

12    falls within the jurisdiction of the CBA.  So I'm

13    going to object on the -- on the basis of that these

14    questions are -- do not -- are not calculated to

15    lead to relevant evidence.

16            It's going to be a standing objection.  Any

17    questions regarding work time before the start of

18    the shift and work time at the end of the shift,

19    alleged work time at the end of the shift falls

20    under the jurisdiction and covered by the CBA --

21            MS. VAN EMMERIK:  Okay.  That's fine.

22            MR. WARREN:  -- as -- as overtime as

23    defined by the CBA, and overtime is not at issue in

24    this case.

25            MS. VAN EMMERIK:  Okay.  The basis for this

MARLA LOAR, PMK

April 03, 2023

```
1   line of questioning concerns 1194.  It doesn't

2   concern overtime.  And so for that reason, I'm going

3   to continue, but I recognize your -- or acknowledge

4   your standing objection.

5   BY MS. VAN EMMERIK:

6       Q    So can you explain why employees who clock

7   in with the magnetic card do not clock in and out

8   for their meal periods?

9       A    Because we cease operations during meal

10  periods.

11      Q    Can you explain what "cease operations"

12  means?

13      A    The production line stops working in its

14  entirety.

15      Q    And so you don't require those employees on

16  the production line to then go back to their

17  computers and clock out?  It's just assumed?  Okay.

18      A    That's correct.

19      Q    So the employees who are not required to

20  clock out for their meal periods, they could not

21  continue working if they tried?

22          MR. WARREN:  Objection; lacks foundation,

23  calls for speculation.

24          THE DEPONENT:  So I would say it's our

25  practice that they don't work.  It's very common.
```

MARLA LOAR, PMK

April 03, 2023

1  The plant shuts down, people take their break.  It's
2  a very, very common practice.  So if someone
3  happened to work during a lunch period, the
4  supervisor would be well-informed, and we would pay
5  them.  But it doesn't happen.  The team is very
6  well-organized.  We stop production.  The line is
7  quiet.  It's quiet out there.  People are taking
8  their breaks.  They leave their workstation or eat
9  their -- at their workstation.  They don't work.
10 The supervisor is right there.  It's a common
11 practice.
12 BY MS. VAN EMMERIK:
13     Q    Before I'm done with the -- with Exhibit A,
14 I wanted to just clarify one more time the
15 difference between what you called clocking in and
16 working time.
17          When an employee clocks in, Gillig does not
18 consider that employee to be working until his or
19 her scheduled start time begins; is that accurate?
20          MR. WARREN:  I'm going to object; misstates
21 testimony.
22          (Simultaneous speaking.)
23 BY MS. VAN EMMERIK:
24     Q    If that's inaccurate, you're welcome to
25 correct that summary.

MARLA LOAR, PMK

**April 03, 2023**

1        A    Can you repeat what you summarized.

2        Q    Sure.

3             So the purpose in me asking my question is

4    to clarify the difference between clocking in and

5    the -- what you've referred to as the employee's

6    working time.

7             And so -- give me just a moment.

8             So Gillig does not consider one and the

9    same the time that an employee clocks in with the

10   time that an employee begins work; is that accurate

11   to say?

12             MR. WARREN:  Objection; misstates

13   testimony, lacks foundation.

14             THE DEPONENT:  No, that's not accurate.

15   BY MS. VAN EMMERIK:

16        Q    Can you then explain in detail why there's

17   a difference between the clock-in time and the time

18   in which Gillig considers the employee to have begun

19   work?

20             MR. WARREN:  Again, I'm -- again, I know

21   this is a standing objection, but this ventures into

22   the area of overtime subject to the CBA and,

23   therefore, it lacks relevance.

24             Go ahead.

25             THE DEPONENT:  So I made a statement in

1    regards to his time clock.  The 1:50 is the time he

2    clocked in.  His start of work is at 2:00.  So I can

3    speak to, yes, in this case, the 1:50 clock-in time

4    does not represent the start of his work time.  The

5    work starts at 2:00 p.m., not at 1:50.

6    BY MS. VAN EMMERIK:

7         Q    So the ten minutes between 1:50 p.m. and

8    the 2:00 p.m. start time, scheduled start time, is

9    not considered time worked by Gillig with respect to

10   this time card?

11        A    That's correct.  A general statement, yes,

12   that's correct.

13            MS. VAN EMMERIK:  I think this is a good

14   time to take a break.  I'm open to a five- to

15   ten-minute break, whatever is preferred.

16            THE DEPONENT:  Doesn't matter to me.

17            MR. WARREN:  Yeah, a five-minute break is

18   fine.  And just for planning purposes, Counsel, are

19   you planning to take a break for lunch?  How far are

20   we going to go?  Sort of -- just for -- I'm not

21   trying to push you.  I just want to understand the

22   timing.

23            MS. VAN EMMERIK:  Yeah, let me --

24            THE VIDEOGRAPHER:  Counsel, would you like

25   to go off the record?

MARLA LOAR, PMK

**April 03, 2023**

```
 1              MS. VAN EMMERIK:  Yes, please.  Thank you.
 2              THE VIDEOGRAPHER:  The time is 11:25 a.m.,
 3   and we're now off the record.
 4              (Recess taken.)
 5              THE VIDEOGRAPHER:  The time is 11:38 a.m.
 6   We're back on the record.
 7              MS. VAN EMMERIK:  Thank you.
 8   BY MS. VAN EMMERIK:
 9       Q    Okay.  So I have just a few more questions
10   related to Exhibit A, and then we'll move on from it
11   after that.
12              So just so I'm clear, is it fair and
13   accurate to say that Gillig does not pay nonexempt
14   hourly employees anything for the time between their
15   clock-in time so the in time indicated on the time
16   sheet and the scheduled time indicated also on the
17   time sheet?
18              MR. WARREN:  Objection; lacks foundation,
19   misstates testimony.
20              THE DEPONENT:  I'll go back to in this
21   situation, the 1:50 time to 2:00 o'clock is, yes,
22   not paid time because it's not work time.  We pay
23   them for worked time.
24   BY MS. VAN EMMERIK:
25       Q    This is true, to be clear, for all
```

1  nonexempt hourly employees irrespective of how they

2  clock in, whether with the computer or with their

3  magnetic card?

4          MR. WARREN:  Objection; lacks foundation,

5  calls for speculation.

6          THE DEPONENT:  No, that's not true.

7  BY MS. VAN EMMERIK:

8      Q    So it's -- so employees who clock in using

9  the computer provided by the company, they would be

10 paid for time before their scheduled time if they --

11     **A    Yes.**

12     Q    If they clocked in before their scheduled

13 time, they would be paid?

14     **A    If they work.  There's -- they clock in**

15 **when they start work.  It's not necessarily**

16 **scheduled.  It's different jobs.  They're different**

17 **jobs.  Production line is a production line, and it**

18 **starts work on their scheduled shift.  On the**

19 **nonunion, they have different types of jobs, so it**

20 **depends on the job.  But in both cases, we pay for**

21 **worked time.  Production workers can't work until**

22 **the start of the shift.**

23     Q    How do you determine in situations where an

24 employee, a nonexempt hourly employee has clocked in

25 before their scheduled time but has worked during

MARLA LOAR, PMK

**April 03, 2023**

1  that time preceding their scheduled time?

2         MR. WARREN:  Objection; calls for

3  speculation.

4         THE DEPONENT:  Repeat the question, please.

5  BY MS. VAN EMMERIK:

6     Q    So you said in some instances -- and

7  correct me if I'm wrong -- nonexempt hourly

8  employees will clock in before their scheduled time

9  but will be working during that time; is that

10  accurate?

11         MR. WARREN:  Misstates -- objection;

12  misstates testimony.

13         THE DEPONENT:  That's not accurate.

14  BY MS. VAN EMMERIK:

15     Q    You said in some instances, an employee who

16  clocks in using the computer provided by Gillig will

17  begin work before their scheduled time?

18         MR. WARREN:  Objection; vague as to the

19  term "computer provided by Gillig."  Are we talking

20  about time clocks or computers?

21  BY MS. VAN EMMERIK:

22     Q    Do you know what computer I'm referring to,

23  Ms. Loar?

**24     A    Are you talking about computers or the time**

**25  clocks?**

MARLA LOAR, PMK

**April 03, 2023**

1      Q     The computer used to log in in order to

2   clock in.

**3          A     Not the time clock?**

4      Q     Not the time clock used for the magnetic

5   card but the computer used to clock in for the...

**6          A     So employees that clock in via computer,**

**7   not the time clock --**

8      Q     Yes.

**9          A     -- clock in when they begin work, when**

**10  they're ready to start work.  It's not dependent on**

**11  a production line and a shift and a schedule.  They**

**12  start work -- they clock in when they start working.**

13     Q     Okay.  So if --

**14         A     They're ready to start work.**

15     Q     If that clock-in time is before the

16  scheduled time, because they have, quote/unquote,

17  "started work," they would be paid for the time that

18  they -- for the time between their log-in time and

19  their scheduled time?

**20         A     Yes, because they can start work --**

21     Q     Okay.

**22         A     -- outside of their schedule.  It's a**

**23  different job.**

24     Q     Okay.  When you say "they can start work,"

25  you're distinguishing between production line

1    employees who cannot start, quote/unquote "start

2    work."  Can you explain why nonexempt employees who

3    work on the production line cannot start work?

4        **A    Because they are assigned work at the**

5    **beginning of their shift.  They're given a work**

6    **assignment, so they don't know what to work on prior**

7    **to the start of shift.  Therefore, work's not**

8    **directed for them until the start of shift.**

9        Q    And their assignment is not given until

10   their scheduled start time?

11       **A    It's given out at, yes, the start of their**

12   **shift.**

13       Q    Do you know what nonexempt hourly employees

14   who clock in with the magnetic time card do between

15   clocking in and receiving their assignment?  Is

16   there --

17            MR. WARREN:  Objection; calls for

18   speculation.

19            THE DEPONENT:  Yeah, I'd be speculating.

20   BY MS. VAN EMMERIK:

21       Q    Okay.

22       **A    Talking with co-workers.**

23            MR. WARREN:  She doesn't want you to

24   speculate.

25   ///

MARLA LOAR, PMK

**April 03, 2023**

1    BY MS. VAN EMMERIK:

2        Q    So, for example, you mentioned that they

3    would be talking to co-workers.  Is there a

4    designated area that employees would gather before,

5    or they would just be in their respective

6    departments?

7        **A    I'd be speculating.**

8        Q    Can you say whether it was common for

9    employees who clocked in using their magnetic time

10   card to then leave the premises and return or

11   whether it was more common for them to remain on the

12   premises until their scheduled start time?

13           MR. WARREN:  Objection; calls for

14   speculation.

15           THE DEPONENT:  Again, I'd be speculating.

16   BY MS. VAN EMMERIK:

17       Q    Can you tell me about the general process

18   for entering the Livermore office building?  Do

19   employees have to park their cars and travel from a

20   parking garage and then go through security, or can

21   you just give me a general sense of how employees

22   enter the building?

23       **A    We have an employee parking lot, and**

24   **there's various entries that they can enter the**

25   **plant, either the production plant or the corporate**

1    office.

2        Q    How far from the parking lot is the nearest

3    entry to the office building?

4        **A    It depends on the parking spot.**

5        Q    Okay.  From the -- so the -- was it a

6    parking structure, or was it a parking lot?

7        **A    It's a parking lot.**

8        Q    Okay.  So just so I can imagine this, if it

9    was from the nearest parking stall to the nearest

10   entry, how far of a distance or walk would that be?

11       **A    It would be 20 feet.**

12       Q    Okay.

13       **A    Closest, 20 feet.**

14       Q    Could you also provide an estimate as to

15   the furthest lot stall to the furthest department in

16   the office?

17       **A    I'm horrible at distance, but...**

18       Q    You could provide it in minutes or seconds

19   as well if that's easier.

20       **A    Three -- could be a three-minute walk.**

21       Q    Can you speak on the reason Gillig had a

22   policy of allowing employees to clock in ten minutes

23   before their scheduled shift time?

24       **A    I wasn't here when it was established, but**

25   **we have 550 people trying to clock in at the same**

April 03, 2023

```
 1   time.  So...

 2       Q    So one reason, is it fair and accurate to

 3   say, could be because of the sheer number of

 4   employees who are trying to clock in at the same

 5   time?

 6       A    That's correct.

 7       Q    And to ensure that they all have an

 8   opportunity to clock in on time?

 9       A    That's correct.

10       Q    Are there ever instances in which an

11   employee failed accidentally maybe to clock in or

12   out?

13       A    Absolutely.

14       Q    And what was the process for recording or

15   establishing the time that that employee actually

16   clocked in and out that day?

17       A    The supervisor needs to enter their time

18   clock.

19       Q    When does the supervisor do that?  Like,

20   the day of or...

21       A    As soon as they're informed, right, as soon

22   as they know -- as soon as they're able to collect

23   the information and enter it.

24       Q    Was it an ever -- was it ever an issue in

25   any department in which a timekeeping system is
```

```
 1  located that too many individuals were trying to
 2  clock in at the same time that people couldn't
 3  clock-in timely, or was it generally -- was it
 4  generally the case that there were enough time
 5  systems and time to clock in?
 6      A    I'm not aware of any issue --
 7      Q    Okay.
 8      A    -- around clocking in timely.
 9      Q    Switching gears slightly --
10          MR. WARREN:  Counsel, are you done with
11  this Exhibit A?
12          MS. VAN EMMERIK:  Yes, I am.  Thank you.
13          THE DEPONENT:  Thank you.
14  BY MS. VAN EMMERIK:
15      Q    Are you aware of whether Gillig gives any
16  bonuses to nonexempt hourly paid employees?
17      A    We provide a bonus for union nonexempt
18  employees.  It's a perfect attendance award is
19  actually what we call it.
20      Q    How do you -- how does Gillig define
21  perfect attendance?
22      A    In general, we define it as an individual
23  who's been present, attended work on time every day
24  that's planned.  They're allowed to take vacation.
25  So planned days, they show up for all scheduled
```

1  workdays on time for a year, from January 1st

2  through December 31st.  That makes them eligible for

3  perfect attendance.  There's some exceptions,

4  there's -- that I don't have all the details on

5  exceptions, but generally that is the perfect

6  attendance program.

7       Q    Can you provide an example of an exception

8  just so I get a sense of...

9       A    Someone is out sick.  Calls in sick.

10      Q    If somebody's out sick, for instance, is

11  there a process -- like, would they need to submit a

12  doctor's note of some sort in order to preserve

13  their eligibility for the bonus?  Like, are there

14  additional actions that the employee needs to take

15  in order to...

16      A    No.  If you're out sick, you -- you're

17  excluded from the program.

18      Q    Okay.  I'm a little confused now.

19           So I thought that being sick was an

20  exception to the --

21      A    Meaning you wouldn't qualify.

22      Q    You would not qualify.  Okay.  Got it.

23           Is this the only bonus that union nonexempt

24  employees would qualify for at Gillig?

25      A    Yes.

MARLA LOAR, PMK

**April 03, 2023**

1    Q    Were there any bonuses that nonexempt
2  hourly employees who were nonunion were qualified
3  for?
4    **A    It's possible depending on the job.**
5    Q    Are you able to list the other bonuses?
6    **A    I can't think of any off the top of my**
7  **head.  I just can't speak universally to -- they are**
8  **not eligible for the perfect attendance --**
9    Q    Okay.
10    **A    -- the nonunion.  Only union is eligible**
11  **for the perfect attendance bonus.**
12    Q    Does Gillig incorporate the perfect
13  attendance bonus into its employees' respective
14  regular rates of pay?
15    **A    I would need to research that answer.  I**
16  **don't know that.**
17    Q    Okay.  So I understand there's kind of a
18  different setup with respect to
19  employees -- nonexempt hourly employees on the
20  production line and nonexempt hourly employees who
21  are not on the production line when it comes to meal
22  breaks, but can you detail for me each general
23  policy with respect to when employees in each role
24  are allowed or instructed to take their
25  meal -- daily meal period?

MARLA LOAR, PMK

**April 03, 2023**

1       **A    So union employees are governed by our bell**
2    **system and our production line operation.  That's**
3    **what indicates them their meal period time.**
4           **For the nonproduction employees -- -related**
5    **employees, it's decided -- or they're instructed via**
6    **the federal and state laws.**
7       Q    Can you explain what the bell system is?
8       **A    On the production line, we have a bell**
9    **system that indicates -- that rings at the start of**
10   **a shift, at break times, including lunch, and at the**
11   **end of shifts.**
12      Q    When you say it rings at the start of the
13   shift, is that the typical scheduled time of the
14   shift?
15      **A    It's the schedule.  It's based on schedule.**
16   **Work shifts scheduled, that's correct.**
17      Q    Were there various shift periods, or was
18   the 2:00 p.m. to 10:30 p.m. shift indicated on the
19   exhibit we looked at the typical shift of a
20   nonexempt employee at Gillig?
21      **A    There's multiple shifts.**
22      Q    Are you able to recall what the shifts are?
23      **A    For union during this time period, we had a**
24   **first, a second, and a third shift.**
25      Q    Okay.  And what were the time periods of

1    the --

2        A    First shift is 5:00 to 1:30, second shift

3    is 2:00 to 10:30, and third shift was 10:30 to 6:30,

4    I believe.  That shift only existed for a short

5    duration of time.

6        Q    Okay.  So there was no overlap between the

7    shifts?

8        A    Not to my knowledge.

9             I correct that.  I believe there was some

10   overlap between third shift and the next day's first

11   shift.

12       Q    Oh, I see.  Okay.

13            Was there ever an issue of the bell going

14   off relieving the 6:30 shift and the --

15       A    I couldn't --

16       Q    -- the 5:00 a.m. shift?

17            (Simultaneous speaking.)

18       A    Not that I'm aware of.

19       Q    And so for the 5:00 a.m. to 1:30 p.m.

20   shift, the first shift, what was the prescribed meal

21   period time?

22       A    9:30 to 10:00 a.m.

23       Q    And for the second shift, 2:00 p.m. to

24   10:30 p.m.?

25       A    6:30 to 7:00 p.m.

1      Q    And for the last shift --

2           (Simultaneous speaking.)

3      **A    I'm sorry.  I don't recall specifically.**

4      Q    Can you estimate how long that shift

5  existed, the third shift from 10:30 p.m. to

6  6:30 a.m.?

7      **A    I can only speak to my time period there,**

8  **but we dissolved or eliminated the shift in November**

9  **of 2017 when we moved to our new facility in**

10  **Livermore, and I started in May of that year, so I**

11  **don't know how long it existed prior.**

12     Q    So was this bell system with respect to

13  union nonexempt employees a verbal or

14  written -- and/or written policy?

15     **A    Well, we documented it in writing in our**

16  **new-hire packet for them where we outlined the**

17  **shifts' times and break times, yes.**

18     Q    And that new-hire packet which contained

19  the -- the outline of the bell system, was that

20  supplied to nonexempt employees throughout the

21  entire class period, or was that instituted sometime

22  after the class period began?

23     **A    Just to clarify, it outlines the rest**

24  **breaks and meal breaks and shift times.**

25     Q    Okay.

1        **A      To be clear.  It doesn't refer to a bell**
2     **schedule.  It refers to a shift, the shift schedule.**
3                  **And, yes, it was in existence through the**
4     **entire time period for the union folks.**
5        Q    And then as for the nonproduction nonexempt
6     employees, you indicated that they were instructed
7     via federal and state law to break for their meal
8     periods.  Can you provide detail as to what that
9     instruction entailed?  Were they verbally instructed
10    by a supervisor, or how did that work?
11       **A      Both the supervisors and we did training on**
12    **the Kronos system for clocking in and clocking out,**
13    **so it was done during that period as well upon new**
14    **hire.**
15       Q    So a supervisor -- so upon their hiring,
16    nonexempt employees who worked -- who were
17    nonproduction were trained as to how to clock in and
18    out for their meal periods; is that accurate?
19       **A      They were trained by HR on how to use the**
20    **system clocking in and out --**
21       Q    Okay.
22       **A      -- for meal periods and all of that, yes,**
23    **all inclusive using the Kronos system.  They were**
24    **trained on the Kronos system and process.**
25       Q    And then thereafter, when they actually

1  began working for Gillig, supervisors would then

2  verbally break them from their meal periods?

3  **A    They would agree to the schedule.**

4  Q    Employees would agree to the schedule at

5  what time?  That day or...

6  **A    It depends on the role.  So this is very**

7  **general.  I'm talking in general because when you're**

8  **talking about nonunion, their roles varied and their**

9  **schedules varied, so it was left to the employee and**

10  **the manager to agree to the schedule.**

11  Q    So the fact that these nonproduction

12  employees took their meal periods via -- or,

13  quote/unquote, "via federal and state law," was that

14  indicated in an employee handbook or in, like, a

15  hiring packet?

16  **A    It's included in our employee handbook.**

17  Q    And is that handbook given to all new

18  hires?

19  **A    Yes.  All nonunion hires.**

20  Q    Okay.  And was that the case for the

21  entirety of the class period?

22  **A    Yes.**

23  Q    Were nonunion employees required to sign

24  anything in order to verify their receipt of the

25  employee handbook?

1      A      Yes.

2      Q      What is it they had to sign?

3      A      **The handbook itself, a page in the**

4    **handbook, as well as a new-hire packet checklist.**

5      Q      Are union employees permitted to leave the

6    premises while taking their meal period?

7      A      **"Permitted" is an unusual word.**

8            MR. WARREN:  I'm going to object also to

9    the -- vague as to the term "premises."

10            Go ahead.

11            THE DEPONENT:  Yeah, I was going to say

12    both.

13            Permitted -- they're adults.  We don't lock

14    them into the building, so, yes, they are permitted

15    to leave, but they have a meal period, and they're

16    supposed to be back after the meal period is

17    completed.

18    BY MS. VAN EMMERIK:

19      Q      Okay.

20      A      **So -- and, again, to "premises," depends**

21    **what you mean by "premises."  Do they leave their**

22    **department, yes, oftentimes they do.**

23      Q      By "premises" I meant the office building

24    itself or --

25      A      **It's their time.  They can go wherever they**

MARLA LOAR, PMK

**April 03, 2023**

1  want to go.

2      Q    Okay.  Is that part of Gillig's written

3  policy in either the employee handbook or new-hire

4  packets provided to all nonexempt, both union and

5  nonunion?

6      **A    Not that I can think of, not specifically**

7  **that.**

8      Q    Is the same bell system used for union

9  employees breaking for lunch also used for those

10  same employees breaking for their rest period?

11      **A    Yes, the bell system is used for the rest**

12  **periods as well.**

13      Q    And when within the first shift that you

14  indicated was from 5:00 a.m. to 1:30 p.m. were rest

15  breaks scheduled?

16      **A    At 7:00 a.m. to 7:10 a.m. and noon to**

17  **noon -- to 12:10, 12:00 to 12:10.**

18      Q    And then for the second meal period -- or,

19  excuse me, the second shift from 2:00 p.m. --

20          (Simultaneous speaking.)

21      **A    Yeah, 4:00 to 4:10.**

22          THE REPORTER:  I'm sorry.  You guys spoke

23  over each other.

24          Could you repeat the end of your question,

25  please, Counsel.

1           MS. VAN EMMERIK:  Sure.

2    BY MS. VAN EMMERIK:

3       Q    The second period from 2:00 p.m. to

4    10:30 p.m.?

5       **A    The first rest break is from 4:00 to 4:10**

6    **and 9:00 to 9:10.**

7       Q    And then if you recall, can you provide the

8    rest period times for the third?

9       **A    I -- I don't recall.  We follow a similar**

10   **pattern, I believe, as far as (indiscernible) the**

11   **time, but it varies a little bit, I think.  I'm**

12   **sorry.  I'd have to relook to refresh my memory.**

13      Q    Was there a designated area in which union

14   nonexempt employees took their rest break?

15      **A    There's not a designated area, but we do**

16   **have a lunchroom they can use, several, actually,**

17   **and a couple break rooms.**

18      Q    Were there break rooms located on each

19   floor of the office?

20      **A    Production workers generally don't -- so we**

21   **had a lunchroom in the office that is attached to**

22   **the production floor that they can use.  That's our**

23   **main lunchroom.  And then in the production area, we**

24   **have some smaller lunchrooms or break rooms that are**

25   **farther away for people to go to if**

1  they're -- they've got more distance from the

2  lunchroom, the main lunchroom.

3      Q    Were union nonexempt employees allowed to

4  stay within their department during their rest

5  break, or were they required to...

6      A    Yes, they can stay in their department

7  during the rest break.

8      Q    Then with respect to nonunion nonexempt

9  employees, what was the rest break policy?

10     A    I think I already answered this, but in

11  accordance with the --

12          (Simultaneous speaking.)

13     Q    So similar to the --

14     A    -- federal laws --

15          (Simultaneous speaking.)

16     Q    -- meal periods?

17          Was that policy also written within the

18  employee handbooks provided --

19     A    Yes.

20     Q    -- to nonunion...

21          Okay.  Has Gillig had any updates to its

22  meal and rest break policies over the class period?

23     A    No.

24          MS. VAN EMMERIK:  Okay.  I'm just going to

25  review my notes and make sure I don't have any

1    further questions, but we're nearing the end, so

2    could we break for ten minutes, return at 12:23?

3              MR. WARREN:  Yes.

4              THE VIDEOGRAPHER:  The time is 12:13 p.m.,

5    and we're now off the record.

6              (Recess taken.)

7              THE VIDEOGRAPHER:  The time is 12:31 p.m.,

8    and we're back on the record.

9    BY MS. VAN EMMERIK:

10       Q    Okay.  So I'm just going to go through some

11   of the things that I asked you before for further

12   clarification as to your answers.

13             So at the beginning of the depo, I asked

14   you about how many nonexempt employees worked on the

15   production floor, and you said a majority.

16             Are you able to provide, like, a more

17   specific percent of nonexempt so like 75 percent or

18   95 percent of nonexempts that work in production?

19             Oh, sorry.  You're muted.

20       **A    For union production, it's a hundred**

21   **percent.**

22       Q    Okay.  And then for nonunion?

23       **A    Nonunion that work on the production floor,**

24   **I'm -- I'm estimating.**

25       Q    All right.

MARLA LOAR, PMK

**April 03, 2023**

1        **A        So I'd say on a regular basis on the**

2    **production floor, 10 -- 10 to 15 percent.   But**

3    **they're not necessarily hourly.   You're asking**

4    **nonexempt hourly.   So minimal that work on the**

5    **production floor that are nonunion hourly.**

6        Q    You're saying, sorry, maximum 10 to

7    15 percent of nonunion --

8        **A        Let me correct.   Let me correct.   Sorry.**

9                **Nonunion in this class, the only group I**

10   **can think of is our quality control group --**

11       Q    Okay.

12       **A        -- that work on the production floor and**

13   **aren't union and are hourly.**

14       Q    Okay.   Can you estimate about how many

15   individuals work in the quality control department

16   that are nonunion but in production and hourly?

17       **A        20.   15 to 20.**

18       Q    Okay.   And of the putative class, which I

19   defined earlier as encompassing all nonexempt hourly

20   employees who work for Gillig in California, what

21   percentage work in production including both union,

22   which you said about 100 percent of union workers

23   work in production, and then also including the 15

24   to 20 individuals who are nonunion?

25       **A        Again, I would say it's -- you know, it's**

1    in the 90 percent -- percentile would be of the

2    class that are working in -- on the production

3    floor.

4        Q    Okay.

5        A    Very high 90s.

6        Q    And to be clear, all of those individuals

7    would be using the magnetic card scanner to clock in

8    to their shifts?

9        A    The union production workers are using the

10    magnetic, and so are the quality control who are

11    nonunion.  Everyone else are using their computer.

12        Q    Okay.  I asked you about instances in which

13    production nonexempt employees clocked in before

14    their scheduled time -- before their scheduled

15    shift, excuse me.  In instances where those same

16    employees clock in after their scheduled shift time,

17    how is it determined what period of time they are

18    paid for?  Is it still according to their scheduled

19    time, or is it according to the time that they clock

20    in?

21        A    It's according to the time they clocked

22    in --

23        Q    Okay.

24        A    -- and start working.

25        Q    Okay.  Is it clock-in time or started

1   working time because I'm -- based on your testimony

2   today, there seems to be a distinction between when

3   an employee clocks in and when an employee begins to

4   work?

5       **A     Well, the shift starts at the start of the**

6   **shift, in which case everybody can start working.**

7   **So if an employee clocks in after the start of a**

8   **shift, they can start working immediately and,**

9   **therefore, their clock-in time represents the time**

10  **they start to work.**

11      Q     Were there ever instances in which an

12  employee clocked in before their scheduled time but

13  was paid before their -- let me take that back.

14          Were there ever instances in which an

15  employee clocked in before their scheduled time and

16  was paid for the time they were clocked in before

17  that scheduled time?

18          MR. WARREN:  Objection; lacks foundation,

19  asked and answered.

20          THE DEPONENT:  Yeah, if you're referring

21  specifically to that ten-minute window, no, not to

22  my knowledge, they would not be paid for that

23  ten-minute window.

24          MR. WARREN:  Objection; vague.  Belated

25  objection; vague as to the employees, which

1    employees we're talking about.

2            THE DEPONENT:  The union production workers

3    in that ten-minute window, I'm not aware of them

4    being paid in that ten-minute window based on that

5    clock-in time.

6    BY MS. VAN EMMERIK:

7        Q    Okay.  Thank you.

8            Then just some clarifying questions about

9    the bell system.  So you indicated that there is a

10   bell that rings at the start and end of each meal

11   and rest period; is that accurate -- with respect to

12   union workers in production?

13       A    Yes, there's a bell that rings at the start

14   of a meal period and an end of the meal period.

15       Q    Okay.  And are employees expected

16   to -- those same employees that were just defined,

17   were they expected to be back at their workstations

18   by the time the bell rang, or would the bell ring

19   and then employees would be alerted as to needing to

20   get back to work?

21       A    The ringing of the end of the meal period

22   bell is an indication to begin work again just like

23   the start of a shift bell is to indicate starting

24   work.  The end of the meal period bell is to

25   indicate to return to work --

1     Q    Okay.

**2     A    -- start working again.**

3     Q    In practice, would employees be back at

4   their workstation by the time the bell rang, or

5   would the bell typically ring and then employees

6   would head back to their workstations?

7           MR. WARREN:  Objection; calls for

8   speculation, lacks foundation.

9           THE DEPONENT:  Yeah, I -- I can't

10  speculate.  But work starts back at the end of a

11  meal period.  They work [sic] their meal period,

12  that's their time, and then work proceeds again at

13  the start of -- of work again, the end of the meal

14  period.

15  BY MS. VAN EMMERIK:

16    Q    So to be clear, you would have to speculate

17  as to whether employees who -- whether employees

18  generally would anticipate the bell and head back to

19  their workstation before the bell rang or if they

20  let the bell ring and then headed back to their

21  workstation, you're not clear on whether that

22  happened --

23           (Simultaneous speaking.)

**24    A    I couldn't say definitively.  I'm**

**25  speculating.**

MARLA LOAR, PMK

**April 03, 2023**

1    Q    Can you say for a majority or what was the

2    common practice?

3    **A    Well, some take a break in their work area,**

4    **so not everyone goes to the lunch -- the break room,**

5    **so that's why it's not -- I couldn't say for sure**

6    **what people do individually.**

7    Q    Okay.  And with -- but with respect to the

8    individuals who would go to the break room or one of

9    the break rooms, are you familiar with the common

10    practice of whether they would wait for the bell to

11    ring before returning to work?

12    **A    I don't know what the common practice is,**

13    **but I -- I'd be guessing because I don't -- I don't**

14    **watch the break room at that time, so I -- I would**

15    **say that they are expected to be back at work**

16    **working.  So, yes, at some point they would head**

17    **back.  Whether it's when they hear the bell or**

18    **after, I think it all depends on the employee, where**

19    **they're at and where their workstation is.**

20    Q    Are you aware of employees ever being

21    disciplined for not being at their workstation

22    within an appropriate amount of time after the bell

23    rang from a meal or rest break?

24    **A    I'm not aware of anyone within an**

25    **appropriate period of time.**

MARLA LOAR, PMK

**April 03, 2023**

1     Q    But you are aware of people being

2     disciplined for not returning to their workstation

3     after the --

4          (Simultaneous speaking.)

5     **A    I am aware -- yes, I am aware of**

6     **disciplining people that are not back at work during**

7     **work hours, yes, in a nonreasonable time frame.**

8     Q    With respect to production, is it an

9     assembly line?  Is that what you mean by "production

10    line"?

11    **A    It is an assembly line, yes.**

12    Q    So in order for the assembly

13    line -- because I think there are a lot of different

14    types, but the one at the Livermore location, would

15    that line require all employees to be back on the

16    line in order to function properly?

17    **A    So for union workers, there's different**

18    **roles.  So some work directly on the production**

19    **line, some work in subassembly groups, some work in**

20    **a -- in maintenance, for example.  So not all jobs**

21    **exist on the production line.**

22    Q    Okay.  With respect to those individuals

23    who actually worked on the production line who were

24    nonexempt employees, were they reliant on all other

25    employees who were also working the same line as

```
 1  them to -- to be present in order to complete their
 2  work?
 3          MR. WARREN:  Objection; lacks foundation,
 4  calls for speculation.  Again, she's not a PMK, a
 5  person most knowledgeable, with respect to the job
 6  duties and assignments of every single job title
 7  within the production line.  We didn't designate her
 8  for that.  So it's beyond the scope of her expertise
 9  or her qualification.
10  BY MS. VAN EMMERIK:
11      Q    Well, if you are aware of whether -- if you
12  do have an answer for my response [sic] you are
13  required to despite that objection.  So if you are
14  aware...
15      A    What I would tell you is there's over 550
16  jobs out there on the production line, all
17  individually based.  So I can't speak to what's
18  reliant on something else with that many roles out
19  there.
20      Q    Okay.  Is it a moving production line where
21  things are coming down the line and different
22  employees are having to work on --
23      A    It is a moving production line.  We do
24  buses.  They are large buses, so it's not an
25  assembly line like you might think of a small gadget
```

1    that moves down a conveyor belt.  That's not how it

2    works.

3        Q    Specifically?

4        A    We work on a bus in a station in a

5    department in a station, and there's multiple people

6    that work in that area on the bus during the

7    station.  So, yes, theoretically it's a moving

8    production line but not a visible moving production

9    line like you would think for smaller items.

10            MR. WARREN:  Counsel, is -- just -- just

11    for planning purposes, is it time to break for

12    lunch, or are you wrapping up or -- I'm just trying

13    to think.  It's 12:46, so I just want to make

14    sure --

15            MS. VAN EMMERIK:  I am wrapping up.  I just

16    want to make sure that I'm --

17            MR. WARREN:  Okay.  So we won't break for

18    lunch.

19            MS. VAN EMMERIK:  I'm now asking questions

20    that I would have asked at the beginning, you know,

21    for general clarification of my other questions,

22    but, yeah, I'm wrapping up.  And I'm just making

23    sure that all --

24            MR. WARREN:  Okay.  We'll keep going.

25            MS. VAN EMMERIK:  -- areas are covered.

**April 03, 2023**

```
 1   Yeah.  Okay.
 2           MR. WARREN:  Counsel, can we just go off
 3   the record just real quick?
 4           MS. VAN EMMERIK:  Yes.
 5           MR. WARREN:  Okay.  I just need to talk to
 6   my client just very quickly.
 7           THE VIDEOGRAPHER:  The time is 12:47 p.m.,
 8   and we're now off the record.
 9           (Discussion held off the record.)
10           THE VIDEOGRAPHER:  The time is 12:48 p.m.,
11   and we're back on the record.
12   BY MS. VAN EMMERIK:
13      Q    Okay.  So now that we're nearing the
14   conclusion, is your testimony -- or was your
15   testimony today complete and accurate, to your
16   knowledge?
17      A    Yes.
18      Q    Is there any testimony that you would like
19   to change at this time that you recall having an
20   addendum to?
21      A    Not that I haven't already corrected that I
22   can think of.
23      Q    Okay.  Okay.  Thank you so much for your
24   time today, and I feel like it's nice when these end
25   a little earlier.  So hopefully you feel that way
```

1  too.

2         MS. VAN EMMERIK:  Mr. Warren, do you have

3  any follow-up questions that you want to ask at this

4  time.

5         MR. WARREN:  I do not.

6         MS. VAN EMMERIK:  Okay.  Do you want to

7  handle the transcript per Code or enter into a

8  stipulation?

9         MR. WARREN:  Per Code is just fine.

10         MS. VAN EMMERIK:  Okay.  Sounds good.

11         THE VIDEOGRAPHER:  This concludes today's

12  video deposition of Marla Loar.  The time is

13  12:49 p.m., and we're now off the record.

14         THE REPORTER:  Mr. Warren, do you need a

15  copy of the transcript?

16         MR. WARREN:  I do.  Thank you.

17         THE REPORTER:  And do you need a rough

18  draft?

19         MR. WARREN:  I do not.

20         THE REPORTER:  Ms. VanEmmerik, do you need

21  a rough draft?

22         MS. VAN EMMERIK:  No, thank you.

23         (The deposition concluded at 12:49 p.m.)

24

25

```
1                      -oOo-

2       I have read the foregoing deposition

3   transcript and by signing hereafter, approve same.

4

5   Dated _____ .

6

7                    _____
                            (Signature of Deponent)
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**MARLA LOAR, PMK**

**April 03, 2023**

```
 1                CORRECTION SHEET/ERRATA SHEET

 2

 3          I, MARLA LOAR, do hereby certify that I have

 4   read the foregoing statement and that, to the best of

 5   my knowledge, said statement is true and accurate

 6   (with the exception of the following changes listed

 7   below):

 8

 9    PAGE    LINE     CHANGE TESTIMONY TO READ AS FOLLOWS:

10   _____   _____    _____

11   _____   _____    _____

12   _____   _____    _____

13   _____   _____    _____

14   _____   _____    _____

15   _____   _____    _____

16   _____   _____    _____

17   _____   _____    _____

18   _____   _____    _____

19   _____   _____    _____

20   _____   _____    _____

21   _____   _____    _____

22   _____   _____    _____

23

24

25                    _____
                      MARLA LOAR
```

1                DEPOSITION OFFICER'S CERTIFICATE

2

3   STATE OF CALIFORNIA                    )
                                           )   ss.
4   COUNTY OF ORANGE                       )

5

6          I, TAMI L. LE, hereby certify:

7          I am a duly qualified Certified Shorthand

8   Reporter in the State of California, holder of

9   Certificate Number CSR 8716 issued by the Court

10  Reporters Board of California and which is in full

11  force and effect.  (Bus. & Prof Section 8016.)

12         I am not financially interested in this action

13  and am not a relative or employee of any attorney of

14  the parties, or of any of the parties.  (Civ. Proc.

15  Section 2025.320(a); 2025.540(a))

16         I am authorized to administer oaths or

17  affirmations pursuant to California Code of Civil

18  Procedure, Section 2093(b), and prior to being

19  examined, the deponent was first duly sworn by me.

20  (Civ. Proc. Section 2025.320)

21         I am the deposition officer that

22  stenographically recorded the testimony in the

23  foregoing deposition and the foregoing transcript is a

24  true record of the testimony given.  (Civ. Proc.

25  Section 2025.540)

**MARLA LOAR, PMK**

**April 03, 2023**

1          I have not and shall not offer or provide any

2     services or products to any party's attorney or third

3     party who is financing all or part of the action

4     without first offering same to all parties or their

5     attorneys attending the deposition and making same

6     available at the same time to all parties or their

7     attorneys.  (Civ. Proc. Section 2025.320(b))

8          I shall not provide any service or product

9     consisting of the deposition officer's notations or

10    comments regarding the demeanor of any witness,

11    attorney, or party present at the deposition to any

12    party or any party's attorney or third party who is

13    financing all or part of the action, nor shall I

14    collect any personal identifying information about the

15    witness as a service or product to be provided to any

16    party or third party who is financing all or part of

17    the action.  (Civ. Proc. Section 2025.320(c))

18

19    Dated:  April 14, 2023.

20

21                         TAMI L. LE

22

23          Certified Shorthand Reporter No. 8716, RPR

24

25

**MARLA LOAR, PMK**

**April 03, 2023**

```
 1    STATE OF CALIFORNIA          )
                                   )    ss.
 2    COUNTY OF ORANGE             )

 3

 4          I, Tami L. Le, Certified Shorthand Reporter,

 5    Certificate No. 8716, for the State of California,

 6    RPR, hereby certify:

 7          I am the deposition officer that

 8    stenographically recorded the testimony in the

 9    foregoing deposition;

10          Written notice pursuant to Code of Civil

11    Procedure, Section 2025.520(a) having been sent to the

12    deponent, the deponent:

13                ( ) In person made the changes set forth in
                      the foregoing transcript;
14
                  ( ) Approved the transcript by signing it;
15
                  ( ) Failed or refused to approve the
16                    transcript by not signing it;

17                ( ) By signed letter attached hereto, made
                      the changes set forth therein and
18                    approved, or refused to approve, the
                      transcript;
19
                  ( ) Failed to contact the deposition
20                    officer within the allotted time
                      period.
21

22    Dated: _____.

23

24          _____
                          TAMI L. LE
25          Certified Shorthand Reporter No. 8716, RPR
```

**MARLA LOAR, PMK**

**April 03, 2023**

---

### Exhibits

**Exhibit A**
4:7 37:10,12
42:22 47:13
50:10 58:11

---

**-**

**-related**
61:4

---

**1**

**10**
71:2,6

**100**
71:22

**10:00**
62:22

**10:06**
5:1,6

**10:30**
43:1 44:12
61:18 62:3,24
63:5 68:4

**10:40**
27:10

**10:43**
27:13

**1194**
46:1

**11:25**
50:2

**11:38**
50:5

**12:00**
67:17

**12:10**
67:17

**12:13**
70:4

**12:23**
70:2

**12:31**
70:7

**12:46**
79:13

**12:47**
80:7

**12:48**
80:10

**12:49**
81:13,23

**13**
23:21

**15**
17:18 71:2,7,
17,23

**16th**
11:8,13

**1:30**
62:2,19 67:14

**1:49**
40:24

**1:50**
40:2,4,14,25
41:1,5 44:11,
15 49:1,3,5,7
50:21

**1:54**
36:19

**1st**
59:1

---

**2**

**2**
23:20 26:8

**20**
56:11,13
71:17,24

**2016**
11:8,13

**2017**
63:9

**2023**
5:1,6

**25**
30:24 32:13

**2:00**
39:24 43:1
44:15 49:2,5,
8 50:21 61:18
62:3,23 67:19
68:3

---

**3**

**3**
5:1

**30**
30:24 32:13
44:3,5

**30-minute**
43:11

**31st**
59:2

**34**
36:19

**35**
30:20,21
31:23

---

**3rd**
5:6

---

**4**

**40**
30:20,21
31:23

**4:00**
67:21 68:5

**4:10**
67:21 68:5

---

**5**

**50**
18:15,16

**550**
56:25 78:15

**575**
21:10

**5:00**
62:2,16,19
67:14

---

**6**

**600**
21:10

**6:30**
62:3,14,25
63:6

---

**7**

**75**
70:17

**7:00**
62:25 67:16

**7:10**
67:16

---

**9**

**90**
72:1

**90s**
72:5

**95**
70:18

**9:00**
68:6

**9:10**
68:6

**9:30**
62:22

---

**A**

**a.m.**
5:1,6 27:10,
13 50:2,5
62:16,19,22
63:6 67:14,16

**ability**
10:12

**Absolutely**
57:13

**acceptable**
7:16

**accidentally**
57:11

**accommodati
ng**
22:11

**accordance**
69:11

---

MARLA LOAR, PMK

April 03, 2023

**accurate**
31:3 33:8
38:15 39:22
43:9 45:5,6
47:19 48:10,
14 50:13
52:10,13 57:2
64:18 74:11
80:15

**accurately**
8:23

**acknowledge**
46:3

**action**
11:2,3,5,7,23
12:7,13

**actions**
17:2 59:14

**actual**
36:9,12,14,
16,17

**addendum**
80:20

**addition**
26:1

**additional**
59:14

**address**
24:1

**adults**
66:13

**agree**
65:3,4,10

**agreement**
9:10,17

**agreements**
13:25

**ahead**
41:10 48:24
66:10

**Alameda**
19:4 20:5
21:23 26:14
28:21

**alerted**
74:19

**alleged**
45:19

**allowed**
7:9 58:24
60:24 69:3

**allowing**
56:22

**aloud**
8:14

**amended**
11:22,25

**amount**
20:13 76:22

**analyst**
18:4

**and/or**
32:23 63:14

**answering**
8:1

**answers**
8:14 70:12

**anticipate**
75:18

**apologies**
15:14

**apologize**
11:20 39:9

**appears**

42:3,15 43:23

**applicable**
38:14

**application**
14:24

**applying**
41:6

**approving**
16:25

**approximately**
15:25 21:9

**April**
5:1,6

**area**
28:14 45:9
48:22 55:4
68:13,15,23
76:3 79:6

**areas**
17:1 79:25

**Arnott**
5:4

**assemblers**
26:4

**assembly**
77:9,11,12
78:25

**assigned**
54:4

**assignment**
54:6,9,15

**assignments**
78:6

**assist**
7:3,10

**assisted**

**12:**5,10

**assume**
9:8

**assumed**
46:17

**attached**
68:21

**attendance**
58:18,21
59:3,6 60:8,
11,13

**attended**
58:23

**attending**
16:24

**attorney**
7:4 12:16
13:8,12,15,17

**attributed**
44:6,8

**award**
58:18

**aware**
19:23 24:22
58:6,15 62:18
74:3 76:20,24
77:1,5 78:11,
14

---

**B**

**bachelor's**
14:8,17

**back**
27:14 30:19
46:16 50:6,20
66:16 70:8
73:13 74:17,
20 75:3,6,10,

18,20 76:15,
17 77:6,15
80:11

**background**
23:8

**Barbara**
14:10,12,13

**bargaining**
13:24

**based**
9:21 44:9
61:15 73:1
74:4 78:17

**basis**
24:12 45:13,
25 71:1

**Bates-stamped**
38:22 39:1

**began**
63:22 65:1

**begin**
6:4,25 8:21
28:25 44:24
52:17 53:9
74:22

**beginning**
16:2 54:5
70:13 79:20

**begins**
47:19 48:10
73:3

**begun**
48:18

**behalf**
5:11 10:24
11:4,9

**Belated**

73:24

**belatedly**
26:8

**bell**
61:1,7,8
62:13 63:12,
19 64:1 67:8,
11 74:9,10,
13,18,22,23,
24 75:4,5,18,
19,20 76:10,
17,22

**belt**
79:1

**benefit**
18:3

**bit**
14:5 68:11

**blow**
39:18

**bonus**
58:17 59:13,
23 60:11,13

**bonuses**
58:16 60:1,5

**bottom**
39:1

**break**
9:13,16 47:1
49:14,15,17,
19 61:10
63:17 64:7
65:2 68:5,14,
17,18,24
69:5,7,9,22
70:2 76:3,4,8,
9,14,23
79:11,17

**breaking**

67:9,10

**breaks**
47:8 60:22
63:24 67:15

**breed**
10:1

**briefly**
5:14 27:6

**broad**
23:25 26:4,9

**broadly**
28:16

**building**
31:18,19,21
32:2,3,6
55:18,22 56:3
66:14,23

**bus**
79:4,6

**buses**
78:24

**business**
10:15 18:1,13
20:6,8

**business-
related**
20:8

---

**C**

**calculate**
36:23 37:1,4,
6 42:3

**calculated**
45:14

**calculating**
37:3

**California**
11:10,18
14:11,13,19
15:9 18:21,
22,23,25
22:21 41:8
71:20

**call**
58:19

**called**
33:6 47:15

**calls**
40:16 46:23
51:5 52:2
54:17 55:13
59:9 75:7
78:4

**capture**
22:8

**captured**
18:5

**card**
29:25 30:9,23
32:21 33:12,
17,19,25
34:14 35:5,23
38:6,7 39:15
40:2,5 42:8,
19 44:4 46:7
49:10 51:3
53:5 54:14
55:10 72:7

**cards**
33:20 35:12

**career**
14:20

**carries**
8:2

**cars**

55:19

**case**
5:10 7:1 11:5,
7 12:2 40:3
41:5 45:24
49:3 58:4
65:20 73:6

**cases**
51:20

**CBA**
29:8 45:10,
12,20,23
48:22

**CBAS**
13:24 28:3

**cease**
46:9,11

**cell**
7:10,13

**CEO**
17:12

**certification**
14:22,23
15:1,3

**certifications**
14:21

**cetera**
14:25

**change**
41:1 80:19

**changed**
17:5

**chat**
37:10

**checklist**
66:4

**claims**

11:24

**clarification**
70:12 79:21

**clarify**
18:10 27:7
47:14 48:4
63:23

**clarifying**
74:8

**class**
11:1,3,5,7,11
21:14 22:25
25:4 29:18
63:21,22
65:21 69:22
71:9,18 72:2

**clear**
23:13 32:20
50:12,25 64:1
72:6 75:16,21

**client**
80:6

**clock**
28:18 30:11
31:1,14,15
33:11,19,25
34:1,23 35:1,
2,7 36:6
39:21 40:25
41:5,9 43:17
44:4,25 45:3
46:6,7,17,20
49:1 51:2,8,
14 52:8 53:2,
3,4,5,6,7,9,12
54:14 56:22,
25 57:4,8,11,
18 58:2,5
64:17 72:7,
16,19

clock-in
30:21 32:15
35:3,6 36:9,
12 42:9
44:18,21,24
48:17 49:3
50:15 53:15
58:3 72:25
73:9 74:5

clock-out
36:10,12
41:16 42:9

clocked
35:15,23,25
36:18 39:13,
14 40:10,12,
14,24 42:7
43:10 44:11
49:2 51:12,24
55:9 57:16
72:13,21
73:12,15,16

clocking
31:17 38:17
47:15 48:4
54:15 58:8
64:12,20

clocks
32:21 34:13
47:17 48:9
52:16,20,25
73:3,7

close
24:3

closer
31:15

Closest
56:13

co-workers
54:22 55:3

Code
81:7,9

colleagues
23:20

collect
57:22

collective
13:24

collects
36:25

column
38:20 39:2,
10,23 41:13,
16,20,23
42:12,16,17
43:7,24 44:6,
16

Combination
29:4

combined
18:3

common
46:25 47:2,10
55:8,11 76:2,
9,12

comp
17:3

company
16:12,17,19
19:13 26:11
51:9

compensatio
n
17:3

complaint
11:22,23,25

complete
9:15 14:22

78:1 80:15

completed
66:17

completely
5:15

computer
30:4,5,6,7
34:3,15 35:8
36:1 38:9,12,
13 51:2,9
52:16,19,22
53:1,5,6
72:11

computers
31:2 34:4,5
46:17 52:20,
24

concern
22:19 46:2

concerns
11:1 46:1

concluded
81:23

concludes
81:11

conclusion
80:14

concrete
40:20

confused
59:18

considered
49:9

considers
48:18

contained
63:18

context
42:2

continue
46:3,21

control
71:10,15
72:10

conversation
8:23 13:14

conveyor
79:1

copy
81:15

core
21:3

corner
39:2 40:1
42:21

corporate
30:25 55:25

correct
14:12 15:22
21:13 33:14
34:9,24,25
38:19 41:12
42:10,11,14,
22,23 43:1,2,
4,6,22,25
44:12,13
46:18 47:25
49:11,12 52:7
57:6,9 61:16
62:9 71:8

corrected
80:21

counsel
5:11,16 12:7,
12 13:18 19:5
22:10 45:7

49:18,24
58:10 67:25
79:10 80:2

counties
19:2

countries
18:7

couple
14:1 68:17

court
5:25 7:22
8:15,22

courtroom
8:3

cover
7:1 23:16
28:15

covered
9:2 45:20
79:25

covers
11:7 14:3

current
15:5,17 16:2,
5

customers
18:16

cycle
16:9

D

D00410
38:22 39:1

daily
60:25

Dan
12:19

MARLA LOAR, PMK

April 03, 2023

**Dash**
 5:4 6:4

**data**
 36:4

**day**
 16:23 39:24
 40:8,12,14
 41:3 42:25
 57:16,20
 58:23 65:5

**day's**
 62:10

**day-to-day**
 16:20 22:24

**days**
 43:21 58:25

**December**
 59:2

**decided**
 61:5

**defendant**
 5:23

**define**
 36:14,16
 58:20,22

**defined**
 45:23 71:19
 74:16

**definitively**
 75:24

**degree**
 14:8,17

**Denecour**
 12:19

**department**
 16:7 22:4
 26:22 30:14
 31:5,8 32:11,

12,23,24
 33:2,13,16,
 18,21,24
 56:15 57:25
 66:22 69:4,6
 71:15 79:5

**departments**
 22:6 24:19,22
 25:1,2 30:16,
 25 31:10,12,
 13,24 32:9,
 13,17 33:1,5
 34:2 55:6

**dependent**
 53:10

**depending**
 60:4

**depends**
 51:20 56:4
 65:6 66:20
 76:18

**depo**
 19:15 24:15
 70:13

**DEPONENT**
 27:5 28:2
 34:19 35:19
 37:14,18,20
 46:24 48:14,
 25 49:16
 50:20 51:6
 52:4,13 54:19
 55:15 58:13
 66:11 73:20
 74:2 75:9

**deposition**
 5:5,8,12 7:2,
 4,11 10:15
 11:1 13:9,21
 81:12,23

**Derek**
 17:12

**designate**
 78:7

**designated**
 10:23 19:16
 26:10 55:4
 68:13,15

**detail**
 24:25 28:12
 37:24 44:20
 48:16 60:22
 64:8

**details**
 34:6 59:4

**determine**
 51:23

**determined**
 72:17

**development**
 16:10

**differ**
 38:11

**difference**
 9:24 10:7
 47:15 48:4,17

**differentiate**
 20:19 37:3
 44:21

**differentiated**
 34:22

**differently**
 36:7

**difficulty**
 7:12

**directed**
 54:8

**directly**
 77:18

**director**
 15:20 18:1

**discipline**
 16:10

**disciplined**
 76:21 77:2

**disciplining**
 77:6

**discussed**
 13:11

**discussing**
 24:17

**discussion**
 27:12 80:9

**discussions**
 16:24,25

**dissolved**
 63:8

**distance**
 56:10,17 69:1

**distinct**
 25:13

**distinction**
 73:2

**distinguishing**
 53:25

**doctor**
 18:4

**doctor's**
 59:12

**document**
 29:6 35:14
 37:17,23
 38:2,21

**documentation**
 29:3,5

**documented**
 63:15

**documents**
 7:10,13 12:6,
 11 13:20,23

**dog**
 10:1,2

**draft**
 81:18,21

**driving**
 25:12

**drop**
 37:9

**Due**
 5:13

**duly**
 6:7

**duration**
 29:18 62:5

**duties**
 16:20 17:4
 78:6

**duty**
 21:25 26:11

---
**E**
---

**earlier**
 71:19 80:25

**easier**
 56:19

**eat**
 47:8

**education**

14:6

**eight-and-a-half**
43:5,20

**eligibility**
59:13

**eligible**
59:2 60:8,10

**eliminated**
63:8

**EMMERIK**
5:18 6:3,11
19:6,11,19
20:2,3 22:14,
18 23:12,15,
24 24:2,11,16
26:13 27:6,
15,16,23 28:5
34:20 35:21
36:13 37:15,
21 40:18
43:13 45:21,
25 46:5
47:12,23
48:15 49:6,
13,23 50:1,7,
8,24 51:7
52:5,14,21
54:20 55:1,16
58:12,14
66:18 68:1,2
69:24 70:9
74:6 75:15
78:10 79:15,
19,25 80:4,12
81:2,6,10,22

**employed**
11:10,18

**employee**
13:25 14:2
21:22,24

26:20 29:6,9
31:5 32:21
33:15 34:12,
13 35:15
36:18 38:17
39:25 47:17,
18 48:9,10,18
51:24 52:15
55:23 57:11,
15 59:14
61:20 65:9,
14,16,25 67:3
69:18 73:3,7,
12,15 76:18

**employees'**
36:8,24 60:13

**employer**
15:5

**employment**
14:19 15:2
16:9 17:1

**encompassing**
71:19

**end**
44:22 45:18,
19 61:11
67:24 70:1
74:10,14,21,
24 75:10,13
80:24

**engage**
20:6 25:24

**engaged**
25:20

**ensure**
5:15 8:22
57:7

**entail**
14:23 16:6

**entailed**
64:9

63:13,20
64:6,16 65:4,
12,23 66:5
67:9,10 68:14
69:3,9 70:14
71:20 72:13,
16 73:25
74:1,15,16,19
75:3,5,17
76:20 77:15,
24,25 78:22

**employees'**
36:8,24 60:13

**employer**
15:5

**employment**
14:19 15:2
16:9 17:1

**encompassing**
71:19

**end**
44:22 45:18,
19 61:11
67:24 70:1
74:10,14,21,
24 75:10,13
80:24

**entails**
14:24 28:13
34:7

**enter**
55:22,24
57:17,23 81:7

**entering**
55:18

**entire**
16:12,17,19
63:21 64:4

**entirety**
46:14 65:21

**entitled**
9:19 11:2

**entries**
55:24

**entry**
56:3,10

**establish**
19:22

**established**
56:24

**establishing**
19:12 57:15

**estimate**
9:23,25 10:5,
8 30:15,19
56:14 63:4
71:14

**estimating**
70:24

**events**
16:11 26:20

**evidence**
45:15

**evolved**

17:5

**exact**
40:7,12 41:2

**EXAMINATION**
6:10

**examined**
6:8

**examples**
25:10

**exception**
59:7,20

**exceptions**
59:3,5

**excluded**
59:17

**excuse**
16:16 37:5
42:8 43:5
67:19 72:15

**exempt**
20:14

**exhibit**
37:9,10,12
41:18 42:22
47:13 50:10
58:11 61:19

**exist**
77:21

**existed**
62:4 63:5,11

**existence**
64:3

**expected**
74:15,17
76:15

**experience**

MARLA LOAR, PMK

April 03, 2023

14:21

**expertise**
78:8

**explain**
28:6 29:21
39:10 42:1
44:14,20
46:6,11 48:16
54:2 61:7

**extensive**
22:7 24:19

---

**F**

---

**facility**
21:3 63:9

**fact**
21:11 65:11

**failed**
57:11

**fair**
31:3 38:15
39:22 43:8
50:12 57:2

**fall**
25:3

**falls**
45:12,19

**familiar**
76:9

**farther**
68:25

**Faulkner**
5:22

**federal**
61:6 64:7
65:13 69:14

**feel**
80:24,25

**feet**
56:11,13

**fields**
14:15

**file**
14:2

**filed**
11:3,9

**finds**
7:6

**fine**
19:25 45:21
49:18 81:9

**finger**
29:23

**finish**
8:21

**firsthand**
9:21

**five-**
49:14

**five-minute**
49:17

**floor**
31:25 32:2,6,
10,14 68:19,
22 70:15,23
71:2,5,12
72:3

**floors**
31:20,23 32:5

**folks**
64:4

**follow**
28:4 68:9

**follow-up**
81:3

**forklifts**
25:12

**foundation**
27:1,22 43:12
46:22 48:13
50:18 51:4
73:18 75:8
78:3

**fourth**
8:5

**frame**
77:7

**framed**
36:7

**front**
10:6

**full**
6:17,21

**function**
77:16

**furthest**
56:15

---

**G**

---

**gadget**
78:25

**garage**
55:20

**gather**
55:4

**gears**
58:9

**general**
19:12 21:9
22:23 23:2

24:4 35:19
41:6 49:11
55:17,21
58:22 60:22
65:7 79:21

**generally**
12:3,4 13:6,7
21:7 24:24
26:3 58:3,4
59:5 68:20
75:18

**Gillig**
5:10,23 6:15
10:16,19,20,
22 11:2,10,18
15:2,6,10,14,
18,19 16:1
18:7,9,13,17,
19 20:15
21:15 22:3
23:21 26:24
27:20 28:21,
25 29:10
31:17 41:7,8
45:2 47:17
48:8,18 49:9
50:13 52:16,
19 56:21
58:15,20
59:24 60:12
61:20 65:1
69:21 71:20

**Gillig's**
13:18 67:2

**give**
10:1,12 39:17
48:7 55:21

**glance**
37:24

**good**
5:3,18,21

49:13 81:10

**governed**
45:9 61:1

**Great**
6:3 9:1

**group**
11:4 71:9,10

**groups**
77:19

**guess**
9:22,25 10:3,
8 28:16 36:7

**guessing**
76:13

**guys**
67:22

---

**H**

---

**handbook**
13:25 29:6,9
65:14,16,17,
25 66:3,4
67:3

**handbooks**
69:18

**handle**
81:7

**happen**
47:5

**happened**
47:3 75:22

**happy**
8:10 43:15

**hard**
35:19

**Hayward**

26:17

**head**
60:7 75:6,18
76:16

**headed**
75:20

**hear**
76:17

**heard**
5:15

**HEHNS**
18:4

**held**
15:12,16,21,
23 17:6 27:12
80:9

**Heskett**
12:19

**high**
72:5

**highest**
14:6

**hire**
64:14

**hires**
65:18,19

**hiring**
16:9 64:15
65:15

**hold**
18:17

**honest**
9:20

**horrible**
56:17

**hour**
35:6 36:17

**hourly**
11:9,16,17
21:4,11,15,
22,24 22:20
25:6,19,24
26:22 27:18
28:17,20
29:21 32:4
34:13 36:9,24
37:8 45:3
50:14 51:1,24
52:7 54:13
58:16 60:2,
19,20 71:3,4,
5,13,16,19

**hours**
20:10 21:25
36:20,25
42:3,13 43:3,
4,5,8,21,25
77:7

**HR**
14:24 15:20
16:11 17:24
18:1 64:19

**HRS**
18:4

**human**
15:11 16:6,7,
21

**hundred**
70:20

——————

**I**

——————

**I-N**
39:3

**identification**
37:13

**identified**

39:25 42:20
43:8

**imagine**
56:8

**immediately**
73:8

**impair**
10:12

**inaccurate**
47:24

**include**
43:9

**included**
65:16

**including**
20:14 30:25
61:10 71:21,
23

**inclusive**
64:23

**incorporate**
60:12

**Increase**
21:20

**increased**
21:16,19

**indication**
74:22

**indiscernible**
68:10

**individual**
31:2 34:10
35:23 39:12
41:17 42:7,
20,24 43:10,
20,25 44:3,10
58:22

**individually**
76:6 78:17

**individuals**
58:1 71:15,24
72:6 76:8
77:22

**inform**
23:19

**information**
7:12,15
19:23,24
29:24 57:23

**informed**
28:24 29:2
57:21

**initial**
42:25

**instance**
40:22 59:10

**instances**
52:6,15 57:10
72:12,15
73:11,14

**instituted**
63:21

**instruct**
7:5

**instructed**
60:24 61:5
64:6,9

**instruction**
64:9

**instructs**
8:6

**interface**
29:22

**interviewing**
17:2

**individually**
76:6 78:17

**introductions**
5:16

**inventory**
25:12

**invoices**
17:1

**irrespective**
26:21 34:12
35:1 51:1

**issue**
45:23 57:24
58:6 62:13

**issues**
22:13 26:20

**items**
79:9

——————

**J**

——————

**Jacquelyne**
5:19 6:12

**January**
59:1

**job**
15:10 17:19
26:11,22
51:20 53:23
60:4 78:5,6

**jobs**
51:16,17,19
77:20 78:16

**joining**
6:16

**jurisdiction**
45:12,20

MARLA LOAR, PMK

April 03, 2023

**K**

**K-R-O-N-O-S**
29:15

**kind**
19:12 23:8
38:5 60:17

**knowledge**
9:21 33:17
62:8 73:22
80:16

**knowledgeable**
78:5

**Kronos**
29:13 38:4
64:12,23,24

**L**

**L-O-A-R**
6:23

**label**
20:19,24 21:1

**labeled**
38:21 39:2
41:14,20
42:17

**lacks**
27:1,22 43:12
46:22 48:13,
23 50:18 51:4
73:18 75:8
78:3

**large**
32:25 78:24

**law**
14:19 64:7
65:13

**laws**
61:6 69:14

**lawsuit**
11:3,24 12:16

**lawyer**
8:6,8

**Le**
5:25

**lead**
45:15

**leave**
47:8 55:10
66:5,15,21

**left**
65:9

**left-hand**
40:1 42:18,21

**Legal**
5:5

**letter**
29:7

**level**
14:6

**life**
16:9

**list**
17:22 19:25
22:6 24:19
60:5

**listed**
40:8

**Liver-**
30:18

**Livermore**
15:9 16:14,16
20:25 21:8
24:21 25:15,

21,22,25
26:15,16
30:18 31:18
55:18 63:10
77:14

**Liverpool**
16:13

**LLC**
5:10,23 6:15
10:16,20 11:2
15:6

**Loar**
5:9 6:6,19
23:21 26:10
52:23 81:12

**located**
15:8 18:25
19:3 20:4
30:11 32:22
33:13,20 58:1
68:18

**location**
16:13 20:15,
17,22,24,25
21:8,12,23,25
23:2 25:1,15,
19,21,25
26:14,17,19,
21 30:12,18
31:18 77:14

**locations**
22:21 28:22
30:10 41:8

**lock**
66:13

**log**
29:23 30:1,3
34:4,15 38:8,
9,10,12,13,17
53:1

**log-in**
53:18

**logging**
34:3,6,14
35:9

**login**
29:24

**logs**
35:6

**long**
7:15 15:12
63:4,11

**looked**
61:19

**Lora**
12:20

**lot**
17:3 36:4
55:23 56:2,6,
7,15 77:13

**lunch**
47:3 49:19
61:10 67:9
76:4 79:12,18

**lunchroom**
68:16,21,23
69:2

**lunchrooms**
68:24

**M**

**M-A-R-L-A**
6:23

**made**
12:12 48:25

**magnetic**
29:25 30:9,23

**log-in**
32:21 33:12
34:14 35:5,23
38:8,10,17
39:15,21 40:2
42:7 46:7
51:3 53:4
54:14 55:9
72:7,10

**main**
68:23 69:2

**maintain**
24:13

**maintenance**
26:5 77:20

**major**
33:2

**majority**
32:7 70:15
76:1

**make**
7:2,5 19:8,15
24:8,22 33:1
40:19 69:25
79:13,16

**makes**
19:21 59:2

**makeup**
19:12 23:2
24:4

**making**
17:2 79:22

**manager**
18:1,4 65:10

**managing**
25:12

**manufacturing**
32:1

MARLA LOAR, PMK

April 03, 2023

**marked**
37:10,13

**Marla**
5:9 6:6,19
19:23 27:24
81:12

**massive**
33:2

**matter**
5:9 6:14
49:16

**Maunus**
17:12

**maximum**
71:6

**Mcmanis**
5:22

**meal**
38:13 42:9
43:11,18
44:5,7,8 46:8,
9,20 60:21,25
61:3 62:20
63:24 64:7,
18,22 65:2,12
66:6,15,16
67:18 69:16,
22 74:10,14,
21,24 75:11,
13 76:23

**meaning**
12:11 20:5
29:23 59:21

**means**
9:20 42:1
46:12

**meant**
66:23

**measurement s**
10:4

**medication**
10:12

**meet**
13:8

**meetings**
16:24

**members**
22:25

**memory**
7:14 68:12

**mentioned**
6:13 21:21
42:5 45:2
55:2

**met**
10:2 13:12

**methodologie s**
14:25

**Micah**
12:19

**Michael**
5:21

**mind**
23:14

**mindful**
19:18

**minimal**
71:4

**minute**
35:6 36:17
40:8

**minutes**
36:21 41:10

44:3,5,15
45:4 49:7
56:18,22 70:2

**missing**
44:3

**misstates**
47:20 48:12
50:19 52:11,
12

**moment**
37:22 48:7

**MONDAY**
5:1

**Moon**
5:11

**morning**
5:3,18,21

**mouthful**
11:21

**move**
24:14 50:10

**moved**
63:9

**moves**
79:1

**moving**
78:20,23
79:7,8

**multiple**
18:24 30:10,
13 31:8,9,11
61:21 79:5

**muted**
70:19

---

**N**

---

**N-G-U-Y-E-N**

12:25

**N-Y-X-O-A**
12:24

**nature**
5:13 20:5
25:13,14 36:5

**nearest**
56:2,9

**nearing**
70:1 80:13

**necessarily**
21:1 35:4
51:15 71:3

**needing**
74:19

**new-hire**
14:3,4 63:16,
18 66:4 67:3

**Nguyen**
12:20,24

**nice**
80:24

**nitty-gritty**
37:23

**nodding**
8:15

**nonexempt**
11:9,16,17
20:14 21:4,
11,15,22,24
22:20 25:5,
14,18,21,24
26:22 27:18
28:17,20
29:21 32:4
34:13 36:9,23
37:8 45:3
50:13 51:1,24
52:7 54:2,13

58:16,17
59:23 60:1,
19,20 61:20
63:13,20
64:5,16 67:4
68:14 69:3,8
70:14,17
71:4,19 72:13
77:24

**nonexempts**
70:18

**nonobjected- to**
24:15

**nonproductio n**
61:4 64:5,17
65:11

**nonreasonabl e**
77:7

**nonunion**
13:25 25:3
29:9 30:1,3
34:1,23 51:19
60:2,10 65:8,
19,23 67:5
69:8,20
70:22,23
71:5,7,9,16,
24 72:11

**noon**
67:16,17

**note**
36:6 59:12

**notes**
69:25

**notice**
19:20 22:19
23:17 24:9,15

**MARLA LOAR, PMK**

April 03, 2023

November
63:8

number
21:14 40:7
42:3,13 43:3
57:3

numbers
20:16 21:9,10

Nyxoa
12:20,23,24

**O**

oath
7:21 8:3

object
23:19 24:12
26:7 27:1
40:16 45:8,13
47:20 66:8

objected
26:9

objection
24:13 26:12
27:22 34:17
35:18 36:11
43:12 45:16
46:4,22
48:12,21
50:18 51:4
52:2,11,18
54:17 55:13
73:18,24,25
75:7 78:3,13

objections
7:5

objects
8:8

occasionally
26:17

offered
15:1,3

office
15:7 18:20
20:11 21:23
24:20 26:6
31:17,19,21
32:3,6 55:18
56:1,3,16
66:23 68:19,
21

offices
18:17,24 19:2
20:4,20 22:3
23:3 24:4,18

oftentimes
66:22

open
49:14

operate
18:7,9

operation
20:10 22:1
61:2

operations
18:14 20:7,9
22:24 46:9,11

operative
11:23

opportunity
57:8

order
19:21 37:6
53:1 59:12,15
65:24 77:12,
16 78:1

organization
24:18 33:1

organized
22:3

outline
63:19

outlined
63:16

outlines
63:23

overbroad
28:1

overlap
62:6,10

overly
26:9

overtime
45:22,23 46:2
48:22

**P**

p.m.
36:19 40:24,
25 41:1 43:1
44:11,12,15
49:5,7,8
61:18 62:19,
23,24,25 63:5
67:14,19
68:3,4 70:4,7
80:7,10
81:13,23

Pacific
5:6

packages
25:11,12

packet
63:16,18
65:15 66:4

packets
14:3,4 67:4

packing
25:11

paid
11:9,16,18
21:4,24 26:23
27:18 50:22
51:10,13
53:17 58:16
72:18 73:13,
16,22 74:4

Painters
28:4

park
55:19

parking
55:20,23
56:2,4,6,7,9

part
9:5 15:2 32:2
67:2

parties
5:15

partner
18:1

parts
20:21,23 21:5
24:23 25:2,3,
6,19 26:18

party
15:4

password
34:8

passwords
34:10

past
17:5

pattern
68:10

pause
5:14

pay
37:2,4,6 47:4
50:13,22
51:20 60:14

paychecks
36:24

payroll
18:2

penalties
8:2

people
11:4 13:3
20:14 47:1,7
56:25 58:2
68:25 76:6
77:1,6 79:5

percent
70:17,18,21
71:2,7,22
72:1

percentage
71:21

percentile
72:1

perfect
58:18,21
59:3,5 60:8,
11,12

perfectly
7:16

perform
18:13

period
11:8,12 21:14

29:19 38:13
42:9 43:11,18
44:5,7,8 47:3
60:25 61:3,23
62:21 63:7,
21,22 64:4,13
65:21 66:6,
15,16 67:10,
18 68:3,8
69:22 72:17
74:11,14,21,
24 75:11,14
76:25

**periods**
43:4 46:8,10,
20 61:17,25
64:8,18,22
65:2,12 67:12
69:16

**perjury**
8:3

**permits**
45:2

**permitted**
7:3 66:5,7,13,
14

**person**
10:23 24:1
27:2 35:25
44:11 78:5

**personal**
30:6

**phone**
7:10,13

**phrased**
23:23

**pick**
33:18

**plaintiff**

5:19 6:13
12:6,7,12,13

**plaintiffs'**
5:11 37:12

**planned**
58:24,25

**planning**
49:18,19
79:11

**plant**
31:14 47:1
55:25

**PM**
39:24

**PMK**
19:15 22:13,
16 23:6,9,10,
11,21,22
24:9,15 26:10
27:2 78:4

**point**
19:9,11 22:17
23:5,6 76:16

**policies**
22:19 69:22

**policy**
26:24 27:19
28:7,10,13,
15,24 41:7,8
56:22 60:23
63:14 67:3
69:9,17

**portal**
30:2,4

**position**
15:12,15,17,
21 16:2,3,5
17:7

**positions**
15:16

**potentially**
40:11

**practical**
14:24

**practice**
46:25 47:2,11
75:3 76:2,10,
12

**practices**
22:20

**preceding**
52:1

**precise**
40:4

**precisely**
40:14

**preferred**
49:15

**preliminary**
19:22

**premises**
55:10,12
66:6,9,20,21,
23

**prepare**
13:20

**prescribed**
62:20

**prescription**
10:11

**present**
11:8,13 13:14
58:23 78:1

**preserve**
59:12

**president**
15:11 16:6,21

**pretty**
23:16

**primarily**
24:21 26:16

**principal**
18:13

**prior**
15:21 54:6
63:11

**problem**
24:2

**proceeds**
75:12

**process**
31:17 55:17
57:14 59:11
64:24

**produced**
35:22,25
36:22 38:12,
16 42:6

**production**
21:20 28:2,11
29:8 31:25
32:1,5,8,10,
11,14,25
33:3,5,6
46:13,16 47:6
51:17,21
53:11,25 54:3
55:25 60:20,
21 61:2,8
68:20,22,23
70:15,18,20,
23 71:2,5,12,
16,21,23
72:2,9,13
74:2,12 77:8,

9,18,21,23
78:7,16,20,23
79:8

**program**
59:6,17

**programs**
16:11

**properly**
77:16

**provide**
8:7,13 9:15,
23,24 10:5
24:25 30:15
34:6 40:19
56:14,18
58:17 59:7
64:8 68:7
70:16

**provided**
14:2 51:9
52:16,19 67:4
69:18

**providing**
7:22

**punch**
39:13

**punched**
45:1

**punches**
44:9

**purpose**
48:3

**purposes**
49:18 79:11

**push**
49:21

**putative**
22:25 71:18

MARLA LOAR, PMK

April 03, 2023

**Q**

qualification
 78:9

qualified
 10:23 27:3
 60:2

qualify
 59:21,22,24

quality
 71:10,15
 72:10

question
 8:1,6,8,9,21
 9:5,8,15 12:8
 18:10 19:13
 25:16 27:4,
 17,24 34:19
 35:20 43:14
 44:2 48:3
 52:4 67:24

questioning
 46:1

questions
 6:15,25 7:7,
 17,20,24
 8:11,17,24
 19:17,21
 22:21,22,23
 45:8,14,17
 50:9 70:1
 74:8 79:19,21
 81:3

quick
 80:3

quickly
 80:6

quiet
 47:7

quote
 44:21,22

quote/
unquote
 11:16 53:16
 54:1 65:13

**R**

Ralph
 12:20

rang
 74:18 75:4,19
 76:23

rates
 60:14

read
 11:25

ready
 6:4 53:10,14

real
 80:3

realm
 22:23

reason
 21:18 23:1
 33:15 40:13
 46:2 56:21
 57:2

reasons
 26:18

recall
 7:15 13:5
 61:22 63:3
 68:7,9 80:19

recalling
 7:12

receipt

65:24

receive
 16:1

received
 14:7,14,18,20

receiving
 25:11 54:15

recess
 50:4 70:6

recognize
 46:3

recommendat
ions
 17:2

record
 5:7 6:18,22
 8:15 26:12
 27:7,11,12,14
 35:3,22,25
 36:4,20 40:13
 42:2,6 43:22
 49:25 50:3,6
 70:5,8 80:3,8,
 9,11 81:13

recorded
 5:8

recording
 57:14

records
 36:8,22 37:5

recruiters
 17:25

refer
 7:13 33:3
 64:1

reference
 28:11

referred
 48:5

referring
 10:20 11:12,
 17 32:17 39:4
 52:22 73:20

refers
 64:2

reflect
 36:8 41:1
 44:19

reflected
 44:10,16,17

reflective
 40:4

reflects
 42:19 43:19

refresh
 7:13 68:12

regard
 28:11

regular
 60:14 71:1

related
 16:9 22:13
 50:10

relative
 22:20 33:22

relevance
 24:12 48:23

relevant
 45:15

reliant
 77:24 78:18

relieving
 62:14

relook

68:12

remain
 55:11

remaining
 9:2

remarks
 9:2

remote
 5:13

remotely
 5:12

repeat
 8:9 12:8
 25:16 27:5,
 17,21 28:16
 33:9 34:19
 38:23 48:1
 52:4 67:24

rephrase
 8:9 9:6 25:17

report
 17:9,11,15,20
 38:3,5,6,7,8,
 11,16

reporter
 5:25 8:15,23
 67:22 81:14,
 17,20

reporting
 5:14

represent
 5:17,19 6:13
 41:16 49:4

representing
 5:4,22

represents
 39:11 42:13
 73:9

request
8:9,20 9:14,
23

requested
12:6

requests
12:12

require
46:15 77:15

required
28:17 46:19
65:23 69:5
78:13

research
60:15

resemble
35:24

resources
15:11 16:6,7,
22

respect
23:20 30:8
49:9 60:18,23
63:12 69:8
74:11 76:7
77:8,22 78:5

respective
34:2 41:10
55:5 60:13

respond
12:11

responding
8:22

response
9:21 78:12

responsibiliti
es
16:21 17:4

responsible
16:8

responsive
9:9 12:6,11

rest
30:24 63:23
67:10,11,14
68:5,8,14
69:4,7,9,22
74:11 76:23

return
55:10 70:2
74:25

returning
76:11 77:2

review
13:20,23
37:22 69:25

reviewing
37:25

RG20073930
5:10

right-hand
39:1 42:18

ring
74:18 75:5,20
76:11

ringing
74:21

rings
61:9,12
74:10,13

role
60:23 65:6

roles
65:8 77:18
78:18

Ronald
5:9,20 6:14

room
76:4,8,14

rooms
68:17,18,24
76:9

rough
81:17,21

roughly
20:13

rounded
40:6

rule
7:3,7,9,17,19
8:5,11,13,17,
19,20

rules
7:1 9:1

run
16:7

___

**S**

safety
18:4

Santa
14:10,12,13

save
37:18,19

scan
29:23

scanned
39:14 40:1,5,
7

scanner
72:7

schedule
41:22 42:16,
19,24 43:19
53:11,22
61:15 64:2
65:3,4,10

scheduled
43:20 44:16
45:4 47:19
49:8 50:16
51:10,12,16,
18,25 52:1,8,
17 53:16,19
54:10 55:12
56:23 58:25
61:13,16
67:15 72:14,
16,18 73:12,
15,17

schedules
65:9

scope
24:9 27:2
78:8

scratch
34:11

scroll
39:7

searching
12:5,10

seconds
35:7 36:18,19
56:18

section
24:3,14

security
55:20

sell
18:15

sense
19:22 55:21
59:8

September
11:8,13

Services
5:5

sets
11:23

setup
60:18

sheer
57:3

sheet
50:16,17

shift
28:18 41:20,
22,23 42:1,12
43:7,24 44:6,
16,18,23
45:4,10,11,
18,19 51:18,
22 53:11
54:5,7,8,12
56:23 61:10,
13,14,17,18,
19,24 62:2,3,
4,10,11,14,
16,20,23
63:1,4,5,8,24
64:2 67:13,19
72:15,16
73:5,6,8
74:23

shifts
41:11 61:11,
16,21,22 62:7
72:8

shifts'
63:17

MARLA LOAR, PMK

short
62:4

shortly
19:20

show
58:25

SHRM
14:22,23

shrugging
8:15

shuts
47:1

sic
75:11 78:12

sick
59:9,10,16,19

side
42:18

sign
65:23 66:2

significantly
17:8

similar
14:1 20:6,8,
12,16 25:23
35:12,13
36:2,5 68:9
69:13

similarly
35:16,17

simultaneous
16:15 22:9
43:16 47:22
62:17 63:2
67:20 69:12,
15 75:23 77:4

single
78:6

sitting
10:4

situation
50:21

situations
51:23

size
21:19

slightly
58:9

small
39:18 78:25

smaller
20:16 68:24
79:9

somebody's
59:10

sort
49:20 59:12

sound
22:12 23:9

sounds
26:8 81:10

speak
12:18 13:2
35:11,12 49:3
56:21 60:7
63:7 78:17

speaking
5:14 16:15
22:9 43:16
47:22 62:17
63:2 67:20
69:12,15
75:23 77:4

specialist
18:2,3

specialists
17:24,25 18:2

specialized
14:14,18,21

specific
22:13 23:5
25:10 28:8,14
70:17

specifically
15:8 36:3
63:3 67:6
73:21 79:3

speculate
54:24 75:10,
16

speculating
54:19 55:7,15
75:25

speculation
40:17 46:23
51:5 52:3
54:18 55:14
75:8 78:4

spell
6:21 12:21
29:14

spelled
12:24

spoke
13:5 67:22

spoken
12:15

spot
56:4

staff
16:8,25

stall
56:9,15

stamp
36:5

standing
45:16 46:4
48:21

start
44:17,18
45:11,17
47:19 49:2,4,
8 51:15,22
53:10,12,14,
20,24 54:1,3,
7,8,10,11
55:12 61:9,12
72:24 73:5,6,
7,8,10 74:10,
13,23 75:2,13

started
9:3 53:17
63:10 72:25

starting
44:19,22,23
74:23

starts
44:24 49:5
51:18 73:5
75:10

state
6:17 7:14
18:17 26:12
61:6 64:7
65:13

statement
33:9 48:25
49:11

statements
14:1

states
18:8,9,12,15,
16,19

station
79:4,5,7

stay
69:4,6

staying
24:9

stick
40:23

stipulation
81:8

stop
47:6

stops
46:13

strip
39:21 42:8

structure
56:6

subassembly
77:19

subdepartment
32:16,23,25

subdepartments
32:13 33:8

subject
26:23 27:19
48:22

submit
59:11

subsequently
37:12

summarized
48:1

summary
47:25

supervisor
47:4,10
57:17,19
64:10,15

supervisors
64:11 65:1

supplied
63:20

supposed
66:16

swear
6:1

swipe
30:1 32:22
33:16

swiping
33:11

Switching
58:9

sworn
6:2,7

system
29:10,12,17,
22 30:10
31:4,7 32:15,
22 33:12,22
34:15 35:3,5,
9 36:23,25
38:4 40:6,24,
25 57:25
61:2,7,9
63:12,19
64:12,20,23,
24 67:8,11
74:9

systems
30:22 58:5

**T**

table
10:4

taking
10:11 47:7
66:6

talk
80:5

talking
52:19,24
54:22 55:3
65:7,8 74:1

Tami
5:25

team
47:5

technology
35:11

telling
13:11

temps
17:25 26:5

ten
41:9,10 44:14
45:4 49:7
56:22 70:2

ten-and-a-half
43:4

ten-minute
49:15 73:21,
23 74:3,4

term
34:18 36:12
52:19 66:9

terminations
16:10

terms
29:5

testified
6:8

testify
10:24

testifying
22:16 23:6

testimony
7:20,22 9:20
10:13 47:21
48:13 50:19
52:12 73:1
80:14,15,18

theoretically
79:7

theories
14:25

things
16:11 17:1
27:8 70:11
78:21

thought
59:19

three-and-a-
half
15:15,24 17:6

three-minute
56:20

time
5:6,7 9:13
11:8,12 13:3
27:10,13
30:21 31:15
33:24,25
34:16 35:3,6,
9,12,14,22,24
36:3,4,5,6,7,
12,22 37:4,5

38:6,7,16
39:12,13,17,
20 40:4,9,12
41:1,3,17
42:2,6,19
43:3,9,10,21
44:4,9,15,16,
18,19,21,22,
23,24,25
45:10,11,17,
18,19 47:14,
16,19 48:6,9,
10,17 49:1,3,
4,8,9,10,14
50:2,5,14,15,
16,17,21,22,
23 51:10,13,
21,25 52:1,8,
9,17,20,24
53:3,4,7,15,
16,17,18,19
54:10,14
55:9,12 56:23
57:1,5,8,15,
17 58:2,4,5,
23 59:1 61:3,
13,23,25
62:5,21 63:7
64:4 65:5
66:25 68:11
70:4,7 72:14,
16,17,19,21,
25 73:1,9,12,
15,16,17
74:5,18 75:4,
12 76:14,22,
25 77:7 79:11
80:7,10,19,24
81:4,12

time-
28:10

timekeeping
26:23 27:19

28:7,10,12,14
29:10,17,22
30:10,22
31:4,7 32:22
33:12,22
34:15 35:3,5,
9 36:23,25
41:7 57:25

timely
58:3,8

times
13:3,4 36:10
41:2 42:10
61:10 63:17,
24 68:8

timing
49:22

title
15:10 18:3
26:11,22 78:6

titles
17:19,21

today
5:5,25 6:16
7:20 9:19
10:13 13:9,21
73:2 80:15,24

today's
81:11

Tolentino
5:9,20 6:14
11:2 40:5,22,
23

Tolentino's
14:2

top
60:6

topic
19:8,10,25

22:13 23:5,16
26:8

topics
10:24 19:9,
16,20 22:18
23:9,10,11,
19,20,22
24:15

Tracy
12:19

trained
64:17,19,24

training
14:14,19,20
16:1 64:11

transcribe
8:16,23

transcript
81:7,15

travel
55:19

Troye
12:19

true
7:15 8:7
24:20 28:20
50:25 51:6

truthfully
7:20,24

type
34:7,9

types
51:19 77:14

typical
38:16 61:13,
19

typically
25:6 75:5

**U**

U.S.
18:9

uh-huh
37:19 41:15

unable
41:4

unaccounted
44:6

understand
7:23 8:1 9:4,
6,7 10:7,17,
19,22 11:5,
11,15 12:2
19:8 22:24
23:7,11 27:4,
25 36:15
43:14 49:21
60:17

understanding
31:16 40:9
41:4,19

understood
9:8

undertaken
25:18

union
25:4,5 28:2,4,
11 29:7,25
30:8,24 31:4,
5 32:20 33:11
34:23 43:17
58:17 59:23
60:10 61:1,23
63:13 64:4
66:5 67:4,8
68:13 69:3

70:20 71:13,
21,22 72:9
74:2,12 77:17

United
18:8,12

universally
60:7

university
14:9,11,13

untruthfully
8:2

unusual
66:7

upcoming
22:22

updates
69:21

upper
40:1 42:20

username
34:8,10

users
35:5

**V**

vacation
58:24

vague
34:17 35:18
36:11 52:18
66:9 73:24,25

VAN
5:18 6:3,11
19:6,11,19
20:2,3 22:14,
18 23:12,15,
24 24:2,11,16

26:13 27:6,
15,16,23 28:5
34:20 35:21
36:13 37:15,
21 40:18
43:13 45:21,
25 46:5
47:12,23
48:15 49:6,
13,23 50:1,7,
8,24 51:7
52:5,14,21
54:20 55:1,16
58:12,14
66:18 68:1,2
69:24 70:9
74:6 75:15
78:10 79:15,
19,25 80:4,12
81:2,6,10,22

Vanemmerik
5:19 6:12
81:20

varied
65:8,9

varies
68:11

vary
16:23

ventures
48:21

verbal
63:13

verbally
29:3 64:9
65:2

verify
65:24

versus
5:9 6:14 11:2

vice
15:11 16:5,21

video
5:8 81:12

videoconference
5:13

visible
79:8

**W**

wage
14:1

wait
8:20 76:10

walk
33:19 56:10,
20

wanted
47:14

warehouse
20:21,23 21:5
24:23 25:3,7,
10,18,19,22
26:1,19

Warehouse-
related
25:8

Warren
5:21,22 19:5,
7,14 20:1
22:10,15
23:4,13,18,25
24:6 26:7,25
27:9,21 28:1
34:17 35:18
36:11 37:19
40:16 43:12
45:7,22 46:22

47:20 48:12,
20 49:17
50:18 51:4
52:2,11,18
54:17,23
55:13 58:10
66:8 70:3
73:18,24 75:7
78:3 79:10,
17,24 80:2,5
81:2,5,9,14,
16,19

**watch**
76:14

**web**
30:4

**web-based**
30:2

**week**
13:13

**weeks**
13:7

**well-informed**
47:4

**well-organized**
47:6

**window**
73:21,23
74:3,4

**word**
66:7

**words**
8:14

**work**
18:15 20:15
21:5,12 25:8,
10,13,14,15,
18,20,23,25

26:1,5,14,16
28:21 31:13
32:5,7 34:15
35:8 36:1
43:20 44:18,
19,22,23,24
45:17,18,19
46:25 47:3,9
48:10,19
49:2,4,5
50:22 51:14,
15,18,21
52:17 53:9,
10,12,14,17,
20,24 54:2,3,
4,5,6 58:23
61:16 64:10
70:18,23
71:4,12,15,
20,21,23
73:4,10
74:20,22,24,
25 75:10,11,
12,13 76:3,
11,15 77:6,7,
18,19 78:2,22
79:4,6

**work's**
54:7

**work-assigned**
30:7 34:3

**workdays**
59:1

**worked**
37:1 42:4,13
43:25 45:10,
11 49:9 50:23
51:21,25
64:16 70:14
77:23

**workers**
26:5 51:21
68:20 71:22
72:9 74:2,12
77:17

**workforce**
21:18

**working**
28:25 46:13,
21 47:16,18
48:6 52:9
53:12 65:1
72:2,24 73:1,
6,8 75:2
76:16 77:25

**works**
21:22 31:5
79:2

**workstation**
31:15 47:8,9
75:4,19,21
76:19,21 77:2

**workstations**
74:17 75:6

**wrapping**
79:12,15,22

**writing**
63:15

**written**
29:2,5 63:14
67:2 69:17

**wrong**
52:7

---

**Y**

---

**Yang**
5:11

**year**

59:1 63:10

**years**
15:13,14,15,
24 17:6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

4/15/2021

Tolentino, Roland
061547

Requested by **Heskett, Tracy**

https://gilligllc.prd.mykronos.com/tk-print#/

## Timecard

🕐 10/14/2019 - 12/31/2019    🔄 4/15/2021 1:57 PM

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Mon 1... | | | 2:00 PM | | | | | | VAC | 8.00 | | | 8.00 |
| Tue 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 16.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 24.00 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 32.00 |
| Fri 10/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 40.00 |
| Sat 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 48.00 |
| Sun 1... | | | | | | | | | | | | | 48.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 56.00 |
| Tue 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 64.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 72.00 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 80.00 |
| Fri 10/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 88.00 |
| Sat 10... | | | | | ⋮ | | | ⋮ | | | | | 88.00 |
| Sun 1... | | | | | | | | | | | | | 88.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 96.00 |
| Tue 10... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 104.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 112.00 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | | | | | | | | 8.00 | 8.00 | 120.00 |
| Fri 11/... | 2:00 PM - 10:30 PM | | 1:50 PM | | | | | | | | 8.00 | 8.00 | 128.00 |

https://gilligllc.prd.mykronos.com/tk-print#/

D00410

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Sat 11/... | | | | | | | | | | | | | 248.58 |
| Fri 11/... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 248.58 |
| Thu 1... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 240.58 |
| Wed 1... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 232.58 |
| Tue 11... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 224.58 |
| Mon 1... | | | 12:00... | | | | | | VAC Pre... | 8.00 | | 8.00 | 216.58 |
| Sun 1... | | | | | | | | | | | | | 208.58 |
| Sat 11... | | | | | | | | | | | | | 208.58 |
| Fri 11/... | | | 2:00 PM | | | | | | FHOL | 8.00 | | 8.00 | 208.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 200.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 192.58 |
| Tue 11... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 184.58 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 176.58 |
| Sun 1... | | | | | | | | | | | | | 168.58 |
| Sat 11... | | | | | | | | | | | | | 168.58 |
| Fri 11/... | 2:00 PM - 10:30 PM | | 1:25 PM | 10:30... | | | | | | | 8.58 | 8.58 | 168.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 160.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 152.00 |
| Tue 11... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 144.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 136.00 |
| Sun 1... | | | | | | | | | | | | | 128.00 |
| Sat 11... | | | | | | | | | | | | | 128.00 |
| Sun 1... | | | | | | | | | | | | | |

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sat 12. | | | | | | | | | | | | | 384.58 |
| Fri 12/.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | | 8.00 | 384.58 |
| Thu 1.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | | 8.00 | 376.58 |
| Wed 1.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | 8.00 | 8.00 | 368.58 |
| Tue 12.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | 8.00 | 8.00 | 360.58 |
| Mon 1.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | 8.00 | 8.00 | 352.58 |
| Sun 1.. | | | | | | | | | | | | | 344.58 |
| Sat 12.. | | | | | | | | | | | | | 344.58 |
| Fri 12/.. | | | 2:00 PM | | | | | | VAC | 8.00 | | | 344.58 |
| Thu 1.. | | | 2:00 PM | | | | | | VAC | 8.00 | | | 336.58 |
| Wed 1.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | | 8.00 | 328.58 |
| Tue 12.. | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30.. | | | | | | | | 8.00 | 320.58 |
| Mon 1.. | | | 2:00 PM | | | | | | SICK | 8.00 | | | 312.58 |
| Sun 1.. | | | | | | | | | | | | | 304.58 |
| Sat 11.. | | | | | | | | | | | | | 304.58 |
| Fri 11/.. | 2:00 PM - 10:30 PM | | 2:00 PM | | | | | | Day After.. | 8.00 | 8.00 | 16.00 | 304.58 |
| | | | | | | | | | Thanksgi.. / HOL | 8.00 ▲ | | 16.00 | 288.58 |
| Thu 1.. | 2:00 PM - 10:30 PM | IIII | 12:00.. | | :: | | | :: | VAC Pre.. | 8.00 | | 8.00 | 272.58 |
| Wed 1.. | | | 12:00.. | | :: | | | :: | VAC Pre.. | 8.00 | | 8.00 | 264.58 |
| Tue 11.. | | | 12:00.. | | | | | | VAC Pre.. | 8.00 | | 8.00 | 256.58 |
| Mon 1.. | | | 12:00.. | | | | | | VAC Pre.. | 8.00 | | | 256.58 |

D00412

https://gilliglic.prd.mykronos.com/lk-print/#/

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Sun 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | | 384.58 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | 8.00 | 392.58 |
| Tue 12... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 400.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:51 PM | 10:30... | | | | | | | 8.00 | 8.00 | 408.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 416.58 |
| Fri 12/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... ▲ | | | | | | | 8.00 | 8.00 | 424.58 |
| Sat 12... | | | | | | | | | | | | | 424.58 |
| Sun 1... | | | | | ⋮ | | | | | | | | 424.58 |
| Mon 1... | | | | | | | | | | | | | 424.58 |
| Tue 12... | 2:00 PM - 10:30 PM | | 2:00 PM | 10:30... | | | | Christma... | 8.00 | | 8.00 | | 440.58 |
| Wed 1... | 2:00 PM - 10:30 PM | | 2:00 PM | 10:30... | | | | Christma... | 8.00 | 8.00 | 16.00 | | 456.58 |
| Thu 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | 8.00 | 16.00 | | 464.58 |
| Fri 12/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | 8.00 | 8.00 | | 472.58 |
| Sat 12... | | | | | | | ⋮ | | | | | 8.00 | 472.58 |
| Sun 1... | | | | | ⋮ | | ⋮ | | | | | | 472.58 |
| Mon 1... | | | 2:00 PM | | | | | | VAC | 8.00 | | 8.00 | 480.58 |
| Tue 12... | | | 2:00 PM | | | | | | VAC | 8.00 | | 8.00 | 488.58 |

4/15/2021

**Tolentino, Roland**
061547

https://gilliglic.prd.mykronos.com/tk-print#/

Requested by **Heskett, Tracy**

🕐 1/01/2020 - 3/31/2020    ⟳ 4/15/2021 1:59 PM

**Timecard**

*(handwritten: 2020)*

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|------|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Wed 1... | 2:00 PM - 10:30 PM | | 2:00 PM | 10:30... | | | | | | | 8.00 | 16.00 | 16.00 |
| Thu 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 24.00 |
| Fri 1/03 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 32.00 |
| Sat 1/... | | | | | | | | | | | | | 32.00 |
| Sun 1/... | | | | | | | | | | | | | 32.00 |
| Mon 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | New Year... | 8.00 | 8.00 | 8.00 | 40.00 |
| Tue 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 48.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 56.00 |
| Thu 1/... | 2:00 PM - 10:30 PM | | 1:51 PM | 10:30... | | | | | | | 8.00 | 8.00 | 64.00 |
| Fri 1/10 | 2:00 PM - 10:30 PM | | 1:51 PM | 10:30... | ⋮ | | | ⋮ | | | 8.00 | 8.00 | 72.00 |
| Sat 1/... | | | | | ⋮ | | | ⋮ | | | | | 72.00 |
| Sun 1/... | | | | | ⋮ | | | ⋮ | | | | | 72.00 |
| Mon 1... | 2:00 PM - 10:30 PM | ||||  | 2:00 PM | | | JURY | 8.00 | | 8.00 | 80.00 |
| Tue 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | 8.00 | 88.00 |
| Wed 1... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | 8.00 | 96.00 |
| Thu 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | 8.00 | 104.00 |
| Fri 1/17 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | 8.00 | 112.00 |

https://gilliglic.prd.mykronos.com/tk-print#/

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print/#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sat 1/... | | | | | | | | | | | | | 112.00 |
| Sun 1/... | | | | | | | | | | | | | 112.00 |
| Mon 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 120.00 |
| Tue 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 128.00 |
| Wed 1/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 136.00 |
| Thu 1/... | 2:00 PM - 10:30 PM | | 1:51 PM | 8:30 PM | | | | | WC Paid... | 2.00 | 6:00 | 8.00 | 144.00 |
| Fri 1/24 | | | 2:00 PM | | | | | | WC | 9.00 | | 8.00 | 152.00 |
| Sat 1/... | | | | | | | | | | | | | 152.00 |
| Sun 1/... | | | | | ⋮ | | | ⋮ | | | | | |
| Mon 1/... | | | 12:00... | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 160.00 |
| Tue 1/... | | | 12:00... | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 168.00 |
| Wed 1/... | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 176.00 |
| Thu 1/... | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 184.00 |
| Fri 1/31 | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 192.00 |
| Sat 2/... | | | | | | | | | | | | | 192.00 |
| Sun 2/... | | | | | | | | | | | | | |
| Mon 2/... | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 200.00 |
| Tue 2/... | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 208.00 |
| Wed 2/... | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 216.00 |
| Thu 2/... | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 224.00 |
| Fri 2/07 | | | 12:00... | | | | | | WC | 8.00 | | 8.00 | 232.00 |
| Sat 2/... | | | | | | | | | | | | | 232.00 |

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sun 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 232.00 |
| Mon 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 240.00 |
| Tue 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 248.00 |
| Wed 2/… | | | 2:00 PM | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 256.00 |
| Thu 2/… | | | 2:00 PM | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 264.00 |
| Fri 2/14 | | | 2:00 PM | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 272.00 |
| Sat 2/… | | | | | | | | | | | | | 272.00 |
| Sun 2/… | | | | | | | | | | | | | 272.00 |
| Mon 2/… | | | 2:00 PM | | | | | | HOL / President… | 8.00 / -8.00 ▲ | | | 280.00 |
| Tue 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 288.00 |
| Wed 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 296.00 |
| Thu 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 304.00 |
| Fri 2/21 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 312.00 |
| Sat 2/… | | | | | | | | | | | | | 312.00 |
| Sun 2/… | | | | | | | | | | | | | 312.00 |
| Mon 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 320.00 |
| Tue 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 328.00 |
| Wed 2/… | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 336.00 |
| Thu 2/… | | | 2:00 PM | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 344.00 |
| Fri 2/28 | | | 2:00 PM | | ⋮ | | | ⋮ | WC | 8.00 | | 8.00 | 352.00 |
| Sat 2/… | | | | | | | | | | | | | 352.00 |

https://gilliglic.prd.mykronos.com/lk-print#/

https://gilliglic.prd.mykronos.com/lk-print/#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/15/2021 | | | | | | | | | | | | | |
| Sun 3/... | | | | | | | | | | | | | 352.00 |
| Mon 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 360.00 |
| Tue 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 368.00 |
| Wed 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 376.00 |
| Thu 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 384.00 |
| Fri 3/06 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 392.00 |
| Sat 3/... | | | | | | | | | | | | | 392.00 |
| Fri 3/13 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 432.00 |
| Thu 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 424.00 |
| Wed 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 416.00 |
| Tue 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 408.00 |
| Mon 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 400.00 |
| Sun 3/... | | | | | | | | | | | | | 392.00 |
| Sat 3/... | | | | ⋮ | | | ⋮ | | | | | | 432.00 |
| Sun 3/... | | | | ⋮ | | | ⋮ | | | | | | 432.00 |
| Mon 3... | | | 2:00 PM | ⋮ | | | ⋮ | | WC | 8.00 | | 8.00 | 440.00 |
| Tue 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 448.00 |
| Wed 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 456.00 |
| Thu 3/... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 464.00 |
| Fri 3/20 | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 472.00 |
| Sat 3/... | | | | | | | | | | | | | 472.00 |
| Sun 3/... | | | | | | | | | | | | | 472.00 |
| Mon 3... | | | 2:00 PM | | | | | | WC | 8.00 | | 8.00 | 480.00 |

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Tue 3/... | | | ☑ 2:00 PM | | ⋮ | | | ⋮ | ☑ WC | ☑ 8.00 | | | 488.00 |
| Wed 3... | | | ☑ 2:00 PM | | | | | | ☑ WC | ☑ 8.00 | | | 496.00 |
| Thu 3/... | | | ☑ 2:00 PM | | | | | | ☑ WC | ☑ 8.00 | | 8.00 | 504.00 |
| Fri 3/27 | | | ☑ 2:00 PM | | | | | | ☑ WC | ☑ 8.00 | | 8.00 | 512.00 |
| Sat 3/... | | | | | | | | | | | | 8.00 | 512.00 |
| Sun 3/... | | | | | | | | | | | | | 512.00 |
| Mon 3... | | | 5:00 AM | | | | | | COVID | 8.00 ▲ | | 8.00 | 520.00 |
| Tue 3/... | | | 5:00 AM | | ⋮ | | | ⋮ | COVID | 8.00 ▲ | | 8.00 | 528.00 |

https://gilligllc.prd.mykronos.com/tk-print/#/

https://gilliglic.prd.mykronos.com/tk-print#/

4/15/2021

**Tolentino, Roland**
061547

Requested by **Heslett, Tracy**

4/01/2020 - 6/30/2020    4/15/2021 1:59 PM

## Timecard

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wed 4... | *2020* | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 8.00 |
| Thu 4/... | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 16.00 |
| Fri 4/03 | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 24.00 |
| Sat 4/... | | | | | | | | | | | | | 24.00 |
| Sun 4/... | | | | | | | | | | | | | 24.00 |
| Mon 4... | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 32.00 |
| Tue 4/... | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 40.00 |
| Wed 4... | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 48.00 |
| Thu 4/... | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 56.00 |
| Fri 4/10 | | | 5:00 AM | | | | | | COVID | 8.00 ◢ | | 8.00 | 64.00 |
| Sat 4/... | | | | | : | | | : | | | | | 64.00 |
| Sun 4/... | | | | | : | | | : | | | | | 64.00 |
| Mon 4... | | | 2:00 PM | | : | | | : | COVID | 8.00 ◢ | | 8.00 | 72.00 |
| Tue 4/... | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 80.00 |
| Wed 4... | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 88.00 |
| Thu 4/... | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 96.00 |
| Fri 4/17 | | | 2:00 PM | | | | | | COVID | 8.00 ◢ | | 8.00 | 104.00 |
| Sat 4/... | | | | | | | | | | | | | 104.00 |
| Sun 4/... | | | | | | | | | | | | | 104.00 |

https://gilliglic.prd.mykronos.com/tk-print#/

D00419

4/15/2021

https://gilliglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Mon 4/... | | | | | | | | | | | | | 104.00 |
| Tue 4/... | | | | | | | | | | | | | 104.00 |
| Wed 4/... | | | | | | | | | | | | | 104.00 |
| Thu 4/... | | | | | | | | | | | | | 104.00 |
| Fri 4/24 | | | | | | | | | VAC Pd 0... | 16.00 ▲ | | 16.00 | 120.00 |
| Sat 4/... | | | | | | | | | | | | | 120.00 |
| Sun 4/... | | | | | | | | | | | | | 120.00 |
| Mon 4/... | | | | | | | | | | | | | 120.00 |
| Tue 4/... | | | | | ⋮ | | | ⋮ | | | | | 120.00 |
| Wed 4/... | | | | | ⋮ | | | ⋮ | | | | | 120.00 |
| Thu 4/... | | | | | ⋮ | | | ⋮ | | | | | 120.00 |
| Fri 5/01 | | | | | | | | | | | | | 120.00 |
| Sat 5/... | | | | | | | | | | | | | 120.00 |
| Sun 5/... | | | | | | | | | | | | | 120.00 |
| Mon 5/... | | | | | | | | | | | | | 120.00 |
| Tue 5/... | | | | | | | | | | | | | 120.00 |
| Wed 5. | | | | | | | | | | | | | 120.00 |
| Thu 5/... | | | | | | | | | | | | | 120.00 |
| Fri 5/08 | | | | | | | | | | | | | 120.00 |
| Sat 5/. | | | | | | | | | | | | | 120.00 |
| Sun 5/... | | | | | | | | | | | | | 120.00 |
| Mon 5... | 2:00 PM - 10:30 PM | | 1:57 PM | 10:30... ▲ | | | | | | | 8.00 | 8.00 | 128.00 |
| Tue 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... ▲ | | | | | | | 8.00 | 8.00 | 136.00 |

D00420

https://gilliglic.prd.mykronos.com/lk-print#/

4/15/2021

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wed 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | | | | 8.00 | 8.00 | 144.00 |
| Thu 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | | | | 8.00 | 8.00 | 152.00 |
| Fri 5/15 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | ⋮ | | | 8.00 | 8.00 | 160.00 |
| Sat 5/... | | | | | | | | | | | | | 160.00 |
| Sun 5/... | | | | | | | | | ⋮ | | | | |
| Mon 5... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | ⋮ | | | 8.00 | 8.00 | 168.00 |
| Tue 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | | | | 8.00 | 8.00 | 176.00 |
| Wed 5... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | | | | 8.00 | 8.00 | 184.00 |
| Thu 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | | | | 8.00 | 8.00 | 192.00 |
| Fri 5/22 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | | | | 8.00 | 8.00 | 200.00 |
| Sat 5/... | | | | | | | | | | | | | 200.00 |
| Sun 5/... | | | | | | | | | | | | | 200.00 |
| Mon 5... | 2:00 PM - 10:30 PM | IIII | | | | | | | Memorial... | 8.00 | 8.00 | 8.00 | 208.00 |
| Tue 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 216.00 |
| Wed 5... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 224.00 |
| Thu 5/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 232.00 |
| Fri 5/29 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | ▲ | | | | | | 8.00 | 8.00 | 240.00 |
| Sat 5/... | | | | | | | | | ⋮ | | | | 240.00 |
| Sun 5/... | | | | | | | | | ⋮ | | | | 240.00 |
| Mon 6... | 2:00 PM - 10:30 PM | █▬█ | | | ⋮ | | | ⋮ | SICK | 8.00 | | 8.00 | 248.00 |
| Tue 6/... | 2:00 PM - 10:30 PM | | 2:00 PM | 1:50 PM | 10:30... | | | | | | | | 256.00 |

4/15/2021

https://giliiglic.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wed 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | | | 264.00 |
| Thu 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 272.00 |
| Fri 6/05 | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 280.00 |
| Sat 6/... | | | | | | | | | | | | | 280.00 |
| Sun 6/... | | | | | | | | | | | | | 280.00 |
| Mon 6... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 288.00 |
| Tue 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 296.00 |
| Wed 6... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 304.00 |
| Thu 6/... | 2:00 PM - 10:30 PM | | 1:50 PM | 10:30... | | | | | | | 8.00 | 8.00 | 312.00 |
| Fri 6/12 | 2:00 PM - 10:30 PM | ▮▮ | 2:00 PM | | | | | | SUSPE... | 8.00 | | 8.00 | 320.00 |
| Sat 6/... | | | | | | | | | | | | | 320.00 |
| Sun 6/... | | | | | | | | | | | | | 320.00 |
| Mon 6... | 2:00 PM - 10:30 PM | ▮▮ | 2:00 PM | | ... | | | ... | SUSPE... | 8.00 | | 8.00 | 328.00 |
| Tue 6/... | | | 2:00 PM | 10:30... | ... | | | ... | | | 8.00 | 8.00 | 336.00 |
| Wed 6... | | | | | | | | | | | | | 336.00 |
| Thu 6/... | | | | | | | | | | | | | 336.00 |
| Fri 6/19 | | | | | | | | | | | | | 336.00 |
| Sat 6/... | | | | | | | | | | | | | 336.00 |
| Sun 6/... | | | | | | | | | | | | | 336.00 |
| Mon 6... | | | | | | | | | | | | | 336.00 |
| Tue 6/... | | | | | | | | | | | | | 336.00 |

D00422

4/5

4/15/2021

https://gilliglitc.prd.mykronos.com/lk-print#/

| Date | Schedule | Absence | In | Out | Transfer | In | Out | Transfer | Pay Code | Amount | Shift | Daily | Period |
|------|----------|---------|-----|-----|----------|-----|-----|----------|----------|--------|-------|-------|--------|
| Wed 6/... | | | | | | | | | | | | | 336.00 |
| Thu 6/... | | | | | | | | | | | | | 336.00 |
| Fri 6/26 | | | | | | | | | | | | | 336.00 |
| Sat 6/... | | | | | | | | | | | | | 336.00 |
| Sun 6/... | | | | | | | | | | | | | 336.00 |
| Mon 6... | | | | | | | | | | | | | 336.00 |
| Tue 6/... | | | | | | | | | | | | | 336.00 |

https://gilliglitc.prd.mykronos.com/lk-print#/

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

1  WILLIAM FAULKNER (83385)
   MICHAEL WARREN (223642)
2  McMANIS FAULKNER
   A Professional Corporation
3  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
4  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
5  Email:    mwarren@mcmanislaw.com

6  CRAIG C. MARTIN (*Pro Hac Vice*)
   MATT D. BASIL (*Pro Hac Vice*)
7  WILLKIE FARR & GALLAGHER, LLP
   300 North LaSalle Street, Suite 5000
8  Chicago, Illinois 60654
   Telephone:    (312) 728-9000
9  Facsimile:    (312) 728-9199
   Email:    cmartin@willkie.com
10         mbasil@willkie.com

11 Attorneys for Defendant
   GILLIG, LLC
12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    FOR THE COUNTY OF ALAMEDA

15

16 RONALD TOLENTINO, individually, and on        Case No.: RG20073930
   behalf of all others similarly situated,
17                                                **DEFENDANT GILLIG, LLC'S**
                                                  **RESPONSES TO PLAINTIFF'S SPECIAL**
18              Plaintiff,                        **INTERROGATORIES, SET ONE**

19         vs.                                    Complaint Filed:    September 16, 2020
                                                  First Amended Complaint Filed:
20 GILLIG, LLC, a limited liability company; and           January 21, 2021
   DOES 1 through 10, inclusive,                 Second Amended Complaint Filed:
21                                                         March 10, 2021
              Defendants.                         Trial Date:    Not set
22

23 PROPOUNDING PARTY:    Plaintiff RONALD TOLENTINO

24 RESPONDING PARTY:    Defendant GILLIG, LLC

25 SET NUMBER:           ONE

26      Defendant GILLIG, LLC ("Defendant") responds to Plaintiff RONALD TOLENTINO'S

27 Special Interrogatories, Set One, as follows:

28

                                          1

1

## GENERAL STATEMENT AND OBJECTIONS

2    1.    The following responses are based on discovery available as of the date of this
3    response.  Discovery is in progress, and these responses are subject to change accordingly.  It is
4    anticipated that further discovery, independent investigation, and analysis may lead to the
5    discovery of additional information, supply additional facts, and add meaning to known facts, as
6    well as establish entirely new factual conclusions and legal contentions, all of which may lead to
7    additions to, changes to, or variations from the information set forth herein.  Defendant reserves
8    the right to supplement its responses, production, and objections as additional information is
9    discovered.

10    2.    The following responses are given without prejudice to Defendant's right to
11    produce or rely on subsequently discovered information, facts, or documents.  This response is
12    made in a good faith effort to comply with Code of Civil Procedure Section 2030.010 et seq., and
13    to supply such responsive information as exists and is presently within Defendant's possession,
14    custody, or control, but should in no way be deemed to be to the prejudice of Defendant in
15    relation to further discovery, research, and analysis.

16    3.    Nothing contained herein is intended to be or should be construed as a waiver of
17    the attorney-client privilege, the attorney work-product doctrine, the confidential marital
18    communications doctrine, rights to privacy under the California and U.S. Constitutions,
19    protections afforded to communications with representatives (including under Government Code
20    section 3303(i)), the mediation privilege and/or settlement discussions privilege, any other
21    applicable privilege, protection, or doctrine.  Any inadvertent disclosure of privileged or
22    otherwise protected information shall not be deemed a waiver of any applicable privilege,
23    protection, or doctrine.

24    4.    Defendant objects to the interrogatories to the extent they call for information that
25    is a matter of public record or otherwise equally available to Propounding Party.

26    5.    Defendant objects to these interrogatories to the extent they call for information
27    implicating third party privacy rights.

28

2

DEFENDANT GILLIG, LLC'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES,
SET ONE; CASE NO. RG20073930

6.      These responses are made solely for the purpose of discovery in this action.

7.      The General Statement and Objections shall be deemed to be incorporated in full into each response set forth below.

**SPECIAL INTERROGATORY NO. 1**:

Identify (by stating the full name, last known address, last known phone number(s), last known e-mail address(es), and dates of employment) every person employed in the State of California by Defendant Gillig, LLC in an hourly-paid, non-exempt position at any time since September 16, 2016.

**Response to Special Interrogatory No. 1**:

Defendant objects to this interrogatory on the grounds that it is overbroad as to the phrase "in an hourly-paid, non-exempt position" and constitutes premature, impermissible precertification discovery.  Defendant also objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and seeks information protected by the constitutional privacy rights of third-parties.  (Cal. Const., Art. I, § 1.)

**SPECIAL INTERROGATORY NO. 2**:

State the total number of individuals who are currently employed in the State of California by Defendant Gillig, LLC in an hourly-paid, non-exempt position.

**Response to Special Interrogatory No. 2**:

Defendant objects to this interrogatory on the grounds that it is overbroad as to the phrase "in an hourly-paid, non-exempt position" and it is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing and without waiving its objections, Defendant responds as follows: 573.

**SPECIAL INTERROGATORY NO. 3**:

State the total number of individuals who were employed in the State of California by Defendant Gillig, LLC in any hourly-paid, non-exempt position at any time since September 16, 2016, but are no longer employed by Gillig, LLC.

3

**Response to Special Interrogatory No. 3**:

Defendant objects to this interrogatory on the grounds that it is overbroad as to the phrase "in an hourly-paid, non-exempt position" and it is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing and without waiving its objections, Defendant responds as follows: 337.

**SPECIAL INTERROGATORY NO. 4**:

Identify (by stating the full name, last known address, last known phone number(s), last known e-mail address(es), and dates of employment) every former employee of Defendant Gillig, LLC who was employed in an exempt job position that directly supervised any employee of Defendant working in an hourly-paid, non-exempt position at any time since September 16, 2016.

**Response to Special Interrogatory No. 4**:

Defendant objects to this interrogatory on the grounds that it is overbroad as to the phrase "in an hourly-paid, non-exempt position" and constitutes premature, impermissible precertification discovery. Defendant also objects to this interrogatory on the grounds that the phrases "exempt job position" and "directly supervised" are vague and ambiguous. Moreover, Defendant objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and seeks information protected by the constitutional privacy rights of third-parties. (Cal. Const., Art. I, § 1.) Finally, Defendant objects to this interrogatory to the extent that individuals at issue are represented by defense counsel, and thus violates the attorney-client privilege and attorney work product privilege.

**SPECIAL INTERROGATORY NO. 5**:

Identify (by stating the full name) every person who is currently employed in the State of California by Defendant Gillig, LLC in an exempt position that directly supervises any employee of Defendant working in an hourly-paid, non-exempt position.

///

4

DEFENDANT GILLIG, LLC'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE; CASE NO. RG20073930

1    **Response to Special Interrogatory No. 5**:

2       Defendant objects to this interrogatory on the grounds that it is overbroad as to the

3    phrase "in an hourly-paid, non-exempt position" and constitutes premature, impermissible

4    precertification discovery.  Defendant also objects to this interrogatory on the grounds that the

5    phrases "exempt job position" and "directly supervises" are vague and ambiguous.  Moreover,

6    Defendant objects to this interrogatory on the grounds that it is not reasonably calculated to lead

7    to the discovery of admissible evidence and seeks information protected by the constitutional

8    privacy rights of third-parties.  (Cal. Const., Art. I, § 1.)  Finally, Defendant objects to this

9    interrogatory to the extent that individuals at issue are represented by defense counsel, and thus

10    violates the attorney-client privilege and attorney work product privilege.

11

12    DATED:  April 30, 2021       McMANIS FAULKNER

13

14                       _____

15                       MICHAEL WARREN
                   Attorneys for Defendant

16                       GILLIG, LLC

17

18

19

20

21

22

23

24

25

26

27

28

5

1   VERIFICATION

2       I, Marla Loar, declare:

3       I am the Vice President of Human Resources of Gillig, LLC, defendant in this action.  I

4   have read the foregoing DEFENDANT GILLIG, LLC'S RESPONSE TO PLAINTIFF'S

5   SPECIAL INTERROGATORIES, SET ONE, and know the contents thereof.  The same is true

6   of my own knowledge, except as to those matters, which are therein stated upon my information

7   and belief, and as to those matters, I believe it to be true.

8       I declare under penalty of perjury under the laws of the State of California that the

9   foregoing is true and correct.

10

11  Dated: April 30, 2021

12                 MARLA LOAR

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

3

4

    I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113. My email address is: edresser@mcmanislaw.com.

5

    On April 30, 2021, I served the foregoing document described as:

6

7

**DEFENDANT GILLIG, LLC'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE**

8

9

    on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

10

| | |
|---|---|
| Kane Moon, Esq. | Attorneys for Plaintiff |
| Allen Feghali | RONALD TOLENTINO |

11

MOON & YANG, APC
1055 W. Seventh St., #1880

12

Los Angeles, CA 90017
T: (213) 232-3128 / F: (213) 232-3125

13

E: kane.moon@moonyanglaw.com
   allen.feghali@moonyanglaw.com

14

15

☒   **(BY OVERNIGHT DELIVERY)**

16

    I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

17

18

☒   **(STATE)**

19

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

20

21

    Executed on April 30, 2021, at San Jose, California.

22

23

_____
Elise Dresser

24

25

26

27

28

1

https://www.fedex.com/shipping/html/en/PrintIFrame.html

ORIGIN ID:RBKA        (408) 279-8700
MICHAEL WARREN/ELISE DRESSER
MCMANIS FAULKNER
50 WEST SAN FERNANDO STREET
10TH FLOOR
SAN JOSE, CA 95113
UNITED STATES US

SHIP DATE: 30APR21
ACTWGT: 1.00 LB
CAD: 112282464/INET4340

BILL SENDER

TO  **KANE MOONALLEN FEGHALI**

**MOON & YANG, APC**

**1055 W. SEVENTH ST. #1880**

**SUITE 1880**

**LOS ANGELES CA 90017**

(213) 232-3128
INV:
PO:                              REF: GILLI/2003005
                                 DEPT:



FedEx
Express

E

MON - 03 MAY 10:30A
PRIORITY OVERNIGHT

TRK#
0201   **7736 0479 0655**

# WZ JBPA

**90017**
CA-US **LAX**

Firefox

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

## <u>DECLARATION OF ESSA ABABSEH</u>

I, Essa Ababseh declare as follows:

1.      I am an adult resident of the State of California, and, if called as a witness in this action, I would testify truthfully to the matters described in this declaration.  All of the matters described in this declaration are within my personal knowledge, except those matters that are stated to be upon information and belief.  As to such matters, I believe them to be true.

2.      I make this declaration entirely of my own free will and choice.  I have not been promised any benefit for doing so, and I have not been pressured into giving this declaration. Before signing this declaration, I was given the opportunity to review it, make changes, and verify the accuracy of its contents.

3.      I am a former employee of Gillig, LLC. I worked at Gillig as a line worker from 2011 to 2018 and as a warehouse foreman from 2018 to 2020. Typically, my scheduled shift was from 5:00a.m. to 1:00p.m. During my employment, I had to record my time by scanning my employee identification badge.

4.      During my employment with Gillig, I was allowed to clock in and begin working up to 10 minutes before my scheduled shift, and no one at Gillig prevented me from working before my scheduled shift. However, I was getting paid based on my scheduled shift rather than the actual time I worked.

5.      During my employment I took my lunch based on a bell schedule. There was only one bell to indicate when a meal break started and a second bell, exactly 30 minutes later, that indicated when my meal break ended. I was expected to be at my station when the second bell rang because the production line would start as soon as that bell rang. Because I was not able to leave my station until the first bell rang and had to return before the second bell rang, my meal breaks were routinely less than 30 minutes.

6.      During my employment I took my rest breaks based on a bell schedule. There was only one bell to indicate when a rest break started and a second bell, exactly 10 minutes later, that indicated when my meal break ended. I was expected to be at my station when the

1  second bell rang because the production line would start as soon as that bell rang. Because I

2  was not able to leave my station until the first bell rang and had to return before the second bell

3  rang, my rest breaks were routinely less than 10 minutes.

4         I declare under penalty of perjury, under the laws of the State of California and the

5  United States of America, that the foregoing is true and correct.

6         Executed on _____ in Pacifica, California.
                        4/12/2023

7

8  _____
   Essa Ababseh

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

DocuSign Envelope ID: 6736AB63-1156-4C98-96B3-904F5B2B385

### DECLARATION OF JUAN ALVAREZ

I, Juan Alvarez, declare as follows:

1.     I am an adult resident of the State of California, and, if called as a witness in this action, I would testify truthfully to the matters described in this declaration.  All of the matters described in this declaration are within my personal knowledge, except those matters that are stated to be upon information and belief.  As to such matters, I believe them to be true.

2.     I make this declaration entirely of my own free will and choice.  I have not been promised any benefit for doing so, and I have not been pressured into giving this declaration. Before signing this declaration, I was given the opportunity to review it, make changes, and verify the accuracy of its contents.

3.     I am a former employee of Gillig, LLC. I worked at Gillig as a bus assembler from 2006 to 2022. Typically, my scheduled shift was from 2:00p.m. to 10:30p.m. or from 5:00a.m. to 1:30 p.m. While I was employed as a bus assembler, I had to record my time by scanning my employee ID card on a card reader.

4.     During my employment with Gillig, I was allowed to clock in and begin working up to 10 minutes before my scheduled shift, and no one at Gillig prevented me from working before my scheduled shift. However, I was getting paid based on my scheduled shift rather than the actual time I worked.

5.     During my employment I took my lunch based on a bell schedule. There was only one bell to indicate when a meal break started, a second bell to indicate there were five minutes left before our meal break ended, and a third bell rang, exactly 30 minutes after the first bell, that indicated when my meal break ended. I was expected to be at my station when the third bell rang because the production line would start as soon as that bell rang. Because I was not able to leave my station until the first bell rang and had to return before the third bell rang, my meal breaks were routinely less than 30 minutes.

6.     During my employment I took my rest breaks based on a bell schedule. There was only one bell to indicate when a rest break started and a second bell, exactly 10 minutes

1    later, that indicated when my meal break ended. I was expected to be at my station when the

2    second bell rang because the production line would start as soon as that bell rang. Because I

3    was not able to leave my station until the first bell rang and had to return before the second bell

4    rang, my rest breaks were routinely less than 10 minutes.

5         I declare under penalty of perjury, under the laws of the State of California and the

6    United States of America, that the foregoing is true and correct.

7

8         Executed on ____4/21/2023____ in Manteca, California.

9

10   _____
    JUAN ALVAREZ

---

DECLARATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 5

## <u>DECLARATION OF STEVEN ANDERSEN</u>

I, Steven Andersen, declare as follows:

1.     I am an adult resident of the State of California, and, if called as a witness in this action, I would testify truthfully to the matters described in this declaration.  All of the matters described in this declaration are within my personal knowledge, except those matters that are stated to be upon information and belief.  As to such matters, I believe them to be true.

2.     I make this declaration entirely of my own free will and choice.  I have not been promised any benefit for doing so, and I have not been pressured into giving this declaration. Before signing this declaration, I was given the opportunity to review it, make changes, and verify the accuracy of its contents.

3.     I am a former employee of Gillig, LLC. I worked at Gillig as an assembler from October 31, 2011, to June 1, 2022. Typically, my scheduled shift was from 5:00a.m. to 1:30p.m. While I was employed as an assembler. I had to record my time by scanning my employee ID card.

4.     During my employment with Gillig, I was allowed to clock in and begin working up to 10 minutes before my scheduled shift, and no one at Gillig prevented me from working before my scheduled shift. However, I was getting paid based on my scheduled shift rather than the actual time I worked.

5.     During my employment I took my lunch based on a bell schedule. There was one bell to indicate when a meal break started, a second bell to indicate there were five minutes left before our meal break ended, and a third bell, which rang exactly 30 minutes after the first bell, that indicated when my meal break ended. I was expected to be at my station when the third bell rang because the production line would start as soon as that bell rang. Because I was not able to leave my station until the first bell rang and had to return before the third bell rang, my meal breaks were routinely less than 30 minutes.

6.     During my employment I took my rest breaks based on a bell schedule. There was only one bell to indicate when a rest break started and a second bell, exactly 10 minutes

1    later, that indicated when my meal break ended. I was expected to be at my station when the

2    second bell rang because the production line would start as soon as that bell rang. Because I

3    was not able to leave my station until the first bell rang and had to return before the second bell

4    rang, my rest breaks were routinely less than 10 minutes.

5         I declare under penalty of perjury, under the laws of the State of California and the

6    United States of America, that the foregoing is true and correct.

7         Executed on _____4/24/2023_____ in Manteca, California.

8

9         Steven Andersen
         _____
         B8F3F370F1EF441...

         Steven Andersen

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 6

Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Jacquelyne VanEmmerik (SBN 339338)
**MOON & YANG, APC**
1055 West Seventh Street, Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
Email: kane.moon@moonyanglaw.com
Email: allen.feghali@moonyanglaw.com
Email: jacquelyne.vanemmerik@moonyanglaw.com

*Attorneys for Plaintiff,*
*Roland Tolentino*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

| | |
|---|---|
| ROLAND TOLENTINO, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No.: RG20073930<br><br>[Honorable Brad Seligman, Department 23]<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF PLAINTIFF ROLAND TOLENTINO IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: May 30 , 2023<br>Time: 9:15 a.m.<br>Dept.: 23<br><br>Reservation ID: 296057941352<br><br>Complaint Filed: September 16, 2020<br>Trial Date: Not Set |

DECLARATION OF PLAINTIFF ROLAND TOLENTINO IN SUPPORT OF PLAINTIFF'S' MOTION FOR CLASS CERTIFICATION

## DECLARATION OF ROLAND TOLENTINO

I, ROLAND TOLENTINO, declare as follows:

1.   I am an adult resident of the State of California and a former employee of Gillig, LLC. I have personal knowledge of the facts stated herein. If called as a witness, I could and would testify competently to the facts stated herein. _____ (INITIALS)

2.   I was employed by Gillig, LLC from approximately May 2002 to June 2020. Throughout my employment with Gillig, LLC, I worked as a Maintenance Worker in the Production Department at the Core Facility in Livermore, California, and was classified as a non-exempt, hourly-paid employee. _____ (INITIALS)

3.   Throughout my employment with Gillig, LLC, I was expected to abide by its timekeeping, meal period, and rest break policies. _____ (INITIALS)

4.   Throughout my employment with Gillig, LLC, I was subject to discipline, including termination, if I failed to abide by its timekeeping, meal period, and rest break policies. _____ (INITIALS)

5.   Throughout my employment with Gillig, LLC, I was required to clock in and clock out by swiping a magnetic time card through the timekeeping system, Kronos. _____ (INITIALS)

6.   Throughout my employment with Gillig, LLC, I was not paid for the time between my clock in time and scheduled start time. _____ (INITIALS)

7.   Throughout my employment with Gillig, LLC, I was awarded the annual Perfect Attendance Award for nine consecutive years. Each year I won the annual award, I was given a $2,000.00 bonus. _____ (INITIALS)

8.   Throughout my employment with Gillig, LLC, I was not required to clock in and clock out for meal periods, as a thirty-minute meal period was auto-deducted from my time records. _____ (INITIALS)

9.   Throughout my employment with Gillig, LLC, I rarely received a full, uninterrupted thirty-minute meal period by the end of the fifth hour of my shift, due to the fact that I had to start walking back to my work station after the second meal period bell, in order to get back to my work station by the third and final meal period bell. _____ (INITIALS)

DocuSign Envelope ID: 6A2B9D7D-90BB-4329-98E9-DD9AFD1483DE

10. Throughout my employment with Gillig, LLC, I was expected to be at my work station by the third and final meal period bell._____(INITIALS)

11. Throughout my employment with Gillig, LLC, I rarely received a full, uninterrupted ten-minute rest break for every four hours that I worked, due to the fact that I had to start walking back to my work station before the break was over, in order to get back to my work station by the second and final rest break bell._____(INITIALS)

12. Throughout my employment with Gillig, LLC, I was expected to be at my work station by the second and final rest break bell._____(INITIALS)

13. Due to my concerns that Gillig, LLC was treating me and my coworkers unjustly, I retained the law firm of Moon & Yang, APC to commence litigation on my behalf._____(INITIALS)

14. I understand that, as the representative of the Class in this Action, I have an obligation to act in the interest of the Class at all times. I also understand that, as the representative of the Class in this Action, I have agreed to prosecute this Action to its conclusion, no matter how long that might take. I accept these responsibilities and will perform them to the best of my ability._____(INITIALS)

15. To date, I have vigorously litigated this Action, consistently inquiring as to its status, providing documents to Class Counsel, and responding to written discovery._____(INITIALS)

16. I have not been promised, and do not expect to receive, any compensation for acting as a representative of the Class in this Action, other than my share of any recovery obtained for the benefit of the Class in this Action._____(INITIALS)

17. To my knowledge, there are no conflicts between my interests in this Action and the interests of the other Class Members in this Action which would limit my ability to serve as the representative of the Class._____(INITIALS)

18. I want Gillig, LLC to pay its current and former employees, including myself, in compliance with California labor law._____(INITIALS)

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

//

//

1    Executed on _____, in San Francisco, California.

    4/24/2023

2                                                    DocuSigned by:

                                            _____
                                                    EB7B703D910B49F...

3                                            Roland Tolentino

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

STATE OF CALIFORNIA           )
                                     ) ss

COUNTY OF LOS ANGELES      )

       I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017.  On April 24, 2023, I served the foregoing document described as:

**DECLARATION OF KANE MOON IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

  <u>X</u>   by placing ___ the original <u>X</u> a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| WILLIAM FAULKNER (83385) | CRAIG MARTIN (Pro Hac Vice) |
| MICHAEL WARREN (223642) | cmartin@willkie.com |
| **McMANIS FAULKNER** | MATT BASIL (Pro Hac Vice) |
| 50 West San Fernando Street, 10th Floor | mbasil@willkie.com |
| San Jose, California 95113 | **WILLKIE FARR & GALLAGHER, LLP** |
| Telephone: (408) 279-8700 | |
| Facsimile: (408) 279-3244 | 300 North LaSalle Street, Suite 5000 |
| Email: mwarren@mcmanislaw.com | Chicago, Illinois 60654 |
| | Telephone: (312) 728-9000 |
| | Facsimile: (312) 728-9199 |

### *Attorneys for Defendant GILLIG, LLC*

[X]   **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

 <u>X</u>  (State)     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     Executed on April 24, 2023, at Los Angeles, California.

<u>Janelle Jickain_____</u>           _____
       Name                                           Signature

Superior Court of Alameda County Public Portal

# Reschedule a Reservation

| Reservation | |
|---|---|
| Reservation ID:<br>296057941352 | |
| Reservation Type:<br>Motion re: (Motion for Class Certification) | |
| Case Number:<br>RG20073930 | |
| Case Title:<br>Tolentino VS Gillig, LLC | |
| Filing Party:<br>Ronald Tolentino (Plaintiff) | |
| Location:<br>Rene C. Davidson Courthouse - Department 23 | |
| Date/Time:<br>May 23rd 2023, 9:15AM | |
| Status:<br>RESERVED | |
| Number of Motions:<br>1 | |

**Motions to Reschedule**

Motion re: (Motion for Class Certification)

***Reschedule To***:
Date:  05/30/2023 9:15 AM
Location:  Rene C. Davidson Courthouse - Department 23

**Fees**

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Reschedule Fee | 1.00 | 1 | 1.00 |

| Description | Fee | Qty | Amount |
|---|---|---|---|
| TOTAL | | | $1.00 |

## Payment

| | |
|---|---|
| Amount: | Type: |
| $1.00 | Visa |
| Account Number: | Authorization: |
| XXXX4529 | 04148G |
| Payment Date: | |
| 1969-12-31 | |

🖶 Print Receipt    ➕ Reserve Another Hearing    👤 View My Reservations

---

Terms of Service

Contact Us

About this Site

Copyright © Journal Technologies, USA. All rights reserved.

EXHIBIT 61

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Jacquelyne VanEmmerik (SBN 339338)
   **MOON & YANG, APC**
3  1055 West Seventh Street, Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  Email: kane.moon@moonyanglaw.com
   Email: allen.feghali@moonyanglaw.com
6  Email: jacquelyne.vanemmerik@moonyanglaw.com

7  *Attorneys for Plaintiff,*
   *Roland Tolentino*

8

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**04/24/2023 at 06:33:51 PM**
By: Anita Dhir,
Deputy Clerk

9          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **FOR THE COUNTY OF ALAMEDA**

11  RONALD TOLENTINO, individually, and on behalf of all others similarly situated,

12                  *Plaintiff,*

13          vs.

14  GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive,

15                  *Defendants.*

| | |
|---|---|
| Case No.: RG20073930 | |

[Honorable Brad Seligman, Department 23]

CLASS ACTION

**DECLARATION OF LENA ARAI, PhD, IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Date: May 30, 2023
Time: 9:15 a.m.
Dept.: 23

Reservation ID: 296057941352

Complaint Filed: September 16, 2020
Trial Date: Not Set

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Lena Arai, declare as follows:

1.    This declaration and report by Lena Arai, Ph.D. is written in support of class certification in the matter of *Tolentino v. Gillig, LLC*, Case No. RG20073930, in the Superior Court of the State of California, Alameda County. I am over the age of 18 and a citizen of the United States. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness could and would testify truthfully and competently to all matters stated herein.

2.    I am an Economist and Data Scientist with Phillips, Fractor & Company, LLC ("PFC"), which offers consulting services to companies, government agencies, and other organizations as well as expert witness and consulting services in support of litigation, primarily in the areas of statistics, economics, finance, and survey/questionnaire related research. I have a Ph.D. in Economics and Information Systems & Technology from Claremont Graduate University, with concentrations in Data Science and Behavioral & Experimental Economics. I received two undergraduate degrees from California State University Northridge, CA (CSUN), a B.A. in Economics and B.S. in Finance. My current CV is attached as Exhibit A.

3.    PFC (and its predecessor firms) has provided consulting and expert services on numerous litigation matters, including California wage and hour class action matters, and has been retained by both plaintiffs and defendants. I have consulted on data analysis issues to assist with the quantitative assessment of potential liability and class-wide economic losses.

4.    Before attending graduate school, I worked for PFC as a research assistant between 2011 and 2013, assisting in the analysis and writing of several declarations and reports.

**Summary of Findings**

5.    I was able to extract 45,673 records with 149 distinct employee IDs, and punch dates ranging from 2/17/2019 through 12/22/2022.

6.    Based on a review of the 45,673 records of 2019 – 2022 time entry data, I identified 45,571 eligible work shifts with 45,488 (99.82%) shifts missing a first meal period, 1 (0.002%) shift with a meal period under 30 minutes in length, and 3 (0.01%) shifts that have a first meal period of at least 30 minutes but started late.

1

7.    I identified 1,105 (2.42%) work shifts over 10.01 hours in length, and thus eligible for a second meal period.

8.    I identified 45,651 work shifts (99.95%) of at least 3.50 hours in length and therefore eligible for a rest period.

9.    I identified 43,091 (94.35%) shifts with a difference of exactly 30 minutes (0.5 hours) between the "Shift" hours and the "Scheduled" hours, indicating meal periods are auto-deducted. Furthermore, 147 out of 149 employees (98.66%) have at least one auto-deducted meal period of exactly 30 minutes (0.5 hours).

10.    I also found that all 149 employees (100%) have rounded time.

**Description of Kronos Time Data, 2019 – 2022**

11.    I was provided five PDF files with time data, "Tolentino v. Gillig 20210503 Production of Documents (D00001-D00615)", "Document Production (Bates Stamped D03017 - D03626)", "Document Production (Bates Stamped D03627 - D06443)", "Document Production (Bates Stamped D06444 - D09269)", and "Document Production (Bates Stamped D09270 - D09891)".

12.    The file "Tolentino v. Gillig 20210503 Production of Documents (D00001-D00615)" contains time data of the named Plaintiff. At the request of counsel, this data was analyzed separately, and is summarized in a later section.

13.    The file "Document Production (Bates Stamped D03017 - D03626)" contains 610 pages of time data, from which I was able to extract 5,559 of records with 140 distinct employee IDs.

14.    The file "Document Production (Bates Stamped D03627 - D06443)" contains 2,817 pages of time data, from which I was able to extract 17,663 of records with 148 distinct employee IDs.

15.    The file "Document Production (Bates Stamped D06444 - D09269)" contains 2,826 pages of time data, from which I was able to extract 19,084 of records with 145 distinct employee IDs.

16.    The file "Document Production (Bates Stamped D09270 - D09891)" contains 622 pages of time data, from which I was able to extract 3425 of records with 123 distinct employee IDs.

17.    The timecards in files "Document Production (Bates Stamped D03017 - D03626)", "Document Production (Bates Stamped D03627 - D06443)", "Document Production (Bates Stamped D06444 - D09269)", and "Document Production (Bates Stamped D09270 - D09891)" include columns

2

such as "Date", "Schedule", "In" (first), "Out" (first), "In" (second), "Out" (second), "Pay Code", and "Shift", among others. The first page of each timecard also contains an employee ID and a date range associated with the records of that section of time data. My understanding is that the number in the "Shift" column refers to the number of hours worked in a shift and is used for payroll purposes.

18.    I excluded shifts without at least one "In" and "Out" punch time record. I also excluded records with pay codes, such as "SICK", "VAC", HOL", "FHOL", "LV-FMLA", among others, because these entries are non-work time. It is my understanding that records of actual time worked did not have pay codes.

19.    In all, I was able to extract 45,673 records, each representing a single work shift, with 149 distinct employee IDs, and punch dates ranging from 2/17/2019 through 12/22/2022.

**Description of Payroll Data**

20.    I was provided one PDF file with payroll data, "Document Production (Bates Stamped D00616 - D03015)", which include columns such as "File #" (Employee ID), "Pay Date", "Gross Pay", "Total Hours", "Reg Hours Total", Reg Earnings Total", "OT Hours Total", "OT Earnings Total", "Add Hours", "Additional Hours", and "Add Earnings". I verified a few records to confirm that the sum of the hours in the "Shift" column (in the time data) matched the associated Pay Date in the payroll data.

**Analysis of Kronos Time Data, 2019 – 2022**

21.    I was asked to evaluate the presence of rounding in the time data. Overall, I found that all 149 employees (100%) have rounded time, based on the difference between an employee's total shift hours punched (the amounts in the "In" and "Out" columns) and "Shift" hours. Out of 45,673 shifts 45,619 (99.88%) have rounded time of between one and 69 minutes.

22.    I have attached summaries of these calculations as Exhibit C.1 - Number of Occurrences of Rounded Time and Exhibit C.2 - Rounded Time by Employee ID.

23.    I was also asked to determine whether meal periods of exactly 30 minutes are auto-deducted from employees' scheduled hours. I found that out of 45,673 shifts 43,091 (94.35%) have a difference of exactly 30 minutes (0.5 hours) between the "Shift" hours and the "Schedule" hours, indicating meal periods are potentially auto-deducted. Furthermore, 147 out of 149 employees (98.66%) have at least one auto-deducted meal period of exactly 30 minutes (0.5 hours). These amounts of time

3

total 21,545.50 hours.

24.    I have attached summaries of these calculations as Exhibit C.3 - Distribution of Differences Between "Shift" Hours and "Scheduled" Hours Indicating Auto-Deducted Shifts, Exhibit C.4 - Number of Shifts with Exactly 0.5 Hours Auto-Deducted by Employee ID, and Exhibit C.2 - Rounded Time by Employee ID.

25.    We notice there are instances of discrepancies related to the difference between the "Shift" hours used for payroll and the "In and "Out" hours, and the "Shift" hours used for payroll and the "Schedule" hours. The hours in the "Shift" column sometimes reflect the "In and "Out" hours, less 30-minutes; other times the "Shift" hours reflect the "Schedule" hours, less 30-minutes. In other words, some "Shift" hours do not match "In" and "Out" hours, less 30-minutes; other times "Shift" hours match "In" and "Out" hours, less 30-minutes.

26.    The other amounts of potential unpaid time not included in the potential auto-deducted time totals 7,001.66 hours for the 149 employees.

27.    I have attached a summary of this calculation as Exhibit C.2 - Rounded Time by Employee ID.

**Meal and Rest Period Analysis**

28.    To classify a workday, I perform the following steps:  If the data for a workday is highly unusual or has potential errors, then I remove it from consideration. If the workday is less than or equal to 5.00 hours, then it is classified "Exempt" from requiring a meal period. If a work shift is not exempt from a meal period, I examined it for "Missing" meal periods, "Late" meal periods, which are 30 minutes in length but start after the beginning of the sixth hour of work, "Short" meal periods, which are on time but under 30 minutes in length, and "Late and Short" meal periods, which are under 30 minutes in length and started after the beginning of the sixth hour of work.

29.    In all, I identified 45,571 (99.78%) work shifts over 5.00 hours in length, and thus eligible for a meal period. Of those, 73 (0.16%) have documentation of a meal period that is at least 30 minutes long, beginning before the start of the sixth hour. Hence, 45,498 (99.84%) of eligible shifts do not have timely 30-minute meal periods. Of those without documentation, 45,488 (99.82%) are missing a first meal period, 3 (0.01%) have a first meal period that is at least 30 minutes but started late ("Late"), 1 (0.002%)

is under 30 minutes in length ("Short"), and 6 (0.01%) are both under 30 minutes and started late ("Late and Short").

30.     In all, I identified 1,105 (2.42%) work shifts over 10.00 hours in length, and thus eligible for a second meal period.

31.     I have attached summaries of these calculations as Exhibit D.1 - Meal Period Classification.

32.     I was asked to identify the number of work shifts of at least 3.50 hours in length, and therefore eligible for a rest period. In all, I identified 45,651 work shifts (99.95%) of at least 3.50 hours in length.

33.     I have attached summaries of these calculations as Exhibit D.2 - Count of Work Shifts, Rest Period Eligibility.

34.     I was also asked to review the payroll records for transactions that may represent meal period premiums. After a text review of the "Additional Hours" column in the payroll records, I located no transactions which appear to represent meal period premiums.

**Description of Roland Tolentino's Time Data, 2017 – 2020**

35.     The file "Tolentino v. Gillig 20210503 Production of Documents (D00001-D00615)" contains 31 pages of time data of the named Plaintiff, with records ranging from 9/16/2016 to 6/16/2020. I analyzed time records beginning 1/26/2017 (the statutory period start date) to 6/16/2020.

36.     There is at least one instance of conflicting time entries. Bates Number D00243 (with time punches between 9/13/2017 and 11/30/2017) conflict with the entries on Bates Number D00401 (time punches between 9/20/2017 and 9/22/2017). I relied on the data on Bates Numbers D00401 since these contained more time entries.

37.     In all, I was able to extract 647 records, each representing a single work shift, with punch dates ranging from 1/26/2017 to 6/16/2020.

**Analysis of Roland Tolentino's Time Data, 2017 – 2020**

38.     I was asked to evaluate the presence of rounding in the Plaintiff's time data. Based on the difference between the Plaintiff's total shift hours punched (the amounts in the "In" and "Out" columns) and "Shift" hours, 646 (99.85%) of the Plaintiff's shifts have rounded time between 30 and 66 minutes.

39.     I have attached summaries of these calculations as Exhibit E.1 - Plaintiff: Number of

DECLARATION OF LENA ARAI, PhD, IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Occurrences of Rounded Time.

40.    I was also asked to determine whether meal periods of exactly 30 minutes are auto-deducted from the Plaintiff's scheduled hours. Out of 647 shifts, 568 shifts did not have data in the "Schedule" column, therefore no comparison was feasible for these shifts. I found 77 (11.9%) shifts with a difference of exactly 30 minutes (0.5 hours) between the "Shift" hours and the "Schedule" hours, indicating meal periods are potentially auto-deducted.

41.    I have attached summaries of these calculations as Exhibit E.2 - Plaintiff: Distribution of Differences Between "Shift" Hours and "Scheduled" Hours Indicating Auto-deducted Shifts.

**Meal and Rest Period Analysis -- Roland Tolentino**

42.    In all, I identified 646 work shifts over 5 hours in length, and thus eligible for a meal period. Of those, none had documentation of a meal period that was at least 30 minutes long, beginning before the sixth hour. Hence, 646 (100%) of eligible shifts did not have a timely 30-minute meal period and are thus missing a first meal period.

43.    I did not identify any work shifts over 10.01 hours in length, and thus eligible for á second meal period.

44.    I have attached summaries of these calculations as Exhibit F.1 - Plaintiff: Meal Period Classification.

45.    I was also asked to identify the number of work shifts of at least 3.50 hours in length, and therefore eligible for a rest period. In all, I identified 646 work shifts (99.54% of the total) of at least 3.50 hours in length.

46.    I have attached summaries of these calculations as Exhibit F.2 - Plaintiff: Count of Work Shifts, Rest Period Eligibility.

**Potential Underpaid Overtime Premiums**

47.    I was asked to review the payroll records for transactions that may represent Incentive Payments. After a text review of the "Additional Hours" column, I found 220 instances of "Incentive Pay" in the "Additional Hours" column.

48.    For example, on 1/18/2019 an Incentive Payment of $2,000.00 ("Gross Pay" column) was paid to employee number ("File #") 010738. On the previous day, 1/17/2019, the same employee received

$1,398.80 ("Reg Earnings Total") for 40.00 Regular Hours ("Reg Hours Total") for a Base Pay Rate of $34.97. On the same pay date, this employee received $103.86 ("OT Earnings Total") for 1.98 Overtime Hours ("OT Hours Total") for an Overtime Pay Rate of $52.45, which is approximately 1.5 times the Base Pay Rate. This seems to indicate that the Regular Rate for the purpose of paying overtime premiums does not appear to be adjusted to reflect the Incentive Payment.

**Trial Plan**

49.     Unpaid Wages:  It is my understanding that Plaintiffs allege a claim for failure to pay all wages. Should liability be determined in Plaintiffs' favor, class-wide damages can be assessed by multiplying the unpaid hours by each employee's hourly or overtime rate, when applicable, including prejudgment interest.

50.     Meal Periods:  It is my understanding that Plaintiffs allege a claim for failure to provide meal periods. Should liability be determined in Plaintiffs' favor, class-wide damages can be assessed by multiplying the number of shifts evidencing a violation by the statutory penalty equal to one hour at the employee's regular rate of pay, with prejudgment interest. Shifts evidencing a violation can be determined by analyzing the timekeeping and payroll records for all class members, offsetting any meal period premium payments made.

51.     Rest Periods:  It is my understanding that Plaintiffs allege a claim for failure to provide rest periods. Should liability be determined in Plaintiffs' favor, class-wide damages can be assessed by multiplying the number of shifts greater than 3.5 hours by the applicable violation rate and by the statutory penalty equal to one hour at the employee's regular rate of pay, with prejudgment interest, offsetting any rest period premium payments made.

52.     Meal Periods Premiums:  It is my understanding that Plaintiffs allege a claim for failure to incorporate additional remuneration into the rate at which meal period premiums were paid to putative class members. Should liability be determined in Plaintiffs' favor, class-wide damages can be assessed by calculating the meal period premium compensation based on class member payroll data, assessed at the employee's regular rate of pay, and then by subtracting the meal period premium compensation already paid based on the class member payroll data, reflecting prejudgment interest.

53.     Wage Statements:  It is my understanding that Plaintiffs allege a claim for failure to provide

7

DECLARATION OF LENA ARAI, PhD, IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

accurate itemized wage statements. Should liability be determined in Plaintiffs' favor, class-wide damages can be assessed by multiplying the number of wage statements where a violation exists by the applicable statutory penalty. For example, California Code Section 226 provides a penalty of $50 for the first violation, $100 for subsequent violations, up to a maximum of $4,000 for a single putative class member.

54.    <u>Waiting Time Penalties:</u> It is my understanding that Plaintiffs allege a claim for failure to timely pay wages at termination or discharge. Should liability be determined in Plaintiffs' favor, class-wide damages can be assessed. Based on the records provided, it is my understanding that Defendant maintains employee data that includes information related to hiring, termination of employment, and pay. If Plaintiffs prevail on this claim, damages can be assessed by calculating the statutorily authorized penalty amounts associated with each former class member's separation from the company. For example, California Code Section 203 provides a penalty of up to 30 times average daily pay for a single putative class member.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 24, 2023, at Pasadena, California.

Lena Arai, Ph.D., "Declarant"

DECLARATION OF LENA ARAI, PhD, IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Exhibit A

# Dr. Lena Arai

Phillips, Fractor & Company, LLC
3452 E. Foothill Blvd., Suite 220
Pasadena, CA 91107

| | |
|---|---|
| Office: | (626) 744-3540 |
| Email: | LArai@rule26.com |
| LinkedIn: | linkedin.com/in/lenaarai/ |
| Website: | LenaAr.ai |

## Current Position

JAN 2023 - PRESENT    Economist, Phillips, Fractor & Company, LLC

## Education

08.2013 - 12.2022    Ph.D. Economics and Information Systems & Technology
*Concentrations:* Data Science; Behavioral & Experimental Economics
*Advisor:* Dr. Paul J. Zak
Claremont Graduate University, CA

08.2013 - 05.2015    M.A. Economics
*Concentrations:* Econometrics & Behavioral Economics
Claremont Graduate University, CA

08.2008 - 05.2011    B.A. Economics
B.S. Finance
College of Business and Economics
California State University Northridge, CA

## Previous Experience

06.2016 - 12.2022    Research Associate
Center For Neuroeconomics Studies
Claremont Graduate University, CA

07.2016 - 05.2017    Research Assistant
Dr. Jacek Kugler
Claremont Graduate University, CA

08.2014 - 06.2015    Lab Manager
Center For Neuroeconomics Studies
Claremont Graduate University, CA

10.2013 - 06.2015    Research Assistant
Dr. Paul J. Zak & Center For Neuroeconomics Studies
Claremont Graduate University, CA

06.2011 - 08.2013    Research Associate
Phillips, Fractor & Company, LLC
Pasadena, CA

## Technical Skills

Statistical modeling, financial analysis, econometrics, research, data science, data visualization.

## Scholarly Work

*Working Papers*

**Manuscripts in progress**

Physiological Synchrony Predicts Cooperative Behavior in High-Stakes Trust Games

## Honors & Awards

Claremont Graduate University Travel and Material Award (2020)

Claremont Graduate University Fellowship, Department of Economics (2013 - 2017)

Certificate of Excellence in Economics (2011)

Business Honors Student (2008 - 2011)

## Professional Services

*Peer-Review*

Academic peer reviewer for the CODATA Data Science Journal

*Volunteering*

The Village Mutt – Claremont, CA (2013 - 2018)

Business Honors Tutor – California State University Northridge, CA (2008 - 2011)

## Of Note

Savvy investor – proven ability to earn double-digit returns in personal investment portfolios, consistently beating the S&P500.

Raised overseas in Ecuador, the Dominican Republic, and Barbados.

## Additional Information

*Additional language:* Spanish

*Citizenship:* U.S. Citizen

Last updated: January 2023

# Exhibit B

G. Michael Phillips, Ph.D.

David T. Fractor, Ph.D.

Robert K. Neff, CPA, ABV
William Ingersoll, Ph.D.
Sean Chasworth
George Arzumanyan, CFA, MAFF®, CVA®
M. Christine Phillips, Ph.D.
Karina Cordova, Ph.D.



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

*Of Counsel*

William W. Roberts, Ph.D.
Lena Arai, Ph.D.
H. Drew Fountaine, CPA, Ed.D.
Dennis Halcoussis, Ph.D.
Craig Kerr, Ph.D.
A. Lynn Matthews, Ph.D.

Moon & Yang, APC
1055 West Seventh St, Suite 1880
Los Angeles, CA 90017

RE: Ronald Tolentino, *et al* vs. Gillig, LLC, *et al*
County of Alemeda case no. RG20073930

Dear Counsel,

This Agreement confirms that Phillips, Fractor & Company, LLC ("PFC" or "We" and "Our") will provide the services of Lena Arai, Ph.D.; Karina Cordova, Ph.D.; Thomas Sargent, M.S. (the "Experts"), and other professional staff, as needed, to Moon & Yang, APC ("Law Firm" or "Firm" or "You" and "Your") as consultants in connection with the case referenced above (the "Litigation"), and on the terms and conditions herein. The Firm represents Ronald Tolentino and other plaintiffs ("Client") in the Litigation.

1.  **Scope of Work:** You have asked PFC to provide statistical analysis and financial computations including work PFC determines to be necessary and advisable to accomplish these tasks, with deposition and/or trial testimony upon request (collectively, the "Engagement"). From time to time, the Engagement may be modified and/or expanded in writing, and any such modification will be subject to the terms and conditions of this Agreement.

2.  **Fees and Expenses:** It is Our intention to perform this Engagement as efficiently and affordably as possible, recognizing potential budgetary constraints. PFC's services, however, take a reasonable amount of time to render. Our fees are billed on an hourly basis. Dr. Arai's rate is $350 per hour, Dr. Cordova's rate is $400 per hour, and Mr. Sargent's rate is $350 per hour. Rates are subject to change on 30 days' notice. Other personnel may be used in this Engagement, as appropriate, and typically rates for those persons may range between $350 to $795 per hour. We will assign the appropriate personnel at PFC to render the service that comports with the level of expertise needed for this Engagement. You acknowledge that PFC has made no promises or representations about the total amount of fees to be incurred by You under this agreement.

3.  **Payment:** Payment for Our services is in no way contingent on the outcome of the Litigation, on the reaching of any particular result in Our work, on any opinion or testimony We may render, or on the nature of any of Our findings. Accordingly, it is important that Our fees be paid promptly. PFC will bill the Firm for its work on this Engagement on a monthly basis and fees are due on the date of the invoice. Expenses reasonably incurred by PFC in this Engagement will be billed at Our cost and included on invoices. Invoices shall be paid in full within 30 days. Amounts over 60 days past due are subject to interest charges of 1.5 percent per month. Please note, in the event the examining party fails to pay Our fees and costs for depositions, You agree to guarantee payment which will be included on Your invoice.

3452 East Foothill Blvd. Suite 220
Pasadena, California 91107-3154
T: (626) 744-3540 || O: www.rule26.com



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

You agree that You will review PFC's invoices upon receipt and will advise PFC of any objection to, or dispute with, the invoice or any time entry or item of work therein within 30 days of the invoice date. Any such objection or dispute not made in writing to PFC within 30 days of the invoice date is waived, and the fees and costs in the invoice are deemed to be accurate, correct and approved by the Firm. In the event You dispute a portion of an invoice, the undisputed portion shall still be paid in accordance with this paragraph.

A retainer of $10,000 must be paid prior to the commencement of any services (check payable to Phillips, Fractor & Company, LLC). The retainer includes a fee of $1,000 which is not refundable. In Our sole discretion, We may hold the retainer until the end of the engagement, or apply it (or portions of it) to one or more invoices in the course of the Engagement. If all or any part of the retainer is so applied, You agree to replenish the retainer to the full original amount within 30 days of Our request to do so. Upon completion or termination of the Engagement, any amount of the retainer remaining after deduction of any fees and other charges which then remain unpaid will be promptly returned to You.

In addition, should it become necessary for us to expand the scope of our services, We may require an additional retainer payment. We may also require an additional retainer in advance of a major activity such as lengthy trial preparation or testimony or other matter that is likely to generate substantial work in a compressed period of time.

*PLEASE NOTE: All outstanding billings must be paid in full prior to the delivery of reports, declarations, or testimony (deposition and/or trial).* It is understood and agreed that timely payment for Our services and expenses will be solely the responsibility of the Firm. It is understood and agreed that You will pay all out-of-pocket expenses in connection with this matter.

4. **Termination of Work by PFC:** Without liability, PFC reserves the right, in its sole discretion, to suspend all work on this Engagement, including providing testimony, preparing reports or data (as well as withholding the provision thereof) and all other work, if amounts due for this Engagement are not paid within 30 days. In the event that We continue to provide services notwithstanding the existence of fees outstanding for more than 30 days, We do not thereby waive Our right to stop providing service at a later date in accordance with this paragraph.

PFC also reserves the right to terminate its work on this Engagement, without liability, if We believe that the Firm is requesting that PFC take actions or positions that We believe to be improper, or if the Firm is not reasonably cooperating with PFC, including, but not limited to, the failure to provide information relevant to Our work in the Engagement. Prior to termination pursuant to this paragraph, PFC shall provide written notice of its concern and intent to terminate in an effort to resolve the



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

problem. Termination of work under this Section 4 shall not relieve the Firm of its responsibility to pay all outstanding fees and costs incurred to the date of termination.

5. **Retention of Documents:** Upon termination of this Engagement, and unless otherwise instructed by You, or unless otherwise required by law or court order, PFC will discard, at its discretion, all non-original copies of paper documents provided to PFC by You, Client or anyone else in connection with this Engagement, and will retain original copies for a period of two (2) years, after which such documents may also be discarded. PFC will retain electronic copies of documents for a period of four (4) years from the termination of the Engagement.

6. **Conflict Check:** Prior to beginning work on this matter, PFC will have undertaken a reasonable review of its records to determine PFC's relationships, if any, with persons or entities identified by You as parties to the Litigation or otherwise having a pecuniary interest in the Litigation, and will have concluded that no conflict exists that would, in PFC's professional opinion, prevent it from accepting and performing this Engagement, or would otherwise present a conflict of interest to PFC. In the event such a conflict exists, PFC will work with You to obtain any necessary waiver of the conflict or otherwise resolve the conflict of interest, if practicable. In the event such a conflict arises during the course of this Engagement and no waiver or other resolution can be had, PFC reserves the right, without liability, to terminate this Engagement.

7. **Limitation of Liability:** With exception for a claim for a breach of this Agreement, Client and the Firm agree that they shall not hold PFC or any of the Experts liable or responsible for any claims, liabilities, losses, damages or expenses incurred or allegedly incurred by either Client or Firm or both arising out of, or relating to, the Engagement or this Agreement, except to the extent such claim, liability, loss, damage or expense results solely from the negligence or bad faith conduct of PFC or the Experts. In no event shall PFC be liable for any consequential, incidental, indirect, special or punitive damages, losses or expenses, and in no event shall the liability of PFC or any of the Experts, individually or collectively, whether in tort, contract, or otherwise exceed the amounts actually paid to PFC for the services rendered by PFC and/or any of the Experts pursuant to this Agreement.

In the event Our work on this Engagement requires PFC to rely on any data or other information provided to PFC by You or the Client, whether in writing, electronic form or otherwise, all such information (the "Client Information") will be presumed by PFC to be accurate, correct, true, current, valid and reliable unless it is clear on the face of such information not to be so, or unless You or Client inform PFC in writing otherwise. In the event Our work on this Engagement requires PFC to rely on any data or other information provided to PFC by any third party, including without limitation, other consultants, experts, vendors and the like, whether engaged by You or by PFC, and whether in writing, electronic form or otherwise, which We reasonably believe in good faith to be accurate, correct, true, current, valid and reliable, all such information (the "Third Party Information") is presumed by the



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

Parties to be so. PFC assumes no responsibility, and shall not be held liable, for any claims, damages, costs, charges or expenses of any kind, brought or incurred by You and/or the Client arising from, caused by, related to, or otherwise in connection with the inaccuracy, falsity, invalidity, non-currency, or unreliability of either the Client Information or the Third Party Information.

8.  **Force Majeur:** PFC shall not be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, acts of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.  **Governing Law:** This Agreement shall be interpreted and controlled by the laws of the State of California.

10. **Arbitration:** In the event any dispute between You and PFC, or between Client and PFC, arising from or relating to this Engagement cannot be resolved informally, You, Client and PFC agree to forego the right to trial by jury and to resolve any and all such disputes between and/or among us, including the Experts or any other PFC employees or independent contractors who may have worked on the Engagement, and including but not limited to disputes over fees and charges or a breach of this Agreement, exclusively through private and confidential binding arbitration in Los Angeles, California, before a sole arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules, or, in the event neither the disputed claims or counterclaims respectively exceed $250,000, not including interest or attorneys' fees, then pursuant to the JAMS Streamlined Arbitration Rules. Judgment on the award may be entered in any court having jurisdiction.

11. **Attorney's Fees:** In any arbitration or other action arising out of, or related to this Agreement or the services provided under this Agreement, the prevailing party shall receive, in addition to any and all other damages and relief, reimbursement for its litigation expenses, including attorneys' fees, expert fees, collection fees, and other expenses, actually and reasonably incurred.

12. **Authority to Bind:** Each Party represents and warrants to the other Party that the person signing the Agreement on its behalf has the authority to do so, and that the signature that appears below binds it to the terms of the Agreement. The Firm further represents and warrants that it has the authority to bind Client to the terms and conditions of this Agreement insofar as any such term or condition affects the rights and/or obligations of Client, including, without limitation, the provisions of Section 7, Section 10, and Section 11 herein.

13. **Entire Agreement:** This Agreement constitutes the entire agreement between the Parties with respect to its subject matter, and any prior oral or written statements concerning its subject are merged herein for all purposes and are of no further force and effect.



**PHILLIPS,
FRACTOR
& COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

14. **Deemed Acceptance Upon Commencement of Work:** If PFC agrees to commence work on this Engagement at Your request prior to the execution of this Agreement, the beginning of such work shall be deemed acceptance of the Agreement and each and every term herein, whether or not the Agreement is ever actually executed.

15. **Survival:** All provisions herein which, by their nature, are intended to survive performance of this Engagement shall survive such performance and termination of the Agreement.

If the foregoing comports with Your understanding of our agreement, please sign and date this Agreement and return it to Our office. After We receive Your signed letter and retainer payment, We will be able to commence work on this matter. By signing below, You acknowledge that You, the attorney, are responsible for the payment of services rendered by Phillips, Fractor & Company, LLC in compliance with the requirement expressed above. We look forward to working with You.

RE: Ronald Tolentino, *et al* vs. Gillig, LLC, *et al*

PHILLIPS, FRACTOR & COMPANY, LLC         AGREED:

By: _Jeannie Wong_                        By: _____
Jeannie Wong, Case Coordinator

March _24_, 2023                          Name (print) _Allen Feghali_____
If not signed by You/Client and received by PFC,
this letter expires in 30 days from the above date.

Tax ID: 45-5551955                        Date: ____March 29, 2023_____



**PHILLIPS.**
**FRACTOR.**
**COMPANY**

Invoice #:  2304-MY323B

# Invoice

4/3/2023

MOON & YANG, APC
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017

**For consulting services rendered on:**          **Tolentino v. Gillig**

| | | Description of Hours Worked | Hours | Rate | Total |
|---|---|---|---|---|---|
| 3/20/2023 | Dr. Arai | Review employee time data | 0.50 | 350.00 | 175.00 |
| 3/20/2023 | Ms. Wong | Case administration | 0.25 | 125.00 | 31.25 |
| 3/21/2023 | Dr. Arai | Review employee time data | 1.75 | 350.00 | 612.50 |
| 3/22/2023 | Mr. T.A. Sargent | Review employee data | 1.00 | 300.00 | 300.00 |
| 3/22/2023 | Dr. Arai | Review employee time data | 0.50 | 350.00 | 175.00 |

Terms: Due upon receipt

Please remit checks payable to: Phillips, Fractor & Company, LLC
       Tax ID Number: 45-5551955

| | |
|---|---|
| **Total** | **$1,293.75** |
| **Payments/Credits** | **$0.00** |
| **Balance Due** | **$1,293.75** |

It is customary to pay for professional services when rendered.  If not paid within thirty (30) days, a 1.5% monthly fee will be charged on all past due amounts.  In the event it becomes necessary to employ a collection agency or attorney to collect past due accounts or initiate court proceedings, you will be responsible for all fees and court costs.

3452 East Foothill Blvd Ste 220 | Pasadena, CA  91107 | (626) 744-3540 | www.Rule26.com

Exhibit C

Exhibit C.1

**Exhibit C.1 - Number of Occurrences of Rounded Time**

**Kronos Time Data**

| | |
|---|---|
| **Number of shifts with rounded time** | **45,619** |
| **Percent of shifts with rounded time** | **99.88%** |

| Hours Rounded | Minutes Rounded | Occurrences of Rounded Time: "Shift" Hours vs "In" and "Out" Hours | Percent |
|---|---|---|---|
| 1.1500 | 69 | 2 | 0.00% |
| 1.1167 | 67 | 2 | 0.00% |
| 0.8333 | 50 | 5 | 0.01% |
| 0.8167 | 49 | 17 | 0.04% |
| 0.8000 | 48 | 32 | 0.07% |
| 0.8000 | 48 | 20 | 0.04% |
| 0.7833 | 47 | 55 | 0.12% |
| 0.7833 | 47 | 9 | 0.02% |
| 0.7667 | 46 | 56 | 0.12% |
| 0.7667 | 46 | 23 | 0.05% |
| 0.7500 | 45 | 64 | 0.14% |
| 0.7500 | 45 | 48 | 0.11% |
| 0.7333 | 44 | 74 | 0.16% |
| 0.7333 | 44 | 2 | 0.00% |
| 0.7333 | 44 | 51 | 0.11% |
| 0.7167 | 43 | 158 | 0.35% |
| 0.7167 | 43 | 1 | 0.00% |
| 0.7167 | 43 | 64 | 0.14% |
| 0.7000 | 42 | 2 | 0.00% |
| 0.7000 | 42 | 407 | 0.89% |
| 0.7000 | 42 | 106 | 0.23% |
| 0.6867 | 41 | 1 | 0.00% |
| 0.6833 | 41 | 3 | 0.01% |
| 0.6833 | 41 | 765 | 1.67% |
| 0.6833 | 41 | 186 | 0.41% |
| 0.6700 | 40 | 16 | 0.04% |
| 0.6700 | 40 | 18 | 0.04% |
| 0.6700 | 40 | 1 | 0.00% |
| 0.6700 | 40 | 22 | 0.05% |
| 0.6700 | 40 | 1 | 0.00% |
| 0.6700 | 40 | 1 | 0.00% |
| 0.6667 | 40 | 5 | 0.01% |
| 0.6667 | 40 | 13054 | 28.58% |
| 0.6667 | 40 | 3 | 0.01% |
| 0.6667 | 40 | 64 | 0.14% |

Exhibit C.1

| | | | |
|---|---|---|---|
| 0.6667 | 40 | 1150 | 2.52% |
| 0.6633 | 40 | 1 | 0.00% |
| 0.6633 | 40 | 30 | 0.07% |
| 0.6633 | 40 | 4 | 0.01% |
| 0.6633 | 40 | 22 | 0.05% |
| 0.6633 | 40 | 1 | 0.00% |
| 0.6633 | 40 | 6 | 0.01% |
| 0.6533 | 39 | 4 | 0.01% |
| 0.6533 | 39 | 15 | 0.03% |
| 0.6533 | 39 | 21 | 0.05% |
| 0.6533 | 39 | 3 | 0.01% |
| 0.6500 | 39 | 1 | 0.00% |
| 0.6500 | 39 | 6976 | 15.27% |
| 0.6500 | 39 | 5 | 0.01% |
| 0.6500 | 39 | 111 | 0.24% |
| 0.6500 | 39 | 461 | 1.01% |
| 0.6467 | 39 | 23 | 0.05% |
| 0.6467 | 39 | 3 | 0.01% |
| 0.6467 | 39 | 26 | 0.06% |
| 0.6467 | 39 | 13 | 0.03% |
| 0.6367 | 38 | 4 | 0.01% |
| 0.6367 | 38 | 13 | 0.03% |
| 0.6367 | 38 | 4 | 0.01% |
| 0.6367 | 38 | 17 | 0.04% |
| 0.6367 | 38 | 1 | 0.00% |
| 0.6333 | 38 | 244 | 0.53% |
| 0.6333 | 38 | 3918 | 8.58% |
| 0.6333 | 38 | 3 | 0.01% |
| 0.6333 | 38 | 22 | 0.05% |
| 0.6300 | 38 | 14 | 0.03% |
| 0.6300 | 38 | 22 | 0.05% |
| 0.6300 | 38 | 2 | 0.00% |
| 0.6200 | 37 | 1 | 0.00% |
| 0.6200 | 37 | 13 | 0.03% |
| 0.6200 | 37 | 15 | 0.03% |
| 0.6200 | 37 | 10 | 0.02% |
| 0.6167 | 37 | 39 | 0.09% |
| 0.6167 | 37 | 5 | 0.01% |
| 0.6167 | 37 | 2600 | 5.69% |
| 0.6167 | 37 | 419 | 0.92% |
| 0.6133 | 37 | 8 | 0.02% |
| 0.6133 | 37 | 2 | 0.00% |
| 0.6133 | 37 | 10 | 0.02% |
| 0.6133 | 37 | 7 | 0.02% |
| 0.6133 | 37 | 1 | 0.00% |
| 0.6033 | 36 | 1 | 0.00% |
| 0.6033 | 36 | 11 | 0.02% |

Exhibit C.1

| | | | |
|---|---|---|---|
| 0.6033 | 36 | 1 | 0.00% |
| 0.6033 | 36 | 14 | 0.03% |
| 0.6033 | 36 | 4 | 0.01% |
| 0.6000 | 36 | 3 | 0.01% |
| 0.6000 | 36 | 78 | 0.17% |
| 0.6000 | 36 | 1 | 0.00% |
| 0.6000 | 36 | 2708 | 5.93% |
| 0.5967 | 36 | 6 | 0.01% |
| 0.5967 | 36 | 20 | 0.04% |
| 0.5967 | 36 | 7 | 0.02% |
| 0.5867 | 35 | 17 | 0.04% |
| 0.5867 | 35 | 1 | 0.00% |
| 0.5867 | 35 | 7 | 0.02% |
| 0.5867 | 35 | 5 | 0.01% |
| 0.5833 | 35 | 87 | 0.19% |
| 0.5833 | 35 | 3 | 0.01% |
| 0.5833 | 35 | 2 | 0.00% |
| 0.5833 | 35 | 2665 | 5.83% |
| 0.5833 | 35 | 1 | 0.00% |
| 0.5833 | 35 | 6 | 0.01% |
| 0.5800 | 35 | 2 | 0.00% |
| 0.5800 | 35 | 14 | 0.03% |
| 0.5800 | 35 | 7 | 0.02% |
| 0.5800 | 35 | 3 | 0.01% |
| 0.5700 | 34 | 1 | 0.00% |
| 0.5700 | 34 | 12 | 0.03% |
| 0.5700 | 34 | 1 | 0.00% |
| 0.5700 | 34 | 9 | 0.02% |
| 0.5700 | 34 | 8 | 0.02% |
| 0.5667 | 34 | 4 | 0.01% |
| 0.5667 | 34 | 2468 | 5.40% |
| 0.5667 | 34 | 1 | 0.00% |
| 0.5667 | 34 | 23 | 0.05% |
| 0.5633 | 34 | 11 | 0.02% |
| 0.5633 | 34 | 2 | 0.00% |
| 0.5633 | 34 | 23 | 0.05% |
| 0.5633 | 34 | 9 | 0.02% |
| 0.5533 | 33 | 1 | 0.00% |
| 0.5533 | 33 | 1 | 0.00% |
| 0.5533 | 33 | 14 | 0.03% |
| 0.5533 | 33 | 2 | 0.00% |
| 0.5533 | 33 | 4 | 0.01% |
| 0.5533 | 33 | 1 | 0.00% |
| 0.5500 | 33 | 1 | 0.00% |
| 0.5500 | 33 | 2 | 0.00% |
| 0.5500 | 33 | 157 | 0.34% |
| 0.5500 | 33 | 2 | 0.00% |

Exhibit C.1

| | | | |
|---|---|---|---|
| 0.5500 | 33 | 1705 | 3.73% |
| 0.5500 | 33 | 26 | 0.06% |
| 0.5467 | 33 | 2 | 0.00% |
| 0.5467 | 33 | 10 | 0.02% |
| 0.5467 | 33 | 8 | 0.02% |
| 0.5367 | 32 | 6 | 0.01% |
| 0.5367 | 32 | 1 | 0.00% |
| 0.5367 | 32 | 7 | 0.02% |
| 0.5367 | 32 | 1 | 0.00% |
| 0.5333 | 32 | 2 | 0.00% |
| 0.5333 | 32 | 156 | 0.34% |
| 0.5333 | 32 | 1 | 0.00% |
| 0.5333 | 32 | 1052 | 2.30% |
| 0.5300 | 32 | 6 | 0.01% |
| 0.5300 | 32 | 2 | 0.00% |
| 0.5300 | 32 | 15 | 0.03% |
| 0.5300 | 32 | 5 | 0.01% |
| 0.5200 | 31 | 8 | 0.02% |
| 0.5200 | 31 | 1 | 0.00% |
| 0.5200 | 31 | 9 | 0.02% |
| 0.5200 | 31 | 1 | 0.00% |
| 0.5200 | 31 | 4 | 0.01% |
| 0.5167 | 31 | 26 | 0.06% |
| 0.5167 | 31 | 11 | 0.02% |
| 0.5167 | 31 | 1 | 0.00% |
| 0.5167 | 31 | 724 | 1.59% |
| 0.5133 | 31 | 3 | 0.01% |
| 0.5133 | 31 | 16 | 0.04% |
| 0.5133 | 31 | 1 | 0.00% |
| 0.5133 | 31 | 7 | 0.02% |
| 0.5133 | 31 | 3 | 0.01% |
| 0.5033 | 30 | 1 | 0.00% |
| 0.5033 | 30 | 19 | 0.04% |
| 0.5033 | 30 | 4 | 0.01% |
| 0.5033 | 30 | 41 | 0.09% |
| 0.5033 | 30 | 3 | 0.01% |
| 0.5033 | 30 | 68 | 0.15% |
| 0.5000 | 30 | 34 | 0.07% |
| 0.5000 | 30 | 2 | 0.00% |
| 0.5000 | 30 | 1239 | 2.71% |
| 0.5000 | 30 | 7 | 0.02% |
| 0.5000 | 30 | 13 | 0.03% |
| 0.4967 | 30 | 2 | 0.00% |
| 0.4967 | 30 | 1 | 0.00% |
| 0.4967 | 30 | 58 | 0.13% |
| 0.4967 | 30 | 5 | 0.01% |
| 0.4967 | 30 | 67 | 0.15% |

Exhibit C.1

| | | | |
|---|---|---|---|
| 0.4967 | 30 | 3 | 0.01% |
| 0.4867 | 29 | 1 | 0.00% |
| 0.4867 | 29 | 9 | 0.02% |
| 0.4867 | 29 | 1 | 0.00% |
| 0.4833 | 29 | 2 | 0.00% |
| 0.4833 | 29 | 5 | 0.01% |
| 0.4833 | 29 | 11 | 0.02% |
| 0.4800 | 29 | 1 | 0.00% |
| 0.4800 | 29 | 4 | 0.01% |
| 0.4700 | 28 | 2 | 0.00% |
| 0.4667 | 28 | 1 | 0.00% |
| 0.4667 | 28 | 10 | 0.02% |
| 0.4667 | 28 | 4 | 0.01% |
| 0.4633 | 28 | 5 | 0.01% |
| 0.4533 | 27 | 1 | 0.00% |
| 0.4500 | 27 | 11 | 0.02% |
| 0.4467 | 27 | 5 | 0.01% |
| 0.4467 | 27 | 1 | 0.00% |
| 0.4367 | 26 | 1 | 0.00% |
| 0.4333 | 26 | 1 | 0.00% |
| 0.4333 | 26 | 9 | 0.02% |
| 0.4300 | 26 | 1 | 0.00% |
| 0.4300 | 26 | 3 | 0.01% |
| 0.4167 | 25 | 1 | 0.00% |
| 0.4167 | 25 | 4 | 0.01% |
| 0.4133 | 25 | 1 | 0.00% |
| 0.4133 | 25 | 1 | 0.00% |
| 0.4033 | 24 | 1 | 0.00% |
| 0.4000 | 24 | 2 | 0.00% |
| 0.3833 | 23 | 4 | 0.01% |
| 0.3667 | 22 | 3 | 0.01% |
| 0.3500 | 21 | 2 | 0.00% |
| 0.3333 | 20 | 3 | 0.01% |
| 0.1833 | 11 | 1 | 0.00% |
| 0.1700 | 10 | 1 | 0.00% |
| 0.1700 | 10 | 2 | 0.00% |
| 0.1700 | 10 | 2 | 0.00% |
| 0.1700 | 10 | 1 | 0.00% |
| 0.1667 | 10 | 4 | 0.01% |
| 0.1667 | 10 | 9 | 0.02% |
| 0.1667 | 10 | 1 | 0.00% |
| 0.1633 | 10 | 1 | 0.00% |
| 0.1633 | 10 | 2 | 0.00% |
| 0.1633 | 10 | 1 | 0.00% |
| 0.1633 | 10 | 1 | 0.00% |
| 0.1533 | 9 | 1 | 0.00% |
| 0.1533 | 9 | 1 | 0.00% |

Exhibit C.1

| | | | |
|---|---|---|---|
| 0.1500 | 9 | 4 | 0.01% |
| 0.1500 | 9 | 1 | 0.00% |
| 0.1467 | 9 | 1 | 0.00% |
| 0.1333 | 8 | 1 | 0.00% |
| 0.1333 | 8 | 5 | 0.01% |
| 0.1333 | 8 | 1 | 0.00% |
| 0.1300 | 8 | 1 | 0.00% |
| 0.1300 | 8 | 1 | 0.00% |
| 0.1200 | 7 | 1 | 0.00% |
| 0.1200 | 7 | 1 | 0.00% |
| 0.1167 | 7 | 1 | 0.00% |
| 0.1167 | 7 | 2 | 0.00% |
| 0.1167 | 7 | 1 | 0.00% |
| 0.1033 | 6 | 1 | 0.00% |
| 0.1000 | 6 | 1 | 0.00% |
| 0.0967 | 6 | 1 | 0.00% |
| 0.0867 | 5 | 1 | 0.00% |
| 0.0833 | 5 | 1 | 0.00% |
| 0.0833 | 5 | 4 | 0.01% |
| 0.0800 | 5 | 1 | 0.00% |
| 0.0667 | 4 | 3 | 0.01% |
| 0.0633 | 4 | 1 | 0.00% |
| 0.0633 | 4 | 1 | 0.00% |
| 0.0500 | 3 | 1 | 0.00% |
| 0.0500 | 3 | 1 | 0.00% |
| 0.0500 | 3 | 1 | 0.00% |
| 0.0467 | 3 | 2 | 0.00% |
| 0.0367 | 2 | 1 | 0.00% |
| 0.0367 | 2 | 1 | 0.00% |
| 0.0333 | 2 | 1 | 0.00% |
| 0.0333 | 2 | 4 | 0.01% |
| 0.0333 | 2 | 1 | 0.00% |
| 0.0300 | 2 | 1 | 0.00% |
| 0.0200 | 1 | 1 | 0.00% |
| 0.0167 | 1 | 1 | 0.00% |
| 0.0167 | 1 | 1 | 0.00% |
| 0.0133 | 1 | 1 | 0.00% |
| 0.0033 | 0 | 1 | 0.00% |
| 0.0033 | 0 | 1 | 0.00% |
| 0.0033 | 0 | 6 | 0.01% |
| 0.0033 | 0 | 5 | 0.01% |
| 0.0033 | 0 | 5 | 0.01% |
| 0.0000 | 0 | 22 | 0.05% |
| -0.0033 | 0 | 1 | 0.00% |
| -0.0033 | 0 | 1 | 0.00% |
| -0.0033 | 0 | 1 | 0.00% |
| -0.0033 | 0 | 7 | 0.02% |

Exhibit C.1

| -0.0033 | 0 | 2 | 0.00% |
|---|---|---|---|
| -0.0033 | 0 | 1 | 0.00% |
| -0.0200 | -1 | 1 | 0.00% |
| Grand Total | 7632 | 45673 | 100% |

Exhibit C.2

**Exhibit C.2 - Rounded Time by Employee ID**

**Kronos Time Data**

| | |
|---|---|
| **Number of Employee IDs with rounded time** | **149** |
| **Percent of employees with rounded time** | **100%** |

| Employee ID | Sum of Potential Autodeduct | Sum of Rounding | Total Hours Not Included In "Shift" Hours | Underpaid |
|---|---|---|---|---|
| 10026 | 121.50 | 42.15 | 163.65 | 1 |
| 10738 | 167.50 | 70.27 | 237.77 | 1 |
| 10773 | 145.00 | 71.90 | 216.90 | 1 |
| 10869 | 105.50 | 37.52 | 143.02 | 1 |
| 11172 | 198.00 | 66.00 | 264.00 | 1 |
| 11368 | 190.50 | 35.23 | 225.73 | 1 |
| 11969 | 121.50 | 31.57 | 153.07 | 1 |
| 13509 | 130.50 | 46.65 | 177.15 | 1 |
| 13633 | 171.00 | 56.66 | 227.66 | 1 |
| 13703 | 161.50 | 52.95 | 214.45 | 1 |
| 13958 | 145.50 | 48.05 | 193.55 | 1 |
| 13966 | 170.50 | 40.77 | 211.27 | 1 |
| 14484 | 150.50 | 44.88 | 195.38 | 1 |
| 15044 | 162.50 | 59.13 | 221.63 | 1 |
| 15127 | 135.00 | 17.12 | 152.12 | 1 |
| 15162 | 80.50 | 120.30 | 200.80 | 1 |
| 15313 | 126.50 | 84.88 | 211.38 | 1 |
| 15429 | 161.50 | 47.52 | 209.02 | 1 |
| 15645 | 153.50 | 52.43 | 205.93 | 1 |
| 15769 | 120.00 | 38.22 | 158.22 | 1 |
| 16032 | 167.50 | 54.57 | 222.07 | 1 |
| 16543 | 88.50 | 43.84 | 132.34 | 1 |
| 17255 | 150.50 | 67.31 | 217.81 | 1 |
| 17503 | 148.00 | 54.17 | 202.17 | 1 |
| 17890 | 150.00 | 56.01 | 206.01 | 1 |
| 18367 | 131.50 | 116.77 | 248.27 | 1 |
| 18401 | 183.50 | 56.82 | 240.32 | 1 |
| 19431 | 197.50 | 59.17 | 256.67 | 1 |
| 19438 | 164.00 | 51.40 | 215.40 | 1 |
| 19964 | 181.50 | 51.82 | 233.32 | 1 |
| 51200 | 0.00 | 0.04 | 0.04 | 1 |
| 51204 | 0.00 | 0.02 | 0.02 | 1 |
| 60000 | 183.50 | 58.46 | 241.96 | 1 |
| 60046 | 181.00 | 59.42 | 240.42 | 1 |
| 60052 | 181.00 | 59.29 | 240.29 | 1 |
| 60105 | 212.00 | 58.00 | 270.00 | 1 |
| 60111 | 129.50 | 29.96 | 159.46 | 1 |
| 60702 | 181.50 | 73.30 | 254.80 | 1 |
| 60710 | 86.00 | 41.73 | 127.73 | 1 |
| 60727 | 152.50 | 44.36 | 196.86 | 1 |

Exhibit C.2

| | | | | |
|---|---|---|---|---|
| 60738 | 131.00 | 82.20 | 213.20 | 1 |
| 60748 | 175.00 | 22.18 | 197.18 | 1 |
| 60763 | 177.50 | 52.43 | 229.93 | 1 |
| 60767 | 157.00 | 24.39 | 181.39 | 1 |
| 60779 | 157.00 | 38.62 | 195.62 | 1 |
| 60806 | 104.50 | 19.11 | 123.61 | 1 |
| 60808 | 147.50 | 20.55 | 168.05 | 1 |
| 60859 | 81.00 | 52.99 | 133.99 | 1 |
| 60864 | 75.00 | 72.80 | 147.80 | 1 |
| 60872 | 77.00 | 15.86 | 92.86 | 1 |
| 60880 | 182.00 | 10.51 | 192.51 | 1 |
| 60881 | 177.00 | 47.40 | 224.40 | 1 |
| 60889 | 153.00 | 25.85 | 178.85 | 1 |
| 60896 | 179.00 | 66.04 | 245.04 | 1 |
| 60902 | 113.00 | 14.09 | 127.09 | 1 |
| 60905 | 148.00 | 52.54 | 200.54 | 1 |
| 60909 | 108.00 | 28.43 | 136.43 | 1 |
| 60925 | 68.00 | 21.31 | 89.31 | 1 |
| 60929 | 115.00 | 36.57 | 151.57 | 1 |
| 60930 | 114.00 | 34.84 | 148.84 | 1 |
| 60933 | 159.50 | 36.62 | 196.12 | 1 |
| 60937 | 136.50 | 31.77 | 168.27 | 1 |
| 60970 | 130.50 | 22.02 | 152.52 | 1 |
| 60977 | 77.50 | 24.32 | 101.82 | 1 |
| 60995 | 147.00 | 27.70 | 174.70 | 1 |
| 61012 | 128.50 | 21.89 | 150.39 | 1 |
| 61013 | 118.50 | 27.31 | 145.81 | 1 |
| 61033 | 169.50 | 32.50 | 202.00 | 1 |
| 61034 | 206.50 | 67.80 | 274.30 | 1 |
| 61044 | 126.50 | 23.30 | 149.80 | 1 |
| 61059 | 180.00 | 52.15 | 232.15 | 1 |
| 61072 | 95.50 | 31.42 | 126.92 | 1 |
| 61076 | 188.50 | 65.47 | 253.97 | 1 |
| 61085 | 200.00 | 66.22 | 266.22 | 1 |
| 61090 | 158.00 | 47.32 | 205.32 | 1 |
| 61102 | 141.50 | 37.83 | 179.33 | 1 |
| 61104 | 140.50 | 32.09 | 172.59 | 1 |
| 61113 | 141.50 | 55.65 | 197.15 | 1 |
| 61132 | 109.00 | 29.10 | 138.10 | 1 |
| 61142 | 138.50 | 56.94 | 195.44 | 1 |
| 61148 | 152.00 | 19.60 | 171.60 | 1 |
| 61150 | 129.00 | 39.70 | 168.70 | 1 |
| 61160 | 179.00 | 43.63 | 222.63 | 1 |
| 61163 | 185.50 | 55.40 | 240.90 | 1 |
| 61177 | 130.00 | 24.55 | 154.55 | 1 |
| 61184 | 173.50 | 57.88 | 231.38 | 1 |
| 61188 | 123.50 | 22.73 | 146.23 | 1 |
| 61192 | 126.50 | 83.63 | 210.13 | 1 |
| 61197 | 189.00 | 64.97 | 253.97 | 1 |
| 61198 | 151.50 | 47.12 | 198.62 | 1 |
| 61205 | 182.00 | 64.29 | 246.29 | 1 |

Exhibit C.2

| | | | | |
|---|---|---|---|---|
| 61207 | 159.50 | 20.69 | 180.19 | 1 |
| 61209 | 176.00 | 54.48 | 230.48 | 1 |
| 61213 | 158.00 | 47.60 | 205.60 | 1 |
| 61217 | 144.50 | 28.88 | 173.38 | 1 |
| 61380 | 171.00 | 35.70 | 206.70 | 1 |
| 61381 | 176.00 | 34.99 | 210.99 | 1 |
| 61384 | 173.00 | 55.20 | 228.20 | 1 |
| 61387 | 175.00 | 42.52 | 217.52 | 1 |
| 61393 | 49.50 | 78.24 | 127.74 | 1 |
| 61395 | 209.00 | 67.75 | 276.75 | 1 |
| 61397 | 68.00 | 8.61 | 76.61 | 1 |
| 61400 | 209.50 | 67.80 | 277.30 | 1 |
| 61402 | 162.50 | 35.90 | 198.40 | 1 |
| 61406 | 189.50 | 42.83 | 232.33 | 1 |
| 61407 | 180.00 | 37.15 | 217.15 | 1 |
| 61408 | 185.50 | 60.58 | 246.08 | 1 |
| 61418 | 135.50 | 92.90 | 228.40 | 1 |
| 61421 | 140.50 | 62.31 | 202.81 | 1 |
| 61422 | 152.00 | 54.30 | 206.30 | 1 |
| 61424 | 104.50 | 18.93 | 123.43 | 1 |
| 61427 | 162.50 | 41.30 | 203.80 | 1 |
| 61428 | 116.00 | 58.61 | 174.61 | 1 |
| 61429 | 177.50 | 57.98 | 235.48 | 1 |
| 61433 | 143.00 | 41.05 | 184.05 | 1 |
| 61434 | 192.00 | 57.97 | 249.97 | 1 |
| 61435 | 200.50 | 58.22 | 258.72 | 1 |
| 61436 | 163.50 | 52.59 | 216.09 | 1 |
| 61437 | 162.50 | 47.02 | 209.52 | 1 |
| 61440 | 66.50 | 21.28 | 87.78 | 1 |
| 61441 | 175.50 | 58.71 | 234.21 | 1 |
| 61449 | 191.50 | 65.43 | 256.93 | 1 |
| 61454 | 142.50 | 31.42 | 173.92 | 1 |
| 61466 | 175.00 | 46.85 | 221.85 | 1 |
| 61490 | 68.00 | 51.01 | 119.01 | 1 |
| 61492 | 149.50 | 49.86 | 199.36 | 1 |
| 61494 | 165.00 | 58.67 | 223.67 | 1 |
| 61495 | 116.50 | 70.47 | 186.97 | 1 |
| 61506 | 131.00 | 69.26 | 200.26 | 1 |
| 61507 | 194.50 | 40.10 | 234.60 | 1 |
| 61510 | 150.00 | 41.85 | 191.85 | 1 |
| 61511 | 188.00 | 51.50 | 239.50 | 1 |
| 61775 | 145.50 | 91.10 | 236.60 | 1 |
| 61831 | 82.00 | 48.10 | 130.10 | 1 |
| 61836 | 188.00 | 61.90 | 249.90 | 1 |
| 61840 | 132.50 | 24.17 | 156.67 | 1 |
| 61842 | 175.50 | 73.89 | 249.39 | 1 |
| 61847 | 167.50 | 56.71 | 224.21 | 1 |
| 61941 | 128.00 | 98.94 | 226.94 | 1 |
| 61965 | 141.50 | 18.28 | 159.78 | 1 |
| 62424 | 101.50 | 71.71 | 173.21 | 1 |
| 62430 | 112.00 | 36.53 | 148.53 | 1 |

Exhibit C.2

| | | | | |
|---|---|---|---|---|
| 62431 | 113.50 | 43.62 | 157.12 | 1 |
| 62660 | 147.00 | 48.37 | 195.37 | 1 |
| 62663 | 137.50 | 43.11 | 180.61 | 1 |
| 62672 | 67.00 | 17.06 | 84.06 | 1 |
| 62674 | 154.00 | 49.83 | 203.83 | 1 |
| 62691 | 146.50 | 43.37 | 189.87 | 1 |
| 601492 | 13.50 | 4.17 | 17.67 | 1 |
| **Grand Total** | **21,545.50** | **7,001.66** | **28,547.16** | **149** |

Exhibit C.3

**Exhibit C.3 - Distribution of Differences Between "Shift" Hours and "Scheduled" Hours Indicating Auto-Deducted Shifts**

**Kronos Time Data**

| | |
|---|---|
| **Number of shifts with a difference of exactly 30 minutes fewer (0.5 hours)  "Shift" hours and "Scheduled" hours** | **43,091** |
| **Percent of shifts with a difference of exactly 30 minutes fewer (0.5 hours) "Shift" hours and "Scheduled" hours** | **94.35%** |

| Difference Between "Shift" Hours and "Scheduled" Hours | Count of "Shift" Hours vs "Scheduled" Hours | Percent |
|---|---|---|
| -0.5 | 43,091 | 94.35% |
| 0.5 | 339 | |
| 1.5 | 302 | |
| 0 | 102 | |
| 1 | 83 | |
| -1 | 56 | |
| -0.17 | 52 | |
| 1.52 | 51 | |
| 0.17 | 50 | |
| NA – schedule is blank | 49 | |
| 2 | 46 | |
| 2.5 | 43 | |
| 1.15 | 39 | |
| 1.53 | 35 | |
| -0.32 | 33 | |
| 1.13 | 29 | |
| -4 | 23 | |
| -0.3 | 22 | |
| 1.57 | 22 | |
| -0.28 | 21 | |
| 0.33 | 21 | |
| 3.5 | 20 | |
| 0.63 | 20 | |
| 0.52 | 19 | |
| 1.17 | 19 | |
| 0.65 | 19 | |
| 0.7 | 19 | |
| 0.67 | 19 | |
| 0.62 | 18 | |
| -0.25 | 18 | |
| -2 | 18 | |
| 0.55 | 18 | |
| 1.58 | 17 | |
| 1.07 | 16 | |
| 1.67 | 16 | |
| 1.02 | 15 | |
| 1.12 | 15 | |
| 0.6 | 14 | |
| 0.57 | 14 | |
| 0.25 | 14 | |
| 0.75 | 14 | |
| 0.53 | 13 | |
| 0.72 | 13 | |
| -0.27 | 13 | |

Exhibit C.3

| | |
|---|---|
| 1.08 | 13 |
| 1.62 | 13 |
| 2.05 | 12 |
| 0.02 | 12 |
| 1.25 | 12 |
| 1.55 | 11 |
| 1.68 | 11 |
| 2.53 | 11 |
| 1.75 | 11 |
| -1.48 | 11 |
| 0.58 | 11 |
| 0.68 | 11 |
| 2.02 | 10 |
| -4.5 | 10 |
| 2.17 | 10 |
| 0.83 | 10 |
| 1.1 | 10 |
| -0.2 | 9 |
| -0.23 | 9 |
| 0.12 | 9 |
| 1.05 | 9 |
| 2.08 | 8 |
| 2.52 | 8 |
| 1.65 | 8 |
| -1.47 | 8 |
| 1.6 | 8 |
| 1.03 | 7 |
| 3 | 7 |
| 2.03 | 7 |
| 0.73 | 7 |
| 1.63 | 7 |
| -0.33 | 7 |
| 1.83 | 7 |
| 1.2 | 7 |
| -0.22 | 6 |
| 3.52 | 6 |
| -0.02 | 6 |
| 0.05 | 6 |
| -3.98 | 6 |
| 0.42 | 5 |
| 2.28 | 5 |
| 0.08 | 5 |
| 0.03 | 5 |
| -0.15 | 5 |
| 0.2 | 5 |
| 0.77 | 5 |
| -0.05 | 5 |
| 0.13 | 5 |
| 2.58 | 4 |
| -3 | 4 |
| -0.18 | 4 |
| 0.95 | 4 |
| -0.08 | 4 |
| 0.98 | 4 |
| -0.12 | 4 |

Exhibit C.3

| | |
|---|---|
| 0.1 | 4 |
| 2.12 | 4 |
| 4 | 4 |
| 2.25 | 4 |
| -0.1 | 4 |
| -0.13 | 4 |
| -3.97 | 4 |
| 3.03 | 4 |
| 0.48 | 4 |
| -1.5 | 4 |
| 1.72 | 4 |
| -1.98 | 3 |
| 2.33 | 3 |
| 1.18 | 3 |
| -4.43 | 3 |
| -5 | 3 |
| 0.97 | 3 |
| 0.88 | 3 |
| -3.95 | 3 |
| -2.5 | 3 |
| 0.18 | 3 |
| -1.33 | 3 |
| -1.1 | 3 |
| 2.65 | 3 |
| -3.48 | 3 |
| 3.2 | 3 |
| 1.7 | 3 |
| -1.07 | 3 |
| 3.55 | 3 |
| -1.97 | 3 |
| 3.62 | 3 |
| 2.3 | 3 |
| 1.77 | 3 |
| 0.78 | 3 |
| 0.27 | 3 |
| 1.27 | 3 |
| -1.42 | 3 |
| 2.62 | 3 |
| -0.03 | 3 |
| 0.47 | 3 |
| 0.28 | 3 |
| 3.05 | 3 |
| 2.07 | 3 |
| -1.95 | 3 |
| 0.35 | 3 |
| -4.47 | 3 |
| 2.1 | 3 |
| 0.9 | 3 |
| -3.92 | 3 |
| -0.68 | 3 |
| 2.77 | 2 |
| 2.55 | 2 |
| -0.93 | 2 |
| 1.88 | 2 |
| -3.5 | 2 |

Exhibit C.3

| | |
|---|---|
| 1.93 | 2 |
| 3.07 | 2 |
| 0.8 | 2 |
| 1.82 | 2 |
| 0.15 | 2 |
| -6.27 | 2 |
| -2.03 | 2 |
| 2.67 | 2 |
| -7.5 | 2 |
| 0.23 | 2 |
| -7 | 2 |
| 3.25 | 2 |
| 1.33 | 2 |
| 1.78 | 2 |
| 1.37 | 2 |
| -4.08 | 2 |
| 1.47 | 2 |
| 2.57 | 2 |
| 2.15 | 2 |
| 2.6 | 2 |
| 0.92 | 2 |
| -1.25 | 2 |
| 2.2 | 2 |
| 2.68 | 2 |
| 0.45 | 2 |
| -3.82 | 2 |
| 2.27 | 2 |
| -2.98 | 2 |
| -0.07 | 2 |
| 1.73 | 2 |
| 0.22 | 2 |
| -5.75 | 2 |
| -1.72 | 2 |
| 3.53 | 2 |
| 2.37 | 2 |
| 1.8 | 2 |
| -4.35 | 2 |
| -0.78 | 2 |
| -3.73 | 2 |
| 0.43 | 2 |
| -0.37 | 1 |
| 3.75 | 1 |
| 3.08 | 1 |
| -7.38 | 1 |
| -3.6 | 1 |
| 1.22 | 1 |
| 2.7 | 1 |
| -6.2 | 1 |
| 3.4 | 1 |
| -4.32 | 1 |
| 4.17 | 1 |
| 1.28 | 1 |
| -4.78 | 1 |
| -4.22 | 1 |
| 2.63 | 1 |

Exhibit C.3

| | |
|---|---|
| -1.92 | 1 |
| -6.7 | 1 |
| 1.38 | 1 |
| -2.78 | 1 |
| 1.42 | 1 |
| -2.33 | 1 |
| -1.9 | 1 |
| 3.98 | 1 |
| 0.07 | 1 |
| -2.08 | 1 |
| -1.87 | 1 |
| 2.45 | 1 |
| -1.83 | 1 |
| -0.45 | 1 |
| -6.17 | 1 |
| 0.87 | 1 |
| -1.58 | 1 |
| -3.08 | 1 |
| -1.53 | 1 |
| -4.58 | 1 |
| -1.52 | 1 |
| -2.95 | 1 |
| -4.07 | 1 |
| 3.13 | 1 |
| -6 | 1 |
| 3.28 | 1 |
| -5.8 | 1 |
| -4.48 | 1 |
| -1.45 | 1 |
| -2.12 | 1 |
| -7.1 | 1 |
| 3.85 | 1 |
| -1.37 | 1 |
| 4.03 | 1 |
| -5.5 | 1 |
| 4.25 | 1 |
| 0.3 | 1 |
| -0.72 | 1 |
| 0.32 | 1 |
| 2.43 | 1 |
| -1.32 | 1 |
| 2.47 | 1 |
| -3.93 | 1 |
| -0.5 | 1 |
| 0.37 | 1 |
| -0.38 | 1 |
| 0.38 | 1 |
| 0.85 | 1 |
| -1.22 | 1 |
| -4.75 | 1 |
| 1.85 | 1 |
| -3.42 | 1 |
| -8.43 | 1 |
| 0.93 | 1 |
| -1.18 | 1 |

Exhibit C.3

| | |
|---|---|
| 2.75 | 1 |
| -5.28 | 1 |
| 2.92 | 1 |
| -1.08 | 1 |
| -2.97 | 1 |
| -5.07 | 1 |
| -2.87 | 1 |
| -1.02 | 1 |
| 3.1 | 1 |
| -3.75 | 1 |
| 3.17 | 1 |
| -7.73 | 1 |
| -2.65 | 1 |
| -0.92 | 1 |
| 3.3 | 1 |
| -0.88 | 1 |
| 3.45 | 1 |
| 2.13 | 1 |
| -2.48 | 1 |
| -0.83 | 1 |
| -2.25 | 1 |
| -0.82 | 1 |
| 3.63 | 1 |
| 2.18 | 1 |
| 3.83 | 1 |
| -0.8 | 1 |
| 3.9 | 1 |
| 2.22 | 1 |
| -2.1 | 1 |
| -3.68 | 1 |
| 4.07 | 1 |
| -0.77 | 1 |
| 4.22 | 1 |
| -0.75 | 1 |
| 5.3 | 1 |
| -0.73 | 1 |
| -6.33 | 1 |
| 2.32 | 1 |
| **Grand Total** | **45,673** |

Exhibit C.4

**Exhibit C.4 - Number of Shifts with Exactly 0.5 Hours Auto-Deducted by Employee ID**

**Kronos Time Data**

**Number of Employee IDs with at least one auto-deducted meal period**  147

**Percent of employees with at least one autodeducted meal period**  98.66%

| Employee ID | Shifts with Exactly 0.5 Auto-Deducted | Other | Total Shifts | Percent |
|---|---|---|---|---|
| 10026 | 243 | 4 | 247 | 98.38% |
| 10738 | 335 | 29 | 364 | 92.03% |
| 10773 | 290 | 53 | 343 | 84.55% |
| 10869 | 211 | 1 | 212 | 99.53% |
| 11172 | 396 | 2 | 398 | 99.50% |
| 11368 | 381 | | 381 | 100.00% |
| 11969 | 243 | 1 | 244 | 99.59% |
| 13509 | 261 | 8 | 269 | 97.03% |
| 13633 | 342 | 5 | 347 | 98.56% |
| 13703 | 323 | | 323 | 100.00% |
| 13958 | 291 | 1 | 292 | 99.66% |
| 13966 | 341 | | 341 | 100.00% |
| 14484 | 301 | 1 | 302 | 99.67% |
| 15044 | 325 | 9 | 334 | 97.31% |
| 15127 | 270 | 1 | 271 | 99.63% |
| 15162 | 161 | 192 | 353 | 45.61% |
| 15313 | 253 | 107 | 360 | 70.28% |
| 15429 | 323 | 1 | 324 | 99.69% |
| 15645 | 307 | 7 | 314 | 97.77% |
| 15769 | 240 | | 240 | 100.00% |
| 16032 | 335 | | 335 | 100.00% |
| 16543 | 177 | 21 | 198 | 89.39% |
| 17255 | 301 | 40 | 341 | 88.27% |
| 17503 | 296 | 15 | 311 | 95.18% |
| 17890 | 300 | 30 | 330 | 90.91% |
| 18367 | 263 | 116 | 379 | 69.39% |
| 18401 | 367 | | 367 | 100.00% |
| 19431 | 395 | 4 | 399 | 99.00% |
| 19438 | 328 | | 328 | 100.00% |
| 19964 | 363 | | 363 | 100.00% |
| 51200 | | 29 | 29 | 0.00% |
| 51204 | | 9 | 9 | 0.00% |
| 60000 | 367 | 1 | 368 | 99.73% |
| 60046 | 362 | 9 | 371 | 97.57% |
| 60052 | 362 | 2 | 364 | 99.45% |
| 60105 | 424 | 3 | 427 | 99.30% |

Exhibit C.4

| | | | | |
|---|---|---|---|---|
| 60111 | 259 | 8 | 267 | 97.00% |
| 60702 | 363 | 9 | 372 | 97.58% |
| 60710 | 172 | 39 | 211 | 81.52% |
| 60727 | 305 | 8 | 313 | 97.44% |
| 60738 | 262 | 88 | 350 | 74.86% |
| 60748 | 350 | 1 | 351 | 99.72% |
| 60763 | 355 | 33 | 388 | 91.49% |
| 60767 | 314 | 2 | 316 | 99.37% |
| 60779 | 314 | 3 | 317 | 99.05% |
| 60806 | 209 | 15 | 224 | 93.30% |
| 60808 | 295 | 21 | 316 | 93.35% |
| 60859 | 162 | 50 | 212 | 76.42% |
| 60864 | 150 | 98 | 248 | 60.48% |
| 60872 | 154 | 5 | 159 | 96.86% |
| 60880 | 364 | 4 | 368 | 98.91% |
| 60881 | 354 | | 354 | 100.00% |
| 60889 | 306 | 1 | 307 | 99.67% |
| 60896 | 358 | 16 | 374 | 95.72% |
| 60902 | 226 | 6 | 232 | 97.41% |
| 60905 | 296 | 28 | 324 | 91.36% |
| 60909 | 216 | 6 | 222 | 97.30% |
| 60925 | 136 | 1 | 137 | 99.27% |
| 60929 | 230 | 2 | 232 | 99.14% |
| 60930 | 228 | 6 | 234 | 97.44% |
| 60933 | 319 | 1 | 320 | 99.69% |
| 60937 | 273 | 2 | 275 | 99.27% |
| 60970 | 261 | 2 | 263 | 99.24% |
| 60977 | 155 | | 155 | 100.00% |
| 60995 | 294 | 1 | 295 | 99.66% |
| 61012 | 257 | 24 | 281 | 91.46% |
| 61013 | 237 | 5 | 242 | 97.93% |
| 61033 | 339 | | 339 | 100.00% |
| 61034 | 413 | | 413 | 100.00% |
| 61044 | 253 | 9 | 262 | 96.56% |
| 61059 | 360 | | 360 | 100.00% |
| 61072 | 191 | 3 | 194 | 98.45% |
| 61076 | 377 | | 377 | 100.00% |
| 61085 | 400 | | 400 | 100.00% |
| 61090 | 316 | | 316 | 100.00% |
| 61102 | 283 | 3 | 286 | 98.95% |
| 61104 | 281 | 19 | 300 | 93.67% |
| 61113 | 283 | 17 | 300 | 94.33% |
| 61132 | 218 | 1 | 219 | 99.54% |
| 61142 | 277 | 19 | 296 | 93.58% |
| 61148 | 304 | 8 | 312 | 97.44% |
| 61150 | 258 | 18 | 276 | 93.48% |
| 61160 | 358 | 10 | 368 | 97.28% |

Exhibit C.4

| | | | | |
|---|---|---|---|---|
| 61163 | 371 | | 371 | 100.00% |
| 61177 | 260 | 3 | 263 | 98.86% |
| 61184 | 347 | 11 | 358 | 96.93% |
| 61188 | 247 | 8 | 255 | 96.86% |
| 61192 | 253 | 82 | 335 | 75.52% |
| 61197 | 378 | 5 | 383 | 98.69% |
| 61198 | 303 | 2 | 305 | 99.34% |
| 61205 | 364 | 4 | 368 | 98.91% |
| 61207 | 319 | 7 | 326 | 97.85% |
| 61209 | 352 | 4 | 356 | 98.88% |
| 61213 | 316 | 3 | 319 | 99.06% |
| 61217 | 289 | 16 | 305 | 94.75% |
| 61380 | 342 | 2 | 344 | 99.42% |
| 61381 | 352 | 14 | 366 | 96.17% |
| 61384 | 346 | | 346 | 100.00% |
| 61387 | 350 | 5 | 355 | 98.59% |
| 61393 | 99 | 105 | 204 | 48.53% |
| 61395 | 418 | 4 | 422 | 99.05% |
| 61397 | 136 | 1 | 137 | 99.27% |
| 61400 | 419 | | 419 | 100.00% |
| 61402 | 325 | 5 | 330 | 98.48% |
| 61406 | 379 | 5 | 384 | 98.70% |
| 61407 | 360 | 9 | 369 | 97.56% |
| 61408 | 371 | | 371 | 100.00% |
| 61418 | 271 | 80 | 351 | 77.21% |
| 61421 | 281 | 50 | 331 | 84.89% |
| 61422 | 304 | 15 | 319 | 95.30% |
| 61424 | 209 | 4 | 213 | 98.12% |
| 61427 | 325 | 10 | 335 | 97.01% |
| 61428 | 232 | 83 | 315 | 73.65% |
| 61429 | 355 | | 355 | 100.00% |
| 61433 | 286 | 42 | 328 | 87.20% |
| 61434 | 384 | 1 | 385 | 99.74% |
| 61435 | 401 | 3 | 404 | 99.26% |
| 61436 | 327 | 5 | 332 | 98.49% |
| 61437 | 325 | 11 | 336 | 96.73% |
| 61440 | 133 | 1 | 134 | 99.25% |
| 61441 | 351 | 2 | 353 | 99.43% |
| 61449 | 383 | 6 | 389 | 98.46% |
| 61454 | 285 | 6 | 291 | 97.94% |
| 61466 | 350 | | 350 | 100.00% |
| 61490 | 136 | 53 | 189 | 71.96% |
| 61492 | 299 | 4 | 303 | 98.68% |
| 61494 | 330 | 7 | 337 | 97.92% |
| 61495 | 233 | 77 | 310 | 75.16% |
| 61506 | 262 | 41 | 303 | 86.47% |
| 61507 | 389 | 1 | 390 | 99.74% |

**Exhibit C.4**

| | | | | |
|---|---|---|---|---|
| 61510 | 300 | | 300 | 100.00% |
| 61511 | 376 | | 376 | 100.00% |
| 61775 | 291 | 110 | 401 | 72.57% |
| 61831 | 164 | 42 | 206 | 79.61% |
| 61836 | 376 | | 376 | 100.00% |
| 61840 | 265 | 3 | 268 | 98.88% |
| 61842 | 351 | 39 | 390 | 90.00% |
| 61847 | 335 | 16 | 351 | 95.44% |
| 61941 | 256 | 121 | 377 | 67.90% |
| 61965 | 283 | 7 | 290 | 97.59% |
| 62424 | 203 | 87 | 290 | 70.00% |
| 62430 | 224 | 2 | 226 | 99.12% |
| 62431 | 227 | 29 | 256 | 88.67% |
| 62660 | 294 | 7 | 301 | 97.67% |
| 62663 | 275 | 2 | 277 | 99.28% |
| 62672 | 134 | 20 | 154 | 87.01% |
| 62674 | 308 | 1 | 309 | 99.68% |
| 62691 | 293 | 6 | 299 | 97.99% |
| 601492 | 27 | | 27 | 100.00% |
| Grand Total | 43,091 | 2,582 | 45,673 | |

# Exhibit D

Exhibit D.1

**Exhibit D.1 - Meal Period Classification**

**Kronos Time Data**

| Shift Length Range | Count of Shifts | Percent |
|---|---|---|
| Up to 5.00 Hours | 102 | 0.22% |
| 5.01 to 10.00 hours | 44,466 | 97.36% |
| 10.01 hours and up | 1,105 | 2.42% |
| Grand Total | 45,673 | 100% |

| Classification | Count of Shifts | Percent |
|---|---|---|
| Exempt | 102 | 0.22% |
| Good 1st | 73 | 0.16% |
| Late 1st | 3 | 0.01% |
| Late and Short 1st | 6 | 0.01% |
| Missing 1st | 45,488 | 99.59% |
| Short 1st | 1 | 0.00% |
| Grand Total | 45,673 | 100% |

| | |
|---|---|
| Number of meal period eligible shifts (shifts >5.00 hours) | 45,571 |
| Number of eligible shifts (>5.00 hours) with timely 30 minute recorded meal period | 73 |
| Percent of eligible shifts with timely 30 minute meal periods | 0.16% |
| Number of eligible shifts without timely 30 minute meal periods | 45,498 |
| Percent of eligible shifts without timely 30 minute meal periods | 99.84% |
| Number of eligible shifts missing 1st meal period | 45,488 |
| Percent of eligible shifts missing 1st meal period | 99.82% |
| Number of eligible shifts with late 1st meal period | 3 |
| Percent of eligible shifts with late 1st meal period | 0.01% |

Exhibit D.2

**Exhibit D.2 - Count of Work Shifts, Rest Period Eligibility**

**Kronos Time Data**

| Shift Length Range | Count of Shifts | Percent |
|---|---|---|
| Under 3.50 Hours | 22 | 0.05% |
| 3.50 to 6.00 hours | 106 | 0.23% |
| 6.01 to 10.00 hours | 44,405 | 97.22% |
| 10.01 hours and up | 1,105 | 2.42% |
| Grand Total | 45,673 | 100% |

| | | |
|---|---|---|
| **Number of shifts eligible for a rest period (over 3.50 hours)** | **45,651** | |
| **Percent of shifts eligible for a rest period (over 3.50 hours)** | **99.95%** | |
| **Number of shifts over 10.01 hours** | **1,140** | |
| **Percent of shifts over 10.01 hours** | **2.42%** | |

# Exhibit E

Exhibit E.1

**Exhibit E.1 - Plaintiff: Number of Occurrences of Rounded Time**

**Plaintiff's Kronos Time Data**

**Number of shifts with rounded time**                    **646**

**Percent of shifts with rounded time**                    **99.85%**

| Hours Rounded | Minutes Rounded | Occurrences of Rounded Time | Percent |
|---|---|---|---|
| 1.1000 | 66 | 1 | 0.15% |
| 0.6667 | 40 | 69 | 10.66% |
| 0.6500 | 39 | 3 | 0.46% |
| 0.6500 | 39 | 1 | 0.15% |
| 0.5500 | 33 | 1 | 0.15% |
| 0.5033 | 30 | 1 | 0.15% |
| 0.5033 | 30 | 1 | 0.15% |
| 0.5033 | 30 | 1 | 0.15% |
| 0.5033 | 30 | 1 | 0.15% |
| 0.5033 | 30 | 1 | 0.15% |
| 0.5000 | 30 | 5 | 0.77% |
| 0.5000 | 30 | 555 | 85.78% |
| 0.5000 | 30 | 2 | 0.31% |
| 0.5000 | 30 | 1 | 0.15% |
| 0.4967 | 30 | 1 | 0.15% |
| 0.4967 | 30 | 2 | 0.31% |
| 0.00 | 0 | 1 | 0.15% |
| Grand Total | 547 | 647 | 100% |

Exhibit E.2

**Exhibit E.2 - Plaintiff: Distribution of Differences Between "Shift" Hours and "Scheduled" Hours Indicating Auto-deducted Shifts**

**Plaintiff's Kronos Time Data**

| | |
|---|---|
| Number of shifts with a difference of exactly 30 minutes fewer (0.5 hours) "Shift" hours and "Scheduled" hours | 77 |
| Percent of shifts with a difference of exactly 30 minutes fewer (0.5 hours) "Shift" hours and "Scheduled" hours | 11.90% |

| Difference Between "Shift" Hours and "Scheduled" Hours | Count of Shift Hours vs Scheduled Hours | Percent |
|---|---|---|
| -2.5 | 1 | 0.15% |
| -0.5 | 77 | 11.90% |
| 0.08 | 1 | 0.15% |
| NA - schedule is blank | 568 | 87.79% |
| Grand Total | 647 | 100% |

# Exhibit F

Exhibit F.1

**Exhibit F.1 - Plaintiff: Meal Period Classification**

**Plaintiff's Kronos Time Data**

| Shift Length Range | Count of Shifts |
|---|---|
| Up to 5.00 Hours | 1 |
| 5.01 to 10.00 hours | 646 |
| Grand Total | 647 |

| Classification | Count of Shifts |
|---|---|
| Exempt | 1 |
| Missing 1st | 646 |
| Grand Total | 647 |

| | |
|---|---|
| **Number of meal period eligible shifts (shifts >5.00 hours)** | **646** |
| **Number of eligible shifts (>5.00 hours) with timely 30 minute recorded meal period** | **0** |
| **Percent of eligible shifts with timely 30 minute meal periods** | **0.00%** |
| **Number of eligible shifts without timely 30 minute meal periods** | **646** |
| **Percent of eligible shifts without timely 30 minute meal periods** | **100.00%** |
| **Number of eligible shifts missing 1st meal period** | **646** |
| **Percent of eligible shifts missing 1st meal period** | **100.00%** |

Exhibit F.2

**Exhibit F.2 - Plaintiff: Count of Work Shifts, Rest Period Eligibility**

**Plaintiff's Kronos Time Data**

| Shift Length Range | Count of Shifts | Percent |
|---|---|---|
| Under 3.50 Hours | 1 | 0.15% |
| 3.50 to 6.00 hours | 2 | 0.31% |
| 6.01 to 10.00 hours | 644 | 99.54% |
| 10.01 hours and up | 0 | 0.00% |
| Grand Total | 647 | 100% |

| | | |
|---|---|---|
| **Number of shifts eligible for a rest period (over 3.50 hours)** | **646** | |
| **Percent of shifts eligible for a rest period (over 3.50 hours)** | **99.54%** | |
| **Number of shifts over 10.01 hours** | **0** | |
| **Percent of shifts over 10.01 hours** | **0.00%** | |

**PROOF OF SERVICE**

STATE OF CALIFORNIA       )
                                  ) ss
COUNTY OF LOS ANGELES   )

     I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880, Los Angeles, California 90017. On April 24, 2023, I served the foregoing document described as:

**DECLARATION OF LENA ARAI, PhD, IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

  X   by placing ___ the original  X  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| WILLIAM FAULKNER (83385) | CRAIG MARTIN (Pro Hac Vice) |
| MICHAEL WARREN (223642) | cmartin@willkie.com |
| **McMANIS FAULKNER** | MATT BASIL (Pro Hac Vice) |
| 50 West San Fernando Street, 10th Floor | mbasil@willkie.com |
| San Jose, California 95113 | **WILLKIE FARR & GALLAGHER,** |
| Telephone: (408) 279-8700 | **LLP** |
| Facsimile: (408) 279-3244 | 300 North LaSalle Street, Suite 5000 |
| Email: mwarren@mcmanislaw.com | Chicago, Illinois 60654 |
| | Telephone: (312) 728-9000 |
| | Facsimile: (312) 728-9199 |

*Attorneys for Defendant GILLIG, LLC*

[X]  **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

  X  (State)      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     Executed on April 24, 2023, at Los Angeles, California.

Janelle Jickain
          Name                                      Signature

 Superior Court of Alameda County Public Portal

# Reschedule a Reservation

## Reservation

Reservation ID:
296057941352

Reservation Type:
Motion re: (Motion for Class Certification)

Case Number:
RG20073930

Case Title:
Tolentino VS Gillig, LLC

Filing Party:
Ronald Tolentino (Plaintiff)

Location:
Rene C. Davidson Courthouse - Department 23

Date/Time:
May 23rd 2023, 9:15AM

Status:
RESERVED

Number of Motions:
1

## Motions to Reschedule

Motion re: (Motion for Class Certification)

**_Reschedule To:_**
Date:  05/30/2023 9:15 AM
Location:  Rene C. Davidson Courthouse - Department 23

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Reschedule Fee | 1.00 | 1 | 1.00 |

| Description | Fee | Qty | Amount |
|---|---|---|---|
| TOTAL | | | $1.00 |

**Payment**

| | |
|---|---|
| Amount: | Type: |
| $1.00 | Visa |
| | |
| Account Number: | Authorization: |
| XXXX4529 | 04148G |
| | |
| Payment Date: | |
| 1969-12-31 | |

🖨 Print Receipt     ➕ Reserve Another Hearing     👤 View My Reservations

Terms of Service

Contact Us

About this Site

Copyright © Journal Technologies, USA. All rights reserved.

# EXHIBIT 62

1  Kane Moon (SBN 249834)
   Allen Feghali (SBN 301080)
2  Jacquelyne VanEmmerik (SBN 339338)
   **MOON & YANG, APC**
3  1055 West Seventh Street, Suite 1880
   Los Angeles, California 90017
4  Telephone: (213) 232-3128
   Facsimile: (213) 232-3125
5  Email: kane.moon@moonyanglaw.com
   Email: allen.feghali@moonyanglaw.com
6  Email: jacquelyne.vanemmerik@moonyanglaw.com

7  *Attorneys for Plaintiff,*
   *Ronald Tolentino*

8

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**04/24/2023 at 06:33:51 PM**
By: Anita Dhir,
Deputy Clerk

9          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

          **FOR THE COUNTY OF ALAMEDA**

10

11 | RONALD TOLENTINO, individually, and on behalf of all others similarly situated, | Case No.: RG20073930 |

12 |                                    Plaintiff, | [Honorable Brad Seligman, Department 23] |

13 |                    vs. | <u>CLASS ACTION</u> |

14 | GILLIG, LLC, a limited liability company; and DOES 1 through 10, inclusive, | **PLAINTIFF'S FIRST PROPOSED TRIAL PLAN REGARDING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

15 |                                   Defendants. | Date: May 30, 2023
16 | | Time: 9:15 a.m.
   | | Dept.: 23

17 | | Reservation ID: 296057941352

18 | | Complaint Filed: September 16, 2020
19 | | Trial Date: Not Set

20

21

22

23

24

25

26

27

28

1      **TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2    I.    **INTRODUCTION**

3           Plaintiff Ronald Tolentino hereby respectfully submits the following Class Action Trial Plan

4    ("Trial Plan"). Plaintiff submits this Trial Plan in conjunction with Plaintiff's Motion for Class

5    Certification, with the objective of providing the Court and Defendant with a practical overview of how,

6    in post-certification proceedings, the claims sought to be certified would be adjudicated on a class basis,

7    both as to liability and damages. Foremost, this Trial Plan demonstrates that Plaintiff's theories of

8    liability for the claims at issue are in fact manageable as a class action, and moreover, that the case

9    management techniques suggested in this Trial Plan confirm the efficacy of class treatment instead of

10   hundreds of inefficient individual actions. *See Duran v. U.S. Bank National Assn.*, 59 Cal.4th 1, 27

11   (2014) (trial plans are important to establish manageability of a class action).

12   II.   **CASE BACKGROUND**

13          Plaintiff alleges and can demonstrate that Defendant Gillig, LLC ("Defendant") did not

14   remunerate Class Members for all time worked; did not incorporate all non-discretionary remuneration

15   when calculating Class Members' regular rates of pay; regularly provided Class Members with short

16   and/or interrupted meal periods; and regularly provided Class Members with short and/or interrupted rest

17   breaks.

18          Based on these theories, Plaintiff demands relief for the following causes of action asserted in his

19   operative second amended class and representative action complaint: (1) Failure to Pay Minimum and

20   Regular Rate Wages (*Labor Code* sections 204, 1194, 1194.2, 1197, and 1771); (2) Failure to Provide

21   Meal Periods (*Labor Code* sections 204, 223, 226.7, 512, and 1198); (3) Failure to Provide Rest Periods

22   (*Labor Code* sections 204, 223, 226.7, and 1198); (4) Failure to Timely Pay Final Wages at Termination

23   (*Labor Code* sections 201-203); (5) Failure to Provide Accurate Itemized Wage Statements (*Labor Code*

24   sections 226(a)); (6) Unfair Business Practices (*Business and Professions Code* sections 17200, et seq.);

25   and (7) Civil Penalties (*Labor Code* sections 2698, et seq.).

26          Further, Plaintiff requests certification of the following class: **All persons employed by**

27   **Defendant Gillig, LLC in an hourly-paid or non-exempt position in California at any time on or**

28   **after September 16, 2016.**

---

Case No.:  RG20073930                          Page 1                          *Ronald Tolentino v. Gillig, LLC*

PLAINTIFF'S FIRST PROPOSED TRIAL PLAN REGARDING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1    Plaintiff additionally requests certification of such Subclasses as are necessary to manage the

2    proposed Class, including penalty Subclasses limited in time by any applicable statutes of limitation, e.g.,

3    a one-year statute of limitation for penalties pursuant to *Labor Code* section 226 and a three-year statute

4    of limitation for penalties pursuant to *Labor Code* section 203), or any other Subclasses as otherwise

5    approved by the Court.

6    III.    **POST-CERTIFICATION CASE MANAGEMENT: DETERMINATION OF LIABILITY**

7        **AND DAMAGES AS TO THE CLASS**

8        As explained in *Duran*, a class action trial should be manageable, allowing for management of

9    individual questions and for Defendant to present its affirmative defenses. In wage and hour cases in

10   which the plaintiff seeks class certification based on allegations that the employer defendant consistently

11   imposed uniform policies and practices, the plaintiff must still demonstrate that the "illegal effects of this

12   conduct can be proven efficiently and manageably within a class setting." *Duran*, 59 Cal.4th at 29

13   (internal citations omitted.)

14       Here, because Plaintiff's theories of liability are based on Defendant's policies, or lack of legally

15   compliant policies, liability will likely be determined for some many of the causes of action by motions

16   for summary adjudication, and damages will primarily be determined from Defendant's time and

17   corresponding payroll records. Damages can be calculated in the aggregate and presented to the trier-of-

18   fact through summary evidence or expert testimony at trial. To the extent damages cannot be calculated

19   based on Defendant's records, Plaintiff may use representatives' and class members' testimony in

20   addition to statistical evidence to establish damages. *See Duran*, 59 Cal.4th 1, 39-40; *see also Brinker*

21   *Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1054 (2012) (J. Werdegar concurring); *see also*

22   *Lubin v. Wackenhut Corp.*, 5 Cal.App.4th 926, reh'g denied (Dec. 14, 2016) ("statistical sampling has

23   been approved as a method of determining damages"). Moreover, as recognized in *Duran*, trial courts are

24   encouraged to use innovative procedures in class actions to allow for a manageable class action trial.

25   *Duran*, 59 Cal.4th at 33. The facts of this case and Plaintiff's theories of liability will allow for a

26   manageable trial.

27       A.    **Mailing Class Notice to Class Members**

28       Following certification, Defendant will provide the names and contact information for Class

1    Members to a third-party administrator adequately experienced in class action notice procedures chosen

2    by Class Counsel subject to Court approval. The administrator will mail a Court-approved class notice

3    informing Class Members about the action and of their right to participate, consistent with the established

4    procedures in California.

5    **B.    Conducting Merits Discovery**

6    Discovery to date demonstrates that Defendant (1) "shaves" time worked by employees,

7    underpaying a substantial majority of the Class; (2) does not incorporate all non-discretionary

8    remuneration into Class Members' respective regular rates of pay, underpaying a substantial majority of

9    the Class; (3) maintained an unlawful meal period policy which prevented Class Members from

10   taking a full, uninterrupted thirty-minute meal period every day; and (4) maintained an unlawful

11   rest break policy which prevented Class Members from taking a full, uninterrupted ten-minute

12   rest period every day.

13   Following certification, Class Counsel will propound "merits discovery," including written

14   discovery and depositions, seeking evidence that would assist the fact finder in determining the merits of

15   Plaintiff's certified claims. For instance, Plaintiff will demonstrate that time shaving harmed a large

16   majority of the Class with a simple data analysis. Plaintiff's consultant, Lena Arai, PhD., has already

17   demonstrated the feasibility of this approach (and the associated damage calculations for penalty awards

18   under *Labor Code* sections 203 and 226) with an analysis of the time records for the majority of the

19   Class[1]. Liability and damages can be determined from data analysis, and the calculation for the entire

20   Class will only require a updating the analysis already done by including time records for the period

21   since the documents were produced.

22   Class Counsel may also seek specific information about Class Members in addition to their

23   names and contact information to be produced as part of the class notice administration procedures

24   identified immediately above, including dates of employment, positions held at the company, hourly

25   rates, and other relevant data potentially bearing on determinations to be made at the liability and

26

27   [1] On April 31, 2021, Defendant produced time and corresponding payroll records for a sample of the Class in
     the course of discovery. Accordingly, Plaintiff's consultant was able to analyze time records for a sample of the

28   Class from February 2019 to December 2022.

1   damages phases of this Action. This additional discovery will be particularly important to establishing

2   liability by motions for summary adjudication. If summary adjudication is not granted regarding a

3   particular cause of action, Plaintiff may use some of these witnesses to testify at trial and to establish that

4   the legally non-compliant policies were in fact implemented and uniformly applied.

5        **C.        Pre-Trial Procedures**

6        Upon the completion of merits discovery, Plaintiff proposes a period of time to accommodate the

7   briefing of dispositive motions, as well as other motions capable of narrowing the issues at trial. The

8   parties would have an opportunity to move for summary adjudication of one or more of the causes of

9   action coinciding with the certified class, the adjudication as to any derivative causes of action, and, in

10  the Court's discretion, any discrete factual or legal issue affecting the claims.

11       Here, for example, liability as to Plaintiff's improper time shaving policy is purely a legal

12  determination that is clearly suitable for resolution by dispositive motion. Plaintiff's theories argue that

13  Defendant's time shaving of employees' timecards resulted, over a period of time, in failing to

14  compensate Plaintiff and the Class properly for all the time actually worked, and thus, is illegal

15  because it does not comply with the mandates of the California Labor Code, which requires that

16  employees be paid for all time worked. Plaintiff will likely move for summary adjudication of this issue.

17  Plaintiff will demonstrate that time shaving harmed a large majority of the Class with a simple data

18  analysis. Plaintiff's consultant, Lena Arai, PhD., has already demonstrated the feasibility of this approach

19  (and the associated damage calculations for penalty awards under *Labor Code* sections 203 and 226)

20  with an analysis of the time records for the majority of the Class. Liability and damages can be

21  determined from data analysis, and the calculation for the entire Class will only require updating the

22  analysis already done by including time records for the period since the documents were produced.

23       Similarly, Plaintiff's claim that Defendant failed to provide Class Members with compliant meal

24  periods and rest breaks, i.e., full, uninterrupted meal periods and rest breaks, will be established using

25  Defendant's time and corresponding payroll records and testimony, in conjunction with Plaintiff's and

26  Class Members' testimony. Specifically, Defendant's time and corresponding payroll records will reveal

27  that Class Members were never paid premium wages for short or interrupted meal periods and rest

28  breaks, and the indicated testimony will establish that Class Members should have been paid such wages.

1    **1.    Defendant Will Have An Opportunity To Present Any Affirmative Defenses**

2    As discussed in *Duran*, Defendant must be afforded the opportunity to present affirmative

3    defenses at trial. *Duran*, 59 Cal. 4th at 35 ("While class action defendants may not have an unfettered

4    right to present individualized evidence in support of a defense, our precedents make clear that a class

5    action trial management plan may not foreclose the litigation of relevant affirmative defenses.")

6    Plaintiff's proposed trial plan allows Defendant that opportunity. As explained in detail above, some of

7    Plaintiff's theories of liability will likely be determined by dispositive motions that will determine

8    whether Defendant maintained and implemented legally non-compliant policies with respect to shaving

9    employee timecards, rest breaks, and meal periods. Defendant would have the opportunity to oppose

10   these motions or file its own dispositive motions and present any evidence it chooses. In the event

11   liability is not determined by dispositive motions, Defendant will have the opportunity to present

12   evidence regarding deviations in policies and individual issues at trial.

13   Accordingly, Plaintiff's trial plan will afford the Court and the parties a fair and efficient means

14   to resolve this class action. Plaintiff will revise the trial plan as discovery progresses, issues are

15   summarily adjudicated, or facts are stipulated to or admitted by the Parties.

16

17                                                Respectfully submitted,

18   Dated: April 24, 2023                        MOON & YANG, APC

19

20                                                By: _____

21                                                Kane Moon, Esq.
                                                  Allen Feghali, Esq.
22                                                Jacquelyne VanEmmerik, Esq.

23                                                *Attorneys for Plaintiff,*
                                                  *Ronald Tolentino*

24

25

26

27

28

PLAINTIFF'S FIRST PROPOSED TRIAL PLAN REGARDING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA                    )
                                       ) ss
3

COUNTY OF LOS ANGELES                  )

4

5          I am employed in the county of Los Angeles, State of California.  I am over the age of 18
and not a party to the within action; my business address is 1055 West Seventh Street, Suite 1880,
6   Los Angeles, California 90017.  On April 24, 2023, I served the foregoing document described as:

7   **PLAINTIFF'S FIRST PROPOSED TRIAL PLAN REGARDING PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION**

8

9    X    by placing ___ the original   X   a true copy thereof enclosed in sealed envelope(s)
addressed as follows:

10

11          WILLIAM FAULKNER (83385)              CRAIG MARTIN (Pro Hac Vice)
            MICHAEL WARREN (223642)               cmartin@willkie.com
12          **McMANIS FAULKNER**                  MATT BASIL (Pro Hac Vice)
         50 West San Fernando Street, 10th Floor  mbasil@willkie.com
13          San Jose, California 95113           **WILLKIE FARR & GALLAGHER,
            Telephone: (408) 279-8700                        LLP**
14          Facsimile: (408) 279-3244            300 North LaSalle Street, Suite 5000
         Email: mwarren@mcmanislaw.com              Chicago, Illinois 60654
15                                                 Telephone: (312) 728-9000
                                                   Facsimile: (312) 728-9199
16

17                    *Attorneys for Defendant GILLIG, LLC*

18   [X]   **BY U.S. MAIL:** I deposited such envelope in the mail at Los Angeles, California. The
          envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the
19        firm's practice of collection and processing correspondence for mailing. Under that practice
          it would be deposited with U.S. postal service on that same day with postage thereon fully
20        prepaid at Los Angeles, California in the ordinary course of business. I am aware that on
          motion of the party served, service is presumed invalid if postal cancellation date or postage
21        meter date is more than one day after date of deposit for mailing in affidavit.

22

23    X    (State)        I declare under penalty of perjury under the laws of the State of
                          California that the above is true and correct.
24

25          Executed on April 24, 2023, at Los Angeles, California.

26

27   Janelle Jickain_____          _____
              Name                                        Signature
28

# Superior Court of Alameda County Public Portal

# Reschedule a Reservation

| Reservation | |
|---|---|
| Reservation ID:<br>296057941352 | |
| Reservation Type:<br>Motion re: (Motion for Class Certification) | |
| Case Number:<br>RG20073930 | |
| Case Title:<br>Tolentino VS Gillig, LLC | |
| Filing Party:<br>Ronald Tolentino (Plaintiff) | |
| Location:<br>Rene C. Davidson Courthouse - Department 23 | |
| Date/Time:<br>May 23rd 2023, 9:15AM | |
| Status:<br>RESERVED | |
| Number of Motions:<br>1 | |

| Motions to Reschedule |
|---|
| Motion re: (Motion for Class Certification)<br><br>***Reschedule To***:<br>Date:  05/30/2023 9:15 AM<br>Location:  Rene C. Davidson Courthouse - Department 23 |

### Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Reschedule Fee | 1.00 | 1 | 1.00 |

| Description | Fee | Qty | Amount |
|---|---|---|---|
| TOTAL | | | $1.00 |

## Payment

| | |
|---|---|
| Amount:<br>$1.00 | Type:<br>Visa |
| Account Number:<br>XXXX4529 | Authorization:<br>04148G |
| Payment Date:<br>1969-12-31 | |

🖨 Print Receipt    ➕ Reserve Another Hearing    👤 View My Reservations

---

Terms of Service

Contact Us

About this Site

Copyright © Journal Technologies, USA. All rights reserved.

# EXHIBIT 63

1   WILLIAM FAULKNER (83385)
    MICHAEL WARREN (223642)
2   McMANIS FAULKNER
    a Professional Corporation
3   50 West San Fernando Street, 10th Floor
    San Jose, California 95113
4   Telephone:    (408) 279-8700
    Facsimile:    (408) 279-3244
5   Email:        mwarren@mcmanislaw.com

6   CRAIG C. MARTIN (*Pro Hac Vice*)
    MATT D. BASIL (*Pro Hac Vice*)
7   WILLKIE FARR & GALLAGHER, LLP
    300 North LaSalle Street, Suite 5000
8   Chicago, Illinois 60654
    Telephone:    (312) 728-9000
9   Facsimile:    (312) 728-9199
    Email:        cmartin@willkie.com
10                mbasil@willkie.com

11  Attorneys for Defendant
    GILLIG, LLC
12

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14              FOR THE COUNTY OF ALAMEDA

15

16  RONALD TOLENTINO, individually, and on        Case No.: RG20073930
    behalf of all others similarly situated,
17                                                 **REPLY MEMORANDUM IN SUPPORT
                                                   OF DEFENDANT'S MOTION FOR
18          Plaintiff,                             JUDGMENT ON THE PLEADINGS
                                                   AND/OR MOTION *IN LIMINE* TO
19      vs.                                        EXCLUDE ALL EVIDENCE RE:
                                                   PLAINTIFF'S MINIMUM WAGE CLAIM
20  GILLIG, LLC, a limited liability company; and  FOR ALLEGED OVERTIME HOURS
    DOES 1 through 10, inclusive,                  WORKED**
21
            Defendants.                            Date:          May 2, 2023
22                                                 Time:          9:15 a.m.
                                                   Department:    23
23                                                 Judge:         Hon. Brad Seligman
                                                   **Reservation No.: 527421920323**
24
                                                   Complaint Filed:    September 16, 2020
25                                                 Trial Date:         Not set

26  _____

27  ///

28  ///
                                          1
    REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
    PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
04/25/2023 at 04:49:46 PM
By: Curtiyah Ganter,
Deputy Clerk

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION ...................................................................................... 4

3    II.    ARGUMENT .............................................................................................. 4

4          A.    Plaintiff Admits His First Cause Of Action Seeks Recovery For
5                 Alleged Work Performed "Before The Regular Starting Time,"
                   Therefore, His Claim Is Governed By The Overtime Provision Of
6                 The CBA. ........................................................................................... 4

7          B.    Plaintiff's First Cause Of Action Is Preempted By Section 301 of
8                 the LMRA Because There Is An "Active Dispute" Over The
                   Meaning And Application Of The CBA's Section 4.5 ...................... 7

9    III.    CONCLUSION ........................................................................................... 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

1

**TABLE OF AUTHORITIES**

2

3  Cases

4  *Burnside v. Kiewit Pac. Corp.,*
5      (9th Cir. 2007) 491 F.3d 1053 .................................................................................8

6  *Caterpillar Inc. v. Williams,*
7      (1987) 482 U.S. 386...............................................................................................8

8  *Curtis v. Irwin Industries, Inc.,*
      (9th Cir. 2019)  913 F.3d 1146 ........................................................................4, 8
9

10 *Flowers v. LA County Metropolitan Transportation Authority,*
      (2015) 243 Cal.App.4th 66 .....................................................................................7

11 *Franchise Tax Board of California v. Construction Laborers Vacation Trust for So. California,*
12      (1983) 463 U.S. 1....................................................................................................7

13 *Metro. Life Ins. v. Taylor,*
      (1987) 481 U.S. 58...................................................................................................8
14

15 *Newberry v. Pacific Racing Ass'n,*
      (9th Cir. 1988) 854 F.2d 1142 ...............................................................................8

16
   *Oman v. Delta Airlines, Inc.,*
17      (2020) 9 Cal.5th 762 ...............................................................................................6

18 *Ramirez v. Fox Television Station, Inc.,*
19      (9th Cir. 1993) 998 F.2d 743 .................................................................................8

20 Statutes

21 29 U.S.C. § 185(a) .........................................................................................................7

22 Labor Code § 510 ..........................................................................................................6

23 Labor Code § 1194 ........................................................................................................7

24

25

26

27

28

3

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

I.    **INTRODUCTION**

Plaintiff's Opposition confirms that his alleged minimum wage claim is subject to Section 4.5 of the CBA.  Plaintiff does not dispute that Section 4.5 unequivocally states that any work performed *before* an employee's regular starting time "shall be paid" at an overtime rate.  Notwithstanding the undisputed language of the CBA, Plaintiff nevertheless argues that Section 4.5 requires payment of the overtime rate *only* if an employee has worked in excess of eight hours in the relevant workday.  Plaintiff is wrong.  Under the CBA, employees are entitled to receive overtime for work performed before the regular starting time regardless of whether the total time worked exceeds eight hours in a workday.  The time period at issue in Plaintiff's First Cause of Action for minimum wage (*i.e.*, alleged work performed before the regular starting time) falls squarely within the CBA's definition of overtime.  Accordingly, his claim must be dismissed as a matter of law.

Moreover, under federal law, Plaintiff's minimum wage claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA") because the parties have an "active dispute" regarding the meaning and application of Section 4.5 as it pertains to Plaintiff's claim.  Plaintiff's minimum wage claim cannot avoid preemption because it raises questions "about the scope, meaning, or application of the CBA."  See *Curtis v. Irwin Industries, Inc.* (9th Cir. 2019) 913 F.3d 1146, 1153.

For these reasons, Gillig respectfully request that its motion for judgment on the pleadings, or in the alternative motion *in limine* to exclude evidence, be granted.

II.   **ARGUMENT**

   A.   **Plaintiff Admits His First Cause Of Action Seeks Recovery For Alleged Work Performed "Before The Regular Starting Time," Therefore, His Claim Is Governed By The Overtime Provision Of The CBA.**

Plaintiff admits in his Opposition that his First Cause of Action seeks recovery for alleged worked performed "before the regular starting time."  Specifically, Plaintiff concedes that "[t]he unpaid time at issue...occurred at the beginning of each shift, not at the end," and alleges that Defendant did not remunerate employees for work performed during "the time between the putative Class' clock-in times and scheduled start time." (Plaintiff's Opposition to

4

1    Defendant Gillig, LLC's Motion For Judgment on The Pleadings And/Or Motion *In Limine* To

2    Exclude All Evidence Re: Plaintiff's Minimum Wage Claim For Alleged Overtime Hours

3    Worked" ["Plaintiff's Opp."], p. 4, line 13 and p. 5, lines 6-7.)  Plaintiff does not dispute that the

4    applicable CBA requires that "[w]ork performed <u>before the regular starting time</u>…<u>shall be paid</u>

5    for at the rate of one and one-half (1 1/2) time the straight-time hourly rate." (RJN, Exhibit A,

6    Loar Decl., Exhibit 1, CBA, Section 4.5) (emphasis added.)  Rather, Plaintiff chooses to ignore

7    this language of the CBA.

8        Notwithstanding this clear language, Plaintiff appears to interpret Section 4.5 of the CBA

9    to require that employees must work more than eight hours in a day before they become entitled

10   to pay at an overtime rate.  In other words, Plaintiff essentially argues that an employee's first

11   eight hours of work must be paid at the minimum wage rate, while time worked after the first

12   eight hours is governed by the CBA's overtime rate.

13       Plaintiff's interpretation is not supported by the plain meaning of the CBA's overtime

14   provision.  Section 4.5 clearly states that work performed "before the regular starting time"

15   "shall be paid" at an overtime rate. (*Id.*)  Accordingly, pursuant to Section 4.5, employees are

16   entitled to receive an overtime rate for work performed before the regular starting time regardless

17   of whether the total time worked that day exceeded eight hours.  Contrary to Plaintiff's

18   argument, the CBA does not waive employees' rights to receive at least minimum wage for all

19   hours worked.  Rather, the CBA entitles employees to receive <u>more than</u> minimum wage for any

20   alleged time worked prior to their regular starting time.  In other words, if a union employee

21   performs work before the regular starting time, that employee is entitled to be paid an overtime

22   rate, regardless of whether the employee works more than 8 hours that day.

23       This is consistent with other enhanced overtime entitlements granted Gillig employees

24   under the CBA.[1]  For example, Section 4.5 also requires that "[w]ork performed on Sundays

25   _____

26   [1] Contrary to Plaintiff's assertion, Gillig did not unilaterally classify the work time defined in
     Section 4.5 as "overtime." (See Plaintiff's Opp., p. 4, line 3.)  The CBA is the product of
27   negotiations between Gillig and Local 853 regarding the wages, working conditions, and terms
     of employment for union employees, like Plaintiff.  In fact, Section 4.5 provides employees with
28   more overtime rights than afforded under state statutory law.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

1    shall be paid for at the rate of double (2) times the straight-time hourly rate." (RJN, Exhibit A,

2    Loar Decl., Exhibit 1, CBA, Section 4.5.)  This double-time entitlement is not contingent on

3    whether employees work in excess of twelve hours in a workday or more than eight hours on the

4    seventh consecutive workday. See Cal. Labor Code § 510 ("Any work in excess of 12 hours in

5    one day shall be compensated at the rate of no less than twice the regular rate of pay for an

6    employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall

7    be compensated at the rate of no less than twice the regular rate of pay of an employee.")  In

8    addition, Section 4.5 entitles employees to receive double-time pay for "[w]ork performed in

9    excess of eight (8) hours on Saturdays or holidays," again regardless of the total amount of time

10   worked in a workday or workweek.  (RJN, Exhibit A, Loar Decl., Exhibit 1, CBA, Section 4.5.)

11          Likewise, Section 4.5 entitles employees to receive pay at the overtime rate for any

12   "[w]ork performed before the regular starting time," regardless of whether they work more than

13   eight hours in a workday.  (*Id.*)  As such, Plaintiff's alleged claim for unpaid time falls squarely

14   within the definition of overtime under Section 4.5 of the CBA, and thus is subject to dismissal

15   in accordance with the United States District Court's previous order.

16          The caselaw relied upon by Plaintiff supports Gillig's argument.  In *Oman v. Delta*

17   *Airlines, Inc.* (2020) 9 Cal.5th 762, the Supreme Court recognized that under any compensation

18   scheme, the Wage Orders require an employer pay no less than minimum wage for all hours

19   worked.  *Id.*, at 782.  Here, Gillig pays employees under the CBA one and one-half times the

20   regular straight-time rate for any time worked before the scheduled start time, which is well-

21   above minimum wage.  (RJN, Exhibit A, Loar Decl., Exhibit 1, CBA, Section 4.5, and Appendix

22   "A," Section 1.)

23          The *Oman* Court further held that "[f]or all hours worked, employees are entitled to the

24   greater of the (1) amount guaranteed by contract for the specified task or period, or (2) the

25   amount guaranteed by the minimum wage." *Id.* (emphasis added.)  Here, pursuant Section 4.5 of

26   the CBA, employees are entitled to the greater rate of one and one-half times the regular straight-

27   time rate for work performed before the start time, rather than the lesser minimum wage rate

28

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

1   under Labor Code section 1194.  In analyzing whether a particular compensation scheme

2   complies with the above obligations, the *Oman* Court applied "two separate inquiries." *Id.*

3   "First, for each task or period covered by the contract, is the employee paid at or above the

4   minimum wage?  Second, are there other tasks or periods not covered by the contract, but within

5   the definition of hours worked, for which at least the minimum wage should have been paid?" *Id.*

6        In applying the first of these inquiries in this case, here Section 4.5 requires employees to

7   be paid above the minimum wage for any work performed before the starting time.  Second,

8   there are no other periods at issue that are not covered by the CBA for which at least the

9   minimum wage should have been paid.  Consequently, under the analysis set forth by the *Oman*

10   Court, the CBA's compensation scheme complies with Gillig's minimum wage obligations.

11        Moreover, unlike the employer in the other case cited by Plaintiff, *Flowers v. LA County*

12   *Metropolitan Transportation Authority* (2015) 243 Cal.App.4[th] 66, Gillig is not claiming it is

13   exempt from the minimum wage requirements. See *id.*, at 79.  Rather, Gillig argues that the time

14   period at issue (*i.e.*, work performed before the start time) is governed by the CBA, which

15   requires that this time be compensated at an overtime rate.  As such, the *Flowers* case is

16   inapposite to the facts here.

17        For the above reasons, Plaintiff's First Cause of Action for minimum wage is therefore

18   subject to dismissal as a matter of law, or in alternative evidence regarding alleged time worked

19   prior to the regular start time should be excluded.

20       **B.**     **Plaintiff's First Cause Of Action Is Preempted By Section 301 of the LMRA**

21            **Because There Is An "Active Dispute" Over The Meaning And Application Of The CBA's Section 4.5.**

22        It is apparent from the papers that the parties disagree regarding the meaning and

23   application of the relevant provisions of Section 4.5 of the CBA.  As explained below, Plaintiff's

24   minimum wage claim is consequently preempted under Section 301 of the LMRA.  Section 301

25   of the LMRA provides exclusive federal jurisdiction over claims involving collective bargaining

26   agreements between employers and labor organizations, and preempts any state law claims based

27   on such an agreement.  29 U.S.C. § 185(a); See *Franchise Tax Board of California v.*

28

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

1    *Construction Laborers Vacation Trust for So. California* (1983) 463 U.S. 1, 23 ; see also

2    *Ramirez v. Fox Television Station, Inc.* (9th Cir. 1993) 998 F.2d 743, 747.

3         State law claims preempted by Section 301 are re-characterized as federal claims.

4    *Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 393.  As the Ninth Circuit has consistently

5    recognized, Section 301 "has such 'extraordinary pre-emptive power' that it 'converts an

6    ordinary state common law complaint into one stating a federal claim for purposes of the well-

7    pleaded complaint rule.'" *Curtis v. Irwin Industries, Inc.* (9th Cir. 2019)  913 F.3d 1146, 1152

8    (quoting *Metro. Life Ins. v. Taylor* (1987) 481 U.S. 58, 65); see also *Newberry v. Pacific Racing*

9    *Ass'n,* (9th Cir. 1988) 854 F.2d 1142, 1146 ("the preemptive force of Section 301 is so powerful

10   that it displaces entirely any state cause of action for violation of a collective bargaining

11   agreement...and any state claim whose outcome depends on analysis of the terms of the

12   agreement.")

13        The test to determine if a claim is preempted by Section 301 is (1) whether the asserted

14   right exists solely as a result the CBA or, if not, (2) whether the state law claim is "<u>nevertheless</u>

15   <u>substantially dependent on analysis of a collective-bargaining agreement</u>." *Curtis,* 913 F.3d at

16   1152-1153 (quoting *Caterpillar Inc.,* 482 U.S. at 394); see also *Burnside v. Kiewit Pac. Corp.*

17   (9th Cir. 2007) 491 F.3d 1053, 1059.  "If such dependence exists, then the claim is preempted by

18   section 301." *Burnside,* 491 F.3d at 1059-1060.  As to this second step of the analysis, "claims

19   are only preempted to the extent there is an <u>active dispute</u> over 'the meaning of contract terms.'"

20   *Curtis,* 913 F.3d at 1153 (emphasis added.)  A state law claim cannot avoid preemption if it

21   raises questions "about the scope, meaning, or application of the CBA." See *id.*

22        Here, Plaintiff interprets the overtime provision to require an employee to work more

23   than eight hours to be entitled to receive overtime for work performed before the regular starting

24   time. (Plaintiff's Opp., p. 4, lines 6-17.)  As discussed above, Gillig disagrees with Plaintiff's

25   limited interpretation of Section 4.5.  The plain language of Section 4.5 entitles employees to

26   receive overtime for any "[w]ork performed before the regular starting time," regardless of

27   whether they work more than eight hours in a workday.  Plaintiff acknowledges that if Gillig's

28

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

1  interpretation of Section 4.5 prevails, his minimum wage claim "would otherwise be preempted"

2  as overtime. (See Plaintiff's Opp., p. 4, line 8.)  An analysis of the meaning and application of

3  Section 4.5 as it pertains to Plaintiff's claim for alleged work performed before the regular start

4  time is thus critical to the disposition of this claim.  As there is an "active dispute" between the

5  parties regarding the meaning and application of Section 4.5, Plaintiff's First Cause of Action is

6  subject to federal preemption under Section 301 of the LMRA and must be dismissed as a matter

7  of law.

8  **III.    CONCLUSION**

9        For the above stated reasons, Gillig respectfully requests this Court grant its motion for

10  judgment on the pleadings.  Alternatively, Gillig requests this Court sustain its *motion in limine*

11  to exclude all evidence regarding Plaintiff's claim for minimum wages for alleged "work

12  performed before the regular starting time."

13

14  DATED:  April 25, 2023                                     McMANIS FAULKNER

15

16

17                                                            MICHAEL WARREN

18                                                            WILLKIE FARR & GALLAGHER, LLP
                                                             CRAIG MARTIN *(Pro Hac Vice)*
19                                                            MATT BASIL *(Pro Hac Vice)*
                                                             Attorneys for Defendant GILLIG, LLC

20

21

22

23

24

25

26

27

28

9

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE EVIDENCE; CASE NO. RG20073930

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113.  My email address is: edresser@mcmanislaw.com.

On April 25, 2023, I served the foregoing document described as:

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE RE: PLAINTIFF'S MINIMUM WAGE CLAIM FOR ALLEGED OVERTIME HOURS WORKED**

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

Kane Moon, Esq.                                     Attorneys for Plaintiff
Allen Feghali, Esq.                                  RONALD TOLENTINO
Enzo Nabiev, Esq.
Julie Oh, Esq.
MOON & YANG, APC
1055 W. Seventh St., #1880
Los Angeles, CA  90017
T:  (213) 232-3128 / F:  (213) 232-3125
E:  kane.moon@moonyanglaw.com
    allen.feghali@moonyanglaw.com
    enzo.nabiev@moonyanglaw.com
    julie.oh@moonyanglaw.com

☐ **(BY MAIL)**
I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above or on the attached service list. I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this businesses' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Jose, California.

☒ **(ELECTRONIC MAIL)**
Based on a court order or an agreement of the parties to accept service by email or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above or on the attached service list.

Executed on April 25, 2023, at San Jose, California.

Elise Dresser

1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
**Branch Name:** Rene C. Davidson Alameda County Courthouse
**Mailing Address:** 1225 Fallon Street
**City, State and Zip Code:** Oakland CA 94612

| | |
|---|---|
| **SHORT TITLE:** Tolentino VS Gillig, LLC | **CASE NUMBER:**<br>RG20073930 |
| **NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | |

The Electronic Filing described by the below summary data was reviewed and accepted by the Superior Court of California, County of ALAMEDA. In order to process the filing, the fee shown was assessed.

**Electronic Filing Summary Data**

Electronically Submitted By:  One Legal ALA
Reference Number: 20288183
Submission Number: 23AA00057383
Court Received Date: 04/25/2023
Court Received Time: 4:49 pm
Case Number: RG20073930
Case Title: Tolentino VS Gillig, LLC
Location: Rene C. Davidson Alameda County Courthouse
Case Type: Civil Unlimited
Case Category: Other Employment Complaint Case
Jurisdictional Amount: Over $25,000
Notice Generated Date: 04/26/2023
Notice Generated Time: 9:10 am

| **Documents Electronically Filed/Received** | **Status** |
|---|---|
| Reply (name extension) | Accepted |

**Comments**
Submitter's Comments: Reservation #: 527421920323

Clerk's Comments:

**Electronic Filing Service Provider Information**
Service Provider: One Legal ALA
Contact: One Legal
Phone:

Superior Court of California
County of Alameda

,

**Receipt No:** EFM-2023-0222807.1

**Date:**   4/26/23 9:10 AM
**Time:**   4/26/23 9:10 AM

CASE # RG20073930
Tolentino VS Gillig, LLC

eCourt Transaction Fee                     5.00
(eFiling)

**Case Total:**                  5.00

**Total Paid:**          5.00

23AA00057383